IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JEFFERSON-PILOT LIFE INSURANCE CO., | ) : | CASE NO. C-1-02-479 |
| Plaintiff, | ) : | JUDGE SPIEGEL |
|  | | Magistrate Judge Hogan |
| vs. | ) : | DEFENDANT'S MEMORANDUM |
| CHRISTOPHER L. KEARNEY, | ) : | OPPOSING DEFENDANT'S MOTION |
|  | | FOR SUMMARY JUDGMENT |
| Defendant. | ) | |

This Court should reject defendant's Motion For Summary Judgment and grant Mr. Kearney's competing motion. (*Doc. 19*). The disability insurance policies at issue (collectively, the "Policy") require Jefferson-Pilot Insurance Company (the "Insurer") to pay Mr. Kearney a Residual Disability Benefit inclusive of:

(i)   An annual 7% "Increase in Benefits" (the "COLA Benefit");

(ii)  A Social Security Supplement Benefit (the "SSS Benefit"); and

(iii) A Waiver of Premium Benefit (the "Premium Waiver").

In addition, the Insurer must pay these benefits to Mr. Kearney for life should Mr. Kearney remain "Residually Disabled" within the meaning of the Policy.

Assuming, *arguendo,* that the Policy does not unequivocally require the payment of these benefits, the Court must declare that these benefits are nonetheless payable during Residual Disability because the Proposal, Policy, and Riders drafted by the Insurer are ambiguous. The Court is, therefore, compelled to construe the Policy language in favor of Mr. Kearney. This dispute isn't even close.

I.    *Legal Analysis.*

This memorandum sets forth principally three separate basis for the conclusion that Mr. Kearney's Residual Disability benefit includes the COLA, SSS, and Premium Waiver benefits.

First because the parties have an established 10+ year history of interpreting the Policy's Residual Disability benefits, Mr. Kearney begins his analysis there.  The memorandum then discusses in sequence: the Proposal; and the Policy drafted by the Insurer.  These three factors independently and collectively establish without question that Mr. Kearney is entitled to the COLA, the SSS, and the Premium Waiver benefits.

    A.    **Jefferson-Pilot Did Not "Erroneously" Pay Increased COLA and SSS to Mr. Kearney During the First 9 Years Of His Claim.**

The Insurer now contends that it erroneously paid "Increased COLA" and SSS to Mr. Kearney during the first 9 years of Mr. Kearney's claim.  This argument is nonsense.

Jefferson-Pilot drafted the Policy, its "Additional Benefit Provisions" ("Riders"), and the Disability Income Proposal ("Proposal"), which it presented to Mr. Kearney in approximately 1990.[1]  As identified on the "Schedule" page to each Policy, on the basis of Jefferson-Pilot's Proposal, Mr. Kearney purchased its Policy and paid Jefferson-Pilot additional sums for the Riders of: (i) Residual Disability; (ii) Increased COLA;[2] and (iii) SSS.  (*See*, Exhs. 1 and 2).  Mr. Kearney later became ill and presented a claim for benefits under each Policy (the "Claim").

---

    1    *See*, Policy, Relevant Riders or "Additional Benefit Provisions", and Proposal, attached as *Exhibits 1, 2, and 3, respectively.*  The attached Policy is the core document for one of the Policy's Mr. Kearney purchased, #493029.  The other Policy, #538069, is identical.  Also attached at Exhibit 1 are the "Schedule" pages for each Policy.

    2    The core Policy contains a 3% annual COLA adjustment (the "Increase In Benefits" provision – *Exh. 1, pp. 3-4*), but Mr. Kearney paid an additional sum for the "Increased COLA" benefit of a 7% annual bump.  (*Exh. 2*)

2

Jefferson-Pilot approved Mr. Kearney's Claim. In approximately 1993, Jefferson-Pilot commenced issuing 2 checks per month to Mr. Kearney and has issued many hundred such checks. (*See*, *Exh. 4, Insurer's Payment Record*). These twice monthly payments all contained Mr. Kearney's monthly Residual Disability Benefit, inclusive of the SSS Benefit and the Increased COLA Benefit. *Id*. In fact, in May of each year, Jefferson-Pilot calculated and applied the 7% Increased COLA benefit to Mr. Kearney's monthly benefit checks. *Id*. As evident in Exhibit 4, Jefferson-Pilot took great care to accurately calculate determine the benefits payable under the Policy for Mr. Kearney's Residual Disability and consistently acknowledged the propriety of his receipt of COLA and SSS benefits. (*See*, *e.g., Exhibit 5)*.

