IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JEFFERSON-PILOT LIFE INSURANCE CO., | ) : | CASE NO. C-1-02-479 |
| Plaintiff, | ) : | JUDGE SPIEGEL |
|  | | Magistrate Judge Hogan |
| vs. | ) : | |
|  |  | DEFENDANT'S SECOND |
| CHRISTOPHER L. KEARNEY, | ) : | MOTION TO COMPEL |
| Defendant. | ) | |

Pursuant to Fed. R. Civ. P. Rule 37, the defendant, Chris L. Kearney, hereby moves the Court once again for an Order compelling the plaintiff, Jefferson-Pilot Life Insurance Company, and the cross claim defendant, Disability Management Services, Inc. ("DMS"), to produce the information Mr. Kearney has properly requested pursuant to Fed. R. Civ. P. 30, 33, and 34 as well as Ohio law, specifically *Boone v. Vanliner Ins. Co*. 744 N.E.2d 154, 91 Ohio St.3d 209, 213-214, 2001-Ohio-27. A memorandum in support is attached.

Dated: May 19, 2004

OF COUNSEL:

GRAYDON HEAD & RITCHEY LLP
1900 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45201
(513) 621-6464
Cincinnati, Ohio 45201

Respectfully submitted,

/s Michael A. Roberts
Michael A. Roberts (0047129)
GRAYDON HEAD & RITCHEY LLP
Trial Attorney for Defendant
1900 Fifth Third Center
511 Walnut Street
(513) 629-2799
(513) 651-3836
email: mroberts@graydon.com

1

**MEMORANDUM IN SUPPORT**

After paying disability benefits to Christopher L. Kearney, its policyholder, for close to 10 years, Jefferson-Pilot Life Insurance Company ("JP") through its third party administrator, Disability Management Services Inc. ("DMS" and collectively "JP/DMS") JP sued its policyholder, Mr. Kearney, requesting that the Court find that the manner in which JP had paid Mr. Kearney for nearly 10 years was a mistake.  Mr. Kearney countersued.

For over 1 year, Mr. Kearney has been seeking discovery from JP/DMS, but JP/DMS refuses to comply. (*See*, *Doc. 43, First Motion To Compel*).  For the reasons set forth herein, Mr. Kearney requests an order compelling the discovery which is long overdue and the depositions which have been long sought.

1.  *Documents Not Produced*

Mr. Kearney requests that JP/DMS be now ordered to fully respond to the following specific outstanding discovery requests:

  A.  **Electronic Information.**

Mr. Kearney's discovery requests are not limited to "produce the documents plaintiff chose to put in its claim file." (*See*, *Requests, Exhibit 1*). Yet that is all that has been produced. (*See*, *Exhibit 2, Declaration of Counsel*).  In his May 14, 2004, deposition Robert Mills, the claims representative responsible for Mr. Kearney's claim from January 2000 through the present, testified that JP/DMS made no effort to search its network, its employees' harddrives, or its back-up tapes for information properly requested and discoverable under Civil Rule 34. *Id.*  Mr. Mills also testified that he would create/receive documents and/or emails concerning Mr. Kearney that he did not place in the claims

file. *Id.* JP and DMS should be ordered to forthwith produce all electronically stored information as directed in the Rule 34 request.[1]

    B.    <u>**Privilege Log**</u>

Despite months of promises and many requests, JP/DMS have not produced a privilege log. *Id.* On the 4th and final scheduled day of depositions, May 14, 2004, plaintiff's counsel produced the document identified as Deposition Exhibit 41 which in no conceivable way is an appropriate privilege log.[2] *Id.* Defendant requests that the Court order plaintiff to produce a proper Privilege log forthwith.

    C.    **Documents Shared With Or Prepared By**
          <u>**Counsel Which Are Not Protected By Privilege**</u>.

During the conduct of Mr. Mills' deposition he revealed that the position that JP/DMS seeks to advance in this case was first uncovered or developed on October 10, 2001. *Id.* Mr. Mills also testified that between October 10, 2001, and June 1, 2002 (the date that JP/DMS sued Mr. Kearney initiating this lawsuit), Mr. Mills participated in numerous telephone conferences with: (i) Mr. Hughes (a non-lawyer Vice-president of DMS and Mr. Mills' superior at DMS); (ii) Stefanie Farabow (an employee and in-house counsel with JP); and (iii) William Dempsey (an employee and

---

[1] In a prior action in this Court concerning DMS and its counsel, Mr. Ellis, many, many discovery conferences and much time was spent concerning the production of electronic information. <u>See</u>, *Jeffries v. Centre Life and DMS, Case No 02-351.* The Court on several occasions, unequivocally ordered DMS to produce the information. For that reason, DMS has no excuse or cause for their refusal to produce the same information in this action.

