IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JEFFERSON-PILOT LIFE INSURANCE CO., | ) : | CASE NO. C-1-02-479 |
| Plaintiff, | ) : | JUDGE SPIEGEL<br>Magistrate Judge Hogan |
| vs. | ) : | |
| CHRISTOPHER L. KEARNEY, | ) : | |
| Defendant. | ) | |

## DECLARATION OF DEFENDANT'S COUNSEL

1.     My name is Michael A. Roberts. I am an attorney at law licensed to practice in the State of Ohio and am presently in good standing. I am a partner in the law firm of Graydon Head & Ritchey LLP. I serve as the Trial Attorney for the defendant in the above matter.

2.     Mr. Kearney's counsel has exhausted all extrajudicial means of resolving continuing disputes concerning discovery obligations of Jefferson Pilot Life Insurance Company and Disability Management Services, Inc. It is necessary that the Court now intervene.

3.     For over 1 year, Mr. Kearney has been seeking discovery from JP/DMS, but JP/DMS refuses to comply. On March 31, 2003, Mr. Kearney agreed to allow defendant extra time to respond to the discovery requests. Incomplete discovery responses were provided on June 27, 2003. Following this incomplete response, Mr. Kearney's counsel repeatedly requested the full production of documents and information from JP/DMS and a long-promised, never-provided privilege log. Notwithstanding Mr. Kearney's one year of patience, documents and information have not been provided.

4. Mr. Kearney's discovery requests are not limited to "produce the documents plaintiff chose to put in its claim file." Yet that is all that has been produced.

5. In the May 14, 2004, deposition of the claims representative responsible for Mr. Kearney's claim from January 2000 through the present, Robert Mills, it was learned (as suspected) that JP/DMS made no effort to search its network, its employees' harddrives, or its back-up tapes for information properly requested and discoverable under Civil Rule 34. Mr. Mills also testified that he would create/receive documents and/or emails concerning Mr. Kearney that he did not place in the claims file.

6. Despite months of promises and many requests, JP/DMS have not produced a privilege log. On the 4th and final scheduled day of depositions, May 14, 2004, plaintiff's counsel produced the document attached as Exhibit 2 which in no conceivable way is an appropriate privilege log.

7. During the conduct of Mr. Mills' deposition he revealed that the position that JP/DMS seeks to advance in this case was first uncovered or developed on October 10, 2001. Mr. Mills also testified that between October 10, 2001, and June 1, 2002 (the date that JP/DMS sued Mr. Kearney initiating this lawsuit), Mr. Mills participated in numerous telephone conferences with: (i) Mr. Hughes (a non-lawyer Vice-president of DMS and Mr. Mills' superior at DMS); (ii) Stefanie Farabow (an employee and in-house counsel with JP); and (iii) William Dempsey (an employee and in-house counsel at Employers Reinsurance Corporation, a reinsurer of JP's liability to Mr. Kearney on the subject disability insurance policies). Mr. Mills also testified that several emails were exchanged among this group and that he also may have participated in conferences with Attorney Geraldine Johnson. Defendant's counsel has advised plaintiff's counsel of this law and clear right

to take the depositions and discover the information concerning these communications, but plaintiff's counsel has not responded – requiring this motion. Despite defendant's recitation of this clear law to plaintiff's counsel, JP/DMS refuse to produce the notes, memorandum, and documents (including emails) created by or provided to inside counsel for JP/DMS/ERC or outside counsel.

8. Attorney Farabow's client is JP, not DMS: and DMS has its own in-house legal staff of 6-7 lawyers to whom Messrs. Mills and Hughes look for legal advise. Farabow is not the lawyer for DMS, ERC, Hughes, or Mills. And Attorney Dempsey's client is his employer, ERC, not JP, DMS, Mills, or Hughes.

9. JP/DMS have been requested to produce surveillance videotapes and reports but have not done so. Defendant has not produced videotapes identified in the surveillance reports provided on May 10 and have not produced surveillance from March 2003 although videotapes of that surveillance (conducted 9 months after plaintiff filed its declaratory judgment action) were produced on May 17.

10. To convenience the other parties, Mr. Kearney agreed to take some depositions in North Carolina on May 6 and 7 and in Massachusetts on May 13 and 14. On May 6, 2004, JP produced Valarie Loftin as its 30(B)(6) designee. She, however, knew nothing about the claim, Mr. Kearney, or several other specific issues identified in the Notice. According to her testimony, her knowledge of the matter was gleaned from a cursory review of some pleadings the night before her deposition while caring for her children. Mr. Kearney has therefore requested another deposition of a JP 30(B)(6) witness for Cincinnati, and demands a recovery of his costs and expenses (including attorney fees) incurred with the charade of Ms. Loftin's deposition.

11. During the conduct of Mr. Mills' deposition he revealed that the position that JP/DMS seeks to advance in this case was first uncovered or developed on October 10, 2001. Mr. Mills also testified that between October 10, 2001, and June 1, 2002, the date that JP/DMS sued Mr. Kearney initiating this lawsuit, he participated in numerous telephone conferences with: (i) Mr. Hughes (a non-lawyer Vice-president of DMS and Mr. Mills' superior at DMS); (ii) Stefanie Farabow (an employee and in-house counsel with JP); and (iii) William Dempsey (an employee and in-house counsel at Employers Reinsurance Corporation, a reinsurer of JP's liability to Mr. Kearney on the subject disability insurance policies). Mr. Mills also testified that several emails were exchanged among this group and that he also may have participated in conferences with Geraldine Johnson. Defendant has also advised plaintiff's counsel that he intends to question these witnesses concerning information, documents, and dialogue they provided to or shared with William Dempsey (an employee of Employers Reinsurance), Stefanie Farabow (an employee of Jefferson Pilot), and Geraldine Johnson.

12. Since the Court ordered that all DMS and JP deponents come to Cincinnati for deposition and since Mr. Kearney accommodated these witnesses by voluntarily relieving them of that burden and traveling to North Carolina and Massachusetts (for 2 days each) to take these depositions, Mr. Kearney requested that JP/DMS pay Mr. Kearney's attorneys fees associated with the travel time to and from North Carolina and Boston. Notably, JP/DMS did willingly pay for Mr. Kearney's lawyer's flights and hotels for the trips to North Carolina and Massachusetts. However, while plaintiff's counsel took a direct flight to North Carolina and back JP/DMS scheduled Mr. Kearney's counsel's flight through Pittsburgh, greatly increasing the total travel time of counsel and the cost to Mr. Kearney.

I declare the foregoing to be true and correct to the best of my knowledge and belief, upon penalty of perjury.

/s Michael A. Roberts_____
Michael A. Roberts, Esq.

**CERTIFICATE OF SERVICE**

The foregoing was electronically filed and thereby served on William R. Ellis, Esq., Wood & Lamping LLP, 600 Vine Street, Suite 2500, Cincinnati, Ohio 45202, this 19th day of May, 2004.

/s Michael A. Roberts_____