Case 1:02-cv-00479-MRB   Document 57-3   Filed 05/21/2004   Page 1 of 6

Jefferson-Pilot Insurance Company vs. Christopher L. Kearney
Valerie Loftin

C-1-02-479
5/6/2004

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

JEFFERSON-PILOT INSURANCE COMPANY,   )
                                     )
                      Plaintiff,     )
                                     )
vs.                                  )   CASE NO.
                                     )   C-1-02-479
CHRISTOPHER L. KEARNEY,              )   (Judge Spiegel)
                                     )
                      Defendant.     )

COPY

The deposition upon oral examination of VALERIE LOFTIN, being taken pursuant to Order and in accordance with the Federal Rules of Civil Procedure before Rebecca J. Huddy, Notary Public, at the Stratis Business Center, 7800 Airport Center Drive, Greensboro, North Carolina, on the 6th day of May, 2004, beginning at 11:00 a.m.

Case 1:02-cv-00479-MRB   Document 57-3   Filed 05/21/2004   Page 2 of 6

Jefferson-Pilot Insurance Company vs. Christopher L. Kearney
Valerie Loftin

C-1-02-479
5/6/2004

Page 8

```
 1   Q.   Do you recall what month it was in 2001?
 2   A.   No.  It would have been in the first six months of
 3        2001.
 4   Q.   Is that the position you hold today?
 5   A.   No.  I am now the Vice President of Claims.
 6   Q.   Did your responsibilities change at all?
 7   A.   Yes.  I now have responsibility for the entire unit.
 8        I was working on a special project when I originally
 9        went into the unit.
10   Q.   How long did that assignment last?
11   A.   The integration of the outlying claims offices went on
12        until 2002 and I assumed responsibility as Vice
13        President of Claims in June of 2002.
14   Q.   And that's the position you hold today?
15   A.   Yes.
16   Q.   What was the task of integrating the outlying claims
17        offices?  Was there a consolidation effort made by
18        Jefferson-Pilot to bring everybody to Greensboro or
19        wherever you're located?
20   A.   Yes.  It was a continuation of some of the work I had
21        done.  In the mid-'90s we had acquired a number of
22        insurance companies in different locations and we had
23        slowly been consolidating the operations into one
24        location or two locations.
25   Q.   Okay.  How many employees does Jefferson-Pilot have,
```

Case 1:02-cv-00479-MRB   Document 57-3   Filed 05/21/2004   Page 3 of 6

Jefferson-Pilot Insurance Company vs. Christopher L. Kearney
Valerie Loftin

C-1-02-479
5/6/2004

Page 27

```
 1      later.
 2              MR. ELLIS:  Whatever.
 3   Q. Are there any other reinsurers on the block of
 4      business other than Employers Reinsurance?
 5   A. Not on the Jefferson-Pilot Life block, no.
 6   Q. Has there been any change or shift in policies that --
 7      or claims that are referred to DMS, meaning are they
 8      now getting more claims than just those that exceed
 9      $2,000 a month in liability?
10   A. Yes.
11   Q. Okay.  Do they get all the claims at this point?
12   A. They get all of the claims that are reinsured through
13      ERC.
14   Q. That was at the direction of Employers Reinsurance?
15   A. It was at my direction and with agreement from
16      Employers Reinsurance.
17   Q. Is that in writing?
18   A. No.
19   Q. Have you received any letters, notes, e-mails from
20      your contact at Employers Reinsurance about DMS and
21      their work?
22   A. From Employers Reinsurance?
23   Q. Uh-huh.
24   A. No.
25   Q. All of your communications between you and Employers
```

Page 38

```
 1   A.   Right, yes.  That was a negative question.  We send
 2        them only claims.
 3   Q.   What is the reporting that's required from DMS about
 4        their strategy -- do they report what their intended
 5        strategy is on a particular claim, new claim, old
 6        claim, to Jefferson-Pilot?
 7   A.   The only time that they would discuss their handling
 8        of a JP claim would be if they required authorization
 9        for settlement.
10   Q.   Okay.  So once you send them the claim, other than
11        getting the quarterly reports, DMS doesn't interact
12        with Jefferson-Pilot about what their intentions are
13        about administering the claim until some settlement
14        that might exceed $75,000?
15   A.   We do periodic audits of the claim -- Jefferson-Pilot
16        goes to DMS.  I have gone to DMS and while I have not
17        personally reviewed the files, my staff have reviewed
18        files.
19   Q.   Okay.
20   A.   So in terms of interaction, there is more interaction
21        just than settlement approval.
22   Q.   Okay.  That's what I'm trying to nail down.  But when
23        DMS receives a claim, let's assume they develop
24        internally some strategy about how they're going to go
25        about dealing with the claim.  That's not something
```

Case 1:02-cv-00479-MRB    Document 57-3    Filed 05/21/2004    Page 5 of 6

Jefferson-Pilot Insurance Company vs. Christopher L. Kearney
Valerie Loftin

C-1-02-479
5/6/2004

Page 98

```
 1   Q.   Okay.  Do I understand correctly that when DMS was
 2        retaining secret surveillance folks to follow Mr.
 3        Kearney, hiring doctors to perform IMEs, investigating
 4        him internally, those were all things they were doing
 5        without any input from or counsel to or information
 6        provided to Jefferson-Pilot?
 7             MR. ELLIS:  Objection to form.
 8   A.   I don't have any information or knowledge of the DMS
 9        handling of Mr. Kearney's claim.
10   Q.   Why are you here today?
11   A.   Because I'm the Vice President of Claims.
12   Q.   I didn't ask for Vice President of Claims to be
13        deposed.
14   A.   And I am the person at Jefferson-Pilot who has the
15        most knowledge of the DMS relationship, because the
16        relationship comes under my supervision.
17   Q.   But no knowledge of Mr. Jefferies' claim -- Mr.
18        Kearney's claim other than what you learned last night
19        reading a couple pleadings, right?
20   A.   That's correct.
21   Q.   Could you turn to interrogatory number 2.  The second
22        sentence in the answer says, "Robert Mills identified
23        this erroneous payment shortly before DMS
24        representatives met with Attorney Spiegel in October
25        2001."
```

Case 1:02-cv-00479-MRB   Document 57-3   Filed 05/21/2004   Page 6 of 6

Jefferson-Pilot Insurance Company vs. Christopher L. Kearney
Valerie Loftin

C-1-02-479
5/6/2004

Page 117

```
 1         insurance company such as Jefferson-Pilot sells its
 2         policies to the public through various agents?
 3    A.   Yes, sir.
 4    Q.   Okay.  Are the agents given information to provide to
 5         their prospective policyholder that educates the
 6         policyholder on what their rights may be if they
 7         purchase this product?
 8    A.   The agents are given marketing material that
 9         summarizes provisions in the proposed contracts but
10         does not spell out all of the particulars of a
11         contract.
12              MR. ROBERTS:  Let's stop there.
13              (Lunch recess)
14    Q.   Were you able to make that call to see who provided
15         the information, the sworn factual information --
16    A.   I spoke with in-house counsel and was advised that the
17         information came from our Legal Department's
18         conversations with DMS examiners who had handled the
19         file.
20    Q.   Who's going to verify the responses?
21    A.   (Indicating)
22    Q.   Who's going to swear to the truth of the responses?
23    A.   I don't know, someone from our Legal Department.
24    Q.   They don't have any factual knowledge.  So we're just
25         not going to get sworn responses?
```