IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JEFFERSON-PILOT LIFE INSURANCE COMPANY, | : | CASE NO. C-1-02-479 |
| | : | |
| | : | JUDGE SPIEGEL |
| Plaintiff, | : | Magistrate Judge Hogan |
| | : | |
| v. | : | **MEMORANDUM IN** |
| | : | **OPPOSITION TO DEFENDANT'S** |
| CHRISTOPHER L. KEARNEY, | : | **SECOND MOTION TO COMPEL** |
| | : | |
| Defendant. | : | |

## I.  **INTRODUCTION**

This case is about the application of the unambiguous policy provisions of two disability

insurance policies issued to the Defendant Christopher L. Kearney by Jefferson-Pilot Life

Insurance Company ("Jefferson-Pilot").  For the past 10 years, Mr. Kearney has been receiving

residual disability benefits under both policies.  Since 2000, Disability Management Services,

Inc. ("DMS"), Jefferson-Pilot's third-party administrator, has administered Mr. Kearney's

claims.  Like Jefferson-Pilot, DMS has continued to pay Mr. Kearney's claim.

In October 2001, representatives from DMS discovered that an "increase in benefits

provision" contained in the total disability portion of the policies, and that applied only to total

disability benefits, was mistakenly being applied to Mr. Kearney's residual disability benefits.  It

was also discovered that the social security supplement benefit was being mistakenly applied

even though Mr. Kearney's claim was one for residual benefits.  Under the clear terms of Mr.

Kearney's policies, Mr. Kearney was not entitled to either the annual increase in benefits

payment or social security supplement benefits.  DMS notified Mr. Kearney of the overpayments

and advised that he was not entitled to continued application of the benefit increase provision

and social security supplement.  Despite the clear overpayment, and in an effort to prevent any

financial hardship to Mr. Kearney, Jefferson-Pilot did not seek and has not sought to recoup the overpayments.

After unsuccessful efforts to resolve the overpayment issue with Mr. Kearney, Jefferson-Pilot filed a declaratory judgment action asking the Court to determine that, as a matter of law, Mr. Kearney was not entitled to an increase in benefits and payment of the social security supplement as long as he was receiving residual disability benefits. *See* Declaratory Judgment Complaint filed July 1, 2002. Mr. Kearney responded with a counterclaim for breach of contract and bad faith. He makes these claims despite the plain language of the policies that provide for an increase in benefits and payment of the social security supplement only if he is receiving total disability benefits.

Current counsel in this case were substituted as attorneys for Jefferson-Pilot and DMS in February, 2004. Plaintiff's prior counsel was forced to withdraw due to health concerns.[1]

This case is a matter of simple contract interpretation. Despite this, current counsel for Mr. Kearney has undertaken onerous and expensive discovery and has taken issue with alleged deficiencies in discovery responses by Jefferson-Pilot. Jefferson-Pilot and DMS have reviewed their discovery responses and respond to both of Kearney's motions to compel.

## II.    SUMMARY OF THE ARGUMENT AND TABLE OF CONTENTS

At issue in this case is the application of the unambiguous policy provisions of two disability insurance policies issued to Defendant Christopher L. Kearney by Jefferson Pilot Life Insurance Company. Disability Management Services is the third party administrator which had administered Mr. Kearney's claims since 2000.

---

[1] Defendant argues that he has sought discovery for one year. He ignores the facts that one, significant discovery responses have already been provide to him and two, some delay was inevitable because of the health of Plaintiff's prior counsel.

In October 2001, representatives from DMS discovered that Mr. Kearney was mistakenly receiving benefits applicable only to a claim for total disability. Mr. Kearney's claim is one of residual disability. Nonetheless, he had been erroneously receiving benefits under the increase in benefits provision applicable to total disability claims, as well as a social security supplement benefit which also is applicable only to total disability claims. Mr. Kearney was advised of the overpayment. Jefferson Pilot sought resolution of the overpayment issue in a declaratory judgment action. Mr. Kearney continues to receive payment under the terms of his policy and Jefferson Pilot does not seek to recoup the erroneous overpayment. Jefferson Pilot does seek to have the Court declare that Mr. Kearney is not entitled to continued receipt of the increase in benefits provision and social security supplement.

Mr. Kearney has filed his Second Motion to Compel in an attempt to obtain additional discovery. Jefferson Pilot and DMS believe that they have produced all relevant discovery in this case. Mr. Kearney argues that he is entitled to extremely burdensome electronic discovery; additional depositions of Jefferson Pilot and DSM employees, including current in-house counsel and former outside counsel; and supplementation of discovery.

With regard to the electronic discovery, Jefferson Pilot and DMS object on three grounds. First, the discovery sought by Defendant in his second motion to compel is beyond the scope of that requested in his document requests. Second, any relevant information regarding Mr. Kearney's claim is contained within his claim file. And, third the cost of compliance with the request for electronic discovery is extremely burdensome and will not lead to the discovery of relevant or admissible evidence.

With regard to the depositions of counsel, any information held by inside and former outside counsel is protected from discovery by application of the work product and attorney-

client privileges.  Defendant is not entitled to discover this information.  Similarly, several privileged documents were withheld from the claims file.

With regard to the other depositions requested, Jefferson Pilot and DMS do not object to most of those in theory, but as set out herein, the cost for those depositions must be charged to Defendant.  The witnesses sought were previously made available to Defendant under his terms and at Plaintiff's cost.

Finally, Jefferson Pilot and DMS have fully responded to Defendant's discovery requests.  As set forth herein, no additional supplementation is required.

It must also be noted that many of the issues raised by Defendant have been resolved.  A verification page will be provided to Defendant this week, and the surveillance sought by Defendant has been produced.  His Motion to Compel must be denied.

## TABLE OF CONTENTS

I.    INTRODUCTION                                                           1

II.   SUMMARY OF THE ARGUMENT                                  2
II.   REQUESTED DISCOVERY                                        5

      A.    Electronic Discovery                                           6

      B.    Privilege Log                                                     10

      C.    Depositions                                                      11

            1.    Deposition of Robert Maxwell.                        11

            2.    Depositions of Mr. Mills and Mr. Hughes.         12

            3.    Deposition of Rule 30(b)(6) Witness.               13

            4.    Depositions of Attorneys for Jefferson-Pilot and Employer's    14
                  Reinsurance Corporation.

|   |   | a. | *Boone v. Vanliner* is a limited exception to the general rule that attorney-client and work product documents may not be discovered. | 16 |
|   |   | b. | Even if *Boone* applies, many of the attorney-client privileged documents remain protected | 18 |
|   |   | c. | Mr. Kearney's assertion that everything before the filing of suit is discoverable is blatantly wrong | 18 |
|   |   | d. | Application of Boone requires bifurcation of the bad faith claim. | 19 |
|   | D. | Verification | | 20 |
|   | E. | Additional Costs | | 20 |
|   | F. | Documents To Be Produced | | 21 |
|   | G. | Interrogatories | | 34 |
| IV. | | CONCLUSION | | 39 |
| V. | | CERTIFICATE OF SERVICE | | 41 |

**III.**     **REQUESTED DISCOVERY**

As a threshold matter, the great majority of the onerous discovery to which Plaintiff has objected is simply not relevant to the simple contract dispute before the Court. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence sought during discovery need not necessarily be admissible; but if it is not admissible the information sought must appear to be "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Defendant must at least establish that the overbroad discovery he seeks appears to be reasonably calculated to lead to the discovery of admissible evidence.

