UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JEFFERSON-PILOT LIFE INSURANCE COMPANY, | : | Case No. C-1-02-479 |
| | : | |
| Plaintiff, | : | (Judge Spiegel) |
| | : | (Magistrate Judge Hogan) |
| vs. | : | |
| | : | **PLAINTIFF'S REPLY** |
| CHRISTOPHER L. KEARNEY, | : | **MEMORANDUM IN SUPPORT OF** |
| | : | **ITS MOTION FOR PROTECTIVE** |
| Defendant. | : | **ORDER** |
| | : | |

**I.  Introduction**

The primary issues addressed in Defendant's Memorandum in Opposition are for discovery of information from Plaintiff's in-house and former outside counsel, the continued deposition of Mr. Mills which was begun but not completed, and an additional 30(b)(6) deposition of a Jefferson-Pilot witness.[1]  As fully explained in Plaintiff's Motion for Protective Order, Defendant's notice to take the depositions of attorneys and an additional 30(b)(6) witness must be denied.  Jefferson-Pilot and DMS do not object to the depositions of Mr. Mills and Mr. Hughes subject to the terms requested by them.  Specifically, the depositions shall take place at Defendant's cost at the principal place of business of the witnesses.

---

[1] As a threshold matter, Plaintiff is compelled to point out to the Court that there are numerous material misrepresentations in Defendant's brief.  For example, he consistently refers to the increase in benefits provision as a COLA rider that he purchased.  There is no COLA rider.  Under the terms of the total disability provision in the policy, an insured who is totally disabled is entitled to a 4% increase in benefits after 12 consecutive months of total disability.  The rider he purchased changes this increase from 4% to 7% but still requires total, not residual, disability.  To call this provision a COLA rider is intentionally misleading,

II.     Argument

    A.    **Communications Between Jefferson-Pilot, Disability Management Services, Its In-House Attorneys And Its Outside Counsel Are Privileged.**

Communications between an attorney and his or her client are privileged. Revised Code § 2317.02 creates the privilege which "is intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" *Swidler & Berlin v. United States*, 524 U.S. 399, 403, 118 S. Ct. 2081 (1998) quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677 (1981). Clients rely upon the expectation of privilege in their communications with their counsel. This privilege is not diminished or less valuable simply because the client is a corporation. The attorney-client privilege extends to firms, partnerships or corporations as a client. O.R.C. § 2317.021. Although there are limited exceptions to the privilege, they do not apply here. One is the crime-fraud exception. *State ex rel. Nix v. Cleveland*, 83 Ohio St. 3d 379, 383, 700 N.E.2d 12 (1998). Another is the *Boone* exception where the materials sought to be discovered show a lack of good faith. *Boone v. Vanliner Ins. Co.*, 91 Ohio St. 3d 209, 212, 744 N.E.2d 154, 157 (2001). The privileged documents sought by Defendant here do not fall under these exceptions.

Mr. Kearney seeks to depose in-house counsel for Jefferson-Pilot and Employers Reinsurance Corporation. From a strictly procedural standpoint, this notice was filed after the close of discovery. Discovery ended on May 1, 2004. The notice for the depositions of attorneys Johnson, Farabow, and Dempsey was dated May 19, 2004. Even if Defendant could depose the attorneys in this case, he failed to do so within the discovery period.

Defendant also fails on the merits of his request. He concedes in his Memorandum in Opposition that Mr. Hughes and Mr. Mills sought the advice and counsel of their attorneys at

Jefferson-Pilot and Employers Reinsurance in addressing the misapplication of a portion of Mr. Kearney's policy. He nonetheless argues that attorney-client privilege did not attach because DMS' in-house counsel were not consulted. This is immaterial. A client is a person or corporation who consults an attorney for advice in his professional capacity. R.C. § 2317.021. DMS sought the advice of legal counsel at Jefferson-Pilot and ERC in its determination of the fact that Mr. Kearney's policy had been misapplied. These communications are privileged. Mr. Kearney cites no case to support his proposition that the use of Jefferson-Pilot's and Employer's Reinsurance's attorneys rather than DMS' attorneys somehow lessens the attorney-client privilege.

Mr. Kearney also seeks the deposition of former outside counsel, Geraldine Johnson. He states in a footnote that this deposition is sought only if Ms. Johnson's health permits. Ms. Johnson's health is immaterial for purposes of determining whether the deposition should or should not go forward. Ms. Johnson is former outside counsel for Jefferson-Pilot, ERC and DMS. There is absolutely no information which she could give in a deposition that would not be subject to the attorney-client privilege. To take Ms. Johnson's deposition would be an exercise in futility. Ms. Johnson was retained to represent Jefferson-Pilot, Employers Reinsurance Corporation and DMS in this lawsuit. Mr. Kearney fails to even proffer a reasonable explanation as to why her deposition would not be privileged.

