UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**JEFFERSON-PILOT LIFE INSURANCE CO.,**        CASE NO. C-1-02-479
    **PLAINTIFF**                                                          (SPIEGEL, J.)
                                                                                   (HOGAN, M.J.)
    VS.

**CHRISTOPHER L. KEARNEY,**
    **DEFENDANT**

**ORDER**

Before the Court is Plaintiff's Motion for Sanctions (Doc.68) and Defendant's Memorandum in Opposition (Doc. 73).

### THE ACCUSATION AND COUNSEL'S DEFENSE

Plaintiff alleges that counsel for Defendant "used documents from the previous case in violation of a Protective Order." The previous case referred to is *Jeffries v. Centre Life Insurance Company*, a case that was settled either after or during voir dire. It is also alleged that defense counsel's treatment of Plaintiff's counsel "has become uncivil." Plaintiff asks that the Court supervise all future depositions and that all future depositions take place in chambers. Plaintiff also requests an award of expenses associated with the filing of the Motion for Sanctions, an award of expenses for defending Plaintiff's discovery-related motions and an award of expenses for future depositions.

Specifically, Plaintiff says that defense counsel used the performance reviews of Mr. John Midghall during the deposition of Todd Ditmar. Attached to the deposition is Exhibit 30, which contains the performance review. Plaintiff asserts that the performance review was placed under seal on March 23, 2004 and that the use of this performance review was a direct violation of this Court's order. Since the point behind the sealing of Midghall's performance review was

to protect the privacy rights of DMS employees from public disclosure, Plaintiff asserts that the use of other performance reviews (of Fanial, Wentworth, Graf and Gelardi, all DMS employees) during the Ditmar deposition also violated the Protective Order, although impliedly, since none of the four were specifically mentioned in the Protective Order.

Plaintiff also requests that the Court sanction defense counsel for revealing during the Ditmar deposition the amount of a settlement obtained in the case of *Jeffries v. Centre Life Insurance Company* case. (*See* Ditmar Dep., at 8-9). It was argued that the amount of the settlement was agreed to be kept confidential.

An additional basis for the application of sanctions is defense counsel's on-the- record behavior during the depositions of John Roberson and Valerie Loftin, wherein counsel referred to his adversary as "Big Brother" and "Buddy" and threatened to make Ms. Loftin's life hell. In addition, Plaintiff points to the affidavits of Adam Formus and Todd Ditmar and the statements made therein that defense counsel used profanity directed toward Plaintiff's counsel and Todd Ditmar.

Then there is the accusation by defense counsel, during the deposition of Robert Bonsall , that Adam Formus, in-house counsel for DMS, had his notes of the Ditmar deposition sent via internet connection to the deponent in advance of his deposition, a fact denied by both Foramus and Bonsall. Notwithstanding the fact that both Foramus and Bonsall denied the act in question, we fail to grasp the impropriety of asking Ditmar about it. This is simply making a mountain out of a mole hill.

It is also alleged that defense counsel contacted both Mr. & Mrs. Robert Maxwell without advising either of them that he represented a party adverse to Jefferson-Pilot. Mr. Maxwell is a former Jefferson-Pilot employee, who is disabled.

Lastly, Plaintiff complains about defense counsel's reference to his adversary as "Big Brother" in e-mails, asking an associate in Plaintiff's counsel's firm for a copy of his adversary's law school transcript and calling Plaintiff's counsel "incompetent."

Defense counsel's arguments to the contrary are interesting to say the least. Defense counsel's position is that the performance reviews of the DMS employees were disclosed to him in August, 2003 by Plaintiff's counsel and that the disclosure was made "without any confidentiality request." This Court has previously found that the subsequently executed

Protective Order did not and could not have a retroactive effect. Thus, disclosing what is unprotected cannot be sanctionable conduct.

Once the Protective Order was in place, the Court ordered that previously redacted copies of DMS employees' performance evaluations be disclosed in their unredacted form and that the redacted material, not the total performance review, be subject to the Protective Order. The reason for the Court Order should have been clear to all concerned. Why would unredacted material be subject to a Protective Order when that same material was disclosed without a request that it be treated as confidential? On the other hand, one might conclude that the reason for the redaction was to protect redacted material from disclosure and that a Protective Order was a means directed toward that end. In summary, defense counsel's use of the performance reviews in subsequent depositions violated no Court order and is, of course, not subject to sanction.

The Court has not been furnished with a copy of any written confidentiality agreement in the *Jeffries v. Centre Life* case, but Plaintiff refers to an e-mail, dated June 16, 2004, from defense counsel to Mr. Cohen, the carrier's counsel in the *Jeffries* case. The exhibit which purportedly demonstrated the existence of such an agreement was a June 15, (not June 16) 2004 e-mail from defense counsel to Andy Cohen which refers to the following phrase: "Our deal on the record on April 19th required confidentiality from that point forward." The transcript of proceedings before Judge Beckwith on April 19th demonstrated that the confidentiality of the settlement was at Plaintiff Jeffries' option. Defense counsel acknowledges that there was a Motion to Seal filed in the *Jeffries* case, but that Plaintiff's counsel (defense counsel in the *Jeffries* case) objected to it and there was no court order on the subject. The Court certainly cannot sanction counsel based on sand and fog. We can safely say that the record demonstrating the purported existence of a confidentiality agreement does not favor the issuance of a sanction for revealing the amount of the settlement.

