UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JEFFERSON-PILOT LIFE INSURANCE COMPANY, | : Case No. C-1-02-479 |
| Plaintiff, | : (Judge Spiegel) |
| | : (Magistrate Judge Hogan) |
| vs. | : |
| | : **PLAINTIFF'S REPLY** |
| CHRISTOPHER L. KEARNEY, | : **MEMORANDUM IN SUPPORT OF** |
| | : **ITS MOTION FOR SANCTIONS** |
| Defendant. | : |

I.  INTRODUCTION

Although the Court has already issued an order on Plaintiff's motion for sanctions, it is the calculation of Plaintiff that a Reply in support of the Motion could be filed by July 28, 2004. Despite the ruling, the Reply is herewith filed for the record.

The Motion for Sanctions was supported by documentary evidence and affidavit testimony in each and every instance. The Court is understandably frustrated with the frequent need for its intervention in this case and the prior case, Jeffries v. Centre Life, 02-CV-351. However, the Court's perception and that of Mr. Roberts, as evidenced by the Order and Mr. Roberts' response to the Motion, that both counsel are acting with a lack of civility is in error. As the record clearly demonstrates, Counsel for Plaintiff Jefferson-Pilot Life Insurance Company (hereinafter "Jefferson-Pilot/DMS") has never gone to the Court without first attempting to resolve an issue with Mr. Roberts. Counsel, in this case, has never sent an uncivil letter or e-mail to Mr. Roberts. Counsel, in this case, has never denigrated Mr. Roberts in front of any third party, let alone Mr. Roberts' own client. In fact, even after

enduring several days of insults from Mr. Roberts, counsel for Jefferson-Pilot/DMS agreed to Mr. Roberts' request to give him a ride back to the airport in Springfield. Mr. Roberts then elected to forego this ride by departing without even advising counsel of his change of mind. Moreover, the motion for sanctions itself was hand filed rather than electrically filed in an attempt to avoid public embarrassment to Mr. Roberts and the firm of Graydon Head & Ritchey.

      The more professionally counsel for Jefferson-Pilot/DMS treated Mr. Roberts, the less civilly he was treated in response. In his memorandum in response to the motion for sanctions Mr. Roberts continues to slander counsel for Jefferson-Pilot/DMS by his claims that counsel has somehow made him violate the ethical canons. This is exactly the behavior which Jefferson-Pilot/DMS seek to have the Court bring under control. The Code of Professional Responsibility requires that lawyers treat each other with civility. Mr. Roberts' admission that he has failed in this obligation, but is justified because of his dislike for Counsel for Jefferson-Pilot/DMS, is simply unacceptable. Based on Mr. Roberts' admissions alone, his behavior is sanctionable.

      Despite Mr. Roberts' attempts to hide his unethical conduct behind the defense of a personal disagreement, this is not a he said/she said situation. The motion for sanctions and this reply is supported by transcripts, e-mails, affidavits and Court Orders. Defendant's memorandum in opposition is supported only by the declaration of Mr. Roberts. This is woefully insufficient when compared to the clear evidence presented by the Plaintiff.

II.  ARGUMENT

    A.  **There is no basis in fact for Mr. Roberts' claim of "vendetta" or "tactics"**.

Mr. Roberts has his own unique interpretation when it comes to the facts of the previous case between Counsel.[1] He implies that it was a poor outcome in the previous case that has lead to the relationship between the parties. As is evidenced by the correspondence from Mr. Roberts to Counsel for Plaintiff, (attached as Exhibit G to the Motion for Sanctions), Mr. Roberts' unprofessional, uncivil, and unethical treatment of Counsel for Plaintiff began before the April 19, 2004 resolution of the Jeffries case. In fact, his entire premise is flawed.

