UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ERIC L. JEFFRIES, : | |
| : | Case No. C-1-02-351 |
| Plaintiff, : | |
| : | (Judge Beckwith) |
| vs. : | (Magistrate Judge Hogan) |
| : | |
| CENTRE LIFE INSURANCE COMPANY, : | **CENTRE LIFE'S MOTION TO** |
| et al., : | **PLACE EXHIBIT 3 TO** |
| : | **PLAINTIFF'S EMERGENCY** |
| Defendants. : | **MOTION TO COMPEL THE** |
| : | **PRODUCTION OF** |
| : | **OUTSTANDING DOCUMENTS** |
| : | **AND INFORMATION UNDER** |
| : | **SEAL** |

Plaintiff's Emergency Motion to Compel the production of outstanding documents and information attaches to it employment reviews of John Midghall, an employee of Defendant. These reviews contain sensitive and confidential information. These documents are designated DMS0047-0053. Mr. Midghall is not an individual Defendant in this case and to electronically

file his employment reviews violates his expectation of privacy in those documents. Centre Life respectfully requests that the exhibit be stricken from the electronic record and placed under seal.

Respectfully submitted,

s/Peter M. Burrell
William R. Ellis (0012279)
Peter M. Burrell (0044139)
Amy Gasser Callow (0063470)
Wood & Lamping LLP
600 Vine Street, Suite 2500
Cincinnati, OH  45202-2491
(Telephone) (513) 852-6000
(Facsimile) (513) 852-6087

Attorneys for Defendants
Massachusetts Casualty Insurance Company
and Disability Management Services, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this 19th day of March 2004. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Peter M. Burrell
Peter M. Burrell, Esq.

202461.1

Motions
1:02-cv-00351-SSB-TSH Jeffries v. Centre Life Ins Co, et al

U.S. District Court

Southern District of Ohio

Notice of Electronic Filing

The following transaction was received from Callow, Amy Gasser entered on 3/19/2004 at 2:07 PM EST and filed on 3/19/2004

**Case Name:** Jeffries v. Centre Life Ins Co, et al
**Case Number:** 1:02-cv-351
**Filer:** Centre Life Insurance Company
**Document Number:** 174

**Docket Text:**
MOTION to Seal *exhibit to plaintiff's emergency motion to compel* by Defendant Centre Life Insurance Company. (Callow, Amy)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1040326259 [Date=3/19/2004] [FileNumber=200156-0]
[404d5138e11aef765b91cfc26573e90989ee989e5f5b91d9e666531b06fff48aebbe
66579a2633f2ba38d2fcf4fea302919bd876789327a740af3fcbed3ea165]]

**1:02-cv-351 Notice will be electronically mailed to:**

Peter M Burrell     pmburrell@woodlamping.com,

Amy Gasser Callow     agcallow@woodlamping.com,

William Robert Ellis     wrellis@woodlamping.com,

Jeffrey P McSherry     jpmcsherry@woodlamping.com,

Michael A Roberts     mroberts@graydon.com

**1:02-cv-351 Notice will not be electronically mailed to:**

Christy M Holmes
Wood & Lamping - 1
600 Vine Street

Suite 2500
Cincinnati, OH 45202

)

Clifford J Shoemaker
Shoemaker & Associates
9711 Meadowlark Road
Vienna, VA 22180

)

)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ERIC JEFFRIES,<br>    PLAINTIFF<br><br>VS.<br><br>CENTRE LIFE INSURANCE<br>COMPANY,<br>    DEFENDANT | CASE NO. 1:02-CV-351<br>(BECKWITH, J.)<br>(HOGAN, M.J.) |

### ORDER

As has become a familiar pattern in this case, there are again multiple discovery disagreements which have taken an inordinate amount of this Court's time and attention. These disputes were the subject of an informal hearing in chambers on March 22, 2004. The hearing was not on the record, but the parties' arguments are memorialized in the various motions, memoranda in opposition and reply briefs previously filed.

