UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JEFFERSON-PILOT LIFE INSURANCE COMPANY, | : | Case No. C-1-02-479 |
| | : | |
| Plaintiff, | : | (Judge Spiegel) |
| | : | (Magistrate Judge Hogan) |
| vs. | : | |
| | : | **PLAINTIFF'S POST-HEARING** |
| CHRISTOPHER L. KEARNEY, | : | **BRIEF** |
| | : | |
| Defendant. | : | |

## I.     INTRODUCTION

On August 17, 2004, the parties appeared before the Court and argued Defendant's Motion for Partial Summary Judgment. In lieu of oral arguments on Plaintiff's Cross-Motion for Summary Judgment, post-hearing briefs are being submitted. Jefferson-Pilot and Disability Management Services, Inc. respectfully request that the Court grant their Motion for Summary Judgment.

Where a contract of insurance is plain and unambiguous, it is the obligation of a Court to apply the terms of that policy to carry out the intent of the parties. At issue in this case are two identical policies of total disability insurance. In addition, each policy has three separate riders: a Residual Disability Rider, a Social Security Supplement Rider, and an Additional Increase in Benefits Rider.[1] Of these three riders, two of them, the Social Security Supplement and the Additional Increase in Benefits Rider, only apply to claims of Total Disability.

Because Mr. Kearney purchased a Residual Disability rider, his policies now provide two distinct benefits. If Mr. Kearney is completely unable to work in his occupation, then he

---

[1] This rider has been referred to in oral argument as a COLA rider.

may be eligible for Total Disability benefits under the basic provisions of his policy. Total Disability is defined in his policy as:

> "Total Disability means that you are unable to perform the duties of your occupation. Your occupation means:
> (1) during the elimination period and for the first five years of a period of disability, the occupation in which you are regularly engaged at the time you become disabled; and
> (2) thereafter, any gainful occupation in which you might reasonably be expected to engage because of your education, training or experience.

*See*, Exhibit B. The basic policy provisions only provide benefits to Mr. Kearney if he is unable to work in any capacity.

In addition to the basic policy, Mr. Kearney purchased a Residual Disability rider, This is where the second distinct benefit is found. Because Mr. Kearney purchased the Residual Disability rider, he may be entitled to the Residual Benefit if he returns to work on a less than full-time basis due to disability. This is what happened in this case. Mr. Kearney returned to work but not at full capacity. If he did not have the Residual Disability rider, his benefits would have ended at the time he returned to work.

Under the Residual Disability rider, Mr. Kearney is entitled to a Residual Disability Monthly Benefit. This amount may be anywhere from zero to 100% of the Monthly Benefit shown in the Schedule based upon Mr. Kearney's loss of income. "Monthly Benefit" is the amount shown in the schedule as such. *See*, Exhibit F. The Residual Disability rider provides a formula whereby the Residual Disability Monthly Benefit is calculated as a portion of the Monthly Benefit shown on the basic policy schedule determined by the insured's loss of income. The formula applied is:

$$\frac{\text{Loss of Monthly Income}}{\text{Prior Monthly Income}} \times \text{Monthly Benefit} = \text{Residual Disability Monthly Benefit}$$

Where an insured's loss of income is more than 75% of his prior monthly income, he is entitled to 100% of the Monthly Benefit amount shown on the policy schedule. In other words, where an insured's income loss is greater than 75%, then he may be entitled to 100% of the Monthly Benefit amount which would also be the same dollar amount as the initial Total Disability benefit unaffected by any increase. Because Mr. Kearney purchased the Residual Disability rider, he can return to work, earn money and still receive the Residual Disability benefit that would otherwise be precluded under Total Disability.

It is **undisputed** that Mr. Kearney's claim is one for Residual Disability. It is also undisputed that the Monthly Benefit amount on the policy schedule for Total Disability and "maximum" Monthly Benefit for Residual Disability is the same. *See*, Exhibit I, policy schedules. The same amount does not mean the same benefits. The unfortunate fact that gives rise to this case is that for several years, first Jefferson-Pilot and then Disability Management Services, incorrectly paid Total Disability benefits on what was admittedly a Residual Disability claim. Plaintiff seeks to correct this mistake and pay only the appropriate benefit in the future rather than perpetuate the mistake indefinitely. Although Jefferson-Pilot does not seek repayment of the erroneously overpaid amount, it does ask that the Court declare its right to correctly apply the plain and unambiguous terms of the policy. Mr. Kearney is admittedly Residually Disabled, and his benefit is governed by the Residual Disability Rider of the policy.

