Case 1:02-cv-00479-MRB   Document 88-4   Filed 03/24/2004   Page 1 of 6

Jefferson-Pilot Insurance Company vs. Christopher
Harold Shelton

C-1-02-479
5/7/2004

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

JEFFERSON-PILOT INSURANCE COMPANY,  )
                                    )
                        Plaintiff,  )
                                    )
vs.                                 )   CASE NO.
                                    )   C-1-02-479
CHRISTOPHER L. KEARNEY,             )   (Judge Spiegel)
                                    )
                        Defendant.  )

COPY

The deposition upon oral examination of HAROLD SHELTON, being taken pursuant to Order and in accordance with the Federal Rules of Civil Procedure before Rebecca J. Huddy, Notary Public, at the Marriott, 304 North Greene Street, Greensboro, North Carolina, on the 7th day of May, 2004, beginning at 12:20 p.m.

Page 7

1  A.  Health, yes.

2  Q.  So throughout the '90s you were doing -- overseeing claim analysts in the disability insurance claim field?

5  A.  And hospital, yes.

6  Q.  And hospital. Were there a lot of mistakes being made because the department was overloaded?

8  A.  I felt with the volume of work that was there, our folks did a great job. I think, you know, we were constantly concerned about the welfare of the insured. Whatever this may appear, our major concern was that we get the folks their benefits, that we pay the claims according to the contracts, and that was our primary focus. I do feel that we had -- the reason I got involved in the claim and JL got involved in the claim was because of the staffing, we just needed all the help we could get in those situations.

18  Q.  Are you talking about Mr. Roberson when you refer to JL?

20  A.  Yes, JL Roberson.

21  Q.  Within the past -- well, at your meeting with Mr. Ellis when he conducted and shared with you the revelation that you had made a mistake, did he give you the opportunity to look at the policy?

25  A.  We did briefly review the policy and provisions of the

Page 74

```
 1        conclusion.
 2  A.    No.
 3  Q.    Sir, at the beginning of your deposition counsel asked
 4        you if I was the one who advised you that a mistake
 5        had been made, and you admitted that that was the
 6        case.  Did you in your own review of the policy and
 7        the attachment to the policy conclude whether or not I
 8        was correct that there had been a mistake --
 9              MR. ROBERTS:  Are you talking about after you
10        told him or before?  What time period?
11              MR. ELLIS:  At any time.
12              MR. ROBERTS:  Well, let's break it down,
13        would you do that for me, to be clear on the record?
14              MR. ELLIS:  No.
15  Q.    At any time did you determine for yourself whether or
16        not there was an error made in the payment of benefits
17        to Mr. Kearney regarding increase in benefits or the
18        Social Security benefit?
19              MR. ROBERTS:  Objection.
20  A.    Yes.
21  Q.    Are you saying that only because I brought it to your
22        attention or is that based upon your review of the
23        actual contract between the parties?
24              MR. ROBERTS:  Objection.  He's testified he
25        hasn't reviewed the entire contract.
```

Page 75

```
1   A.   After going through the material and reviewing that, I
2        determined that on my own.
3             MR. ROBERTS:  Objection, move to strike,
4        calls for a legal conclusion.
5   Q.   Counsel in his question argued to you about whether or
6        not there is a specific prohibition in the residual
7        disability rider that says you don't get Social
8        Security or COLA benefits.  I'm going to ask you to
9        look at Exhibit 4 again, which is those riders, and is
10       there any specific exclusion to him receiving a
11       benefit if his house burns down?
12            MR. ROBERTS:  Objection, calls for a legal
13       conclusion, irrelevant, argumentative.
14  Q.   Pardon?
15  A.   No.
16  Q.   Are these riders in this contract designed to explain
17       what they don't provide or what they do provide?
18  A.   What they do provide.
19            MR. ROBERTS:  Objection, calls for a legal
20       conclusion.
21  Q.   Counsel argued with you or asked you to review the
22       elimination period --
23            MR. ROBERTS:  Bill, I asked him questions.  I
24       didn't argue with him.  Unless you change your
25       phrasing of the question, I'm going to object for
```

Page 83

1  Q.  Were you aware of whether or not at the time it was
2      accurate that total disability benefits versus
3      residual disability benefits were being paid?
4  A.  No.
5          MR. ROBERTS: Objection.
6  A.  I was not.
7  Q.  Is that the type of confusion you were referring to
8      between total and residual in Mr. Kearney's claim?
9          MR. ROBERTS: Objection, leading.
10 A.  I would think so, yeah.
11 Q.  Sir, of the five of you handling the claims during the
12     period of time '94 to the time you retired -- well,
13     let me ask it this way. At the time you retired, how
14     many of you were there?
15 A.  Four of us.
16 Q.  Who were they?
17 A.  That was -- well, actually three of us: Phyllis, Kim,
18     and myself.
19 Q.  What was the claim load that you three were handling?
20 A.  I suspect a thousand a month, a thousand claims a
21     month.
22 Q.  Were the three of you physically capable of managing
23     that many claims per month?
24         MR. ROBERTS: Objection.
25 A.  Well, we had to. We didn't have any option at that

Page 84

```
 1        time.
 2   Q.   Did you have the time to review each claim each month
 3        as the payment requests came in?
 4             MR. ROBERTS:  Objection.
 5   A.   No, I doubt it.  I think that the shortcoming that we
 6        had was not being able to dig a little deeper into all
 7        of the claims when they were being processed.
 8        Primarily we were concerned about getting the benefits
 9        out.
10   Q.   Was the lack of resources partially at fault, in your
11        opinion --
12             MR. ROBERTS:  Objection, misstates facts, no
13        foundation.
14   Q.   -- for the error in payments in Mr. Kearney's case?
15             MR. ROBERTS:  Objection, no foundation,
16        misstates facts, leading.
17   A.   Yes, I think so.
18             MR. ELLIS:  Thank you, sir.  That's all I
19        have.
20
21   FURTHER EXAMINATION (by Mr. Roberts):
22
23   Q.   All right.  Let's pick it up there.  Now, Mr.
24        Kearney's claim was a claim that was getting
25        attention.  You testified that when Chris Kearney
```