### IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **JEFFERSON-PILOT LIFE INSURANCE CO.,** | ) | **CASE NO. C-1-02-479** |
| | : | |
| Plaintiff, | ) | **JUDGE SPIEGEL** |
| | : | **Magistrate Judge Hogan** |
| vs. | ) | |
| | : | |
| **CHRISTOPHER L. KEARNEY,** | ) | |
| | : | |
| Defendant. | ) | |

### DEFENDANT'S POSTHEARING MEMORANDUM  SUPPORTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
### OPPOSING PLAINTIFF'S COMPETING MOTION FOR SUMMARY JUDGMENT

The Policy that Christopher Kearney purchased from Jefferson-Pilot directly - or, alternatively, by way of ambiguity - provides Mr. Kearney with the right to residual disability benefits consisting of: (i) an annual 7% cost of living increase ("COLA"); (ii) monthly Social Security Supplement ("SSS") payments; and (iii) waiver of premium.

Jefferson Pilot's ("JP") new argument to the contrary (*created by Disability Management Services, not JP, the author of the Policy*) is unsustainable.  This is clear form: (i) the Proposal; (ii) the Payment History; (iii) the Policies; and (iv) the Purchased Riders.

Remarkably, JP now requests that this Court find that the Policy <u>unambiguously</u> does not permit the payment of COLA, SSS, or Waiver of Premium to Mr. Kearney <u>even though</u>:

- It is undisputed that the Proposal - authored by knowledgeable persons employed by JP - advised Mr. Kearney that the Policy provides him with COLA, SSS, and waiver of premium while on residual disability;

- Each of the four (4) members of JP's claims department (including a Vice-President who participated in the creation of the Policy) who collectively

had approximately 140 years of experience with JP: (i) closely examined Mr. Kearney's claim for seven (7) years (1993-2000); (ii) annually applied the COLA adjustment; (iii) twice (2x) each month issued checks to Mr. Kearney inclusive of the SSS benefit; and (iv) applied particularly close scrutiny to the payment of Mr. Kearney's claim because of its monetary value; and

- DMS' expert claim examiners were retained in 1997 to analyze Mr. Kearney's claim and from July 1997 through October 2001, annually approved a COLA adjustment and twice monthly approved the issuance of benefit checks inclusive of the SSS benefit.

Incredibly, notwithstanding the analyses of the many persons identified above, JP now argues that the Policy – *without any ambiguity whatsoever* – does not entitle Mr. Kearney to COLA, SSS, or premium waiver. This new argument contradicts not just the Proposal and Policy, but the understanding and interpretation of the Policy made by:

1.    The JP personnel who drafted the Proposal given to Mr. Kearney in 1990; and

2.    Officers of JP who created the Policy, lawyers, and everyone else at JP and DMS who came into contact with Mr. Kearney's claim from 1993 – October 2001.

At the Hearing of August 17, plaintiff's counsel stated to the Court that "the language could not be simpler . . . you could read this policy as if you were reading the funny papers . . . ." (*See*, *Exh. 5, p. 66*). If these assertions were true, how could the persons who drafted the Proposal before Mr. Kearney even purchased the Policy -- as well as everyone else involved over the past 10 years -- so consistently misinterpret the Policy?

## I.    <u>Summary Of The Hearing Of August 17, 2004.</u>

At the hearing conducted by the Court on August 17, 2004, the Court correctly identified the central fallacy to JP's new interpretation of the Policy, which relates to the value of the "Monthly Benefit" payable under Residual Disability.

As background, and as described in great detail below:

» The Policy (*Exh. 1, attached*) defines "Monthly Benefit" as "the amount shown in the Schedule . . . ;"

» The Residual Disability Rider ("RD Rider," *Exh. 2, attached*) defines "Monthly Benefit" as "the amount shown in the Schedule as such . . . ;" and

» The Schedule (*Exh. 3, attached*) contains only one (1) reference to "Monthly Disability."

As the result of these three undisputed facts, the Court recognized what is obvious: the amount of the "Monthly Benefit" for Residual Disability referred to in the RD Rider must be the same as the amount of the Monthly Benefit for Total Disability. It is. In fact, the Schedule's single reference to "Monthly Disability" falls under the heading "Total Disability." (*Exh. 3*).

While the Schedule separately lists the "additional benefit provisions included," if any, that may have been purchased by a policyholder, there is no dispute that, for purposes of Total Disability, the Schedule's "Monthly Benefit" is increased if the policyholder purchased the Increased COLA and SSS Riders.

