UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JEFFERSON-PILOT LIFE INSURANCE COMPANY, | : | Case No. C-1-02-479 |
| | : | |
| Plaintiff/Counter Defendant, | : | (Judge Watson) |
| | : | (Magistrate Judge Hogan) |
| vs. | : | |
| | : | **JEFFERSON PILOT AND DISABILITY** |
| CHRISTOPHER L. KEARNEY, | : | **MANAGEMENT SERVICES' MOTION** |
| | : | **FOR SUMMARY JUDGMENT ON** |
| Defendant/Counter Plaintiff. | : | **DEFENDANT'S COUNTERCLAIMS** |
| | : | **AND MEMORANDUM IN SUPPORT** |
| | : | |
| | : | **ORAL ARGUMENT REQUESTED** |

Plaintiff/Counterclaim Defendant, Jefferson-Pilot Life Insurance Company ("Jefferson-Pilot"), and Cross-claim Defendant, Disability Management Services, Inc. ("DMS") (collectively referred to herein as the "Counterclaim Defendants"), by and through counsel and pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, hereby move for entry of Final Summary Judgment in their favor and against Defendant, Christopher L. Kearney ("Kearney"), on Counts One, Two, Three, Four, and Five of his Counterclaim, which set forth allegations of breach of contract, bad faith, intentional infliction of emotional distress, conspiracy to breach fiduciary duty, and invasion of privacy. As established below in the attached memorandum in support of this motion, based upon the undisputed facts and Ohio law, Kearney's counterclaims cannot stand and should be dismissed with prejudice. Under the standards set by the Supreme Court,

this matter is appropriate for summary disposition and such would best serve the ends of justice

as well as the economy of effort and expense to both the parties and the Court.

Respectfully submitted,


/s William R. Ellis
William R. Ellis (0012279)
Amy Gasser Callow (0063470)
Wood & Lamping LLP
600 Vine Street, Suite 2500
Cincinnati, OH  45202-2491
Telephone:    (513) 852-6000
Telefax:        (513) 852-6087
E-mail:         wrellis@woodlamping.com


OF COUNSEL:                                    John E. Meagher (511099)
                                                        SHUTTS & BOWEN LLP
                                                        201 S. Biscayne Boulevard
                                                        1500 Miami Center
                                                        Miami, Florida  33131
                                                        Telephone:  (305) 358-6300
                                                        Telecopier:  (305) 381-9982
                                                        E-mail:        JMeagher@Shutts-law.com


Attorneys for Plaintiff, Jefferson-Pilot Life
Insurance Company and Cross-Claim Defendant,
Disability Management Services, Inc.

# I.    INTRODUCTION

This Lawsuit began in 2002, when Jefferson-Pilot, seeking relief under the Declaratory Judgment Act, asked this Court to interpret certain language contained in Kearney's two Jefferson-Pilot disability insurance policies (the "Policies").  In its Complaint, Jefferson-Pilot contended that, due to its own mistake (which was continued thereafter by DMS), Kearney had been overpaid under the terms of his policies since May 1993[1], when his monthly benefit was supplemented by two (2) benefits to which he was not entitled due to the fact that his claim was one for Residual, rather than Total, Disability.  These benefits consisted of a "Social Security Supplemental Benefit" and a "Cost of Living Increase" (collectively referred to as the "Additional Benefits").

The amount of the overpayments to Kearney is both undisputed and considerable.  To date, Kearney has received overpayments totaling **$411,151.14**.  *See* Affidavit of Stephen P. Rice, CPA, Director of Financial Consulting for DMS, attached hereto as Exhibit "A".  Pursuant to the Court's Opinion and Order granting Kearney's Motion for Summary Judgment on Jefferson Pilot's Declaratory Judgment Complaint (the "Opinion"), in addition to retaining those overpayments, Kearney would continue to be paid the Additional Benefits in the future.  Using the Policies' monthly benefit amounts, Kearney's life expectancy to age 77, and the assumption that Kearney will not recover from his illness and return to full-time work, Kearney could receive future Additional Benefits in the amount of **$2,071,445**.  Accordingly, as the Order currently stands, the total benefit Kearney will have received in excess of the coverage he purchased is **$2,482,596.**  All of this is due to the error initially committed by Jefferson-Pilot and continued thereafter by DMS.

