UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JEFFERSON-PILOT LIFE INSURANCE COMPANY, et al., | : | Case No. C-1-02-479 |
| | : | |
| Plaintiffs and Counterclaim Defendants, | : | (Judge Michael R. Barrett) |
| | : | (Magistrate Judge Hogan) |
| vs. | : | **JEFFERSON-PILOT AND** |
| | : | **DISABILITY MANAGEMENT** |
| CHRISTOPHER L. KEARNEY, | : | **SERVICES' RESPONSE TO** |
| | : | **KEARNEY'S REMAINING** |
| Defendant. | : | **DISCOVERY REQUESTS** |

## I.    **INTRODUCTION**

Counsel for Mr. Kearney continues to argue that, if given the right to unlimited discovery, he can discover a basis to punish DMS and Jefferson-Pilot for bad faith. He makes this argument even though there was never a claim denial and, in fact Mr. Kearney has been overpaid from the inception of his claim to today.   During the October 18, 2006 status conference, the Court agreed that, although not deciding the matter at this time, Mr. Kearney's bad faith claim was tenuous, stating:

> I tend to agree with you that if the payments were being made, it's pretty tough to make a bad faith claim.

(Transcript 9:21-10:2)(copy attached as Exhibit "A").

In response to the Court's request that the parties "work on a workable and fairly expedited discovery plan," Kearney's counsel stated:

> It's not my intention to spend a lot of time, but I want to be limited to Rule 26.  I will lay out exactly what I think we require *and why I think we require it*, and I will do that before Friday.

(Transcript 8:18-21)(emphasis supplied).  He further stated:

> There was [sic] some document requests outstanding that were
> ordered to be complied with back in 2004.

(Transcript 13:2-4).

Mr. Kearney's November 1, 2006 filing of his "remaining discovery requests," however, is devoid of any rationale providing a nexus between the remaining claims and the requested "remaining discovery." These requests included restatement of requests previously made by Defendant but objected to by Jefferson-Pilot and DMS as well as requests previously answered.[1] This memorandum serves as both Plaintiffs' responses to the discovery requests and their continuing objections to some of the requests.[2]

## II.   ARGUMENT

### A.   The Court has Never Ordered DMS and Jefferson-Pilot to Respond to Defendant's Additional Discovery.

Rather the deliver on his promise to provide the rationale behind his "remaining" discovery requests, Mr. Kearney presents what, at best, is revisionist history as to the status of discovery in this action.  As he did at the October status conference, Mr. Kearney again relies on the incorrect premise that the Court ordered Jefferson-Pilot and DMS to respond to his discovery.  That is not what occurred.

Before the Court ruled on the pending cross-motions for summary judgment, the parties had clashed over both the scope of Defendant's discovery requests and Plaintiffs' responses to date.  Mr. Kearney misrepresents that the discovery requests were "ordered to be answered" and that the Court held in abeyance the "determination of an appropriate sanction."  This is a blatant mischaracterization of the status of discovery.  This misstatement appears designed to distract the

---

[1]   With regard to requests that have been already answered, DMS and Jefferson-Pilot treat these as requests for supplementation.

[2] Although the Court asked Mr. Kearney to narrowly tailor his discovery requests, it does not appear that he has done so.

Court from its initial observation that, other than a possible question of disputed fact with regard to the invasion of privacy claim, the remainder of Mr. Kearney's claims appeared to lack merit. The discovery sought by Mr. Kearny will not alter the Court's initial assessment.

As a threshold matter, the Court must consider the scope of the remaining claims. Mr. Kearney identifies his claim for breach of contract as one for which he requires additional discovery. This claim has been resolved, the effect of which was in Mr. Kearney's favor. Although the Trial Court ruled that Jefferson-Pilot and DMS were correct in contending that, as a matter of contract, Mr. Kearney was not entitled to either the social security supplement benefit or the increase in benefits, it ruled that the doctrine of estoppel would apply to continue the erroneous overpayments. Although the Trial Court agreed with the contractual interpretation sought by Jefferson-Pilot and DMS, the effect of its ruling is that Mr. Kearney has been allowed to retain the overpayments which to date total in excess of $400,000. Pursuant to the Opinion and Order which granted Kearney's Motion for Summary Judgment, in addition to retaining those overpayments, Mr. Kearney would continue to be paid the additional benefits in the future in an amount that could well exceed two million dollars. From a trial standpoint, however, this claim is resolved for the time being and Mr. Kearney has no right to additional discovery on the breach of contract claim.

Similarly, Mr. Kearney's bad faith claim is rendered moot by the resolution of the contract claim. Mr. Kearney has been overpaid for years. As the Summary Judgment Order stands, he continues to be overpaid. There can be no bad faith where Jefferson-Pilot and DMS have and continue to pay and over pay Mr. Kearney's claim.[3]

Thus, the only possibly remaining claims are for intentional infliction of emotional distress, civil conspiracy and invasion of privacy. DMS and Jefferson-Pilot submit that there is

---

[3] *Saldi v Paul Revere Life*, 2006 WL 140585 (E.Dist. Pa.), a copy attached as Exhibit B.

no disputed issue of any material fact that Mr. Kearney fails to establish these claims as a matter of law. Nonetheless, the Court has permitted discovery on these issues to continue. Importantly, Mr. Kearney makes no effort to explain how the remaining discovery he seeks relate to his remaining claims in any way.

