1                    UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF OHIO
2                          WESTERN DIVISION

3

4                              - - -

JEFFERSON-PILOT LIFE,         .  CASE NO. 1:02-CV-00479
5                             .
              Plaintiff,      .  STATUS CONFERENCE
6                             .
        - v -                 .  Wednesday, October 18, 2006
7                             .  1:30 p.m.
CHRISTOPHER KEARNEY, et al.,.
8                             .  Cincinnati, Ohio
              Defendant.      .
9    . . . . . . . . . . . . . .

10

                      TRANSCRIPT OF PROCEEDINGS
11        BEFORE THE HONORABLE MICHAEL R. BARRETT

12  For the Plaintiff:      William R. Ellis, Esq. and
                            Amy Callow, Esq.
13                          WOOD & LAMPING
                            600 Vine Street
14                          Suite 2500
                            Cincinnati, Ohio   45202
15

16  For the Defendant,
    Christopher Kearney:   Michael A. Roberts, Esq.
17                          GRAYDON HEAD & RITCHEY
                            511 Walnut Street
18                          Cincinnati, Ohio    45202

19

    Law Clerk:             Grace Royalty, Esq.
20

21  Courtroom Deputy:      Barbara Crum

22

    Court Reporter:        Maryann T. Maffia, RMR
23                          U.S. Potter Stewart Courthouse
                            100 E. Fifth Street
24                          Cincinnati, Ohio 45202

25

Proceedings recorded in stenotype, transcript produced by computer.

1    THE COURT:  Why don't we just go on the record for a

2    second.

3    We are here on a follow-up of our conversation of

4    last week, I think, relative to the filing of the Motion for

5    Summary Judgment, then the filing of a Motion to Strike the

6    Motion for Summary Judgment, and the Reply thereto.  What I'm

7    going to do is, I am going to grant the Motion to Strike the

8    current filing for summary judgment.  There is automatic leave

9    given to refile the motion after the completion of discovery.

10    I am going to ask counsel to work on a workable and

11    fairly expedited discovery plan to figure out where they are

12    going to be, and then we will deal with, once that's

13    completed --

14    I don't know how much the facts, Bill, will change

15    where your summary judgment is going to be, but how much time

16    would you need after you guys conclude any discovery?  I'm

17    assuming you are going to basically refile the same thing

18    maybe with some excerpts that come out of the depositions, and

19    Mike could probably file his response with other deposition

20    excerpts, I'm thinking.

21    MR. ELLIS:  I would suspect that's probably the case,

22    Your Honor.  I think the real question is going to be what

23    exactly are -- what are the specifics that Mike is claiming so

24    we have some idea of what might be relevant discovery and what

25    isn't.

1          Right now, we are faced with the outstanding

2     discovery which is for all electronic information, back-up

3     tapes, so forth and so on, that really, as far as I can tell,

4     would be unrelated to any of this unless Mike has some

5     specific claim that he would like to advise us on.

6          THE COURT:  Okay.  I mean, you are heading, Mike,

7     towards the invasion of privacy and then just the bad faith,

8     the communications between the two companies, or what?

9          MR. ROBERTS:  Your Honor, you did read one side's

10    motion.

11         THE COURT:  Right.

12         MR. ROBERTS:  It's written in a way that, you know,

13    it's meant to persuade and it slants the facts.  I think all

14    claims will be gone if we are done with the discovery, but I

15    will write out before Friday what I think to be discovery that

16    needs to be done.

17         THE COURT:  Why don't you guys just figure that out?

18         MR. ROBERTS:  Judge, do you want us to take discovery

19    disputes up with you directly or go to a specific magistrate

20    first?

21         THE COURT:  No, no, just if -- I want you to try to

22    figure out what you want to do, see if you can narrow or

23    tailor your discovery so that it's relevant to fairly what you

24    think will still be alive.  Until it's discovered, you know,

25    who knows.  But I wanted it to be workable stuff, and I want

1    you guys to try to work on a reasonable timetable and get back

2    to me with the dispute, or we can have another conference in a

3    week or two or whatever.

