UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JEFFERSON-PILOT LIFE INSURANCE COMPANY, et al., | : : : | Case No. C-1-02-479 |
| Plaintiffs and Counterclaim Defendants, | : : : | (Judge Watson) (Magistrate Judge Hogan) |
| vs. | : : | **PLAINTIFF'S REPLY MEMORANDUM CONCERNING REMAINING DISCOVERY** |
| CHRISTOPHER L. KEARNEY, | : : | |
| Defendant. | : | |

**A. Introduction.**

Ignoring the Court's simple directive to narrow his requests and demonstrate their relevance to the claims remaining in this case, Kearney instead submits a biased "narrative" of the claim file, hoping to distract the Court from his failure to explain why his broad discovery requests are proper. But Kearney's use of colorful adjectives, bold-face type and exclamation points cannot obscure a simple fact:

> Kearney has been timely paid every penny due to him under the terms of his Jefferson-Pilot disability insurance policy.

Attempting to avoid the fatal effect of this fact on his claims, Kearney spends the first 10 pages of his memorandum attempting to portray Jefferson-Pilot ("JP") and Disability Management Services ("DMS")(collectively referred to as "JP/DMS") as devils incarnate, setting forth 29 instances of claim review (occurring over a period of 6 years) which he contends are somehow improper. When examined closely, however, Kearney's fevered narrative is

"…full of sound and fury, signifying nothing."[1]  Because that is so, Kearney's attempt to propound onerous, burdensome discovery on JP/DMS should not be permitted.

> B. **Kearney's complaints of "intrusive" claim handling are unfounded and irrelevant.**

It must be remembered that Kearney's claim is one for residual, not total, disability benefits.  As such, JP and DMS have an obligation to determine <u>on a monthly basis</u> the extent of Kearney's medical restrictions and limitations and his resulting loss of income.  Kearney's claim has been paid since 1993.  The investigations he identifies cover the time period between February, 1994 and June, 2000, over six years.  Using Kearney's listing, these intrusions occurred, on average, 4-5 times a year.  And, when the "intrusions" are reviewed in detail, it is apparent they were no more than normal claims activities.

For example, Kearney complains that Jefferson-Pilot "audited" his claim in February 1995 (2790, 2793) and **again** in August 1996 (2830).  To "audit" the claim means simply to process it.  The 1994 "audit" requested the medical records of Drs. McClure and Lehenbauer. The 1995 request was for Kearney's tax returns.  These are basic requests, not objectionable intrusions.  As another example, what Kearney describes as extensive "surveillance" often is not surveillance at all.  Documents 2937 and 2940 were not separate acts of surveillance but merely invoices showing payment for services.  Documents 3001-3003 were not "secret surveillance" as described by Kearney but rather an interview in which Kearney participated.  Kearney acknowledged that he was working approximately 30 hours per week at the time and had advised Jefferson-Pilot of this work.  Similarly, documents 1543-46, 3357 and 3366-68 again were not "secret surveillance" but rather a review of the multiple public records regarding the several lawsuits in which Kearney had engaged.  And, finally interviews with people who had worked

---

[1]     Macbeth, Act V, Scene v.

with Kearney such as that found at Document 3331-36 were open interviews. Using Kearney's expansive definition, the reader currently is performing "secretly surveillance" on this memorandum.

When the 29 instances of "overt and covert intrusive investigations" are reviewed, it is clear that most are simply normal requests for information conducted in the ordinary course of Kearney's claim. Jefferson-Pilot fulfilled its obligation, for example, to have people with medical knowledge review the medical records. This is not an intrusive investigation, but rather an obligation of the claims personnel to gather all relevant information and be assured they understand it. Similarly, the financial information was reviewed by financial personnel. These were not duplicative investigations, but rather Jefferson-Pilot fulfilling its obligation to gather the information needed for its claims examiners to make a fully informed decision.

The processing of a residual disability claim requires review of an insured's financial information and confirmation of both his medical condition and physical activities. Kearney wants to create a dispute where none exists. In fact, until Jefferson-Pilot filed the declaratory judgment action, Kearney, if he was aware of these "intrusions" had not found them to be actionable in and of themselves. It was not until Jefferson-Pilot filed the declaratory judgment action that Kearney filed his retaliatory claims, despite his being represented by multiple counsel long before that event. Nonetheless, when the claims are viewed in total, and when consideration is given to the fact that these instances span a six year time period, it is clear that Kearney is attempting to create a cause of action where none exists.

