
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jefferson-Pilot Life Insurance Co.,

    Plaintiff,

v.                                              Case No. 1:02cv479

Christopher L. Kearney, *et al.*,        Judge Michael H. Watson

    Defendants.

**OPINION AND ORDER**

This matter is before the Court upon the Parties' cross-motions for summary judgment. (Doc. 19, 31) On August 17, 2004, the Court held a hearing on the motions. (Doc. 86) The transcript of the hearing has been made a part of the record. (Doc. 87) In addition, the parties filed post-hearing memoranda on these motions. (Doc. 88, 89) The Court also held oral argument on the motions on June 8, 2005. (Doc. 102) This matter is now ripe for review.

**I.**    **FACTS**

Defendant Christopher Kearney purchased two disability insurance policies from Plaintiff Jefferson-Pilot Life Insurance Company ("Jefferson-Pilot"). (Doc. 21, Ex. A, Aff. Kearney) Policy HO-0493029 was effective May 28, 1990 and Policy HO-0538069 was effective May 28, 1991. (Doc. 1, Ex. A, B) The "Monthly Benefit" of the 1990 Policy was $2,125.00. (Id. Ex. A) The "Monthly Benefit" of the 1991 Policy was $1,375.00. (Id. Ex. B) For the most part, the policies are identical.[1] The policies provide that if an injury or sickness "results in Total Disability, Jefferson-Pilot will pay the Monthly Benefit as shown

---

[1]The 1990 policy is Form WJ-576A and the 1991 policy is Form WJ-578A.



in the Schedule for each month during a period of such Total Disability. . . ." (Id. Ex. A)

Total Disability is defined as:

> you are unable to perform the duties of your occupation. Your occupation means:
>
> (1) during the elimination period and for the first five years of a period of disability, the occupation in which you are regularly engaged at the time you become disabled; and
>
> (2) thereafter, any gainful occupation in which you might reasonably be expected to engage because of your education, training or experience.

(Id.) The policies also provide:

> If you become Totally Disabled for a continuous period of at least 3 months, Jefferson-Pilot will:
>
> (1) waive premiums that come due during the disability ; and
>
> (2) refund any payments made for premiums due during the disability.
>
> Jefferson-Pilot will continue to waive premiums under this policy until you are no longer Totally Disabled or benefits are no longer payable, whichever is earlier. . . .

(Id.)

In addition to purchasing the two disability policies, Kearney purchased three "Additional Benefit Provisions" which were listed on the Schedule Page as (1) Social Security Supplemental Benefit, (2) Residual Disability; and (3) Cost of Living Increase. These "Additional Benefit Provisions" expressly become a part of the disability policies under the section of the policies captioned "Benefits Provisions."

The Provision governing the Social Security Supplemental Benefit provides:

**The Monthly Benefit of this policy will be increased by the amount of the Social Security Supplement shown in the Schedule if:**

**(1)    you are entitled to receive Monthly Benefits for Total Disability;**

**(2)    the period of Total Disability begins prior to the premium due date of this policy next following your 65th birthday; and**

**(3)    Social Security Benefits are not payable.**

**However, the Social Security Supplement Benefit shall not be payable unless:**

**(1)    at the commencement of the period of Total Disability you meet the coverage requirements for Social Security;**

**(2)    you apply for Social Security Benefits as soon as you become entitled to such; and**

**(3)    your application for Social Security Benefits is not approved.**

(Id.)

The Provision governing Residual Disability defines "Residual Disability" as:

**(a)    unable to do one or more of the substantial and material duties of your profession; or**

**(b)    unable to do your usual daily business duties for substantially as much time as is usually required to do such duties.**

(Id.) The "Residual Disability Monthly Benefit" is calculated using the following formula:

$$\frac{\text{Loss of Monthly Income}[2]}{\text{Prior Monthly Income}[4]} \times \text{Monthly Benefit}[3] = \text{Residual Disability Benefit}$$

---

[2]"Loss of Monthly Income" is defined as "the difference between Prior Monthly Income and Current Monthly Income."

[3]"Monthly Benefit" is "the amount shown in the Schedule as such."

[4]"Prior Monthly Income" means the greater of:

(a)    average Monthly Income during the 12 months just prior to the period of disability for which you are making a claim; or

(Id.) The provision states: "Any Loss of Monthly Income of more than 75% of the Prior Monthly Income will be deemed to be 100%." (Id.) The provision also states that Prior Monthly Income "will be adjusted at the same time and by the same percentage as the "Increase in Benefits" or "Increase in Benefits for Total Disability" provision, whichever is applicable, of this policy." (Id.)

