IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JEFFERSON-PILOT LIFE INS. CO., ) : | CASE NO. C-1-02-479 |
| Plaintiff, ) : | JUDGE BARRETT |
| vs. ) : | Magistrate Judge Hogan |
| CHRISTOPHER L. KEARNEY, ) : | |
| Defendant, ) : | |
| vs. ) : | MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR |
| DISABILITY MANAGEMENT ) SERVICES, INC., : ) | RETURN OF DOCUMENTS |
| Third-Party Defendant. : | |

This Court should deny plaintiff's (and counterclaim defendant's, collectively, "JP/DMS") motion seeking the return of 38 pages of material produced to defendant, Christopher L. Kearney, in 2003 (*See, Motion, pp. 5-6*) and alleged by JP/DMS to have been "inadvertently disclosed." These 38 pages can be distilled into three separate categories:

➢ 27 of the 38 pages were not ever provided to Kearney and, therefore, can not be "returned;"[1]

➢ 9 of the remaining 11 pages do not contain the provision of any legal advice or counsel, and, therefore, are not "privileged" and need not be returned; and

➢ The final 2-page document at issue (*Doc. 628-629*), was sent by Attorney Johnson to a third party, Employers Reinsurance Company, in December 2001, more than 6 months prior to the claim denial, and was neither directed nor copied to JP or DMS (at least at the time of its creation). For these reasons, and as detailed below, it too need not be returned.

---

[1] Documents JP/DMS contends that Attorney Johnson negligently produced due to her medical condition at the time but which were not produced to Kearney are: 3386-88, 3393-97, 3400-3413, 3447-50, and 3688.

1

For all of these reasons, and those discussed below, this Court should not only just deny JP/DMS' motion, but should further order that JP/DMS now produce the documents referenced in its motion (as having been produced, but were not) that have been concealed to date in contravention of <u>Boone v. Vanliner.</u>

**A.    The Un-produced 27 Pages Not Only Cannot Be Returned, They Should Be Produced By JP/DMS Now Under <u>Boone v. Vanliner.</u>**

As detailed in an April 28, 2004, letter to JP/DMS' counsel (*attached as Exh. 1*), which predated JP/DMS' first privilege log, twenty-seven (27) of the 38 pages which are the subject of JP/DMS' motion now were not ever provided/produced to Kearney (3386-88, 3393-97, 3400-3413, 3447-50, and 3688). They, therefore, cannot now be returned.

However, from the text of JP/DMS' motion, it is obvious that most if not all of these materials (which were created pre-denial) should have been produced and have been improperly concealed. Moreover, the April 28, 2004, letter details several dozen other missing documents that were neither produced nor contained in the privilege log. These documents too must be produced.

Kearney requests that the Court compel JP/DMS to produce all of the documents identified in his April 28, 2004, letter forthwith under <u>Boone v. Vanliner</u>.

**B.    The 9 Pages Produced That Contain No Legal Advice Are Not Privileged, And, Therefore, Need Not Be Returned.**

Two (2) of the 11 pages actually produced and which are the subject of JP/DMS' motion (564 and 568) are simply a single paragraph email and a fax cover sheet, respectively, which contain no legal advise and, are, therefore, not privileged.[2] The

---

[2] Privilege only applies if the lawyer is providing legal advice or services and not where the attorney acts as a claims adjuster providing business advise, not legal advice. <u>Columbia/HCA Healthcare</u>, 293 F.3d at 294.

2

attorney-client privilege "is narrowly construed because it reduces the amount of information discoverable during the course of a lawsuit."[3] Moreover, a "communication is not privileged simply because it is made by or to a person who happens to be an attorney."[4] To be privileged, the communication must have the "*primary* purpose of soliciting legal, rather than business, advice."[5] Because these documents contain no legal advice, they too need not be returned.

Five (5) of the 11 pages actually produced (3657-3611 (sic)) are collectively an undated draft copy of the Complaint, which contain no legal advise and which state nothing that is not contained in the July 1, 2002, Complaint filed in the public record. For these reasons, this 5 page document too need not be returned.

Two (2) of the 4 remaining pages (570-71) actually produced are undated handwritten notes of an unknown and indiscernible author (JP/DMS contend that the author was Attorney Johnson). Even if Attorney Johnson is the mystery author, the documents contain no legal advice or counsel,[6] and need not be returned.

