**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **JEFFERSON PILOT LIFE INSURANCE,** | ) : | **CASE NO. C-1-02-479** |
| Plaintiff, | ) : | |
| vs. | ) : | Judge Barrett |
| **CHRISTOPHER L. KEARNEY,** | ) : | ***HEARING REQUESTED*** |
| Defendant. | ) | |

**CHRISTOPHER KEARNEY'S MOTION TO COMPEL**
**<u>BOONE v VANLINER DOCUMENTS</u>**

Pursuant to Fed. R. Civ. P., Rule 37, the defendant Christopher Kearney requests the production of all <u>*Boone v VanLiner*</u> 744 N.E. 2d 154 (Ohio), *cert. denied*, 534 U.S. 1014 (2001) materials. By order of June 8, 2007 (*Doc. 156*) the Court appears to have ordered defendant to return a **December 21, 2001**, letter authored by Attorney Geraldine Johnson and sent to Attorney William Dempsey. Kearney has done so. But in the same Order, the Court states unequivocally that "attorney client communications ***after June 6, 2002***, are protected from disclosure." (*Doc. 156, pp. 2-3*).

Because the December 21, 2001, letter shows bad faith of the insurer, and based on the recent case of <u>*Scotts Co. LLC v. Liberty Mut. Ins*</u>. *Co.*, 2007 WL 1500899 (S.D. Ohio May 18, 2007), the defendant asks that the Court order plaintiff to reproduce that letter and also order the production of all other documents predating June 6, 2002, including the letter sent by William R. Ellis to David Newkirk in May 1998 (which was recently identified in the GE/ERAC privilege log). A memorandum in support is attached.

 Respectfully submitted,

 s/Michael A. Roberts
 Michael A. Roberts, Esq. (0047129)

GRAYDON HEAD & RITCHEY LLP
511 Walnut Street, Suite 1900
Cincinnati, OH 45202
(513) 629-2799
(513) 651-3836 - fax
mroberts@graydon.com

## Memorandum In Support

As detailed in Kearney's memorandum opposing summary judgment (*Doc. 159*), this case pits the combined resources of three of the world's largest financial institutions (General Electric, Zurich Financial, and Lincoln Financial, the "Insurer") against an individual to whom they owe a duty of good faith and who has been irrefutably disabled for 14 years.

Kearney's potential payout on the Policies is over $4,000,000. Accordingly, for 8 years (1994-2002), the Insurer worked in "anticipation" of litigation, and for the past 5+ years has waged a particularly vengeful litigation battle against Kearney.

In the discovery stage, documents were produced (and some have been referenced in privilege logs), which predate the date (as this Court has repeatedly determined) that Kearney was denied benefits – June 6, 2002. Two documents of importance are a May 1998 letter from Attorney William Ellis to Attorney David Newkirk regarding the Kearney claim. (*Dempsey Depo at 77-78*). Another letter that this Court has reviewed is a December 21, 2001, letter from Attorney Johnson to Newkirk's colleague at GE/ERAC, Attorney William Dempsey. (*Doc. 62, Ex. 4*). These documents and any associated documents predating June 6, 2002 (including those in Attorney Ellis' file) should now be produced. Importantly, on several levels, the December 2001 Johnson letter shows bad faith, including the letter's final reference to the fact that the Insurer had determined that Kearney's health and condition were only getting worse. *Id.*

Kearney now brings this request formally, pursuant to Rule 37, because of the recently produced GE/ERAC privilege log and also on the basis of this Court's recent decision in *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 2007 WL 1500899 (S.D. Ohio May 18, 2007 (*attached as Exh. 1*).

### A.  The *Scotts Co.* Decision.

As discovered in June 2007, by May 1998, JP's existing trial counsel (Attorney Ellis) was corresponding with GE/ERAC in-house lawyers regarding "Kearney claims handling." (*Dempsey Depo at 77-78; Exh. 2 – June 2007 GE/ERAC privilege log excerpt*).  This is undoubtedly because GE/ERAC had noted in 1997 that the "jurisdiction" relevant in the Kearney claim was Ohio.  (*Dempsey Depo. at 47; Ex. 3*).

Then in December 2002, Johnson wrote a letter commenting on the Insurer's knowledge of Kearney's deteriorating health condition and other matters.  The tone and content of the Johnson letter is clearly evidence of bad faith. (*Doc. 62, Exh. 4*).

