

Date of Printing: JUN 16, 2007

# KEYCITE

<u>Scotts Co. LLC v. Liberty Mut. Ins. Co.</u>, 2007 WL 1500899 (S.D.Ohio, May 18, 2007) (NO. CIV A 206-CV-899)

**History**

=>  1  Scotts Co. LLC v. Liberty Mut. Ins. Co., 2007 WL 1500899 (S.D.Ohio May 18, 2007) (NO. CIV A 206-CV-899)

**Court Documents**
**Dockets (U.S.A.)**

**S.D.Ohio**
2  THE SCOTTS COMPANY LLC v. LIBERTY MUTUAL INSURANCE COMPANY, NO. 2:06cv00899 (Docket) (S.D.Ohio Oct. 25, 2006)

*Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 2007 WL 1500899 (S.D. Ohio May 18, 2007)

Only the Westlaw citation is currently available.

United States District Court,
S.D. Ohio,
Eastern Division.
The SCOTTS COMPANY LLC, Plaintiff,
v.
LIBERTY MUTUAL INSURANCE COMPANY,
Defendant.
**Civil Action No. 2:06-CV-899.**

May 18, 2007.

<u>Frank Allen Ray</u>, <u>David John Butler</u>, <u>Jeffrey Jay Jones</u>, Columbus, OH, <u>Keith A. Meyer</u>, Quinn Emanuel Urquhart Oliver & Hedges LLP, Los Angeles, CA, for Plaintiff.

<u>Robert Charles Buchbinder</u>, Columbus, OH, Alison E.H. McLaughlin, <u>Ana M. Francisco</u>, Ropes & Gray LLP, Boston, MA, for Defendant.

## *OPINION AND ORDER*

<u>NORAH McCANN KING</u>, United States Magistrate Judge.

**\*1** This matter is before the Court on *Plaintiff the Scotts Company LLC's Motion to Compel* ("*Plaintiff's Motion to Compel* "), Doc. No. 20. Oral argument on the motion was held on March 26, 2007. For the reasons that follow, plaintiff's motion is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

In the late 1990s, environmental lawsuits were instituted against plaintiff relating to the cleanup of various hazardous waste sites that it had owned or used. *First Amended Complaint* ¶¶ 8-10. Plaintiff engaged Dispute Resolution Management, Inc., to secure insurance coverage from several insurance companies from which plaintiff believed it had purchased policies from approximately the mid-1950s to the mid-1960s. *Id.* ¶ 6. Plaintiff was unable to locate many of the records relating to the insurance coverage it believed it had purchased during this period. *Id.*

Plaintiff contacted defendant in August 1998, requesting information relating to the existence of historic general liability policies plaintiff believed that it had purchased from defendant in the 1950s and 1960s. *Id.* ¶ 12. At that time, plaintiff had a portion of one Liberty Mutual umbrella excess liability policy for 1967 and 1968. *Id.* Defendant undertook a search of its records and informed plaintiff that it could find no policies issued to plaintiff for the relevant time period. *Id.* ¶ 18. *See also Exhibit E* to *Declaration of Ana M. Francisco,* [FN1] Doc. No. 26 ("*Francisco Declaration* "), in support of *Memorandum of Law in Opposition to Scotts' Motion to Compel and in Support of Liberty's Motion to Bifurcate and Stay Discovery as to the Bad Faith Claim* [FN2] ("*Defendant's Memorandum in Opposition* "), Doc. No. 25.

© Copyright 2007 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

FN1. Ms. Francisco is counsel for defendant. *Declaration of Ana M. Francisco* ¶ 1.

FN2. Although defendant combines its opposition to *Plaintiff's Motion to Compel* and its motion to bifurcate and stay discovery on plaintiff's bad faith claim, the Court will address those matters separately.

In December 1998, plaintiff provided defendant with notice of loss for certain environmental claims, and asked defendant to review its records for copies of any policies issued to a list of 11 specified entities related to plaintiff or plaintiff's former parent, the ITT Corporation, and to locate any secondary evidence of general liability coverage. *First Amended Complaint* ¶ ¶ 12-14. Defendant located copies of a relevant ITT Corporation policy. *Exhibits F, G* to *Francisco Declaration.*

The parties continued negotiation on plaintiff's claims and continued to attempt to locate evidence of relevant policies and secondary evidence of coverage. *First Amended Complaint* ¶ ¶ 18-23. Ultimately, however, no policies or secondary evidence of policies were located and, in July 2000, the parties entered into a confidential agreement (the "*Settlement Agreement* "), that "purports to be a complete policy buyout...." *Id.* ¶ ¶ 24-25. Plaintiff alleges that the amount received from defendant pursuant to the *Settlement Agreement* was far less than its costs and expenses associated with the environmental claims asserted against it. *Id.* ¶ 26.

