

5/10/01

9543 Greystone Pkwy.
Brecksville, Ohio 44141

Jeffrey Green, Ph.D.
PDC, Inc.
1350 Main Street
Springfield, MA 01103-1619

Dear Dr. Green:

I am in receipt of your letter of 4/24/01, as well as a copy of the letter by Mr. Kearney, dated 4/11/01. You have asked me to provide you with comments regarding Mr. Kearney's letter.

I did speak with Mr. Kearney's brother, Timothy Kearney, by telephone on 3/15/01. The contact was made as part of my evaluation of Mr. Christopher Kearney and was within the scope of my agreement with PDC to obtain collateral information. Christopher Kearney signed an authorization for me to talk with his brother (see attached). I advised both Mr. Timothy and Mr. Christopher Kearney from the outset that the evaluation process is not confidential.

In the course of my conversation with Timothy Kearney, he made statements about his brother, Christopher, which appeared to be inconsistent with information obtained from testing conducted during the evaluation process. While I do not remember the details of the conversation with Mr. Timothy Kearney, two of the issues which we discussed were Christopher's reported shyness and aptitude for sales work. I noted in general terms that there was other information which varied from Mr. Timothy Kearney's observations. The conversation on these issues was short and I do not recall any specifics regarding any mention of the source of the discrepancies in question.

Sincerely,

Otto Kausch, M.D.

3248



**JOSEPH R. LEVY**

*Forensic Accounting Services to the Insurance Industry*

**A DIVISION OF SHALIK, MORRIS & COMPANY, LLP**
*Certified Public Accountants*

*7001 Brush Hollow Road • Westbury, NY 11590*
*Phone: 516.338.0800 or 516.338.8700*
*Fax: 516.338.5592*

May 7, 2001

Mr. Christopher Kearney          Our File:  #8539
                                 DMS File:  #H493029,538069
      Redacted                   D/D:  1993

Dear Mr. Kearney:

We have had an opportunity to inspect and summarize the re-
cords contained in the box you sent to us on March 19,
2001.  While these records do fulfill a portion of the rec-
ords requested in my March 26, 2001 letter to you, there
remain many other records that have not yet been furnished
and are still needed in order to verify your disability in-
come claim.  The missing records are listed below.

1.   Personal income tax returns (Form 1040), including all
     W-2 forms, 1099 forms and accompanying schedules for
     the years 1988-1992 and 2000.

2.   Corporate income tax returns (Form 1120) prepared for
     Kearney & Associates, Inc. covering the fiscal years
     1988-1992.

3.   Corporate income tax return (Form 1120S) prepared for
     Kenwood Technology Group, Inc. for the year 2000.

3251

Mr. Christopher Kearney
May 7, 2001
Page 2

4.   Monthly financial statements for Kearney & Associates,
     Inc. (if they are prepared in the normal course of do-
     ing business) covering the period from 1988 to the
     date the business closed.

5.   General ledgers or accountant's worksheets summarizing
     monthly transactions of Kearney & Associates, Inc.
     from the date of inception until the date the business
     closed.

6.   General ledgers or accountant's worksheets summarizing
     monthly transactions of Kenwood Technology Group, Inc.
     for all periods in the year 2001.

7.   Books of original entry, including:

     a.  Cash receipts journal
     b.  Cash disbursements journal
     c.  Sales or billings journals

8.   Sales invoices or other records which could be used to
     substantiate the sales of Kearney & Associates, Inc.
     from the date of inception until the date the business
     closed.

9.   Sales invoices or other records which could be used to
     substantiate the sales of Kenwood Technology Group,
     Inc. for the year 2001 to date.

10.  If complete sales records are not available, please
     furnish the name, address and telephone number of each
     customer or client for both businesses.

11.  Monthly bank statements and canceled checks for all
     bank accounts maintained by Kearney & Associates, Inc.
     that reflect business income and expense transactions
     as well as information showing the source of all funds
     deposited into the accounts.  These records should

3252

Mr. Christopher Kearney
May 7, 2001
Page 3

cover the period from the date of inception until the
date the business closed.

12.  Monthly bank statements and canceled checks for all
bank accounts maintained by Kenwood Technology Group,
Inc. that reflect business income and expense transac-
tions as well as information showing the source of all
funds deposited into the accounts.  These records
should cover all periods in the year 2001 to date.

13.  All payroll records maintained by both businesses, in-
cluding quarterly payroll tax returns required to be
filed with the Internal Revenue Service (Form 941) and
the State of Ohio.

14.  Corporate income tax returns (Form 1120 or 1120S) pre-
pared for Innomation, Inc. covering each year you were
a principal owner in the business.  Once again, we
will notify you if we require any additional records
for this business after we have had an opportunity to
inspect the corporate income tax returns.

The records listed above should cover the period from fis-
cal 1988 up through the date the company ceased operating
for Kearney & Associates, Inc. and for all periods in the
year 2001 to date for Kenwood Technology Group, Inc.

By copy of this letter, I am notifying Disability Manage-
ment Services that you have not yet provided our office
with all of the documentation required in order to properly
evaluate your disability income claim.

3253

Mr. Christopher Kearney
May 7, 2001
Page 4


I would appreciate it if you would let me know when the records requested in this letter will be made available for inspection.  You may reach me by calling (516) 338-0800 or 338-8700.

Very truly yours,

SHALIK, MORRIS & COMPANY, LLP

*Leslee Hymowitz*

Leslee Hymowitz

LH/bes:emk

Copy to Bob Mills - Disability Management Services


**3254**

# Disability Management Services, Inc.

A Third Party Administrator for

## The Equitable Life Assurance Society of The United States

1350 Main Street, Springfield, MA 01103-1628

(413) 747-0990 ext.1008 or (800) 299-6921   Fax: (413) 747-1545

John T. Kenney,Ph.D. ABPP                                    5/7/01
Parkway Medical Building South
3619 Park East Drive, Suite 313
Beachwood Ohio 44122-4312

Dear Dr. Kenney:

Please allow me to introduce myself. I am a licensed psychologist and clinical director for
Disability Management Services, Inc. I have been asked to review and comment in the case of
Christopher Kearney claim # H-493029, H-538069. I would appreciate copies of all raw data and
computer generated reports used in the evaluation conducted by you. The data will be helpful in
my review process. DMS has a records policy, which sees all raw data kept separately from the
claim file and housed under my supervision in a locked file. Should you have any questions
don't hesitate to contact me.

