

## JEFFERSON PILOT

Jefferson Pilot Financial
PO Box 21008
Greensboro, NC 27420

336 691 3000

December 30, 1999

*1-5-99*
*Todd Deitns*
*is handling*
*Transition*
*Talked to Jrr.*
*Brock.*

Chris Kearney

Redacted

Dear Mr. Kearney

RE:    Policy H00493029 and H00538069

I am writing to inform you that the Jefferson Pilot Life Insurance Company has selected a third party administrator to handle your individual disability insurance claim.

Effective January 1, 2000, your claim will be handled by a representative of *Disability Management Services, Inc. ("DMS")* on behalf of Jefferson Pilot Life. *DMS* is well regarded for its experience in administering individual disability insurance claims. I am confident that *DMS* will provide you with professional, efficient service.

Please direct all future communications concerning your claim to:

> *Disability Management Services, Inc.*
> *i350 Main Street*
> *Springfield, MA 01103-1628*
>
> *Telephone: 1-800-883-0596*
> *FAX:        1-413-747-1545*

This change in claim administrator does not affect any rights you have under your policy nor does it affect any other services provided. Other service requests regarding your policy should continue to be directed to a Jefferson Pilot customer service representative at 1-800-487-1485 Ext. 4287.

Thank you for giving Jefferson Pilot the opportunity to serve your insurance and financial needs.

Sincerely

Phyllis J. Harden, HIA, ACS
Claims Analyst
IHI Claims - 5315

/pjh

# *DISABILITY MANAGEMENT SERVICES, INC.*
### *1350 MAIN STREET SPRINGFIELD, MASS. 01103-1619*
### *TEL: (413) 747-0990  FAX: (413)747-1545*

---

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| **TO:** Sharyn Balkcum | **FROM:** Bob Mills |
| **COMPANY:** Jefferson Pilot | **DATE:** JANUARY 5, 2000 |
| **FAX NUMBER:** 336-691-4254 | **TOTAL NO. OF PAGES INCLUDING COVER:** 5 |
| **PHONE NUMBER:** 336-691-4174 | **SENDER'S REFERENCE NUMBER:** H-493029 & H-538069 |
| **RE:** Christopher Kearney | **YOUR REFERENCE NUMBER:** |

**Confidential** . . . . . . . . . . . . . . . . . . . . . . . .

The documents accompanying this telecopy transmission contain information from Disability Management Services, Inc. which is confidential. The information is intended only for the use of the individual and/or entity named on this transmission sheet. Any copying, disclosure or dissemination of the information, or the taking of any action in reliance upon the contents of the information, is strictly prohibited. If you have received this telecopy in error, please notify us immediately so that we can arrange for the return of the documents at no cost to you. Thank you.

Comments:

> Please process benefit on both policies through 01/01/2000. Thanks.

3128

*d/b/a New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

# Disability Management Services, Inc.
### 1350 Main Street, Springfield, MA 01103-1619  Tel:(413)747-8990  Fax:(413)747-1545
#### A third party administrator for:
## Jefferson-Pilot Life Insurance Company

January 31, 2000

Christopher Kearney

   Redacted

Re: Policy Number/s: H-493029, H-538069

Dear Mr. Kearney,

As you know effective January 1, 2000, Disability Management Services, a third party administrator, will be handling your individual disability claim for Jefferson Pilot.

In reviewing your file, please be aware that we will need additional information from you and your physicians to further evaluate your claim for benefits. As such, please provide us with the following information:

1) Enclosed please find our standard Continuance of Disability claim form. You and your attending physician should complete this form in the appropriate areas prior to returning it to us.

2) Enclosed is an Authorization to Obtain Information form. Please sign and date this form prior to returning it to us.

3) So that we may have the documentation of your financial experiences, please send us complete copies of your 1996, 1997, 1998 & 1999 (when available) Personal Tax Returns #1040's including all schedules and W-2's. In addition, please include the Corporate Tax Returns #1120 for Kearney Associates and/or Kenwood Technology Group for the same years.

Please be aware that you will shortly receive under separate cover your disability checks paying benefits through February 1, 2000.

Should you have any questions, please do not hesitate to contact me. I look forward to working with you.

Very truly yours,

Robert F Mills
Claims Consultant

3123

d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a Centre Claims Administration Services in NH

(513) 321-2434 10 AM.

2/21 I rec'd a VM message from Christopher Kearney. He rec'd my letter and just wanted to let us know that his accountant was compiling this information.

KFL

11:30 AM

I call (I) back @ above #. I rec'd the recording for Kenwood Technology Group. LM for Mr. Kearney that (I) had rec'd his call.

KFL

3116

2/23    (513) 321-2434   2:15p-
Called Mr. Kenning    Answing Machine
for Kenwood Technology pulled up.
Left message for D Sunga that I
need the update address and
telephone # for Donna McClure.

RFM

He called back and left a vm message

3115

FROM :                    FAX NO. :                    Sep. 09 1999 08:02AM  P1

# FAX MESSAGE

Date:        Tuesday, March 14, 2000

To:          Disability Management Services, Inc.
             Mr. Robert Mills
             Phone:      800-883-0596
             Fax:        413-747-1545

From:        Kenwood Technology Group, Inc.
             Chris Kearney
             Phone:      513-321-2434
             Fax:        513-321-2293

Pages:       1

Subject:     Dr. McClure

I spoke with Dr. McClure yesterday- she is sending you info probably this week.  She has recently
moved and will have her current address and phone number.  She is quite busy at this time.

As I am, she is very concerned with the number of people contacting her and me concerning my
claim.  We are both concerned about the confidentiality of my situation Calls out of the blue from
your many investigative affiliates are bothersome to both of us.  Usually, we have no explanation
beforehand of who they are and what credentials each has.

She has recieved the letter from PMSI and will address that with Jefferson-Pilot directly.

I have my form ready to return- I am still waiting for my accountant to copy one of the eight
returns and W-2 you want.

Chris Kearney


PS: I recieved no word back from you concerning my phone message asking you how many other
agents we can expect to hear from concerning my case within the next year.  My mental state
right now is very agitated.

