**Chrisopher L. Kearney**

Redacted



Wednesday, March 21, 2001

Robert Mills
Disability Management Services, Inc.
1350 Main St.
Springfield, MA 01103-1628

Mr. Mills:

I received your letter of March 7, 2001. I have some issues to discuss with you about some of your statements. I will address these issues in a future letter after reviewing my files.

You have asked for information about the company Innomation, Inc. I owned this company for several years- it is now out of business. The work I did for Innomation, Inc. was as an agent of Kearney Associates, Inc. I was involved in sales and some management. The time I spent has already been accounted for in my reports for Kearney Associates, Inc. I was not on the payroll, I did not receive any dividends. My personal tax returns are accurate.

I was never an employee and I funded this company with my own personal resources, therefore there was no reason to report this to you. The Occupational Duties Form is apparantly designed for employees. As stated, my employer was not Innomation, Inc.

I will get the tax returns requested and send to you.

I have attended all of the doctors sessions you set up and I have recently sent a box of documents to Ms. Hymowitz to look over.

Sincerely,

Chris Kearney

3277

FROM :                          FAX NO.  :              Jun. 25 2004 01:31PM  P7

May 25, 2001

Mr. Robert Mills, Claims Consultant
Disability Management Services, Inc.
1350 Main Street
Springfield, MA 01103-1619

Re: Policy #H-493029 and H-538069

Mr. Mills:

**PLEASE RESPOND**

Enclosed is the Continuance of Disability Form filled out and signed by both myself and my doctor.

I have sent form 4506 to the IRS for Innomation, Inc. Tax returns. I have not yet received them.

As is usual, my 2000 tax returns, business and personal will be completed in September and October, 2001.

Ms. Hymowitz has not acknowledged receipt nor responded to my letter of 4-5-01 received in her office on 4-9-01. You know this, of course. I need **all** of my questions answered before I can respond further to her repetitive and unreasonable demands.

CHRISTOPHER L. KEARNEY

*Christopher L. Kearney*

**PLEASE RESPOND**

### PS- I want the two doctors reports sent to Dr. McClure now!

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ROBERT MILLS
ABILITY MANAGEMENT
350 MAIN ST.
SPRINGFIELD, MA
01103-1618

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly)   B. Date of Delivery 5/29/01

C. Signature
X _____   ☐ Agent   ☐ Addressee

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number (Copy from service label)
   2000-1530-0002-8296-8074

PS Form 3811, July 1999          Domestic Return Receipt

**Christopher L. Kearney**

Redacted

Thursday, April 05, 2001

Leslee Hymowitz
Shalik, Morris & Co., LLP
7001 Brush Hollow Rd.
Westbury, NY 11590

Ms. Hymowitz,

I am disturbed that once again you have asked for a mountain of documents for Kearney Associates, Inc. dating back to 1998.

Your letters are all copied to Mr. Mills of Disability Management whom I told by letter on 12-22-00 that I have no further documents to send concerning Kearney Associates, Inc. I also discussed this on the phone with him. Why hasn't he told you of this?

I have already provided 1992, 1993 personal tax returns as shown in my files. Earlier tax returns were given to your representative in order to prove income and buy the policies. Ask your representative for these.

I did recently come across a W-2 Wage and Tax Statement for 1995 for Kearney Associates, Inc. It was in a folder with copies of personal returns. Enclosed is a copy for you. I have crossed out the middle and last names of the employees in 1995 due to some very serious issues I now have with DMS concerning confidentiality of personal information.

When I receive the copies of the tax returns for Innovation, Inc. from the IRS, I will forward them to you unless I hear otherwise from you or Mr. Mills.

When are you going to send me copies of tax returns and Social Security Documents that I signed for release to you? Or is this a disclosure to me that you are going to withhold?

Sincerely,

Chris Kearney

PLEASE RESPOND

PLEASE RESPOND

PLEASE RESPOND

COPY

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ESLEE HYMOWITZ
IK MORRIS-CO, LLP
1 BRUSH HOLLOW RD
35 BURY, NY.
11590

**Christopher L. Kearney**

Redacted

Robert Mills                                                                April 11, 2001
Disability Management Services, Inc.
1350 Main St.
Springfield, MA 01103-1628

Mr. Mills:

_**I am outraged and very disturbed**_ to find out that your board certified psychiatrist, Otto Kausch, M.D., disclosed to my brother, Timothy L. Kearney, confidential results or interpretation of results from the recent psychological testing I underwent for your purposes.

I was told by both Dr. Kenny, the psychologist, and Dr. Kausch that the test results were not available to _me_ or my _doctor_, only to the insurance carrier or its representative, DMS.

I gave Dr. Kausch my permission, in good faith, to briefly talk with my brother and mother. He specifically told me: "to ask a few questions, not to disclose confidential information about you."