In Exhibit 5, dated August 11, 2000, the Insurer advised Mr. Kearney that he "should receive two checks reflecting the increase under the cost of living adjustment (COLA) rider for both of your policies that became effective on May 6, 2000." *Id*.

Mr. Kearney's multiple monthly payments (inclusive of Increased COLA and SSS) continued without controversy for several years while Jefferson-Pilot directly administered the Claim. Jefferson Pilot made these many payments, with their annual COLA adjustments, based on its knowledge and understanding of the Proposal, the Policy, and the Riders which it drafted, proposed, and sold to Mr. Kearney.

Jefferson-Pilot later removed itself from the direct administration of Mr. Kearney's Claim and farmed-out that service to Disability Management Services, Inc. ("DMS"). Since 2001, even though it did not draft the Proposal, the Policy, or the Additional Benefit Riders, DMS has sought to enforce a new interpretation of Mr. Kearney's rights under the Policy and has reduced Mr. Kearney's monthly benefit.

On the basis of DMS' new interpretation, the Insurer contends that it made an "error" in interpreting its own Policy, Proposal, and Riders during the first 7 years that it directly administered Mr. Kearney's Claim. Jefferson-Pilot made no such error. As articulated in Mr. Kearney's bad faith claim, DMS' new interpretation requires such an extraordinary contortion of its terms that it is obvious that DMS is simply leveraging its purported new reading of the Policy to coerce a favorable settlement of Mr. Kearney's 11-year Claim (that has the potential to remain for lifetime and also grow annually by 7% for the next 20 years). (*See*, *Exhibit 6*). A cynic would argue that it is the long-standing nature of Mr. Kearney's large Residual Disability claim that has compelled the Insurer through DMS to manufacture its new interpretation.

B.  **The Proposal Makes Unequivocal Mr. Kearney's Right To COLA, SSS, and Premium Waiver During Residual Disability.**[3]

The definitions and explanations contained within the Proposal, drafted by Jefferson-Pilot and given to Mr. Kearney before he purchased the Policy, are critically important to understanding the Benefits available to Mr. Kearney. The five (5) definitions/statements below establish unequivocally that Mr. Kearney is entitled to COLA, SSS, and Premium Waiver:

> **(1)** The Proposal states: "Residual Disability pays a percentage of the Basic Benefit and Social Security Supplement, if applicable,[4] when you are residually disabled and suffer a loss of earnings of 20% or more."[5] (*p. 2*);

---

[3]  The Insurer does not contest the propriety of analyzing the Proposal language in determining Residual Disability. In fact, it does so in its memoranda. In addition, the "Agent's statement" attached to the Policy (*Exh. 1*) incorporates the Proposal at Q#2: "Did you give [Mr. Kearney] an Outline of Coverage or description of the policy?" A: "Yes." In addition, the Proposal states that "additional intervention can be found in the Policy form. (*Exh. 3, p. 7*)

[4]  The "applicability" of SSS is an issue not in contest. It "applies" because Mr. Kearney purchased the SSS Rider and was denied Social Security disability.

[5]  At all times Mr. Kearney's loss has exceeded 75% of his prior income.

4

*Based on this definition, it is clear that Mr. Kearney's Residual Disability Benefit consists of at least 2 independent parts: (i) the "Basic Benefit," and (ii) the SSS benefit (this clearly satisfies one question presented—the SSS Benefit is payable). This 2-part benefit identification is reiterated in a separate section of the Proposal:*