[2] FRCP, Rule 26(B)(5) provides that: "Claims of Privilege or Protection of Trial Preparation Materials. When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed *in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.*" (emphasis added).

in-house counsel at Employers Reinsurance Corporation, a reinsurer of JP's liability to Mr. Kearney on the subject disability insurance policies). *Id.* Mr. Mills also testified that several emails were exchanged among this group and that he also may have participated in conferences with Attorney Geraldine Johnson. *Id.*

It is beyond dispute that these communications are not protected by any privilege:

(i) Ohio provides no protection in bad faith suits to communications between an attorney and his/her client on issues relating to coverage before a lawsuit is commenced. *See*, **Boone v. Vanliner Ins. Co.** 744 N.E.2d 154, 91 Ohio St.3d 209, 213-214, 2001-Ohio-27 and **Garg v. State Auto. Mut. Ins. Co**. 800 N.E.2d 757, 155 Ohio App.3d 258, 2003-Ohio-5960 (2nd Dist. 2003);

(ii) In addition, there was no attorney-client relationship between Dempsey (of ERC) and Hughes/Mills (of DMS); or Farabow (of JP) and Hughes/Mills (of DMS); or Dempsey (of ERC) and Farabow (of JP). And there certainly was no 3-way attorney client relationship between DMS, JP, and ERC. The communications simply are not protected; and

(iii) While in November 2001 or December 2001, ERC and Mr. Dempsey sought the opinion of outside counsel, Attorney Geraldine Johnson, as to coverage issues on Mr. Kearney's policies and ambiguities in those policies – 7 months before JP filed suit – those communications are not privileged. *Id.* In Ms. Johnson's December 2001 letter to Mr. Dempsey she wrote: "In order to *strip* Mr. Kearney of the ability to allege bad faith or at least best position ourselves to defend such a claim, it is my recommendation that we continue to pay Mr. Kearney the monthly amount we have been paying under a full reservation of rights contemporaneous with our pursuit of a declaratory judgment action." (*See, December 21, 2001, Letter of Attorney Johnson, Bates labeled 0629-0630, attached as Exhibit 3*).

In 2001, the Ohio Supreme Court decided the case of **Boone v. Vanliner Ins. Co.** 744 N.E.2d 154, 91 Ohio St.3d 209, 213-214, 2001-Ohio-27. In its decision, the Ohio Supreme Court held unequivocally that: "in an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage." And in **Garg v. State Auto.**

4

*Mut. Ins. Co*. 800 N.E.2d 757, 155 Ohio App.3d 258, 2003-Ohio-5960 (2nd Dist. 2003) the Court determined that under *Boone* both attorney-client communications and work-product materials are subject to disclosure during discovery on bad faith claims.

The *Garg* Court also stated that under *Boone* "the critical issue in evaluating the discoverability of otherwise privileged materials is not whether the attorney-client communications related to the existence of coverage but, rather, whether they may cast light on bad faith on the part of the insurer." The *Garg* Court concluded, "the trial court properly compelled production of the entire claims file. Under *Boone*, neither attorney-client privilege nor the work-product doctrine protects materials in a claims file, created prior to the denial of the claim, that may cast light on whether the insurer acted in bad faith in handling an insured's claim." *Id.* 265-266.

Despite defendant's recitation of this clear law to plaintiff's counsel, JP/DMS refuse to produce the notes, memorandum, and documents (including emails) created by or provided to inside counsel for JP/DMS/ERC or outside counsel. *Id.*

Moreover, the 3-way communications between: (i) Mills and Hughes (nonlawyers from DMS); (ii) Farabow (inhouse counsel of JP) and (iii) Dempsey (in house counsel of ERC) are not protected by attorney-client privilege. Attorney Farabow's client is JP, not DMS: DMS has its own in-house legal staff of 6-7 lawyers to whom Messrs. Mills and Hughes look for legal advise. Farabow is not the lawyer for DMS, ERC, Hughes, or Mills. And Attorney Dempsey's client is his employer, ERC, not JP, DMS, Mills, or Hughes. Accordingly, the 3-way communications between these individuals are not privileged. The attorney-client privilege exempts from the discovery process only certain communications between *attorneys and their clients*.

5

D.   **Videotapes.**

JP/DMS have been requested to produce surveillance videotapes and reports but have not done so. *Id.* Defendant has not produced videotapes identified in the surveillance reports provided on May 10 and have not produced surveillance from March 2003 although videotapes of that surveillance (conducted 9 months after plaintiff filed its declaratory judgment action) were produced on May 17. *Id.*

2.   *Depositions OF JP/DMS and Counsel.*

For over 7 months, Mr. Kearney has been seeking depositions. On May 5, 2004, the Court ordered that all of Mr. Kearney's requested depositions take place in Cincinnati, Ohio. (*Doc.* 49).