These boundaries, along with the claims and defenses of the parties, demonstrate that discovery in the present action should be relatively simple and straightforward. Unfortunately, though, Defendant has attempted to leverage a simple contract dispute into an opportunity to delve into completely extraneous matters, including privileged communications, individual's private business, and details about the inner workings of the plaintiff companies. If Defendant is permitted to proceed with his attempted discovery, the costs of this litigation will be multiplied exponentially, Jefferson Pilot and DMS will be unfairly prejudiced and harassed, proprietary information that is irrelevant to this dispute will be revealed and sensitive confidential information regarding third parties who are not parties to this lawsuit will be revealed in violation of their privacy rights.

**A.  Electronic Discovery**

In his Second Motion to Compel, Mr. Kearney has requested that DMS undertake production of electronic information. He does not identify which document request he seeks supplementation of, however. Document request number one is in fact limited to "each and every document contained in the claims file of Defendant." There is no explicit request for electronic information.

All documents relevant to Mr. Kearney's claim for benefits are contained within his claims file. With the exceptions discussed herein, Mr. Kearney's claims file has been produced. Mr. Kearney now seeks to expand his original discovery request to include Jefferson-Pilot's and DMS' "network, its employees' hard drives or its back-up tapes." Most important is the fact that this information was never requested during discovery. Moreover, there is no relevant electronically stored information that could be produced without significant prejudice to DMS and Jefferson Pilot.

Defendant ignores the fact that he did not request the electronic information in his document requests and instead argues that Rule 34 and an earlier case in the Southern District of Ohio in which both counsel for Plaintiff and counsel for Defendant participated, *Jeffries v. Centre Life, et al.*, Case No. 02-351, merit this discovery. Mr. Kearney, through his counsel, references the *Jeffries* case as justification for his untimely request that DMS undertake the extremely costly and overburdensome task of recreating remotely-stored electronic information. In fact, as the *Jeffries* case revealed, this task is an exercise in futility. There was nothing of consequence revealed in the electronic information ordered to be produced in the *Jeffries* case.[2]

In his latest Motion to Compel, Mr. Kearney requests production of electronic information stored on Jefferson-Pilot's and DMS' networks, employees' hard drives or back-up tapes. Defendant is correct that this issue has been addressed in an earlier case. In that case, DMS spent in excess of $47,000.00 to undertake the electronic discovery sought by the plaintiff. It was also correct that this was done at the order of the Court. What Defendant neglects to mention is that the information yielded was fruitless. In fact, it appears that the request for such information was simply done to harass DMS.

In the *Jeffries* case, Defendant's counsel in this case, Mr. Roberts, advised that it was necessary for him or a representative to participate directly in the tape recovery and search of the database. He was advised in November 2003 that the tapes were ready to be searched. He is correct that DMS resisted undertaking the expense of this search. It did so at the Court's Order. Once Mr. Roberts succeeded in requiring DMS to expend a great deal of money, however, he did nothing more with it. A couple of weeks before trial was scheduled, he finally responded to

---

[2] Pursuant to the tentative settlement plan discussed between the parties, each party is to bear its own costs. Had the case progressed, DMS intended to file a motion to shift the costs of this useless production back to the plaintiff in that case. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358, 98 S. Ct. 2380 (1978).

DMS' notifications to him that the information was ready for his review.  Rather than expending

costs to go to Massachusetts and undertake the search, as was contemplated by the Court and

requested by him, he asked that DMS undertake the search.  The search yielded nothing relevant

to his bad faith claim and, judging from review of Mr. Roberts' proposed exhibits in that case,

none of it was intended for use at the trial of this matter.  It was simply an exercise on behalf of

Mr. Roberts to see if he could require DMS to expend a great deal of money.

Moreover, the argument in support of requiring the electronic information in the *Jeffries*

case was at least premised on the bad faith claim.  Here, the bad faith claim alleged by

Mr. Kearney is simply retaliatory.  It must be remembered that this case is a declaratory

judgment action based on Jefferson-Pilot's request for the Court to determine that it had

erroneously provided some benefits under Mr. Kearney's policy.  Jefferson-Pilot admits that it

made a mistake in the application of the policy terms.  It has asked the Court to declare that it

need not continue this mistake *ad infinitum*.  The mistake has been discovered and

Jefferson-Pilot wishes to correct it.  Mr. Kearney seeks to perpetuate the mistake.

In an attempt to distract the Court from the true nature of this contractual action,

Mr. Kearney has filed a Johnny-Come-Lately bad faith claim.  Mr. Kearney is a sophisticated

user of insurance products.  If he truly felt he had a genuine bad faith action, clearly he would

have brought it on his own.  There can be no question that he in fact does not have a bad faith

action.  He has been and continues to be paid disability benefits.  There is no denial of benefits at

issue.

In light of the fact that this is a pure contractual question, Mr. Kearney's quest for

overburdensome and extensive discovery is all the more onerous.  This is even more so

considering that Mr. Kearney's benefits have been paid and are being paid.  The question of

whether discovery sought creates an undue burden is answered by a balancing test. The

following factors are considered: (1) the specificity of the discovery request; (2) the likelihood

of discovering critical information; (3) the availability of information from other sources; (4) the

purposes for which the responding party maintains the requested data; (5) the relative benefit to

the parties of obtaining the information; (6) the total cost associated with the production; (7) the

relative ability of each party to control costs and its incentive to do so; and (8) the resources

available to each party. *See Rowe Entertainment, Inc. v. The William Morris Agency, Inc.*, 205

F.R.D. 421, 428-29 (S.D.N.Y. 2002); *see also* Fed. R. Civ. P. 26(b)(2)(iii).

      This situation is unique because the likelihood of discovering critical information and the

relative benefit to the parties of obtaining the information are often factors to which speculation

is applied. In this case, however, because of the history of counsel for the parties, it is known to

all that the likelihood of obtaining critical information is none. Mr. Kearney's counsel has been

down this road before with DMS. DMS does not store its data in the manner sought by

Defendant. It stores it simply for disaster recovery and the costs of retrieving stored information

is extraordinary. Moreover, the electronic files of DMS do not contain accounting of daily

information. They only show a "snapshot" of the electronic data on the system at the end of the

month. Any relevant electric data would already be in the claims file. With regard to Jefferson

Pilot, the time period during which it handled the claim is so long ago, the likelihood of

retrieving any information, let alone relevant, is even less.

      Where a party can make a good faith argument that they are likely to discover critical

information, production of electronic data has sometimes been ordered. In this case, the parties

already know that they will not discover critical information. In the *Jeffries* case, Mr. Kearney's

counsel made the same argument that evidence of bad faith was stored on the electronic data

maintained by DMS.  No evidence of bad faith was found in that case and no evidence of bad faith will be found in this case.  Mr. Kearney's request for the costly and overburdensome production of electronic data is simply not well taken and must be denied, particularly where Mr. Kearney's benefits continue to be paid.

Finally, the costs or providing the electronic discovery are extraordinary.  In addition to the per tape cost of simply retrieving the tapes from storage, the process of recovery  the tapes in terms of man hours is high.  In the *Jeffries* case, for example, data recovery cost in excess of $47,000.00.  Mr. Kearney's claim covers an even larger time period.  In light of the fact that the *Jeffries* case has demonstrated there is no relevant data stored, the cost is not justified.

### B.     Privilege Log

A privilege log has been compiled and was produced to Mr. Kearney's counsel on May 13, 2004.  Mr. Kearney argues that the privilege log is insufficient.  With the exception of 3421-3423 and 3788-89, which are internal communications of Plaintiff's former counsel, the remainder of the documents consists of communications to and from counsel as well as attorney work product.  No other explanation is required.  To disclose more, such as the nature of the communications, will reveal protected information.