In his Memorandum opposing Jefferson-Pilot's Motion for Protective Order, Mr. Kearney now suggests that he is entitled to receipt of Ms. Johnson's files. Procedurally, he has no basis upon which to make this request since discovery has ended. The bigger issue is the fact that there is no legal basis for requesting the files of outside counsel. Mr. Kearney does not even attempt to argue that Ms. Johnson's files are not privileged.

Ms. Johnson was retained by ERC and Jefferson-Pilot to represent them in this case. The entirety of their relationship is subject to the attorney-client privilege. When Disability Management Services was named as a Third-Party Defendant, it retained Ms. Johnson as well. Surely Mr. Kearney would object if Jefferson-Pilot and DMS sought the files of his several former counsel. The fact that the attorney-client relationship has ended with regard to Ms. Johnson in no way removes the privilege from her files. This request is ludicrous.

With regard to both the attorney files and depositions, Defendant's reliance on *Boone* and *Garg* is misplaced. *Boone* has created a very narrow exception to the privilege which attaches to communications between attorneys and clients. Even if Mr. Kearney's overbroad analysis is accepted however, the communications in question all occurred after the October 2001 meeting between Mr. Mills, Mr. Hughes and one of Mr. Kearney's former counsel. The exception in *Boone* applies to communications made before a denial of coverage which would tend to show bad faith. There can be no question that the denial, as Mr. Kearney characterizes it, is DMS' and Jefferson-Pilot's discovery that his policy was being misapplied. This discovery occurred in October 2001. Any communications with counsel after this point were sought with the intent of determining what should be done about the misapplication. Advise as to the appropriate solution and the anticipation of inevitable litigation were intertwined. Even if *Boone* is accepted here, the communications in question occurred after the October 2001 denial and privilege applies.

Moreover, the communications sought by Defendant do not indicate bad faith on the part of Jefferson-Pilot and DMS. The exception in *Boone* is a narrow one. Only those communications related to the issue of a bad faith denial of coverage are discoverable. It in no way gives Defendant carte blanche access to the files of outside counsel or the discovery depositions of attorneys. Before any materials could be discovered an *in camera* review would

be required.  In this case, the materials relied on by Defendant in fact demonstrate the insurer's good faith.  For example, Defendant references a communication from Ms. Johnson which was inadvertently disclosed.  This letter states the desire of DMS and Jefferson-Pilot not to allow Mr. Kearney a bad faith claim.  In other words, Jefferson-Pilot and DMS affirmatively state their intent to act in good faith so that Mr. Kearney cannot bring a bad faith claim.  How can this be anything but good faith?  If an insured is unable to bring a bad faith claim then clearly the insurer has acted in good faith.  This is the responsibility of all insurers.  Mr. Kearney now appears to argue that he has a "right" to a bad faith claim that Jefferson-Pilot and DMS have somehow denied him by acting in good faith.

Finally, the remedy Mr. Kearney seeks is inappropriate.  The *Boone* court explicitly recognized that where attorney-client privileged documents are subject to the exception and thus discoverable, bifurcation may be appropriate.  If Mr. Kearney is permitted to proceed on this path, Plaintiff's Motion for Bifurcation must be granted and any discovery regarding these issues must be stayed until after resolution of the contract question.  At that time, the documents sought by Mr. Kearney must be reviewed *in camera* in order to determine if they do in fact show bad faith as Mr. Kearney argues.  Only those documents that demonstrate bad faith are subject to the *Boone* exception.  If the documents do not demonstrate bad faith, as Jefferson-Pilot and DMS maintain, they are not discoverable.

  **B. Mr. Hughes' And Mr. Mills' Depositions Must Take Place In Massachusetts.**

Upon agreement of the parties, Jefferson-Pilot and DMS bore the cost of Mr. Kearney's counsel's travel to North Carolina and Massachusetts for the depositions of the 30(b)(6) witnesses and claims personnel sought by Mr. Kearney.  It is true that the Court's Order specified they take place in Cincinnati, Ohio.  By agreement of the parties however, the attorneys

instead traveled to where the witnesses were. Again by agreement, Jefferson-Pilot and DMS paid for Mr. Roberts' travel and lodging.