Defense counsel is accused of contacting a former Jefferson-Pilot employee by the name of Robert Maxwell and misrepresenting the fact that he was counsel for the carrier's opponent in litigation. Defense counsel's response is that he never spoke with Mr. Maxwell, who is disabled, but that he spoke to his wife, inquired about Mr. Maxwell's ability to be deposed, and informed her that an attorney for Jefferson-Pilot would be calling to arrange for the deposition. As proof

of counsel's "misbehavior," Plaintiff attaches not an affidavit of Mrs. Maxwell, indicating that defense counsel misrepresented anything, but an excerpt from the deposition of John Roberson, who makes a hearsay statement that Mrs. Maxwell was deceived. Such quality of proof is no where near the threshold required to sanction a member of the bar.

An additional accusation was that defense counsel attempted to influence a deponent by referring to the verdict of a summary jury as if it the verdict had been returned by the real jury. The deponent was Todd Ditmar, who was being questioned by defense counsel. An on-the-record conversation ensued between opposing counsel over the propriety of Defendant's bad faith claim. Although the colloquy between counsel illustrates their opposing views on the relevant issues in the case, the conversation was improperly initiated by defense counsel and had no affect upon Mr. Ditmar's testimony. Nor was the purpose to intimidate Mr. Ditmar. The obvious purpose was to engage Plaintiff's counsel in a continuing cat fight of sophomoric proportions. When did it become accepted practice to engage in a debate over the merits of the case in front of a witness and during a deposition? The incident belongs in the incivility column to be discussed later and is not a legitimate example of an improper attempt to influence a witness.

Next is the accusation that defense counsel used a "derogatory word," described in the Ditmar affidavit as a "vulgar term" to describe the deponent. Defense counsel argues that the "inappropriate language" was improperly interpreted by the deponent as describing himself instead of Plaintiff's counsel, for whom the description was intended. One would think that the acrimonious relationship between counsel, which long preceded the Ditmar deposition, would lead to the conclusion that whatever was spoken was not intended to describe Mr. Ditmar, but Plaintiff's counsel, and that is the interpretation that this Court accepts. However, the incident is but another example of incivility, which will not be overlooked, despite our refusal to interpret it as a more serious incident.

Lastly, Plaintiff accuses defense counsel in two categories labeled "Hostility" and "Abusive Behavior During Depositions." The evidence supporting this accusation is found in the deposition transcript of Valerie Loftin where defense counsel threatens to "make her life hell," referring to a female attorney for the carrier. The evidence is also found in several e-mails (April 27, 2004, April 28, 2004, June 15, 2004, February 5, 2004), in the deposition transcripts

of John Roberson and Valerie Loftin and in the affidavits of Adam Formus and Todd Ditmar. Briefly stated, the various documents show Plaintiff's counsel referred to as "Big Brother" and "Buddy" plus sarcastic comments related to counsel's intelligence and honesty. There is a broader reference to Plaintiff's counsel's law firm, made to an associate, of "your firm's complete disregard of rules of procedure and ethics" and a request of the associate that she send a transcript of counsel's law school transcript to demonstrate that he graduated. There is an instance where defense counsel told his opponent to "Shut up." Particularly troubling are the affidavits of Adam Foramus, Esq., which refers to various inappropriate instances of name calling directed toward Plaintiff's counsel, which instances took place during depositions in Springfield, Massachusetts and the affidavit of Todd Ditmar.

The response to this impressive proof from defense counsel is to say that he apologized and that his behavior was provoked by his opponents unethical behavior.

## THE COURT'S RESPONSE

Having attempted to send every possible signal that this Court is disgusted with the behavior of both lawyers in both the *Jeffries* case and now this case, and being of the opinion that the situation has escalated now to the point where their continuing inability to treat each other with civility has become an obstruction to the efficient processing of this case, this Court has had enough. The Court intends to sanction both attorneys. Plaintiff's counsel, who is the movant here, has accused his opponent of at least three separate violations of ethical behavior, all of which have been considered, and none of which comes close to establishing a violation of any ethical rules. Defense counsel should not be required to respond to completely baseless allegations and requiring him to do so simply requires him to allocate time from his client's cause. The Court considers this behavior to be worthy of sanction.

This is not to excuse the disgraceful conduct of defense counsel during depositions and in his personal correspondence with his opponent during the pendency of this case. This behavior is also worthy of sanction.

The Court will conduct a hearing in approximately three weeks. A date will be determined after checking the schedules of personal counsel. Both counsel will appear with the

managing partners of their respective firms and their clients as well as personal counsel, if desired. Suffice it to say that both should be prepared for a sanction, directed to them personally, not their clients, that may be more significant than a monetary award. This Court has no intention of supervising depositions, nor to allow lawyers to conduct all depositions in Cincinnati, thereby penalizing innocent deponents because of their lawyer's immature behavior. The Court has no interest in awarding any expenses to the movant, whose behavior, while not excusing the response, certainly provoked it.

     It is so ordered.


July 26, 2004                                            *s/Timothy S. Hogan*
                                                                Timothy S. Hogan
                                                                United States Magistrate Judge