Mr. Roberts blatantly misrepresents the outcome of the Jeffries case and then speculates that it had some effect on counsel. This Court is well aware of the actual facts of the resolution of that matter and the misstatements of Mr. Roberts need not be repeated here. Suffice it to say that Mr. Roberts' false statement that there was a jury verdict of bad faith is knowingly misleading. A used car salesman may tell a prospective buyer that a vehicle was driven by a nice old lady who never had an accident in it. If in fact the little old lady was his mother, who drove the car from the auto auction to the used car lot, the statement is in fact both accurate and intended to deceive. That should not be the *modus operandi* of an officer of the court. The intent of Mr. Roberts' statement seems to be to pin a declaration of bad faith on the client in order to influence the opinion of the Court, witnesses and others who read his claims and depositions of both client and counsel. Moreover, even a cursory review of the communications between counsel clearly establishes that any "vendetta" or incivility is purely one-sided.

---

[1] Eric L. Jeffries v. Centre Life Ins. Co., et al., Case No. 02-CV-351.

Mr. Roberts' alternative claim that the Motion for Sanctions is merely a "tactic" to cause the Court to disfavor him is insulting to both the Court and to Counsel. To suggest that this Court would permit personal feelings about an attorney to interfere with its primary goal of justly deciding the issues before it is an insult to the Court. To suggest that an attorney, who has appeared before that court in a number of cases over the years, would harbor such a belief is insulting to Counsel.

### B.     Mr. Roberts' claim of justification is false.

In his first numbered argument Mr. Roberts defends his improper actions in this case by arguing that what he characterizes as Counsel for Plaintiff's improper behavior in the Jeffries case essentially made him act improperly in this case. He again operates from his own version of the facts to justify his behavior. Notably, he cites current counsel's questioning of how he came upon certain e-mail information 16 months ago in the Jeffries case. Mr. Roberts ignores entirely the repeated efforts of Plaintiff's counsel to avoid the expensive and counter-productive incivility in the prior case from being repeated in this case.

Mr. Roberts argues that Counsel for Plaintiff was repeatedly sanctioned by the Court for improper behavior. Such is not the case. He appears to believe that if Counsel for Jefferson-Pilot/DMS had been sanctioned, that relieves Mr. Roberts of his obligations under the ethical canons. In addition to being an incorrect premise, his claim of repeated sanctions for improper conduct is false. In support he cites his own declaration. Mr. Roberts fails to identify for the Court what these sanctions were and what the alleged "improper behavior" was. In fact, although there was a sanction in the Jeffries case, it was as a result of a discovery dispute, not "improper behavior" on the part of Counsel for Jefferson-Pilot/DMS.

In the Jeffries' case, which involved different parties and different issues, Magistrate Judge Hogan ordered that the defendants pay the legal fees and other related costs of Mr. Jeffries' attorney for filing a Motion to Compel. In essence, Plaintiff had argued that the supplementation of discovery responses made by Center Life was inadequate. The Court agreed and awarded the costs involved in filing the Motion to Compel.[2] This was not a finding of improper behavior.

The other "sanction" in the Jeffries case was that the discovery deposition of a witness, Dr. Fritz, could not be used.[3] It is with regard to the deposition of Dr. Fritz that Mr. Roberts makes his second false statement: that the Court found Counsel for Jefferson-Pilot/DMS to have filed five false declarations. The Court never made any such finding. Mr. Roberts' frequent repetition of this statement does not make it true. The fact of the situation is that Counsel for Plaintiff and his office believed that the notice for the deposition of Dr. Fritz had been served on Mr. Roberts via facsimile. Counsel for Jefferson-Pilot/ and members of his office filed declarations with the Court attesting to their belief. This belief was proven incorrect. The Court never found the intentional deception Mr. Roberts claims. It was a mistake for which Counsel for Jefferson-Pilot/ took responsibility and apologized in open court.