### THE TESTIMONY OF DRS. GARB AND REED

First before the Court is Plaintiff's Emergency Motion to Exclude Drs. Garb and Reed (Doc. 170), Defendant's Memorandum in Opposition (Doc. 177) and Plaintiff's Reply (Doc. 179). It was represented to this Court that Dr. Garb was retained by Defendant to assist it in making various decisions relative to Plaintiff's disability claim. Dr. Reed is one of Plaintiff's treating physicians. The trial deposition of Dr. Garb was noticed by Defendant for March 24, 2004 in Boston, Massachusetts. Dr. Reed's deposition was noticed for April 14th, presumably in Cincinnati. Plaintiff seeks both to exclude the trial testimony of these two doctors and to preclude their depositions because: (1) the deadline for identifying fact witnesses was November 29, 2002 and neither doctor was identified as a fact witness, (2) the deadline for identifying expert witnesses was December 5, 2003 and neither doctor

was identified as an expert witness, (3) if the testimony was allowed, Plaintiff would be prejudiced, and (4) if the testimony was not permitted, Defendant would not be prejudiced because Defendant has other witnesses to testify.

Plaintiff has offered to stipulate to both the authenticity and admissibility of all reports and documents by either or both doctors to the extent that these reports and documents are contained in the Claims File. Because Judge Beckwith precluded Defendant from adding to its expert witness list, Plaintiff theorizes that Defendant is attempting to elicit expert testimony as fact testimony in an effort to circumvent Judge Beckwith's earlier ruling. (See Doc. 140).

Defendant argues that the November, 2002 deadline for the identification of lay witnesses was vacated and never reset and that both doctors would be testifying as lay and not expert witnesses. Defendant represents that Dr. Reed would be asked to testify about the dates he treated Plaintiff, his examination of the Plaintiff and his findings. Defendant represents that Dr. Garb will be asked to testify about his participation in the claim review process.

One of the issues in this case is the alleged bad faith of Defendant, as exhibited by its handling of Plaintiff's claim for disability coverage. It is important for the fact finders to understand what Defendant did and why it did it. In the jury's consideration of the "why" component, Defendant should be permitted to describe its reliance upon medical experts. On the same topic of "why," the Plaintiff should be permitted to explore Defendant's motivation for the claims decision. Neither inquiry is governed by Evidence Rule 702, et seq. In other words, a treating physician, although an expert witness qualified to voice a professional opinion within his/her field of expertise, is not the type of retained expert contemplated by the Rules. The Court does not accept the Plaintiff's theory that Defendant is attempting to circumvent Judge Beckwith's ruling that Defendant may not now add to its expert witness list. Both the disputed witnesses may well be called as fact witnesses, not subject to the deadline set for expert disclosures.

A more difficult problem is Defendant's failure to honor the deadline set for the disclosure of fact witnesses. Although this Court probably should have extended that deadline in accordance with previous calendar extensions, it was inadvertently overlooked and never addressed by either counsel until the present dispute developed. The second consideration is that a videotaped trial deposition is fundamentally different than a discovery deposition and not subject to discovery deadlines. Although

professional courtesy, if not required civility, would dictate that trial depositions not take place during the countdown to trial, experience with this case should have dictated that a deadline for trial depositions be set as well. The issue really should be decided on a prejudice basis. Plaintiff's offer to stipulate both the authenticity and admissibility of both doctor's records does not completely wipe out any potential prejudice to Defendant, since issues of credibility cannot be assessed from a printed record. On the other hand, Plaintiff's attention to the preparation of his case would be diverted by a trip to Boston and the planning of such a journey. A factor to be considered is whether Plaintiff complied with the original deadline for the disclosure of fact witnesses and Plaintiff's admission that he did not. An equally important consideration is the likelihood of surprise. It is presumed that both counsel know all about both doctors' involvement in this case and what the thrust of their testimony would be.

On balance, the Court does not find that either deposition should be precluded. In order to insure that the doctors are testifying about factual issues, Defendant shall supply the Court with all records, reports and documents authored by either of them three days prior to the summary jury trial. In addition, because of the late timing of the notices, Defendant shall pay for Plaintiff's counsel's trip to Boston.

### DEFENDANT'S MOTION TO SEAL EXHIBIT 3

Defendant's Motion to Place Exhibit 3 Under Seal (Doc. 174) is unopposed and hereby granted. The exhibit contains information from the personnel file of one of Defendant's employees. The Court finds such information to be protected from public inquiry and Plaintiff's failure to take issue with this fact to be sensible.

### FINANCIAL INFORMATION

Before the Court is Plaintiff's Emergency Motion to Compel Production (Doc. 171), Defendant's Memorandum in Opposition (Doc. 176) and Plaintiff's Reply (Doc. 178). The Plaintiff's Motion details several of Defendant's failures to make required disclosures. For organizational purposes, our approach is to resolve these on an individual basis. The first is Plaintiff's argument that Defendant owes it previously requested financial information, both on the issues of bad faith and

punitive damages. Specifically, Plaintiff requested: (1) annual and/or consolidated financial statements for the period 1999 to the present, (2) all financial reports exchanged between DMS and Defendant from 1999 to the present, and (3) all budgets and financial reports relating to DMS' Centre Life block of business from 1999 to the present. Plaintiff argues that *United States v. Matusoff Rental Co.*, 204 F.R.D. 396 (S.D. Ohio 2001) compels the disclosure of the information Plaintiff seeks.