## II.    ARGUMENT

Mr. Kearney purchased two disability policies in 1990 and 1991. These policies are identical, except for the amount of the "Monthly Benefit" on the policy schedule. The first, effective May 28, 1990, provides a Monthly Benefit of $2,125.00. The second policy was

effective May 28, 1991 and has a Monthly Benefit of $1,375.00.  Each contains a 2-year incontestable provision.  Two years after he purchased the 1991 policy, Mr. Kearney notified Jefferson-Pilot that he was disabled, and his benefits were paid in May 1993.  As counsel have stipulated, Mr. Kearney claimed and received approximately 4 months of Total Disability Benefits and then after a period of 6 months, during which no claim as made for any disability, he filed a new claim for the Residual Disability Benefit.  *See* Exhibit A, transcript of hearing at p. 67.

It is important to remember that the **uncontested** fact in this case is that Mr. Kearney's claim is one for Residual Disability.  *See* Exhibit A at p. 67.  On Mr. Kearney's October 1994 Disability Claim form, he indicated that he worked 4-6 hours a day.  He also noted that his partial disability began in February 1993, although it does not appear that he made a claim at that time.  He has consistently indicated on his claims forms that he is Residually Disabled.  *See* Exhibit G of Jefferson-Pilot's Motion for Summary Judgment, sample claims forms. On these forms Mr. Kearney has answered "No" to the question of whether he is Totally Disabled and "Yes" to the question of whether he is Residually Disabled.  **In other words, the nature and level of Mr. Kearney's disability is not in dispute, just the amount.**  There is no contested issue of fact as to the nature or extent of Mr. Kearney's disability.  He, the insurance company and his treating doctors have all concluded that he is not Totally Disabled and is in fact only Residually Disabled.  No evidence to the contrary has been produced and Mr. Kearney continues to work.

Under the terms of Mr. Kearney's Residual Disability Rider, if his loss in income is greater than 75% of his Prior Monthly income, he is entitled to receive the maximum Residual Disability benefit as set forth in the Residual Disability Rider.  The amount of the

"maximum" Residual Disability benefit is the same as the Monthly Benefit for Total Disability shown on the policy schedule (i.e. $2,125.00 on one policy and $1,375.00 on the other).[2] Jefferson-Pilot has correctly paid 100% of Mr. Kearney's Residual Disability Benefit based on his loss of income.  They have incorrectly included Social Security Supplement Benefits and the Increase in Benefits for Total Disability in the payment.  These additional benefits are not applicable to a Residual Disability claim.  It is these benefits that Jefferson-Pilot and DMS ask that the Court declare are unambiguously applicable only to periods of Total Disability by virtue of the simple declarative sentences in the policy that define the eligibility for these additional benefits.

     **A.**    **Mr. Kearney's Social Security Supplement And Increase In Benefit Riders Only Apply To Total Disability**.

Mr. Kearney's basic policies provide for payment of a monthly amount if he is Totally Disabled.  As part of the basic policy, there is an Increase in Benefits provision which provides for a 3% annual increase in benefits after an insured has been Totally Disabled for 12 months.  There has never been a claim that Mr. Kearney was Totally Disabled for 12 consecutive months, and this provision, on its face, does not apply to Mr. Kearney.  The clear and unambiguous language of the policy states:

> **Increase in benefits**.  *After you have received benefits for **Total Disability** for 12 consecutive months*, your Monthly Benefit will be increased *during the continuance of that Period of Disability* up to your 65th birthday.  The increase will be 3% of the Monthly Benefit shown in the Schedule *for each successive 12 month Period of **Total Disability** after the first Period*.  The benefit payable will not be increased for the part of any Period of Total Disability beyond your 65th birthday.

---

[2] *See*: Schedule of benefits for each policy attached as Exhibits C and D to Plaintiff's Motion for Summary Judgment.