And for nearly 10 years there was also no dispute that, for purposes of Residual Disability, the Schedule's single reference to "Monthly Benefit" -- which is incorporated expressly in the calculation of the Residual Disability Monthly Benefit ("RDMB") in the RD Rider – would also be increased if the policyholder has purchased the Increased COLA and SSS Riders.

This mutual understanding and interpretation for nearly 10 years resulted in an application of the Policy _consistent_ with the benefits described in the Proposal given to Mr. Kearney before he purchased the Policy. (*Exh. 4*). Specifically, where, as here, the residual disability loss of income is greater than 75%, the "full benefit for total disability is payable." (*Exh. 4, p. 5*). This "full benefit" is

the "Monthly Benefit" with all "additional benefit provisions included" which are identified on the Schedule.

Seeing that the parties have only recently come to disagree on the method of calculation and amount of the RD Rider "Monthly Benefit" the Court asked plaintiff's counsel rhetorically:

> "THE COURT:  Don't you see a problem if they're measuring something by total Monthly Benefit and you're paying an extra benefit to get an addition to that total Monthly Benefit to cover both the COLA and the Social Security, that one would consider that that's what you'd be getting?  You'd get a benefit equal to the total of the three?" (*See, Transcript, p. 62, attached as Exhibit 5*).

The answer to this rhetorical question is plainly obvious: since there is just one "Monthly Benefit" identified on the Schedule and it is the "Total Disability" Monthly Benefit, its explicit incorporation into the calculation of RDMB - as identified in the RD Rider - requires the inclusion of SSS and increased COLA in the payment of residual disability, just as the parties had done for nearly 10 years and just as the Proposal contemplates.**1**

JP's argument that the "maximum" Residual Disability benefit payable on a residual disability claim and loss greater than 75% is the Monthly Benefit identified in the Schedule without regard for the increases to the Schedule's Monthly Benefit when SSS and Increased COLA riders have been purchased is unsupported by the Proposal, the Policy, of the payment history.  It is an interpretation created by JP only recently.

---

1    In answering this rhetorical question, plaintiff's counsel argued that increases for cost of living were provided to Mr. Kearney even though the Increased COLA provision would not apply in residual disability.  (*Exh. 5 p. 62-*63).  This is not true.  Since Mr. Kearney's loss is 75%+, unless increased COLA applies, as the parties agreed it did for several years, his benefit would remain static.  That would mean he would be effectively receiving less when adjusted for inflation, even though he had for 15 years paid the premium for increased COLA and was promised increased COLA in the Proposal.  Counsel also suggested that although SSS is payable in cases of Residual Disability, it is restricted to persons over the age of 65, a condition that does not appear in any document anywhere.  (*Id., p. 63*).

II.    **Further Analysis.**

  A.    **The Proposal.**

JP gave a Proposal to Mr. Kearney at the time he purchased the Policy so that Mr. Kearney could better understand the benefits he was purchasing. (*Exh. 4*). JP employees knowledgeable of the terms of the Policy created the Proposal. (*See, Excerpts of Deposition Of JP's Vice President, J. L. Roberson, attached as Exhibit 6, p. 19*).

The Proposal indisputably states that in Mr. Kearney's case – since he has at all times experienced at least a 75% loss - JP would pay Mr. Kearney the "<u>full benefit</u> for total disability." (*Exh. 4, p. 5*). This "full benefit" must by definition include the increased COLA, SSS, and premium waiver benefits of total disability.   The Proposal states:

- "Residual Disability pays a percentage of the Basic Benefit [which is defined in the top portion of the same page 2 to be the Monthly Benefit for Total Disability plus COLA] and Social Security Supplement, if applicable,**2** when you are residually disabled . . . ." (*Exh. 4, p. 2, lines 20 to 22*); and

- "Residual Disability . . . the amount of your residual disability benefit will be the percentage of your Basic Benefit and Social Security Supplement benefits if applicable . . . ." (*Exh. 4, p.5, lines 19 to 22*).

Accordingly, pursuant to this twice repeated calculation, Mr. Kearney's Residual Disability benefit consists of two (2) parts:  (i) the "Basic Benefit," and (ii) the SSS benefit.  The Proposal further defines the "first part" - "Basic Benefit" - to include: (i) the " Monthly Benefit for Total Disability" <u>and</u> (ii) the "Percentage Increase In Benefits During Total Disability" (i.e., the COLA or the "Increased COLA" benefit). (*Exh. 4,  p. 2*).

---

2        "Applicability" of SSS is not an issue in contest: Mr. Kearney purchased the SSS Rider.

Under the Proposal, therefore, it cannot be disputed that a person suffering a 75%+ loss is entitled to the full Monthly Benefit for Total Disability which includes COLA and SSS.