---

[1] In May 1993 Jefferson-Pilot began paying Kearney his disability benefits and by mistake his Social Security Supplement Rider benefit.  One year later, Jefferson-Pilot erroneously increased Kearney's benefit when it paid COLA benefits.

Upon discovering the mistaken overpayments to Kearney, the most significant facts pertinent to this motion are what the Counterclaim Defendants did <u>not</u> do. They did <u>not</u> stop paying Kearney at the erroneous (i.e., higher) benefit level in place at the time the Lawsuit was filed. In fact, these payments continued throughout the Lawsuit and through the present day.[2] Further, they did <u>not</u> seek repayment from Kearney of the overpaid monies. The <u>only</u> thing the Lawsuit requested was that, with regard to <u>future</u> payments, the mistake be corrected and the benefits lowered to the amounts actually set forth in Kearney's Policies.

That a mistake occurred is not in doubt. The Court found that the Counterclaim Defendants' interpretation of the policies was correct, that the policies were unambiguous, and that a "straightforward analysis" reveals that Kearney was not entitled to the $411,151.14 in Additional Benefits he received. Opinion at 10. The Court, however, also found that, under the circumstances of the case, equitable estoppel was properly invoked against the Counterclaim Defendants. Specifically, the Court found that Counterclaim Defendants made "several factual misrepresentations which were misleading," to wit:

> 1. The sales proposals Kearney received from Jefferson Pilot in 1990 and 1992 (the "Proposals") contained two (2) statements that "lead[] the reader to believe that all Total Disability benefits, including the Social Security Supplement and COLA increases, will be paid even though the claimant is under a Residual Disability";
>
> 2. "Jefferson-Pilot paid the Social Security Supplement and COLA increases to Kearney, even though he was not Totally Disabled"; and
>
> 3. "DMS, on Jefferson-Pilot's behalf, sent checks to Kearney for COLA increases".

---

[2] In fact, after receiving the Opinion, Counterclaim Defendants issued a check to Kearney making up the difference between the benefit level in place at the time the Lawsuit was filed and the increase that occurred during its pendency.

Opinion at 12.  When the Court's finding is stripped of the Counterclaim Defendants' admitted

errors in properly administering the Policies' payment provisions (<u>always</u> to Kearney's benefit),

the only "wrong" committed by Jefferson-Pilot was the inclusion of language at page 5 of the

Proposal that was, at worst, unclear.[3]  This is hardly the stuff of "bad faith," "intentional

infliction of emotional distress," "conspiracy," etc.  It is the height of irony that Kearney brings

this laundry list of tort claims in a situation where he has been overpaid for years and where, if

the Counterclaim Defendants had <u>properly</u> paid him the <u>lesser</u> amounts set forth in the policies,

this Lawsuit, including Kearney's counterclaims, would never have been filed.

The Court's ruling that the Counterclaim Defendants' position on the language in

Kearney's policies was correct should end his Counterclaims.  As stated by United States

Magistrate Judge Timothy S. Hogan in his August 13, 2004 Order ruling on Jefferson-Pilot's

objections to Kearney's interrogatories and document requests, all of which were based on

Kearney's allegations of bad faith:

> It seems to us that after oral argument and Judge Spiegel's review
> of the policy and the law, he will either find the policy language
> clear and unambiguous on its face, **a finding that will eliminate
> the possibility of a viable bad faith claim,** or he will find the
> policy language ambiguous, thereby enabling it to be construed
> against the carrier and making relevant Defendant's discovery
> related to the bad faith issues.