As recognized during the October 18, 2006 conference, there is significant dispute between the parties as to what discovery is appropriate. This dispute hinges in part on discovery orders issued by the Magistrate Judge before the Trial Court ruled on the cross- motions for summary judgment. There are two discovery orders that must be considered before additional discovery should be ordered by the Court. Jefferson-Pilot and DMS respectfully request that the Court review these orders in full.[4]

### 1.  Document 76:  7-26-04 Order

Mr. Kearney correctly states that the Court issued a discovery-related order on July 26, 2004, referred to herein as Document 76. In Document 76, the Court addressed Mr. Kearney's motion to compel, DMS and Jefferson-Pilot's motion for protective order and Defendant's second motion to compel.[5]

The first motion to compel addressed the following: discovery responses, lack of a privilege log and 17 depositions requested by Mr. Kearney. The Court granted the motion to compel in part. With regard to the discovery responses, the Court did not order that they be answered. The Court recognized that before it could order additional response, it had to first resolve the question of whether the responses were or were not complete. Specifically, the Court stated:

---

[4] Copies are attached hereto as Exhibits C and D.
[5] The Court noted that Defendant's second motion to compel was simply a repeat version of the previously filed motion to compel.

> The Court must first address the objections Plaintiff has to
> Defendant's Interrogatories and/or Document Requests. An
> informal discovery conference has been scheduled for Thursday
> July 29, 2004. <u>The first order of business will be to resolve the
> question of whether Plaintiff's responses are "incomplete" or
> whether its objections are legitimate.</u> **If** Plaintiff is ordered to
> supplement its answers or responses, it must do so on or before
> August 31, 2004.

*See* Exhibit C at page 2 *(emphasis added)*.

As the plain language of the Order confirms, the Court never compelled Jefferson-Pilot

and DMS to supplement their discovery responses. Instead, the Court recognized that an

analysis needed to be done as to whether the previously-served responses were sufficient.[6]

What happened next is critical. The Court never made an analysis of the sufficiency of

Jefferson-Pilot and DMS' discovery responses. Instead, the effect of the July 29, 2004 discovery

conference contemplated in Document 76 was to halt discovery until the Trial Court ruled on the

cross-Motions for Summary Judgment. Document 83 explained the results of the 7-29-06

conference.

### 2. Document 83: 8-13-04 Order

The result of the July 29, 2004 informal discovery conference was that the Magistrate

Judge effectively stayed all discovery. No order was ever issued regarding supplementation of

Jefferson-Pilot and DMS' discovery responses. No review of the discovery responses was made.

No sanctions were levied. Mr. Kearney completely ignores Document 83 and blatantly misstates

that Jefferson-Pilot and DMS have already been ordered to supplement their discovery. In fact,

the Court held:

> The Court has learned that the parties' previously filed cross-
> Motions for Summary Judgment are scheduled for oral argument
> before Judge Spiegel on August 17, 2004 and are directed to the

---

[6] The Court did address the electronic discovery issue to the extent that it concluded that the cost of retrieving stored electronic discovery was not a significant burden for Jefferson-Pilot and/or its claims administrator to bear.

base question in this case, whether the Plaintiff's unilateral act of terminating a portion of the coverage was a breach of the disability policy.  It seems to us that after oral argument and Judge Spiegel's review of the policy and the law, he will either find the policy language clear and unambiguous on its face, a finding that will eliminate the possibility of a viable bad faith claim, or he will find the policy language ambiguous, thereby enabling it to be construed against the carrier and making relevant Defendant's discovery related to the bad faith issue.

***

This Court believes the resolution of the dispute to hinge on a practical consideration, not a legal question.  There is no need to compel the retrieval of electronic information until we know whether or not the policy language is or is not clear, a determination that must be made by the trial judge.  Following Judge Spiegel's order directed to that issue, the parties shall contact this Court for the purpose of scheduling another informal discovery conference wherein the Court would want to see Plaintiff's interrogatories and document requests and Plaintiff's answers containing its objections, in the event that the trial judge concludes that the policy language is ambiguous.  If not, the issue will be moot.

*See* Exhibit D, Document 83.

Although the Magistrate Judge anticipated that no additional discovery would be required if the Court found, as it did, that the policy language was clear and unambiguous, the Court has indicated it will allow Mr. Kearney to pursue additional discovery with an explanation as to why it was needed.  Although Plaintiffs have asked for this explanation, it has not been forthcoming. At this point, no analysis has ever been done as to the sufficiency of Jefferson-Pilot and DMS' initial responses with the important exception of the following: the Magistrate Judge reviewed the privilege log created by Jefferson-Pilot and DMS and copies of documents listed on the privilege log which pre-date June 6, 2006.  In Document 83, which again, Defendant ignores, the Court ruled that: **"[it] has reviewed these documents in camera and finds them to be properly categorized as 'privileged'.  The Court also finds no evidence supporting a bad**

**faith claim in any of the documents."**[7] Despite the Court's ruling on the pre-6/6/02 documents, Defendant persists in his request for them.

### B.    Electronic Discovery of Disaster Recovery Tapes is Not Warranted.

Without question, the majority of the parties' dispute centers on Document Request Number 2. Document Request Number 2 seeks any documents which relate or refer to Mr. Kearney in the possession of Jefferson-Pilot and/or DMS. In his renewed discovery request, and as argued in his previous motions to compel, Mr. Kearney has expanded this request to require that DMS undertake a lengthy and costly review of its disaster-recovery backup tapes. Plaintiffs have objected.

The Magistrate Judge recognized that if the insurance contract at issue was clear and unambiguous, the need for the costly and extensive electronic discovery requested by Mr. Kearney would not exist. The documents sought by Mr. Kearney, assuming they existed, would go to the breach of contract and bad faith claims. These claims have been eliminated by first, the fact that the Court ruled in Kearney's favor on his claim for continued overpayment and second, that Jefferson-Pilot and DMS have overpaid and continue to overpay Mr. Kearney. This fact eliminates any possibility of success on the bad faith claim. Setting these arguments aside however, there are other legitimate reasons to disallow this request.