4               MR. ROBERTS:  I don't want you to have to keep

5    visiting with us.

6               THE COURT:  I love you guys.  What are you talking

7    about?

8               MR. ROBERTS:  That's understood.  But that would be

9    great if we could just deal with discovery disputes rather

10   than working through the magistrate and deal with --

11              THE COURT:  Just deal with it directly.  Just call

12   Grace or Barb to set up a conference or a call, and we'll deal

13   with it that way.

14              MR. ROBERTS:  Is there a chance we could ballpark a

15   season for a trial, if not a month?

16              THE COURT:  Sure.  I don't know what -- well, pretty

17   hard to do that unless I have an idea of how long you guys are

18   going to take on discovery.

19              MR. ROBERTS:  Assuming everyone is fully cooperative

20   -- me and plaintiff and defendant and third party -- you know,

21   discovery shouldn't linger into 2007.  Summary judgment

22   briefing could be January, February, however long you need to

23   decide.  I mean, I'd love to be able to tell my client that

24   after four and a half years we are now at a point where we are

25   six months from trial.

1        THE COURT:  I don't have a problem giving a trial

2   date.  I recognize that part of the situation.

3        Bill, do you have any problem with that?  I mean,

4   we're not assuming any outcome, just giving this guy a date.

5        MR. ELLIS:  Judge, I'm never opposed to working

6   against an end date.  I would like to get the thing resolved

7   and --

8        THE COURT:  Okay.  And the other thing on the Motion

9   to Strike, I didn't grant it because of all the stuff you said

10  about -- I mean, obviously, the schedule is blown.  I think

11  everybody knew that.  I'm just doing it so mechanically it

12  works in terms of just keeping the boxes in order.  That's

13  all.

14       MR. ELLIS:  I understand.

15       THE COURT:  What do you got, Barb, something in

16  March, April, May?

17       THE CLERK:  In April, we have two full weeks that are

18  open beginning April the 2nd.  Actually, the 26th of March

19  through April 13th are completely free.  Well, the week of the

20  second on that Friday is Good Friday, so...

21       MR. ROBERTS:  Which means spring break is the

22  following week.

23       THE CLERK:  Somebody's spring break is -- if you

24  still have kids in elementary school, probably, or middle

25  school, high school.

1          MR. ROBERTS:  March 26th?

2          THE CLERK:  Yeah.

3          THE COURT:  Do you have my time in March blocked off?

4          THE CLERK:  Yours is much earlier.

5          THE COURT:  It's earlier?  Okay.

6          MR. ELLIS:  Your kids are on spring break?

7          MS. CALLOW:  My kids are on spring break the last

8    week in March and the first week of April, but we're only

9    going to be gone the last week in March.  The first week in

10   April is probably when most kids have spring break because I

11   think that's preceding Easter.

12         THE COURT:  So the last week in March is out.

13         THE CLERK:  April 9th?  That whole week is free.

14         MR. ROBERTS:  That's mine.

15         THE CLERK:  That's yours?

16         MR. ROBERTS:  Well, that's my children's opportunity.

17   They need a break.  They are in first grade.  They need to go

18   on vacation.

19         THE COURT:  How about after that?

20         THE CLERK:  Well, this case is so old that it really

21   would thump anything else that we have scheduled.  So April

22   the 16th would also work.  The only bad thing is that

23   beginning on April the 30th, we have a three-week trial in a

24   case that's equally as old as yours, so it wouldn't --

25         THE COURT:  Can't we get a VJ?  Oh, wrong court.

1    MR. ELLIS:  As a thought, Judge, I don't know that

2  this is going to take too terribly long depending upon what's

3  left after the Court rules on summary judgment.  Is April 2nd

4  the week that's usable or not usable?