Similarly, Mr. Kearney makes the incredible argument that by making continued payments in good faith Jefferson Pilot has removed any potential claim for bad faith and this removal is itself an act of bad faith. In other words, he has been "stripped" of his alleged "right"

to a bad faith claim by the fact that the insurance company acted in good faith. He argues that it is bad faith to act in good faith because then the claimant cannot sue for bad faith. One might argue in the same vein that to "declare war" on poverty is an atrocious act. None of the foregoing descriptions of the claim handling nor the absurd logic of the bad faith argument can support further discovery in this action.

### C. **Kearney's contention that his claim has been "denied" is specious.**

On page 10 of his memorandum Kearney argues that the assertion by JP/DMS's that Kearney's claim has never been denied is untrue. Kearney must establish that is so, as the Ohio Supreme Court has held that "[a]n insurer fails to exercise good faith in the processing of a claim of its insured where the **refusal to pay the claim** is not predicated upon circumstances that furnish reasonable justification therefore."[2] Kearney states that there have been "47 claim denials"[3] in this case. This argument, however, cannot withstand even the slightest scrutiny.

Put simply, Kearney is arguing that JP/DMS committed a tort by suspending additional overpayments to Kearney for the 47 months the lawsuit was pending prior to the summary judgment Order, after which it was immediately paid. In purported support of that absurd claim, Kearney cites Judge Hogan's July 26th order, which states in pertinent part:

> In the instant case, Plaintiff denied coverage to the extent that it stopped payment for cost of living increases and social security supplements.

---

[2]    *Zoppo v. Homestead ins. Co.*, 71 Ohio St. 3d, 552, syl. 1 (1994)(emphasis added.)

[3]    Kearney actually claims "48 claim denials": 47 dealing with the withholding of <u>additional overpayments</u> during the lawsuit. The "48th denial," apparently, is based upon proposed language in a draft letter never sent to the insured and having no effect on the payments being made to Kearney. Because JP/DMS is at a loss to understand how this can form the basis of a cognizable claim, and Kearney has provided no explanation or case citation providing an explanation of how that can be so, they address only Kearney's "47 denials" argument.

Doc. 76 at 3.  Kearney's use of Doc. 76 would be appropriate, but for one critical (and to Kearney's argument, fatal) fact --  Doc. 76 <u>pre-dates</u> the Trial Court's summary judgment Order, in which it found that those two benefits were not properly payable to Kearney under the "clear and unambiguous" policy language.  Exhibit A, Doc. 105, 1-26-06 Order.

In fact, Kearney precipitated the Trial Court's Order by filing a motion for partial summary judgment asking the Trial Court to declare whether he was entitled to receive the social security supplement benefit and cost of living increases.  Jefferson-Pilot filed a cross-motion for summary judgment on the same issue.  Jefferson-Pilot argued that, because Kearney is residually disabled, he was not entitled to these additional benefits, which are applicable only to total disability claims.  The Trial Court agreed.

In ruling on the cross-motions, the Trial Court first held "the language of the policy itself is clear and unambiguous."[4]  Kearney's claim that Judge Watson agreed he was entitled to the increases is a blatant misstatement to present Trial Court, as the Court held:

> The provision governing the Social Security Supplement Benefit provides that "[t]he Monthly Benefit . . . will be increased by the amount of the Social Security Supplement . . .if . . . you are entitled to receive Monthly Benefits for Total Disability."  A plain reading of this language brings the reader to the conclusion that there will be no increase for the Social Security Supplement unless the insured is receiving benefits for Total Disability as that term is defined in the policy.  The provision governing the COLA provides that "[a]fter you have received benefits for Total Disability for 12 consecutive months, your Monthly Benefit will be increased during the continuance of that Period of Disability up to your 65th birthday."  In plain language, this provision states that there will be no increase until after the insured has received benefits for Total Disability.  ***As applied to the facts of this case, Kearney would not be entitled to the increases because he was not entitled to the Total Disability benefits.***

---

[4]     Exhibit A, Doc. 105, 1-26-06 Order at p. 9.