The "Increase in Benefits" (also referred to in this case as the Cost of Living Increase or Cost of Living Adjustment ("COLA")) operates as follows:

> **After you have received benefits for Total Disability for 12 consecutive months, your Monthly Benefit will be increased during the continuance of that Period of Disability up to your 65th birthday. The increase will be 3% of the Monthly Benefit shown in the Schedule for each successive 12 month Period of Total Disability after the first Period. The benefit payable will not be increased for the part of any Period of Total Disability beyond your 65th birthday.**

(Id.)[5] However, the third "Additional Benefit Provision" purchased by Kearney, the "Cost of Living Increase" provides:

> **In consideration of the increased premium for this Rider, the policy referred to above is hereby amended by changing from 3% to 7% the percentage shown in the benefit provision captioned "Increase in Benefits."**

(Id.)

Several facts are not contested by the parties. When Kearney initially applied for and received benefits in 1993, these benefits were for Total Disability. (Doc. 87, Tr. 67) Kearney received these Total Disability benefits for a period of four months. (Id.)

---

(b) average Monthly Income during the calendar year just prior to that period of disability.

[5]This provision is not included in the 1991 Policy (Form WJ-578A). The parties have not addressed this fact, and therefore it is not clear whether this difference is relevant.

Thereafter, Kearney applied for and received Residual Disability benefits. (Id.; Doc. 30, Ex. G) There is no dispute that Kearney is entitled to these benefits. The parties also agree that since 1993, Jefferson-Pilot has paid Kearney "Additional Benefits" under the Social Security Supplemental Benefit and the COLA provisions. Jefferson-Pilot maintains that these Additional Benefit payments were in error, but continues to pay these Additional Benefits to Kearney under a reservation of rights. Finally, the parties agree that Kearney has continued to pay premiums to Jefferson-Pilot.

In its Complaint, Jefferson-Pilot seeks declaratory judgment confirming that Jefferson-Pilot owes no duty of coverage under the policies COLA provisions to Kearney. Jefferson-Pilot is not seeking repayment of the alleged overpayments paid before the reservation of rights.[6] Defendant Kearney has brought a counterclaim for breach of contract, bad faith, conspiracy, intentional infliction of emotional distress, and invasion of privacy.

## II. ARGUMENTS OF THE PARTIES

### A. Plaintiff Jefferson-Pilot

Jefferson-Pilot maintains that the language of the policies and the "Additional Benefit Provisions" are clear and unambiguous. Jefferson-Pilot argues that the Social Security Supplemental Benefit and COLA provisions are only applicable to a 12-month

---

[6]The Court notes that while Jefferson-Pilot's Complaint and Kearney's Motion for Summary Judgment only address the COLA increase (see Docs. 1 & 19), Jefferson-Pilot argues in its Motion for Summary Judgment that the Social Security Supplemental Benefit is not applicable. (See Doc. 31) Kearney responded to this argument (see Doc. 33), and the Parties have continued to address the issue of the Social Security Supplemental Benefit as if it were included in Jefferson-Pilot's Complaint. However, according to the Complaint, Jefferson-Pilot is not seeking declaratory judgment as to the Social Security Supplemental Benefit. Nevertheless, in the interest of judicial economy, the Court will address the issue in this Order, and given the Court's ruling, any motion to amend the Complaint by Jefferson-Pilot would be denied as being futile.

period of continuous Total Disability. Jefferson-Pilot explains that Kearney is not entitled to the Additional Benefits because his claim was for a period of Residual Disability. However, Jefferson-Pilot recognizes that due to the manner in which the Residual Disability benefit amount is calculated, a person under a Residual Disability can receive the full Monthly Benefit amount, which is equivalent to the benefit amount for Total Disability. Jefferson-Pilot explains that this is what occurred in Kearney's case, and because his Residual Disability benefit amount was the same dollar amount as the benefit amount for Total Disability, Jefferson-Pilot erroneously paid the additional Social Security Supplemental Benefit and the COLA increase to Kearney.[7]

However, as evidence to support its position that Kearney has not satisfied, or even claimed to satisfy the definition of Total Disability, Jefferson-Pilot points to (1) the claims forms submitted by Kearney which state that he is making a claim for Residual Disability; and (2) the payment of premiums by Kearney, which he was required to do unless he was Totally Disabled.