C. **The December 21, 2001, Letter (628-629).**

As the result of the above, the only document of concern (putting aside Kearney's concerns about unproduced documents) at this late stage is the December 21, 2001, letter from Geraldine Johnson to William Dempsey at Employers Reinsurance

---

[3] United States v. Collis, 128 F.3d 313, 320 (6th Cir. 1997) ; In re Columbia/HCA Healthcare Corp. Billing Practices Litig., 293 F.3d 289, 294 (6th Cir. 2002).

[4] In re Rospatch Sec. Litigation, 760 F.Supp. 1239, 1991 WL 574963, at *8 (W.D.Mich. 1991) (citing Diversified Indus. V. Meredith, 572 F.2d 596, 602 (8th Cir. 1977) (en banc)).

[5] Rospatch, 760 F.Supp. 1239 [WL] at *8 (quoting North Carolina Elec. Membership Corp. v. Carolina Power & Light Co., 110 F.R.D. 511, 514 (M.D.N.C. 1986) (emphasis in original)).

[6] The burden of establishing the attorney-client privilege rests with the party asserting it. Columbia/HCA Healthcare, 293 F.3d at 294; United States v. Dakota, 197 F.3d 821, 825 (6th Cir. 1999).

Company, a third party (Doc. 628-629).  This letter: (i) predates the denial by 6+ months; (ii) was neither sent to or copied to JP or DMS; (iii) is not a privileged communication of JP/DMS; (iv) is discoverable under *Boone v Vanliner*; and (v) any alleged privilege or protection relating to this document was waived long ago.

1. **The History of JP/DMS' Document Production.**

In 2002/2003, Kearney served Rule 34 document production requests on JP/DMS.  In response, JP/DMS, then represented by Attorney Johnson, provided Kearney with an incomplete copy of the Kearney claim file, but which did contain the 11 pages identified above, which are the subject of JP/DMS' present Motion.

Well after JP/DMS' present counsel entered an appearance, Kearney's counsel sent Attorney Ellis a letter dated April 28, 2004.  The letter (*Exh.* 1) again requests that JP/DMS produce a privilege log, which at that time had been withheld for at least 8 months.  The April 28, 2004, letter further requested that JP/DMS produced dozens of documents that were missing (and which have never appeared on any of the three privilege logs produced in the case to date).

Two weeks later, on May 14, 2004, at the commencement of Kearney's deposition of DMS – which DMS had successfully delayed until the final day of the then existing discovery deadline – JP/DMS ***finally*** produced a privilege log which had been prepared by Attorney Ellis, not Attorney Johnson. (*See, Doc. 54, 2nd Motion To Compel and  Declaration attached*).

For the first time, Attorney Ellis' May 14, 2004, log requests that the above referenced 38 pages be returned because Attorney Johnson had inadvertently (in Attorney Ellis' opinion) produced them.  Attorney Ellis obviously came to this conclusion after his own exhaustive analysis of the claims file.  Of course, Attorney Ellis

4

had already been advised by Kearney that most of the allegedly "inadvertently produced" documents had not ever been produced. (*Exh*. 1). And because the balance of the allegedly inadvertently produced materials were either not privileged or discoverable under *Boone* (all as discussed above) there were no documents for Kearney to return.

Additionally, the May 14, 2004, log prepared by Attorney Ellis was woefully inadequate as a privilege log and the Court ordered that he provide Kearney with a log which did conform to the rules by the end of August 2004. (*Doc. 76*).

Attorney Ellis complied with that Order and issued an updated log to Kearney. Attorney Ellis' second privilege log, dated August 2004, again asserted that the above materials should be returned. Kearney did not return the documents that he did have for the reasons above and remained unable to return the documents never produced.

In late 2006/early 2007, JP/DMS finally got around to searching their electronic files for documents (even though they had this obligation 4 years earlier). That search resulted in JP/DMS serving and filing (*Doc. 139*) in 2007 a Supplemental Privilege Log. That 3rd log does not identify any additional "inadvertently disclosed" and allegedly privileged documents, but does again contain reference to pre-denial discoverable but withheld materials (i.e., *Doc. 139, no. 8, 10-11-00 email*).