In *Boone v. Vanliner Ins. Co.*, 744 N.E. 2d 154 (Ohio), *cert. denied*, 534 U.S. 1014 (2001), the Ohio Supreme Court recognized an exception to the attorney-client privilege in cases in which an insured asserts bad faith against its insurer.  *Boone* held that "claims file materials that show an insurer's lack of good faith in denying coverage are unworthy of protection."  *Id.* at 158.  The Court thus concluded, "[I]n an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage."  *Id.*

In *Garg v. State Auto. Mut. Ins. Co.*, 800 N.E. 2d 757 (Ohio Ct. App. 2003), *app. not allowed*, 805 N.E. 2d 540 (Ohio 2004), the Court of Appeals reviewed the language of the *Boone* opinion and held that *Boone* extended not only to attorney-client communications,

3

but also to work product. Furthermore, *Garg* held that the *Boone* exception was not limited to materials relating to coverage alone, but rather extended to *all* documents created prior to coverage denial "that may cast light on whether the insurer acted in bad faith in handling an insured's claim." *Id.* at 763.

*Unklesbay v. Fenwick*, 855 N.E.2d 516 (Ohio Ct. App. 2006) further examined the ramifications of *Boone*. There, coverage was not denied. Rather, the insured alleged bad faith claims handling and payment of the insured's claim. The Court of Appeals again found that the *Boone* exception to attorney-client and work product was applicable. The Court observed that an insurer can exhibit bad faith in a number of ways including failure to carry out responsibilities set by the policy, delay in claims handling and underpayment. "This is true regardless of whether the insurer ever denied the claim outright." *Id.* at 521. Another important holding of *Unklesbay* was that the demarcation date for discoverability of attorney-client and work product materials had to be determined based upon the facts of the case. Since *Unklesbay* did not involve a denial of coverage, but rather a claim of bad-faith handling, processing, evaluating, and refusing to pay, the Court of Appeal found that the trial court properly found that all materials created prior to actual payment of the claim were discoverable.

In a very recent decision in this district, *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 2007 WL 1500899 (S.D. Ohio May 18, 2007), the district court considered the *Boone* exception to attorney-client privilege. Echoing *Unklesbay* the Court stated:

> "The scope of the *Boone* exception to the attorney-client privilege is dependent upon the unique facts of each case." *Id.* at *4.

4

The Court held that the *Boone* exception in a bad faith case involving "much more than the decision to deny coverage" extended to all documents that would cast light on plaintiff's bad faith claims "even if those documents are not maintained in plaintiff's claims file." *Id.* at *5.

And, based on the facts presented, the *Scott's* court held that *Boone* documents could even include documents created after the denial of coverage. This was the finding because, as here, the action alleged that the insurer "carried out a bad faith campaign to mislead and deceive plaintiff as to the existence, scope, and nature of plaintiff's insurance coverage, all in an intentional effort to mislead plaintiff and to induce plaintiff to sign a policy buyout agreement." *Id. at *4.*

This is precisely what the Insurer did to Kearney here. As an example, the Insurer engaged intentionally in an effort to "mislead and deceive" Kearney "as to the existence, scope, and nature of plaintiff's insurance coverage." Specifically, documents produced and which were not the subject of the Motion to Return Inadvertently Disclosed materials show that in the June 6-June 18, 2002, timeframe, the Insurer withheld the fact that Kearney had purchased lifetime coverage (a question that Kearney had been posing for over 4 years). And the Insurer wanted Kearney to negotiate a buyout on that misinformed basis.

## Conclusion

For all of the above reasons, and on the authority of *Scott's v. Liberty Mutual*, Kearney requests that the Court issue an order compelling the production of: (i) the December 21, 2001, Johnson letter; (ii) the 1998 Ellis letter (and any associated materials predating June 6, 2002); and (iii) all other previously withheld documents that reflect on bad faith, even if created after June 6, 2002.

                                            Respectfully submitted,

                                            s/Michael A. Roberts_____

>Michael A. Roberts, Esq. (0047129)
>GRAYDON HEAD & RITCHEY LLP
>511 Walnut Street, Suite 1900
>Cincinnati, OH 45202
>(513) 629-2799
>(513) 651-3836 - fax
>mroberts@graydon.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been filed electronically with the court and thereby served this 11th day of July, 2007, upon William R. Ellis, Wood & Lamping LLP, 600 Vine Street, Suite 2500, Cincinnati, OH 45202 and John E. Meagher, Esq., Shutts & Bowen LLP, 1500 Miami Center, 201 South Biscayne Boulevard, Miami, Florida 33131.

>s/ Michael A. Roberts