Plaintiff alleges in this action that it subsequently discovered evidence of insurance coverage for the relevant time period and that defendant had purposely deceived plaintiff regarding the existence of coverage. *Id.* ¶ ¶ 30- 36. Plaintiff asserts claims of breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, bad faith and fraud. Plaintiff seeks, *inter alia,* recision of the *Settlement Agreement.*

*2 In its February 14, 2007, *Motion to Compel,* Doc. No. 20, plaintiff seeks production of documents withheld by defendant under the attorney-client privilege and/or the work product doctrine. On March 7, 2007, defendant filed *Defendant's Memorandum in Opposition. See* Doc. Nos. 25, 25, 26. On March 21, 2007, plaintiff filed *Plaintiff's Reply Memorandum in Support of Motion to Compel* ("*Plaintiff's Reply* "). Doc. No. 28. On March 26, 2007, this Court held oral argument on *Plaintiff's Motion to Compel.* Doc. No. 32.

## II. STANDARD FOR MOTIONS TO COMPEL

Rule 37 of the Federal Rules of Civil Procedure permits a discovering party to file a motion for an order compelling discovery if another party fails to respond to discovery requests, provided that the motion to compel includes a certification that the movant has in good faith conferred or attempted to confer with the party failing to respond to the requests. Fed.R.Civ.P. 37(a). The Court is satisfied that the prerequisites to a motion to compel have been met in this case.

Determining the proper scope of discovery falls within the broad discretion of the trial court. *Lewis v. ACB Business Services, Inc.,* 135 F.3d 389, 402 (6th Cir.1998). Rule 34 of the Federal Rules of Civil Procedure provides for discovery of documents in the "possession, custody or control" of a party, provided that the documents "constitute or contain matters within the scope of Rule 26(b)." Fed.R.Civ.P. 34(a). In turn, Rule 26(b) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party...." Fed.R.Civ.P. 26(b)(1). Relevance for discovery purposes is extremely broad. *Miller v. Fed. Express Corp.,* 186 F.R.D. 376, 383 (W.D.Tenn.1999). "The scope of examination permitted under Rule 26(b) is broader than that permitted at trial. The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." *Mellon v. Cooper-Jarrett, Inc.,* 424 F.2d 499, 500-01 (6th Cir.1970).

## III. DISCUSSION

### A. *Boone v. Vanliner Ins. Co.,* **91 Ohio St.3d 209 (2001)**

Defendant responded to certain production requests by plaintiff with a *Privilege Log* indicating that certain documents had been withheld pursuant to the attorney-client privilege and/or the work product doctrine. *Affidavit of Keith A. Meyer* [FN3] ¶ ¶ 4-5, 8, attached as *Exhibit 1* to *Plaintiff's Motion to Compel.* Plaintiff does not challenge defendant's initial invocation of the privilege and doctrine, but seeks production of the withheld documents under an exception to the attorney-client privilege and the work product doctrine created by ***Boone v. Vanliner Ins. Co.,* 91 Ohio St.3d 209 (2001)**, and its progeny. *Plaintiff's Motion to Compel* at 6-7.

FN3. Mr. Meyer is counsel for plaintiff. *Affidavit of Keith A. Meyer* ¶ 1.

In *Boone,* the Supreme Court of Ohio held that in an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage. At that stage of the claims handling, the claims file materials will not contain work product, *i.e.,* things prepared in anticipation of litigation, because at that point it has not yet been determined whether coverage exists.

**\*3** *Boone, supra,* **at 213-14**. *See also* Garg v. State Auto. Mut. Ins. Co., 155 Ohio App.3d 258, 264 (Ohio Ct.App.2003) (clarifying that *Boone* is applicable to both the attorney-client privilege and the work product doctrine). The Ohio Supreme Court based its holding in *Boone* on the reasoning that "claims file materials that show an insurer's lack of good faith in denying coverage are unworthy of protection." *Boone, supra,* **at 213**.