Respectfully submitted,


Jeff Green, Ph.D.
Licensed Psychologist
Clinical Director,DMS Inc.

**3257**

d/b/a New England Claims Administration Services, Inc. in FL, MD, ME
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a Centre Claims Administration Services in NH

**Disability Management Services
Research Information**



Date: April 27, 2001

To:    Bob Mills                                    S

Re:  Kearney
Policy # H493029

Pending:  Please adise if you want me to continue to follow up with the State
of OH corp department to get Articles of Incorporation and Annual Reports,
or if the info attached answers your questions. Thanks!


Attachments:

☐    Consumer Credit Report
☐    Court Records
☐    Business Report
☐    SEQY        ☐    DEQY        ☐    MBR
☐    Fictitious Name Search
☐    Licensed Occupation Check
☐    MVR-Driver Information
☐    Newspaper
☐    Phone Number Trace/Owner
☐    Autotrack
☐    Property/Real Estate
☐    SS # Trace
☐    Vehicle Ownership
☐    Workers' Compensation
☐    Accident Index
☐    Discovery Report
☒    Info from the OH website

Thank you,

Barb Bailey

3259

## Psychiatric Disability Consultants, Inc.

April 24, 2001

Otto Kausch, MD
9543 Greystone Parkway
Brecksville, Ohio  44141

RE:    Christopher Kearney

Dear Dr. Kausch:

I am in receipt of your evaluation, conducted at the request of Disability Management Services, on Christopher Kearney, who has a claim for disability benefits managed by Disability Management Services. Subsequent to completion of the independent medical evaluation, Disability Management Services received a letter addressed to Mr. Mills from Christopher Kearney. I am enclosing a copy of that letter for your review and commentary.

The independent medical evaluation review process is continuing and I may well be addressing additional inquiry to you as is warranted in this case. I appreciate your assistance and look forward to hearing from you regarding your comments on this matter.

Respectfully submitted,


Jeffrey Green, Ph.D.
Clinical Director, PDC, Inc.

JG/em
62009329424

Jeffrey Green, Ph.D. * 1350 Main Street, Springfield, MA 01103-1619
Telephone #:  413-747-0990, Ext. 1151 * Fax #: 413-747-9376

3260

**Christopher L. Kearney**
Redacted

Robert Mills                                                              April 11, 2001
Disability Management Services, Inc.
1350 Main St.
Springfield, MA  01103-1628

Mr. Mills:

*I am outraged and very disturbed* to find out that your board certified psychiatrist, Otto
Kausch, M.D., disclosed to my brother, Timothy L. Kearney, confidential results or
interpretation of results from the recent psychological testing I underwent for your purposes.

I was told by both Dr. Kenny, the psychologist, and Dr. Kausch that the test results were not
available to *me* or my *doctor*, only to the insurance carrier or its representative, DMS.

I gave Dr. Kausch my permission, in good faith, to briefly talk with my brother and mother.  He
specifically told me: "to ask a few questions, not to disclose confidential information about
you."

He told my brother on 3-15-01 that psychological personality testing recently taken by me
indicates that I am "shy and withdrawn" and that my sales aptitude is "very poor." My brother
told me of these disclosures the next day after talking to Dr. Kausch.

My brother told me that he was "shocked" that the doctor disclosed this to him.  Whether this
description of me is accurate or not, I am very upset that he would choose to disclose this to a
family member without my consent.  I find the description to be highly embarrassing.  Dr.
Kausch could have just stuck to "a few questions" without disclosing these test results.

In many letters to you, I have expressed my deepest concerns about personal, medical or
psychological information being disclosed by you or your representatives to my family, friends,
or business contacts.  See my letters to you of 8-11-00, and 2-23-01 regarding my anxiety that
improper disclosures might occur.

Your letter to me of March 7, 2001 states: "You can rest assured that while the authorization
allows us to <u>obtain</u> information from various sources, it does <u>not</u> allow us to <u>divulge</u> to anyone,
any of your personal medical information." (the underlining of the words for emphasis was
done by you in your original letter)

Also, I am very concerned that any or all of my medical and psychological records now in your
hands will be distributed, for your purposes, to various contractors across the country for
"medical review."  I am aware of the investigations done by the NBC television news program
*Dateline* alleging that some medical decisions were made by non-medical or unqualified
personnel in the insurance industry.

I plan to discuss these and other issues with the Ohio Dept. of Insurance and the State
Medical Board of Ohio.  I expect you to send a copy of all of the findings of the two doctors to
my doctor, Dr. Donna McClure, immediately as you have promised in your letter of 2-2-01.

3262

***I believe that I have the right to see medical and psychological information about myself already disclosed to a third party without my consent.***

I am also very distressed that Dr. Kausch told me in a phone call on 3-15-01 that my doctor, Dr. McClure, notes in her patient notes that I am "an alcoholic." I asked where specifically it says that I am "an alcoholic" as I have a copy of the patient notes. He recanted and said that "she had questions of possible alcohol addiction."

I am offended at his attempt to label me as an "alcoholic." Furthermore, I am very concerned about what DMS and all of its agents are telling my family, friends, neighbors, business contacts, etc. in your "ongoing evaluation of my claim."

Sincerely,

*Christopher L. Kearney*

Christopher L. Kearney

cc: Strauss & Troy, Charles H. Melville

3263

Christopher L. Kearney

Redacted

COPY



Thursday, April 05, 2001

Leslee Hymowitz
Shalik, Morris & Co., LLP
7001 Brush Hollow Rd.
Westbury, NY 11590

Ms. Hymowitz:

I am disturbed that once again you have asked for a mountain of documents for Kearney Associates, Inc. dating back to 1996.

Your letters are all copied to Mr. Mills of Disability Management whom I told by letter on 12-22-00 that I have no further documents to send concerning Kearney Associates, Inc. I also discussed this on the phone with him. Why hasn't he told you of this?

I have already provided 1992, 1993 personal tax returns as shown in my files. Earlier tax returns were given to your representation in order to prove income and buy the policies. Ask your representative for these.