3090

**Disability Management Services, Inc.**
1350 Main Street, Springfield, MA 01103-1619  Tel:(413)747-0990  Fax:(413)747-1545
*A third party administrator for:*        Ext. 1076
**Jefferson-Pilot Life Insurance Company**

800 - 883 - 0596 (1076)

March 20, 2000

Christopher Kearney

Redacted

Re: Policy Number/s: H-493029, H-538069

Dear Mr. Kearney,

Thank you for your fax of March 14, 2000. Based on this fax, it is my understanding that Dr. McClure will sending us your updated medical records. This information should be sent directly to Disability Management Services or P.M.S.I. rather than to Jefferson Pilot. As I previously explained, Disability Management Services is now handling the administration of your claim for Jefferson Pilot.

I also realized you left a telephone message on February 23, 2000 addressing the concerns you have about company representatives contacting you and your treating providers. Please understand that it is our obligation to obtain objective information in order to properly evaluate your claim for benefits. As such, given that you are making a claim each month for the benefits under the policy, we will require, from time to time, information directly from you and from those treating providers certifying your disability. Notwithstanding, this information is required under the Proof of Loss provision of your policy and is necessary to assist us in making the determination regarding your ongoing eligibility for benefits.

In light of the above, we are hopeful that you and Dr. McClure or any other physician will continue to cooperate with each and every company representative. Please feel free to call me in the future concerning the credentials and confirmation of any individual who may contact you in regards to your claim.

In the interim, should you have any have any further questions or concerns on this matter, please do not hesitate to contact me directly at 1-800-883-0596 ext. 1119.

Very truly yours,

Robert F Mills
Claims Consultant

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

3089

9345764F

## Donna Judd-McClure, Ph.D.
*Clinical Psychologist*

| |
|---|
| 26700 Goose Creek Rd. |
| McArthur, OH 45651-8984 |
| Phone: 1-740-596-3823 |

March 25, 2000

In reply to:PMSI request #034576F-01

Ms. Candra Steen
PMSI
PO Box 2666
Waco, Texas 76702-2666

Dear Ms. Steen:

This letter is written in reply to your request for information on the current mental status of Mr. Christopher Kearney, DOB: 11/9/52. I do have some professional concerns about the nature of your request and your manner of contact. First, I do not know who is PMSI? What are the credentials of the individuals who might be reviewing information on Mr. Kearney? Why do you request this material?

As I assume your are aware (?) of my meeting with Ms. Janet Beattie ,MS. CRC, CIRS with a group known as PSYCHIATRIC DISABILITY CONSULTANTS, INC. I met with Ms. Beattie on April 25, 1998. This placed my client in a difficult position as my fees are greater for individual consultations with other professionals and my forensic fees are much higher. As you know Mr. Kearney lives on a modified budget since he has been unable to assume full employment as a manufactures representative.

During my conversation with Ms. Beattie I shared an updated mutiaxial diagnosis, treatment plans and a list of therapeutic goals and interventions. Following this consultation Ms. Beattie wrote a report with specific recommendations to Mr. Kearney's insurance company: Jefferson Pilot.

My present concern is that if Jerfferson Pilot has concerns about Mr. Kearney's mental status they may proceed with their own format. My duty is to protect the confidential nature of therapy sessions with Mr. Kearney. Your company of "experts" is now requesting that I send all materials on Mr. Kearney to them. Well I ask again, who are you? This whole situation from my observation is being addressed in an unprofessional manner. What is your companys relationship with Jefferson Pilot? Is this a long standing business relationship? Who monitors the quality assurance of your company?

The number of individuals in various states across the country that are involved in Mr. Kearney's case is creating an environment wherein confidenitality cannot be maintained. It is important to maintain a working relationship with my client, an environment of trust. I do not believe it is in my client's best interest to share his present adjustment with so many individuals. In fact, there was no witness signature on the request for release of information? Just how many companies are involved in this and how many request for information will be required? It is my professional opinion that the Jefferson Pilot Insurance Company can request further evaluation of Mr. Kearney. In fact, what is it that the Jefferson Pilot Insurance Company does want? I will contact Jefferson Pilot Insurance Company to assess their specific number of contractors, fees, qualifications and quality of professional contracts.

If my client chooses to meet with your representative in Ohio or if Jefferson Pilot contracts

3087

with an Ohio practioner I will be glad to cooperate in this request of information. Mr. Kearney would still have to give his permission before this could occur.. I have forensic experience and presently am working in a State system where numerous request of release of information are made. We follow a professional format in releasing materials.

You may contact me at the above address or by phone: 1-740-965-3823 in Ohio. Please refrain from sending materials and requests to my present State job site. I am working for the State and my time is used for state work only.

My limited private practice office is not yet fully equipped for operation. When this is arranged, I will alert Jefferson Pilot Insurance Company of this fact.

Thank you for your request. I need to alert you to my concern for my client. It would probably be good for Jefferson Pilot to use personal contacts in Ohio for these type of requests.

Sincerely:

Donna P. Judd-McClure, Ph.D.
Ohio Psychologist

cc: Mr. Christopher Kearney
    Jefferson Pilot Insurance Company, PO Box21008, Greensboro, N. C. 27420
    Thompson, Hine and Flory LLP, 10 W. Broad . Columbus, Ohio 43062

3088

Saturday, March 25, 2000

Robert Mills
Disability Management Services, Inc.
1350 Main St.
Springfield, MA  01103-1628



RE: Policy #H-493029, H-538069, Request for additional information per letter of 1-31-2000

Mr. Mills:

Enclosed is:

1) Continuance of disability form- filled out by myself and my doctor.

2) US Corp. Return, Form 1120 with all schedules for years (1996) and (1997) for Kearney Associates, Inc.  1997 was final year and final return.

3) Christopher L. Kearney, Form 1040, US Indiv. Tax Returns for years 1996, 1997, 1998 with W-2 copies attached.  Copy of 1999 will be copied and forwarded when completed.

4) Kenwood Technology Group, Inc. W-2 to Christopher L. Kearney for 1999.

Not included:

1) Kenwood Technology Group, Inc. 1998 (first year of corp.)  1120 was completed and sent to IRS, copy has been requested from my Accountant.  1999 is not completed.

2) Disability Management Services, Inc. Authorization to Obtain Information: I will discuss this my attorney.  Among other things, you are asking now for authorization to collect information which is none of your business- specifically "any other non-medical information" from a broad range of people and companies.

Also, I noticed that you are asking for another statement filled out and signed by my doctor.  Okay, but the amount of information and the phone calls from your investigative agents are very bothersome and time consuming in addition to being unprofessional.  She has also heard from another investigative agency, called PMSI, and been asked to fill out additional information.  Who are they? They claim they do not have her phone number but your other investigator called her several times- what gives?  This confusion on your part leads me to think that it is quite possible for my new business to be ruined by intentionally or unintentionally questioning business contacts about my personal health.  Also, personal relationships can be ruined.