He told my brother on 3-15-01 that psychological personality testing recently taken by me indicates that I am "shy and withdrawn" and that my sales aptitude is "very poor." My brother told me of these disclosures the next day after talking to Dr. Kausch.

My brother told me that he was "shocked" that the doctor disclosed this to him. Whether this description of me is accurate or not, I am very upset that he would choose to disclose this to a family member without my consent. I find the description to be highly embarrassing. Dr. Kausch could have just stuck to "a few questions" without disclosing these test results.

In many letters to you, I have expressed my deepest concerns about personal, medical or psychological information being disclosed by you or your representatives to my family, friends, or business contacts. See my letters to you of 8-11-00, and 2-23-01 regarding my anxiety that improper disclosures might occur.

Your letter to me of March 7, 2001 states: "You can rest assured that while the authorization allows us to <u>obtain</u> information from various sources, it does <u>not</u> allow us to <u>divulge</u> to anyone, any of your personal medical information." (the underlining of the words for emphasis was done by you in your original letter)

Also, I am very concerned that any or all of my medical and psychological records now in your hands will be distributed, for your purposes, to various contractors across the country for "medical review." I am aware of the investigations done by the NBC television news program _Dateline_ alleging that some medical decisions were made by non-medical or unqualified personnel in the insurance industry.

I plan to discuss these and other issues with the Ohio Dept. of Insurance and the State Medical Board of Ohio. I expect you to send a copy of all of the findings of the two doctors to my doctor, Dr. Donna McClure, immediately as you have promised in your letter of 2-2-01.

3262

*I believe that I have the right to see medical and psychological information about myself already disclosed to a third party without my consent.*

I am also very distressed that Dr. Kausch told me in a phone call on 3-15-01 that my doctor, Dr. McClure, notes in her patient notes that I am "an alcoholic." I asked where specifically it says that I am "an alcoholic" as I have a copy of the patient notes. He recanted and said that "she had questions of possible alcohol addiction."

I am offended at his attempt to label me as an "alcoholic." Furthermore, I am very concerned about what DMS and all of its agents are telling my family, friends, neighbors, business contacts, etc. in your "ongoing evaluation of my claim."

Sincerely,

Christopher L. Kearney

Christopher L. Kearney

cc: Strauss & Troy, Charles H. Melville

3263

## Disability Management Services, Inc.
*1350 Main Street, Springfield, MA 01103-1619  Tel:(413)747-0990  Fax:(413)747-1545*
*A third party administrator for:*
### Jefferson-Pilot Life Insurance Company

May 7, 2001

Christopher Kearney

    Redacted

Re:  Policy Number/s: H-493029, H-538069

Dear Mr. Kearney,

Thank you for your March 21st and April 11th letters.

Please be advised that we are looking into the concerns you have raised and have recently written to Dr. Kausch for his response in this matter. As soon as we hear back from him and receive the data from Dr. Kenny's testing; we will be able to complete our review of the examination. At that time, we will forward Dr. Judd-McClure a copy of results of the examination.

While we await the above, we are again asking that you complete an Occupational Duties form, describing any and all activities and duties you performed for Innomation, Inc. Contrary to what you seem to think, this is not a request for you to state whether or not you were an employee or owner of that firm. Rather, we need you to describe, in full, all duties you executed for that company regardless of your affiliation. Our investigation has revealed that you performed duties for Innomation that appear to be inconsistent with the limitations you claim to have.

It is my understanding that you have yet to produce many of the items requested in Ms. Leslee Hymowitz's March 26th letter. Interestingly, this includes the corporate tax returns for Innomation, Inc. Please be sure to produce all of the outstanding items of information requested as soon as possible so that we can move forward with this aspect of the evaluation of your claim.

Please do not hesitate to contact me directly at 1-800-883-0596 ext. 1076 should you have any questions.

Sincerely,

Robert F Mills
Claims Consultant

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

3256

May 22, 2001

Mr. Robert Mills, Claims Consultant
Disability Management Services, Inc.
1350 Main Street
Springfield, MA 01103-1619



Re: Policy #H-493029 and H-538069

Mr. Mills:

It is 2:46 AM and I am writing this letter to you because I am pretty damn pissed off at you, DMS, JP, Dr. Kausch, and all the rest of supporting cast who have contributed, in *flagrant, relentless, malicious bad faith actions* in my claim for benefits.