>   **(2)**    Under the heading "Residual Disability" (*Ex. 3, p. 5*) the Insurer again communicates to Mr. Kearney that "the amount of your residual disability benefit will be the percentage of your Basic Benefit <u>and Social Security Supplement</u> benefit (if applicable) that is equal to the percentage of pre-disability earnings you lose as a result of residual disability." (*Emphasis added*).
>
>   **(3)**    In this same section, the Insurer further quantifies and defines the Residual Disability benefit as a percentage of "Total Disability" "during the first 6 months residual benefits are payable, the minimum benefit is 50% of your benefit for total disability. Example: If your monthly earned income during residual disability is 60% of your pre-disability earnings, you have a 40% loss of earnings. <u>During the first 6 months of residual disability</u> only, <u>Jefferson-Pilot will pay you a minimum benefit equal to 50% of your benefit for total disability</u>. <u>Thereafter it would be equal to 40 % of your benefit for total disability</u>. If your loss of earnings exceeds 50%, the corresponding higher percentage will be payable. If the loss of earnings is at least 75%, <u>the full benefit for total disability will be payable</u>." (*Exh. 3, p. 5, emphasis added*)

*This Section and its incorporated Example clearly demonstrate that Mr. Kearney's Residual Disability benefit is a percentage of the "<u>full</u>" benefits payable for "Total Disability," <u>inclusive</u> of the COLA, the SSS, and the Premium Waive benefits. And, <u>notably</u>, with the exception of Premium Waiver, the Insurer paid Mr. Kearney benefits consistent with this "example" for 9 years.*

>   **(4)**    The Proposal further defines the "first part" of the Residual Disability benefit, the "Basic Benefit", to include: (i) the "Monthly Benefit for Total Disability . . . ($2,125);" <u>and</u> (ii) "**<u>Percentage Increase In Benefits During Total Disability", that is COLA or the "Increased COLA" benefit</u>**." (*See, Exh. 3, p. 2, emphasis added*).

5

*Based on this exceedingly clear statement, there can be no legitimate dispute that the parties intended to provide COLA and/or Increased COLA[6] to policyholders suffering from "residual disability."*

> **(5)** With respect to the "Additional Benefit" of the "Optional Increase In Benefits During Total Disability," that Mr. Kearney purchased, the Proposal (*Exh. 3, p. 2*) states that it "increases the 3% increase in benefits described previously to 7%. Applicable to the Basic Benefit and Social Security Supplement benefit if it is payable."[7]

*Having established beyond question that Mr. Kearney's Residual Disability Benefit consists of 2 parts, the "Basic Benefit and a SSS benefit, <u>and</u> having also established that the "Residual Disability" payment is a percentage of the "<u>full</u>" total disability benefit, it is plain and obvious that Mr. Kearney's Residual Disability Benefit grows by the 7% annual Increased COLA.*

After receiving this Proposal, Mr. Kearney purchased: (i) the Policy; (ii) the Residual Disability Rider; (iii) the Social Security Supplement Rider; and (iv) the Optional Increase in COLA Rider. (*Exh. 2*).

Based on the above unequivocal language, it is beyond genuine dispute that the Increased COLA benefit, the SSS benefit, and the Premium Waiver benefit all apply to Mr. Kearney's Residual Disability benefit Claim under the Policy.

---

[6] For "Percentage Increase In Benefits During Total Disability," the Proposal states: "your increase in benefits begins with the 13th month of total disability benefits. Benefits will be increased during each successive 12 month period of total disability up to the end of your Benefit Period." Notwithstanding the imprecise use of the words "Total Disability," there can be no legitimate dispute based on the above that the COLA benefit is payable to residually disabled policyholders.

[7] The imprecise use of "total disability" rather than residual disability does not void the applicability of this benefit to residual disability. This same imprecision is contained in the Proposal with regard to the Social Security Supplement but SSS as defined in the Proposal applies since it expressly makes up part 1 of the 2 part Residual Disability benefit calculation defined in the Proposal. (*Exh. 3, p. 2*).

C.  **The Policy – The "Square-Peg-Round-Hole" Nature Of The Policy Makes The Understanding Of Residual Disability Rights Cumbersome.  Nonetheless SSS, COLA, and Premium Waiver Benefits All Clearly Apply To Periods Of <u>Residual Disability.</u>**

A close reading of the core Policy sold to Mr. Kearney (*Exh. 1: the Policy without any Riders or additional provisions*), reveals that it is exclusively a "Total Disability" Policy.  There is no express mention of "Residual Disability" or "Residual Disability Benefits" anywhere.  In fact, the first sentence on the face of the core Policy reads: *"Jefferson-Pilot hereby insures you against loss due to Total Disability as defined herein and to the extent provided in this policy."* (Exh. 1, p. 1)

Moreover, like the Proposal's imprecise definitions of benefits clearly payable under Residual disability, <u>all</u> definitions contained within the core Policy are couched in terms of "Total Disability."  The Policy provides no express clarification of these defined terms when "Residual Disability" benefits are at issue for a policyholder (rather than Total Disability benefits) because he/she has paid the Insurer an additional sum to append a "Residual Disability" Rider to what is otherwise a "Total Disability" Policy.  This omission creates a slightly cumbersome task when assessing a policyholder's Residual Disability rights.