A.   **Jefferson-Pilot's Deposition.**

To convenience the other parties, Mr. Kearney agreed to take some depositions in North Carolina on May 6 and 7 and in Massachusetts on May 13 and 14. On May 6, 2004, JP produced Valarie Loftin as its 30(B)(6) designee. She, however, knew nothing about the claim, Mr. Kearney, or several other specific issues identified in the Notice. According to her testimony, her knowledge of the matter was gleaned from a cursory review of some pleadings the night before her deposition while caring for her children. She testified that: (i) she had never reviewed the claim file; (ii) was not involved in the administration of Mr. Kearney's claim; (iii) does not know who responded to the discovery requests in the case; (iv) has no "information or knowledge of the DMS handling of Mr. Kearney's claim; (v) the only thing she knows about the claim is what she gleaned from reading some of the pleadings the night before her deposition; and (vi) she has never spoken to anyone at DMS about the purported overpayment and/or request for declaratory judgment regarding Mr.

6

Kearney. (*See, Loftin Depo., filed pp. 10, 98, and 101*).

Mr. Kearney has, therefore, requested another deposition of a JP 30(B)(6) witness for Cincinnati, and demands a recovery of his costs and expenses (including attorney fees) incurred with the charade of Ms. Loftin's deposition.

B.   **Depositions Of Messrs. Mills and Hughes.**

Mr. Mills' deposition was begun on May 14 but was not completed. Mr. Kearney has noticed the continuation of Mr. Mills' Deposition for Monday, May 24, 2004. Mr. Hughes' deposition was noticed for May 14 but time did not provide for its taking and his deposition has been renoticed for Monday May 24.

During the conduct of Mr. Mills' deposition he revealed that the position that JP/DMS seeks to advance in this case was first uncovered or developed on October 10, 2001. As addressed above, Mr. Mills testified that between October 10, 2001, and June 1, 2002, the date that JP/DMS sued Mr. Kearney initiating this lawsuit, he participated in numerous telephone conferences with: (i) Mr. Hughes (a non-lawyer Vice-president of DMS and Mr. Mills' superior at DMS); (ii) Stefanie Farabow (an employee and in-house counsel with JP); and (iii) William Dempsey (an employee and in-house counsel at Employers Reinsurance Corporation, a reinsurer of JP's liability to Mr. Kearney on the subject disability insurance policies). Mr. Mills also testified that several emails were exchanged among this group and that he also may have participated in conferences with Geraldine Johnson.

Consistent with the Court's earlier Order (*Doc.* 49) Mr. Kearney has noticed the depositions of Mr. Mills and Mr. Hughes for Cincinnati on May 24. Defendant has also advised plaintiff's

7

counsel that he intends to question these witnesses concerning information, documents, and dialogue they provided to or shared with William Dempsey (an employee of Employers Reinsurance), Stefanie Farabow (an employee of Jefferson Pilot), and Geraldine Johnson. As addressed above, it is beyond dispute that these communications are not protected by any privilege.

        C.      **Depositions Of William Dempsey, Stefanie Farabow, and Geraldine Johnson.**

For the reasons identified above, Mr. Kearney is permitted to take and has noticed the depositions of Ms. Farabow, Mr. Dempsey, and Ms. Johnson (if her health permits) and further seeks copies of all documents including notes and electronically stored documents in their possession concerning Mr. Kearney

        D.      **Increased Fees Associated With North Carolina and Massachusetts Depositions.**

Since the Court ordered that all DMS and JP deponents come to Cincinnati for deposition and since Mr. Kearney accommodated these witnesses by voluntarily relieving them of that burden and traveling to North Carolina and Massachusetts (for 2 days each) to take these depositions, Mr. Kearney requested that JP/DMS pay Mr. Kearney's attorneys fees associated with the travel time to and from North Carolina and Boston. Notably, JP/DMS did willingly pay for Mr. Kearney's lawyer's flights and hotels for the trips to North Carolina and Massachusetts. However, while plaintiff's counsel took a direct flight to North Carolina and back JP/DMS scheduled Mr. Kearney's counsel's flight through Pittsburgh, greatly increasing the total travel time of counsel and the cost to Mr. Kearney.

## Conclusion

Defendant's discovery conduct in this case has been extraordinary. Mr. Kearney needs all of the requested information to fairly prosecute his claim and asks that the Court order its production forthwith.

Respectfully submitted,

| | |
|---|---|
| OF COUNSEL | /s Michael A. Roberts |
| | Michael A. Roberts, Esq. (0047129) |
| GRAYDON HEAD & RITCHEY LLP | GRAYDON HEAD & RITCHEY LLP |
| 1900 Fifth Third Center | 511 Walnut Street, Suite 1900 |
| 511 Walnut Street | Cincinnati, Ohio 45202 |
| Cincinnati, Ohio 45202 | (513) 629-2799 |
| (513) 621-6464 | (513) 651-3836 (fax) |
| | email:mroberts@graydon.com |

### CERTIFICATE OF SERVICE

The foregoing was electronically filed and thereby served on William R. Ellis, Esq., Wood & Lamping LLP, 600 Vine Street, Suite 2500, Cincinnati, Ohio 45202, this 19th day of May, 2004.

/s Michael A. Roberts