### C.     Depositions

Mr. Kearney has requested the deposition of in-house counsel for Jefferson-Pilot, an additional Jefferson-Pilot 30(b)(6) deposition, the deposition of an ill former Jefferson-Pilot employee who has been retired and on disability for a decade, the deposition of in-house counsel

for Employers Reinsurance Corporation, and the continued depositions of previously produced witnesses. A separate Motion for Protective Order has been filed and is incorporated by reference.

The issue before the Court is the correct application of the contract between the parties. The opinion of the attorneys for any party as to how the contract should be interpreted is not dispositive of this issue. With regard to Defendant's retaliatory bad faith allegations, any communications between counsel regarding the bad faith issue was necessarily a matter discussed in anticipation of litigation. The bad faith issues were not raised until after Jefferson-Pilot filed its declaratory judgment action. As such, there are no communications that would be discoverable and no reason for their depositions to go forward.

1.    **Deposition of Robert Maxwell.**

Mr. Maxwell is an elderly gentleman who is not well either physically or mentally. He is home-bound and wheelchair-bound. Representatives from DMS and Jefferson-Pilot decided that subjecting Mr. Maxwell to a deposition would be cruel and, because he could not provide any substantive information due to his deteriorating condition, would not aid in developing the issues in this case. Although counsel for Mr. Kearney exhibits no sympathy or compassion for Mr. Maxwell's deteriorated condition and demands that Mr. Maxwell be subjected to the rigors of cross-examination, Jefferson-Pilot and DMS respectfully request the Court protect Mr. Maxwell and bar his deposition.

There is no relevant information that Mr. Maxwell can provide. With regard to the contract issue, the contract says what it says. Jefferson-Pilot paid the claim; albeit erroneously as has now been discovered. Mr. Maxwell cannot offer any relevant information regarding the application of the contract that is any different from the testimony of the other Jefferson-Pilot

employees already deposed.  With regard to the bad faith claim, any involvement by Mr. Maxwell was well more than four years ago and therefore barred by statute.

### 2. Depositions of Mr. Mills and Mr. Hughes.

At Mr. Roberts' request and pursuant to his Notices, two days were allotted for the depositions of Mr. Mills, Mr. Ditmar, a 30(b)(6) representative, Mr. Hughes, Mr. Bonsall and Ms. Beattie.  These depositions were scheduled to take place and in fact did take place on May 13 and 14, 2004 in Springfield, Massachusetts.  Plaintiff bore the cost of opposing counsel's travel and lodging.  When it appeared that the depositions were running longer than Mr. Roberts had anticipated, Mr. Ellis offered to stay and complete the depositions.  *See* Exhibit A Declaration of William R. Ellis.  There was a later flight that counsel could have taken.  *Id.* Mr. Roberts refused.  *Id.*  Despite the fact that the witnesses were prepared and available, Mr. Roberts chose to end Mr. Mills' deposition and return to Cincinnati.  He did not make any attempt to take Mr. Hughes' nor Ms. Beattie's deposition.

Defendant now seeks to require Jefferson-Pilot and DMS to incur the additional cost of completing at most less than two hours of Mr. Mills' deposition and Mr. Hughes' deposition. This is unreasonable.  Jefferson-Pilot and DMS cannot be required to bring witnesses to Cincinnati for depositions when it previously made those witnesses available to counsel for Mr. Kearney in Springfield, Massachusetts, at the cost of Plaintiff and in compliance with the Court's Order.  The decision of counsel for Mr. Kearney to return to Cincinnati without completing the depositions was at his own peril.

DMS and Jefferson Pilot do not object to the completion of Mr. Mills' deposition and the taking of Mr. Hughes' deposition in theory.  However, if these depositions go forward, they should take place in Springfield, Massachusetts and Mr. Kearney should bear the costs of

Plaintiff's counsel's travel.  These depositions could have and should have been completed when all parties were in Springfield, Massachusetts.

    **3.**        **Deposition of Rule 30(b)(6) Witness.**

On May 6, 2004, Defendant took the deposition of Valerie Loftin pursuant to a 30(b)(6) Notice served by Defendant on Jefferson-Pilot.  Ms. Loftin is Vice President of Claims for Jefferson-Pilot.  *See* Exhibit B, Loftin deposition at p. 8.  During the course of Ms. Loftin's deposition, counsel for Defendant took issue with the fact that she did not know all of the information to which he sought answers.  In particular, he has now re-noticed a 30(b)(6) deposition for someone at Jefferson-Pilot with knowledge of DMS' administration of Mr. Kearney's claim, communications between Jefferson-Pilot and DMS, DMS' claims process and the answers to interrogatories and production of documents.  Ms. Loftin testified that Jefferson-Pilot does not directly discuss the handling of individual Jefferson-Pilot claims with DMS.  *Id.* at p. 38.  She also testified that she is the person at Jefferson-Pilot with the most knowledge of the DMS relationship.  *See id.* at p. 98.  As Ms. Loftin testified, DMS administers all claims on Jefferson-Pilot policies that are reinsured through ERC.  *Id.* at p. 27.  Jefferson-Pilot is no longer involved in the day-to-day administration of these claims.  Therefore, no one at Jefferson-Pilot is capable of responding to requests 3 and 4.

    With respect to requests 1 and 2 regarding the relationship and communications between DMS and Jefferson-Pilot, Ms. Loftin has already responded.  The fact that her answers did not result in a bad faith smoking gun as apparently hoped for by Mr. Kearney, does not mean her answers were not sufficient.  Finally, with regard to the answers to interrogatories and production of documents, these interrogatories were not verified by Ms. Loftin.  These interrogatories were in fact not verified by anyone at Jefferson-Pilot since the information sought

related to information held by DMS. As Ms. Loftin testified, the information came from

in-house counsel's conversations with the DMS examiners who handled the file. *Id.* at p. 117.

Jefferson-Pilot has produced a person with the most knowledge possible on all of the topics

within its knowledge and has complied to the best of its ability. In addition, the handling of

Mr. Kearney's claim was the subject of the depositions of the other witnesses and thus

Mr. Kearney's request for a 30(b)(6) witness as to that issue has also been satisfied. A second

30(b)(6) deposition should not be allowed.

**4. Depositions of Attorneys for Jefferson-Pilot and Employer's Reinsurance Corporation.**

Defendant has also noticed the depositions of Stephanie Farabow, William Dempsey and

Geraldine Johnson. Ms. Farabow is in-house counsel for Jefferson-Pilot Life Insurance

Company. Mr. Dempsey is in-house counsel for Employers Reinsurance Corporation. As a

threshold matter, Employers Reinsurance Corporation is not a party to this case and the filing of

a Notice is insufficient to compel Mr. Dempsey's deposition. Additionally, Defendant has

attempted to notice the deposition of Geraldine Johnson who was former outside counsel for

Jefferson-Pilot, DMS and Employer's Reinsurance. These persons are all attorneys and may not

be deposed in this case. Fed. R. Civ. P. 26(b)(3). Any information they may have is subject to

attorney-client and/or work product privilege. To require their attendance at deposition is simply

an exercise in futility and done only to harass Jefferson-Pilot and DMS.

In his Second Motion to Compel, Defendant has argued that the attorney-client privilege

does not attach to communications between Ms. Farabow, Mr. Dempsey and/or Ms. Johnson

because there is no attorney-client relationship. The Ohio Revised Code states that a client is "a

person, firm, partnership, corporation, or other association that, directly or through any

representative, consults an attorney for the purpose of retaining the attorney or securing legal

service or advice from him in his professional capacity, or consults an attorney employee for

legal service or advice, and who communicates, either directly or through an agent, employee, or

other representative, with such attorney." O.R.C. § 2317.021.