With regard to the Massachusetts depositions, these were scheduled in accordance with Mr. Roberts' specifics. He requested that two days be allotted for the depositions and the schedule was set as he asked. During the course of the depositions, he did not complete Mr. Mills' deposition nor did he begin Mr. Hughes. He has now asked that these depositions be reconvened in Cincinnati.

The fact that the depositions of Mr. Mills and Mr. Hughes were not completed during the time period that Jefferson-Pilot and DMS brought Mr. Roberts to Massachusetts is not the fault of Jefferson-Pilot and DMS. Although Jefferson-Pilot and DMS do not object to completing Mr. Mills' deposition and taking Mr. Hughes, they must be done at the cost of Defendant. Mr. Roberts complains that he could not complete Mr. Hughes' deposition because of his travel schedule. Counsel for Jefferson-Pilot and DMS offered to take the later flight so that at least Mr. Mills' deposition could be completed. For that matter, the parties could have stayed an additional day to take Mr. Hughes' deposition. The fact that Defendant's counsel did not want to do this is not the fault of Plaintiff. If the depositions are reconvened, they must be done at Defendant's cost.

Defendant also appears to make the claim that Mr. Mills somehow delayed his deposition. To claim that his questions were "simple, straightforward examination questions" is misleading, to say the least. As is demonstrated in the deposition transcripts filed with the Court, Mr. Roberts has a contentious and confrontational deposition style. He takes issue with the fact that Mr. Mills did not simply agree with his unsupported accusations. Mr. Roberts is correct that this probably would have made the deposition go faster. However, Mr. Mills has a right to offer

truthful and accurate testimony. The fact that he did not bow to Mr. Roberts' style does not in any way invalidate the deposition.

### C. Jefferson-Pilot Has Provided A 30(b)(6) Witness And All Available Claims People Involved In Mr. Kearney's Claim.

Defendant is not entitled to an additional 30(b)(6) deposition. Defendant has taken issue with Jefferson-Pilot's presentation of Valerie Loftin as its 30(b)(6) designee. Ms. Loftin was the person with the most knowledge regarding the relationship between Jefferson-Pilot and DMS. Ms. Loftin did not have information on some of the issues requested by Defendant however. In particular, she had no information regarding the handling of Mr. Kearney's claim other than her review of the file nor did she have any information regarding DMS' day-to-day handling of Mr. Kearney's claim.[2] Defendant has argued that if a single person does not have all the information sought in a 30(b)(6) notice then more than one person must be presented. There is no other person at Jefferson-Pilot that can give any more information. In addition to Ms. Loftin, Mr. Kearney has also deposed Mr. Roberson and Mr. Shelton, the claims personnel involved in Mr. Kearney's claim. Jefferson-Pilot has provided the person with the most knowledge of the DMS relationship and the available claims personnel. It cannot, and is not required, to create a person out of whole cloth. Defendant's request for an additional 30(b)(6) deposition must be denied.

### D. The Interrogatory Answers Have Been Verified.

Defendant also takes issue with the lack of verification of the interrogatory answers. Ms. Loftin truthfully testified that she did not participate in the preparation of the interrogatory answers. A verification page was not supplied with the original answers and objections to the

---

[2] Ms. Loftin testified that she reviewed the file at home. Mr. Roberts once again acted unprofessionally by sarcastically asking if her young children had helped in her review and later referencing the presence of her children during part of her review of the file. *See* Loftin depo. at pp. 116, 122.

interrogatory requests. The interrogatory information has now been verified by an Affidavit by Mr. Mills. No single person at Jefferson-Pilot could have answered all of the interrogatory requests and they were, as previously been stated, prepared by counsel with input from Jefferson-Pilot and DMS. An individual has now verified these answers.

### III.     Conclusion

Many of the issues raised in Defendant's Motion to Compel are now moot. A verification affidavit has been sent to counsel for Defendant. The surveillance tapes have been copied and sent to counsel for Defendant. His other requests have been addressed in Plaintiff's Memorandum in Opposition to his Second Motion to Compel which is incorporated herein by reference. He is not entitled to the depositions of counsel or their files. Any other appropriate depositions must be done at his cost.

Respectfully submitted,

s/William R. Ellis
William R. Ellis (0012279)
Peter M. Burrell (0044139)
Amy Gasser Callow (0063470)
Wood & Lamping LLP
600 Vine Street, Suite 2500
Cincinnati, OH  45202-2409
(513) 852-6000

Trial Attorneys for Plaintiff
Jefferson-Pilot Life Insurance Company

- 9 -

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this 25th day of June 2004.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                                          s/William R. Ellis
                                          William R. Ellis, Esq.

211478.1