During the Jeffries case, Mr. Roberts filed several motions for sanctions and default judgment. His tactic was to repeat his unsupported claims of improper behavior on the part of Mr. Ellis. Rather than respond in kind, counsel for DMS chose to ignore Mr. Roberts' tactic and proceed with defense of the case. Unfortunately, Mr. Roberts' oft-repeated slander

---

[2] It is interesting to note that Mr. Roberts then sought in excess of $12,000.00 in attorneys fees. The Court reduced this award to $874.00. Document No. 69.

appeared to have had an effect on the Court. As a result, counsel for Jefferson-Pilot/DMS has decided to document each impropriety in this case.

      **C.**      **Mr. Roberts admits that he used profanity during a deposition**.

Mr. Roberts admits that he used profanity during the deposition of Todd Ditmar. In his defense, he claims that he did not direct his profanity at the witness, but in fact directed his profanity at Counsel for Jefferson-Pilot/DMS. Once again, Mr. Roberts blames someone else for his actions. He claims that Mr. Ellis' actions during the deposition caused him to lose his temper and used profanity. Notably, Mr. Roberts does not explain what he believes happened. There is nothing in the response which identifies the portion of the deposition during which this exchange occurred or what happened to cause Mr. Roberts to lose his temper.

Moreover, Mr. Roberts' defense of "I didn't call a witness a profane name, I called opposing counsel a profane name," is incredible. He argues that Counsel for Jefferson-Pilot/DMS should have known that the profanity was directed at him and claims indignation that Jefferson-Pilot/DMS would claim it was directed at a witness. His admission of profanity toward opposing counsel is an acknowledged violation of the ethical cannons. More incredible is the fact that Mr. Roberts' admission of use of profanity demonstrates his earlier misrepresentation to this Court. During the deposition of Mr. Ditmar, a phone call was placed to the Magistrate Judge during which Mr. Roberts denied the name-calling. He now admits this occurred and in so doing admits his false statement to the Court.

The Ohio Supreme Court has held that profanity by attorneys will not be tolerated and deserves public reprimand. See Office of Disciplinary Counsel v. Jackson, 94 Ohio St. 3d

---

[3] Although Defendant could not use Dr. Fritz's discovery deposition, she was going to be called as a witness had Plaintiff not decided to settle.

386, 704 N.E. 2d 246 (1999); Columbus Bar Assoc. v. Riebel, 69 Ohio St. 2d 290, 432 N.E. 2d 165 (1982).  Mr. Roberts' unsupported defense that he was somehow provoked must be rejected.  He fails to identify what action or actions by Counsel for Plaintiff allegedly provoked him.  Moreover, as the Supreme Court has determined, provocation is no excuse.

DMS and Jefferson-Pilot request that the Court review the correspondence between Counsel attached to the Motion for Sanctions.  Mr. Roberts' correspondence to Counsel for Jefferson-Pilot/DMS is unprofessional, demeaning, and serves only to make a very simple case more difficult and more expensive.  Counsel for Plaintiff challenges Mr. Roberts to identify any improper correspondence on the part of Counsel for Plaintiff.  On that note, it is incredible that Mr. Roberts now expresses surprise that Mr. Ellis does not want to be called "big brother."  During deposition, Mr. Roberts asked DMS employees whether they called Counsel for Plaintiff "big brother."  They said no.  *See* Exhibit A, deposition of Todd Ditmar at p. 90.  During the deposition of Valerie Lofton, when Mr. Roberts referred to Counsel for Jefferson-Pilot/DMS as big brother once again, Mr. Ellis corrected him on the record and asked that he be called Ellis.  *See* Exhibit B, deposition of Valerie Loftin at p. 102.  In one of the first pieces of correspondence in which Mr. Roberts addressed Counsel for Jefferson-Pilot/DMS as big brother, Mr. Ellis wrote back and asked that he please address him professionally.  *See* Exhibit C, 4-27-04 e-mail correspondence of counsel.  Mr. Roberts responded to this request by once again addressing the e-mail response to "big brother."  Given the repeated and polite requests of Mr. Ellis, Mr. Roberts expressed surprise that he does not like being called big brother is, at best difficult to understand.  The e-mail correspondence attached to the Motion for Sanctions clearly shows Counsel for Plaintiff's

repeated attempts to promote civility. Mr. Roberts' promise to be more civil in the future is at least encouraging.