Defendant also cites the *Matushoff Rental Co.* case for the proposition that when financial information is required to be disclosed, the trial should be bifurcated. The decision whether to bifurcate the trial is non-dispositive, but so intricately related to the trial itself, that the better practice is to defer to the District Judge on this issue. However, since a summary jury was ordered by the District Judge and since it makes no sense to deprive a summary jury panel of information relevant to the punitive damage, bad faith issues, the requested financial information must be disclosed, but under a Protective Order preventing its publication or communication to those who are not participants in the trial of this case.

## BACK-UP TAPES

The Court previously ordered the Defendant to search its back-up computer tapes and the procedure understood by the parties was that Plaintiff, distrustful of Defendant, would send its computer expert to oversee the information retrieval process. Plaintiff has now concluded that he cannot afford to send a computer expert and must, of necessity, trust Defendant to carry out its Court-ordered duty with honesty. Defendant does not wish to proceed in the absence of Plaintiff's expert because it fears that Plaintiff will ultimately accuse it of some form of dishonesty if its search produces nothing of substance. That Plaintiff cannot or chooses not to oversee the retrieval operation does not excuse non-compliance with a Court Order. The retrieval should be made immediately and Defendant's in-house counsel shall certify to its integrity.

## ADMINISTRATIVE SERVICES AGREEMENT

Plaintiff seeks a copy of the contractual agreement between Defendant and DMS, the company hired to administer disability claims under Defendant's policies. Plaintiff's claim of bad faith is based, in part, on financial incentives paid to DMS which, Plaintiff claims, reflect more than the cost of doing

business and a reasonable profit. Defendant denies that fact and asserts that its business contracts are privileged information. The Court concludes that any fact finder would want to see the contract itself before it reached any conclusion about improper incentives. Defendant's concern is legitimate only with respect to the prying eyes of other business competitors. Thus, this Court finds that the document can be introduced as part of the evidence base in the summary jury trial, but that any trial decisions on the admissibility of evidence should properly be decided by the trial judge. In either event, the document should be protected from any distribution or communication to others not participants in this trial.

### FOLLOW UP TO PERFORMANCE EVALUATIONS

There were certain redactions made from the performance evaluations of certain of Defendant's employees. These redactions relate, according to Plaintiff, to performance goals of DMS for Centre Life's business and how these goals were exceeded. Defendant argues that the redactions refer to "other blocks of business and other individuals not involved in the Plaintiff's claim." If Plaintiff is correct, the information is extremely relevant; if Defendant is correct, the information was properly redacted. The only way to get at the truth is to order the disclosure of the redacted material and make it subject to a Protective Order and that is the path this Court takes.

### SUBPOENAED MATERIALS

Plaintiff seeks copies of materials that Defendant obtained via third-party subpoenas. Plaintiff says that Defendant complied with reference to two subpoenas and then ceased further disclosures. Defendant does not address Plaintiff's argument and therefore, it is unopposed. Being unopposed, Plaintiff's argument carries the day and his Motion is hereby granted.

### MISCELLANEOUS ITEMS

Plaintiff previously requested surveillance materials, a verification page and a list of 6th Circuit cases in which Defendant and DMS have been sued for bad faith. These items appear to be moot in light of representations made by Defendant. Defendant suggests that it reproduce copies of surveillance materials, but that if it has previously done so, Plaintiff be ordered to pay the costs. The Court adopts Defendant's plan for duplication of the surveillance tapes with reluctance, because the

Court does not wish to be drawn into a controversy centering on whether or not Defendant previously produced the tapes or not.

**IT IS THEREFORE ORDERED THAT**:

Plaintiff's Emergency Motion to Exclude the Testimony of Drs. Garb and Reed (Doc. 170) is denied. Defendant's Motion to Place Exhibit 3 Under Seal (Doc. 174) is granted. Plaintiff's Emergency Motion to Compel Production (Doc. 171) is granted in part and denied in part in accordance with this decision.

March 23, 2004

                                                s/Timothy S. Hogan
                                        Timothy S. Hogan
                                        United States Magistrate Judge