*See*, Exhibit B, pp. 3-4 of Policies. It is an unambiguous prerequisite of this provision that an insured have received 12 consecutive months of benefits for Total Disability. One of the riders purchased by Mr. Kearney increases this 3% annual increase to a 7% annual increase. Like the basic 3% increase, the 7% increase is also contingent upon a 12 month consecutive **Total Disability** of the insured. The proposal submitted by Mr. Kearney, although not a part of his policy, consistently describes this rider is an "Optional Increase In Benefits During **Total Disability**." *See*, Proposal, attached hereto as Exhibit E. at p. 2.

The Increase in Benefits provision also modifies the Prior Monthly Income Calculation of the Residual Disability Rider in that it allows the Prior Monthly income number to adjust. This artificial adjustment to an otherwise static number is designed to offer some protection to the Residually Disabled Insured from the effects of inflation. It is the only place in the rider which incorporates the Increase in Benefits provision by reference and applies it only to the Prior Monthly Income.

Assume for example that an Insured had a Prior Monthly Income of $10,000 and a Current Monthly Income of $5,000 due to his ability to only work part time due to his disability. Assume also that he has a Monthly Benefit on the Schedule of $8,000. To calculate his Residual Benefit by the formula he would receive a benefit of $4,000. The formula is:

$$\frac{\text{Loss of Monthly Income}}{\text{Prior Monthly Income}} \times \text{Monthly Benefit} = \text{Residual Disability Monthly Benefit}$$

$$\frac{10{,}000 - 5{,}000}{10{,}000} \times 8{,}000 = 4{,}000$$

However, if we assume that in the following year with no change in his disability, the same amount of work yields a Current Monthly Income of $5250 due to inflation of 5%, his benefit would be reduced because $10,000-$5250=Loss of Income of only $4750. Thus, the calculation would be:

| Loss of Monthly Income / Prior Monthly Income | X | Monthly Benefit = | Residual Disability Monthly Benefit |
|---|---|---|---|
| 4,750 / 10,000 | X | 8,000 | = 3,800 |

In order to offset this problem for the insured, the Residual Disability rider applies the percentage set by the Increase in Benefits provision to the Prior Monthly Income. Thus in our example, the calculation would be:

| Loss of Monthly Income / Prior Monthly Income | X | Monthly Benefit = | Residual Disability Monthly Benefit |
|---|---|---|---|
| 10,700-5,250 / 10,700 | X | 8,000 | = 4,075 |

This is, $10,700.00 (Prior Monthly Income plus 7% adjustment) minus $5,250.00 = $5,450.00 (loss of income), and the benefit calculation becomes $5450.00 divided by $10,700.00 = 50.93% of the Monthly Benefit or $4,075.00.

This provision is the only incorporation of the factors in the Increase in Benefits provision of the Policy (time and percentage) and it specifically applies only to "Prior Monthly Income," and not to the Monthly Benefit.

Mr. Kearney also purchased a Social Security Supplement rider. Under this rider, if Mr. Kearney was **Totally Disabled** and if he applied for, but was denied, Social Security

benefits, he would be entitled to additional monthly payments in the amount of $625.00 under the 1990 policy and $225.00 under the 1991 policy.  The logic behind the Social Security Supplement is clear.  If a person is Totally Disabled, he or she can apply for Social Security disability benefits.  There is no consideration of partial disability under Social Security.  Social Security benefits only consider whether an insured is able to work in any occupation, however.  Where an insured has purchased an own occupation policy, like Mr. Kearney, he may be disabled in his own occupation, but not in others.  He would therefore be ineligible for Social Security benefits.  The Social Security benefit rider protects an insured in the event of Total Disability in his own occupation.  By its very operation, Social Security benefits would never apply to a Residual Disability claim.

The third rider purchased by Mr. Kearney was one for Residual Disability benefits.  Mr. Kearney has argued that the policy he purchased was a Total Disability policy.  This is correct.  The basic benefits of the policy only apply when an insured is Totally Disabled.  Mr. Kearney, however, chose to purchase a Residual Disability rider as well.  This rider protects him in the event that he is able to perform some, but not all, of the duties of his occupation.  It is under this rider that Mr. Kearney is currently receiving benefits.  It is important to remember that if Mr. Kearney had not purchased the Residual Disability rider then under the Total Disability requirement of his base policy, he would not be receiving any benefits at all.