However, just in case these repeated definitions were not clear, JP clarified the benefits payable should Mr. Kearney find himself in the circumstance he presently faces:

- "If the loss of earnings is at least 75%, the <u>full benefit</u> for total disability will be payable." (*Exh. 4, p. 5, lines 31 - 32, emphasis added*).

This example contained unambiguously in the Proposal leaves no room for dispute – Mr. Kearney has since 1993 been entitled to the "full benefit for total disability," which must necessarily include COLA, SSS, and premium waiver.**3**

With respect to the increased COLA Rider that Mr. Kearney purchased, the Proposal states that it:

- "increases the 3% increase in benefits described previously to 7%. Applicable to the Basic Benefit and Social Security Supplement benefit if it is payable." (*Exh. 4, p. 2, lines 24 - 27*).

Therefore, once again, since the Residual Disability Benefit includes the Basic Benefit and Social Security Benefit and since the Increased COLA benefit increases each of these factors in the Residual Disability benefit equation, there can be no dispute that Mr. Kearney's Residual Disability Benefits are subject to an annual 7% increase.

Based on the Proposal there can be no legitimate dispute that the parties intended to provide COLA, SSS, and premium waiver to policyholders suffering from "residual disability."

And, importantly, Mr. Roberson testified that in his 40 years with JP he could not recall an occasion where a JP Proposal misstated the terms/rights under a Policy. (*Exh. 6, p. 19-20*).

---

3        The parties have disputed the applicability of the Premium Waiver throughout (*Exh. 7*).

*JP's new argument (created or "uncovered" not by JP's employees but by DMS) that these benefits*

*are not now payable to Mr. Kearney is indefensible in light of the clear language of the Proposal.*

   B.    **The Payment History.**

   After reviewing the Proposal, Mr. Kearney purchased JP's most popular noncancellable

disability insurance policy. (*Exh. 6, p. 25*).

   Mr. Kearney initiated his claim for benefits in 1993.  During the 1990s, the JP claims

department consisted of: two representatives, Mr. Maxwell and Ms. Hardin (with 20 and 30+ years

experience each); a manager, Howard Shelton, with 38 years of experience; and a Vice President of

JP, J. L. Roberson, with 38 years experience.  (*Exh. 6, pp. 5, 9, 34; and Exh. 8, Excerpts Of Deposition Of*

*Howard Shelton, p. 5*).  Importantly, Mr. Roberson's role at JP also required that he participate in the

creation of the Policies and Riders themselves.  (*Exh. 6, pp. 9 – 11, 18 – 20*).

   Ms. Hardin and Messrs. Maxwell, Shelton, and Roberson all participated in the

administration of Mr. Kearney's claim from 1993 to 1997. (*Exh. 6, p. 5*).  On July 8, 1997, JP retained

DMS to join JP in the review and analysis of Mr. Kearney's claim.  (*Exh. 9, Miscellaneous*

*Correspondence, Bates No. 2892*).  These two entities administered the claim jointly from 1997 through

January 2000.  During that time DMS' expert claim analysts as well as its legal department assessed

Mr. Kearney's claim. (*Exh. 9, Bates 2886 and 2880*).  JP turned over the responsibility for the

administration of Mr. Kearney's claim to DMS exclusively in January 2000.

   Because Mr. Kearney purchased 2 policies from JP, he received 2 checks per month from

JP/DMS from 1993 through October 2001. (*Exh. 6, pp. 35 -41; Exh. 10, JP Payment History*).  Each of

these nearly two hundred (200) checks contained payment of the annual COLA adjustment and the

SSS benefit. *Id.*  On occasion, Mr. Kearney specifically asked for JP to analyze whether the COLA

was payable and after a review, the COLA would be applied.  (*See, e.g., Exh. 9, Bates No. 2846*).  On one occasion, after Mr. Kearney had written 2 letters asking DMS to examine the policies closely, DMS made the COLA adjustment and apologized for the delay.  (*Id. Bates 3064*).

And during the seven (7) years that JP remained involved in the claim evaluation (1993-2000), each month JP's Vice President who had a role in the actual development of the Policy itself, reviewed the propriety of the payments and adjustments Mr. Kearney received and signed his initials to the payment authorization.  (*Exh. 6, pp. 35 -41; Exh. 10*).  Mr Roberson conducted this increased scrutiny and analysis because of the value of Mr. Kearney's benefits. (*Exh. 6, p. 35*).

Importantly, for nine (9) years prior to JP's filing of this action, its payment of benefits to Mr. Kearney was consistent with Mr. Kearney's benefit rights outlined in the Proposal.  And it wasn't until 2 days before their May 2004 depositions, when they met with plaintiff's counsel, Bill Ellis, that Mr. Roberson or Mr. Shelton had any impression or belief that the Policy could be construed to not permit COLA or SSS under Residual Disability.  (*Exh. 6, p. 28, Exh. 8, p. 5*).