Doc. No. 83  attached as Exhibit "C" hereto.  Judge Watson has now found the policy to be

"clear and unambiguous on its face."  Although the Court fashioned a remedy for Kearney based

upon equitable estoppel grounds, it can hardly be said that those findings are sufficient, as a

matter of law, to sustain Kearney's bad faith claim.  Moreover, as demonstrated by the following

---

[3]  The Proposals for both policies contain the language "THIS IS A PROPOSAL.  IT IS NOT A POLICY OR INSURANCE CONTRACT.  COVERAGE CAN BE PROVIDED ONLY AFTER YOU HAVE SUBMITTED AN APPLICATION, MET OUR UNDERWRITING REQUIREMENTS, AND BEEN ACCEPTED FOR INSURANCE.  ADDITIONAL INFORMATION CAN BE FOUND IN POLICY FORM WJ576."  Similarly, Kearney's policies provide "**Entire Contract: Changes:** This policy with the application and attached papers, if any, is the entire contact between you and Jefferson-Pilot…."  Policies, at 5 (emphasis in original).  The Proposals were not attached to Kearney's Policies.

memorandum of law, the allegations against Counterclaim Defendants fail to adequately allege

causes of action for intentional infliction of emotional distress, conspiracy to breach fiduciary

duty, or invasion of privacy.  Accordingly, Kearney's entire counterclaim should be dismissed

with prejudice.

## II.    ARGUMENT

### A.    UNDISPUTED[4] MATERIAL FACTS.

In the Opinion, the Court addressed several factual issues.  As a result, the facts needed to

resolve the remainder of Kearney's claims are  undisputed.  These include:

1.    Kearney purchased two disability insurance policies from Jefferson-Pilot.  One

policy had an effective date of May 28, 1990 and the second policy had an effective date of May

28, 1991 (the "Policies").  In addition to purchasing a Residual Benefit rider, Kearney also

purchased certain "Additional Benefits," including a Social Security Supplemental Benefit and a

Cost of Living Increase  (collectively referred to as the "Additional Benefits").  The Additional

Benefits expressly became a part of the Policies under the section captioned "Benefits

Provisions."  Opinion at 2.  All relevant portions of the Policies have been found to be "clear and

unambiguous."  Opinion at 8-9.

2.    Kearney's initial claim for disability benefits was made in February 1993.  He

initially received Total Disability benefits for a period of four months.  Since July 1993, Kearney

has applied for and received Residual Disability benefits.  Opinion at 4-5.

3.    In  May 1993, Jefferson-Pilot began paying Kearney his Residual Disability

benefits and by mistake his Social Security Supplemental Rider benefit.  Kearney by mistake

further received the Cost of Living Increase effective May 1994.  These Additional Benefits

---

[4]   The following facts are accepted as "undisputed" solely for the purposes of this Motion for Summary Judgment.  Counterclaim Defendants reserve the right to challenge the Court's findings through any and all available avenues of appeal and/or post-trial motions.

were not properly payable to an insured who, like Kearney, was receiving benefits for Residual, rather than Total, Disability. This mistake was continued by Jefferson-Pilot's third-party administrator, DMS, when it began administering Kearney's claim in January 2000.

4.    As a result of these mistaken payments, Kearney has received, to date, overpayments totaling **$411,151.14**. *See* Exhibit "A". Using the Policies' monthly benefit amounts, Kearney's life expectancy to age 76, and the assumption that Kearney will not recover from his illness and return to full-time work, Kearney would receive future Additional Benefits in the amount of **$2,071,445**. *Id*. Accordingly, the total benefit Kearney will have received <u>in excess</u> of the coverage he purchased is approximately **$2.5 million.** *Id.* Throughout the pendency of his claim, Kearney has received full and complete payment of benefits under his Jefferson-Pilot policies.[5] *Id. See* attachment to Exhibit "A", a Full Claim Summary Report dated March 24, 2006 evidencing full and complete payment of benefits under the policies from January 28, 2000 through March 23, 2006.

5.    The Complaint for declaratory relief filed by Jefferson-Pilot did not ask Kearney for the return of the overpayments, but only that the mistake be corrected as to <u>future</u> payments under the claim. *See* Complaint. During this Lawsuit, Counterclaim Defendants continued to pay Kearney's benefits at the level in place at that time. Upon entry of the Opinion, Counterclaim Defendants  tendered to Kearney payments in the amount of $36,387.99, constituting the additional amounts owed as a result of the accrual of the Additional Benefits during the course of the Lawsuit.