Mr. Kearney has asked for supplementation of what he calls Document Request Number 2. In his recently filed document he describes it as:

> Everything in JP/DMS' possession that relates, refers to or concerns Christopher Kearney including importantly, electronically maintained information and communications Jefferson-Pilot/DMS had with Ms. Farabow, Mr. Dempsey, Mr. Newkirk, and Ms. Johnson.

The original document request number 2 as submitted by Mr. Matan read as follows:

---

[7] Exhibit D

Produce every item of correspondence, memo, or other writing in your possession and/or in the possession of DMS that relates to Defendant Kearney. Correspondence shall mean and be defined as documents as they are set forth in the definition section preceding these discovery Requests, specifically Paragraphs 5 and 6. If you claim some of such documents are privileged, attach a privilege log describing such document(s).

DMS and Jefferson-Pilot's response to document request number 2 was as follows:

**ANSWER:** Objection. Plaintiff objects to production of information protected by the attorney/client and/or work product doctrine. See also response to Document Request No. 1. Without waiving such objection, the claim file of Defendant has been produced.

In his motion to compel, Mr. Kearney has expanded upon the original document request no. 2 in two important ways. First, he seeks to include electronic documents stored on disaster-recovery tapes. Second, as discussed below, he expressly seeks documents relating to the communications and files of counsel.

The discovery sought by Mr. Kearney does not justify the expense of compelling review of the disaster-recovery tapes. Kathleen Lyons is Vice-President of the Information Technology Department for DMS.[8] Ms. Lyons has calculated an update of the estimated costs involved in the retrieval, conversion and search of electronically stored information. DMS began to store its documents electronically in February 2002. At that time it implemented a post 9/11 disaster-recovery plan. The monthly backup tapes create a snapshot of the system as it exists on the last business day of each month. These backup tapes are created for disaster-recovery purposes only. They do not capture the day to day activity of the system. If DMS were required to retrieve, convert and search its backup tapes for the period from February 2002 through October 2006, the cost would exceed $43,000.[9]

---

[8] Exhibit E, Affidavit of Kathleen Lyons.
[9] Exhibit E at ¶11.

The cost involved in retrieving and searching the disaster-recovery tapes is extraordinary. More importantly, the cost is not justified given the anticipated result. DMS had previously been ordered to undertake a similar search in a case which involved Mr. Kearney's current counsel. That search yielded about 400 pages of information. Importantly, throughout the pendancy of that case, Mr. Kearney's counsel represented that he needed to be present during the search. Once DMS expended the time and money necessary to retrieve the back up tapes and convert them, Mr. Kearney's current counsel refused to bear the expense of participating in the search himself. Nonetheless, DMS undertook the search and produced the retrieved 400 pages to counsel. These same pages were previously presented to the Magistrate Judge for review. The great majority of those pages were duplicative of what was already contained in the claims file in the other DMS case. The pages that were not duplicative did not impact the outcome of that case one way or another. This is consistent with the testimony of DMS personnel, and Mr. Mills in particular, that important documents are printed and placed in the hard copy of the claim file.

In his attempt to justify his request for the electronic discovery, Defendant has claimed that "two principle trial exhibits" resulted from the electronic discovery in the other DMS case. Both have been presented to the Magistrate Judge. One exhibit was the "big brother"[10] email and the second was the time sheets of a DMS nurse employee showing that she worked on the other DMS case. This was a known fact and verified by the claims file. The extraordinary cost of electronic discovery did not justify the retrieval of these inconsequential documents.

There is no question that electronic discovery of disaster-recovery tapes is costly. This is especially true when weighed against the likelihood of discovering relevant information in this particular case. The question of whether discovery sought creates an undue burden is answered

---

[10] The e-mail itself made a reference to Mr. Ellis having a "big brother" conversation with previous counsel. Mr. Roberts interpreted this in an Orwellian fashion and attempted to create a negative spin.

by a balancing test. The following factors are considered: (1) the specificity of the request; (2) the likelihood of discovering critical information; (3) the availability of such information from other sources; (4) the purpose for which the responding party maintains the requested data; (5) the relative benefit to the parties of obtaining the information; (6) the total cost associated with production; (7) the relative ability of each party to control costs and its incentive to do so; and (8) the resources available to each party.[11]

DMS and Jefferson-Pilot have established that the likelihood of discovering critical information is low. This also impacts criterion five, the relative benefit of the discovery to the parties. As discussed herein, a similar search was undertaken in another case and yielded no information of import. Given the fact that the parties are not likely to discover critical information, the relative benefit to Mr. Kearney in obtaining the discovery is low. It has also been determined that this information is available from other sources. It is the practice of the claims personnel to place important and relevant documents in the claim file. With regard to criterion 4, DMS maintains these backup tapes for disaster recovery purposes only. They are stored in an off site location and the cost of retrieving the tapes is high. This is because they are not stored for purposes of regular use. They are stored in the event of a disaster in which DMS would need to recover all of its data. As such, the total cost associated with the production of these documents is high, in excess of $43,000. Finally, Mr. Kearney has it within his ability to control costs although his incentive to do so is low. As his counsel has already demonstrated in a previous case, he demanded that this costly discovery be undertaken, but refuses to attend the search of the data as this would have been a cost to him. There is no question that the balancing test in this case tips in favor of DMS and Jefferson-Pilot. There is little to no benefit to be

---

[11] *Rowe Entertainment Inc. v The William Morris Agency Inc* 205 F.R.D. 421, 428-29 (S.D.N.Y. 2002); *Metronic Sofamor Danek Inc. v Michelson* 229 F.R.D. 550, 552 (W.D. Tenn. 2003); Fed. R.Civ. P. 26(b)(2)(i)-(iii).

obtained by undertaking the search of disaster recovery tapes but the cost of undertaking this search is high.