5        MS. CALLOW:  It is for me but probably not for Mike.

6        MR. ELLIS:  I thought April 9th was yours, Mike?

7        MR. ROBERTS:  April 2nd is only a four-day week.

8        The last time we had a trial, Bill, there was a

9  mistrial because it took too long, so I'm reluctant to be

10  conservative and to say we can get it done inside a week.

11        MR. ELLIS:  All right.  It was just a thought.

12        THE COURT:  So where are we then, Barb?

13        THE CLERK:  If we did April the 16th, we could

14  maneuver two free weeks there.  It's just that the last week

15  of April we start a three-week trial with a case that's as old

16  as yours.

17        MR. ROBERTS:  Is there a chance we could start maybe

18  on the 17th, because Monday after --

19        THE CLERK:  Being gone?

20        MR. ROBERTS:  Yeah.

21        THE COURT:  Well, how long do -- well, we don't know

22  how long it's going to take because we don't know what's still

23  outstanding.  That gives us how many dates then before the

24  other case?

25        THE CLERK:  That would give us four days one week,

1    five days the next week, and then we start the --

2             MR. ELLIS:  Nine days.

3             THE COURT:  That would be fine.

4             THE CLERK:  You want that, April 17th?

5             THE COURT:  How does that sound over there?

6             MR. ELLIS:  That's fine with me, Judge.

7             The question I would have that is prompted by what

8    you said a moment ago, Judge -- if we are looking at the

9    communications between Jefferson-Pilot and Disability

10   Management Services, the third-party administrator, I would

11   assume that that is in reference to this conspiracy claim.

12            THE COURT:  I guess the conspiracy or the alleged bad

13   faith maybe, right, or not?

14            MR. ROBERTS:  You know, Rule 26 is pretty clear about

15   the scope of discovery.  I -- it's not my intention to take 30

16   depositions.  I don't think Bill has ever been in a deposition

17   with me where I've taken more than five hours.  I probably

18   take generally two or three.  It's not my intention to spend a

19   lot of time, but I want to be limited to Rule 26.  I will lay

20   out exactly what I think we require and why I think we require

21   it, and I will do that before Friday.

22            THE COURT:  Okay.

23            MR. ELLIS:  I think the problem I have with the

24   conspiracy concept is two-fold:  One, there has never even

25   been an allegation of any illegal act outside of the

1    conspiracy.  There is a required element to support it.

2         More importantly, at least as I understood Mike's

3    argument to the Court, the conspiracy is between

4    Jefferson-Pilot and Disability Management Services colluding

5    so that claims would be either denied or reduced.

6         THE COURT:  Right.

7         MR. ELLIS:  If, in fact, that's the claim out there

8    in the atmosphere, how does Mr. Kearney have standing to make

9    such a claim if his personal claim was neither reduced nor

10   denied?  If the conspiracy is to do one of those two things

11   and neither one affected his claim, where does he have

12   standing to bring suit?

13        THE COURT:  Yeah, well, I think as it relates to him,

14   it's probably fair game to look at that kind of

15   correspondence.  I don't think you necessarily have to serve

16   up what may be information in some other unrelated lawsuit.  I

17   mean, the reason that I don't want to give an answer on that

18   right now is I don't know what's in the correspondence.  There

19   may be something in there that lays out a strategy which would

20   indicate bad faith.  I don't know.

21        I mean, I tend to agree with you.  As Mike pointed

22   out, it's a one-sided look at the law.  I tend to agree with

23   you that if the payments were being made, it's pretty tough to

24   make a bad faith claim.  On the other hand, there may be some

25   material in there that -- you know, it may relate to some of

1  the other claims, what the detective was doing.  I don't know.

2  I can't say.

3          I mean, if there is a gripe, you know, just make a

4  chart and I will take a look at the stuff under seal and we'll

5  go from there.  Just make a privilege log or an objection log,

6  for that matter.

7          MR. ELLIS:  I understand the Court's -- Rule 26(b)(1)

8  requires that the discovery sought be relevant to some

9  specific claim or defense that's being made.  If, in fact --

10  and there is no dispute that Mr. Kearney was not only paid but

11  overpaid continuously, and the only interruption was during

12  the pendency of a lawsuit filed for purposes of having the

13  Court declare the rights and liabilities.  And upon the ruling

14  of the Court, he was made whole again and continues to this

15  day to be overpaid.