> Kearney would appear to agree that this language is unambiguous, but would disagree with the interpretation outlined above. Instead, Kearney would have the Court read the term "Monthly Benefit" as "Total Disability Monthly Benefit," and ignore any distinction between monthly benefits received for Total Disability and monthly benefits received for Residual Disability. However, Monthly Benefit is defined in the Residual Disability provision as "the amount shown in the Schedule as such," and in the Total Disability provision as "the amount shown in the Schedule of 1/30 of such amount for each day of any period of Total Disability that does not equal a whole month." Therefore the Monthly Benefit is an amount, not a certain type of benefit. ***The Court cannot read an ambiguity into the policy language where one does not exist.*** [5]

Contradicting Kearney's claim that the "Court . . . 'declared' that the decrease was inappropriate and concluded that JP had underpaid Kearney," the Court in fact agreed that Jefferson-Pilot and DMS were correct in their interpretation of Kearney's policy. Nonetheless, the Court applied the doctrine of estoppel to conclude that, at this point, Jefferson-Pilot could not revert to the correct payment calculation.[6]

In what appears to be a desperate search for case law supporting his novel argument that an insurer can overpay a claim in bad faith, Kearney cites a single unreported case, *Beever v. Cincinnati Life Insurance Company.*[7] Unfortunately for Kearney, even unreported cases are of no help to him, as the *Beever* case is distinguishable on its facts. First, *Beever* involved an insurer's suit for rescission, i.e., an attempt to have the insured's life insurance policy declared *void ab initio* due to alleged material misrepresentations made by the decedent insured in his application regarding his history of alcoholism. The insured had died within one month after taking out the policy from chronic liver disease and various hospital notes made reference to

---

[5]   *Id.* at pp. 9-10.

[6]   Jefferson-Pilot obviously intends to appeal this determination at the appropriate time, but has continued to pay Kearney the $36,000 in accumulated increases while the case proceeds in the trial court.

[7]   *Beever v. Cincinnati Life Ins. Co.,* unreported, 00CV-226 and 97CV-11090 (10th App. Dist. 10-10-03).

alcohol use by the decedent. The claim ultimately was paid four years after the death of the insured. The trial court granted summary judgment to the insurance company and held it had not acted in bad faith. The appellate court reversed, determining that a question of fact existed as to whether the "delay" in the payment was reasonably justified.

In the case at bar, however, there is no "four year gap" where Kearney's claim was unpaid – it was paid the entire time. As set forth above, the only items not paid "timely" were the additional overpayments. Nor was there ever an effort to void Kearney's policy. To contend that JP/DMS acted in bad faith under these circumstances is to adopt the definition of "logic" set forth by Lewis Carroll:

> "Contrariwise," continued Tweedledee, "if it was so, it might be; and if it were so, it would be; but as it isn't, it ain't. That's logic."

*Through the Looking Glass: And What Alice Found There*, Chapter IV. Kearney should not be permitted to use a baseless claim as a stepping stone to his onerous discovery requests.

    **D.** **The Magistrate Judge has Already Reviewed the Documents Contained on the Privileged Log.**

Kearney has renewed his request for the files of in-house and outside counsel as well as privileged documents. In his previous filing, Kearney argued that Plaintiffs had been ordered to produce documents protected by the attorney-client and work product privileges if the documents pre-dated June 6, 2002. In footnote 3 of his previous filing he claims that DMS and Jefferson-Pilot have not complied with the Court's Order to produce these documents. As Document 83 confirms, this is a blatant misrepresentation. Although Kearney finally acknowledges the existence of document number 83 in his memorandum, he continues to deny its application.[8]

---

[8] Kearney continues to make numerous factual misstatements to this Court. In his previous filing regarding discovery, he did not even acknowledge the existence of Document 83. Now that Jefferson-