B.  Defendant Kearney

Kearney argues that the policies do not exclude a Social Security Supplement or a COLA increase to be paid for a residual disability claim. Kearney argues that its position is supported by (1) the proposals for the policies;[8] (2) the payment of premiums; (3) the policy language; and (4) the language in the Additional Benefit provisions.

---

[7]Jefferson-Pilot concedes that the overpayments were an error on its part. Jefferson-Pilot explains that at the time Kearney made his claim, the claims department was understaffed, and the goal of the department was to simply pay claims. Therefore, as Jefferson-Pilot explains, the initial error was perpetuated.

[8]Kearney specifically points to an explanation of the amount payable for Residual Disability. (See Doc. 21, Ex. B) The Proposal explains that under the policy: "If the loss of earnings is at least 75%, the full benefit for total disability will be payable."

Kearney argues that by paying the COLA from 1993 until May of 2002, Jefferson-Pilot waived its right to reinterpret its policies. Kearney argues further that Jefferson-Pilot is estopped from taking a position unfair to its own insured.

In addition, Kearney argues that if the Court finds that the provisions of the policies are reasonably susceptible of more than one interpretation, under Ohio law the provisions are to be strictly construed against the insurer.

Finally, Kearney relies on an affidavit of an insurance expert to state that it is the insurance industry custom and practice to allow any benefit payable for total disability to be paid for residual disability as well, unless expressly stated otherwise.

## III. ANALYSIS

A district court's exercise of discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), is reviewed for abuse of discretion. *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 967 (6th Cir. 2000). The Sixth Circuit has adopted a five-factor test to determine when a district court should exercise jurisdiction over a declaratory judgment:

(1) whether the judgment would settle the controversy;
(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
(5) whether there is an alternative remedy that is better or more effective.

*Id.* at 968. As this Court has previously recognized:

> "It is axiomatic that an insurer may maintain a declaratory judgment action to determine its rights and obligations under a contract of insurance. A liability insurer's obligation to its insured arises only if the claim falls within

the scope of coverage." *Cincinnati Indemn. Co. v. Martin*, 85 Ohio St.3d 604, 607, 710 N.E.2d 677 (1999) (citation omitted).

*Monticello Ins. Co. v. Hale*, 284 F.Supp.2d 898, 901 (S.D. Ohio 2003).

The parties do not dispute that this Court should exercise jurisdiction over this declaratory judgment action, and there is nothing in the above analysis which would indicate otherwise.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this initial burden, the non-movant cannot rest on its pleadings, but must show that there is a genuine issue for trial. *Id.* at 324. However, all evidence and inferences based on evidence must be considered in the light most favorable to the non-moving party. *Lenning v. Commercial Union Insurance Co.*, 260 F.3d 574, 581 (6th Cir. 2001).

### A. The language of the "Additional Benefit Provisions" is clear and unambiguous.

The parties agree that the policies are governed by Ohio law. In Ohio, insurance policies are generally interpreted by applying rules of contract law. *Burris v. Grange Mut. Cos.*, 545 N.E.2d 83, 88 (Ohio 1989). If the terms of a policy are clear and unambiguous, the interpretation of the contract is a matter of law. *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 474 N.E.2d 271 (Ohio 1984). If the language of the insurance policy is doubtful, uncertain, or ambiguous, the language will be construed strictly against the insurer and liberally in favor of the insured. *Faruque v. Provident Life &*

*Acc. Ins. Co.*, 508 N.E.2d 949 (Ohio 1987). Where two reasonable interpretations are available, the construction favoring coverage is adopted. *Buckeye Union Ins. Co. v. Price*, 313 N.E.2d 844 (Ohio 1974). However, the general rule of liberal construction cannot be employed to create an ambiguity where there is none. *Karabin v. State Auto. Mut. Ins. Co.*, 462 N.E.2d 403, 406-407 (Ohio 1984).