### 2. The December 2001 Letter Is Not a JP/DMS Privileged Document.

JP/DMS assert here that they have standing to assert privilege over the December 21, 2001 letter. JP/DMS' claim is clearly unavailing. While the letter ultimately did end up in the Kearney claim file at JP/DMS, the letter is clearly a communication between Attorney Johnson and the point of contact at Employers

5

Reinsurance Corporation, a third party, which is neither a subsidiary, corporate affiliate, nor parent of JP/DMS. For these reasons, JP/DMS can not assert privilege over the document.

### 3. The December 21 Letter Is Discoverable Under *Boone.*

Even if Attorney Johnson's December 21, 2001, letter to a third party could be considered a privileged communication of JP/DMS, it still was properly discoverable by Kearney.

In *Boone v. Vanliner Ins. Co.*, 91 Ohio St.3d 209, 744 N.E.2d 154 (2001), cert. denied, 534 U.S. 1014, 122 S. Ct. 506, 151 L. Ed. 2d 415 (2001), the Supreme Court of Ohio held that: "In an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage." The issue before the court in *Boone* was "whether, in an action alleging bad faith denial of insurance coverage, the insured is entitled to obtain, through discovery, claims file documents containing attorney-client communications and work product that may cast light on whether the denial was made in bad faith." *Boone*, 91 Ohio St.3d at 211-212, 744 N.E.2d at 156. The court found that for public policy reasons, "claims file materials that show an insurer's lack of good faith in denying coverage ***are unworthy of protection.***"[7]

Here the document comments extensively on the strategy to attempt to manipulate the file in a manner designed to hopefully "strip" Kearney of his ability to

---

[7] *Id.* at 213, 744 N.E.2d at 153 (emphasis added). Accord *Unklesbay*, 167 Ohio App. 3d at 415-417, 855 N.E.2d at 521 (lack of good faith in processing, evaluating, or refusing to pay claim); *see also, Garg v. State Auto. Mut. Ins. Co.*, 155 Ohio App.3d 258, 265, 2003 Ohio 5960, 800 N.E.2d 757, 762 (Ohio Ct. App. 2003).

6

assert a claim of bad faith when his benefits were ultimately cutoff and denied. Clearly, this is precisely the type of document that, even if an attorney-client communication, the Ohio Supreme Court unequivocally determined to be "unworthy" of protection.

Because Attorney Johnson produced the document, it is likely that she recognized her obligation under *Boone* and did not *inadvertently* produce the document!

Accordingly, JP/DMS' motion with regard to the December 21, 2001, letter must be denied.

### 4. Any Privilege Which Once Attached Has Been Waived.

Finally, even if the December 21, 2001, letter to a third party is a JP/DMS privileged document (which it is not), and even if the document is not discoverable under *Boone* despite its date and content (although it is), any privilege that once attached to the document has been waived.

As noted and adopted by the *Miles-McClellan* court,[8] there are three principal approaches taken by federal courts in analyzing waiver of alleged inadvertent disclosure of privileged communications. Some courts apply a test of strict accountability, the "objective approach," holding that nearly any disclosure of the communication waives the privilege. Obviously under this approach, no documents provided to Kearney need be returned and the JP/DMS motion should be denied. Other courts take a "middle

---

[8] JP/DMS' contention that *State v. McDermott*, 72 Ohio St. 3d. 570, 572, 651 N.E. 2d 985, 987 (1995) controls this Court's analysis of waiver by way of inadvertent disclosure is mistaken. As Ohio's 10th District Court Of Appeals discussed last year, the issue of waiver and inadvertent disclosure of privileged documents during discovery was (in 2006) "essentially a matter of first impression in the state of Ohio." *Miles-McClellan Constr. Co. v. Westerville Bd. of Edn*. 2006-Ohio-3439, 2006 WL 1817223 (Ohio App. 10 Dist. 2006) The 10th District accordingly, "in the absence of conclusive authority in Ohio," turned to the analysis employed by federal courts for guidance. That same analysis is the appropriate analysis here.

ground" approach, deciding case-by-case whether the circumstances of the inadvertent disclosure warrant a finding that the privilege has been waived.

The Sixth Circuit has not ruled on the proper approach to take in an inadvertent disclosure case, but its district courts (as well as the Ohio authority noted above) commonly employ the "middle ground" approach. See *Evenflo Co. v. Hantec Agents Ltd.*, 2006 U.S. Dist. LEXIS 74684; *Fox,* 172 F.R.D. at 671; *Edwards v. Whitaker*, 868 F.Supp. 226, 229 (M.D.Tenn. 1994); *Federal Deposit Insurance Corp. v. Ernst & Whinney,* 137 F.R.D. 14, 17 (E.D.Tenn. 1991); and *Dyson v. Amway Corp.,* Case No. G88-CV-60, 1990 WL 290683 at *2 (W.D.Mich. Nov. 15, 1990).