Defendant takes the position that *Boone* is inapplicable to this action and that, even if applicable, does not require production of most of the documents sought.

**B. The Applicability of *Boone***

Defendant first contends that *Boone* was abrogated by Am. Sub. S.B. 117 ("S.B.117"). *Defendant's Memorandum in Opposition* at 8-9. However, as plaintiff correctly points out, the Governor of Ohio vetoed S.B. 117, *Plaintiff's Motion to Compel* at 10 and *Veto Message from Ted Strickland, Governor* attached as Exhibit 2 to *Plaintiff's Motion to Compel,* and it is not currently law. In any event, there is no indication that Ohio's General Assembly intended that S.B 117 apply retroactively to cases such as this. *See* Schulte v. Schulte, 71 Ohio St.3d 41, 44-45 (1994). *See also* O.R.C. § 1.48 ("A statute is presumed to be prospective in its operation unless expressly made retrospective").

Accordingly, this Court concludes that S.B. 117 does not serve to abrogate *Boone.*

**C. The Work Product Doctrine**

Defendant has withheld certain documents pursuant to the work product doctrine. Although plaintiff takes the position that state law governs this issue, the scope of the protection of the doctrine is unquestionably a matter of federal procedural law even in a diversity action. In re Powerhouse Licensing, LLC, 441 F.3d 467, 472 (6th Cir.2006). *See also Zigler v. Allstate Ins. Co.,* 2007 U.S. Dist. LEXIS 26117, \*6-7 (N.D.Ohio Apr. 9, 2007) (applying the *Boone* exception to documents withheld under the attorney-client privilege and federal law to those withheld under the work product doctrine). [FN4]

FN4. Although questions of evidentiary privilege arising in the context of a state law claim are governed by state law, Fed.R.Evid. 501, the work product doctrine, *see* F.R.Civ. P. 26(b)(3), is not an evidentiary privilege.

The work product doctrine offers some measure of protection from discovery in connection with documents and tangible things prepared in anticipation of litigation by or for a party or that party's representative. Fed.R.Civ.P. 26(b)(3). "A party asserting the work product [doctrine] bears the burden of establishing that the documents he or she seeks to protect were prepared 'in anticipation of litigation.' " United States v. Roxworthy, 457 F.3d 590, 593 (6th Cir.2006) (quoting In re Powerhouse Licensing, LLC, 441 F.3d at 473). The test is "(1) whether a document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation of litigation was objectively reasonable." *Id.* at 594.

That having been said, *Plaintiff's Motion to Compel* does not present a work product dispute sufficiently defined for this Court's consideration at this juncture. *Plaintiff's Motion to Compel* at 12 n. 5 ("the parties are still meeting and conferring in an attempt to resolve those issues without the court's intervention").

**\*4** Accordingly, as it relates to the documents withheld under the work product doctrine, *Plaintiff's Motion to Compel* is not ripe for review and it is therefore **DENIED**. The Court encourages the parties to continue their attempts to resolve the work product issue by reference to the standards of federal law.

**D. Temporal Limit on the Documents Subject to *Boone***

Plaintiff seeks production of all attorney-client communications that may cast light on whether the defendant acted in bad faith up to July 12, 2000, *i.e.,*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the date of the *Settlement Agreement.* Defendant contends that the cut-off date should be December 6, 1999, *i.e.,* the date that it denied coverage on plaintiff's environmental claims, arguing that "the **Boone** line of cases specifically limits the scope of the privilege to documents created prior to the denial of coverage." *Defendant's Memorandum in Opposition* at 10 (citing Garg, 155 Ohio App.3d at 260, and **Boone, 91 Ohio St.3d at 213-14**). This Court disagrees.

The scope of the **Boone** exception to the attorney-client privilege is dependent upon the unique facts of each case. *See, e.g.,* Unklesbay v. Fenwick, 167 Ohio App.3d 408, 414-15 (Ohio Ct.App.2006) (although insurer never denied coverage, **Boone** applicable to otherwise privileged material created prior to the date of payment of benefits). **Boone** presented a claim of bad faith denial of coverage; thus, the relevant documents were necessarily those created prior to the denial of coverage. In the case *sub judice,* however, plaintiff "alleges that defendant carried out a bad faith campaign to mislead and deceive plaintiff as to the existence, scope, and nature of plaintiff's insurance coverage, all in an intentional effort to mislead plaintiff and to induce plaintiff to sign a policy buyout agreement [the *Settlement Agreement*]." *Plaintiff's Reply* at 2. Under the facts of this case, then, the relevant materials are those generated prior to the execution of the *Settlement Agreement.*

Consequently, the Court concludes that the **Boone** exception applies to all materials created through July 12, 2000.