I did recently come across a W-2 Wage and Tax Statement for 1996 for Kearney Associates, Inc. It was in a folder with copies of personal returns. Enclosed is a copy for you. I have crossed out the middle and last names of the employees in 1996 due to some very serious issues I now have with DMS concerning confidentiality of personal information.

When I receive the copies of the tax returns for Innovation, Inc. from the IRS, I will forward them to you unless I hear otherwise from you or Mr. Mills.

When are you going to send me copies of tax returns and Social Security Documents that I signed for release to you? Or is this a disclosure to DMS that you are going to withhold?

Sincerely,

Chris Kearney

PLEASE RESPOND

PLEASE RESPOND

SENDER: COMPLETE THIS SECTION

ESLEE HYMOWITZ
HK MORRIS CO., LLP
1 BRUSH HOLLOW RD
3STBURY, NY. 11590

3265

### Disability Management Services
### Research Information



Date: March 28, 2001

To:   Bob Mills                                    S

Re:  Kearney
Policy # H493029

Pending:

Attachments:

☐ Consumer Credit Report
☐ Court Records
☐ Business Report
☐ SEQY        ☐ DEQY        ☐ MBR
☐ Fictitious Name Search
☐ Licensed Occupation Check
☐ MVR-Driver Information
☐ Newspaper
☐ Phone Number Trace/Owner
☐ Autotrack
☐ Property/Real Estate
☐ SS # Trace
☐ Vehicle Ownership
☐ Workers' Compensation
☐ Accident Index
☐ Discovery Report
☒ Innomation information

Thank you,

Barb Bailey

3267





## Business Information

| Business Name | Charter / Registration Number | Type | Original Filing Date | Status | Expiration Date | Location / County / State | Agent / Contact Info | Business Filing Info View Images / | Prior Busir Name Info |
|---|---|---|---|---|---|---|---|---|---|
| INNOMATION, INC. | 922848 | Corporation For Profit | Nov 17 1995 | Active | | Cincinnati Hamilton Ohio | Click for Details | Click for Details | Click Detail |

Row(s) 1 - 1

Back to Menu

3268

 

## Agent/Contact Information

| Agent Name | Agent Address | City | State | Zip | Agent Effective Date | Agent Status |
|---|---|---|---|---|---|---|
| Charles H Melville | 201 E Fifth St #2100 | Cincinnati | Ohio | 45202 | Nov 17 1995 | Active |

Row(s) 1 - 1

Back to Menu

**3269**

Disability Management Services
Research Information



Date: March 27, 2001

To:   Bob Mills                                    S

Re:  Chris Kearney
Policy # H493029

Pending:  Copies of Articles of Incorporation and Annual reports. Am continuing to follow up with the State of OH.

Attachments:

☐   Consumer Credit Report
☐   Court Records
☐   Business Report
☐   SEQY      ☐   DEQY      ☐   MBR
☐   Fictitious Name Search
☐   Licensed Occupation Check
☐   MVR-Driver Information
☐   Newspaper
☐   Phone Number Trace/Owner
☐   Autotrack
☐   Property/Real Estate
☐   SS # Trace
☐   Vehicle Ownership
☐   Workers' Compensation
☐   Accident Index
☐   Discovery Report
☒   Website info for Kearney Associates

Thank you,

Barb Bailey

3270

Page 1 of 1





**Agent/Contact Information**

| Agent Name | Agent Address | City | State | Zip | Agent Effective Date | Agent Status |
|---|---|---|---|---|---|---|
| Lance S Cox | 480 Ohio Pike | Cincinnati | Ohio | 45230 | Feb 05 1982 | Active |

Row(s) 1 - 1

Back to Menu

3271

http://serf.../dev.tc_agent_contact_det.show?p_arg_names=charter_num&p_arg_values=58919   3/27/01

Page 1 of 1

                                    

## Business Filing Information

| Business Name | Filing Type | Filing Date | Doc Id Click for Image ! | Additional Filing Type Info |
|---|---|---|---|---|
| KEARNEY ASSOCIATES, INC. | Domestic Articles/For Profit | Feb 05 1982 | F029_1510 | |
| | Domestic/Amendment To Articles | Jul 13 1988 | G434_0823 | Domestic Change Of Location, Change Of Name |
| | Domestic Continued Existence Letter | Sep 09 1993 | 000000052541 | |
| | Domestic Continued Existence | Nov 08 1993 | 000000052542 | |

Row(s) 1 - 4

<u>Back to Menu</u>

**3272**





## Prior Business Name Information

| Prior Name | Change Date | Current Name |
|---|---|---|
| C. L. KEARNEY ASSOCIATES, INC. | Jul 13 1988 | KEARNEY ASSOCIATES, INC. |

Row(s) 1 - 1

Back to Menu

3273

htt.../dev.tc_prior_business_name_det.show?p_arg_names=charter_num&p_arg_values=58919   3/27/01



**JOSEPH R. LEVY**

*Forensic Accounting Services to the Insurance Industry*

**A DIVISION OF SHALIK, MORRIS & COMPANY, LLP**
*Certified Public Accountants*

*7001 Brush Hollow Road   Westbury, NY 11590*
*Phone: 516.338.8700   Fax: 516.338.5592*

March 26, 2001

Mr. Christopher Kearney          Our File:  #8539
                                 DMS File:  #H493029,538069
Redacted                         D/D:  1993

Dear Mr. Kearney:

On March 16, 2001, you wrote to me to advise that you would
be sending a box of records for Kenwood Technology Group,
Inc.  This documentation was received by us on March 23,
2001.  Once we have had an opportunity to summarize and
analyze the information provided, we will submit our find-
ings to the insurance carrier.

In my January 12, 2001 letter to you, I provided a detailed
listing of the records we would need to see covering the
period from January 1988 up through the present time in the
year 2001.  If the box of records you recently submitted is
only for Kenwood Technology Group, Inc., then these records
would cover only the years 1998-2000 and 2001 to date.

In order to properly evaluate your disability income claim,
we still need to see records for Kearney & Associates, Inc.
covering periods before and after the onset of your dis-
ability.  For your convenience, I have listed below the re-
cords that we still need to see.