If I am dropped as a patient, or my rates are jacked up, from either of my doctors because of the excessive phone calls, information questionaires, requests for meetings, etc. from Jefferson-Pilot, you will be notified by my attorney.

I think that you are trying to interfere with my treatment by harassing my doctors.  I think that you are hurting my condition by this action.  It may be your intent to get me exasperated and kill myself so that your company and Jefferson Pilot can drop me from your list of payees, and thus make your multi-billion dollar bottom line better by a millionth of a percent.

I have been visited without notice by International Claims Specialists Company (one of Jefferson Pilots detective agencies) in December 1999.  I met in my home (also my office) for almost an hour with

3102

Michael Conlon.  I answered all his questions in detail including my day to day activities and showed him my office area and some examples of my work.

Now you are asking me to repeat that info again in addition to the monthly statements I send in which have similar questions.

In addition, I realize from a conversation with Ms. Harden at Jefferson-Pilot that you are probably following me around with another detective.  I asked Ms. Harden what he does, and she replied: "He will monitor your activities, follow you to the store, and follow you to Church and sit with you."  She says I am not being singled out but I don't believe her.

I believe that I am being harrassed because I have a psychological illness and you think all your requests and the threat of withholding checks will cause me to somehow (dead or alive) to withdraw my lawful claim per my policies.

Your policies state you may seek reasonable proof of my income and health.  You have gone much further.

As you have before, I suspect you will have some accountant investigator call me and ask to spend a week or two in my office going over all my business.

My usage of Xanex in the last few months has increased.  I thought I was making some progress in dealing with my situation but I feel worse than ever and working full-time does not seem attainable.

Sincerely,

Chris Kearney

P.S.  Please don't call me - send a letter if you need to contact me.

cc: Stephan J. Patsfall, Patsfall, Yeager & Pflum LLC

3103

FROM :                          FAX NO.  :                    Sep. 26 1999 12:28AM  P1

# FAX MESSAGE

Date:        Friday, March 31, 2000

To:          Disability Management Services, Inc.
             Robert Mills
             Phone:      800-883-0596
             Fax:        413-747-1545

From:        Chris Kearney
             Phone:      513-321-2434
             Fax:        513-321-2293

Pages:       1

Subject:     Your letter of 3-20-2000

Mr. Mills:

I received your letter- thank you.  Thank you for responding to my phone message of 2-23-2000 and my further request by fax of 3-14-2000.

I have advised Dr. McClure to respond to PMSI, which she will by letter.  As I do, she has questions concerning the purpose and need for all of my records and the confidentiality to sensitive issues of my health.  My doctors and I will continue to respond to reasonable requests submitted but will continue to question unnecessary, unethical, or repetitive requests which are not reasonable.

Yes, you did tell me that Disability Management Services is now handling the administration of my claim with Jefferson Pilot.  I received a letter from Phyllis Harden of Jefferson Pilot in December, 1999 and also a letter from Disability Management Services in January, 2000.

Not explained at all by either letter and causing me immediate concern at that time:
1) Who will be sending out the checks?
2) Was my claim for December being processed or would there be a delay?  ( I had rent due)
3) Were the forms going to change for claims? Where would the forms come from?

I called Ms. Phyllis Harden, at Jefferson Pilot, on three occasions in December and left messages for her to clarify this with me as well as answer questions about the agent following me around. She did not return my phone calls then or since.  This is another reason I feel that my claim is not being handled in a professional manner.

On 1-5-2000, not having any word or check from Jefferson Pilot, I called Disability Management

3092

and talked to Jim Brock. He could not answer this question as (according to him) the takeover of these claim management duties from Jefferson Pilot was very new. He told me to call back at a later date. I was worried about explaining my poor cash situation to my landlord.

I subsequently received my checks on 1-10-2000 and new claim forms from Jefferson Pilot– it eased my mind but an explanation a few weeks earlier would have helped me avoid alot of unnecessary anxiety.

I assume now that I will continue to get the same forms from Jefferson Pilot, which are two pages in length, signed by my doctor certifying my disability, signed by me, and signed by my company which in this case is my signature, with my monthly wages.

In your letter of 3-20-2000, you are saying that "from time to time" you will require information directly from me and my treatment providers. **I give you that information each month already.**

Regarding the Proof of Loss provision in my policy; I have read this wording in my policy. In what other form do you need a proof of loss? I assume that refers to my proof of income loss and not to my proof of health loss, am I correct? My monthly statement signed by my company and later confirmed by tax returns should be the "reasonable proof" as stated in the contract.

By now you should have almost all of the tax returns you requested- and these substantiate my monthly claim forms. This is surely reasonable proof of income as stated in the policy. If you request something else, please notify me and I will discuss with my attorney and respond.

3093

### Disability Management Services, Inc.
1350 Main Street, Springfield, MA 01103-1619  Tel:(413)747-0990  Fax:(413)747-1545
#### A third party administrator for:
### Jefferson-Pilot Life Insurance Company

May 9, 2000

Donna Judd-McClure, Ph.D.
26700 Goose Creek Rd.
McArthur, OH  45651-8984

Re:   **Christopher Kearney**
        Policy Number/s: H-493029, H-538069

Dear Dr. Judd-McClure,

As you may be aware, Jefferson Pilot has selected Disability Management Services, Inc.
(DMS), a third-party administrator, to handle the administration of its disability claims
effective January 1, 2000.  Accordingly, Jefferson Pilot has asked that all
communications be directed to Disability Management Services.

PMSI, Inc. has provided us with you March 25, 2000 letter.  Please understand that PMSI
is the vendor that has been selected to gather medical records for Jefferson Pilot. PMSI is
contracted by several Disability Insurance carriers in the industry to obtain medical
records.

I am unfamiliar with the format concerning the release of information that you described
in your letter.  Please understand that it is customary to have various vendors, acting as a
representative of the insurance company, to request information given the authorization
provided by the insured.  I trust the enclosed authorization form completed and dated by
Mr. Kearney on March 1, 2000 is self-explanatory and will alleviate any concerns that
you have expressed. We would therefore appreciate your cooperation in providing us
with a complete copy of Mr. Kearney's medical records.  In an effort to expedite our
receipt of these records, you may forward them to my attention.  Please rest assured that
we understand the sensitivity of this information, and accordingly, it will remain a part of
Mr. Kearney's claim file and will be reviewed by a clinical psychologist for the sole
purpose of determining his ongoing eligibility for benefits.