You have caused me many sleepless nights, anxious days, and, in general *severe emotional distress!!!!*

You have caused me to miss business opportunities, to be unproductive at work because of the anxiety with the many threats to withhold benefits *which I am entitled to!!! This is in addition to the many instances of coercion, intimidation, harassment, misrepresentations, and outright lies!!!*

In addition, you have caused much difficulty dealing with my friends and family. I am miserable dealing with the personal animosity, the unending requests for trivial documentation of my already highly substantiated financial and medical condition. You already have a mountain of current and past documents that supports my claim, you have had statements from my doctors over the years and *NOW YOUR DOCTORS!*

*I want the medical reports you received from Dr. Kenny and Dr. Kausch sent to Dr. Donna McClure NOW, IMMEDIATELY!!!!!*

*You are breaking the law by lying to me and withholding my medical and psychiatric information so flagrantly! You have had these reports for over 2 months now and I have direct evidence of that fact! Your bad faith is inexcusable and deporable!*

*In my letter to you of Satruday, 1-7-00, I clearly stated:* "Willingly, I will meet with the doctors but I must have a copy of each report. It is my mind and body you are exploring. It is me who is driving at least 1 hr. to each appointment and spending a half day at each. I demand a copy of each report and I need a letter signed by you that I will get this copy within 48 hrs. of your receipt."

I then said to you in the same letter: "I also want a complete copy of each and every medical, psychological information obtained from any source by Jefferson Pilot and any other agent of JP. I direct this be sent to me or Dr. McClure. If this is not done promptly, the appointments for the doctors will have to be rescheduled."

0612

# PLEASE
# RESPOND

***Where the hell are the benefit checks this month?*** You told me you are unaware of when the checks are due. Yet, in a phone conversation with you early last year you told me that checks were processed at the end of the month or first of the month for the previous month. Then the checks are sent out then or within the first week of the month. Again, you, Mr. Hughes, and your superiors are withholding my checks this month intentionally. You seem to enjoy my distress and seem to enjoy punishing me for my efforts to preserve my legal rights with regard to my two contracts with your multibillion-dollar insurance company. Your resources are endless in attempts to harass me.

I know that the harassment is tolerated and even encouraged at all levels of your organization as is evidenced in your collusion with Ms. Harden, and Ms. Betty Lou Hand in nearly having my policies cancelled by holding my premium payment check. I have never received any apology for your sloppy and deceitful conduct. Also, in total contrast to your statement that I called you in this instance on 1-27-01, I did not call you. Your buddies at JP must have called you and told you that I was aware of what was happening to my policies with your certain knowledge. You really hoped that you could deceive me and have my policies lapse. What a convenient situation for Mr. Mills- what kind of bonus do you receive when you are successful with these deceitful tactics?

Your letter of June 5ᵗʰ, 2001 is a joke. You say: "It is again unfortunate that you continue to mischaracterize my explanations throughout the processing of the claim." You later mischaracterize your own actions by stating: "As promised, we have now forwarded both medical reports to Dr. Judd-McClure." In your letter to me of 2-2-2001, you state: "We will be pleased to send a copy of the results of those examinations directly to Dr. Judd McClure ***as soon as we receive them.***" Now you declare, after holding the written reports for nearly three months, you sent them to my doctor, "**as promised**."

How could it be clearer to anyone that my health is not a concern to you? Your many statements on the phone to me that I am, in your opinion, able to work full time because I sound okay on the phone to you and I am talking to you on the phone and I am not in a dark place or in bed as is your understanding of depression- your ***"layman's*** understanding", you say.

I do not ask for nor do I appreciate your opinion of my medical condition. It makes me even more upset to hear your ***"Layman's Misunderstanding of depression."*** You do this in all phone conversations thinking this harassment won't be brought to anyone else's attention. This is one reason I rarely speak on the phone with you. Your harassment sets me back days and weeks. ***Please don't play doctor in my claim.***

Despite your lack of cooperation and Ms. Hymowitz lack of cooperation in responding in letters with answers to my questions (most recent letters attached), I am continuing to look for, retrieve, and photocopy documents, which seem ridiculous to me for your "ongoing evaluation of my claim." Ms. Hymowitz has not responded to my letter received by her over two months ago.

I plan to list, in an upcoming letter, your fiduciary duties of good faith and fair dealing with regard to my insurance contracts. Obviously, you and your associates think that these don't apply to Jefferson-Pilot, since you can throw unlimited dollars into harassment procedures to continue the harassment.

This letter from me of 1-27-01 was sent via registered mail. You acknowledge receipt of this letter in your letter to me of 2-2-2001. You state: *"We will be pleased to send a copy of the results of those examinations directly to Dr. Judd-McClure as soon as we receive them."*

You say, *"AS SOON AS WE RECEIVE THEM."* You have received them. Don't give me any bullshit that you haven't or that they were sent to one of your dummy partners! Also, I want them sent *NOW!!! The issue with Dr. Kausch violating my medical privacy in violation of state law, federal law, your own statements, and the ethical code of conduct of the American Psychiatric Association is a separate issue. His response to you, as well as receiving the data from the test is not an excuse to further hold reports by Dr. Kausch and Dr. Kenny!!!!*

*I want the reports NOW!!! I understand that you may be giving the doctors time to change their reports to meet your needs, and/or you are shopping my medical information to paper review companies to get a self serving report that meets your needs, whatever the costs!!!*

*SEND THE ORIGINAL REPORTS NOW!!!!!!!!!*


**CHRISTOPHER L. KEARNEY**

0613

May 25, 2001

Mr. Robert Mills, Claims Consultant
Disability Management Services, Inc.
1350 Main Street
Springfield, MA 01103-1619

Re: Policy #H-493029 and H-538069

Mr. Mills:

PLEASE RESPOND

Enclosed is the Continuance of Disability Form filled out and signed by both myself and my doctor.