After one performs the exercise resulting from this circumstance, however, it is clear that the COLA, the SSS, and the Premium Waiver benefits are available to a Residually Disabled policyholder.  And from 1993-2002, despite this slightly cumbersome exercise, the parties, Jefferson-Pilot (who drafted the Proposal, Policy, and Riders) and Mr. Kearney, agreed that the Policy's Residual Disability benefits properly included the COLA and the SSS benefits.  And those benefits were properly paid to Mr. Kearney for 9 years.

The Insurer, with the support of DMS, is now attempting to contort the Policy language,

7

ignore the parties' intentions, and take opportunistic advantage of its own unusual drafting decision (i.e., defining all core Policy terms in the context of "total disability," selling "Residual Disability" riders, and omitting any clarification of how/when the core Policy terms apply under Residual Disability).  However, despite the slightly cumbersome nature of the Policy, there is no doubt that the core Policy's substantive terms have equal application to a "Residual Disability" determination calculation. For example, each of the following terms use "Total Disability" in their definition, not "Residual Disability," but each is indisputably applicable to "Residual Disability:"

> » **Elimination Period (*Exh. 1, p. 3*).**  The core Policy defines Elimination Period as "a number of days at the beginning of a Period of Total Disability . . . the Elimination Period is shown in the Schedule."  In addition, the Proposal states that policyholders become eligible for residual disability benefits when, *inter alia,* the Policy Elimination Period is satisfied. (*Exh. 3, p. 5*).
>
> The Residual Disability rider offers no independent definition of "Elimination Period."  The Rider states that the Residual Disability Benefit begins "the next day after the end of the Elimination period shown in the Schedule . . . ." (*Exh. 2*).  And the only "Elimination Period" identified on the "Schedule" is a 90-day Elimination Period for "Total Disability."
>
> Clearly, notwithstanding the imprecise definition in the core Policy and its exclusive use of "Total Disability," the core Policy's "Elimination Period" definition applies to both "Total" and "Residual Disability."
>
> » **Maximum Benefit Period (*Exh. 1, p. 3*).**  The same is true for the core Policy's definition of Maximum Benefit Period: "the maximum time for which benefits will be paid for any one Period of Total Disability."  The Residual Disability rider (*Exh. 2*) states that the Insurer "will continue to pay the Residual Disability Monthly Benefit for each month you are residually disabled until the combination of Total Disability and Residual Disability Benefits equal the Maximum Benefit Period."  And the "Maximum Benefit Period" identified on the "Schedule" is "For A Period Of Continuous Total Disability." *(Exh. 1)*

8

Finally, the Proposal (*Exh. 3, p. 5*) states that "residual disability benefits can be paid to the end of your maximum benefit period." And p. 9 of the Proposal states that "If disability begins prior to age 45, benefits are payable for LIFE." The proposal does not discriminate between "total" or "residual" disability benefits in this Section.

Clearly, again, notwithstanding imprecision (i.e. the use of "Total Disability" language) in the core policy definition, the core Policy's "Maximum Benefit Period" definition applies to both "Total" and "Residual Disability."

» **Period Of Disability (*Exh. 1, p. 3*).** The core Policy defines Period of Disability as a "period of Total Disability which begins . . . and ends on . . ." The Residual Disability rider *(Exh. 2)* makes use of this same terminology "Prior Monthly Income" means the greater of your: (a) average Monthly Income during the 12 months just prior to the period of disability for which you are making claim . . . ."