The definition of a client is any corporation or individual who consults an attorney for

legal advice. There can be no question that Ms. Farabow, Ms. Johnson and Mr. Dempsey have

all been consulted for legal advice. Additionally, Defendant has argued that there was no

attorney-client relationship between Mr. Dempsey and Mr. Hughes or Mr. Mills; between

Ms. Farabow and Mr. Hughes or Mr. Mills; between Mr. Dempsey and Ms. Farabow; or between

Mr. Dempsey and Ms. Johnson. Defendant fails to provide the basis for his conclusion and

simply states that three-way communications between these individuals are not privileged. The

presence of other attorneys in a privileged communication does not destroy the privilege.

Mr. Dempsey and Ms. Farabow serve in the capacity of counsel in their respective corporations.

Their communications between themselves and with representatives of JP, ERC and DMS are

privileged and not discoverable.

The question of Ms. Johnson's privilege is even clearer. She is a member of a law firm

retained to provide legal advice. There can be no question that her communications are

protected and that she cannot be deposed. Moreover, all communications with Ms. Johnson,

Ms. Farabow and/or Mr. Dempsey are privileged.

    a.    ***Boone v. Vanliner* is a limited exception to the general rule that attorney-client and work product documents may not be discovered.**

The attorney-client and/or the work product privilege are well recognized in the law to

provide for and encourage the open and frank communication between counsel and client and to

protect the work product of both in preparing for litigation. Mr. Kearney argues, however, that

he can depose the attorneys involved in this case because privilege does not apply. The law

asserted by Mr. Kearney regarding the discovery of privileged materials is not applicable to this case. In *Boone v. Vanliner Ins. Co.*, 91 Ohio St. 3d 209 (2001), the Ohio Supreme Court held that attorney-client communications regarding coverage under a UIM (underinsured motorist) policy are not protected prior to the date of the denial of coverage. *Id.* at syllabus. The key issue in *Boone* was whether the plaintiff qualified as an insured under policy. *Id.* at 210. The insurer determined that the plaintiff did not qualify as an insured and therefore denied coverage under the UIM policy. *Id.* The plaintiff sued under a "bad faith" theory of liability and sought discovery of the claims file. *Id.* at 211.

*Boone* is not applicable to this case because Jefferson-Pilot has not denied coverage under Mr. Kearney's disability insurance policy. Rather, Jefferson-Pilot seeks to correct an overpayment of benefits under the policy. It sought the advice of Counsel since the discovery of the overpayment. It has continued to pay Mr. Kearney his monthly benefits at what it believes to be an erroneous amount of $6,786 rather then $3,500 maximum aggregate amount Mr. Kearney is entitled to under the policies.

The exception to the general rule that documents which are attorney-client communications or attorney work product may not be discovered is a very narrow one in *Boone*. The syllabus of the Court reads:

> In an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage.

*See* syllabus ¶ 1. The Court explained that "at that stage of the claims handling, the claims file materials will not contain work product, i.e., things prepared in anticipation of litigation, because at that point it has not yet been determined whether coverage exists." *See id.* at p. 158. Mr. Kearney's situation is distinguishable. In this case, the claim is being paid. The only

question is the amount.  Any analysis of the coverage action is necessarily tied to the declaratory

judgment action.  All communications between counsel with regard to Mr. Kearney's issue went

to not whether coverage existed but whether the coverage had been erroneously calculated.  In

other words, the conversations and documents between counsel addressed whether an

overpayment had been made and what should be done about any overpayment.  The question of

extent of coverage was therefore part and parcel of the question of what should be done.

Litigation was in fact anticipated throughout the coverage discussions.  Litigation would

potentially be necessary, in the form of a declaratory judgment action, and therefore was

anticipated if it was determined that there was an overpayment.  The narrow exception of *Boone*

therefore does not apply.  The reasoning of *Boone* is that there can be no anticipation of

litigation, and therefore no attorney client protection, until a decision regarding denial is made.

This circumstance is different when the question presented to the attorneys was whether there

had been an overpayment and how it should be resolved.

**b.      Even if *Boone* applies, many of the attorney-client privileged documents remain protected.**

If the limited exception in *Boone* is expanded to apply to this type of case, then the Court is forced to make an arbitrary decision as to when the attorney client privilege protects Jefferson-Pilot.  Under *Boone's* "denial" trigger point, the most analogous point in this case is the date upon which Jefferson-Pilot informed Mr. Kearney that he was being overpaid under his policy. At this point, Mr. Kearney was told that he was entitled only to his standard benefit under "residual disability" in his policy and that the "increase in benefits" clause under "total disability" did not apply.  Jefferson-Pilot disclosed the overpayment mistake to Mr. Kearney in October 2001.  Accordingly, all attorney-client communications after that date are protected from disclosure under *Boone*.

**c.      Mr. Kearney's assertion that everything before the filing of suit is discoverable is blatantly wrong.**

Even under the most liberal reading of *Boone*, the demarcation line for discoverability of attorney-client communications is the denial of coverage, ***not*** the filing of a lawsuit. Mr. Kearney incorrectly states that "Ohio provides no protection in bad faith suits to communications between an attorney and his/her client on issues relating to coverage ***before a lawsuit is filed***."  *See* Second Motion to Compel at p.4 (emphasis added).  This is not the test. Even a cursory reading of the syllabus demonstrates that the Ohio Supreme Court allowed protection for attorney-client privilege materials at some point ***before*** the commencement of a lawsuit.  *See Boone*, 91 Ohio St. 3d at 214.

Mr. Kearney's misrepresentation of Ohio law even further demonstrates the inapplicability of *Boone* to this disability insurance case.[3]  *Boone* should be limited to the denial

---

[3] Plaintiff also relies upon *Garg v. State Auto. Mut. Ins. Co.*, 800 N.E.2d 757 (Ohio App. 2003).  Aside from the fact that this is an Ohio appellate court case, Mr. Kearney's application of *Garg* should not mislead the Court.  Although

of coverage context. On the limited facts of *Boone* and other cases where there is a denial of coverage, it is proper to apply *Boone*. In this case, the application of *Boone* becomes arbitrary and does not provide Jefferson-Pilot with any predictability as to the protections that it is afforded for consulting legal advice. Furthermore, it requires the Court to select an arbitrary date without any relationship to a "denial" of coverage under Mr. Kearney's disability insurance policy.

In this case, as explained above, the consultation with legal counsel was simultaneous with the anticipation of litigation. Counsel was contacted once the overpayment error was discovered in order to determine what could or should be done. Litigation was anticipated and *Boone* does not apply. Litigation was always anticipated especially in light of the fact that Defendant was already represented by his former Counsel, attorney Spiegel as of the fall 2001 meeting the date the overpayment was discovered.

### d.    Application of *Boone* requires bifurcation of the bad faith claim.

Finally, if Defendant's incorrect application of *Boone* is accepted, the bad faith portion of this case must be bifurcated. Plaintiff's declaratory judgment action is one of contract interpretation. No additional discovery is needed on this issue. Defendant's Counterclaim is for bad faith. It is in this area that his discovery requests arguably relate. If his incorrect reading of *Boone* is accepted, it must then be concluded that the bad faith portion of the case should be bifurcated.[4] In *Boone* the court recognized that it may be appropriate to stay a bad faith claim until the underlying claim has been determined. *Id.* at 157. Where, as here, disclosure of attorney-client privileged documents would inhibit the insurer's ability to defend on the

---

*Garg* focuses on privileged materials that demonstrate bad faith, *Garg* still applied the "denial of coverage" demarcation line as to what materials might be included for discovery. *Garg* does not change the clear holding of *Boone*.