        D.        **Mr. Roberts continues to make misrepresentations**.

Mr. Roberts continues to misrepresent the proceedings in the Jeffries case and appears to do so with the deliberate intent of influencing the people whom he was deposing in the Kearney case. Given that this is an entirely different case it is hard to come up with any other explanation for Mr. Roberts' continued reference to a supposed jury verdict of bad faith. It certainly is of no consequence in this case if a claims handler or other witness is or is not aware of any other proceedings. Mr. Roberts has misrepresented the outcome of the Jeffries case again to this Court. The first page of his memorandum in opposition to the motion for sanctions declares that the Center Life case "concluded with a jury verdict of bad faith." Mr. Roberts' continued refusal to accurately state facts is done blatantly and can only be assumed to be with the intent of influencing the listener. A review of his questions are of note. He questions a DMS employee as to whether he is aware of a bad faith verdict in Ohio. He asked Mr. Ditmar: "Q. Are you mindful, sir, of from any source that there was a jury determination in Hamilton County, Ohio last month that DMS was in bad faith in its handling of a disability claim?" *See* Exhibit A, Ditmar depo at p. 16. This is a tactic designed only to harass and embarrass the witness, and is no better than a used car salesman's misrepresentation.

Although Mr. Roberts would like to characterize these accusations as undeserving of a response, it is Counsel for Jefferson-Pilot/DMS's silence in its last dealings with Mr. Roberts that have lead them to file this motion for sanctions. Mr. Roberts' practice is to make baseless, inflammatory and untrue allegations. Counsel for Jefferson-Pilot/DMS and

8

Mr. Ellis in particular, has in its dealings with Mr. Roberts attempted to rise above these allegations and not respond. Unfortunately, when baseless allegations are repeated often enough, they begin to ring true. That is perceived to be what happened in the Jeffries case. Counsel for Jefferson-Pilot/DMS will not allow that to happen here. Every allegation made against Mr. Roberts is supported by e-mail correspondence, deposition transcript or affidavit evidencing the improper conduct. Counsel for Jefferson-Pilot/DMS merely requests that the Court look at these documents. Mr. Roberts, on the other hand, stands only on his own declaration that he was somehow made to act improperly.

E.    **Mr. Roberts disregards Protective Orders and Confidential Agreements**.

In response to Counsel for Plaintiff' unrefuted proof that Mr. Roberts used confidential documents during depositions, Mr. Roberts has now offered the novel defense that the confidentiality agreement reached in the Jeffries case only applied unilaterally to DMS. This would indeed be a novel settlement agreement, and one that surely would have been expressly stated by someone other than Mr. Roberts in an effort to excuse his improper behavior. Interestingly, in his June 15, 2004 e-mail to in-house counsel for DMS, Mr. Roberts does not address his idea of unilateral confidentiality. Instead, he states "Our deal on the record on April 19 required confidentiality from that point forward." It is true that in the Jeffries case confidentiality was left to Mr. Jeffries as stated at page 5 of the transcript read by the Court. There is no mention of <u>unilateral</u> confidentiality. As Mr. Ellis stated at page 7 of the transcript, if Mr. Jeffries elected to seal the case, DMS would of course request that the case be sealed as to everything. *See* Exhibit D, 4-19-04 on-the-record settlement discussion.