Mr. Kearney argues that the terms of the Residual Disability rider must be substituted for terms found within the basic policy.  This is an incorrect statement.  The Residual Disability Rider is just that; a rider to the insurance policy.  As such, there is contingent operation of some terms.  Where the Residual Disability Rider relies upon terms in the general policy, it specifically references them.  *See* Exhibit F, Residual Disability Rider.  For

example, the Residual Disability Rider references the Policy Schedule. Where this reference occurs, the Schedule applies. Other definitions are self-contained within the Rider, however, such as "Prior Monthly Income" and "Residual Disability." These terms are not modified by the general policy nor do they modify the general policy.

Mr. Kearney has argued that because he has purchased these additional riders for which he paid additional premiums, he should receive the benefits under the riders. This is not a correct statement. Mr. Kearney did purchase the additional riders, but they apply in different situations. For example, the Residual Disability rider would not apply if Mr. Kearney were Totally Disabled. The plain language of the Residual Disability rider states that Total Disability and Residual Disability benefits are mutually exclusive. It reads "The Residual Disability Benefit will not be paid for any period of time that . . . benefits are payable for Total Disability." *See,* Exhibit F. In other words, you cannot receive one while you receive the other. If Mr. Kearney were Totally Disabled, then he would not receive benefits under the Residual Disability rider. He cannot argue that simply because he paid additional premium for the Residual Disability rider, it should apply even if he were Totally Disabled. This is contrary to the plain and unambiguous language of the policy.

Similarly, the additional increase rider and Social Security supplement rider only apply in the event of **Total Disability**. Social Security benefits never come into play in a partial disability situation. And, the Additional Increase in Benefits Rider specifically applies to the Increase in Benefits portion of the basic Total Disability Policy. A prerequisite for the application of the increase provision of the policy is that an insured be **Totally Disabled for 12 consecutive months.**

The fact that Mr. Kearney paid additional premium for the Additional Increase and Social Security riders does not mean he is entitled to them in a Residual Disability situation. The situation is analogous to a homeowner who purchases a basic homeowner's insurance policy. Assume that in addition, the homeowner purchases a jewelry rider which allows for an additional $50,000.00 to insure the homeowner's jewelry. If a homeowner's residence was damaged by a fire, but he or she was wearing the jewelry at the time, and it escaped damage, the insured would not be entitled to benefits simply because he had paid additional premiums under the jewelry rider. It is only if the jewelry is lost or damaged that the rider would apply. Likewise Total Disability benefits are only available in the event of Total Disability, and cannot be read to be included in a Residual Disability claim.

Jefferson-Pilot concedes that the overpayment was an error on its part. It is because of this error that it does not seek reimbursement of the overpayment. Mr. Kearney made his claim at a time when Jefferson-Pilot was closing down its in-house claims processing. As Mr. Shelton testified in deposition, claims people were retiring or leaving the department and were not replaced. *See* Exhibit C, Shelton Deposition at pp. 83-84. At the time Mr. Kearney made his claim, Mr. Shelton and two other claims examiners were handling about 1,000 claims per month and were understaffed. *Id.* at p. 83. As Mr. Shelton testified, the goal of the claims department was simply to pay claims. *Id*. at p. 7. Unfortunately, Mr. Kearney's claim was paid incorrectly.

After four months, Mr. Kearney's original claim for Total Disability Benefits shifted to a Residual claim for the full Monthly Benefit amount since Mr. Kearney had returned to work but incurred an income loss of greater than 75%. As noted above, if not for the Residual Disability rider, no benefits would have been available to Mr. Kearney once he

returned to work.  Because of the amount of his loss of income, the Monthly Benefit amount did not change when the claim went from Total to Residual.  Initially therefore, the amount paid for the Total Disability claim and that paid for the Residual Disability claim was the same.  This does not mean they were the same benefits under the policies however.  In error, Jefferson-Pilot applied both the Increase in Benefits provision as modified by the Additional Increase in Benefits rider and the Social Security Supplement rider to Mr. Kearney's Residual Disability claim.  This error was perpetuated over the years, primarily because Jefferson-Pilot's interest was in continuing to pay claims timely in a situation where there was insufficient staff to deal with the claims volume.  It was not until one of Mr. Kearney's previous attorneys continued to request certified copies of the policies that the error in payment was discovered.  *See*, Exhibit G, Deposition of Robert Mills at pp. 110-111.