### C.    Mr. Kearney's Claim Is Not One That Fell Under The Radar For 10 Years.

At the August 17, 2004, hearing on the competing motions for summary judgment, plaintiff's counsel attempted unpersuasively to argue that the several hundred payments made by numerous qualified persons over the course of a decade were erroneous and the result of neglect of Mr. Kearney's claim and ignorance of the Policy's terms.  (*Exh. 5 p. 45*).  This argument is unsupported by logic, reason, and the record evidence.

Moreover, there is no evidence that the people who created the Proposal made a mistake because they were "overloaded" or that DMS made mistakes for 4 years because they too were

"overloaded." Notably, there is no explanation offered for why they may have made the same, consistent errors in interpretation.

As identified above, Mr. Kearney's claim is not one that fell beneath anyone's radar. In fact, the opposite is true.

During the first four years of Mr. Kearney's claim (1993 – 1997):

- JP initially spent three months evaluating whether benefits were payable and if so in what amount (*See, Ex. 9, Bates 2753-2754*);

- In a July 1993 letter to Mr. Kearney, JP wrote: "your disability claim has been carefully reviewed." (*Id., Bates* 2697). And at the same time JP calculated by hand the Residual Disability benefit payable (*Id., Bates 2693*);

- In November 1994 JP again advised that "your latest disability claim has been carefully reviewed . . . " (*Id., Bates 2720*);

- JP "concentrated" more closely on Mr. Kearney's claim than it otherwise would not only because of its monetary value but also because it involved residual disability (*Exh. 8, p. 9*);

- Due to the monetary significance of Mr. Kearney's claim, Mr. Roberson, a JP Vice President who participated in the creation of Mr. Kearney's Policy participated intimately in the day-to-day administration of Mr. Kearney's claim. (*Exh. 6, pp. 7, 9-10; Exh. 8, p. 59-60*). He twice monthly determined the propriety of the payments Mr. Kearney received (*Exh. 6, pp. 35 – 39, 41*);

- Mr. Shelton tried "very hard" to make certain that the payments to Mr. Kearney were correct. (*Exh. 8, p. 59*);

- In 1996, Mr. Kearney specifically requested that JP assess whether he was entitled to COLA on residual disability and they confirmed that he was (*Exh. 9, Bates 2846*);

- In February 1995 and November 1996, JP "audited" Mr. Kearney's claim and file in November 1996 (*Id., Bates 2830, 2793*);

- JP had Mr. Kearney's claim evaluated by internal and external financial experts and provided those experts with detailed analysis of the Policy and claim. (*See, Deposition Exhibits filed separately, Exh. 44, Tab 2*);

- In analyzing the Claim for these financial experts, Vice-President Roberson stated and conceded that "full benefits" had properly been paid to Mr. Kearney, inclusive of COLA and SSS. (*Exh. 9, Bates 2817-2818*);

- JP advised Mr. Kearney that the premium waiver benefit "appeared" to only be applicable in cases of Total Disability – hardly an unequivocal statement of no ambiguity (*Exh. 8, p. 48 and Ex. 9 Bates 2982*); and

- Mr. Kearney's claim was audited by JP's reinsurer who directed JP to refer the Claim to DMS for expert assessment. (*Exh. 6, p. 58; Exh. 8, p. 10*).

During years five to eight (1997 – 2001) of Mr. Kearney's Claim:

- JP retained DMS to "investigate" and "advise" JP (*Exh. 9, Bates 2892*);

- In September 1997, DMS had the Policy reviewed by its in-house legal experts (*Exh. 9, Bates 2886 and 2880*);

- At Mr. Kearney's urging in letters dated July 3, 2000, and July 28, 2000, DMS took a look to see if the Policy provided for COLA adjustments during residual disability and DMS concluded that it did and apologized for delaying the increase. (*Ex. 9 Bates 3064*);

- DMS engaged Ms. Ugolik to examine the claim and Policy in detail (*Depo. Exh. 44, Tab 3*);

- DMS engaged Ms. Beattie to examine the claim and Policy in detail (*Depo. Exh. 44, Tab 4*);

- DMS engaged several investigators to examine the claim in detail (*Depo. Exh. 44, Tabs 6 – 13, 16, 18, 19, 21, 29 -33, 35, 36, and 38*);

- DMS engaged financial consultants to examine the claim and Policy in detail (*Depo. Exh. 44, Tabs 14, 20, 28*); and

- DMS spent great effort examining the medical basis for Mr. Kearney's claim. (*Depo. Exh. 44, Tabs 15, 22 - 27, 34*).