---

[5]   During oral argument on the Cross-Motions for Summary Judgment on August 17, 2004, Defendant's counsel, Mr. Roberts, stated "as you can see, every month from '93 through sometime in 2000, when Mr. Kearney was issued a check, two checks, by the insurance company in North Carolina, two people – there's two sets of initials – confirmed that the payment was correct. That's four reviews a month times 7 or 9 years in the 90's. It's hundreds of reviews. Every month he got the COLA; every month he got the Social Security Supplement." Transcript of August 17, 2004 hearing at 33, copy attached hereto as Exhibit "D".

6.      Regarding the Court's finding that "equitable estoppel" was appropriately invoked in this case, aside from the mistaken overpayments described in paragraphs 3 and 4, above, the only error found by the Court was Jefferson-Pilot's inclusion in its sales proposals to Kearney of two (2) statements that "lead[] the reader to believe that all Total Disability benefits, including the Social Security Supplement and COLA increases, will be paid even though the claimant is under a Residual Disability."  Opinion at 12.

## B.      APPLICATION OF OHIO LAW

### 1.      As found by the Court, Kearney's breach of contract claims are without merit and should be dismissed with prejudice.

The clear holding of the Opinion makes short work of the breach of contract claim contained in Count I of Kearney's First Amended Counterclaim (the "Counterclaim").  Although couched in language more appropriate for tort than contract,[6] the essence of his claim is, and must be, that Counterclaim Defendants improperly administered the Policies when they contended that the Additional Benefits were not properly payable to an insured receiving Residual, rather that Total, Disability benefits.  The Court, however, agreed with Counterclaim Defendants' interpretation of the Policies, not Kearney's.  Moreover, it is undisputed that Kearney has, to date, received overpayments in the amount of $411,151.14 and has been paid up to date. Exhibit "A".  Therefore, he cannot, as a matter of law, establish any contractual damages.

While the Court, in its ruling on the parties' cross motions for summary judgment on Jefferson-Pilot's Complaint for Declaratory Relief, held that equitable estoppel prevents Counterclaim Defendants from paying Kearney the correct amount under the Policies,

---

[6]  For example, Kearney alleges that various breaches were "intentionally done and have caused him a great deal of financial hardship and this has been an intentional infliction of emotional distress, done in bad faith, and is a breach of contract." Counterclaim, par. 11.

Counterclaim Defendants still have prevailed on the contract claims.  Therefore, there is nothing left to litigate at this level on this issue.  Accordingly, Counterclaim Defendants are entitled to the entry of judgment in their favor on  Count I of the Counterclaim.

> **2.      Kearney cannot state a claim for "bad faith" under the facts and circumstances of this case.**

> **a.      <u>Ohio law requires that a claim be denied as a condition precedent to bringing a bad faith case.</u>**

In addition to the facts and argument set forth in the Introduction, above, establishing that Kearney's bad faith claim in Count II of his Counterclaim is specious, it is also clear that his claim suffers from an additional fatal flaw – his claim has never been denied.  Under Ohio law, there can be no bad faith without a denial of benefits, as Ohio does not recognize a statutory bad faith claim against insurers.  Kearney's only recourse, therefore, is to pursue a common law tort claim.

The Ohio Supreme Court has set forth the standard for a bad faith claim under common law tort:

> "An insurer fails to exercise good faith in the processing of a claim
> of its insured where its **refusal to pay the claim** is not predicated
> upon circumstances that furnish reasonable justification therefore."