Mr. Kearney relies heavily on the testimony of Mr. Mills that perhaps not every single item of paper seen by him was printed and put in the claims file. What is also true however, as has already been aptly demonstrated, is that any relevant or important communications regarding a claim are in the claim file. These documents have already been produced to Mr. Kearney and do not justify the cost of extensive discovery. If the Court orders DMS to undertake a review of the backup tapes, DMS respectfully requests that the cost be born by Mr. Kearney before proceeding.

C.    **The Court Has Already Ruled That Mr. Kearney Cannot Compel Discovery From Counsel.**

As redrafted, Document Request No. 2 also specifically asks for communications with Stephanie Farabow, Bill Dempsey, David Newkirk, and Gerri Johnson; all of whom are attorneys. Mr. Kearney argues that the Court has ordered production of written materials from and/or between in-house counsel which pre-date June 6, 2002.[12] Using a *Boone v. VanLiner* analysis, the Magistrate Judge had ruled that 6-6-02 was the date from which attorney/client communications are protected from disclosure. After the Court's 7-26-04 Order (Doc. 76), however, DMS and Jefferson-Pilot objected to portions of that Order and in particular to the Court's requirement that documents between or from counsel which pre-dated 6-6-02 be produced. In its 8-13-04 Order the Court reviewed the privilege log and held that:

> **We can say, however, the Plaintiff has now provided an appropriate privilege log and has also provided the Court with copies of the documents listed in the privilege log which pre-date June 6, 2002, the date that disputed payments were stopped. The Court has reviewed these documents in camera and finds them to be properly categorized**

---

[12] He ignores the fact that Gerri Johnson was outside counsel.

**as "privileged." The Court also finds no evidence supporting a bad faith claim in any of the documents.**

Mr. Kearney's claim that DMS and Jefferson-Pilot were ordered to produce written materials shared with attorneys relative to him which pre-date 6-6-02 is incorrect. In the privilege log already submitted, DMS identified these documents for the Court, shared them with the Court and received confirmation that they are properly categorized as privileged.

Finally, Mr. Kearney argues that Robert Mills testified that there may be documents not contained within the claims file and that because of this a review of the backup tapes is justified. Plaintiff already deposed Mr. Mills for over 6 hours. During that time, no evidence was elicited that any non-privileged information of consequence on the claim exists outside of the claims file.

DMS submits that the entirety of Mr. Mills' testimony on this point must be read. Specifically, Mr. Mills testified that he participated in phone calls by and between himself, Gerri Johnson, Stephanie Farabow and William Dempsey. Ms. Johnson was outside counsel for DMS and Jefferson-Pilot while Ms. Farabow and Mr. Dempsey are in house attorneys. Mr. Mills testified that he recalled communicating with Ms. Johnson via email and that he may have been cc'd on emails that Ms. Farabow sent. All of these emails related to communication by and between counsel. The Court has already reviewed the privilege log and held that even those communications which pre-dated the June 6, 2002 payment alteration date were properly categorized as privileged. Any hypothetical emails that Mr. Mills does not specifically recall should also fall into this category.

Moreover, even if it can be established that these emails existed at one time, the appropriate remedy is an inference that they do exist. DMS and Jefferson-Pilot concede that before the declaratory judgment action was filed, there were communications by and between counsel and claims personnel. As determined by the Trial Court, Jefferson-Pilot and DMS were

correct in their interpretation of Mr. Kearney's policy that he was not entitled to the social security benefit payments and COLA adjustments. Before the company sought the Court's assistance with this issue via a declaratory judgment action, they communicated between counsel and claims personnel. This is to be expected. DMS therefore admits and concedes that communications between Mr. Mills, a claims person, and in house and outside counsel took place. The fact that these communications took place is not evidence of bad faith. This claim continued to be overpaid during the Court action. Despite this, counsel frequently references correspondence from DSM and Jefferson-Pilot's former outside counsel that they act in a way to "strip plaintiff of a bad faith claim." This correspondence clearly establishes that such privileged communication was in an effort to avoid any basis for a claim of bad faith rather than to create one. In other words, the result of this communication was a confirmation of DMS and Jefferson-Pilot's intention to continue to administer the claim in good faith. To "strip" Mr. Kearney of a bad faith claim is to act in good faith.

### D.    Mr. Kearney Has Failed to Establish the Need for this Discovery.

During the 10-18-06 conference with the Court, counsel for Mr. Kearney indicated he would provide his reasons for the discovery he sought. Mr. Kearney's document requests, however, provide none. Nor does it identify what claim he believes the discovery might advance. Attached as Exhibit F is an email string between Mr. Ellis and Mr. Roberts regarding the additional discovery. Mr. Roberts reaffirmed his agreement to "list the discovery we need and the reasons we need it." Mr. Ellis then asked Mr. Roberts to identify any specific acts he believes occurred so that the discovery efforts could be focused to suit the claims. Mr. Roberts responded that: "You want me to state what happened before I get discovery of what happened? Seems backward to me." This is basically an admission of Mr. Kearney's fishing expedition. He has no evidence of any bad faith, intentional infliction of emotional distress, conspiracy or

invasion of privacy claims – he merely hopes to stumble across something he can use to argue that such claims exist.

As the Court already noted, the only possible, yet DMS and Jefferson-Pilot would argue questionable, claim is the invasion of privacy claim with regard to the manner in which the surveillance was conducted. DMS and Jefferson-Pilot submit that the depositions of the investigators can and should be taken to address this claim. Mr. Kearney admits that with regard to the other claims he does not know what happened. He is simply trying to cast a wide net to see if he catches anything. The fact of the matter is that Jefferson-Pilot and DMS overpaid Mr. Kearney's claim for years. When this incorrect overpayment was discovered, it sought the assistance of the Court in declaring the correct payment amount. It was not until the declaratory judgment complaint was filed that Mr. Kearney raised these other allegations. The fact that the lawsuit was filed, in and of itself, is not and cannot be bad faith. To allow a bad faith claim to continue on the basis that the declaratory judgment was filed would have a chilling effect on the use of declaratory judgments.