16          Assume for a moment -- I mean, it's ludicrous, but

17  assume for a moment that there is such a conspiracy between

18  these two companies --

19          THE COURT:  Mm-hmm.

20          MR. ELLIS:  -- and the purpose of the conspiracy is

21  to adversely affect the claim of -- a legitimate claim of an

22  insured.

23          THE COURT:  Mm-hmm.

24          MR. ELLIS:  If Mr. Kearney's claim, as everyone

25  recognizes, was not affected by any such plan, then while

1  someone else who may have been affected would have a lawsuit

2  based upon that, Mr. Kearney would not.

3          THE COURT:  Well, I mean --

4          MR. ELLIS:  He can't sue General Motors, for example,

5  for conspiring with a manufacturer of a tire to put these

6  cheaper tires on their cars that may endanger the drivers of

7  the car if he drives a Ford.

8          THE COURT:  Yeah, but it's not the same analogy.

9  There may be things -- and I don't know.  I mean, there may

10  have been -- even though the claim was continued to be paid

11  resulting, perhaps, in no damages, there may have been steps

12  taken such as correspondence and things to throw his guy off

13  the trail.  I don't know, so we'll take a look at it and see.

14  I don't know what kind of --

15          MR. ELLIS:  The claims file containing all the

16  correspondence relating to Mr. Kearney, at least to and from

17  Mr. Kearney, has already been turned over a long time ago.

18          THE COURT:  Okay.  I mean, I don't know the answer

19  now.  So, I mean, when you guys get to the documents you're

20  talking about, I'll take a look at it.  We'll do it in camera

21  if we have to.  I could see where somebody could advance a

22  theory even though -- I mean, they may have taken steps in

23  furtherance of the attempted bad faith.  I don't know if it

24  survives a legal challenge at some point.  But right now since

25  the motion has been stricken, for the time being, you know,

1    give him the discovery he is looking for.  If you have an

2    objection to it, just log it, I will take a look at it, and

3    we'll go from there.

4            MR. ELLIS:  Well, perhaps we can shorten the time at

5    least, and maybe the objections, if Mike can tell us with some

6    specificity what exactly the claim is for each of these four

7    remaining claims so that we know going in whether it makes

8    sense that they have the discovery they seek.  Would that be a

9    fair request?

10            THE COURT:  Well, I think you guys ought to be able

11    to figure out what you want.  On the other hand, you know, I

12    mean, you can throw a fairly large net out with discovery.

13    It's kind of hard for me without having the actual dispute

14    framed up in my head to know exactly what's proper and what's

15    improper.

16            MR. ELLIS:  Well, I have the same problem the Court

17    has, which is why I'm asking if Mike could delineate for us

18    the specifics.  Or I can give him Interrogatories asking for

19    the specifics of each claim --

20            THE COURT:  So, I mean, what are you guys talking

21    about?  Are you talking about a claim file?  What else?

22            MR. ELLIS:  The claim file has already -- he's been

23    in possession for years.

24            THE COURT:  Well, what else would there be?

25            MR. ROBERTS:  There is depositions that need to be

1    taken, primarily some follow-up that needs to be done since

2    the case has been dormant for a few years.  There was some

3    document requests outstanding that were ordered to be complied

4    with back in 2004.

5            THE COURT:  So, like what kind of stuff?

6            MR. ROBERTS:  Judge, I'd need to revisit it and get

7    that on Friday.

8            THE COURT:  All right.  Fine.

9            MR. ELLIS:  Perhaps we should set a date maybe ten

10   days out, Judge, to maybe at least get a limiting control on

11   the discovery so that we can move this forward without

12   unnecessary delay.

13           THE COURT:  Sure.  I don't mind coming back in ten

14   days or two weeks and talking to you guys again.