Under Ohio Law, an insured may be entitled to discover claims file materials even when those materials contain attorney-client communications if such communications relate to the issue of coverage and were created before coverage was denied.[9] This ruling was subsequently expanded to include work product materials.[10] The Magistrate Judge determined that *Boone* applied as of June 6, 2002. In other words, the Magistrate Judge ruled that any documents which pre-dated June 6, 2002 were potentially discoverable. Jefferson-Pilot and DMS challenged this finding and objected to the Order. In Document number 83, the Magistrate Judge apparently considered this objection and reviewed the privilege log and documents submitted by Jefferson-Pilot and DMS which pre-dated June 6, 2002. In Document 83 the Magistrate Judge held:

> We can say, however, the Plaintiff has now provided an appropriate privilege log and has also provided the Court with copies of the documents listed in the privilege log which pre-date June 6, 2002, the date that the disputed payments were stopped. The Court has reviewed these documents in camera and finds them to be properly categorized as "privileged". The Court also finds no evidence supporting a bad faith claim in any of the documents.[11]

In his most recent filing, Kearney again ignores the application of Document 83 and reverts to his mantra that the Court has ordered production of written materials shared with attorneys relative to Kearney which pre-date June 6, 2002. Although he acknowledges that Magistrate Judge Hogan reviewed the attorney-client privileged documents listed on the

───────────────────────── (cont.)

Pilot and DMS have submitted to the Court the previous ruling regarding the attorney-client privileged documents as set forth in Document 83, he admits that the document exists but continues to argue that the Magistrate Judge nonetheless ordered production of attorney-client privileged documents with which Plaintiffs have not complied. Counsel for DMS and Jefferson-Pilot respectfully submit that Kearney's continued misstatements to this Court may be cause for skepticism.

---

[9] *Boone v Vanliner Insurance Co.,* 91 Ohio St. 3d 209, (Ohio 2001).

[10] *Garg v State Auto Mutual Insurance Co.*, 155 Ohio App. 3d 258 (2nd Dist. 2003).

[11] Exhibit B, Document 83, 8-13-04 Order. For the court's reference, a copy of the privilege log is also attached.

privilege log, he seeks the files of outside counsel and in-house counsel. To support his claim he cites the conversation which took place between Kearney's former counsel, John Spiegel, and Mills and Hughes in Miami, Florida. It was during this meeting that Jefferson-Pilot realized the incorrect contractual application of Kearney's policy. The only possible issue to which documents relative to this conversation by and between counsel could relate is the breach of contract issue. As established herein, discovery on the breach of contract issue is moot. That issue is not before the Court. The testimony of Mills clearly establishes that the conversations he had with in-house and outside counsel addressed the application of Kearney's policy provisions.

Kearney broadly claims that the files of outside counsel are discoverable under *Boone*. He does not identify to which claim these files may relate. This is because there can be no question that the files relate, if at all, to the breach of contract issue. Notable is Kearney's reliance on cases that have allowed "fishing expeditions." What he cannot overcome is the additional burden placed on him with regard to the files of counsel. Mills has testified extensively on this issue. Emails between Mills and counsel have been produced *in camera* and determined to be properly privileged. There cannot be any other relevant information in the files of counsel. At the very least, if counsel files are ordered to be produced, it must be done *in camera*. Jefferson-Pilot and DMS are confident that, as with the other documents reviewed, the Court will find them to be properly subject to a claim of privilege.

Finally, as a procedural matter, Kearney never filed an objection to the Magistrate Judge's Order at Document 83. He now asks the Court to review the Magistrate Judge's decision and assess documents already properly determined to be privileged. Simply put, the deadline for this objection has passed. Kearney had 10 days from which to appeal the

magistrate judge's decision. He did not do so. It is now too late to revisit the holding and application of Document 83.

### E. Kearney Has Not Justified his Request for Electronic Documents from the Disaster Recovery Tapes.

Kearney continues to argue that he is entitled to electronic discovery in the form of documents reconstructed from DMS' disaster recovery tapes.[12] The entirety of Kearney's justification for the electronic documents is Mills' testimony that there may have been emails between himself and outside counsel regarding what he has colorfully captioned the "Cuban Coffee House Revelation." This "revelation" relates to Jefferson-Pilot's discovery that it was applying the terms of the contract incorrectly. Again this relates only to the breach of contract claim. Kearney makes no offer of proof as to how any electronically stored documents could potentially relate to his bad faith, emotional distress and/or invasion of privacy claims. Moreover, the attorney-client privileged documents which were inadvertently released to Kearney establish Jefferson-Pilot and DMS' intent to act in good faith in all manner of communications with Kearney.