Here, the language of the policy itself is clear and unambiguous. The provision governing the Social Security Supplemental Benefit provides that "[t]he Monthly Benefit . . . will be increased by the amount of the Social Security Supplement . . . if . . . you are entitled to receive Monthly Benefits for Total Disability." A plain reading of this language brings the reader to the conclusion that there will be no increase for the Social Security Supplement unless the insured is receiving benefits for Total Disability as that term is defined in the policy. The provision governing the COLA provides that "[a]fter you have received benefits for Total Disability for 12 consecutive months, your Monthly Benefit will be increased during the continuance of that Period of Disability up to your 65th birthday." In plain language, this provision states that there will be no increase until after the insured has received benefits for Total Disability. As applied to the facts of this case, Kearney would not be entitled to the increases because he was not entitled to Total Disability benefits.

Kearney would appear to agree that this language is unambiguous, but would disagree with the interpretation outlined above. Instead, Kearney would have the Court read the term "Monthly Benefit" as "Total Disability Monthly Benefit," and ignore any distinction between monthly benefits received for Total Disability and monthly benefits received for Residual Disability. However, Monthly Benefit is defined in the Residual

Disability provision as "the amount shown in the Schedule as such," and in the Total Disability provision as "the amount shown in the Schedule or 1/30 of such amount for each day of any Period of Total Disability that does not equal a whole month." Therefore, the Monthly Benefit is an amount, not a certain type of benefit. The Court cannot read an ambiguity into the policy language where one does not exist.

However, the above straightforward analysis is complicated by the evidence that since 1993, Jefferson-Pilot did in fact pay the Social Security Supplement and COLA increases to Kearney, even though he was not Totally Disabled. In addition, the Proposal explains that in the case of Residual Disability: "If the loss of earnings is at least 75%, the *full benefit for total disability* will be payable." (Doc. 21, Ex. B) (emphasis added). The Proposal also explains that "Residual Disability pays a percentage of the Basic Benefit and Social Security Supplement, if applicable, when you are residually disabled and suffer a loss of earnings of 20% or more." (Id.) Finally, in 2000, Disability Management Services ("DMS"), Jefferson-Pilot's third-party administrator, sent a letter to Kearney explaining that it was enclosing checks for COLA increases and apologized for the oversight in not paying these previously. (Doc. 89, Ex. 9)

B.   The doctrine of waiver is not applicable.

"A waiver is the voluntary relinquishment of a known right or such conduct that warrants an inference of a relinquishment of that right." *Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co.*, 638 N.E.2d 174, 176 (Ohio Ct. App. 1994), citing, *Gollings v. Natl. Life Ins. Co.*, 637 N.E.2d 76, 79 (Ohio Ct. App. 1994). Ohio courts have held as a general proposition that the doctrine of waiver cannot be used to expand coverage. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 597 N.E.2d 1096, 1103-1104 (Ohio 1992), citing, 16B

Appleman, Insurance Law & Practice (1981) 579, § 9090. Ohio courts have found an exception to this general rule where the insurer provides a defense without reserving its rights for a period sufficient to prejudice the insured's ability to conduct its own defense. *Turner Liquidating*, 63 N.E.2d at 299. This exception is clearly not applicable in the instant case, and Kearney cites to no other applicable exceptions. Therefore, the doctrine of waiver is not applicable.

C. <u>Equitable estoppel is applicable.</u>

As this Court has recognized: "The doctrine of equitable estoppel is derived from the concept that one cannot change his position once another has acted in reliance thereon and, as an equitable rule, it may be invoked whenever the facts and circumstances warrant." *Armco, Inc. v. Reliance Nat. Ins. Co.*, 19 F.Supp.2d 807, 816 (S.D.Ohio 1998), *citing*, *Andres v. Perrysburg*, 546 N.E.2d 1377, 1383 (Ohio Ct. App. 1988). "Equitable estoppel prevents a party from exercising rights which he might otherwise have had against one who has in good faith relied upon the conduct of that party." *Lewis v. Motorists Ins. Cos.*, 645 N.E.2d 784, 790 (Ohio Ct. App. 1994), *quoting*, *Johnson v. Franklin*, 580 N.E.2d 1142, 1145 (Ohio Ct. App. 1989). The purpose of equitable estoppel is "to prevent actual or constructive fraud and to promote the ends of justice." *Ohio State Bd. of Pharmacy v. Frantz*, 555 N.E.2d 630 (1990). As such, the doctrine is applied flexibly depending on the circumstances of a particular case. *General Elec. Co. v. Advance Stores Co., Inc.*, 285 F.Supp.2d 1046, 1050-51 (N.D.Ohio 2003).