The "middle ground" approach used in the district courts of the Sixth Circuit, leads here to the same conclusion as the "objective approach." The circumstances of the alleged inadvertent disclosure here warrants a finding that the privilege has been waived as to the December 21, 2001, letter.

Under the "middle ground" approach, the following factors are weighed: (1) the reasonableness of precautions taken in view of the extent of document production, (2) the number of inadvertent disclosures, (3) the magnitude of the disclosure, (4) any measures taken to mitigate the damage of the disclosures, and (5) the overriding interests of justice. *Fox,* 172 F.R.D. at 671.

### (a)     Reasonableness Of Precautions.

This factor clearly weighs in favor of a finding of waiver. As detailed above, the precautions taken to avoid disclosure here were not reasonable (assuming – without any evidence either way - that Attorney Johnson disclosed the document "inadvertently"). Many documents that are not identified in any of the 3 privilege logs have not been produced (*Exh*. 1). Conversely, many of the documents JP/DMS alleges were

inadvertently produced were in fact never produced. Third, despite nearly a year of requests, a privilege log was not produced until the final day of discovery. More, it was not until the Court later ordered that a proper log be produced that an appropriate privilege log was provided to counsel in August 2004, long after discovery had closed. The neglect (assuming the document is privileged and not discoverable under <u>Boone</u>) is astounding. This factor, therefore, waives heavily in favor of a finding of waiver.

> **(b)** **The number of inadvertent disclosures, the magnitude of the disclosure, and any measures taken to mitigate the damage of the disclosures.**

For the above reasons, these factors too weigh in favor of a finding of waiver on the December 21, 2001, letter.

The privileged character, if any, of any/all documents would have been open and obvious. No privileged documents were found when they were first screened. Further, the documents that JP/DMS now argues to be privileged were "indiscriminately mingled" with non-privileged documents. *See* <u>U.S. v. Kelsey-Hayes Wheel Co.,</u> 15 F.R.D. 461, (E.D.Mich 1954) (it is difficult to be persuaded that documents were intended to remain confidential when they were indiscriminately mingled with other routine documents).

> **(c)** **The Overriding Interests Of Justice.**

This factor, consistent with the Ohio Supreme Court's policy reasoning in <u>Boone v Vanliner</u>, weighs in favor of a finding of waiver. Not only has JP/DMS extraordinarily neglected their discovery obligations in this case, but the pre-denial document that they now want returned (and which was provided to a third party) "is not worthy" of protection because it details the bad faith strategy to deny Kearney's claims. Further, as

the Court refused to do in *Evenflo,* granting this motion would condone JP/DMS' carelessness.

## Conclusion

The single 2-page letter issued to a 3rd party 6 month's pre-denial is the only document that warrants any analysis. As detailed above, even if it is a privileged communication (which it is not), and even if it is not discoverable under *Boone* (which is not the case), and even if Attorney Johnson did not intentionally produce it pursuant to her unequivocal *Boone* obligations, any privileged character to the document was waived under both the "objective" and "middle" approach applied by district courts in this Circuit. Accordingly, JP/DMS" motion should be denied. And the real focus of this Court's analysis should be the documents that remain missing and which have never been contained or identified in any of the 3 different privilege logs produced.

Respectfully submitted,

OF COUNSEL:

GRAYDON HEAD & RITCHEY LLP
1900 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45201
(513) 621-6464
Cincinnati, Ohio 45201

/s Michael A. Roberts
Michael A. Roberts (0047129)
GRAYDON HEAD & RITCHEY LLP
Trial Attorney for Plaintiff
1900 Fifth Third Center
511 Walnut Street
(513) 629-2799
(513) 651-3836
mroberts@graydon.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the above was filed electronically with the ECF system and was thereby electronically served this 10th day of May 2007, on William R. Ellis, Esq. Wood & Lamping, 600 Vine Street, Suite 2500, Cincinnati, Ohio 45202 and John Meagher, Esq., Shutts & Bowen LLP, 1500 Miami Center, 201 South Biscayne Blvd., Miami, Fl. 33131.

/s Michael A. Roberts

1391773.1