### E. Documents to Which *Boone* Applies

Plaintiff asks that this Court review all documents as to which defendant invokes the attorney-client privilege in order to ascertain whether **Boone** applies to those documents. *Plaintiff's Motion to Compel* at 9-12. Defendant responds that **Boone** applies only to the documents that are found within the plaintiff's "claims file," noting that **Boone** utilized that term. *Defendant's Memorandum in Opposition* at 9-11. Further, defendant suggested at oral argument that "claims file" is a term of art and that **Boone** should be narrowly interpreted to include only material found in the insured's claims file. *Tr.* at 42. Defendant's argument is not well-taken.

**Boone** referred to the claims file in that case because that is how the issue was presented to the Court in that case:

*5 The issue before us is whether, in an action alleging bad faith denial of insurance coverage, the insured is entitled to obtain, through discovery, claims file documents containing attorney-client communications and work product that may cast light on whether the denial was made in bad faith. **Boone, 91 Ohio St.3d at 211-12**.

As defendant made clear at oral argument, plaintiff's claims file contains all the material that the claims handler deemed necessary to the determination of whether to deny plaintiff's claims. *Tr.* at 46. However, unlike **Boone,** the case at bar does not allege simply a bad faith denial of insurance coverage. Instead, plaintiff alleges a pattern of bad faith on the part of defendant that began when defendant was asked to search for policies issued to plaintiff and ended with the execution of the *Settlement Agreement. Tr.* at 33-34. Thus, unlike the bad faith claim asserted in **Boone,** plaintiff's bad faith claim in this case encompasses much more than the decision to deny coverage. Consistent with the rationale manifested in *Boone, i.e.,* that materials evidencing an insurer's lack of good faith are unworthy of protection, this Court concludes that documents relevant to plaintiff's bad faith claims are subject to **Boone** even if those documents are not maintained in plaintiff's claims file.

In sum, the Court concludes that the **Boone** exception applies to documents otherwise insulated from discovery by the attorney-client privilege if those documents cast light on whether defendant acted in bad faith from the time that plaintiff requested a search for evidence of insurance to the point that the parties executed the *Settlement Agreement,* whether or not those documents are maintained in plaintiff's claims file as assembled by the claims handler. Plaintiff, however, does not seek outright disclosure of these documents and, instead, has asked the Court to review the documents *in camera,* a procedure that is apparently preferred by Ohio courts. *See, e.g.,* Unklesbay, supra, 167 Ohio App.3d at 416 ("we conclude that the trial court abused its discretion in failing to conduct an *in camera* review of Preferred Mutual's claims file"); *The Scotts Company v. Employers Insurance of Wausau,* App. No. 14-04-51, 2005 Ohio 4188, P13 (Ohio Ct.App.2005) (reversing trial court's order that **Boone** materials to be produced directly to the plaintiff and remanded with direction for *in camera* review).

Additionally, the Court notes that *Liberty Mutual Insurance Company's Motion to Bifurcate and Stay Discovery as to the Bad Faith Claim* is now fully at

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1500899 (S.D.Ohio)
**(Cite as: 2007 WL 1500899 (S.D.Ohio))**

Page 5

issue. *See* Doc. Nos. 24, 25, 26, 33, 42. Thus, the Court will conduct the *in camera* review in light of not only **Boone** but that motion as well.

**WHEREUPON** *Plaintiff's Motion to Compel,* Doc. No. 20, is **GRANTED** in part and **DENIED** in part. Specifically, the Court **GRANTS** plaintiff's motion as it relates to documents withheld pursuant to the attorney-client privilege and **DENIES** the motion, without prejudice to renewal, as it relates to documents withheld pursuant to the work product doctrine. Defendant is **ORDERED** to submit for *in camera* review all documents withheld under the attorney-client privilege, in accordance with this *Opinion and Order,* within ten days.

Slip Copy, 2007 WL 1500899 (S.D.Ohio)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.