1.    Personal income tax returns (Form 1040), including all
      W-2 forms, 1099 forms and accompanying schedules for
      the years 1988-1992 and 2000.

3274

Mr. Christopher Kearney
March 26, 2001
Page 2


2.   Corporate income tax returns (Form 1120) prepared for
     Kearney & Associates, Inc. covering the fiscal years
     1988-1992.

3.   Corporate income tax return (Form 1120S) prepared for
     Kenwood Technology Group, Inc. for the year 2000.

4.   Monthly financial statements for both Kearney & Asso-
     ciates, Inc. and Kenwood Technology Group, Inc. (if
     they are prepared in the normal course of doing busi-
     ness) covering the period from 1988 to date.

5.   General ledgers or accountant's worksheets summarizing
     monthly transactions of both businesses.

6.   Books of original entry for both business, including:

     a.   Cash receipts journal
     b.   Cash disbursements journal
     c.   Sales or billings journals

7.   Sales invoices or other records which could be used to
     substantiate the sales of both businesses.

8.   If complete sales records are not available, please
     furnish the name, address and telephone number of each
     customer or client for both businesses.

9.   Monthly bank statements and canceled checks for all
     bank accounts that reflect business income and expense
     transactions as well as information showing the source
     of all funds deposited into the accounts.

10.  All payroll records maintained by both businesses, in-
     cluding quarterly payroll tax returns required to be
     filed with the Internal Revenue Service (Form 941) and
     the State of Ohio.


3275

Mr. Christopher Kearney
March 26, 2001
Page 3


11.  Corporate income tax returns (Form 1120 or 1120S) pre-
     pared for Innomation, Inc. covering each year you were
     a principal owner in the business.  In your March 16,
     2001 letter, you said you did not receive payroll or
     dividends from this company.  However, we need to sat-
     isfy ourselves regarding your involvement with this
     business.  Once we have had an opportunity to examine
     the corporate income tax returns, we will advise you
     whether we need to see any other records for Innoma-
     tion, Inc.

The records listed above should cover the period from fis-
cal 1988 up through the date the company ceased operating
for Kearney & Associates, Inc. and from 1998 to date for
Kenwood Technology Group, Inc.  As noted above, you may
have already sent us most of the information requested for
Kenwood Technology Group, Inc.

I would appreciate it if you would let me know when the re-
cords requested in this letter will be made available for
inspection.  You may reach me by calling (516) 338-8700.

                          Very truly yours,

                          SHALIK, MORRIS & COMPANY, LLP

                          *Leslee Hymowitz*

                          Leslee Hymowitz

LH/bes:emk

Copy to Bob Mills - Disability Management Services


3276

**Chrisopher L. Kearney**

Redacted



Wednesday, March 21, 2001

Robert Mills
Disability Management Services, Inc.
1350 Main St.
Springfield, MA 01103-1628

Mr. Mills:

I received your letter of March 7, 2001. I have some issues to discuss with you about some of your statements. I will address these issues in a future letter after reviewing my files.

You have asked for information about the company Innomation, Inc. I owned this company for several years- it is now out of business. The work I did for Innomation, Inc. was as an agent of Kearney Associates, Inc. I was involved in sales and some management. The time I spent has already been accounted for in my reports for Kearney Associates, Inc. I was not on the payroll, I did not receive any dividends. My personal tax returns are accurate.

I was never an employee and I funded this company with my own personal resources, therefore there was no reason to report this to you. The Occupational Duties Form is apparantly designed for employees. As stated, my employer was not Innomation, Inc.

I will get the tax returns requested and send to you.

I have attended all of the doctors sessions you set up and I have recently sent a box of documents to Ms. Hymowitz to look over.

Sincerely,

Chris Kearney

3277

Christopher L. Kearney

Redacted

7000 1530 0001 0560 4051

0000

U.S. POSTAGE
PAID
WOOSTER, OH
44691
MAR 21 '01
AMOUNT

$3.40
00075152-14

Robert Mills
Disability Management Services,
Inc.
1350 Main St.
Springfield, MA
01103-1628

01103X1628 03

3278



### JOSEPH R. LEVY

*Forensic Accounting Services to the Insurance Industry*

## A DIVISION OF SHALIK, MORRIS & COMPANY, LLP
*Certified Public Accountants*

775 W. Crescent Avenue   P.O. Box 77   Allendale, NJ 07401
Phone: 201.825.9290 Fax: 201.825.4873

### TELEFACS TRANSMISSION

DATE: March 26, 2001

TO: Bob Mills

FAX #: 413-747-1545

FROM: Joseph R Levy CPA

No. of pages including this cover page: 20

Our File: #8639          Your File: #H493029, 538069

Re: Christopher Kearney

Please hand deliver this message to the above-referenced immediately upon receipt. Thank you.

Should you have any trouble with the reception of this transmission, please call (201) 825-9290.

3279



**JOSEPH R. LEVY**
*Forensic Accounting Services to the Insurance Industry*

## A DIVISION OF SHALIK, MORRIS & COMPANY, LLP
*Certified Public Accountants*

*7001 Brush Hollow Road   Westbury, NY 11590*
*Phone: 516.338.8700   Fax: 516.338.5592*

March 26, 2001

Mr. Christopher Kearney              Our File:  #8539
                                     DMS File:  #H493029,538069
Redacted                             D/D:  1993

Dear Mr. Kearney:

On March 16, 2001, you wrote to me to advise that you would
be sending a box of records for Kenwood Technology Group,
Inc.  This documentation was received by us on March 23,
2001.  Once we have had an opportunity to summarize and
analyze the information provided, we will submit our find-
ings to the insurance carrier.

In my January 12, 2001 letter to you, I provided a detailed
listing of the records we would need to see covering the
period from January 1988 up through the present time in the
year 2001.  If the box of records you recently submitted is
only for Kenwood Technology Group, Inc., then these records
would cover only the years 1998-2000 and 2001 to date.

In order to properly evaluate your disability income claim,
we still need to see records for Kearney & Associates, Inc.
covering periods before and after the onset of your dis-
ability.  For your convenience, I have listed below the re-
cords that we still need to see.

1.    Personal income tax returns (Form 1040), including all
      W-2 forms, 1099 forms and accompanying schedules for
      the years 1988-1992 and 2000.