As you have stated, Jefferson Pilot does have the contractual right to have Mr. Kearney
attend an independent medical examination as often as it may reasonably require.
However, it would be premature to consider such an examination at this time without
having a full disclosure and opportunity to review Mr. Kearney's medical records.

d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a Centra Claims Administration Services in NH

3080

We realize that your time is valuable and would be willing to compensate you for a reasonable fee. Please feel free to provide us with an invoice for your time. Should you have any additional questions or concerns regarding this matter, I can be reached directly at 1-800-883-0596 ext. 1119.

Very truly yours,

Robert F Mills
Claims Consultant

d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a Centre Claims Administration Services in NH

5/19

Chris Kennemy called.
He only rec'd a payment last month on
pol. 493027. It appears that we inadvertantly
omitted payment on Pol # 538069. I will
go ahead and authorize today. His
next payment is scheduled for both policies
on 5/25. We spoke about his
claim and some of the issues.
I told him a response was sent to
his physician.

RFN

3078

FROM :                           FAX NO. :              `              Nov. 27 1999 05:52AM  P1

# FAX MESSAGE

| | |
|---|---|
| Date: | Thursday, June 01, 2000 |
| To: | Disability Management Services, Inc. |
| | Robert Mills |
| | Phone:    800-883-0596 |
| | Fax:       413-747-1545 |
| From: | Chris Kearney |
| | Phone:    513-321-2434 |
| | Fax:       513-321-2293 |
| Pages: | 1 |

Subject:    Claim Forms

Mr. Mills:

I received both checks today from Jefferson Pilot- thank you.  I have not received any claim forms in the last month or so.

Could you forward at least two to me ASAP?

Thank You.

*Chris Kearney*

3077

## Disability Management Services, Inc.
### 1350 Main Street, Springfield, MA 01103-1619  Tel:(413)747-0990  Fax:(413)747-1545
#### A third party administrator for:
## Jefferson-Pilot Life Insurance Company

June 5, 2000

Christopher Kearney

Redacted

Re: Policy Number/s: H-493029, H-538069

Dear Mr. Kearney,

I have received your fax dated June 1, 2000.

Please be aware that we did not ask for you to complete a claim form last month. You will receive the next Continuance of Disability form with your benefit checks to be issued during the last week of June.

As we discussed in our telephone conversation of May 19, 2000, I have responded to Dr. Judd-McClure's March 25, 2000 letter. This should alleviate any concerns that she and you may have. Jefferson Pilot would therefore appreciate you authorizing Dr. Judd-McClure to release a full and complete copy of your medical records. As I explained, this information is essential in order to review your ongoing eligibility for benefits.

So that we may obtain an updated Authorization for our files, please be sure to sign and date the enclosed Authorization to Obtain Information form prior to returning it to this office.

As always, please do not hesitate to contact me should you have any questions.

Very truly yours,

Robert F Mills
Claims Consultant

d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a Centre Claims Administration Services in NH

3076

# FAX MESSAGE

**Date:**      Monday, July 03, 2000

**To:**        Disability Management Services, Inc.
             Robert Mills
             Phone:      800-883-0596
             Fax:        413-747-1545

**From:**      Chris Kearney              *J. P. Claim*
             Phone:      513-321-2434
             Fax:        513-321-2293

**Pages:**     1

**Subject:**      Cost of Living increase in Checks

Mr. Mills:

I received the two checks for June, 2000.  There should have been a 7% cost of living increase at some point in the last two months.  Usually, I don't have to ask for it- it is updated automatically.

Please check into.  Thank you.

Also, I received your letter and form.  I will be responding back to you within a couple of weeks. I have some concerns as I previously stated in a letter to you a few months back.

3069

FROM :                         FAX NO. :                    Jan. 23 2000 12:59AM  P1

# FAX MESSAGE

| | |
|---|---|
| Date: | Friday, July 28, 2000 |
| To: | Disability Management Services, Inc.<br>Robert Mills<br>Phone:    800-883-0596<br>Fax:      413-747-1545 |
| From: | Kenwood Technology Group, Inc.<br>Chris Kearney<br>Phone:    513-321-2434<br>Fax:      513-321-2293 |
| Pages: | 3 |

Subject:    Continuance of Disability Form

Mr. Mills:

Following is the completed form requested. I will put the original in the mail today.

1. Did you check out the increase in benefits which should be due per my fax of 7-3-2000?

2. I am writing another letter and explaining again my concerns about the consent form you sent me.

Thank you,

Chris Kearney

Christopher Kearney

Redacted

3424

# Disability Management Services, Inc.

*1350 Main Street. Springfield, MA 01103-1619  Tel:(413)747-0990  Fax:(413)747-1545*
*A third party administrator for:*

## Jefferson-Pilot Life Insurance Company

August 11, 2000

Christopher Kearney

Redacted

Re: Policy Number/s: H-493029, H-538069

Dear Mr. Kearney,

Thank you for your letters of July 3, 2000 and July 28, 2000.

Under separate cover, you should receive two checks reflecting the increase under the cost of living adjustment (COLA) rider for both of your policies that became effective on May 6, 2000. I apologize for this oversight.

As of this writing, please be aware that Dr. Judd-McClure has yet to provide us with a complete copy of your medical records. We would again appreciate your assistance in facilitating our receipt of your medical records. As previously explained, this documentation is essential to the review of your ongoing eligibility for disability benefits.

In my June 5, 2000 letter, I also provided you with an Authorization To Obtain Information form. Please be sure to sign and date this form prior to returning it to this office. For the convenience of your reply, enclosed please find a duplicate authorization form.

Please do not hesitate to contact me directly at 1-800-883-0596 ext. 1119 should you have any questions.

Very truly yours,

Robert F Mills
Claims Consultant

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

3064

# FAX MESSAGE

Date:      Saturday, August 19, 2000

To:        Disability Management Services, Inc.
           Robert Mills
           Phone:     800-883-0596
           Fax:       413-747-1545

From:      Chris Kearney
           Phone:     513-321-2434
           Fax:       513-321-2293

Pages:     2

Subject:   Letter from me to you of August 19, 2000

Mr. Mills:

The following letter is being sent out today to you in the mail.