I have sent form 4506 to the IRS for Innomation, Inc. Tax returns. I have not yet received them.

As is usual, my 2000 tax returns, business and personal will be completed in September and October, 2001.

Ms. Hymowitz has not acknowledged receipt nor responded to my letter of 4-5-01 received in her office on 4-9-01. You know this, of course. I need *all* of my questions answered before I can respond further to her repetitive and unreasonable demands.

CHRISTOPHER L. KEARNEY

*Christopher L. Kearney*

PLEASE RESPOND

PS- I want the two doctors reports sent to Dr. McClure now!

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. ■ Print your name and address on the reverse so that we can return the card to you. ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Received by (*Please Print Clearly*)   B. Date of Delivery  5·29·01  C. Signature  X ☐ Agent  ☐ Addressee |
| 1. Article Addressed to:  OBERT MILLS  ABILITY MANAGEMENT  350 MAIN ST.  PRING FIELD, MA  01103-1618 | D. Is delivery address different from item 1? ☐ Yes  If YES, enter delivery address below: ☐ No |
| | 3. Service Type  ☑ Certified Mail  ☐ Express Mail  ☐ Registered  ☐ Return Receipt for Merchandise  ☐ Insured Mail  ☐ C.O.D. |
| | 4. Restricted Delivery? (Extra Fee)  ☐ Yes |
| 2. Article Number (Copy from service label)  2000 1530-0002  P226-1079 | |
| PS Form 3811, July 1998 | Domestic Return Receipt |

3246

**Chrisopher L. Kearney**

Redacted

**Phone: 330-264-4216**
**Fax: 330-264-4216**

Friday, June 01, 2001

Jefferson Pilot Financial
Attn: Connie Caldwell, Supervisor of Client Services Dept.
Client Services Dept.- Privacy
PO Box 21008
Greensboro, NC  27240

RE: Christopher L. Kearney, Jefferson Pilot Policies #H-493029, H-538069

Ms. Caldwell:

I received for the first time a copy of Jefferson Pilot Financial's  **PRIVACY PRACTICES NOTICE**.  This was sent to me folded and addressed to me with no signature.  I am not sure who sent this.  Please do not send me phantom letters.

I am enclosing a money order for $25.00 as a handling fee for the following request:

I request that I receive photocopies of the two IME medical examination reports.  I participated in these examinations at the request of Robert Mills of Disability Management Services, Inc. of Springfield, MA.  Previously, I have been promised copies of these reports following the examinations.

I request that I receive photocopies of the assignment letters, and the reports themselves signed by Dr. John Kenny, Ph.D. and Dr. Otto Kausch, M.D.  I request copies of the reports, assignment letters, and any associated documents sent to Jefferson-Pilot, Disability Management Services, Inc., Psychiatric Disability Consultants, or any other affiliated consultant, company or other entity that may have received these doctors' reports and documents instead of Jefferson Pilot.  That is, I want copies of these documents regardless of where they were sent.

Since these reports were completed in March 2001, I request this information be sent to me as promised.

Please mail or fax these documents to me by June 8th, 2001.

Sincerely,

*Christophe L. Kearney*
Christopher L. Kearney

cc: Ohio Dept. of Insurance



**JEFFERSON PILOT**
**FINANCIAL**

### PRIVACY PRACTICES NOTICE

The Jefferson Pilot Financial companies* are concerned about your privacy. In order to issue and service high quality financial products and services, we collect personal information about you. **We do not sell your information to third parties,** and we disclose your personal information only as necessary to provide the products and services you expect from a financial services leader. **This summary of our practices is provided for your information. You do not need to take any action as a result of this notice, but you do have certain rights as described below.**

**Collecting Information.** To conduct our business, we may collect nonpublic personal information about you from:

- applications or other forms, such as name, address, Social Security number, assets and income, employment status and dependent information;
- your transactions with us, our affiliates, or with others, such as account activity, payment history, and products and services purchased;
- consumer reporting agencies, such as credit relationships and credit history. These agencies may retain their reports and share them with others who use their services;
- other individuals, businesses and agencies, such as motor vehicle reports, and medical and demographic information; and
- visitors to our websites, such as information from on-line forms, site visitorship data and on-line information collecting devices commonly called "cookies."