» **Monthly Benefit (*Exh. 1, p. 3*).** Monthly Benefit is defined in the core Policy as "the amount shown in the Schedule or 1/30 of such amount for each day of any Period of Total Disability that does not equal a whole month." The Residual Disability Rider defines Monthly Benefit as the "amount shown in the Schedule as such." And the Schedule quantifies the amount of the "Monthly Benefit" under a heading titled "For Total Disability Due To (Sickness and Injury)." [*Exh. 1 contains Schedules for each discreet Policy and each Schedule identifies a Monthly Benefit ($2,125 and $1,375) and a monthly Social Security Supplement Benefit ($625 and $225). The total of these four items, plus the increased COLA are payable to Mr. Kearney*].

Finally, the Proposal defines "Basic Benefits" (the 1st part of Mr. Kearney's 2-part Residual Disability Benefit) to include "Monthly Benefit for Total Disability." Clearly, in this circumstance, notwithstanding the core Policy's imprecise use of "Total Disability" language, the Proposal, Policy, and Rider make clear that Residual Disability benefits are a percentage of the "Total Disability" Monthly Benefit, inclusive of the COLA, the SSS, and the Premium Waiver benefits.

All other definitions contained within the core Policy also refer exclusively to "Total Disability" but no doubt apply to both Total Disability <u>and</u> Residual Disability. (*See, e.g.,* definitions of: (i) Benefits For Total Disability Due To Injury and Benefits For Total Disability

9

Due To Sickness (*Exh. 1, pp. 3-4*); (ii) Recurring Disabilities *(Id.)*;8 and (iii) Surgical Transplant - yet a surgical transplant may clearly trigger a claim for Residual Disability benefits).

In addition, the "Schedule" of benefits page of the Policy (*Exh. 1*) refers to "Total Disability" almost exclusively even though the Schedule page contains much informative material to the calculation of Residual Disability. (The only reference to Residual Disability simply confirms Mr. Kearney's purchase of that additional benefit). There is no description of Residual Disability Benefits independent from Total Disability benefits on the Schedule and no language which in any way suggests that the SSS and the COLA benefits are not available under a claim of Residual Disability. Clearly, a policyholder's benefits for Residual Disability derive from the "Schedule," which quantifies benefits under the heading "Total Disability." The only conclusion to draw is that the Schedule's imprecise use of the term "Total Disability," also includes within its definition "Residual Disability."

Although the road to understanding the Policy's Residual Disability Benefits provisions is not smoothly paved, it is imminently clear that each of the above terms (although defined in the core Policy in the context of Total Disability) apply to "Residual Disability." With this as a backdrop, the assessment of whether the COLA, SSS, and Premium Waiver benefits are available during Residual Disability under the Policy becomes a fairly routine exercise.

1. **COLA Is Payable With Residual Disability Under the Policy**.

As addressed above, the Proposal and the parties' 10-year history unequivocally establish that the Increased COLA Benefit is payable to Mr. Kearney for his Residual Disability.

---

8 An example of the application of this term to Mr. Kearney's Residual Disability Benefits claim exists. In 1994, Jefferson Pilot determined that a second claim for benefits made by Mr. Kearney was a recurrence or continuation of a prior claim. Accordingly, Jefferson-Pilot interpreted the policy to mean that residual benefits are included in "Recurring Disabilities."

The Policy (collectively with the Proposal and past practice) also independently establishes the Increased COLA is payable.

Like many definitions contained in the Proposal and all the other definitions contained within the core Policy, the COLA or "Increase In Benefits" provision is defined using the term "Total Disability" and there is no mention of "Residual Disability."[9] But as identified above through numerous examples in the Proposal and core Policy, this fact does not result in the conclusion that the COLA benefit is not applicable to Residual Disability. Yet this is the Insurer's main, conclusory argument.

An examination of the Residual Disability Rider shares the patent fallacy with the Insurer's argument. The Residual Disability Rider[10] identifies the payments Mr. Kearney may receive as the "Residual Disability Monthly Benefit." (*See*, *Exh. 2*). And the Rider provides the precise mathematical equation for calculating Mr. Kearney's Residual Disability Monthly Benefit. That equation consists of 3 discreet items: (i) Loss of Monthly Income; (ii) Prior Monthly Income; and (iii) Monthly Benefit. To calculate Residual Disability Monthly Benefit the Insurer first divides Mr. Kearney's Loss of Monthly Income by his Prior Monthly Income. That result, when multiplied by the "Monthly Benefit" determines Residual Disability Monthly Benefit. In addressing this calculation and the "Prior Monthly Income", the Policy written by the Insurer states:

---

[9] The COLA provision states: "After you have received benefits for Total Disability for 12 consecutive months, your Monthly Benefit will be increased during the continuance of that Period of Disability up to your 65th birthday. The increase will be 3% of the Monthly Benefit shown in the Schedule for each successive 12 month Period of Total Disability after the first Period." (*Exh. 1, p. 3*).