[4] A separate Motion to Bifurcate will be filed.

underlying claim, "it may issue a stay of the bad faith claim and related production of discovery pending the outcome of the underlying claim." *Id.*

There can be no question that if Defendant's argument is accepted, no additional discovery of any kind should occur until after resolution of the cross-motions for summary judgment. Once those issues are resolved, and if the bad faith claim continues, any documents withheld on the basis of attorney-client work product privilege must be reviewed in camera. The only remaining discovery issues go to the bad faith claim. These discovery issues must be bifurcated from resolution of the underlying contractual claim.

### D.    Verification

Current counsel is unfortunately at a loss to explain why a verification page was not previously provided. Robert Mills will sign a verification page which will be sent to counsel for Defendant this week.

### E.    Additional Costs

Counsel for Mr. Kearney also seeks what he calls the increased fees associated with the North Carolina and Massachusetts depositions. These depositions were scheduled at the request of Mr. Kearney's counsel and in conformance with his demands. Plaintiff has already borne the cost of counsel's travel and lodging. It cannot be required to pay for his preparation as well.

For example, Defendant's counsel complains that he did not have a direct flight to North Carolina although Plaintiff's counsel did. At Defendant's counsel's request, the depositions in North Carolina began first thing in the morning. Plaintiff's counsel traveled to North Carolina prior to the depositions. As indicated in the e-mail sent by Mr. Roberts, he asked that "when you purchase my tickets, set me up with the first flight out on the 6th. We can begin with the first depo. 90 minutes after I arrive at the airport (what town is it?)." *See* Exhibit C 4/29/04 e-mail

correspondence to Ms. Zerges from Mr. Roberts.  In conformance with Mr. Roberts' request, he

was on a 5:55 a.m. flight from Cincinnati to North Carolina.   There was a stop in Pittsburgh.

This was unavoidable.  Had Defendant's counsel wanted to leave with Plaintiff's counsel,

perhaps he could have been on a direct flight.  This is not a cost properly charged to Plaintiff.

Moreover, there is no requirement that Plaintiff bear the costs of Mr. Roberts' travel

time.   This is not a cost properly borne by Plaintiff nor one ordered by the Court.

### F. Documents To Be Produced

Initially, Jefferson-Pilot and DMS produced the vast majority of its claim file, which

encompasses documents bates numbered 0001 to 3786.  See Exhibit D, Responses to

Interrogatories and Document Requests.  Some pages were removed for privilege.  The

underwriting file and surveillance reports were also not produced.  In its responses, Plaintiff

agreed to produce the surveillance after Defendant's deposition.  Recently, DMS and Jefferson-

Pilot produced the underwriting file in its entirety as requested in Document Request No. 9.  The

surveillance reports on Mr. Kearney responsive to several requests, including Document Request

No. 16, were produced via hand delivery following Mr. Kearney's deposition on May 10, 2004.

All videotapes have now been produced.  Thus far, Jefferson-Pilot and DMS have produced in

excess of 3,500 pages of documents.

Mr. Kearney contends, however, that this document production is insufficient to satisfy

his requests.  The following addresses each of Mr. Kearney's complaints regarding the Jefferson-

Pilot and DMS document production.  Each of these complaints is derived from a September 3,

2003 letter from Mr. Matan to prior counsel for Jefferson-Pilot and DMS ("Matan Letter"), and

attached as Exhibit 3 to Defendant's Motion to Compel.

### Production Request No. 1:

> Produce without subtraction or deletion, including a copy of
> the claims file jacket or order each and every document
> contained in the claims file.

All of the documents contained in the claim file are all of the documents responsive to this request.  Plaintiff's previous counsel represented to Plaintiff's current counsel that with the exception of privileged and surveillance documents, as well as the underwriting file, the claim file had been produced.  The surveillance reports and underwriting file in the possession of current counsel has now been produced.  Unfortunately it appears that in the first production, some back pages were miscopied by previous counsel.  All of the surveillance in the possession of current counsel has been produced after Mr. Kearney's deposition.  The additional request in the Matan Letter seeking production of internal memos or other documents seeks documents protected by the attorney/client privilege.  All of the privileged documents are listed in the privilege log.  Any information not contained in the claim file is not responsive to this request and there is no additional information that can be produced.  It is admitted that during the course of copying this voluminous claim file the reverse side of several two-sided documents was not copied.  These pages containing printed information in the possession of current counsel have now been produced.

**Production Request No. 2:**

> Produce every item of correspondence, memo, or other
> writing in your possession and/or the possession of DMS,
> that relates to Defendant Kearney.  Correspondence shall
> mean and be defined as documents as they are set forth in the
> definition section preceding these discovery Requests,
> specifically Paragraphs 5 and 6.  If you claim some of such
> documents are privileged, attach a privilege log describing
> such document(s).

Current counsel believes that all of the correspondence relevant to this case and not privileged is part of the claim file and has been produced.[5]  The privilege log details the protected correspondence.  In the Matan Letter, Mr. Kearney makes an additional request for letters from Employer's Reinsurance Company ("ERC").  ERC is not a party, and no discovery has been submitted to them.

**Production Request No. 3:**

> Each and every document that relates to your contractual relationship with DMS whether or not they are formal documents, correspondence, letters, memoranda, e-mails, memorialization of telephone conferences or meetings, or other documents showing the relationship between the two.

This Request arguably seeks production of an incalculable number of documents because the contractual relationship between DMS and Jefferson-Pilot is arguably "related" every time DMS and Jefferson-Pilot communicate.  Obviously, this Request is overly broad and seeks privileged communications and irrelevant information.  More importantly, some of the information relates to proprietary business practices and data that is not public and would be damaging to both DMS and Jefferson-Pilot if it fell into the hands of competitors.  There is no question that DMS handled Mr. Kearney's claim on behalf of Jefferson-Pilot.  The details of the relationship between the two, however, are not relevant as to whether the "increase in benefits" provision in the total disability portion of the policy or the social security supplement is applicable to the residual disability benefit.  Nothing in the contractual relationship speaks to this issue.  Only the plain language of the policies demonstrate that Mr. Kearney is not entitled to an annual increase in benefits or the social security supplement while he is receiving residual disability benefits.

---

[5] Please see the caveat regarding product in Request No. 1.

**Production Request No. 4:**

Produce any correspondence, letters, understandings, schedules, e-mails, or documents relating to the method of compensation to DMS and/or claims handlers of DMS or Defendant, including any bonuses, incentives, trips, paid vacations, or monetary payments of any type and description.

This case is not about a denial. It is simply a matter of applying the contract language. DMS and Jefferson-Pilot are trying to correct an overpayment. Mr. Kearney continues to receive residual disability benefits under the policy.

How DMS pays its claims handlers is not relevant to whether Mr. Kearney is entitled to the "increase in benefits" provision in the total disability portion of his policy and the social security supplement when he is receiving residual disability benefits. Mr. Kearney has not stated a basis to pass the threshold relevancy requirement under Fed. R. Civ. P. 26(b)(1). The test is whether the particular information sought is relevant to a claim or defense. Compensation to DMS' claims handlers is not relevant to any claim or defense in this case. Quite simply, if the "increase in benefits" language is not in the residual disability benefit portion of the policy, he is not entitled to annual increases in benefits while he remains residually disabled. Moreover, it is inconceivable that Jefferson-Pilot could be acting in bad faith while continuing to overpay the Mr. Kearney's claim or for seeking the Court's determination or to Plaintiff's interpretation of defendants Policies relative to this issue.