In support of his unique idea of unilateral confidentiality, Mr. Roberts has quoted, without any citation to the pages on which these quotes are found, several sections of the on-

the-record settlement discussion which related to the surveillance videotapes obtained of Mr. Jeffries. Mr. Jeffries asked for return of the videotapes and written surveillance reports. A multi-page discussion followed during which Mr. Roberts, Mr. Ellis, and in-house counsel for DMS discussed this request. Mr. Ellis represented, as is quoted out-of-context, that the videotapes and investigative reports would be kept confidential. This was not in any way a unilateral requirement of confidentiality as to the whole case. Mr. Ellis was merely assuring Mr. Jeffries that as to the surveillance tapes and reports, the area of most concern to Mr. Jeffries, those would be kept confidential, and notice would be given to him or Mr. Roberts if a request for the videotapes or reports was made. Mr. Roberts has taken this exchange out of context and attempted to read a requirement of unilateral confidentiality as to every aspect of the Jeffries case on Center Life. If the Court reads the entirety of the discussion, it will see that Mr. Roberts's use of ellipses to block out relevant portions of the conversations, and his failure to give any citation to any page on which these statements are found, is clearly misleading. *See* Exhibit D.

The fact that confidentiality was at the option of Mr. Jeffries in no way makes the confidentiality unilateral. That would certainly be a unique and novel settlement tool and one which would, by its very inception, need to be expressly stated. DMS did not care whether Mr. Jeffries elected to keep the case confidential or not. If he did elect to keep the case confidential however, the entirety of the case would be confidential; not just those portions Mr. Jeffries chose to keep confidential. The Court's question to the jury confirms this. The Court stated "it's Plaintiff's call whether this is a confidential settlement or whether I can share it with you all." Once again, this does not imply a unilateral obligation of confidentiality. If the settlement is confidential, it is confidential to all.

As to Mr. Roberts' indignation that he has been accused of violating a Confidential Settlement Agreement, this is based on his request of Counsel for DMS to agree to seal the Jeffries case. Based on this request, Counsel for Mr. Jeffries has properly been treating the terms of the settlement and the documents and information obtained in that case as confidential. If, as it now appears to be, the Jeffries case is in fact not confidential, which admittedly is at the election of Mr. Jeffries in that case, then DMS will proceed accordingly. It must also be noted that Jefferson-Pilot and DMS have not argued that Mr. Roberts violated a motion to seal. They have identified the fact that Mr. Roberts requested that the case be sealed to support their belief that the Jeffries settlement was confidential and to establish that Mr. Roberts has in fact violated the obligation to keep the settlement confidential, which applies to both parties until a settlement agreement is reached. Mr. Roberts is correct that you cannot violate a motion to seal, **and no such claim was made by DMS and Center Life.**

Like the on-the-record Settlement Agreement, Mr. Roberts creatively reads the April 2, 2004 Protective Order entered by this Court in the Jeffries case. He argues that the suggestion of confidentiality in the Kearney case has already been rejected by this Court. It is true that in its review of the confidentiality issue, the Court appeared to look in the Kearney case for a Protective Order. In Document No. 55, the Court stated that it had "searched the record and cannot located any Order of the undersigned or Judge Spiegel that dealt with the issue raised by the parties." The Court went on to say if there was an Order it would not be retroactive. There are two problems with Mr. Roberts' reliance on this argument. First, the protective order in question was made in the <u>Jeffries</u> case, not the Kearney case, as referenced by the Court, and second, the Order was retroactive to the

11

"**previously redacted performance evaluations**."  These are the very documents used by Mr. Roberts in the depositions and then made public by his filing the same.

The documents Mr. Roberts used in the Kearney depositions were documents produced in the Jeffries case and subject to a 4-2-04 Stipulated Protective Order following the Court's 3-23-04 Order.  A copy of that Confidentiality Order is attached hereto as Exhibit E.  Under the terms of that Order, Mr. Roberts was required to hold confidential the **previously redacted performance evaluations**.