This is admittedly an unusual situation.  Had Mr. Kearney been underpaid for 10 years, it surely would have come to the attention of Jefferson-Pilot and DMS sooner, likely because Mr. Kearney would have brought it to their attention.  Because Mr. Kearney was being overpaid however, the error perpetuated unchallenged.  This is only logical.  The fact that the error perpetuated unchallenged does not mean that it must be perpetuated indefinitely.  Jefferson-Pilot seeks to have the terms of Mr. Kearney's policies applied as written.  This means that under the Residual Disability rider Mr. Kearney is not entitled to the increase in Total Disability benefits per the basic total disability policy, the Additional Increase in Benefits rider, nor the Social Security Supplement rider.

### B.     Ohio Law Requires That Mr. Kearney's Policies Be Applied As Written, Not Redrafted To Increase Coverage.

Jefferson-Pilot asks the Court to read the clear and unambiguous language of the policies before it and apply those terms.  The Ohio Supreme Court has consistently held that

insurance contracts must be construed in accord with the same rules as other written contracts. *Hybud Equipment Corp. v. Sphere Drake Ins. Co., Ltd*. 64 Ohio St. 3d 657, 579 N.E. 2d 1096 (1992); *Universal Underwriters Ins. Co., v. Shuff*, 67 Ohio St. 2d 172, 423 N.E. 2d 417 (1981); *Rhodes v. Equitable Life Ins. Society of the United States*, 54 Ohio St. 2d 45, 378 N.E. 2d 643 (1978). The primary consideration is the language of the policy's provisions. If those provisions are clear and unambiguous, it is the responsibility of the Court to give effect to the party's intent as expressed through that language. *See Karabin v. State Auto Mutual Ins. Co.*, 10 Ohio St. 3d 163, 167, 462 N.E. 2d 403 (1984). The Ohio Supreme Court has declared that "if a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St. 3d 321, 322, 474 N.E. 2d 271, 272 (1984). Courts have "an obligation to give plain language its ordinary meaning and to refrain from rewriting the contractual agreement of the parties." *See Miller v. Marrocco*, 28 Ohio St. 3d 438, 439, 504 N.E. 2d 67, 69 (1986).

       The obligation of the Court is to read the policies before it and determine whether its terms are clear and unambiguous. Where the terms are clear and unambiguous, the Court may not interpret the language. As the Ohio Supreme Court has stated "when the language of an insurance policy has a plain and ordinary meaning, it is unnecessary and impermissible for this Court to resort to construction of that language." *See Karabin*, 10 Ohio St. 3d at 166-67. This case is not an issue of reinterpretation. There has never been an interpretation, simply an error. Jefferson-Pilot never made a determination that the Increase in Benefits rider and Social Security Supplement rider should apply to a Residual claim. As Mr. Shelton and Mr. Roberson admitted, these payments were made in error. *See,* Exhibit C, Shelton

Transcript at pp. 74-75; Exhibit D, Roberson Transcript at pp. 43-45.  Once the mistake began, it continued.  *Id.,* Roberson at p. 45.  As Mr. Roberson explained, the payments continued un-reviewed because "you don't go back and look at every aspect of the claim each month.  You don't have time to do it."  *Id.*  In fact, at one point it was noted on one of the pages of the claims worksheet, attached as Exhibit H, that COLA does not apply to a residual claim.  The noted response was "we are pay [sic] Total Disability benefits, cola applies."  As Mr. Mills testified, the error in benefits was one begun by Jefferson-Pilot which he then continued.  *See,* Exhibit G at p. 39.  This was not a determination that COLA should apply to a residual claim; rather an error in the conclusion as to whether total or residual benefits were being paid.  Though incorrect, it does explain how the error continued.

In this case, the language of the policies before the Court is clear and unambiguous.  At issue is application of the Residual Disability rider.  The additional benefits which Mr. Kearney has been erroneously paid do not appear in the Residual Disability rider.  The Social Security supplement is its own separate rider.  This supplement clearly and unambiguously states that it applies only to Total Disability.  The Increase in Benefits provision is found only within the body of the policy and clearly requires 12 consecutive months of Total Disability for its application.  Mr. Kearney has argued that in order to apply his benefits, the Court is required to **substitute** the term **Residual** for the term **Total** within the body of the policy.  *See* Exhibit A, Transcript at p. 7.  He concedes that the policy clearly states that to get the Increase in Benefits Mr. Kearney must have received **Total Disability** benefits for 12 consecutive months, but argues **"<u>it should be read</u>,** 'after you have received benefits for **Residual Disability** for 12 months.'"  *See* Exhibit A at p. 7.  **This is a rewrite**.  Mr. Kearney

- 13 -

admits that the policy says "Total" but argues that "Residual" must be substituted. To make this type of substitution in effect rewrites the insurance contract. This Court cannot do.