During years eight and nine (2001 – 2002) of Mr. Kearney's Claim:

- DMS had the claim evaluated by an occupational expert, Kathy Baris in 2001 (*Depo. Exh. 44, Tab 37*);

- Curiously, in November 2000, one year before it came upon the revelation of its new Policy interpretation, DMS began paying Mr. Kearney benefits under a "reservation of rights." (*Depo. Exh. 12, Adm. Response 7*); and

- DMS withheld from Mr. Kearney its true judgment that the Policy did provide for lifetime benefits under the circumstances of his claim (*Ex. 9, Bates 0559*).

Contrary to counsel's attempt to argue that no one was paying attention to Mr. Kearney's claim, the record proves otherwise: JP and DMS were not only paying attention to Mr. Kearney's claim, they gave it heightened attention and appeared to be looking for a way to deny the claim before coming upon their new interpretation of the "Monthly Benefit" payable.

Moreover, it is simply inconceivable that Mr. Roberson and the rest of the experts who both created the Proposal and who so closely examined the propriety of Mr. Kearney's claim could: (i) get the Proposal wrong; and (ii) although making decisions consistent with the Proposal, so frequently (i.e., well over 200 times) misinterpret the benefits payable under an *unambiguous* policy as JP's counsel now argues.

Given the heightened scrutiny afforded Mr. Kearney's claim for nearly a decade by experts and lawyers, it is untenable for plaintiff to now assert that the Policy unambiguously does not permit COLA, SSS, or premium waiver.

D.    **The Policy.**

As analyzed at the hearing of August 17, any ambiguity that exists in the Policy is the result of JP's decision to draft a "Total Disability" policy exclusively (without any reference whatsoever to "residual disability") and then sell prospects a RD Rider to append to the otherwise Total Disability Policy. (*Exh. 1*). Interpreting the Residual Disability benefits available in such a circumstance

becomes difficult. One must read together the Policy, the Schedule (*Exh. 3*), and the relevant riders (*Exh. 2*).

The first exercise to complete when assessing Residual Disability benefits under this Total Disability Policy is to determine whether the defined terms of the Policy – although defined in the context of Total Disability – apply in the circumstance of a claim of Residual Disability when the RD Rider has been purchased. The thrust of plaintiff's argument is that <u>all</u> provisions of the Policy defined in the context of Total Disability apply under Residual Disability, <u>*except*</u> for the provisions that the plaintiff now chooses to exclude (Increase In Benefits, Waiver of Premium, and Social Security Supplement). (<u>*See*</u>, *Plaintiff's Posthearing Memorandum, p. 5*). Plaintiff's position is meritless and plaintiff's counsel conceded at the hearing that "a lot of [total disability] definitions are adopted [in residual disability]." (*Exh. 5, p. 58*).

The heart of the 6-page Policy is contained within the sections titled: (i) Definitions; (ii) Benefit Provisions; and (iii) Limitations/Exclusions. (*Exh. 1*). As identified below every reference Total Disability applies for Residual Disability.

First, the following provisions of the "Definitions" section of the Policy, which are defined in terms of "Total Disability," indisputably apply under "Residual Disability: (i) Elimination Period; (ii) Maximum Benefit Period; (iii) Monthly Benefit; and (iv) Period Of Disability. (*Exhs. 1, 2, and 3*). In fact, <u>no</u> terms in the Definitions section of the Policy defined in terms of Total Disability <u>do not</u> apply in cases of Residual Disability.

Second, the following provisions of the "Benefit Provision" section of the Policy, which are defined in terms of "Total Disability," indisputably also apply under "Residual Disability: (i) Sickness; (ii) Injury; (iii) Recurring Disabilities; and (iv) Surgical Transplant. (*Exh. 1*). In fact, the

only provisions of the Benefit Provisions Section that are defined in terms of Total Disability that plaintiff now argues do not apply in cases of Residual Disability are the provisions at issue in this case – the Increase In Benefits and Waiver of Premium provisions.

However, plaintiff's present argument not only contradicts the payment history and unambiguous language of the Proposal, there is nothing in the Policy or any other document which advises a policyholder or prospective policyholder that all provisions of the Policy defined in the context of Total Disability apply under Residual Disability *except* for the Increase In Benefits and Waiver of Premium provisions.