*Hart v. Republic Mutual Insurance Co.*, 152 Ohio St. 185, 87 N.E.2d 347 (1949)(emphasis supplied).  This standard was reaffirmed in *Hoskins v. Aetna Life Insurance Company*, 6 Ohio St. 3d 272, 452 N.E.2d 1315 (1983) and *Staffbuilders, Inc. v. Armstrong*, 37 Ohio St. 3d 298, 525 N.E.2d 783 (1988); *Zoppo v. Homestead Insurance Company*, 71 Ohio St. 3d 552, 644 N.E.2d 397 (1994).  It is undisputed under Ohio law that bad faith is not shown by mere breach of a contractual duty.  *Spremulli's American Service v. Cincinnati Insurance Company*, 91 Ohio App. 3d 317, 632 N.E.2d 599 (1992).  The liability of an insurer does not rise from the mere omission

to perform a contractual obligation, but rather from a breach of a possible legal duty imposed by the law due to the relationship of the party. *See Hoskins, Staffbuilders, supra.*

Moreover, the U.S. District Court for the Eastern District of Pennsylvania has recently recognized that there cannot be a bad faith claim while benefits are being paid. *See Saldi v. Paul Revere Life,* 2006 WL 140585 (E. Dist. Penn.), a copy which is attached hereto as Exhibit "B". Specifically, the court stated:

> Preliminarily, we note that the basic purpose of a reservation of rights suggests that it is not, in itself, grounds for a bad faith claim. A reservation of rights allows for an insurer to make payments to an insured while maintaining the right to seek reimbursement if it later becomes clear that the insured was not entitled to the payments. . . 'a reservation of rights protects an insurer from potential liability for bad faith if it were to withhold payment, and it also provides the insurer with the use of the payments until the determination is made' . . . the reservation of rights, then, is itself a means of preventing a bad faith claim by the insured.

*Id.* at *2 citing *Massachusetts Casualty Insurance Company v. Rossen*, 953 F. Supp. 311, 315 (C.D. Cal. 1996) (internal citations omitted).

In the case at bar, Jefferson-Pilot continued to make payments to Kearney while it sought a declaratory judgment as to how the contract should be interpreted. The Court has now concluded that the interpretation proposed by Jefferson-Pilot in the declaratory judgment action was correct, although Jefferson-Pilot is estopped from applying that language to Kearney in this case. When the Court determined that the overpayment must continue due to equitable considerations, Jefferson-Pilot tendered a check to Kearney making up the difference between the benefit rate in place at the time the declaratory judgment was filed and the increases that took effect while the court was considering the declaratory judgment motion. *See* Exhibit A.

These actions by Jefferson-Pilot demonstrate its continuing efforts throughout the pendency of the claim and litigation to properly pay, rather than deny, benefits to Kearney.

Jefferson-Pilot could have reasonably declined to pay the Additional Benefits while awaiting the Court's determination on that matter, but chose to pay Kearney anyway.  It stands logic on its head to label such actions as "bad faith."

### b.      Negligence is not bad faith.

Further, the worst that could be said of Counterclaim Defendants' actions here is that they were careless during the years they overpaid Kearney's claim.  If one were able to overcome the absurdity of an insurer being *punished* for paying its insured over $400,000 more than he contracted for (plus having to pay an additional $2.1 million in the future!), the bad faith claim would still fail, as negligence is not a sufficient basis for a finding of bad faith.  *Hart*, 152 Ohio St. at 187, 87 N.E.2d at 349; *Hoskins*, 6 Ohio St. 3d at 276-77, 452 N.E.2d at 1320.  An insurer cannot be held liable in tort for negligence on its part in failing or refusing to settle or compromise a claim, even if such failure later proves to be erroneous.  *Id.*  Of course, in the case at bar, the only error made was paying Kearney too much.  Simply put, Kearney can find no support in Ohio law for bringing such a claim.

### c.      The filing of a Declaratory Judgment Action cannot constitute bad faith.

Nor can Jefferson Pilot's decision to file a Declaratory Judgment Actions be used as grounds for a bad faith claim, which, in essence, is what Kearney is attempting to do.  By filing a declaratory action, Jefferson Pilot took the course of action most designed to protect both Kearney's and its rights.  Although it did not prevail in the Lawsuit, Jefferson Pilot should not now be exposed to liability for having the "temerity" to disagree with Kearney's interpretation of the Policies.