E.     **Jefferson-Pilot and DMS Have Appropriately Responded to the Majority of Defendant's Discovery.**

For the edification of the Court, Jefferson-Pilot and DMS will restate its initial discovery responses to Mr. Kearney and supplement them where appropriate. It must also be noted that there is some discovery which appears to have been altered from the original request. These situations will also be highlighted for the Court.

### 1.  Document Request No. 3/ Interrogatory No. 7

As redrafted by Roberts in his most recent filing, Mr. Kearney requests:

> The Jefferson-Pilot/DMS contracts between themselves and any contracts or agreements either has with Employers Reinsurance, including all amendments from 1995 through November 2006.

- 14 -

Document request number 3 as originally submitted asked for:

> Each and every document that relates to your contractual relationship with DMS, whether or not they are formal documents, correspondence, letters, memoranda, emails, memorialization of telephone conferences or meetings, or other documents showing the relationship between the two.

Interrogatory number 7 as originally submitted asked:

> State the terms of any contract between DMS and the Plaintiff (oral or written), whether or not that has been reduced to writing, either by memorandum or formal written agreement, when signed, its location, who it was signed by and whether it was solicited by DMS and, if so, by what means.

In responding to Kearney's motion to compel DMS and Jefferson-Pilot objected to the scope of the request. As originally drafted, Request No. 3 sought production of an incalculable number of documents because the contractual relationship of DMS and Jefferson-Pilot is arguably related every time DMS and Jefferson-Pilot communicate. Although Mr. Roberts has clarified that the request is to be limited to the actual contract between Jefferson-Pilot and DMS, he has expanded it to include any contracts with Employers Reinsurance as well. The initial interrogatory only asked for the contract between Jefferson-Pilot and DMS. The Court has not yet ruled as to whether this information is proprietary and confidential. More important however, Mr. Kearney has not stated how the contract between DMS and Jefferson-Pilot impact his remaining claims of bad faith, intentional infliction of emotional distress, civil conspiracy and invasion of privacy. The "conspiracy" he describes has not been applied to him because his claim has been paid. In any event, the Court's order was that it would review the answers to the previous discovery and determine whether they were sufficient. This has not yet been done.

## 2. Document Request No. 5

The original document request no. 5 asked that Jefferson-Pilot:

> Produce any documents that relate to the criteria used by Plaintiff to refer
> cases to DMS for handling, including notes, memoranda, emails,
> messages, or any documents of any type and description.

Jefferson-Pilot has already answered this request. Without waiving any objections as to

the propriety of the request, Jefferson-Pilot answered that no such document exists. In response

to the second motion to compel Jefferson-Pilot submitted the deposition of Valerie Loftin

wherein she testified that there were no written criteria for the transfer of cases to DMS for

handling.[13]  Plaintiffs cannot be compelled to produce documents that do not exist.

### 3.  Document Request No. 6/Interrogatory No. 11

Document request number 6 asked Jefferson-Pilot to:

> Produce copies of all sanctions, fines, penalties, limitations imposed,
> consent decrees, investigations, fines or letters of reprimand imposed upon
> Plaintiff and/or DMS, by any state insurance commissioner, insurance
> regulator or state or federal government office or official in the last ten
> [10] years.  If there are none please state so clearly.

Interrogatory number 11 essentially sought the same information and asked:

> State whether you have been sanctioned, fined, given penalties, limitations
> imposed, consent decrees, investigated, fines or letters of reprimand or
> other action against you by any state insurance commissioner or regulator
> or any federal governmental office or official in the last ten [10] years,
> including criminal, civil, or governmental investigations and pending
> investigations that plaintiff has any knowledge of.  If there are none,
> please state so clearly.

In response to the original request Jefferson-Pilot and DMS objected that the

interrogatory was overly broad, unduly burdensome, not limited in scope or geographic area,

irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Moreover, this request seeks confidential information which DMS and Jefferson-Pilot have a

duty to their policyholders to protect.  The U.S. Supreme Court has ruled that evidence of

---

[13] Exhibit G, Loftin Deposition at pp. 27-28

misdeeds in other states cannot be used to support a punitive damage award in the state of

applicable law.[14]  Under *Campbell*, the only possible relevant information would be whether

there were any sanctions, fines or penalties levied in the state of Ohio.  As articulated in response

to Defendant's second motion to compel, in the past 10 years neither DMS nor Jefferson-Pilot

had been fined, investigated, sanctioned or penalized in the State of Ohio.  This is still the case.

### 4.    Document Request No. 10(b)

Document request 10(b) asks for documents describing procedures for claims handling.

The original request limited this to the time and scope during which Mr. Kearney's claim was

handled, processed or investigated.  Although Jefferson-Pilot and DMS objected to this request

on the basis that it was over broad, unduly burdensome, and sought irrelevant and inadmissible

evidence, as well as potentially attorney/client privileged communications or attorney work

product privileged documents, the fact is that no claims manuals or procedure manuals regarding

the processing of disability insurance claims exist.  Each claim was unique and administered on a

case-by-case basis.  This request has been answered.