15           MR. ELLIS:  That would be great, Judge.

16           THE CLERK:  Two weeks is the first of November.

17           THE COURT:  What day of the week is that?

18           THE CLERK:  It's a Wednesday.  It's a good chance

19   that we'll be free that day.

20           MR. ELLIS:  You know, I am saying this without

21   looking.  I know that I am in mediation in Chicago on the

22   first.  I should be back.  I have a deposition.  I can be back

23   Friday the third without any problem.

24           And so that Mike knows and the Court knows, there is

25   two weeks at the beginning of November from the sixth to

1  whatever two weeks is when I'm out of the game because I've

2  got to serve as a grand juror in Hamilton County.  So I will

3  not be able to give any attention to this case, I would

4  assume.  I've never been a grand juror before, so I don't know

5  how much time I'll have.

6          THE COURT:  Okay.  That's pretty close to a

7  seven-hour day, Bill.

8          MR. ELLIS:  In which case, I'm going to be out of the

9  game for two weeks.

10         THE COURT:  Yeah.

11         MR. ELLIS:  So that you understand, Mike, I'm not

12 going to be delaying any response to you, but these two weeks

13 I'm not going to be able to do anything.

14         THE COURT:  So, Bill, do I understand you want to try

15 the third or not?

16         MR. ELLIS:  The third would be great.

17         THE COURT:  What are we doing on the third, Barb?

18         THE CLERK:  The third is good.  You want to do it in

19 the morning?

20         THE COURT:  Don't we have a criminal trial that's

21 going that week or not?

22         THE CLERK:  Well, it's questionable now.

23         THE COURT:  Without saying which one it is, without

24 saying the names, the multi -- is it the robberies?

25         THE CLERK:  Yeah.

1          THE COURT:  Oh, okay.  You got more faith than I do.

2          THE CLERK:  No, wait, wait.  No, it's Richard's case.

3          THE COURT:  Okay.

4          MR. ELLIS:  I can be available any time that day that

5    the Court wants.

6          THE COURT:  What do you guys want to do?

7          MR. ROBERTS:  Want to get that done before you get

8    started in any trial you may have?

9          THE COURT:  Want to do it in the morning then?

10          THE CLERK:  Yeah.  We can do it like at nine.

11          THE COURT:  Sure, that's great.

12          MR. ELLIS:  That would be fine.

13          THE COURT:  And I'm not going -- Barb, is what I said

14    on the record sufficient for a journal entry on the Motion to

15    Strike and what's going on?

16          THE CLERK:  Mm-hmm, right.  And do you want to set a

17    final pretrial date too along with that trial date?

18          THE COURT:  Well, why don't you guys -- might as well

19    do it here since everybody is here rather than back it up and

20    see if there's problems.  So what, go 30 days back?

21          THE CLERK:  I was looking at the 16th of March, which

22    is a Friday.  That looks really good because that other case I

23    talked about, their final pretrial is that day too.

24          THE COURT:  Okay.

25          THE CLERK:  So that would be good.  So 10:30 on --

1        THE COURT:  Yeah, but those guys get along.  Just

2   kidding.

3        THE CLERK:  So 10:30 on the 16th of March.

4        MR. ELLIS:  Final pretrial?

5        THE CLERK:  For a final pretrial.

6        THE COURT:  What time's the other one?

7        THE CLERK:  The other one is at 9:30, so that works

8   good.

9        THE COURT:  That's fine.  Is there anything else?

10       MR. ROBERTS:  See you Friday the third.

11       THE COURT:  See you in a couple of weeks.

12       MR. ROBERTS:  Thank you, Judge.

13       MR. ELLIS:  Thank you very much, Your Honor.

14       THE COURT:  Okay, thanks.

15

16       (The proceedings concluded at 1:55 p.m.)

17

18                 C E R T I F I C A T E

19

20    I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

21  THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

22

23  _____    _____

    MARYANN T. MAFFIA, RMR       10/27/06

24  Official Court Reporter

25