Also of interest is the fact that Kearney attempts to reduce the impact of Ms. Lyon's cost calculation and submits that he only seeks recovery of electronically stored documents that pre-date June 6, 2002. Under this analysis it appears now as if Kearney only seeks communications by and between counsel. Mills has already testified regarding these communications. It is well known by all that Jefferson-Pilot and DMS consulted with counsel regarding the decision to file

---

[12] Before Kearney's claim was transferred to DMS in 2000, the entirety of the claim as it relates to Jefferson-Pilot was on paper and has been produced. Since the transfer to DMS in 2000 there is an electronic record of monthly payment maintained by Jefferson-Pilot. If ordered by the Court this will be produced to Kearney's counsel under separate cover.

the declaratory judgment action. The filing of the declaratory judgment action in and of itself cannot be deemed to be bad faith nor an invasion of privacy.

Finally, Kearney's reference to a fine against "Jefferson-Pilot" for email retention violations in footnote 4 of his brief and attached as Exhibit 7 is not only intentionally misleading, but also speaks to his desperation in his attempt to craft a relevancy argument. It is clear from the face of the exhibit itself that the parties involved were Jefferson-Pilot Variable Corporation and Jefferson-Pilot Securities Corporation, **not** Jefferson-Pilot Life Insurance Company, the Plaintiff in this case. Review of the document reveals that this was a different institution subject to NASD regulations which are not applicable here. This has nothing to do with court-ordered discovery. This article addresses NASD rules regarding the retention of emails of securities registered employees who work on NASD regulated products which has nothing to do with the issues nor the parties in this case. To state that the Plaintiff has been fined for email retention violations is, at least, deliberately misleading.

> F. **Kearney's remaining discovery requests are irrelevant to the claims remaining in this case.**

It is notable that with only a few exceptions, Kearney generally fails to identify the claim to which his discovery requests relate. For ease of reference, Jefferson-Pilot and DMS have addressed the remaining requests in the same order identified by Kearney.[13]

> **(2) DR3/INT7: The contract that exists between Jefferson-Pilot and DMS and the contracts between Jefferson-Pilot and/or DMS and Employers Reassurance, including all amendments through November 2006.**

Kearney has not identified which of his claims this request relates to but it is assumed, based on previous arguments of counsel, that it addresses his conspiracy claim. As has already

---

[13] Number 1 was the request for electronically-stored documents.

been established, even if one assumes that there was a conspiracy to reduce or deny claims, it is apparent that no such conspiracy was applied to Kearney's claim which was overpaid throughout.

> **(3)    DR5: Documents reflecting on criteria or elements of case referrals from Jefferson-Pilot to DMS and all related documents; and INT5: state when, and by whom and why Kearney's claim was referred to by Jefferson-Pilot to DMS. Also state what documents relate to referral.**

Kearney appears to ignore DMS and Jefferson-Pilot's earlier answer. There are no documents responsive to this request and Mills is the individual who discovered the error in application of the policy terms.

> **(4)    DR6/INT11: Documents relating to sanctions and/or fines imposed on Jefferson-Pilot/DMS by any state Insurance Commission or officials.**

It appears that this request may require court intervention. As Jefferson-Pilot and DMS have already established, if this request is relevant at all, it is relevant only to the state of Ohio. DMS and Jefferson-Pilot had answered this request with regard to the state of Ohio. The answer is none.

> **(5)    DR10(b), 14, and 22: Documents describing procedures for claim handling; claims handling training materials; handouts, guidelines; notes from all in-house claim administration or policy interpretation seminars or conferences.**

Kearney does not identify to which claim this request applies. It appears however that it seeks documents used in claims handling and would address the breach of contract claim, which would make such a request moot.