To invoke the doctrine of equitable estoppel under Ohio law, a party must demonstrate (1) a factual misrepresentation; (2) that is misleading; (3) that induced actual reliance, which was both reasonable and in good faith; and (4) that caused detriment to the

relying party. *Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust*, 804 N.E.2d 979, 998 (Ohio App. Ct. 2004). In assessing these four elements in the context of a particular case, relevant factors include: (a) the nature of the representation; (b) whether the representation was in fact misleading; (c) the relative knowledge and experience of the parties; (d) whether the representation was made with the intent that it be relied upon; and (e) the reasonableness and good faith of the reliance, given all the facts and circumstances. *First Federal Sav. & Loan Ass'n of Toledo v. Perry's Landing, Inc.*, 463 N.E.2d 636, 648 (Ohio App. Ct.1983).

The Court finds that Jefferson-Pilot made several factual misrepresentations which were misleading. First, the Proposal states that in the case of Residual Disability, "the full benefit for total disability will be payable" where the loss of earnings is at least 75%, and that "a percentage of the Basic Benefit and Social Security Supplement, if applicable" will be paid where there is a loss of earnings of 20% or more. This leads the reader to believe that all Total Disability benefits, including the Social Security Supplement and COLA increases, will be paid even though the claimant is under a Residual Disability. Second, beginning in 1993, Jefferson-Pilot paid the Social Security Supplement and COLA increases to Kearney, even though he was not Totally Disabled. There is no evidence that Jefferson-Pilot questioned Kearney's entitlement to these benefits until the initiation of this lawsuit. Third, DMS, on Jefferson-Pilot's behalf, sent checks to Kearney for COLA increases. There is no question that Kearney actually relied on these representations that he was entitled to the Social Security Supplement and COLA increases.

Given the relative knowledge and experience of the parties, it was not unreasonable for Kearney to rely on both Jefferson-Pilot's and DMS's representations that he was

entitled to the Social Security Supplement and COLA increases. Jefferson-Pilot drafted the policies, and was responsible for administering them until it hired DMS to do that job for it. There is no evidence that Kearney's reliance on Jefferson-Pilot's and DMS's representations was in bad faith.

Moreover, Jefferson-Pilot repeatedly paid benefits for a number of years, and at no point questioned the applicability of the Social Security Supplemental Benefit and COLA provisions.[9] Thus, Kearney had no reason to question his entitlement to these additional benefits until Jefferson-Pilot began paying benefits under a reservation of rights.

Finally, Kearney relied on the representations to his detriment because he continued to make premium payments to Jefferson-Pilot, and did not make arrangements for other

---

[9]There is evidence which shows that Kearney's claims were given a fair amount of attention. For example, in 1997, there is correspondence between Jefferson-Pilot and Kearney regarding whether a five-year limitation on Total Disability is applicable in Kearney's case. (Doc. 85, Shelton Depo. Ex. 23) In a letter dated January 19, 1998, Kearney wrote:

> When we talked last week, you told me that residual disability benefits were subject to the same terms that are listed in the total disability section. That is your reasoning for contacting me concerning the end of the five yr. period in which a claimant can keep the same occupation but then should consider other alternatives at five yrs.

(Id.) Kearney explained that under the Total Disability terms, he was not required to pay premiums, and requested that Jefferson-Pilot refund the premiums he had paid. (Id.) Jefferson-Pilot responded:

> We have reviewed our files with regard to this coverage. The Residual Disability Rider provides that benefits will be payable to age 65. The "Your Occupation" limitation of 5 years applies only when an insured is under the total disability portion of his policy. In reviewing the Waiver of Premium Provision, it appears that is applicable only if benefits are being paid under the total disability provision of the policy. Since benefits continue to be paid under the residual portion of the policy, then premiums would continue to be due.
>
> Our apologies for any misleading statement that may have been made in our conversation on this matter. The above is the basis for any consideration of your future claim. We will continue to pay benefits under the Residual portion of the policy as long as conditions as they are at the present time.

(Id.) This determination was not new. This issue had been raised earlier by Kearney. In a letter dated September 8, 1993, Jefferson-Pilot explained to Kearney: "Since the residual benefit is not considered to be total disability we would not be able to apply the waiver of premium to your policy." (Doc. 85, Shelton Depo. Ex. 23)

coverage. In addition, Jefferson-Pilot paid benefits for almost ten years before determining that Kearney was not entitled to the additional benefits. This delay was also detrimental to Kearney's ability to find alternate coverage.