3280

Mr. Christopher Kearney
March 26, 2001
Page 2


2.  Corporate income tax returns (Form 1120) prepared for
    Kearney & Associates, Inc. covering the fiscal years
    1988-1992.

3.  Corporate income tax return (Form 1120S) prepared for
    Kenwood Technology Group, Inc. for the year 2000.

4.  Monthly financial statements for both Kearney & Asso-
    ciates, Inc. and Kenwood Technology Group, Inc. (if
    they are prepared in the normal course of doing busi-
    ness) covering the period from 1988 to date.

5.  General ledgers or accountant's worksheets summarizing
    monthly transactions of both businesses.

6.  Books of original entry for both business, including:

    a.  Cash receipts journal
    b.  Cash disbursements journal
    c.  Sales or billings journals

7.  Sales invoices or other records which could be used to
    substantiate the sales of both businesses.

8.  If complete sales records are not available, please
    furnish the name, address and telephone number of each
    customer or client for both businesses.

9.  Monthly bank statements and canceled checks for all
    bank accounts that reflect business income and expense
    transactions as well as information showing the source
    of all funds deposited into the accounts.

10. All payroll records maintained by both businesses, in-
    cluding quarterly payroll tax returns required to be
    filed with the Internal Revenue Service (Form 941) and
    the State of Ohio.


                                                    3281

Mr. Christopher Kearney
March 26, 2001
Page 3

11.   Corporate income tax returns (Form 1120 or 1120S) pre-
      pared for Innomation, Inc. covering each year you were
      a principal owner in the business.  In your March 16,
      2001 letter, you said you did not receive payroll or
      dividends from this company.  However, we need to sat-
      isfy ourselves regarding your involvement with this
      business.  Once we have had an opportunity to examine
      the corporate income tax returns, we will advise you
      whether we need to see any other records for Innoma-
      tion, Inc.

The records listed above should cover the period from fis-
cal 1988 up through the date the company ceased operating
for Kearney & Associates, Inc. and from 1998 to date for
Kenwood Technology Group, Inc.  As noted above, you may
have already sent us most of the information requested for
Kenwood Technology Group, Inc.

I would appreciate it if you would let me know when the re-
cords requested in this letter will be made available for
inspection.  You may reach me by calling (516) 338-8700.

                              Very truly yours,

                              SHALIK, MORRIS & COMPANY, LLP

                              Leslee Hymowitz

                              Leslee Hymowitz

LH/bes:emk

Copy to Bob Mills - Disability Management Services


                                                     3282



**JOSEPH R. LEVY**

*Forensic Accounting Services to the Insurance Industry*

## A DIVISION OF SHALIK, MORRIS & COMPANY, LLP

*Certified Public Accountants*

*775 W. Crescent Avenue   P.O. Box 77   Allendale, NJ 07401*
*Phone: 201.825.9290 Fax: 201.825.4873*

March 26, 2001

<u>Sent via regular mail & FAX</u>

Mr. Robert Mills                    Our File:  #8539
Disability Management Services      Your File:  #H493029,538069
1350 Main Street                    D/D:  1993
Springfield, MA 01103

Subject:  Christopher Kearney

                Redacted

### <u>PRELIMINARY REPORT & ANALYSIS</u>

The claimant is alleging a disability due to depres-
sion that began in 1993, and he is claiming a residual loss
of earnings as a result of this disability.  You have re-
quested us to examine all relevant books and records in or-
der to obtain information that would be useful to you in
processing this claim.

We examined the claimant's 1993-1999 personal income
tax returns (Form 1040 or 1040-EZ).  The claimant has filed
tax returns as a single individual since 1994.  Information
taken from the personal income tax returns provided to us
is shown below.

C o n t i n u e d . . . .

3283

Mr. Robert Mills                   March 26, 2001
Re: Christopher Kearney            Page 2

| | 1999 | 1998 | 1997 | 1996 | 1995 | 1994 | 1993 |
|---|---|---|---|---|---|---|---|
| Wages – Claimant | $ 2,500 | $ 5,000 | $ 8,000 | $14,000 | $29,300 | $22,800 | $51,139 |
| Wages – Wife | -- | -- | -- | -- | -- | -- | 4,950 |
| Interest Income | | | | | 20 | 17 | 368 |
| Capital Gain (Loss) | | | 35,229 | | | | |
| IRA Distribution | | | | | | 8,974 | |
| Rental Income (Loss) | | | (2,368) | 595 | (3,879) | 644 | 160 |
| Personal Use of Car | | | 1,850 | 1,900 | 1,700 | 1,596 | 3,523 |
| Taxable Refunds of State & Local Income Taxes | | | 312 | 457 | 136 | | 50 |
| Total Income | $ 2,500 | $ 5,000 | $43,023 | $16,952 | $27,277 | $34,031 | $60,190 |

    At our request, the claimant executed release forms so
that we could obtain copies of his 1993-1999 personal in-
come tax returns directly from the Internal Revenue Service
as well as an earnings history for the years 1988-1999.
Below we have listed the wages reported for the claimant to
the Social Security Administration in the years 1988-1999.

| Year | Kenwood Technology Group, Inc. | Kearney Associates, Inc. |
|---|---|---|
| 1999 | $ 2,500 | $ |
| 1998 | 5,000 | |
| 1997 | | 8,000 |
| 1996 | | 14,000 |
| 1995 | | 29,300 |
| 1994 | | 22,800 |
| 1993 | | 51,139 |
| 1992 | | 99,512 |
| 1991 | | 93,742 |
| 1990 | | 51,300 |
| 1989 | | 40,382 |
| 1988 | | 34,884 |

3284

Mr. Robert Mills                          March 26, 2001
Re: Christopher Kearney                   Page 3


     The claimant received wages from his company Kearney
Associates, Inc. in the years 1988-1997.  The highest
amount of wages paid to the subject by this company
($99,512) occurred in the year 1992.  Thereafter, the wages
reported for the subject by Kearney Associates declined
from $51,139 in 1993 (year of the onset of the disability)
to $8,000 in 1997.  The subject began receiving wages from
his new company Kenwood Technology Group, Inc. in 1998.
The subject's wages from this company amounted to $5,000 in
1998 and $2,500 in 1999.