Thank you,

Chris Kearney


                              Christopher Kearney

                                  Redacted

Saturday, August 19, 2000

Robert F Mills, Claims Consultant
Disability Management Services, Inc.
1350 Main St.
Springfield, MA 01103-1628

Re: Policy Numbers: H-493029, H-538069

Mr. Mills:

Thank you for your letter of August 11, 2000.

I have received the checks you referenced, thank you. I am still puzzled as to why they were not included in the previous checks as in past years. It appears that this no longer is an automatic change.

With the missing checks, late checks, lack of response concerning the changed claim forms, and other "oversights" and requests since Disability Management Services started handling this claim, it is clear to me that these hassles are intended to make it more difficult and frustrating for me to deal with Jefferson-Pilot Insurance Co. concerning the subject policies I have purchased.

Regarding the Authorization To Obtain Information form: As I wrote in my letter of March 25, 2000, these phrases in the first paragraph are not acceptable to me: "any other person..." and the phrase, "and any other non-medical information..."

Mr. Mills, there is a distinct stigma attached to the condition of depression and other mental disorders. Personally, I feel that I have lost the respect of some friends and family members by discussing any of my problems in the area of depression. I feel that my condition may be talked about behind my back and not understood by those who have not experienced it. This further increases my anxiety.

Further, most people do not understand the term "residual disability" and think of all disability as "total disability." Seeing that I am working, people may assume that I am doing something wrong. I have made a decision that it does not do any good to talk with others except my doctors about my situation.

Your "Authorization to Obtain Information" is so broad that it includes friends, neighbors, family, present and former business associates, customers, employees, etc. I will not give my consent for you to discuss anything with them. If you choose to do this regardless, it is not with my consent.

Also, I would ask that you include the following wording in your consent form:

1.    Under the paragraph "Agreement and Acknowledgment"

        "Jefferson Pilot Insurance Company agrees to furnish me with copies of any and all information that they obtain pursuant to this authorization without charge to me.:"

2.    "Jefferson Pilot Life Insurance Company agrees that they will not have any personal contact with any medical provider to whom they provide this authorization without first obtaining written consent from me to undertake that personal contact and/or will include me in any conversations with the medical provider."

For a number of years, I have signed the Authorization Form for Jefferson Pilot on their forms which is not so broad and potentially intrusive to my privacy. Why do you now ask me to sign much more broad forms?

As you request, I will talk to Dr. McClure on my next visit about the medical records issue.

Sincerely,

Chris Kearney

3061

8/23/00

Disability Management Services, Inc.
1350 Main St.
Springfield, MA 01103


Mr. Robert F. Mills
Claim Consultant
Disability Management Services, Inc.


Dear Mr. Mills:

This letter is in response to your letter to me of 8/2/2000.

Although I still have deep concerns about the nature of your request and the confidentiality of my patients records, I have begun preparation of sending records as you requested.

I will address in the future a letter to your company and partner companies about my specific concerns. Your letters to me did not indicate a formal quality control policy utilized by your company and partner companies for the handling and processing of highly sensitive records.

8/23/00

My fee for the services you have requested is $250.00 per hour. The cost includes review, assimulation and reproduction of records. The earlier records of my client are stored. My approximation of total time is 50 hours.

As is my usual practice I am requesting a good faith payment of $1000.00 in advance, prior to sending the records. The balance to be paid within 10 days of reception of my final bill.

Please respond to me your acceptance of these terms, as soon as possible. I will continue processing materials until I receive your reply.

Sincerly,
Donna P. McClure

**Disability Management Services, Inc.**
1350 Main Street, Springfield, MA 01103-1619  Tel:(413)747-0990  Fax:(413)747-1545
*A third party administrator for:*
**Jefferson-Pilot Life Insurance Company**

September 7, 2000

Donna Judd-McClure, Ph.D.
26700 Goose Creek Rd.
McArthur, OH  45651-8984

Re:  *Christopher Kearney*
     Policy Number/s: H-493029, H-538069

Dear Dr. Judd-McClure,

Thank you for your August 23, 2000.

As you can imagine, the disability assessment process is complex and requires the insurer
to assimilate and evaluate various forms of information.  The review of a claimant's
medical records is critical to the decision making process.  Moreover, Jefferson Pilot has
the right to complete disclosure of information necessary in order to further review the
claim.

I must reiterate that we do understand the sensitivity of this information.  As explained,
these records will remain a part of Mr. Kearney's claim file for the sole purpose of
determining his ongoing eligibility for benefits, and will be reviewed by a clinical
psychologist.

In speaking with the psychologist in this office, it is my understanding that your fee
request is extraordinary.  Your hourly rate for services would seem to be an appropriate
charge for consultation work.  However, at this time, we are just looking for you to
provide us with copies of medical records.  In an effort to assist you and expedite our
receipt of the records, we would be willing to coordinate a local copying service to copy
these records at no charge to you.

Please advise us as to how you would like for us to proceed.  We would appreciate your
response in the next (2) weeks.  We will await your response prior to discussing this
matter further with Jefferson Pilot.

Please do not hesitate to contact me directly at 1-800-883-0596 ext. 1119.

Very truly yours,

Robert F Mills
Claims Consultant

d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a Centre Claims Administration Services in NH

3056

**Linda Bey**

| | |
|---|---|
| **From:** | Robert Mills |
| **Sent:** | Tuesday, September 19, 2000 2:08 PM |
| **To:** | William Hughes |
| **Subject:** | Kearney |

Bill,

Attached is a copy of the letter I created to be sent under your name. I left a printed copy on your desk along with copies from the file. Let me know if you want the complete file. Thanks! B.



kearney1.doc

**Document 28**

1

EXHIBIT     1
Mills
5-3-07
S. ROY, RPR

**Disability Management Services, Inc.**
1350 Main Street, Springfield, MA 01103-1619  Tel:(413)747-0990  Fax:(413)747-1545
*A third party administrator for:*
**Jefferson-Pilot Life Insurance Company**


January 18, 2007


Christopher Kearney

    Redacted


Re: Policy Number/s: H-493029, H-538069

Dear Mr. Kearney,

Thank you for your letter dated August 19, 2000.  Your file has been referred to my attention for review.  This letter will provide you with the status of your claim for benefits with Jefferson Pilot.