*We do not collect medical or health information, nor do we request financial information from consumer reporting agencies, on our mutual fund and brokerage consumers.*

**How We Treat the Information.** Within Jefferson Pilot Financial we restrict access to nonpublic personal information about you to those employees who need to know that information to provide our products or services or to otherwise conduct our business, including actuarial or research studies. We maintain physical, electronic, and procedural safeguards that comply with federal and state regulations to safeguard all your nonpublic personal information. We may also disclose all of the information described above to third parties with which we contract for services. We contractually require these third parties to protect your information. Examples of these third parties are:

- financial service providers, such as third party administrators, broker-dealers, insurance agents and brokers, investment companies, registered representatives, investment advisors, companies that perform marketing services on our behalf or on behalf of Jefferson Pilot Financial and another financial institution, or to other financial institutions with whom we have joint marketing agreements; and
- non-financial companies and individuals, such as our consultants and vendors and the Medical Information Bureau.

In addition, we may disclose your nonpublic personal information to medical care institutions or medical professionals, insurance regulatory authorities, law enforcement or other government authorities, or to affiliated or nonaffiliated third parties as reasonably necessary to conduct our business or as otherwise permitted by law.

Our privacy procedures apply even after you stop having any customer relationship with Jefferson Pilot Financial.

We retain the right to use ideas, concepts, know-how, or techniques contained in any nonpublic personal information you provide to us for our own purposes, including developing and marketing products and services.

**We do not disclose to our affiliates any information we receive about you from a consumer reporting agency.**

**We do not disclose your nonpublic personal information to third parties except as necessary to provide you our products and services.** You do have the right to review the personal information about you relating to any insurance or annuity product issued by us that we can reasonably locate and retrieve. You also can request that we correct, amend or delete any inaccurate information. If you wish to do this, please write Attn: Privacy Inquiry, to the address you normally use for your correspondence with us. If you don't have that address, write to: Jefferson Pilot Financial, Attn: Client Services Department-Privacy, P.O. Box 21008, Greensboro, NC 27420, describe the information you wish to see and enclose payment for our $25.00 handling fee.

* This Notice applies for the following Jefferson Pilot Financial companies:

| | | |
|---|---|---|
| Allied Professional Advisors, Inc. | Jefferson Pilot LifeAmerica Insurance Company | Jefferson Pilot Variable Corporation |
| Hampshire Funding, Inc. | Jefferson-Pilot Life Insurance Company | Polaris Advisory Services, Inc. |
| Jefferson Pilot Financial Insurance Company | Jefferson Pilot Securities Corporation | Westfield Assigned Benefits Company |

JUN-26-2001 10:03 FROM:JEFFERSON PILOT     603 226 0891     TO:     P.003/003

**Chrisopher L. Kearney**

Redacted

**PLEASE RESPOND**

*2nd Request*

Phone: 330-264-4216
Fax: 330-264-4216

Friday, June 01, 2001

Jefferson Pilot Financial
Attn: Connie Caldwell, Supervisor of Client Services Dept.
Client Services Dept.- Privacy
PO Box 21008
Greensboro, NC 27240

RE: Christopher L. Kearney, Jefferson Pilot Policies #H-493029, H-638089

Ms. Caldwell:

I received for the first time a copy of Jefferson Pilot Financial's PRIVACY PRACTICES NOTICE. This was sent to me folded and addressed to me with no signature. I am not sure who sent this. Please do not send me phantom letters.

I am enclosing a money order for $25.00 as a handling fee for the following request:

I request that I receive photocopies of the two IME medical examination reports. I participated in these examinations at the request of Robert Mills of Disability Management Services, Inc. of Springfield, MA. Previously, I have been promised copies of these reports following the examinations.

I request that I receive photocopies of the assignment letters, and the reports themselves signed by Dr. John Kenny, Ph.D. and Dr. Otto Kausch, M.D. I request copies of the reports, assignment letters, and any associated documents sent to Jefferson-Pilot, Disability Management Services, Inc., Psychiatric Disability Consultants, or any other affiliated consultant, company or other entity that may have received these doctors' reports and documents instead of Jefferson Pilot. That is, I want copies of these documents regardless of where they were sent.

Since these reports were completed in March 2001, I request this information be sent to me as promised.

Please mail or fax these documents to me by June 8th, 2001.

Sincerely,

*Christopher L. Kearney*
Christopher L. Kearney

cc: Ohio Dept. of Insurance

3243

### Disability Management Services, Inc.
*1350 Main Street. Springfield, MA 01103-1619  Tel:(413)747-8990  Fax:(413)747-1545*
*A third party administrator for:*
### Jefferson-Pilot Life Insurance Company

June 5, 2001

Christopher Kearney

Redacted

Re: Policy Number/s: H-493029, H-538069
    Claim Number/s: H-493029, H-538069

Dear Mr. Kearney,

Thank you for your letters of May 22 & May 25, 2001. It is again unfortunate that you continue to mischaracterize my explanations throughout the processing of your claim. Moreover, your ongoing clamoring appears to be a further attempt to distract yourself from continuing to meet your contractual obligation of submitting ongoing Proof of Loss.