[10] Contrary to the Insurer's argument, the Residual Disability Rider does not state that the Residual Disability benefits are mutually exclusive from Total Disability Benefits. (*See, Exh. 2*)

11

"The 'Prior Monthly Income' **will be adjusted at the same time** and **by the same percentage** as the "Increase in Benefits" or "Increase in Benefits For Total Disability" provision, whichever is applicable, of this policy." (*emphasis added*).

This **key** language of the Residual Disability Rider irrefutably establishes that – when calculating the monthly Residual Disability benefit - in <u>addition</u> to adjusting Prior Monthly Income by the COLA percentage, and at the same time, the Insurer <u>must</u> make the applicable "Increase in Benefits" or "Increase in Benefits for Total Disability'" adjustment. Accordingly, this COLA adjustment must unmistakably be made to the Residual Disability Monthly Benefit.[11] In Mr. Kearney's case, the 7% COLA adjustment is "applicable" since he purchased that additional benefit.

The Insurer certainly cannot contend that this reference to the "Increase in Benefits for Total Disability" has anything to do with "Total Disability."

Finally, an examination of the Schedule page reveals that the COLA Benefit is an "additional" benefit that once purchased by a policyholder is treated the same as the monthly benefit. As such, just as someone residually disabled receives a percentage of the monthly benefit, having purchase the additional COLA they would receive a percentage of the monthly benefit enhanced by the 7% COLA increase.

    2.    **The SSS Benefit Is Payable With Residual Disability.**

As stated in the Proposal without equivocation, this benefit is payable during Residual Disability. It was also paid without controversy for 10 years. In fact, the Insurer's Complaint filed in this action <u>does</u> <u>not</u> challenge the propriety of this benefit being paid to a Residually

---

[11] As the Insurer points out "the Residual Disability Benefit will not apply for any period of time that benefits are payable for Total Disability. (*See Exh. 2, Residual Disability Rider Limitations(c)*.

12

Disabled policyholder.  Presumably, since the filing of the Complaint, the Insurer has adopted an even newer interpretation of Mr. Kearney's policy rights.  Regardless, the SSS benefits is payable for Residual Disability.

Mr. Kearney purchased this optional benefit by paying a significant additional amount in each monthly premium, which he continues to pay.  The SSS Rider (*Exh. 2*) does not specifically address its availability or exclusion in cases of Residual Disability.[12]  It does, however, like many other provisions of the Proposal and Policy which apply to Residual Disability, define SSS within the context of "Total Disability."  As shown above, this is not dispositive.

The Proposal given to Mr. Kearney states clearly that Residual benefits include the basic benefit <u>and</u> <u>the</u> <u>benefit</u> <u>for</u> <u>SSS</u>.  (*See, Exh. 3, p. 2, 5*).  As such, and based on all of the above reasoning, Mr. Kearney is entitled to SSS while Residually Disabled.  Notably, the SSS Rider states when SSS is not payable and mentions nothing about "Residual Disability."

### 3. <u>The Premium Waiver Is Available With Residual Disability.</u>

Premium Waiver, like other terms of the Proposal and Policy, is defined in the context of "Total Disability."  This, however, is not an indication that the Premium Waiver benefit is restricted to Total Disability when a Residual Disability rider has been purchased.  As unequivocally established at the discussion of Residual Disability as it is addressed in the Proposal, if one who is Residually Disabled has a "loss of earnings of at least 75%, the <u>full</u> benefit for total disability will be payable."

---

[12] The Rider simply says:  "The Monthly Benefit of this policy will be increased by the amount of the Social Security Supplement shown in the Schedule if:  1) you are entitled to receive Monthly Benefits for Total Disability; 2) the period of Total Disability begins prior to the premium due date of this policy next following your 65th birthday; and (3) Social Security benefits are not payable."