**Production Request No. 5:**

> Produce any documents that relate to the criteria used by plaintiff to
> refer cases to DMS for handling, including notes, memoranda, e-
> mails, messages, or any documents of any type and description.

There are no documents responsive to this Request and, despite Plaintiff's contentions,

there were no written criteria for the initial transfer of cases to DMS for handling. *See*

Deposition of Valerie Loftin. On a side note, Jefferson-Pilot no longer handles any of its claims

that are reinsured by Employer's Reinsurance.

**Production Request No. 6:**

> Produce copies of all sanctions, fines, penalties, limitations
> imposed, consent decrees, investigations, fines or letters of
> reprimand imposed upon Plaintiff and/or DMS, by any state
> insurance commissioner, insurance regulator or state or federal
> government office or official in the last ten (10) years. If there are
> none please state so clearly.

Again, Mr. Kearny cannot overcome the relevancy threshold explicitly stated in Fed. R.

Civ. P. 26(b)(1). Any fines levied by government regulatory agencies are based upon regulatory

statutes and not tort law. If there is no similarity between the standards under the regulatory acts

and the elements of proof required to maintain a claim for bad faith under Ohio law, then any

fines or penalties by state insurance commissioners are totally irrelevant to the issue of bad faith.

At the very least, Mr. Kearney needs to show that there is a connection between insurance

regulations and the elements of a bad faith claim. Even if relevant, this request is overly broad.

Ohio law applies to the elements of proof required under Mr. Kearney's bad faith claim.

Accordingly, the only relevant fines would be those levied by state insurance regulators in Ohio.

In the past 10 years neither DMS nor Jefferson-Pilot has been fined, investigated, sanctioned or

penalized by insurance regulators in Ohio.

**Production Request No. 10:**

The complete claims manuals and/or procedures manuals which sets forth the company practices or policies regarding the handling, processing and/or investigation of claims submitted by your insured and which has or should have been utilized by you with respect to the Plaintiff's claim or claims, submitted pursuant to the above referenced policies of insurance as handled, processed, and/or investigated.  Include the following:

a)  All additions, revisions, deletions or other changes that have been made in the above referenced claims manuals and/or procedure manuals from the time Defendant's claim was submitted up to and including the present;

b)  Any other documents, including but not limited to, inter-office memoranda, notes, files or reports outlined or describing procedures for claims handling, processing and investigation and which were or should have been utilized by you at the time Defendant's claim was handled, processed and/or investigated.

There is no claims manual.  As stated in its original response to these document requests,

each claim is handled and administered on a case- by- case basis because each claim is unique.

With respect to sub-part b, this information is protected by the attorney/client privilege.  Those

materials are listed on the privilege log.  More importantly, the policies themselves are most

instructive because claims are handled based upon the policy language.

**Production Request No. 11:**

From 1990 to date, any and all writings and/or literature which constitute all advertising, sales, promotional and/or marketing materials, including sales, promotional, marketing and/or advertising brochures, pamphlets, memoranda and/or letters, or other type of "writings" whatsoever, used by your company to sell, promote, market and/or advertise the type of insurance coverage which is the subject matter of this action to the general public, including all such materials and instructions and memoranda for use by and instructions to the agents who would be selling these disability policies.  This Request includes television and radio commercials and transcripts thereof.

Sales and promotional literature to the general public fails the Fed. R. Civ. P. Rule 26(b)(1) threshold relevancy requirement.  Most importantly, there is no claim by Mr. Kearney that he justifiably relied upon promotional materials to his detriment.  Thus, sales and promotional materials did not affect Mr. Kearney's understanding of the benefit provisions of his policies.  Moreover, the language of Mr. Kearney's disability insurance policies controls above and beyond any sales and promotional materials because, as a matter of common sense, the disability insurance policies were issued after Mr. Kearney would have seen any of these materials.  Furthermore, as a matter of law the general provisions contained in Mr. Kearney's policies clearly provide that "**This policy** with the application and attached papers, if any, is the entire **contract** between you and Jefferson-Pilot.  No change in this policy will be effective until approved by an Executive Officer of Jefferson-Pilot.  This approval must be attached to this policy.  No agent may change this policy or waive any of its provisions." (Emphasis added) Therefore, these materials do not affect whether an "increase in benefits" provision exists in Mr. Kearney's policy under the residual disability benefit portion.  Accordingly, the requested sales and promotional information is completely irrelevant to whether Mr. Kearney's policies contain an "increase in benefits" provision under the residual disability benefit.

> **Production Request No. 12:**
>
> Any and all medical, vocational, file reviews, or other
> reports or guides used or produced or used by you with
> regard to the claim of the Defendant Kearney.

Mr. Kearney claims that certain documents were missing from the claims file that he expected to see.  With regard to the surveillance, these documents have now been produced.  Mr. Kearney's desire for other documents or unsubstantiated belief that they should exist does

not support his motion to compel.  Plaintiff is not required to produce documents that do not

exist.

**Production Request No. 14:**

Materials or guidelines which refer to the Plaintiff's and/or
DMS's claims handling procedures and/or criteria.  Any and
all claims training manuals.

**Production Request No. 22:**

Produce all notes, outlines, briefing packets, course
descriptions, instructors, lesson plan or speakers' documents
or notes, etc. concerning the attendance of participation of
any of Plaintiff's or DMS' personnel at any inter-company
or intra-company claims conference, class, meetings,
program, continuing education credit course (live, or via
written or electronic correspondence), retreat, etc., any
Claims Conference 1995 and similar events featuring
sessions on Individual Disability Income, Group Long Term
Disability and Disability Roundtable and "ERISA—New
Rules, New Legislation?" for the period 1/1/90 through to
present.

Both of these document requests seek similar information and both are substantially

related to Document Request No. 10.  As a threshold matter, these requests are extremely over

broad and burdensome.  They have no relevance to this case or Mr. Kearney's policies.

Moreover, many of the documents contemplated by this request are confidential and proprietary.

Finally, Mr. Kearney contends that once something is put in writing and given to a claims

handler that it loses the cloak of privilege.  He provides no legal support for this theory.  Rather,

the materials used by Jefferson-Pilot and DMS to communicate with claims handlers is

privileged if it fits within the definition of a privileged communication.  To the extent these

documents exist, they are listed in the privilege log.  This request also encompasses third-party

seminar materials that claims handlers may possess individually.  This is extremely overly broad.

Whether each individual claims handler relied upon these materials in handling Mr. Kearney's

claim is a question for each individual person.  Jefferson-Pilot and DMS agreed to produce

nonprivileged materials related to training and any responsive materials will be produced.

**Production Request No. 15:**

Any and all treatises, manuals, articles, references, articles,
handbooks, memoranda, and other documents of any kind,
nature or description which were used during the handling
of Defendant's claim, including but not limited to, any
medical or vocational reference materials.

This Document Request clearly seeks some materials protected by the attorney/client

privilege and the work/product doctrine.  To the extent it requests materials that can be

disclosed, they would be part of the claims file or referenced in the claims file.  Any medical

references would be included in the medical records or medical record reviews.  DMS and

Jefferson-Pilot cannot be any more specific.  Mr. Kearney will simply have to take the time to

analyze the claims file.

**Production Request No. 17:**

Any individual, personal or desk files, activity logs or other
diary notes of the adjusters or claims handlers who, either
directly or indirectly, handled Defendant's claims.