The April 2, 2004 Stipulated Protective Order states that:

> This Order applies to the financial information referenced in the 3-23-04 Order, the Administrative Services Agreement and **previously redacted "performance evaluations."**

*See* Exhibit E, 4-2-04 Stipulated Protective Order.  This was in keeping with the Court's earlier acknowledgement, when it granted the motion to seal an exhibit attached to a filing of Mr. Jeffries because it contained the performance evaluation of John Midgehall.  The Court stated:

> **The exhibit contains information from the personnel file of one of Defendant's employees.  The Court finds such information to be protected from public inquiry. . .**

*See* Exhibit F, Motion to Seal and 3-23-04 Order.  There can be no question that the Court's 3-23-04 Order was violated.  Mr. Roberts acknowledges that the Court Order of 3-23-04 sealed the performance evaluations of John Midghall.  He suggests that it was frivolous of Plaintiff to allege he violated this Order.  Counsel's statement to the Court on page 7 of his Memorandum is at best inaccurate.  Mr. Roberts used this sealed performance evaluation during the deposition of Todd Ditmar as part of Exhibit 30.  *See* Exhibit A, Ditmar Depo. at pp. 65-66.  He specifically identified Mr. Midghall's evaluation numbered at DMS 0047-

0051. *Id*. As Exhibit F demonstrates, these evaluations, Bates numbered DMS 0047-0053, were placed under seal. The remainder of the previously redacted performance evaluations were then made subject to the protective order in the Court's 4-2-04 Stipulated Order. *See* Exhibit E.

Mr. Roberts' defense is that he gave the redacted performance evaluations to Mr. Kearney at a time when they were not confidential. Once those documents became confidential by operation of the Court's Order granting the motion to seal and the stipulated protective order, however, Mr. Roberts had an obligation to, at the very least, not further disseminate them. Even if he could not obtain them back from Mr. Kearney, he, as an officer of the court, had an obligation not to use a document which he knew to now be subject to a protective order. The 3-23-04 Order applies specifically to John Midghall's evaluations. The 4-2-04 Order applies to all the other "**previously redacted performance evaluations.**" Mr. Roberts admits he used these redacted performance evaluations. His argument that only the redacted information was protected misstates the Order and makes no sense. The redactions were of other company clients of DMS.[4] The Order clearly applies to the performance evaluations themselves redacted or otherwise.

Mr. Roberts does not have clean hands here. He is Counsel in both the Jeffries case and the Kearney case. This is not a situation where he obtained confidential documents from a third-party. Mr. Roberts is responsible for both the dissemination and the use of the confidential documents and cannot hide behind the defense of "somebody else gave it to

---

[4] In seeking unredacted copies of the performance evaluations, Mr. Roberts argued that the redactions related to the performance goals of DMS and how these goals were exceeded. Counsel for DMS in Jeffries represented that the redactions referred to other blocks of business not related to Mr. Jeffries' claim. As the unredacted documents demonstrate, Mr. Ellis' representations were truthful.

13

me." Those documents began with him, and as an officer of the court, he had an obligation to keep them confidential.

Case 1:02-cv-00479-MRB    Document 79    Filed 07/28/2004    Page 14 of 18

### F.     **Mr. Roberts admits on the record that he failed to identify himself to a potential witness.**

Also incredible is Mr. Roberts' defense to his improper communication with Mr. Maxwell.  It is unbelievable that Mr. Roberts attempts to read a loophole into the Ohio Ethics requirements by stating that he talked to Mrs. Maxwell and not Mr. Maxwell.  The cannons of ethics applicable to attorneys practicing law in Ohio are not something that an attorney should strive to "get around."  Mr. Roberts was clearly speaking to Mr. Maxwell through Mrs. Maxwell.  Mr. Maxwell is too ill to come to the phone.  Mr. Roberts has no problem relying on Mrs. Maxwell's representations with regard to Mr. Maxwell's ability or inability to give a deposition, but then hides behind his statements to Mrs. Maxwell, because she was not the former employee to which he improperly identified himself.  Mr. Roberts' contact was with Mr. Maxwell through his wife, Mrs. Maxwell.  To attempt to hide behind the flimsy excuse that he did not speak directly with Mr. Maxwell only shows Mr. Roberts' willingness to circumvent the ethical rules whenever possible.