As Mr. Kearney's counsel argued during the summary judgment hearing, Mr. Kearney's policy is written in terms of Total Disability only. *See* Exhibit, Transcript at p. 17. Mr. Kearney is not Totally Disabled. There is no dispute that his claim is properly being administered as a Residual Disability claim. *See* Transcript at p. 67. Had Mr. Kearney not purchased the Residual Disability rider, he would not have any claim to benefits whatsoever. The only benefits to which he is entitled are those found under the Residual Disability rider. This rider does not apply the Increase in Benefits provision to increase the Monthly Benefit for Residual Disability. As such, the Additional Increase in Benefits rider does not apply to a Residual Disability claim. Similarly, Social Security benefits only apply to a Total Disability claim. To accept Mr. Kearney's interpretation and substitute the word "Residual" for the word "Total" within the body of the policy has the effect of rewriting the contract. The core policy does not provide benefits for Residual Disability. Residual Disability benefits are found only in the rider. To rewrite the core policy by substituting the word "Residual" has the effect of expanding the coverage beyond those to which the parties agreed in the policy. This is not permitted by Ohio law.

Jefferson-Pilot has conceded that they made an error in the initial application of the Increase in Benefit and Social Security to Mr. Kearney's policy. His claim was one for Total Disability for a period of less than twelve months (i.e. **4 months**). When he returned to work and later made a claim for Residual Disability, however, he was entitled to the full **Monthly Benefit** amount because of the extent of his loss of income. The amount of the Monthly Benefit for Total Disability on the schedule and the full amount of Monthly Benefit for

Residual Disability are the same by operation of the terms of the Residual Disability rider. Notably, the rider speaks in terms of the Monthly Benefit as shown on the schedule and not as modified by any increase. Jefferson-Pilot, in error, continued to process the claim as one for Total Disability despite the fact that it was properly characterized as Residual. In so doing, they allowed for both the Increase in Benefits and Social Security benefits, both of which by their own terms require 12 consecutive months of Total Disability. This should not have been done. As Jefferson-Pilot has conceded, the error in applying the additional benefits to Residual Disability was not a matter of interpretation but simply of mistake. There was never a determination that these benefits should apply to a Residual claim. Instead, the benefits were mistakenly added to what was believed to be a Total Disability Claim. Now that the error has been discovered, Jefferson-Pilot seeks to provide the benefit in the policy as written and cease the mistaken overpayment.

### C. Under Ohio Law Waiver Cannot Expand The Coverage Of Mr. Kearney's Policies.

Jefferson-Pilot does not seek repayment of the erroneously overpaid amounts. As the Court questioned, the responsibility for this error falls on Jefferson-Pilot. For this reason, it has not sought repayment of the erroneously overpaid amounts. It does, however, seek a declaration that it need not continue to make the error in the future. Mr. Kearney has argued that by making this error in the past, Jefferson-Pilot has waived its right to correct in the future. **Ohio law is clear that the doctrines of waiver and estoppel cannot be used to expand the parameters of the literal terms of insurance coverage.** *See Hybud Equipment Corp.*, 64 Ohio St. 3d at 668; *Lakota v. Westfield Ins. Co.*, 132 Ohio App. 3d 138, 144, 724 N.E. 2d 815 (1998); *Erie Ins. Co. v. Favor*, 129 Ohio App. 3d 644, 649, 718 N.E. 2d 968 (1998); *Hartory v. State Auto Mutual Ins. Co.*, 50 Ohio App. 3d 1, 522 N.E. 2d 223 (1998).