Third, all provisions of the "Limitations and Exclusions" section of the Policy, which are defined in terms of "Total Disability," indisputably also apply under "Residual Disability" (i.e., disease, infection, hernia, etc). (*Exh. 1*).**4**

Importantly, as detailed above in the analysis of the August 17 hearing on the Motions, it is not disputed that the Policy's definition of "Monthly Benefit" although defined within the context of "Total Disability," applies fully to Residual Disability. "Monthly Benefit" is defined in the Policy as "the amount shown in the Schedule . . . for . . . any Period of Total Disability . . . ." (*Exh. 1*). The RD Rider similarly defines Monthly Benefit as the "amount shown in the Schedule as such." (*Exh. 2*). And the Schedule quantifies the amount of the "Monthly Benefit" under a heading titled "For Total Disability." (*Exh. 3*).

Because the RD Rider requires use of the Schedule "Monthly Benefit" in the calculation of the RDMB, and since the only "Monthly Benefit" identified on the Schedule is the "Total Disability"

---

4        The Policy, Proposal and Riders all contain "Exclusions" and/or "Limitations" on coverage: obviously, when JP desires it can craft the language necessary to expressly and effectively exclude coverage. It did not do that here with regard to COLA, SSS, or Premium Waiver during Residual Disability.

Monthly Benefit, there can be no legitimate dispute that the Total Disability Monthly Benefit is payable in Mr. Kearney's 75%+ residual disability.

The dispute plaintiff now raises -- 10 years into the claim -- is its assertion that the Total Disability Monthly Benefit of the Schedule is not properly increased by SSS and COLA when the policyholder is applying for residual disability: even though Total Disability Monthly Benefit benefits, according to plaintiff, are properly increased by SSS and COLA when the policyholder is applying for total disability benefits. There, however, is no basis for plaintiff's inconsistent treatment of SSS and COLA as it applies the term Monthly Benefit on the Schedule.

Including COLA and SSS in the calculation of Monthly Benefit for Total Disability as well as for Residual Disability - as JP did for nearly 10 years – makes the application of the Policy consistent with the Proposal.

Since Mr. Kearney has a 75%+ loss, he is entitled to the "full benefit for total disability," and, therefore, the Policy provides, consistent with the Proposal, that Mr. Kearney is now entitled to COLA, SSS, and premium waiver.

Plaintiff's final argument, that Mr. Kearney is not entitled to Increased COLA because he hasn't satisfied an alleged condition precedent of being "Totally Disabled" for 12 months is meritless. Like all other definitions contained in the Proposal and Policy identified above, even though defined in terms of "Total Disability," the COLA or "Increase In Benefits" provision of the Policy applies in cases of residual disability. The 12 month trigger simply advises the policyholder that the COLA adjustment will be annual for long term cases of disability: in cases of residual disability, the prerequisite is 12 consecutive months of residual disability not 2 seven month periods

14

separated by 2 months of no disability whatsoever. This is obvious from the language of the Proposal and the definition of "Monthly Benefit" contained in the Policy and RD Rider.

Premium Waiver too, like other terms of the Proposal and Policy, is defined in the context of "Total Disability." This, however, is not an indication that the Premium Waiver benefit is restricted to Total Disability when a Residual Disability rider has been purchased. As identified in the Proposal and RD Rider (regarding the use of "Monthly Benefit"), if one who is Residually Disabled has a loss of earnings of at least 75%, "the <u>full</u> benefit for total disability will be payable." There is no dispute that Mr. Kearney's loss has exceeded that threshold since 1993. Accordingly, he is entitled to the "full benefit for total disability" for that entire period.

The "Benefit Provisions" Section of the Policy identifies "Waiver of Premium" as one of the benefits available within the "full" complement of "Total Disability" benefits. Accordingly, the Waiver of Premium benefit is available to Mr. Kearney.

In sum, when assessing Residual Disability benefit rights, every term/provision of the Policy although defined in the context of Total Disability, nonetheless applies. And plaintiff does not dispute this conclusion other than as it relates to the Increase In Benefits and Waiver of Premium provisions of the Policy. But there is no logic to plaintiff's discrimination between these terms/provisions.

E.    <u>The Schedules</u>.

The Schedule identifies the benefits purchased and available to a policyholder. (*Exh. 3*). The form is structured to first identify the benefits that come with the Policy itself. *Id.* Then the Schedule lists the "additional benefit provisions included", if any, purchased by the policyholder through the payment of additional premium. *Id.*

15

In Mr. Kearney's case, the top half of the Schedule sets for the benefits that come without regard for the additional benefits purchased. *Id.* And the second half of the Schedule page laundry lists the three additional benefits purchased by Mr. Kearney based on the representations made to him in the Proposal: (i) Residual Disability; (ii) SSS; and (iii) Increased COLA. *Id.*

Mr. Kearney paid JP additional sums for these Riders.