Filing a claim under the Declaratory Judgment Act is a right conferred on all citizens of the United States.  One need go no further than Federal Jury Practice and Instructions §103.12 to

confirm that corporations are considered, and have all the rights of, individual citizens.  As stated

therein:

**All Persons Equal Before the Law – Organizations**

> You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  A corporation is entitled to the same fair trial as a private individual.  All persons. including corporations and other organizations, stand equal before the law and should be treated equally.

*Id*.  Allowing Kearney to press a retaliatory bad faith claim against an insurer merely seeking

judicial guidance on the interpretation of policy language would have a chilling effect on an

insurer's exercise of its federally provided rights.  Moreover, under Ohio law, an insurer has a

right to legitimately question a claim without exposing itself to a bad faith action.  *Hoskins*, 6

Ohio St. 3d, at 276-77.  Accordingly, Kearney's bad faith claim must be dismissed with

prejudice and judgment entered in Counterclaim Defendants' favor on Count II.

**3.    Kearney's allegations of "improper claims handling" fall far short of stating a claim for "intentional infliction of emotional distress."**

In Count III of his Counterclaim, Kearney attempts to state a claim for "intentional

infliction of emotional distress."  None of Kearney's allegations, however, rise (or sink) to the

level necessary to sustain such a claim, that is, conduct so "extreme and outrageous" as to be

regarded as atrocious and utterly intolerable in a civilized community.  As stated by the Ohio

Supreme Court in setting the standard for such a claim:

> The standard we adopt in our recognition of the tort of intentional infliction of serious emotional distress is distinctly spelled out in the Restatement as follows: 'One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. Restatement of the Law 2d; Torts (1965) 71 §46(1).'

*Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 6 Ohio St. 3d 369, 453 N.E. 2d 666 (1993). Stated another way, there are four elements that must be proved to recover on an action for intentional infliction of emotional distress. These are:

1. That the actor either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress to the plaintiff;

2. That the act or conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it could be considered as "utterly intolerable in a civilized community";

3. That the actions were the proximate cause of plaintiff's psychic injuries; and

4. That the mental anguish suffered by plaintiff was serious and of a nature that "no reasonable man could be expected to endure."

*Scott v. Spearman*, 115 Ohio App. 3d 52, 684 N.E. 2d 704, (Ohio App. 5th Dist. 1996).

Kearney has failed to plead, and cannot establish, the elements of intentional infliction of emotional distress. Count III merely incorporates by reference his claims of "bad faith" in Count II and gives it a different label. As shown in the above discussion, Kearney's claim for "bad faith" is specious. The contention that Jefferson Pilot "intentionally inflicted emotional distress" on Kearney by filing a declaratory judgment action and attempting to correctly administer the terms of his Policies after overpaying Kearney $411,151.14 defies credulity.

Nor can the request for financial and medical information during the handling of a disability claim amount to the type of conduct that is the subject of this tort claim. The normal processing of a claim for insurance benefits is not extreme and outrageous so as to go "beyond all possible bounds of decency," nor is it "utterly intolerable in a civilized community." Under the terms of Kearney's contract, Jefferson-Pilot has a right and an obligation to investigate his claim. The Ohio Supreme Court has addressed the type of conduct necessary to satisfy the requirement that the complained of conduct be "extreme and outrageous." *See Yeager*, 684

- 13 -

N.E.2d at 671.  As stated in *Yeager*:

> It has not been enough that the defendant has acted with an intent which is tortuous or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice" or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!
>
> The liability clearly does not extend to mere insult, indignities, threats, annoyances, petty oppressions, or other trivialities.  The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and the occasional acts that are definitely inconsiderate and unkind.  There is no occasion for the law to intervene in every case where someone's feelings are hurt.  There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam."

*Id.* at 671-672.