### 5.    Document Request No. 11

Document Request number 11 as originally drafted asked for:

> From 1990 to date, any and all writings and/or literature which constitute
> all advertising, sales, promotional and/or marketing materials, including
> sales, promotional, marketing and/or advertising brochures, pamphlets,
> memoranda and/or letters, or other type of "writings" whatsoever, used by
> your company [Jefferson-Pilot] to sell, promote, market and/or advertise a
> type of insurance coverage which is the subject matter of this action to the
> general public, including all such materials and instructions and
> memoranda for use by and instructions to the agents who would be selling
> these disability policies.  This Request includes television and radio
> commercials and transcripts thereof.

---

[14] *State Farm v. Campbell* 538, U.S. 408, 409-410, 123 S.Ct. 1513 (2003).

In the most recent filing Mr. Kearney has redrafted this request to include all marketing materials of DMS and specifically any materials provided to Jefferson-Pilot or Employers Reinsurance by DMS to solicit or secure the business of administering claims (both entire blocks of claims and individual claims). Production Request Number 11 as originally drafted relates to marketing materials used by Jefferson-Pilot to sell the type of insurance coverage that Mr. Kearney has. This request is over broad, unduly burdensome and seeks irrelevant and inadmissible evidence. Moreover, Document Request number 11 as now redrafted does not ask for what document request number 11 originally sought. Document request number 11 as redrafted was never asked for and is not properly a subject of the original motion to compel. If the Court allows Mr. Kearney to reopen discovery, DMS and Jefferson-Pilot respectfully request that he specifically identify how it advances, or at least related to, his remaining claims.

### 6. Document Requests No. 14, 22

Document request 14 as originally drafted asked for "Materials or guidelines which refer to the Plaintiff's and/or DMS' claims handling procedures and/or criteria. Any and all claims training materials." Document request number 22 asked for any in-house training or seminar materials. With regard to document request number 22, this request is overly broad, unduly burdensome and seeks information which is not relevant, admissible or reasonably calculated to lead to the discovery of admissible evidence. With regard to document request number 14, in addition to the above objections, this request seeks privileged attorney/client communications and attorney work product. Without waiving these objections, however, DMS and Jefferson-Pilot answered that:

> . . . there are no set claims handling procedures and/or criteria because each claim is unique and is administered on a case-by-case basis. Further, in recognizing that DMS began assisting in the administration of defendant's claim in late 1997, DMS responds that its attorneys provided training on an

annual basis to its claims representatives in The Fair Claims Settlement Practices regulations; such training is entirely privileged from disclosure.

Once again, Plaintiffs cannot be compelled to produce documents which do not exist.

### 7. Document Request No. 15

Document Request Number 15 as originally drafted asked for:

> Any and all treatises, manuals, articles, references, articles, handbooks, memoranda and other documents of any kind, nature or description which were used during the handling of Defendant's claim, including but not limited to, any medical or vocational reference materials.

The request as redrafted essentially asks for the same things and seeks "manuals, materials, and documents used during the handling of Mr. Kearney's claim." DMS and Jefferson-Pilot have objected that the request sought materials protected by the attorney/client privilege and/or the work product doctrine as well as that the request was overly broad, unduly burdensome and requires excessive detail. Without waiving the objections, Plaintiffs answered that any responsive materials would be in Defendant's claim files and/or his policies.

### 8. Document Request No. 17

The original document request number 17 asked for:

> Any individual, personal or desk files, activity logs or other diary notes of the adjusters or claims handlers who, either directly or indirectly, handled Defendant's claims.

During the deposition of Robert Mills, Mr. Roberts asked again for his desk calendar which Mr. Mills said he kept. Mr. Mills has now confirmed that he does not retain his desk calendars past the end of the year. As discussed above, Mr. Mills testimony on this point related to Defendant's attempt to identify the dates Mr. Mills spoke to counsel regarding the decision to pursue a declaratory judgment action. DMS and Jefferson-Pilot admit that these conversations took place, the result of which was to file the instant lawsuit.

- 19 -

### 9.  Document Request Nos. 20, 21/Interrogatory Nos. 9,10

These requests all sought information regarding lawsuits filed by Jefferson-Pilot and against Jefferson-Pilot and DMS.

Document request number 20 asked Jefferson-Pilot to:

> Produce a copy of each and every complaint and/or counterclaim filed in any court against plaintiff alleging breach of contract or bad faith for non payment or delay of disability payments or benefits during the past ten years.

And, document request number 21 asked Jefferson-Pilot to:

> Produce a copy of each and every complaint filed by Plaintiff for declaratory judgment on or with respect to any disability policy, whether in any state court or federal court.

Similarly, interrogatories 9 and 10 asked for the same information including the caption of the case, the name, address, telephone number, and email address of all counsel and the disposition of each case.

As a threshold matter, this request is over broad and unduly burdensome.  It also seeks private information regarding DMS and Jefferson-Pilot insureds.  To the extent that these lawsuits are a matter of public record, the documents are equally accessible to Mr. Kearney.

More importantly, these requests seek information that is irrelevant to the issues in this case.  Whether Jefferson-Pilot ever filed a declaratory judgment action based upon one of its policies or whether Jefferson-Pilot has ever been sued by one of its policyholders is irrelevant to this action.  These requests range from all lawsuits filed by anyone against either Jefferson-Pilot or DMS, including lawsuits filed against DMS with regard to claims brought by insureds against other insurers where neither the insureds not the insurers have any link to this lawsuit.  This information is irrelevant and private.  Indeed, federal and state privacy regulations and both Jefferson-Pilot's and DMS' privacy pledges in accordance with such regulations, prohibit the

companies from producing this information and assure their insureds the expectation and comfort that their personal sensitive medical and financial information will not be revealed to third parties. Moreover, to further protect the confidentiality of such information, several insureds have requested and received confidentiality agreements from Jefferson-Pilot and/or DMS.