    **(6)**    **DR11: All marketing materials of DMS and specifically any materials provided to Jefferson-Pilot or Employers Reassurance by DMS to solicit or secure the business for administering claims (both entire blocks of claims and individual claims).**

Regarding this request, Kearney for the first time articulates why he seeks these documents. What he fails to do is articulate how these documents may relate to his remaining claims in any way at all. First, no claim of fraudulent inducement or fraud in solicitation has been made. Second, under Rule 11 of the Federal Rules of Civil Procedure Kearney must have some basis to believe that DMS has acted improperly in its marketing with regard to Jefferson-Pilot or Employers Reassurance. He cannot even articulate an allegation, let alone support the relevancy of this request. Moreover, any such marketing would have occurred over 15 years ago, well beyond any applicable statute of limitations.

    **(7)**    **DR17: Notes and the calendars of claims persons with responsibility for Kearney's claim.**

It is established that the calendars Kearney seeks relate to whether or not any conversations took place between Mills and in-house or outside counsel regarding the interpretation of Kearney's contract. It has now been confirmed that these calendars, if they ever existed, do not anymore. If Kearney desires an inference that the calendars would show that the conversation in fact took place, DMS and Jefferson-Pilot will stipulate that before the declaratory judgment action was filed Mills participated in conversations with in-house and outside counsel regarding Kearney's insurance contract.

    **(8)**    **DR20/21 and INT 9/10: Copies of all complaints filed by Jefferson-Pilot for declaratory judgment against its insureds and copies of complaints filed against either Jefferson-Pilot or DMS for breach of contract or bad faith.**

Kearney now appears to limit this request to lawsuits regarding policies of the same type sold to Kearney which alleged ambiguities in the policy. His explanation establishes that this

request is irrelevant. The Court has already declared that the policy language at issue in *this case* is clear and unambiguous. There can be no justification to produce other complaints or lawsuits related to ambiguities in the policy when this Court has already determined that there are no ambiguities regarding the policy language at issue.

> **(9)    INT2: Who suggested new interpretation of contracts in 2001?**

This question has been answered. No one created a "new interpretation" of the contract in 2001. Mills identified the erroneous application of the payment terms shortly before DMS representatives met with attorney Spiegel in October 2001.

> **(10)    INT4: Identify (and provide all documents relative to) investigators retained and produce all video tapes, audio tapes, photographs and investigative reports and notes.**

This request has been answered. Kearney has received the claims file and all surveillance reports.

> **(11)    DR15: State the reserve on Kearney's policy and identify any changes made to the reserve.**

Kearney argues that he is entitled to this information because of the "low ball" settlement offer forms the basis of his emotional distress and bad faith claims. Kearney continues to confuse sickness in the accident insurance policies with property and casualty insurance policies. Kearney has an obligation to establish on a monthly basis that he continues to be residually disabled. He cannot accelerate the benefits under the policy in order to calculate a projected value. There is no assumption under the terms of this policy that Kearney will remain residually disabled for the life of the policy. There is no reason to assume that Kearney will continuously qualify for residual disability benefits indefinitely. Therefore, Kearney's claim that there was some bad motive in making a settlement offer is unfounded under Ohio law.

Moreover, as Kearney's counsel is aware, disability reserves are not claim-fact specific but rather are statutory and formulaic.

> **(12) Files of Farabow, Johnson, Newkirk and Dempsey predating June 6, 2002.**

This request has been exhaustively responded to and Plaintiffs respectfully refer to the Court to Document 83.

> **(13) Financial statements and annual reports of Jefferson-Pilot through 2006.**

This is a new request. The annual reports are matters of public record and can be obtained by any defendant at any time.

> **(14) Copies of any and all privacy policies protecting the personal, private information of policy holders.**

These materials have been disseminated to Kearney during the course of his claim because he is a current insured. If Kearney has not retained these, they can be reproduced.

> **(15) Copies of all training materials and policies regarding privacy (including the Gramm-Leach-Bliley Financial Modernization Act 15 U.S.C. §6700 and Health Insurance Portability and Accountability Act PL104-191).**

Again this is a new request. Kearney states that they are relevant and discoverable with regard to his privacy and emotional distress claims. As a threshold matter, these Acts were not applicable to him at the time his lawsuit was filed. Moreover, documents regarding his privacy rights have already been promulgated to him.

> **(16) Annual personnel reviews of Mills, Hughes, and Ditmar since 1995.**

Kearney seeks documents that were produced in another case and used, in spite of confidentiality orders, in this case during deposition. He fails to articulate how they could in any way be relevant to this case.