In summary, the Court finds that the elements necessary for the application of equitable estoppel are present, and as a result, Jefferson-Pilot is estopped from denying coverage the Social Security Supplemental Benefit and COLA provisions.

In reaching this conclusion, the Court finds inapplicable the decision in *Pedler v. Aetna Life Insurance Co.*, 490 N.E.2d 605 (Ohio 1986). In *Pedler*, the court addressed the applicability of equitable estoppel where an insurer was seeking to enforce a limitation on eligibility for coverage clearly stated in its master policy and in literature distributed to the insured, despite the acceptance of premium payments and the issuance of a certificate specifying greater coverage. The insured had bargained and paid for the life insurance, and therefore argued that she had relied on the coverage and made no alternative arrangements for additional coverage. *Id.* at 607. The court recognized that the case was factually distinguishable from earlier cases because the insured had bargained for and paid for supplemental insurance. *Id.* However, the court held that "the failure of the insured to specifically note the limitation on the face of the certificate is not sufficient, standing alone, to estop the denial of coverage where the insured had the means of acquiring knowledge of the limitation." *Id.* The court relied on the following passage:

> * * * [I]t is essential to the application of the principles of equitable estoppel that the person claiming to have been influenced by the conduct or declarations of another party to his injury should have been destitute of knowledge of the facts, or at least * * * of any convenient and available means of acquiring such knowledge, for if he lacks such knowledge he is bound to exercise reasonable diligence to obtain it.

> Obviously, a party who acts with full knowledge of the truth has not been misled and cannot claim estoppel. Hence, *there can be no estoppel where the party claiming it is chargeable with knowledge of the facts, as where he either knows the facts or is in a position to know them* or the circumstances are such that he should have known them; or where the circumstances surrounding the transaction are sufficient to put a person of ordinary prudence on inquiry which would have disclosed the facts; * * *.

*Id., citing,* 42 Ohio Jurisprudence 3d (1983) 109-110, Estoppel and Waiver, Section 66 (emphasis in original).

Here, there is no evidence that Kearney knew or should have known that he was not entitled to the Social Security Supplement and COLA increases; nor are the circumstances such that Kearney would have been on inquiry whether he was entitled to these Additional Benefits. Unlike the insured in *Pedler*, Kearney had no reason to review the policy language because the Social Security Supplement and COLA increases were being paid to him for an extended period of time. Moreover, the language in the Proposal regarding benefits paid in the case of Residual Disability would not have put Kearney on inquiry as to whether he was entitled coverage under the Social Security Supplemental Benefit and COLA provisions. The language would lead someone purchasing the policies to believe that the Social Security Supplement and COLA increase were paid in the case of Residual Disability.

Jefferson-Pilot argues that the holding in *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 597 N.E.2d 1096 (Ohio 1992) prohibits this Court from expanding the parameters of the literal terms of insurance coverage. While the Court finds that the holding of *Hybud* is applicable to Kearney's arguments regarding waiver, there is no blanket prohibition against applying estoppel in an insurance case. As one Ohio court has explained:

> If the insurer is saddled with coverage it may not have intended or desired, it is of its own making. The insurer has the ability to protect itself against such claims by ensuring that its customers receive the coverage they request or by entering a defense of a claim that may not be covered by the policy only after reserving its right to raise policy defenses at a later time. Waiver and estoppel should apply only in those cases where there is a clear misrepresentation of fact or when the insurer provides a defense without reserving its rights for a period sufficient to prejudice the insured's ability to conduct its own defense. Accordingly, we find that an exception to the general rule that waiver and estoppel cannot be used to extend the coverage of an insurance policy exists when the insurer provides a defense to the insured without reserving its rights under the policy for such a period of time as to prejudice the insured, or when the insurer or its agents misrepresent the extent of coverage the insured is purchasing.

*Turner Liquidating*, 638 N.E.2d at 179. Since the Court finds that Jefferson-Pilot made several factual misrepresentations which were misleading, equitable estoppel is applicable.

Accordingly, Defendant Christopher Kearney's Motion for Summary Judgment (Doc. 19) is hereby **GRANTED**; and Plaintiff Jefferson-Pilot's Motion for Summary Judgment (Doc. 30) is hereby **DENIED**.

**IT IS SO ORDERED.**

                                                      /s/ Michael H. Watson
                                                      Michael H. Watson, Judge
                                                      United States District Court