     Kearney & Associates, Inc. was incorporated on Febru-
ary 1, 1982.  The claimant owned 100% of the common stock
of this company, whose primary business activity was de-
scribed as "sales - manufacturers' representative."  The
corporation had a fiscal year that ended on January 31.  We
were provided with the fiscal 1993-1998 corporate income
tax returns (Form 1120) prepared for Kearney & Associates,
Inc.  Information taken from these tax returns is shown on
Schedule I.  Below we have summarized certain information
from Schedule I.


                    C o n t i n u e d . . . .


                                                    **3285**

Mr. Robert Mills                    March 26, 2001
Re: Christopher Kearney              Page 4

|                        | FOR THE FISCAL YEAR ENDED JANUARY 31 | | | | | |
|                        | 1998 | 1997 | 1996 | 1995 | 1994 | 1993 |
|------------------------|------|------|------|------|------|------|
| Sales                  | $ 32,850 | $127,070 | $179,497 | $141,941 | $124,246 | $196,017 |
| Interest Income        |      |      |      |      |      | 630 |
| Capital Gain           |      |      |      | 5,439 |      | |
| **Total Revenue**      | 32,850 | 127,070 | 179,497 | 147,380 | 124,246 | 196,647 |
| **Less expenses:**     |      |      |      |      |      | |
| Officer's Compensation | 8,000 | 14,000 | 29,300 | 30,600 | 28,500 | 109,651 |
| Salaries & Wages       | 0 | 63,003 | 54,846 | 4,846 | 3,811 | 3,801 |
| Commissions            | 0 | 0 | 2,762 | 31,800 | 4,100 | 0 |
| Meals & Entertainment  | 8,225 | 9,723 | 9,661 | 7,758 | 8,354 | 8,339 |
| Travel                 | 45 | 22,940 | 23,318 | 9,481 | 7,418 | 32,782 |
| Automobile             | 8,129 | 4,191 | 6,080 | 6,573 | 6,732 | 5,681 |
| All Other              | 16,009 | 37,195 | 47,245 | 53,597 | 58,337 | 38,991 |
| **Total Expenses**     | 40,408 | 151,052 | 173,212 | 144,655 | 117,252 | 199,245 |
| **Net Income (Loss)**  | $ (7,558) | $(23,982) | $ 6,285 | $ 2,725 | $ 7,344 | $ (2,598) |

The corporation's sales declined from $196,017 in fis-
cal 1993 to $124,246 in fiscal 1994. Sales increased to
$141,941 in fiscal 1995 and $179,497 in fiscal 1996 before
declining to $127,070 in fiscal 1997 and $32,850 in fiscal
1998.

The amounts reported as officer's compensation repre-
sented the subject's wages from the company. The claim-
ant's wages declined from a high of $109,651 in the fiscal
year ended January 31, 1993 to $28,500 in fiscal 1994,
$30,600 in fiscal 1995 and $29,300 in fiscal 1996. The
claimant's wages declined even further and amounted to
$14,000 in fiscal 1997 and $8,000 in fiscal 1998.

Salaries and wages to all other employees were roughly
the same in fiscal 1993 ($3,801), fiscal 1994 ($3,811) and
fiscal 1995 ($4,846). There was a significant increase in
the salaries and wages to all other employees in fiscal

3286

Mr. Robert Mills                    March 26, 2001
Re: Christopher Kearney              Page 5


1996 ($54,846) and fiscal 1997 ($63,003).  No salaries and
wages were reported for other employees in fiscal 1998.

    The corporation reported commission expense in fiscal
1994 ($4,100), fiscal 1995 ($31,800) and fiscal 1996
($2,762).

    After deducting all costs and expenses, Kearney & As-
sociates, Inc. reported a net loss of $2,598 in fiscal 1993
followed by net income in fiscal 1994 ($7,344), fiscal 1995
($2,725) and fiscal 1996 ($6,285).  The corporation re-
ported net losses in fiscal 1997 ($23,982) and fiscal 1998
($7,558).

    The expenditures for labor (salaries and wages plus
commissions but excluding officer's compensation) increased
from $3,801 in fiscal 1993 to $7,911 in fiscal 1994.  A
more significant increase in labor expense was reported in
fiscal 1995-1997.  Labor expense (other than officer's com-
pensation) increased to $36,646 in fiscal 1995, $57,608 in
fiscal 1996, and $63,003 in fiscal 1997.  There was no la-
bor expense other than officer's compensation in fiscal
1998.  The claimant states that he had to hire other sales-
people to help him after the onset of his disability.

    Even though the subject claims that his work activi-
ties were curtailed following the onset of his disability,
certain business-related expenses (i.e., automobile expense
and meals & entertainment expense) remained at approxi-
mately the same level throughout the six years examined.
Also, we noted significant fluctuations in the corpora-
tion's travel expense.  The company's travel expense de-
clined from a high of $32,782 in fiscal 1993 to $7,418 in
fiscal 1994 and $9,481 in fiscal 1995 before increasing to
$23,318 in fiscal 1996 and $22,940 in fiscal 1997.  In fis-
cal 1998, the company reported travel expense of just $45.
The claimant explained that both his travel expenses and
the travel expenses of the salespeople he hired were re-
ported on the corporate income tax returns.  As noted in
the report above, the corporation reported its highest la-

3287

Mr. Robert Mills                    March 26, 2001
Re: Christopher Kearney             Page 6


bor expense (other than officer's compensation) in fiscal
1996 and fiscal 1997, which coincides with the unusually
high travel expense reported in fiscal 1996 and fiscal
1997.

    Attached to the business tax returns furnished to us
were balance sheets listing the assets, liabilities and
shareholder's equity as of January 31 in the years 1992-
1998.  Information taken from these balance sheets is shown
on Schedule II.  Below we have shown the balance in the
shareholder loan account.

| As of 1-31 | Loans to Shareholder | Loans from Shareholder |
|---|---|---|
| 1998 | $ | $70,865 |
| 1997 | | 44,786 |
| 1996 | | 10,320 |
| 1995 | 8,630 | |
| 1994 | 9,630 | |
| 1993 | 9,630 | |
| 1992 | 15,522 | |

    After January 31, 1992, the claimant began repaying
loans previously advanced to him from the corporation.  By
January 31, 1996, the corporation owed the claimant
$10,320, and at January 31, 1998, the corporation owed the
claimant $70,865 for loans made by him to the company.