You are eligible for disability benefits under the above referenced policies in the event that a <u>sickness or accident</u> results in a Residual Disability.  Accordingly, we must obtain a complete and thorough understanding of your occupational duties.  In order to be able to evaluate whether your are incapable of performing your occupational duties because of a medical condition, it is essential that <u>you</u> provide us with the objective information to substantiate your claim as stipulated by the "proof of loss" provision under your policies.  This would include, but is not limited to, copies of your medical records and the documentation of your occupational duties.

You have indicated at the onset of your claim that your occupation was that of a Manufacturer's Agent representing several industrial companies in the sales of component parts.  As you know, in an effort to assist you in providing proof of loss, Jefferson Pilot has requested that you provide them with a listing of your clients that you dealt with prior to your claim and those clients that you continue to serve. Jefferson Pilot had offered to conduct a Financial Audit, at its expense, to help document the work you were performing.  Ultimately, you have refused to cooperate in the attempts to secure objective documentation of your occupational duties.

Notwithstanding the above, you have asserted that your business losses were due to your health condition and not being able to spend as much time working as you did previous to your condition.  As previously discussed with you, the information gathered to date suggests that you had lost several business clients and that your business was down substantially leading up towards the filing of your claim for benefits.  It is also suggested that you made the decision to reduce your business travel.  Although you have contended

d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a Centre Claims Administration Services in NH

that this was due in part to your medical condition, you have never provided the required proof of loss as stipulated by the contract and have blocked Jefferson Pilot's attempts to gathered this information which is their right and obligation.

Jefferson Pilot also has concerns over your apparent ability to start a new business during the period in which you are claiming benefits. Jefferson Pilot questions whether the losses you have incurred are caused by the normal progression of starting a new business, rather than related to any medical condition. Furthermore, the occupational duties you are performing at Kenwood Technology Group are seemingly similar to those occupational duties you were performing at the onset of your claim for Kearney & Associates. Again, you have never provided us with objective documentation of your current work and have restricted our attempts to investigate this matter and gather information by altering or refusing to complete Authorizations forms.

Jefferson Pilot has continuously made disability payments to you without you providing the appropriate "proof of loss" as required by your contracts. As a gesture of good will, Jefferson Pilot has agreed to issue you another month of benefits under separate cover representing benefits for September of 2000. Thereafter, please let this letter serve notice that any further benefits are contingent upon you furnishing the following information.

- A complete listing of your clients that you dealt with at Kearney & Associates prior to and after the filing of your claim.

- A complete listing of those clients you are currently working with as part of your job with Kenwood Technology Group.

- A complete copy of your medical records from Dr. Donna Judd-McClure. As previously stated, we have an on-staff psychiatrist to review these records.

Please be advised that Jefferson Pilot is reserving its right to consider a Financial Audit and any other information it should find necessary after obtaining the above materials.

I hope that this letter will convince you that the company's request for documentation is solely based upon the expressed provisions of the contract. Jefferson Pilot has the right to complete and accurate disclosure of information during the evaluation process. While it remains uncertain as to what, if any, impact this above requested information could have on your claim, it is the company's position that such requests are reasonable and indeed relevant to the claims evaluation process, and generally allowed by courts in furtherance of the company's rights and obligation to investigate and monitor claims.

Please do not hesitate to contact me directly at 1-800-883-0596 ext. 1134 should you have any questions regarding this matter.

Very truly yours,

William Hughes
"Claims God"

d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a Centre Claims Administration Services in NH

DMSESUPP 0070

### *Disability Management Services, Inc.*
*1350 Main Street, Springfield, MA 01103-1619  Tel:(413)747-0990  Fax:(413)747-1545*
*A third party administrator for:*
### *Jefferson-Pilot Life Insurance Company*

<u>Sent by fax (513) 321-2293</u>
<u>& U.S. Mail</u>

October 2, 2000

```
┌─────────────────────────┐
│ EXHIBIT  45             │
│                         │
│ DATE _____        │
│ S. ROY, RPR             │
└─────────────────────────┘
```

Christopher Kearney

Redacted

Re:  Policy Number/s: H-493029, H-538069

Dear Mr. Kearney,

I have been asked to assist in the evaluation of your claim for ongoing disability benefits. Accordingly, to have a full understanding of your situation, I have reviewed your policy and your claim file. The following is a summary of that review, and an outline of the documentation and information we will need in order to determine further benefit eligibility.

As you may know, the above policies provide benefits when disability either completely prevents someone from working (Total Disability), or limits their ability to work such that they suffer a loss of earnings (Residual Disability). As you also may know, under the Proofs Of Loss provision, the insured is required to furnish evidence of benefit eligibility within these parameters.

On review of your file, it appears that you have been claiming that your back and emotional problems have caused you to be "unable to work as long in the office or make as many sales calls". It further appears that you are claiming that those limitations caused you to lose most of the main income-producing principals (eight out of ten) that you had prior to disability, which resulted in you losing income. However, on review of your file, I am unable to find any evidence that you have presented that might prove that the loss of your principles was related to your disability. As stated above, under the Proofs Of Loss provision, you are required to furnish such proof. In addition to not supplying the required proof, you have prevented the company from independently verifying your claim that your loss of those principles was related to your disability.

Making the above somewhat more troublesome, is that the evidence we presently have suggests that you may <u>not</u> have reduced your travelling commensurate with your medical difficulties (your tax returns reflect that your travel expenses almost quadrupled from

*d/b/a:  New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

3053

$6212 in1992, the year before your disability started, to $23,318 and $22,940 in 1995 and 1996, respectively), and that you may have lost some principles for reasons unrelated to disability (it appears that you had issues with some principles related to control of the product, the customer, and the territory, and having to kowtow to their demands. This came up in your meeting with our consultant).

In addition to the above, a CPA review of the tax returns and other financial documents submitted, raised some further questions. Although your gross revenues were down 36% in 1993, as compared to your predisability 1992 gross revenues, by 1995 your gross revenues were down only 9% as compared to 1992.Yet, your total earned income for the years 1993-1995 remained at a fairly constant 63-69% loss as compared to your 1992 earned income (Your total earned income in 1992 was $107,053, and in the years 1993,94, and 95 it was $39,367, $33,325, and $37,285, respectively) It appears that your expenses increased during that time frame, which would explain the reduction in net earnings, but the increase in expenses is hard to understand given your claimed reduction in work activity.

It is likewise hard to understand that, during the first four years of your disability when you claimed to be working on a substantially reduced basis especially with respect to traveling, that your Meal and Entertainment expenses steadily increased from $8,339 in 1992 to $9,723 in 1996.  The increase in your Meal and Entertainment expenses would seem to be inconsistent with your claimed reduction of work and would appear to be more consistent with someone working harder to make up for lost accounts.