We have received a response from Dr. Kausch. Dr. Kausch found that the statements made by your brother were inconsistent with the information obtained from the testing conducted during your evaluation. He explained that the conversations in this regard was short, and was within the scope of his agreement. We also have received and completed our review of the data from Dr. Kenny's testing. As promised, we have now forwarded both medical reports to Dr. Judd-McClure.

As you know, Ms. Hymowitz wrote to you on May 7, 2001 detailing the records that have been requested, but continue to remain outstanding. Please be sure to forward this information if you haven't already so that Ms. Hymowitz may complete her review.

We have also requested, but have yet to receive from you a completed Occupational Duties form, describing any and all activities and duties you performed for Innomation, Inc.

Finally, we have asked an independent occupational specialist to contact you in the near future. In our ongoing effort to understand your work experiences, we need to develop a further understanding of your previous work background and current duties to determine if there are any transferable skills between the both of them.

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

3239

Please feel free to contact me should you have any questions.

Sincerely,


Robert F Mills
Claims Consultant

d/b/a: *New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

3240

June 12, 2001

Mr. Robert Mills, Claims Consultant
Disability Management Services, Inc.
1350 Main Street
Springfield, MA 01103-1619

**PLEASE
RESPOND**

Re: Policy #H-493029 and H-538069

Mr. Mills:

Your continued requests, in writing, from both you and your forensic accounting partner for documents I already told you I don't have, many times in writing, and on the phone, is extremely irritating and obviously a continuation of the harassment directed at me.

I told Ms. Hymowitz, in my letter of 4-5-01, of my annoyance for repetitive requests and you have copies of all her correspondence. She completely ignored my concerns and did not respond to my questions posed in the letter of 4-5-01. I want answers to my questions. Furthermore she requested bank statements and checks for Kenwood Technology Group Inc., which have already been sent and received by Hymowitz. It is clear to me that she is acting in bad faith as you have approved and obviously encouraged.

I told you "I have no further records of Kearney Associates, Inc." in my letter to you 12-22-00. I have also told you of this in a conversation back then and I told you in our 2-15-01 telephone conversation. Despite all this, you and your forensic accountant continue to ask me for these records. This is with your full knowledge. Once again, why the continued harassment?

Please start acting in good faith, and share your information. I am tired of answering repetitive requests from you, JP, Hymowitz, etc. I was very surprised that you told me that you didn't even have my entire claim file. You told me this in our phone conversation of 10-30-00. You then asked for the name of the agent who sold me the policy. You have contacted him, I understand, since our conversation of 10-30-00 and harassed him with various requests.

How irresponsible can you and DMS be in making accusations and threats in letters without reading the entire file? This includes your boss, Mr. Hughes, who wrote me a very threatening 3-page letter dated October 2, 2000. Despite asserting that he has read the file on me, he obviously didn't. In fact he didn't even recognize my name when I called him after my return letter was sent to him. He said, "Should I know you?" I was inquiring about the check for that month which he threatened to withhold. In our latest phone conversation of 2-15-01, you said you are "aware" of previous correspondence in my file. It is obvious that you haven't read the file and will continue to ask for documents already sent.

Please be aware of the attached copy of my letter to Mr. Robert Maxwell of 11-29-94 stating that I have enclosed the 1992 and 1993 tax returns and W-2's. Why the hell are you letting Ms. Hymowitz continue her harassment for the 1992 return and W-2? Why the hell doesn't she read through the 3000 pages of files I sent and recognize the bank statements and copies of checks are very prominently included? Why the hell doesn't she respond to my questions in my letter of 4-5-01, sent registered mail, and received by her office on 4-9-01? Your entire operation is filled with bad faith and you and your superiors are directing it.

# PLEASE
# RESPOND

*__Where the hell are the benefit checks this month?__* You told me you are unaware
of when the checks are due. Yet, in a phone conversation with you early last year you told me
that checks were processed at the end of the month or first of the month for the previous month.
Then the checks are sent out then or within the first week of the month. Again, you, Mr. Hughes,
and your superiors are withholding my checks this month intentionally. You seem to enjoy my
distress and seem to enjoy punishing me for my efforts to preserve my legal rights with regard to
my two contracts with your multibillion-dollar insurance company. Your resources are endless in
attempts to harass me.

I know that the harassment is tolerated and even encouraged at all levels of your organization as
is evidenced in your collusion with Ms. Harden, and Ms. Betty Lou Hand in nearly having my
policies cancelled by holding my premium payment check. I have never received any apology for
your sloppy and deceitful conduct. Also, in total contrast to your statement that I called you in
this instance on 1-27-01, I did not call you. Your buddies at JP must have called you and told you
that I was aware of what was happening to my policies with your certain knowledge. You really
hoped that you could deceive me and have my policies lapse. What a convenient situation for
Mr. Mills- what kind of bonus do you receive when you are successful with these deceitful
tactics?