There is no dispute that Mr. Kearney's loss has exceeded that threshold since 1993. Accordingly, he is entitled to the "full benefit for total disability" for that entire period. The "Benefit Provisions" Section of the Policy identifies "Waiver of Premium" as one of the benefits available within the "full" complement of "Total Disability" benefits. Accordingly, the Waiver of Premium benefit is available to Mr. Kearney.

Contrary to the Insurer's argument that Mr. Kearney concedes the impropriety of his receipt of the Premium Waiver benefit during times of Residual Disability, Mr. Kearney has repeatedly requested Premium Waiver. (*See* Exh. 7).

### 4. Absent A Return To Health/Productivity, Mr. Kearney's Residual Disability Benefits Are Payable For Life.

The Insurer contends that the Residual Disability benefits payable under the Policy terminate upon Mr. Kearney's 65th birthday (should he remain residually disabled through that date). Mr. Kearney (who sustained his disability prior to age 45) respectfully seeks an affirmative declaration that the Policy potentially entitles him to Residual Disability for his lifetime if he does not improve. Support for this conclusion is contained at p. 2 and p. 9 of the Proposal (i.e., "If your disability begins prior to age 45, benefits are payable for life."), p. 5 of the Proposal ("if you are residually disabled prior to age 55, residual disability benefits can be paid to the end of year maximum benefit period"); the "Schedule" page to the Policy (the Monthly Benefit Maximum benefit period for a period of Total Disability commencing before age 45 is lifetime).

Once again, all Residual Disability benefits on the "Schedule" page are defined exclusively in terms of "Total Disability." For that reason, the maximum benefit period's

reference to Total Disability is not at all conclusive, as repeatedly analyzed above. Mr. Kearney is entitled to lifetime residual disability benefits absent a return to health/productivity.

> D.  **Ambiguity The Insurer Created Must Be Construed In Favor Of Mr. Kearney.**

The Insurer's decision to draft a "Total Disability" policy exclusively and then sell Residual Disability riders to be appended to the Policy created a Petri dish for the cultivation of ambiguity. But for close to 10 years, Mr. Kearney and Jefferson Pilot, the drafter of the Policy, knew full well their intention: the COLA and SSS benefits apply to periods of Residual Disability when those additional benefits are purchased by a policyholder.

The parties have disputed the applicability of the Premium Waiver throughout (*Exh. 7*), but that benefit too is "payable" to Mr. Kearney: he's entitled to a percentage (commensurate with his loss) of the "full" benefit payable for Total Disability, including Premium Waiver. (*Exh. 3, p. 5*).

In Ohio, language of an insurance contract which is reasonably susceptible of more than one meaning must be construed strictly against the insurer and liberally in favor of the insured.13  To defeat coverage, the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the only one that can fairly be placed on the language in question.14

---

13   *King v. Nationwide Ins. Co*. (1988), 35 Ohio St.3d 208, 211, 519 N.E.2d 1380, 1383; Gomolka v. State Auto. Mut. Ins. Co. 70 Ohio St. 2d 166, 436 N.E.2d 1347 (1982); *Yeager v. Pacific Mutual Life Ins. Co*. 139 N.E.2d 48, 166 Ohio St. 71 (Ohio 1956).

14   *Andersen v. Highland House Co*. 93 Ohio St.3d 547, 757 N.E.2d 329 (2001)(*although **Andersen** was a commercial general liability case, it has been applied in the context of life insurance coverage and its principles apply here*).

It will not suffice for an insurer to demonstrate that its interpretation is more reasonable than the policyholder's. *Id.*

The Insurer did not make an error with regard to COLA and SSS during its first 9 years of administering Mr. Kearney's Claim.  (And if it made an error, that is presumably *per se* evidence that the Policy is ambiguous).  Each month the Insurer revisited the Claim, assessed the proper benefit payable (*Exh.* 4), determined that amount, and issued 2 checks to Mr. Kearney.  And it annually (and properly) calculated and administered a 7% COLA increase in residual benefits.  The Insurer did so because the Policy provides for both COLA and SSS benefits during Residual Disability.  To the extent the Insurer has now created a new interpretation of the Policy benefits, the ambiguity it tries to push must be resolved in favor of Mr. Kearney.