In the Matan Letter, Mr. Kearney expands his request beyond what is stated in this

Document Request.  He seeks the individual calendars of "Mills and others."  DMS and

Jefferson-Pilot produced the claims file which contains all of the documents responsive to this

request.  Mr. Kearney has not established the relevance and admissibility of any other

documents.

**Production Request No. 20:**

Produce a copy of each and every complaint and/or
counterclaim filed in any court against plaintiff alleging

breach of contract or bad faith for non-payment or delay of
disability payments or benefits during the past 10 years.

**Production Request No. 21:**

Produce a copy of each and every complaint filed by Plaintiff
for Declaratory judgment on or with respect to any disability
policy, whether in any state court or federal court.

Both of these requests seek information that is irrelevant to the issues in this case.

Whether Jefferson-Pilot has ever filed a declaratory judgment action based upon one of its

policies or whether Jefferson-Pilot has ever been sued by one of its policyholders is irrelevant to

the claims and defenses in this action. Furthermore, these requests range from all lawsuits filed

by anyone against either Jefferson Pilot or DMS (including lawsuits filed against DMS with

regard to claims brought by insureds against other insurers where neither the insureds not the

insurers have any link to this lawsuit). It is completely unreasonable to expect DMS and

Jefferson Pilot to disgorge data about other individuals. Such information is irrelevant, and is

private. Mr. Kearney's desire to pursue unfettered discovery does not outweigh the privacy

interests of former litigants. The former litigants in question sued on disability policies, and

those suits involving claims put their alleged disabilities at issue. Mr. Kearney wishes to inquire

into claims of disability brought by individuals whose claims were based on sensitive medical

information. Those individuals will no doubt not be eager to reveal any of their medical

information to third parties. Indeed, federal and state privacy regulations and both Jefferson

Pilot's and DMS' privacy pledges in accordance with such regulations, prohibit the companies

from producing this information and give the individuals the expectation and comfort that their

personal sensitive medical and financial information will not be revealed to third parties.

Moreover, to further protect the confidentiality of such information, several insureds have

requested and received confidentiality agreements from Jefferson Pilot and/or DMS.

In contrast to these strong privacy interests, Mr. Kearney's' interests are negligible. The facts of every single disability claim are unique in the type of disability presented, the circumstances in which the disability manifests itself, the restrictions the disability imposes, the nature of the appropriate and proper investigation into the disability claim and the actions of Jefferson Pilot and/or DMS took in reviewing the claim presented. Thus, discovery into specifics of various cases lacks the potential to be relevant to Mr. Kearney's claims.

Furthermore, this Court does not have jurisdiction over those third parties whose interests are directly affected by the discovery, and it would be patently unfair to promulgate an order which affects the rights of third parties who have not been given an opportunity to be heard on this matter, especially where sensitive medical details could be thrust into the public arena.

If evidence is admitted at trial concerning the claims of former litigants, Jefferson Pilot and DMS will be forced to litigate collateral issues in defending against the merits of those claims rather than concentrating on whether Mr. Kearney has been overpaid. If the Court rules that evidence on other cases is admissible at trial, such a trial could take months, if not years, of the Court's time while Jefferson Pilot and DMS defend against the merits of every single other claim brought against them, an outcome which appears even more outrageous and unfair when it is considered that the litigants in many of these cases voluntarily chose to settle their differences out of court and litigants in cases currently pending would be forced to try the issues in their cases prematurely and in a forum they did not select. Mr. Kearney has not alleged, far less demonstrated, any real need pressing enough to override the strong public policy favoring settlement of disputes and honoring the bargain struck between settling parties. *Flynn v Portland General Electric Corp.*, 1989 WL 112802 (D.Or.); *Lewis v. S.S. Baune,* 534 F.2d 1115(5th Cir. 1976)(settlement of litigation and compromise of disputed claims are favored by

court): *see also*, *McHann v. Firestone Tire and Rubber Co.*, F2d 161 (5th Cir. 1983)(denying discovery and opining that "the incentive for parties to settle cases involving many plaintiffs would be undermined if their settlement with one victim could come back to haunt them in later suits).

Additionally, Mr. Kearney's discovery and motion to compel fail to address the privacy concerns and rights of the individuals involved in these matters. The dissemination of personal, private information concerning insurance policyholders is prohibited by many state and federal privacy statutes, including the Gramm-Leach-Bliley Financial Modernization Act (GLB"), 15 U.S.C. § 6700, et seq. The GLB prohibits financial institutions (including insurance companies) from disclosing a customer's nonpublic personal information to unaffiliated third parties. Allowing plaintiff's discovery would implicate more than just Jefferson Pilot's and DMS' duties under state and federal privacy laws: it would directly impact the privacy rights of the former individual litigants themselves, individuals often with highly personal medical and psychological conditions, many of whom have chosen to settle their differences out of court and, therefore, out of the public forum. If the former litigants are forced to testify, they will have to testify about many delicate and possibly embarrassing medical and psychological conditions. Given the fact that the former litigants are not parties to this case, their privacy interests should be given additional weight. See, *Hasbrouck v. BankAmerica Housing Services,* 187 F.R.D. 453, 458 (N.D.N.Y. 1999). They will have to bear costs, annoyance and potential embarrassment of the plaintiff's requests for information, and may have to intervene in this case to protect their privacy interests. See, e.g., *Blum v. Schlegel*, 150 F.R.D. 38 (W.D.N.Y 1999); *Hasbrouck*, 187 F.R.D. at 461.

To the extent that Mr. Kearney seeks information from Jefferson Pilot and DMS concerning other lawsuits and insureds, any rulings that Jefferson Pilot or DMS must provide such information will not insulate them from a lawsuit by former litigants for breach of confidentiality provisions of any settlement agreements, as well as breach of various state and federal privacy laws which protect the confidentiality of certain personal and medical information. See *Hasbrouck*, 187 F.R.D. at 456. Furthermore, any information that Jefferson Pilot and DMS possess would most likely be contained within their litigation files and litigation departments and, therefore, would be privileged.

The only arguably relevant cases would be those addressing the issue of whether an increase in benefits provision exists in the residual disability benefit portion of Mr. Kearney's policies. There has not been a denial of benefits in this case. There has only been a mistaken overpayment of benefits. Even if the Court determined that other lawsuits might be relevant to this one, Mr. Kearney's requests are overly broad. Cases addressing the substantive law regarding breach of contract or bad faith must, at the very least, apply Ohio law.

**Production Request No. 23:**

Produce all documents, papers, notes, drafts, computations,
memoranda used and/or generated in the making of a buy
back offer of the policies of Defendant Kearney with Plaintiff
by you or by DMS.

Any information regarding the settlement offer made to Mr. Kearney by DMS is contained in the claims file.

G.    **Interrogatories**

**Interrogatory No. 1:**

Identify every individual employed by you, interviewed or
with whom a discussion has been held with regard to
Defendant and/or his claim, including, but not limited to, the
agent who wrote the policy, any private investigator
employed to investigate the claim of Defendant, and any
individual in the employ of Plaintiff and/or Disability
Management Services, Inc. ("DMS") that handled the claim
of Defendant.

In addition to the information already provided, Mr. Kearney asked Jefferson-Pilot to

confirm that additional individuals dealt with his claim.  The individuals listed in the Matan

Letter were involved with the claim and, with the exception of Robert Maxwell, have been made

available for deposition.