More important is the fact that Mr. Roberts does not in any way address <u>his own admissions</u> made during the deposition of J.L. Roberson.  During his deposition, Mr. Roberson challenged the fact that the Maxwells believed Mr. Roberts to representing Jefferson-Pilot.  <u>Mr. Roberts does not deny this to Mr. Roberson</u>.  Instead, he defends his actions <u>on the record</u> by questioning what difference it makes whether he is counsel for the plaintiff or counsel for the defendant.  In fact, under the ethical cannons it makes a very big difference.

The ethical violation was not in the contacting of Mr. Maxwell; it was in Mr. Roberts' failure to identify himself to Mr. Maxwell as an attorney representing an interest adverse to the former employee's company.  Mr. Roberts in fact does not deny this violation.  He

15

attempts to read a loophole into the requirements of identification by stating that he talked to Mrs. Maxwell and not Mr. Maxwell directly.  More importantly, in Mr. Roberson's deposition, Mr. Roberts never denies that he failed to properly identify himself to the Maxwells. He merely states that he identified himself as an attorney in a case concerning Jefferson Pilot.  He is under an ethical obligation to advise a former employee that the interests he represents are adverse to the former employee.  Once again, Mr. Roberts responds to these allegations only by his own declaration.  The deposition testimony of J.L. Roberson accurately reflects Mr. Roberts' actions.  He contacted Mr. Maxwell through Mrs. Maxwell, he did not identify whether he represented the plaintiff or the defendant, and he does not deny implying to the Maxwell's that he represented Jefferson-Pilot.

### III.  CONCLUSION

Finally, Mr. Roberts, playing to the Court's understandable level of frustration, basically argues that, both he and counsel for the Plaintiff should be treated the same because he too has been the victim of incivility, yet he cites absolutely no instance in which this has occurred.  His only claim to such action is the filing of the instant motion.  Absent such a motion, as in the Jeffries case, so often cited by Mr. Roberts, his conduct would continue unchecked.  The use of hand gestures and mocking hole digging imitations during depositions had escalated to direct verbal attacks and denigration in front of witnesses and clients. Counsel for the Jefferson-Pilot/DMS had no other recourse other than to continue to endure this uncivil behavior.  Neither counsel nor the client was willing to do so.

Mr. Roberts is incorrect in his statement that there is an acrimonious relationship between Opposing Counsel.  He can point to no instance in this case where counsel for the Plaintiff acted in an uncivil manner toward him.  In fact after the particularly onerous

behavior in Springfield, Mr. Roberts directly challenged counsel's restraint by requesting a ride to the airport. When counsel for Jefferson-Pilot/DMS agreed to take him to the airport, thus depriving him of any possible complaint of incivility, Mr. Roberts left without notice and took a cab in spite of the offer for a free ride.

The motion was not filed as a vendetta, nor as a tactic to influence the Court, but as the only means left to counsel and his clients to put an end to the abusive, uncivil, demeaning and insulting antics of Mr. Roberts. If bringing such behavior to the attention of the court is a sanctionable act then it becomes important for the Court to educate counsel on a proper method of arresting the behavior to which Mr. Roberts now grudgingly admits.

Respectfully submitted,

OF COUNSEL:

WOOD & LAMPING LLP

s/William R. Ellis
William R. Ellis (0012279)
Peter M. Burrell (0044139)
Amy Gasser Callow (0063470)
Wood & Lamping LLP
600 Vine Street, Suite 2500
Cincinnati, OH  45202-2409
(513) 852-6000

Trial Attorneys for Plaintiff
Jefferson-Pilot Life Insurance Company

17

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this 28th day of July, 2004.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

s/ William R. Ellis<br>
William R. Ellis<br>
Trial Attorney for Plaintiff<br>
Jefferson-Pilot Life Insurance Company

213932.3