In addressing the issues of waiver and estoppel, the Ohio Supreme Court has accepted the well-settled rule of law **"that as a general proposition, the doctrine of waiver cannot be employed to expand the coverage of a policy."** *See Hybud,* 597 N.E. 2d at 668 citing 16B *Appleman Insurance Law & Practice* (1981) 579, §9090.  In *Hybud*, the issue was whether the insurer had waived its right to invoke an exclusion under the policy by failing to raise the exclusion in a letter denying coverage.  In rejecting the doctrine of waiver, the Court held that waiver and estoppel cannot define the basic scope of the coverage under the policy. In holding that the insurance company had not waived its right to invoke a pollution exclusion by not raising it in a denial letter, the Court held that "a company should not be obligated to cover a risk for which it did not contract." *Id*.  The same situation exists here.

The contract between Jefferson-Pilot and Mr. Kearney allows for Social Security Supplement benefits if an insured is Totally Disabled and not entitled to Social Security benefits.  Jefferson-Pilot did not contract to provide Social Security supplements where an insured is Residually Disabled.  Similarly, the Increase in Benefits provision of the policy applies only when an insured has been Totally Disabled for twelve consecutive months. There is no provision for an Increase in Benefits where an insured is Residually Disabled, regardless of length of disability, because his monthly benefit can change from month to month under the formula based upon his income.  To allow application of the Social Security and Increase in Benefits provisions in the case of Residual Disability, as well as Total Disability, would operate to rewrite the policy terms and increase the coverage under the policy.  This is contrary to Ohio law.

Jefferson-Pilot asks the Court to consider the reverse situation.  If Mr. Kearney were in fact being paid less than the full amount he deserved, and this payment had continued in

error for ten years without discovery by either side, would Jefferson-Pilot and DMS be able to claim waiver? No. The same situation exists here. The fact that Mr. Kearney has been erroneously overpaid does not merit the determination that this erroneous overpayment must continue indefinitely. Jefferson-Pilot and DMS respectfully request that the Court grant their Motion for Summary Judgment.

Finally, it is anticipated that Mr. Kearney will argue that his benefit amount should not be corrected to that which is provided under the terms of the policy because this will cause a hardship to him. If the erroneous amount is allowed, however, this will rewrite the policy to expand coverage by waiver which expansion is prohibited under Ohio law. Mr. Kearney contracted for a Residual Disability benefit. Residual Disability does not provide for benefit increases and social security supplements. This was the intent of the parties when the policies were purchased and it is the intent the Court must now enforce. Jefferson-Pilot's mistake cannot rewrite the contract.

### III.    CONCLUSION

Jefferson-Pilot is not asking the Court to reinterpret the terms of Mr. Kearney's policies. The policy provides certain benefits for Total Disability. These include a monthly payment, an annual increase in the monthly payment to offset inflation, a waiver of premium and, if applicable, a Social Security Supplement. The residual Disability rider provides a single benefit: a payment of a percentage of the sum certain specified as Monthly Benefit in the Schedule. The Increase in Benefits Provisions and the Social Security Supplement were applied to Mr. Kearney's Residual Disability claim in error. There is no dispute that his claim is one for Residual Disability only. There is also no question that the maximum Monthly Benefit for Residual Disability amount is equal to the Monthly Benefit **amount** in

the schedule for Total Disability.  Jefferson-Pilot erroneously treated Mr. Kearney's claim as one for Total Disability despite the fact that it was one for residual.  There was never an interpretation on the part of Jefferson-Pilot or DMS that these additional benefits should apply to Residual as well as Total.  Jefferson-Pilot is not asking the Court to reinterpret, it is simply asking the Court to correct its mistake for the future.  Social Security and Increase in Benefits should never have been applied to Mr. Kearney's benefit amount.  They were applied in error due to the overwhelmed and overworked claims department.  The goal of the claims department was simply to continue to pay claims in good faith.  Mr. Kearney's claim was paid, but it was paid too much.  Jefferson-Pilot and DMS therefore respectfully requests that the Court grant their Motion for Summary Judgment.

                Respectfully submitted,

OF COUNSEL:

WOOD & LAMPING LLP

s/ William R. Ellis
William R. Ellis (0012279)
Peter M. Burrell (0044139)
Amy Gasser Callow (0063470)
600 Vine Street, Suite 2500
Cincinnati, Ohio 45202-2491
Telephone:  (513) 852-6000
Telefax:     (513) 852-8087

Attorneys for Plaintiff
Jefferson-Pilot Life Insurance Co.

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this 22nd day of August, 2004. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                                         s/Amy Gasser Callow
                                                                         Amy Gasser Callow, Esq.

216673.3