Importantly, the Schedule does not distinguish between Total and Residual disability benefits. *Id.* The Monthly Benefit on the Schedule applies to Total Disability. <u>And</u> as identified in the RD Rider, as discussed above, it also applies in cases of Residual Disability -- even though it is defined exclusively in terms of Total Disability.

There is no language in the Schedules or anywhere else which suggests that the SSS and COLA benefits are not available with Residual Disability. These benefits are included in Monthly Benefit on the Schedule if the policyholder purchases these additional benefits.

**F.    <u>The Purchased Riders.</u>**

**1.    *The RD Rider.***

The two most important provisions of the RD Rider (*Exh. 2*) establish that COLA, SSS, and premium waiver are payable during Residual Disability.

First, the RD Rider's defined term Prior Monthly Income ("PMI") provides that "'Prior Monthly Income' will be adjusted <u>at the same time and by the same percentage</u> as the 'Increase In Benefits' or 'Increase in Benefits for Total Disability' provision, whichever is applicable, of the policy." (<u>See</u>, *RD Rider, Exh. 2, emphasis added*). Notably, this language shows that the Increase In Benefits language of the Policy – although defined in terms of "Total Disability" applies in cases of Residual Disability. Moreover, this language explicitly states that two (2) distinct items are

"adjusted" or increased by 7% at the same time.  One item is PMI.  The other item can only be "Monthly Benefit."  There is no dispute that this dual increase calculation triggers a 7% annual adjustment in Mr. Kearney's RDMB.

Second, and perhaps most important, as identified in the RD Rider, since Mr. Kearney has at all times suffered at least a 75% loss, his loss is deemed to be 100%.  Therefore, the calculation of RDMB contained in the RD Rider becomes: **(PMI ÷ PMI) x Monthly Benefit = RDMB.**  Since PMI ÷ PMI equals 1, this equation can be shortened to simply, **Monthly Benefit = RDMB** when a residual loss is greater than 75%.  And the RD Rider defines "Monthly Benefit" for purposes of Residual Disability as "the amount shown in the Schedule as such."  Here, the Schedule Monthly Benefit is: the Monthly Benefit for "Total Disability," which necessarily includes COLA, SSS, and Premium Waiver.

**Notably,** the RD Rider's statement that the Monthly Benefit is "the amount shown in the Schedule as such" is precisely the same language used by the Policy when defining the Monthly Benefit of Total Disability: "the amount shown in the schedule." (*Exh. 1, p. 3*).  Accordingly, if the Monthly Benefit on the Schedule includes COLA and SSS when calculating Total Disability, the Monthly Benefit on the Schedule must also include COLA and SSS when calculating Residual Disability.  The same is true for Premium Waiver.

Because the RD Rider requires use of the Schedule "Monthly Benefit" in the calculation of the RDMB, and since the only "Monthly Benefit" identified on the Schedule is the "Total Disability" Monthly Benefit, there can be no dispute that the Total Disability Monthly Benefit is payable in Mr. Kearney's 75%+ residual disability.

The dispute plaintiff now raises -- 10 years into the claim -- is its assertion that the Total Disability Monthly Benefit from the Schedule is not properly increased by SSS and COLA when those additional benefits are purchased and the policyholder is applying for residual disability even though Total Disability Monthly Benefit benefits, according to plaintiff, are properly increased by SSS and COLA when the policyholder is applying for total disability benefits. As discussed above, however, there, however, is no basis for plaintiff's inconsistent treatment of SSS and COLA as it applies the term Monthly Benefit on the Schedule.

2.    *The SSS Rider*

The SSS Rider states unequivocally that it increases the "Monthly Benefit" payable. Since all conditions of the SSS Rider are met, Mr. Kearney's additional purchase of the SSS Rider increases the "Monthly Benefit" of the Schedule which, under the RD Rider is pulled into the calculation of RDMB. The fact that the SSS Rider is written like all other provisions of the Policy (i.e., in terms of Total Disability exclusively) is irrelevant for the reasons discussed above.

As stated in the Proposal without equivocation, this benefit is payable during Residual Disability. It was also paid without controversy for 10 years. In fact, JP's Complaint filed in this action <u>does</u> <u>not</u> even challenge the propriety of this benefit being paid to a Residually Disabled policyholder. Regardless, the SSS benefits is payable for Residual Disability.

Finally, although plaintiff's counsel stated at the oral argument that SSS can come into play under residual disability, he now argues that it cannot. (*Brief, p. 9*).

3.    *The Increased COLA Rider.*

Mr. Kearney's purchase of the increased COLA rider, taking his annual adjustment from 3% to 7% says nothing about Total or Residual disability. The Increased COLA Rider simply states that

the "policy . . . is hereby amended by changing from 3% to 7% the percentage shown in the benefit provision captioned 'Increase in Benefits.'"