In *Yeager*, although the Court recognized that the tort of intentional infliction of emotional distress exists, it remanded for a determination of whether the conduct in that case was extreme enough to warrant recovery.  In that case, the plaintiff alleged personal threats and attacks which resulted in established medical expenses.  Kearney cannot make the same claim. Kearney claims intimidation through correspondence and alleges that DMS and Jefferson-Pilot implied that he was not disabled.  In effect, he claimed insult and, perhaps, annoyance.  Even if true, which DMS and Jefferson-Pilot deny, these do not rise to the level of extreme and outrageous conduct to support Kearney's claim for intentional infliction of emotional distress. Even more problematic for Kearney is the fact that he claims exacerbation of his medical condition without any support whatsoever.  Kearney fails to show that the alleged actions of

DMS and Jefferson Pilot exacerbated his condition and that such alleged actions were the proximate cause of his injury. Furthermore, during this same period of time Jefferson Pilot continued to pay Kearney his benefits, including the overpayments totaling **$411,151.14**. Therefore, his claim for intentional infliction of emotional distress in Count III is without merit and must be dismissed with prejudice.

**4.     Kearney's claim for "civil conspiracy" fails, as there exists no "unlawful act independent of the conspiracy."**

Count IV of Kearney's Complaint fares no better than the preceding counts. In Count IV, Kearney alleges conspiracy to breach a fiduciary duty. Under Ohio law, a civil conspiracy consists of the following:

1.     A malicious combination;

2.     Two or more persons;

3.     Injury to personal property; and

4.     Existence of an unlawful act independent from the actual conspiracy.

*Cruz v. South Dayton Neurological Associates, Inc.*, 121 Ohio App. 3d 655, 700 N.E. 2d 675 (Ohio App. Second Dist. 1997); *see also Universal Coach, Inc. v. New York City Transit Authority, Inc.*, 90 Ohio App. 3d 284, 629 N.E. 2d 28 (1993); *LeFort v. Century 21- Maitland Realty Company*, 32 Ohio St. 3d 121, 512 N.E. 2d 640 (1987). A claim for breach of fiduciary duty is essentially a claim of negligence with a higher standard of care. *Strock v. Pressnell*, 38 Ohio St. 3d 207, 527 N.E. 2d 1235 (1988). In fiduciary duty cases, the party seeking recovery must show:

1.     The existence of a duty not to injure the complaining party in such fashion;

2.     A failure to observe such a duty; and

3.     An injury resulting proximately therefrom.

*Strock*, *citing Stamper v. Parr-Ruckman Hometown Motor Sales, Inc.*, 25 Ohio St. 2d 1, 3, 265 N.E. 785 (1971).

Moreover, a civil conspiracy claim cannot succeed without an underlying unlawful act. *Williams v. Aetna Financial Company*, 83 Ohio St. 3d 464, 475, 700 N.E. 2d 859 (1998). In this case, Kearney alleges that the unlawful underlying act is Counterclaim Defendants' "plan" to "get rid of a lesser plaintiff's liability which is owed to [Kearney] under the policies,…". The Court, however, did not find that Jefferson-Pilot breached its contract with Kearney. Kearney's Motion for Summary Judgment sought dismissal of Jefferson-Pilot's Complaint for Declaratory Judgment. Although the Court granted Kearney's Motion for Summary Judgment, in effect dismissing Jefferson-Pilot's Complaint for Declaratory Judgment, this was not a finding that Jefferson-Pilot breached its contract to Kearney. In fact, the Court found that the application of the policy argued by Jefferson-Pilot in its declaratory judgment was the correct one. It was only because of the error in overpayment for a number of years that the Court found Jefferson-Pilot was estopped from paying the benefits at the correct contractual amount. Thus, there was no unlawful underlying act that would sustain Kearney's conspiracy allegation and Count IV should be dismissed with prejudice.

**5. Kearney's claim for "invasion of privacy" fails as a matter of law.**

Kearney's last claim, contained in Count V of his counterclaim, is for an invasion of privacy. As with the rest of Kearney's tort claims, it, too, fails to state a valid claim for relief. Under Ohio law, an actionable invasion of privacy claim is:

1.    Unwarranted appropriation or exploitation of one's personality;

2.    The publicizing of one's private affairs with which the public has no legitimate concern; or

3.     Wrongful intrusion into one's private activities…in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.

*Housh v. Peth*, 165 Ohio St. 35, 133 N.E. 2d 340 (1956); *see also Melton v. Board of County Commissioners of Hamilton County*, 267 F. Supp. 2d 859 (S.D. Ohio 2003).