In contrast to these strong privacy interests, Mr. Kearney's' interests are negligible. The facts of every single disability claim are unique in the type of disability presented, the circumstances in which the disability manifests itself, the restrictions the disability imposes, the nature of the appropriate and proper investigation into the disability claim and the actions of Jefferson-Pilot and/or DMS in reviewing the claim presented. Thus, discovery into specifics of various cases lacks the potential to be relevant to Mr. Kearney's claims.

Furthermore, this Court does not have jurisdiction over those third parties whose interests are directly affected by the discovery, and it would be patently unfair to promulgate an order which affects the rights of third parties who have not been given an opportunity to be heard on this matter, especially where sensitive medical details could be thrust into the public arena.

Mr. Kearney's discovery and motion to compel fail to address the privacy concerns and rights of the individuals involved in these matters. The dissemination of personal, private information concerning insurance policyholders is prohibited by many state and federal privacy statutes, including the Gramm-Leach-Bliley Financial Modernization Act (GLB"), 15 U.S.C. § 6700, et seq. The GLB prohibits financial institutions (including insurance companies) from disclosing a customer's nonpublic personal information to unaffiliated third parties. Allowing the discovery would implicate more than just Jefferson-Pilot's and DMS' duties under state and federal privacy laws: it would directly impact the privacy rights of the former individual litigants themselves, individuals often with highly personal medical and psychological conditions, many

of whom have chosen to settle their differences out of court and, therefore, out of the public forum. If the former litigants are forced to testify, they will have to testify about many delicate and possibly embarrassing medical and psychological conditions. Given the fact that the former litigants are not parties to this case, their privacy interests should be given additional weight. *Hasbrouck v. BankAmerica Housing Services,* 187 F.R.D. 453, 458 (N.D.N.Y. 1999). They will have to bear costs, annoyance and potential embarrassment of the plaintiff's requests for information, and may have to intervene in this case to protect their privacy interests. *Blum v. Schlegel*, 150 F.R.D. 38 (W.D.N.Y 1999); *Hasbrouck*, 187 F.R.D. at 461.

Finally, any information that Jefferson-Pilot and DMS possess would most likely be contained within their litigation files and litigation departments and, therefore, would be privileged.

### 10. Interrogatory No. 2

Interrogatory number 2 as originally worded asked Plaintiffs to:

> State and identify with particularity each document and/or part of each document or every item of information upon which the Plaintiff relied in determining that Defendant is not entitled to disability benefits as specified in its complaint and when and by whom such decision was made.

Interrogatory number 2 as reworded asks "who suggested new interpretation of contracts in 2001?"

DMS and Jefferson-Pilot have already responded to this interrogatory. The answer in full was:

> Defendant's claim file and policies illustrate that Defendant was and is not entitled to the COLA and Social Security Supplement that he was mistakenly paid and continues to be paid. Robert Mills identified this erroneous payment shortly before DMS representatives met with Attorney Speigel in October 2001.

Plaintiff has identified Mr. Mills as the person who identified the error in payment. Mr. Mills

has also been extensively questioned regarding this in his deposition. Mr. Kearney wants to

create an inference that there has been some new interpretation of his policy designed to have a

negative impact on him. In fact, it is simply the correct interpretation.

### 11. Interrogatory No. 4

Interrogatory number 4 asks Jefferson-Pilot to:

> Identify each investigator, private investigation firm, investigation agency
> and/or other investigative and/or credit investigative or compilation firm
> used to compile data, information or facts, or give reports (oral or written)
> on defendant.

As redrafted, interrogatory number 4 asks Jefferson-Pilot to:

> Identify (and provide all documents relative to) investigators retained and
> produce all videotapes, audio tapes, photographs and investigative reports
> and notes.

DMS has already produced all documents in its possession which are responsive. At the

close of Mr. Kearney's deposition, which he abruptly terminated, counsel for DMS produced the

investigative reports created during the course of his claim. On June 9, 2004 additional copies of

the surveillance tapes were produced as well. Plaintiff will work with Mr. Kearney's counsel to

schedule the depositions of the investigators as requested.

### 12. Interrogatory No. 5

Interrogatory 5 as originally drafted read:

> State when Defendant's claim was referred to DMS, as third party
> administrator, why it was referred, what documents, email, memorandums
> [sic] or correspondence accompanied such referral, what person and/or
> persons (with their titles and office locations) where involved in the
> decision to make such referral, and the reasons for such referral.

As reworded, the interrogatory asks for essentially the same information. DMS and Jefferson-

Pilot have already answered this interrogatory as well. It was, in full:

Objection. Plaintiff is uncertain of defendant's use of the word "referred". Without waiving said objection, in approximately July, 1997, DMS was asked to assist in the review and the evaluation of Defendant's claim for benefit eligibility. Individuals involved in this decision were: Mr. Harold Shelton, Jefferson Pilot, Manager, Individual Health Administration (retired) and Mr. David Newkirk, Employers Reinsurance Corporation, Assistant Vice President, Health Care Claims.

This interrogatory has been answered.

### 13. Interrogatory No. 15

Interrogatory number 15, which appears to have been mistakenly identified as document request 15, asks for the amount of reserve on "plaintiff's" policy for each year since 1993, and if it has been raised or lowered, when it was raised or lowered in any particular year, who did it and why. DMS and Jefferson-Pilot have objected that this interrogatory seeks information that is neither relevant, admissible nor reasonably calculated to lead to the discovery of admissible evidence. It also seeks proprietary and confidential business information. To the extent this interrogatory is actually asking for the reserve on Mr. Kearney's policy, not plaintiff's policies in general, this is a matter of formula. The reserve amount does not reflect any type of analysis or evaluation as to the value of Mr. Kearney's policy as it relates to the lawsuit.