**(17)    DMS organizational chart.**

This is a new request not previously sought.  Plaintiffs object to this request as not possibly relevant to any remaining claim.

**(18)    Documents identified in "privilege log" up until June 6, 2002.**

These documents were produced in camera to Magistrate Judge Hogan.  Magistrate Judge Hogan reviewed these documents and in Document 83 concluded that they were properly characterized as privileged.  He further concluded they showed no evidence of any bad faith.  As such they are not discoverable.

**(19)    Supplement all prior responses/requests.**

Jefferson-Pilot and DMS agree to supplementation as required by Rule 26(e).

**(20)    Claim file documents for the period 2002 through today.**

Jefferson-Pilot and DMS will confirm that Kearney's copy of the claims file previously produced to him is up to date.

**(21)    Depositions**

With regard to the depositions of Mills and Hughes, Jefferson-Pilot and DMS respectfully refer the Court to Document number 76.  The Court held:

> The Court finds that the depositions of Mills and Hughes should go forward.  These deponents appeared for their depositions in Massachusetts previously and the Mills deposition was begun but was not completed.  The Court has been provided with no information which suggests that either deponent is a managing official of Jefferson-Pilot or Disability Management Services, Inc. and neither has been accused of any form of obstruction, as far as cooperation with their depositions is concerned.  These depositions should occur in state and county where the deponents reside and be at Defendant's cost. Defendant's failure to complete both depositions when scheduled is not the fault of either deponent.

*See* Exhibit C, Document 76. Plaintiffs objected to bearing the cost of returning to Massachusetts and completing the deposition of Mills and beginning the deposition of Hughes. Plaintiffs' counsel had offered to remain in Massachusetts in order to complete the depositions in one trip and therefore not incur the cost of a second trip. Defendant's counsel refused. In granting Plaintiffs' Motion for Protective Order in part, the Court agreed that the depositions could go forward but they must be at Defendant's cost. This is consistent with earlier orders of the Court that depositions take place at Plaintiffs' cost. Plaintiffs will, of course, participate in the depositions of Mills and Hughes as long as all costs, including attorney time and travel, are paid for by Defendant.

The remaining depositions have been exhaustively addressed and Jefferson-Pilot and DMS incorporate their earlier responses.

### G. Conclusion

Kearney continues to search for, but cannot find, a viable cause of action upon which he can base his "remaining discovery." While JP/DMS recognize that Kearney's "invasion of privacy" claim remains viable at this juncture and, therefore, the proper subject of Rule 26 discovery, Kearney's breach of contract and bad faith claims do not. Accordingly, those claims cannot form the basis of continued discovery in this case. When stripped of its melodrama, Kearney's lengthy recitation of the "intrusions" reflected in the claim file fails to satisfy Kearney's burden of establishing a relationship between his "remaining discovery" and a legitimate cause of action. For these reasons, Kearney's discovery should be limited to the single claim remaining before the Court.

                                          Respectfully submitted,

                                          s/ William R. Ellis
                                          William R. Ellis (0012279)

- 18 -

        Amy Gasser Callow (0063470)
        WOOD & LAMPING LLP
        600 Vine Street, Suite 2500
        Cincinnati, OH  45202
        Telephone:   (513) 852-6067
        Telefax:   (513) 852-6087
        E-mail:   wrellis@woodlamping.com

        John E. Meagher (Florida Bar No. 511099)
        SHUTTS & BOWEN LLP
        201 S. Biscayne Boulevard
        1500 Miami Center
        Miami, FL  33131
        Telephone:  (305) 358-6300
        Telecopier:  (305) 381-9982
        E-mail:   JMeagher@Shutts-law.com

        Attorneys for Plaintiff
        Jefferson-Pilot Life Insurance Company
        and Cross-Claim Defendant, Disability
        Management Services, Inc.

- 19 -

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this 7th day of December, 2006. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                        s/ William R. Ellis
                                        William R. Ellis

                                        Trial Attorney for Plaintiff
                                        Jefferson-Pilot Life Insurance Company,
                                        and Cross-Claim Defendant, Disability
                                        Management Services, Inc.

302355
MIADOCS 1873055 2


MIADOCS 1876314 1