    The claimant began operating a new business known as
Kenwood Technology Group, Inc. in 1998.  This company was
incorporated on August 26, 1998, and it elected to be taxed
as an S corporation on January 1, 1999.  In an S corpora-
tion, the company is not responsible for paying federal in-
come taxes on its net taxable income.  Instead, the net in-
come or loss for each year is passed through to the indi-
vidual stockholders of the company.  These stockholders re-
port their proportionate share of the corporation's net in-

3288

Mr. Robert Mills                    March 26, 2001
Re: Christopher Kearney            Page 7

come or loss on their personal income tax returns each
year.  Since the claimant owns 100% of the company's common
stock, he is responsible for reporting all of the corpora-
tion's net income or loss on his personal income tax return
each year.

     The primary business activity shown for Kenwood Tech-
nology Group, Inc. is "manufacturing."  The claimant told
your consultant that this company consists of the claimant
and several engineers who are retained on a consulting ba-
sis.  The concept of the business is to bid on proj-
ects/systems that manufacturers need in-house that would
require building a new tool using robotics or automation.
We were provided with the 1998 and 1999 corporate income
tax returns (Form 1120S) prepared for Kenwood Technology
Group, Inc.  Information from these two tax returns is
shown on Schedule II.  Below we have summarized certain in-
formation taken from Schedule II.

|                          | 1999        | 1998       |
|--------------------------|-------------|------------|
| Sales                    | $ 74,416    | $ 20,131   |
| Less: cost of goods sold | (88,404)    | (14,993)   |
| Gross Profit (Loss)      | (13,988)    | 5,138      |
| Less expenses:           |             |            |
| Officer's Compensation   | 2,500       | 0          |
| Salaries & Wages         | 2,000       | 5,000      |
| All Other Expenses       | 26,616      | 3,458      |
| Total Expenses           | 31,116      | 8,458      |
| Net Income (Loss)        | $(45,104)   | $ (3,320)  |

     The sales of Kenwood Technology Group, Inc. increased
from $20,131 in 1998 (first year of doing business) to
$74,416 in 1999.  No officer's compensation was reported on
the 1998 corporate income tax return, but the company did

3289

Mr. Robert Mills                    March 26, 2001
Re: Christopher Kearney             Page 8


report salaries and wage expense of $5,000 in 1998, which
matches the wages reported on the claimant's 1998 personal
income tax return.  In 1999, the corporation reported offi-
cer's compensation amounting to $2,500, which matches the
wages reported on the claimant's 1999 personal income tax
return.  In 1999, Kenwood Technology Group, Inc. also re-
ported salaries and wages to other employees of $2,000.

    Included as part of the 1999 cost of goods sold was
subcontract engineering expense, which amounted to $2,681.
Below we have shown a breakdown of the cost of goods sold
deducted on the 1998 and 1999 corporate income tax returns.

|                         | 1999      | 1998      |
|-------------------------|-----------|-----------|
| Purchases               | $ 75,238  | $ 14,597  |
| Subcontract Engineering | 2,681     |           |
| (illegible)             | 823       |           |
| Small Tools             | 1,267     |           |
| Shop Supplies           | 8,395     |           |
| No breakdown furnished  |           | 396       |
| Cost of Goods Sold      | $ 88,404  | $ 14,993  |

    The corporation reported a high amount of purchases in
the year 1999 ($75,238), which exceeded the 1999 reported
sales of $74,416.  No ending inventory was reported at De-
cember 31, 1999.  This is not a reasonable relationship be-
tween purchases and sales.

    In 1999, the corporation reported exhibition fee ex-
pense amounting to $3,212, automobile expense of $6,059 and
travel expense of $1,358.  After deducting all costs and
expenses, Kenwood Technology Group, Inc. reported net
losses in the years 1998 (a loss of $3,320) and 1999 (a
loss of $45,104).

3290

Mr. Robert Mills                    March 26, 2001
Re: Christopher Kearney              Page 9


Attached to the business tax returns furnished to us were balance sheets listing the assets, liabilities and shareholder's equity as of December 31 in the years 1998 and 1999. Information taken from these balance sheets is shown on Schedule IV. Below we have shown the balance in the shareholder's loan account.

| As of 12-31 | Loans from Shareholder |
|---|---|
| 1999 | $47,881 |
| 1998 | 6,685 |

The loans from the claimant to this corporation amounted to $6,685 as of December 31, 1998 and then increased to $47,881 as of December 31, 1999.

The claimant's earned income would be equal to a combination of his wages plus the S corporation net income (loss). Below we have shown a calculation of the claimant's average monthly combined earnings in the years 1988-1999 based on the information furnished to us.

| Year | Wages | S Corp. Income (Loss) | Combined Earnings (Loss) | Average Monthly Earnings |
|---|---|---|---|---|
| 1999 | $ 2,500 | $(45,104) | $(42,604) | $  -- |
| 1998 | 5,000 | (3,320) | 1,680 | 140 |
| 1997 | 8,000 | | 8,000 | 667 |
| 1996 | 14,000 | | 14,000 | 1,167 |
| 1995 | 29,300 | | 29,300 | 2,442 |
| 1994 | 22,800 | | 22,800 | 1,900 |
| 1993 | 51,139 | | 51,139 | 4,262 |
| 1992 | 99,512 | | 99,512 | 8,293 |
| 1991 | 93,742 | | 93,742 | 7,812 |
| 1990 | 51,300 | | 51,300 | 4,275 |
| 1989 | 40,382 | | 40,382 | 3,365 |
| 1988 | 34,884 | | 34,884 | 2,907 |

3291

Mr. Robert Mills                    March 26, 2001
Re: Christopher Kearney            Page 10


It is our understanding that the claimant's prior
monthly income (PMI) under his policy is based on the high-
est earnings reported in a single year out of the five
years immediately preceding the date of disability.  Under
that circumstance, the year 1992 represents the highest
earnings reported by the claimant in the period from 1988-
1992, and his PMI would be equal to $8,292.67 per month
($99,512 divided by 12 months).