The company previously attempted to obtain information from you that would answer these and other financial questions but, as you know, in addition to preventing them from talking to your principles, you have also thus far refused to allow the company to examine your financial records.

Finally, all of the above may actually be somewhat irrelevant in determining ongoing benefit eligibility at this juncture (it's not irrelevant in reviewing eligibility for benefits already paid), as it appears you closed your old business and opened a new one. Therefore, any income you are now losing with respect to your old business is entirely attributable to the fact that you ceased operations of that enterprise, rather than being attributable to disability. As you know, the policy only provides benefits when the loss is due to disability. And, since there is little evidence in the file that you are suffering a disability–related loss of earnings with respect to your new company, the amount of any ongoing benefit eligibility is even more unclear. (This issue is not to be confused with the 5-year "Own Occupation" period issue, which is completely unrelated.).

In order to fully address all of the above, and properly evaluate your claim, we will need the following items from you within the next 30 days:

1) Copies of your personal and business Federal Income Tax Returns, with all schedules and attachments, for 1998 and 1999.
2) Copies of your 1099's including the summary page (1096) for commissions paid in 1992 ($32,782) and 1994 ($31,800).

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

3054

3) Documentation of your salary expense in 1995 ($54,846) and 1996 ($63,003) i.e. W-2/W-3 forms.
4) The enclosed Description of Occupation form, fully completed by you and signed and dated.
5) Copies of any and all agreements or contracts you had in place with any principles, customers, or clients since 1991.
6) The full name and address of your main contact, supervisor, or customer at each of the above companies.
7) The enclosed general authorization signed and dated by you and returned to us unedited.
8) Backup documentation for all expenses (cancelled checks, invoices, bank statements, etc.) noted on your business Federal Income Tax Returns, from 1991 to the present
9) The enclosed special authorization signed and dated by you, directing Dr. Donna Judd-McClure to release all of your medical records to us.
10) Monthly itemizations of gross revenues, expenses, and net income to you from 1/1/00 to the present. (Please include full backup documentation for all expenses)

While we await the above materials, the company has agreed to issue an additional benefit payment in the interest of good will. Under the circumstances, this payment is necessarily issued with a full "Reservation of Rights".

We look forward to hearing from you in the near future. If you have any questions, please call me at 1-800-883-0596 ext. 1134.

Sincerely,

William Hughes
Vice President/Claim Operations

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

3055

# FAX MESSAGE

*Hughes
10/2/00 ltr.
reserve rights*

**Date:**          Wednesday, October 25, 2000

**To:**            Disability Management Services, Inc.
                   Mr. William Hughes
                   Phone:      800-883-0596
                   Fax:        413-747-1545

*FAXED PM
4:50
10-25-00*

**From:**          Chris Kearney
                   Phone:      513-321-2434
                   Fax:        513-321-2293

*COPY*

**Pages:**         Total of 5

**Subject:**       Following letter of 10-25-00 in response to your letter of 10-02-00

I will be mailing this letter and the tax return to your attention.  I have faxed it to you along with
my 1999 federal personal income tax return.

*1999*

*len ?
swd.
new review
I he*

**CHRISTOPHER L. KEARNEY**

Redacted

Mr. William Hughes                                                                    October 25, 2000
Vice President/Claims Operations
Disability Management Services, Inc.
1350 Main Street
Springfield, MA 01103-1619

RE:      Jefferson-Pilot Policy Numbers: H-493029, H-538069

Dear Mr. Hughes:

   1) After reviewing your letter on the 5th of October, I have made a time consuming and
      exhaustive search of my records and previous correspondence to and from Jefferson-Pilot
      and those acting on its behalf.

   2) I have responded to all inquiries and letters and my files can prove this point. I cannot
      say the same for DMS as many policy questions have been ignored and not responded to.
      I have seen in some legal articles the term "silent misrepresentation", which I have been
      dealing with with DMS. This is in addition to other types of harassment and intimidation
      over the years attempting to induce me into ending my valid claim.  More specifically, I
      have provided tax returns of Kearney Associates, Inc. from 1992 through 1997 when it
      went out of business, my personal returns from 1991 through 1998 and enclose the 1999
      return which has only recently been finalized. In addition to providing monthly proof of
      loss claims, I have been subjected to two lengthy interviews, one of which consumed
      three and one-half hours with Dr. Judd present for about two hours. This interview was
      summarized in a memo of Janet Beattie of Psychiatric Disability Consultants, Inc. dated
      April 25, 1998. In that summary, Dr. Judd was acknowledged as advising Ms. Beattie
      that I have been unable "to make it in a sales environment". She went on to mention that
      Dr. Judd and I were "very forthright" in our responses. I have also completed and
      returned in timely fashion all proofs of loss claim forms which are the only specific
      requirement in my policy for receiving benefits.

   3) When I purchased the first of the two subject policies from Jefferson-Pilot in 1990, I was
      strongly influenced by the representations of the salesman that the policy would cover my
      valid claims for illness and injury that might occur in my career and disrupt my income.
      His proposal also stated "unfortunately, you cannot control when a disability will strike
      or how long it will continue" and, further, that "no additional financial information is
      required."  My application at that time included my personal earnings from the prior
      years as shown on my federal tax returns. No questions were asked about the business I
      own, the expenses or revenues, nor names of customers or principals. I was assured by
      the salesman that my IRS personal returns as well as my doctors' statements would be
      clear proof of loss. I was assured that Jefferson-Pilot would not be intruding into my
      business as the policy is a personal policy.

   4) It was very clear that Jefferson-Pilot was eager to have my check and the monthly
      premiums payments thereafter. The premiums are more expensive than premiums
      proposed from other insurance companies but your agents convinced me that the
      Jefferson-Pilot Policy was the very best investment I could make "to insure your most
      valuable asset – your ability to earn an income."

3047

5) I would appreciate a delineation of your basis for requesting the additional information. Jefferson-Pilot has been extremely inconsistent in any demands for my personal returns. I have complied, to be safe, even though I believe that you have waived this right if you ever had this right in the first place. My policies state "Jefferson-Pilot may require you to present reasonable proof of your Current Monthly Income and your prior Monthly Income." Please note that it says "reasonable". My personal tax returns and W-2s are certainly "reasonable". The policy says nothing of being required to submit to company audits or sending in Corporate Documents of any kind. Furthermore, Corporate Documents were not needed to buy the policy in the first place.