Your letter of June 5th, 2001 is a joke. You say: "It is again unfortunate that you continue to
mischaracterize my explanations throughout the processing of the claim." You later
mischaracterize your own actions by stating: "As promised, we have now forwarded both medical
reports to Dr. Judd-McClure." In your letter to me of 2-2-2001, you state: "We will be pleased to
send a copy of the results of those examinations directly to Dr. Judd McClure *__as soon as we__*
*__receive them.__*" Now you declare, after holding the written reports for nearly three months,
you sent them to my doctor, "**as promised**."

How could it be clearer to anyone that my health is not a concern to you? Your many statements
on the phone to me that I am, in your opinion, able to work full time because I sound okay on the
phone to you and I am talking to you on the phone and I am not in a dark place or in bed as is
your understanding of depression- your *__"layman's__* understanding*__"__*, you say.

I do not ask for nor do I appreciate your opinion of my medical condition. It makes me even
more upset to hear your *__"Layman's Misunderstanding of depression."__* You do this in all phone
conversations thinking this harassment won't be brought to anyone else's attention. This is one
reason I rarely speak on the phone with you. Your harassment sets me back days and weeks.
*__Please don't play doctor in my claim.__*

Despite your lack of cooperation and Ms. Hymowitz lack of cooperation in responding in letters
with answers to my questions (most recent letters attached), I am continuing to look for, retrieve,
and photocopy documents, which seem ridiculous to me for your "ongoing evaluation of my
claim." Ms. Hymowitz has not responded to my letter received by her over two months ago.

I plan to list, in an upcoming letter, your fiduciary duties of good faith and fair dealing with
regard to my insurance contracts. Obviously, you and your associates think that these don't apply
to Jefferson-Pilot, since you can throw unlimited dollars into harassment procedures to continue
the harassment.

# PLEASE RESPOND

Have you talked yet to one of the JP attorneys so that you can provide me with an exact definition of "proof of loss" as requested by me on 10-30-00? You said that you don't know because DMS represents so many different insurance companies and they all have different definitions. You have referred to your perceived duties on my part under this term, but it still remains clear as mud to me of why requirements have become ever more burdensome each day.

Your duties include answering all my questions in a timely manner. What a joke, huh?

I wonder all the time: How many other legitimate insurance claims, are handled by you and DMS and JP and Hymowitz with such flagrant disregard for the law?

How many other people are subjected to such emotional distress in your zeal to deny legitimate claims and make more money for yourself and DMS? What is your bonus structure? Why does JP not even attempt to distance itself from the bad cop, DMS? Are they so arrogant that they think that they can get away from their responsibilities to their policyholders and claimants? Is JP number one in the country in profits among the insurance companies because they approve of the harassment and intimidation techniques?

Bad faith runs rampant. It affects me severely and now my family has to put up with the absolute frustration I feel. Now my mother has to be concerned about your following and photographing me and probably her. Ms. Harden told me they follow me into the Church and "sit with me." I did not attend much after hearing that.

Thanks for all of your help in making me a more mistrusting person.

Christopher L. Kearney

*Christopher L. Kearney*

Enclosures:

Copies of:

Robert Maxwell letter to Christopher Kearney dated 11-8-94, received 11-26-94

My letter of 11-29-94 responding to request for documents with tax returns

My letter to Mills of 5-25-01 with stamped new request for unanswered questions

My letter to Hymowitz of 4-5-01, unacknowledged or responded to, with stamped request for a response.

June 16, 2001

Mr. Robert Mills, Claims Consultant
Disability Management Services, Inc.
1350 Main Street
Springfield, MA 01103-1619

**PLEASE
RESPOND**

Re: Policy #H-493029 and H-538069

Mr. Mills:

Enclosed please find copies of the Federal Tax Returns for Innomation, Inc. (Kearney
Magnetics and Engineering, Inc. in 1995), which I just received, from the IRS. These
returns are for the years 1995, 1996, and 1997.

Your perceived ever-expanding powers to smother me with paperwork are still not
agreeable to me. The policies state that "reasonable proof" of income "may" be required.

As demanded, I am also enclosing a copy of the 941 Employer's Quarterly Federal Tax
Return of Kenwood Technology Group, Inc. dated 4-30-01 for the period ending 3-31-01.

Your partner forensic accounting firm has recently requested copies of all receipts,
invoices, checks, purchase orders, bank statements, and on and on for Kenwood
Technology Group, Inc. for the year 2001. I will attempt to comply even though this is
clearly continued harassment.

As stated previously, your demand for a completed Occupational Duties Form is not
relevant to Innomation, Inc. You appear to be making up new rules with each demand.