> E.  **Nowhere In Proposal, Policy, or Riders Is There Any Express or Implicit "Exclusion" of COLA, SSS, of Premium Waiver During Residual Disability.**

The Policy, Proposal and Riders all contain exclusions and/or limitations on coverage. For example:

- The Policy excludes benefits during an Elimination Period, following the maximum benefit duration, and losses caused by intentionally self-inflicted wounds among other things;

- The Proposal limits benefits for injury caused by war;

- The Residual Disability Rider limits benefits when the loss is less than 20% or the policyholder is not under the regular care of a physician; and

- The SSS Rider limits benefits is the policyholder doesn't apply for Social Security disability benefits with the government.

16

This leads to one obvious conclusion, when the Insurer wants to, it can craft the language necessary to expressly and effectively exclude coverage. It did not do that here with regard to COLA, SSS, or Premium Waiver during Residual Disability. That is a fatal flaw.

Exclusions in an insurance contract are not preferred and are strictly construed to effectuate the policy's principal purpose of indemnity.15  To be enforceable under Ohio law, an exclusion, exception, or limitation in an insurance policy must "clearly in explicit wording set[] forth with specificity exactly what is to be excluded."16  The *Andersen* Court quoted, with special emphasis, the holding of its earlier decision in *Home Indemn. Co. of New York v.Plymouth*, 146 Ohio St. 96, 64 N.E.2d 248 (1945), wherein the Court held that:

> "[w]here exceptions . . . are introduced into an insurance contract, a general presumption arises to the effect that that which is not *clearly excluded* from the operation of such contract is included in the operation thereof. (*Emphasis added*.)." *Id. at 549.*

There is no language anywhere in the Proposal, Policy, or Riders that expressly states, suggests, or implies to policyholders that the Increased COLA, SSS, and Premium Waiver benefits are excluded or not available to persons claiming Residual Disability. This is a fatal flaw.

---

15    *Suburban Community Hosp. v. Lindquist* 69 Ohio St 2d 302, 304, 432 NE2d 173 (1982); American Financial Corp. v. Fireman's Fund Ins. Co. (1968), 15 Ohio St. 2d 171, 173, 239 N.E.2d 33.

16    *River Services Co. v. Hartford Acc. & Indem Co.* 449 F. Supp 622, 626 (N.D. Ohio 1977); *Am. Fin. Corp. v. Fireman's Fund Ins. Co.* 15 Ohio St 2d 171, 174, 239 NE2d 33, 35 (1968)("the insurer, being the one who selects the language, must be specific in its use, and an exclusion from liability must be clear and exact in order to be given effect").

**Conclusion**

Contrary to the Insurer's new argument, the plain language (or alternatively, the ambiguous language) of the Insurer's Proposal, Policy, and Riders require the payment of COLA and SSS benefits to Mr. Kearney who is Residually Disabled. The Policy further requires the Waiver of Premium benefit be afforded Mr. Kearney. Accordingly, all premiums paid by Mr. Kearney since 12993 should be returned with interest. Finally, since a controversy exists on the issue, the Court should affirm that if Mr. Kearney's condition/productivity does not improve his benefits will continue for life.

This Court should sustain Mr. Kearney's Motion For Partial Summary Judgment and deny the Insurer's competing motion.

Respectfully submitted,

s/ Michael A. Roberts
Michael A. Roberts, Esq.
GRAYDON HEAD & RITCHEY LLP
511 Walnut Street, Suite 1900
Cincinnati, OH 45202
(513) 629-2799
(513) 651-3836
email: mroberts@graydon.com

Eugene L. Matan, Esq.
MATAN, GEER & WRIGHT
261 South Front Street
Columbus, OH 43215-5089
*Trial Attorneys for Mr. Kearney*

**CERTIFICATE OF SERVICE**

I hereby certify that the original of the above has been filed electronically with the court and a paper copy of the same has been served by regular United States Mail, this 10th day of March, 2004, upon William R. Ellis, Wood & Lamping LLP, 600 Vine Street, Suite 2500, Cincinnati, OH 45202.

s/ Michael A. Roberts