**Interrogatory No. 2:**

State and identify with particularity each document and/or
part of each document or every item of information upon
which the Plaintiff relied in determining that defendant is
not entitled to the disability benefits as specified in its
Complaint and when and by whom such decision was made.

Contrary to Mr. Kearney's position, Jefferson-Pilot identified the documents relied upon

to make the determination that Mr. Kearney was not entitled to an increase in benefits and

payment of the social security supplement.  Those documents are his policies.  The plain

language of the policies states that annual increases in benefits and payment of the social

security supplement are available only under the total disability portion of the policy and are not

included in the residual disability portion.  As stated in that answer to this Interrogatory,

Jefferson-Pilot and DMS also relied upon the documents contained in the claims file to

determine that Mr. Kearney was not entitled to an increase in benefits and the social security

supplement while residually disabled.

**Interrogatory No. 4:**

Identify each investigator, private investigation firm, investigation agency and/or other investigative and/or credit investigative or compilation firm used to compile data, information or facts, or give reports (oral or written) on Defendant.

The surveillance reports and videotapes in the possession of current counsel have been produced to Mr. Kearney.  DMS has been asked to look for any other reports and/or videotapes and verify if they do or do not exist as alleged by Mr. Kearney.

**Interrogatory No. 5:**

State when the Defendant's claim was referred to DMS, as third- party administrator, why it was so referred, what documents, e-mail, memoranda or correspondence accompanied such referral, what person and/or persons (with their titles and office location) were involved in the decision to make such referral, and the reasons for such referral.

Mr. Kearney's only apparent problem with Jefferson-Pilot's answer to this Interrogatory is that we did not provide documents from Mr. David Newkirk.  All documents from Mr. Newkirk are protected by the attorney/client privilege.  These documents are listed in the privilege log.

**Interrogatory No. 7:**

State the terms of any contract between DMS and the Plaintiff (oral or written), whether that has been reduced to writing, either by memorandum or formal written agreement, when signed, its location, who it was signed by and whether it was solicited by DMS and, if so, by what means.

This Interrogatory is essentially the exact same question as Document Request No. 3. The contract between Jefferson-Pilot and DMS has no relevance regarding the language in Mr. Kearney's policy. Moreover, the contract between Jefferson-Pilot and DMS is proprietary.

**Interrogatory No. 9:**

List all lawsuits or counterclaims filed by you within the last ten (10) years against any of your insureds giving the following information:

a)    Complete caption of the case, including all Plaintiffs and all Defendants;

b)    The complete name, address, telephone number, e-mail address of all counsel designating whether they are for Plaintiffs or Defendants;

c)    The disposition of each case, whether pending, settled, dismissed, or in judgment.

**Interrogatory No. 10:**

State the names of the cases against you (whether by Complaint or Counterclaim) by insureds within the last ten (10) years, giving the following information in detail:

a)    Complete caption of the case, showing all Plaintiffs and Defendants;

b)    The complete name, address, telephone number of all counsel in the case for Plaintiff and for Defendant;

c)    The disposition of each case, whether pending, settled, dismissed, or in judgment.

The Interrogatories ask for the same information encompassed in Document Request Nos. 20 and 21 See Exhibit D. The list of lawsuits filed against Jefferson-Pilot and DMS or filed by Jefferson-Pilot are irrelevant to the claims and defenses in this lawsuit.

**Interrogatory No. 11:**

State whether you have been sanctioned, fined, given
penalties, limitations imposed, consent decrees,
investigated, fines or letters of reprimand/or other action
against you by any state insurance commissioner or
regulator or any federal governmental office or official in
the last ten (10) years, including criminal, civil, or
governmental investigations and pending investigations that
plaintiff has any knowledge of. If there are none, please
state so clearly.

Again, this Interrogatory is identical to Document Request No. 6. For all of the same

reasons, this information is not discoverable.

**Interrogatory No. 13:**

State the names and title of the persons who computed,
selected or determined the amount of any "buy back" or
"settlement" offer made to defendant or his attorney John
Spiegal and state in detail how the computation or
computations selection were made, how it was initiated and
who initiated it.

This Interrogatory is identical to Document Request No. 23. All of the information

regarding the settlement offer made by Jefferson-Pilot has been produced.

**Interrogatory No. 14:**

State how many files Plaintiff and DMS maintain on
Defendant Kearney and the name of each, its location, and
the name and addresses of the custodian of each file.

The file maintained is the claim file. There is no one particular person that has custody of

Mr. Kearney's file. Jefferson-Pilot maintains a copy of the claim file and DMS is in possession

of the original claim file.

**Interrogatory No. 15:**

State the amount of reserve on Plaintiffs policies for each
year since 1993, and if it has been raised or lowered, when it
was raised or lowered in any particular year, who did it, and
why.

This Interrogatory is completely irrelevant to anything in this case. The Interrogatory requests the reserve amounts on Jefferson-Pilot's policies for each year since 1993. Mr. Kearney does not provide any explanation as to why the reserves on every policy issued by Jefferson-Pilot for the past 11 years has any bearing on the claims in this case.

Reserves set by insurance companies are irrelevant. To the extent any reserves were changed after litigation was anticipated, they are work product. *See Union Carbide Corp. v. Travelers Indemnity Co.,* 61 F.R.D. 411, 413 ("we have not discovered any authority for compelling the discovery of an insurance carrier's reserve against the liability asserted either in the principal case or in collateral claims"). *See also GECC v. DIRECTV, Inc.,* 184 F.R.D. 32, 33 (D. Conn. 1998) (loss reserve documents were privileged and not discoverable); *Fidelity and Deposit Co. of Maryland v. McCulloch,* 168 F.R.D. 516, 525 (E.D.Pa. 1996) (noting "tenuous link between reserves and actual liability given that numerous considerations factor into complying with this statutory directive. In short, setting aside reserves does not amount to an admission of liability").

To the extent that Mr. Kearney is requesting the reserves on his particular policies over the past 11 years, those amounts are irrelevant to the main issue of whether an "increase in benefits" provision exists under the residual disability benefit of his policy. Jefferson-Pilot continues to this day to pay Mr. Kearney his residual disability benefit plus the disputed increase in benefits as of the filing of the lawsuit plus the social security supplement. Mr. Kearney simply cannot explain why the reserves are relevant.

## IV.    **CONCLUSION**

The issue in this case is whether Mr. Kearney is entitled to annual increases in benefits and payment of a social security supplement while he is receiving residual disability benefits.

This question is answered simply by reading the residual disability benefit portion of his policy. Mr. Kearney's discovery seeks information that is wholly irrelevant to the claims and defenses in this case and this discovery is nothing more than harassment and a "fishing expedition" into all of Jefferson-Pilot's files.  The Court should not allow this oppressive and harassing discovery. Jefferson-Pilot and DMS have produced all of the relevant documents, they have made available all of the requested witnesses except one, and they have identified all of the privileged materials.

For the foregoing reasons, Jefferson-Pilot Life Insurance Company and Disability Management Services, Inc. respectfully request the Court deny Plaintiff Christopher L. Kearney's Motion to Compel.

Respectfully submitted,

s/ William R. Ellis
William R. Ellis (0012279)
Peter M. Burrell (0044139)
Amy Gasser Callow (0063470)
600 Vine Street, Suite 2500
Cincinnati, Ohio 45202-2491
Telephone:  (513) 852-6000
Telefax:    (513) 852-8087

Attorneys for Plaintiff
Jefferson-Pilot Life Insurance Co.

OF COUNSEL:

WOOD & LAMPING LLP

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this 15th day of June 2004.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<u>s/ William R. Ellis</u>
William R. Ellis
Attorney for Defendant

210835