G.    **The Law Of Insurance Contract Construction.**

Exclusions in an insurance contract are not preferred and are strictly construed to effectuate the Policy's principal purpose of indemnity. *Suburban Community Hosp. v. Lindquist* 69 Ohio St 2d 302, 304, 432 NE2d 173 (1982); *American Financial Corp. v. Fireman's Fund Insurance Company* 15 Ohio St 2d 171, 173, 239 N.E. 2d 33 (1968). To be enforceable under Ohio law, an exclusion, exception, or limitation in an insurance policy must "clearly in explicit wording set[] forth with specificity exactly what is to be excluded." *River Services Co. v. Hartford Acc. & Indem Co.* 449 F. Supp 622, 626 (N.D. Ohio 1977); *Am. Fin. Corp.* 15 Ohio St 2d at 174 ("the insurer, being the one who selects the language, must be specific in its use, and an exclusion from liability must be clear and exact in order to be given effect"). The *Andersen* Court quoted, with special emphasis, the holding of its earlier decision in *Home Indemn. Co. of New York v. Plymouth*, 146 Ohio St. 96, 64 N.E.2d 248 (1945), wherein the Court held that: "[w]here exceptions . . . are introduced into an insurance contract, a general presumption arises to the effect that that which is not *clearly excluded* from the operation of such contract is included in the operation thereof. (*Emphasis added.*)." *Id. at 549.*

There is no language anywhere in the Proposal, Policy, or Riders that expressly states, suggests, or implies to policyholders that the Increased COLA, SSS, and Premium Waiver benefits apply when "Monthly Benefit" on the Schedule is used in Total Disability but not in Residual Disability. This is a fatal flaw.

H.    **Waiver and Estoppel.**

Given the above, including importantly, the unambiguous language of the Proposal, in reliance upon which Mr. Kearney has paid premiums for 15 years, even if the Policy did unambiguously preclude COLA, SSS, and premium waiver (which it does not), JP is estopped and/or has waived the right to raise the arguments it does since COLA, SSS, and waiver of premium are not expressly excluded anywhere. The case law JP cites for the proposition that waiver and estoppel cannot apply, rely on the factual scenario where the benefit at issue has been specifically excluded. That is not the case here. And if the Court somehow concludes that the policy *unambiguously* excludes the payment of COLA, SSS, and Premium Waiver, the issues of waiver and equitable estoppel are jury issues.

<u>Conclusion</u>

For close to 10 years JP and DMS paid COLA and SSS benefits to Mr. Kearney consistent with

1.   The Proposal JP's experienced personnel gave to Mr. Kearney; and

2.   The analysis of the Policy performed by officers of JP, authors of the Policy, experienced claims handlers, and lawyers.

It is untenable and unsustainable for the plaintiff to now argue that DMS' October 2001 interpretation of the Policy -- which is inconsistent with each of the above -- is the plain and unambiguous meaning of the Policy.

Language which is reasonably susceptible of more than one meaning must be construed strictly against the insurer and liberally in favor of the insured. ***See*, *e.g.*, *King v. Nationwide Ins. Co*. (1988), 35 Ohio St.3d 208, 211, 519 N.E.2d 1380, 1383. To defeat coverage, the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an

interpretation is the <u>only one</u> that can fairly be placed on the language in question. *Andersen v. Highland House Co*. 93 Ohio St.3d 547, 757 N.E.2d 329 (2001). It will not suffice for an insurer to demonstrate that its interpretation is more reasonable than the policyholder's.

This Court should sustain Christopher L. Kearney's Motion For Partial Summary Judgment and deny plaintiff's competing motion. The Policies require JP to pay Mr. Kearney a Residual Disability Benefit inclusive of: (i) an annual 7% "Increase in Benefits;" (ii) a Social Security Supplement Benefit; and (iii) a Waiver of Premium Benefit.

Respectfully submitted,

s/ Michael A. Roberts
Michael A. Roberts, Esq.
GRAYDON HEAD & RITCHEY LLP
511 Walnut Street, Suite 1900
Cincinnati, OH 45202
(513) 629-2799
(513) 651-3836 - fax
email: <u>mroberts@graydon.com</u>
*Trial Attorneys for Mr. Kearney*

## CERTIFICATE OF SERVICE

I hereby certify that the original of the above has been filed electronically with the court this 24th day of August 2004, and thereby served upon William R. Ellis, Wood & Lamping LLP, 600 Vine Street, Suite 2500, Cincinnati, OH 45202.

s/ Michael A. Roberts