The standard for maintaining an invasion of privacy claim is high and cannot be met by Kearney here. For example, in *Housh*, the court recognized that a creditor has the right to take reasonable action to pursue his debtor and persuade payment. This would even include steps which may result in a certain degree of impingement upon a debtor's right of privacy. For example, simply informing the debtor's employer of the fact that a debt is owed, of itself, would not constitute an invasion of that right. See, *Housh*, 165 Ohio St. at 41 citing *Patton v. Jacob*, 78 N.E. 2d 798 (Ind. App. 1948). In *Housh*, however, the court found that the debtor's privacy was invaded when the defendant deliberately initiated a systematic campaign of harassment. *Id*. With regard to insurance companies in particular, the Ohio courts have recognized that the investigation of a claim by a surveillance company is not in and of itself improper. *Misseldine v. Corporate Investigative Services, Inc.* 2003 WL 21234928 (Ohio App. Eighth Dist. 2003). In that case, the court held that the investigation done by a surveillance company and handed over to an insurance company against whom the plaintiff had made a claim was not an improper invasion of privacy even where phone calls were made both to the plaintiff's home and place of employment. The *Misseldine* court found that the plaintiff had not shown that calls intruded into his private activities to such an extent that they caused mental suffering, shame or humiliation. *Id.* at ¶¶ 38 through 40.

Because the undisputed facts in this case establish that Kearney cannot meet the high threshold required for an invasion of privacy claim under Ohio law, it must be dismissed with prejudice.

## C.    CONCLUSION

This is not one of those extraordinary cases where the conduct of the insurer gives rise to a legitimate question of insurer good faith and fair dealing.  In this case, Jefferson-Pilot, admitting that it had mistakenly overpaid Kearney for a number of years, had a legitimate question as to how Kearney's policies of insurance should be interpreted and sought judicial relief looking for an answer, as all citizens have a right to do.  At no time did Jefferson Pilot or DMS cease paying Kearney or reduce the amount of the payments made to Kearney during this litigation.  Ultimately, the Court agreed with Jefferson Pilot and Counterclaim Defendants' interpretation of the Policies.

Pursuant to the Court's finding of an "equitable estoppel," however, Kearney may receive approximately $2.5 million more in benefits than he contracted for.  Allowing Kearney's counterclaim to continue under these set of facts does more than add "insult to injury," it unfairly punishes Jefferson Pilot and DMS for daring to raise in this forum a legitimate question about the interpretation of the Policies.  The actions of the Counterclaim Defendants here should be applauded, not made the subject of a baseless "bad faith" suit.  Under these facts, justice demands that Kearney's counterclaim be dismissed in its entirety.

For the reasons set forth above, Jefferson-Pilot Life Insurance Company and Disability Management Services, Inc. respectfully move this Court for entry of summary final judgment in their favor and against Kearney on Kearney's counterclaim.

Respectfully submitted,


s/ William R. Ellis

William R. Ellis (0012279)
Amy Gasser Callow (0063470)
WOOD & LAMPING LLP
600 Vine Street, Suite 2500
Cincinnati, Ohio 45202-2941
Telephone:  (513) 852-6000
Telefax:      (513) 852-6087
E-mail:       wrellis@woodlamping.com



Of COUNSEL:                                 John E. Meagher (511099)
                                            SHUTTS & BOWEN LLP
                                            201 S. Biscayne Boulevard
                                            1500 Miami Center
                                            Miami, Florida  33131
                                            Telephone:  (305) 358-6300
                                            Telecopier:  (305) 381-9982
                                            E-mail:       JMeagher@Shutts-law.com


                                            Attorneys for Plaintiff
                                            Jefferson-Pilot Life Insurance Company
                                            and Cross-Claim Defendant, Disability
                                            Management Services, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this 10th day of April, 2006.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

s/ William R. Ellis
William R. Ellis

Trial Attorney for Plaintiff
Jefferson-Pilot Life Insurance Company,
and Cross-Claim Defendant, Disability
Management Services, Inc.

272496