### F.    The Court Has Already Ruled on the Request for Additional Depositions

Mr. Kearney's request for the depositions of Stephanie Farabow and William Dempsey has already been addressed by the Court.  In Document 76 the Court ruled that the depositions of the attorneys were not to be allowed. The Court held that before any counsel could be deposed, it must be shown that the information sought was probative and crucial to the preparation of the case. It denied Mr. Kearney's request for counsel's depositions and stated that "the Court is not satisfied that counsel is the only source of the discoverable material and therefore, neither Ms. Johnson, Mr. Dempsey nor Ms. Farabow may be deposed, at least not at

this time." The Order did not specifically address the deposition of David Newkirk, but would equally apply since he is also an attorney.

Mr. Kearney's claim that the Magistrate Judge "reserved ruling" for the time being as to whether Ms. Farabow and Mr. Dempsey could be deposed is incorrect. The Court put the burden on Mr. Kearney to show that he sought probative and crucial information that could only be obtained by the depositions of counsel. Defendant has done nothing in this latest discovery request to establish that Ms. Farabow and Mr. Dempsey are the only source of discoverable materials, he simply argues that Mr. Kearney should not be delayed anymore. The Court ruled that Mr. Kearney needed to submit further justification for his request to depose counsel. He has not done so.

Similarly under the additional documents section of his brief, Mr. Kearney asks for the attorney files of Ms. Farabow, Ms. Johnson, Mr. Newkirk and Mr. Dempsey. The Court has already ruled with regard to those attorney/client documents which were contained in the claims file. As discussed above, the Court has ruled that the privilege log was correct and that the documents of counsel, even those that predated June 6, 2002 were exempt from disclosure. There has been no order to produce attorney files. And, as with the request for the depositions of counsel, the burden is on Mr. Kearney to establish that there is no other means by which to get the information he seeks.

With regard to the deposition of Mr. Mills, the Court's 7-26-04 Order (Doc. 76) held that the depositions of Mr. Mills and Mr. Hughes should go forward. Specifically, the Court said "these depositions should occur in the state and county where the deponents reside and be at Defendant's costs. Defendant's failure to complete both depositions when scheduled is not the fault of the deponent." To this end, although Mr. Kearney has not established how additional

depositions of Mr. Mills and Mr. Hughes will further his remaining causes of action, he can proceed to take them. Mr. Kearny has already been ordered to bear the cost of these depositions, which must include the cost of travel and time for Plaintiff's counsel, and they need to take place where Mr. Hughes and Mr. Mills reside.

Mr. Kearney has also asked for another Jefferson Pilot 30(b)(6) deposition, the deposition of a Jefferson Pilot Chief Privacy Officer as well as 30(b)(6) depositions for DMS and Employers Reinsurance. The Court has already held that Mr. Kearney can either retake Ms. Lofton's deposition or a new 30(b)(6) witness. To include DMS and Employers Reinsurance without additional justification improperly expands the order of the Court, however.

Finally, Mr. Kearney has asked to take depositions of the investigators. As stated above, DMS and Jefferson-Pilot will cooperate with Mr. Kearney's counsel in scheduling these.

## III.    CONCLUSION

Mr. Kearney, by his counsel's own admission, has firmly placed the cart before the horse by demanding burdensome discovery from Plaintiffs in the hope of finding a cause of action. That is not how Rule 26(b)(1), Fed.R.Civ.P., works.[13] That rule allows discovery "relevant to the claim of defense of any party,..." Mr. Kearney's complaint in this action alleged one central misdeed forming the basis for all of his extra-contractual claims – plaintiff's "misinterpretation" of the policy language. We all now know that Mr. Kearney's premise was specious. The record establishes that the reason Mr. Kearney reneged on his promises to provide the Court and Plaintiffs with  the *reasons* for his needed discovery is that none exist.

Moreover, in recounting the discovery he seeks, he misrepresents the record. Mr. Kearney completely ignores document number 83 and argues as if only document number 76

---

[13]At the October 18, 2006 status conference, Mr. Kearney's counsel stated he wanted "to be limited to Rule 26", further stating, "You know, Rule 26 is pretty clear about the scope of discovery." (Transcript 8:14-21). Plaintiffs agree.

applies. Document number 76 recognized that an informal discovery conference was scheduled for July 29, 2004. The Court stated:

> The first order of business will be to resolve the question of whether plaintiff's responses are "incomplete" or whether its objections are legitimate. If plaintiff is ordered to supplement its answers or responses, it must do so on or before August 31, 2004.

Plaintiffs have never been ordered to supplement their discovery responses. During the July 29, 2004 conference, out of which document number 83, the 8-13-04 Order came, the Court held the discovery in abeyance until after Judge Speigel's ruling on the motions for summary judgment. The Court also found that there was no evidence for a bad faith claim in any of the documents on the privilege log and that the documents listed were properly identified as such.

Respectfully submitted,

s/ William R. Ellis
William R. Ellis (0012279)
Amy Gasser Callow (0063470)
WOOD & LAMPING LLP
600 Vine Street, Suite 2500
Cincinnati, OH 45202
Telephone:    (513) 852-6067
Telefax:      (513) 852-6087
E-mail:       wrellis@woodlamping.com

John E. Meagher (511099)
SHUTTS & BOWEN LLP
201 S. Biscayne Boulevard
1500 Miami Center
Miami, FL 33131
Telephone: (305) 358-6300
Telecopier: (305) 381-9982
E-mail:    JMeagher@Shutts-law.com

Attorneys for Plaintiff
Jefferson-Pilot Life Insurance Company
and Cross-Claim Defendant, Disability
Management Services, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this 21st day of November, 2006. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ William R. Ellis
William R. Ellis

Trial Attorney for Plaintiff
Jefferson-Pilot Life Insurance Company,
and Cross-Claim Defendant, Disability
Management Services, Inc.

300360