In order to properly evaluate the subject's disability
income claim, we need to see the underlying books and rec-
ords of his two businesses.  On January 12, 2001, we wrote
to the claimant and provided him with a detailed listing of
the records we would need to examine in order to verify his
claim.  In our letter, we requested an opportunity to exam-
ine these records at his location during the week of Janu-
ary 22, 2001.  A copy of our January 12, 2001 letter was
sent to you at that time.  The claimant responded with a
letter to us, which was dated January 22, 2001.  In that
letter, he requested that we obtain from your office those
records that he previously submitted in connection with
this claim.

On February 1, 2001, we wrote a follow-up letter to
the claimant and provided him with an updated listing of
the records we still need to see.  A copy of our letter
was also sent to you at that time.  The subject responded
with his own letter dated February 12, 2001.  The claimant
provided us with executed release forms as well as his 1993
and 1995 W-2 forms and his 1994 personal income tax return.
The subject advised that he sent a copy of his 2000 W-2
form to your office previously.

We recently received another letter from the claimant
that was dated March 16, 2001, in which the claimant ad-
vised he would be sending us "a box of copies of bank
statements, checks, general ledgers, POs, receipts, etc.
for Kenwood Technology Group, Inc.  There are approximately
two thousand pages."  In his March 16, 2001 letter, the
subject did not mention that he would be sending us any re-

3292

Mr. Robert Mills                    March 26, 2001
Re: Christopher Kearney             Page 11


cords for Kearney & Associates, Inc., even though we re-
quested complete documentation from 1988 up through the
present time.

Information in your file indicates that the reduction
in the claimant's earnings subsequent to 1992 may have been
due to poor management of Kearney & Associates, Inc. and
ill will between the claimant and some of his customers.
If Kearney & Associates, Inc. went out of business for rea-
sons other than the claimant's 1993 disability, then this
might be relevant in terms of evaluating his reduced earn-
ings claim.

You recently advised us that the claimant was involved
with a company known as Innomation, Inc.  In his March 16,
2001 letter, the subject stated the following about that
company:

> "I will discuss directly with DMS, the company called
> Innomation, Inc. which I owned for several yrs.  This
> company was not my employer and I was not on the pay-
> roll.  Further, I did not receive any dividends from
> this company."

We would like to see at least the corporate income tax
returns and possibly the underlying records of this busi-
ness in order to satisfy ourselves that the claimant did
not receive any income from the business as alleged.

Enclosed is a copy of our most recent letter to the
claimant, reiterating that we need to see the books and re-
cords of Kearney & Associates, Inc. in addition to the rec-
ords he has promised to send us regarding Kenwood Technol-
ogy Group, Inc.  The records requested should provide us
with a complete understanding of the business prior to the
onset of the subject's disability in 1993.

We will continue to follow up with the claimant to ob-
tain all of the records requested by us, and we will keep

3293

Mr. Robert Mills                        March 26, 2001
Re: Christopher Kearney                 Page 12


you apprised of our findings.  Our bill for services ren-
dered to date will be sent to you under separate cover.

                              Very truly yours,

                              Joseph Levy

                              Joseph R. Levy
                              Certified Public Accountant


JRL/bes:emk
Enclosures


3294

SCHEDULE I

Firm Name  KEARNEY & ASSOCIATES, INC.

STATEMENT OF INCOME & EXPENSES
FOR THE YEAR ENDED
January 31

| | 1998 | 1997 | 1996 | 1995 | 1994 | 1993 |
|---|---|---|---|---|---|---|
| Sales | $ 32,850 | $127,070 | $179,497 | $141,941 | $124,246 | $196,017 |
| Less: Cost of Goods Sold | 0 | 0 | 0 | 0 | 0 | 0 |
| Gross Profit | 32,850 | 127,070 | 179,497 | 141,941 | 124,246 | 196,017 |
| Interest Income | | | | | | 630 |
| Capital Gain | | | | 5,439 | | |
| Total Income | 32,850 | 127,070 | 179,497 | 147,380 | 124,246 | 196,647 |
| Less expenses: | | | | | | |
| Compensation of Officers | 8,000 | 14,000 | 29,300 | 30,600 | 28,500 | 109,651 |
| Salaries & Wages | | 63,002 | 54,846 | 4,846 | 3,811 | 3,801 |
| Rents | 2,075 | 6,011 | 9,140 | 6,762 | 3,563 | 3,555 |
| Taxes | 772 | 6,495 | 7,361 | 2,934 | 2,710 | 4,870 |
| Interest | | 1,209 | 1,749 | 1,473 | 808 | 1,058 |
| Depreciation | 4,990 | 4,115 | 8,483 | 19,325 | 17,177 | 4,642 |
| Employee benefit programs | 1,706 | 2,344 | 4,410 | | | |
| Other deductions | | | | 4,356 | 4,612 | |
| Insurance | 112 | 1,558 | 6,350 | 6,101 | 4,089 | 8,589 |
| Telephone | 1,773 | 3,126 | 5,091 | 4,933 | 4,434 | 4,725 |
| Heat, fuel, power | | | | 87 | 249 | 183 |
| Professional Fees | 335 | 2,636 | 1,275 | 1,255 | 1,771 | 2,141 |
| Meals & Entertainment | 8,225 | 9,723 | 9,661 | 7,758 | 8,354 | 8,339 |
| Office | 4,246 | 9,701 | 9,386 | 6,371 | 4,514 | 3,016 |
| Automobile | 8,129 | 4,191 | 6,080 | 6,573 | 6,732 | 5,681 |
| Travel | 45 | 22,940 | 23,318 | 9,481 | 4,100 | |
| Commissions | | | 2,762 | 31,800 | 7,418 | 32,782 |
| Computer Training | | | | | 14,450 | 6,212 |
| All Other | | | | | | |
| Total Expenses | 40,408 | 151,052 | 173,212 | 144,655 | 117,292 | 199,245 |
| Net Income (Loss) | $ (7,558) | $(23,982) | $ 6,285 | $ 2,725 | $ 7,344 | $ (2,598) |

03/26/2001  14:16   281-625-4873      JOSEPH LEVY CPA      PAGE  14