6) The expense issue you referred to is simple. I did not increase my travel. I hired other salespeople to help since I could not do that which was necessary. Their travel expenses and mine are reflected in the figures you question as well as the wages you question. I have already addressed this issue in my letter of January 13, 1998 to Mr. Shelton.

7) My questions and concerns sent to your office this year by fax and letter have been largely ignored and unanswered. As you have recently gone through my files, please ask Mr. Mills to answer my questions posed in my letters and faxes of this year, immediately. Also, he did not have the courtesy to respond to my question of "proof of loss".

8) In addition to the above, I would like for you to please delineate the basis upon which your not-so veiled threat of withholding benefit checks is based.

9) The "Occupation Duties Form" forwarded to me referenced both "immediately prior to disability" and "currently". Would you be kind enough to advise for which period you are making inquiry? As you would be aware if you were to review the file, my duties and activities prior to my disability were almost exclusively sales and their related activities wherein now a sales environment is extremely difficult for me. In December of 1999 an investigator from International Claims interviewed me extensively regarding my occupational duties and activities and there has been little or no change since that time. I am sure that this information is available to you.

10) I am dependent on the checks that have been provided me for payment of my living expenses and your accusations that I have not supplied the required proof and inaccurate statement that I have "prevented the company from independently verifying" my claim has caused severe mental anguish and significant amounts of lost sleep. Due to this, my physician has increased my medication in an effort to assist me in dealing with Jefferson-Pilot threats and apparent efforts to avoid their responsibility under the policies which I have paid premiums since March of 1990.

Sincerely,

Christopher L. Kearney

Christopher L. Kearney

3048

# FAX MESSAGE

Date:       Wednesday, October 25, 2000

To:         Disability Management Services, Inc.
            Mr. William Hughes
            Phone:      800-883-0596
            Fax:        413-747-1545

*FAXED PM 4:50*
*10-25-00*

From:       Chris Kearney
            Phone:      513-321-2434
            Fax:        513-321-2293

*COPY*

Pages:      Total of 5

Subject:    Following letter of 10-25-00 in response to your letter of 10-02-00

I will be mailing this letter and the tax return to your attention. I have faxed it to you along with my 1999 federal personal income tax return.

*1999*

cell phone # 513-235-4859

10/30 Spoke w/ Chris Kearney. He called and spoke w/ Bill Hughes earlier about the status of his check and to notify us of his address change.

We spoke @ length (approx. 1hr) about the claim and the recent exchange of letters.

Mr. Kearney and I differ concerning which documents are required to validate his claim. He commented that the salesman who sold the policy to him advised that should he have to file a claim he would be "harassed" with document requests but didn't have to provide everything. I advised him that I would be surprised to learn that was explained to him. I further emphasized that the documents requested of him are pertinent to the circumstances surrounding his claim and is not intended to be burdensome but necessary to determine his benefit eligibility.

Mr. Kearney said he would be willing to submit the requested documents if required. He will be speaking with his attorney in the next couple of weeks to discuss this matter.

We also spoke about his AP withholding his medical records. I offered to have our psychiatric consultant call his AP to discuss this matter.

I will c/b concerning his check status.

(RFW.)

3046

513-236-4859
10/31 Called Chris Kearney. LM on his cell phone.
I advised that a letter giving him a
30 day extension to provide the requested
claim documents would be sent. JP will
issue another check for this period.
Please call with any Questions.

RFM

3045

## Linda Bey

| | |
|---|---|
| **From:** | Robert Mills |
| **Sent:** | Wednesday, November 01, 2000 10:39 AM |
| **To:** | William Hughes |
| **Subject:** | RE: Document1 |

Alright. I took the letters of the two greatest minds in the office to create the version attached. Let me know when or if you want to discuss again so I can explain my thoughts of this.   B.



kearney2.doc

-----Original Message-----
| | | **Document 29** |
|---|---|---|
| **From:** | William Hughes | |
| **Sent:** | Tuesday, October 31, 2000 5:25 PM | |
| **To:** | Robert Mills | |
| **Subject:** | Document1 | |

<< File: Doc1.doc >> This is something like I had in mind. Let's discuss.



EXHIBIT 2
Mills
5-3-07
S. ROY, RPR

1

DMSESUPP 0072

**Disability Management Services, Inc.**
1350 Main Street, Springfield, MA 01103-1619  Tel:(413)747-0990  Fax:(413)747-1545
*A third party administrator for:*
**Jefferson-Pilot Life Insurance Company**

January 18, 2007

Christopher Kearney

Redacted

Re: Policy Number/s: H-493029, H-538069

Dear Mr. Kearney,

This letter follows our telephone conversation on Monday, October 30, 2000. It was a pleasure speaking with you.

We are in receipt of your letter dated October 25, 2000 directed to Mr. William Hughes. However, your response did not include any of the claim materials requested in Mr. Hughes' letter of October 2, 2000. As we discussed, your letter seemed to reflect that you are maintaining your previous position that you are not required to furnish the claim materials requested in Mr. Hughes' letter, and that the company does not have the right to corroborate information you have provided.

It remains clear that Jefferson Pilot and yourself have different interpretations concerning what constitutes "proof of loss" under the policy and what information is required in the processing your claim for benefits. As I pointed out, notwithstanding the policy language that would enable Jefferson Pilot to gather the documentation requested, it remains the company's view that they have the right to request this information and verify your statements. At this time, it appears that without the requested claim materials we would be unable to evaluate your eligibility for additional benefits.

During our telephone conversation, you did mention that you have not decided against forwarding the requested claim materials, however, you mentioned you wished to speak with your attorney before making you final decision. In light of the above, Jefferson Pilot has agreed, in the interest of continuing good will, to provide you with another benefit payment and extend the timeframe for you to provide the outstanding claim materials for an additional 30-days in order to allow you to have enough time for the discussion with your attorney to occur. Please be aware that in making this payment Jefferson Pilot reserves its rights under the policy and to claim repayment of these benefits should it be determined that you would not have qualified for them.

d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a Centre Claims Administration Services in NH

DMSESUPP 0073

We look forward to hearing back from you or your representative in the near future to discuss the next steps in the administration of your claim. Should you have any further questions, I can be reached directly at 1-800-883-0596 ext. 1119.

Sincerely,

Robert F Mills
Claims Consultant

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

DMSESUPP 0074