Again, I am attaching a letter to you of May 25, 2001 and a letter to your forensic
accounting firm of *April 5, 2001* (over 2 months), which have been ignored. **_This is my_**
**_third request._** Hopefully you and Ms. Hymowitz will soon respond to my questions in
these letters.

Finally, (for today anyway), I ask you for an explanation of your statement in your letter
of 6-5-01: "In our ongoing effort to understand your work experiences, we need to
develop a further understanding of your previous work background and current duties to
determine if there are any transferable skills between the both of them."

Sincerely,

*Christopher L. Kearney*

Christopher L. Kearney



3227

JUN 27 2001 16:00 FR JP                    3366914254 TO 914137471545        P.05/05

JUN 2 1 2001

**Chrisopher L. Kearney**

Redacted

**Phone: 330-264-4216**
**Fax: 330-264-4216**

# PLEASE
# RESPOND

Wednesday, June 20, 2001

Jefferson Pilot Financial
Attn: ~~Connie Caldwell~~, Supervisor of Client Services Dept.
Client Services Dept.- Privacy
PO Box 21008
Greensboro, NC 27240

RE: Christopher L. Kearney, Jefferson Pilot Policies #H-493029, H-538069

Ms. Caldwell:

I left a message on your phone recorder today concerning my mailed request of 6-1-01, received by Jefferson Pilot on 6-4-01. I have had no response from Jefferson Pilot. I am enclosing another copy of that letter of 6-1-01 for your convenience. I request an immediate reply.

Also, for another request, I am enclosing a check (#177) for $25.00 as a handling fee for the following request:

I request copies of any and all surveillance logs, photos, sound or video recordings or any other documents pertaining to current or past surveillance by Jefferson Pilot or any of its agents, representatives, or outside services. I request that all of this information, for the entire period of my claim (2-8-93 to present), be sent to me no later than July 5th, 2001.

I am mailing this letter with check and attached previous letter of 6-1-01 via US Express Mail so that you will have plenty of time to get this information to me promptly.

Sincerely,

Christopher L. Kearney

cc: Ohio Dept. of Insurance

3226

JUN 2 1 2001

## Chrisopher L. Kearney

Redacted

**Phone: 330-264-4216**
**Fax: 330-264-4216**

**PLEASE RESPOND**

Wednesday, June 20, 2001

Jefferson Pilot Financial
Attn: Connie Caldwell, Supervisor of Client Services Dept.
Client Services Dept.- Privacy
PO Box 21006
Greensboro, NC 27240

RE: Christopher L. Kearney, Jefferson Pilot Policies #H-493029, H-538069

Ms. Caldwell:

I left a message on your phone recorder today concerning my mailed request of 6-1-01, received by Jefferson Pilot on 6-4-01. I have had no response from Jefferson Pilot. I am enclosing another copy of that letter of 6-1-01 for your convenience. I request an immediate reply.

Also, for another request, I am enclosing a check (#177) for $25.00 as a handling fee for the following request:

I request copies of any and all surveillance logs, photos, sound or video recordings or any other documents pertaining to current or past surveillance by Jefferson Pilot or any of its agents, representatives, or outside services. I request that all of this information, for the entire period of my claim (2-8-93 to present), be sent to me no later than July 5th, 2001.

I am mailing this letter with check and attached previous letter of 6-1-01 via US Express Mail so that you will have plenty of time to get this information to me promptly.

Sincerely,

Christopher L. Kearney

cc: Ohio Dept. of Insurance

CHRISTOPHER L. KEARNEY    2799    177

Redacted    DATE 6-20-01

PAY TO THE ORDER OF Jefferson Pilot Financial    $ 25.00

Twenty - five and 00/100 ——————— DOLLARS

BANK ONE.

MEMO Document Handling Fee    Christopher Kearney

⑆044000037⑆ 630217669⑈ 0177

3234

JUN-26-2001 10:03 FROM:JEFFERSON PILOT       603 226 0691       TO:          P.001/003



**JEFFERSON PILOT**

John R. Evans, FLMI, ACS
Assistant Vice President -
Client Services

Jefferson Pilot Financial
PO Box 21008
Greensboro, NC 27420

bus: 336 691 3461
fax: 336 691 9390
em: john.evans@jpfinancial.com

June 20, 2001

Christopher Kearney

Redacted

Dear Mr. Kearney:

We have received your letter dated June 1, 2001 in which you have requested
various medical reports. To obtain copies of those reports, you must contact the
providers directly. Therefore, we are returning your $25.00 money order to you.

Please be assured that Jefferson Pilot is concerned about your privacy. We do
not disclose any information we receive about you from a consumer reporting
agency to our affiliates. We do not sell your information to third parties. We do
not disclose your information to third parties except as necessary to provide you
with our products and services, or unless legally required or authorized by you to
do so.

Sincerely,

John R. Evans, FLMI, ACS

JRE/cm

3233