RFM

**Chrisopher L. Kearney**

Redacted

Wednesday, March 21, 2001

Robert Mills
Disability Management Services, Inc.
1350 Main St.
Springfield, MA 01103-1628

Mr. Mills:

I received your letter of March 7, 2001. I have some issues to discuss with you about some of your statements. I will address these issues in a future letter after reviewing my files.

You have asked for information about the company Innomation, Inc. I owned this company for several years- it is now out of business. The work I did for Innomation, Inc. was as an agent of Kearney Associates, Inc. I was involved in sales and some management. The time I spent has already been accounted for in my reports for Kearney Associates, Inc. I was not on the payroll, I did not receive any dividends. My personal tax returns are accurate.

I was never an employee and I funded this company with my own personal resources, therefore there was no reason to report this to you. The Occupational Duties Form is apparantly designed for employees. As stated, my employer was not Innomation, Inc.

I will get the tax returns requested and send to you.

I have attended all of the doctors sessions you set up and I have recently sent a box of documents to Ms. Hymowitz to look over.

Sincerely,

Chris Kearney

Chris Kearney

May 25, 2001

Mr. Robert Mills, Claims Consultant
Disability Management Services, Inc.
1350 Main Street
Springfield, MA 01103-1619

PLEASE RESPOND

Re: Policy #H-493029 and H-538069

Mr. Mills:

Enclosed is the Continuance of Disability Form filled out and signed by both myself and my doctor.

I have sent form 4506 to the IRS for Innomation, Inc. Tax returns. I have not yet received them.

As is usual, my 2000 tax returns, business and personal will be completed in September and October, 2001.

Ms. Hymowitz has not acknowledged receipt nor responded to my letter of 4-5-01 received in her office on 4-9-01. You know this, of course. I need **all** of my questions answered before I can respond further to her repetitive and unreasonable demands.

PLEASE RESPOND

CHRISTOPHER L. KEARNEY

Christopher L. Kearney

PS- I want the two doctors reports sent to Dr. McClure now!

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

OBERT MILLS
ABILITY MANAGEMENT
350 MAIN ST.
?RINGFIELD, MA
01103-1618

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly) B. Date of Delivery 5-29-01

C. Signature
X ☐ Agent ☐ Addressee

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail ☐ Express Mail
☒ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Copy from service label)
2000-1530-0002-8236-8074

PS Form 3811, July 1999 Domestic Return Receipt

**Chrisopher L. Kearney**

Redacted

PLEASE RESPOND

COPY

Thursday, April 06, 2001

Leslee Hymowitz
Shalik, Morris & Co., LLP
7001 Brush Hollow Rd.
Westbury, NY 11590

PLEASE RESPOND

Ms. Hymowitz:

I am disturbed that once again you have asked for a mountain of documents for Kearney Associates, Inc. dating back to 1988.

Your letters are all copied to Mr. Mills at Disability Management whom I told by letter on 12-22-00 that I have no further documents to send concerning Kearney Associates, Inc. I also discussed this on the phone with him. Why hasn't he told you of this?

I have already provided 1992, 1993 personal tax returns as shown in my files. Earlier tax returns were given to your representative in order to prove income and buy the policies. Ask your representative for these.

I did recently come across a W-2 Wage and Tax Statement for 1995 for Kearney Associates, Inc. It was in a folder with copies of personal returns. Enclosed is a copy for you. I have crossed out the middle and last names of the employees in 1995 due to some very serious issues I now have with DMS concerning confidentiality of personal information.

When I receive the copies of the tax returns for Innomation, Inc. from the IRS, I will forward them to you unless I hear otherwise from you or Mr. Mills.

When are you going to send me copies of tax returns and Social Security Documents that I signed for release to you? Or is this a disclosure to *me* that you are going to withhold?

Sincerely,

Chris Kearney

Chris Kearney

PLEASE RESPOND

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ESLEE HYMOWITZ
IK MORRIS - CO., LLP
1 BRUSH HOLLOW RD.
STBURY, NY.
11590

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly) J. Hertl[illegible] B. Date 4-

C. Signature

X

D. Is delivery address different from item 1?
If YES, enter delivery address below:

3. Service Type

☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Me
☐ Insured Mail ☐ C.O.D.

**Christopher L. Kearney**

Redacted

APR 2001 DISABILITY MANAGEMENT SERVICES

April 11, 2001

Robert Mills
Disability Management Services, Inc.
1350 Main St.
Springfield, MA 01103-1628

Mr. Mills:

***I am outraged and very disturbed*** to find out that your board certified psychiatrist, Otto Kausch, M.D., disclosed to my brother, Timothy L. Kearney, confidential results or interpretation of results from the recent psychological testing I underwent for your purposes.

I was told by both Dr. Kenny, the psychologist, and Dr. Kausch that the test results were not available to ***me*** or my ***doctor***, only to the insurance carrier or its representative, DMS.

I gave Dr. Kausch my permission, in good faith, to briefly talk with my brother and mother. He specifically told me: "to ask a few questions, not to disclose confidential information about you."

He told my brother on 3-15-01 that psychological personality testing recently taken by me indicates that I am "shy and withdrawn" and that my sales aptitude is "very poor." My brother told me of these disclosures the next day after talking to Dr. Kausch.

My brother told me that he was "shocked" that the doctor disclosed this to him. Whether this description of me is accurate or not, I am very upset that he would choose to disclose this to a family member without my consent. I find the description to be highly embarrassing. Dr. Kausch could have just stuck to "a few questions" without disclosing these test results.

In many letters to you, I have expressed my deepest concerns about personal, medical or psychological information being disclosed by you or your representatives to my family, friends, or business contacts. See my letters to you of 8-11-00, and 2-23-01 regarding my anxiety that improper disclosures might occur.

Your letter to me of March 7, 2001 states: "You can rest assured that while the authorization allows us to obtain information from various sources, it does not allow us to divulge to anyone, any of your personal medical information." (the underlining of the words for emphasis was done by you in your original letter)

Also, I am very concerned that any or all of my medical and psychological records now in your hands will be distributed, for your purposes, to various contractors across the country for "medical review." I am aware of the investigations done by the NBC television news program *Dateline* alleging that some medical decisions were made by non-medical or unqualified personnel in the insurance industry.

I plan to discuss these and other issues with the Ohio Dept. of Insurance and the State Medical Board of Ohio. I expect you to send a copy of all of the findings of the two doctors to my doctor, Dr. Donna McClure, immediately as you have promised in your letter of 2-2-01.

***I believe that I have the right to see medical and psychological information about myself already disclosed to a third party without my consent.***

I am also very distressed that Dr. Kausch told me in a phone call on 3-15-01 that my doctor, Dr. McClure, notes in her patient notes that I am "an alcoholic." I asked where specifically it says that I am "an alcoholic" as I have a copy of the patient notes. He recanted and said that "she had questions of possible alcohol addiction."

I am offended at his attempt to label me as an "alcoholic." Furthermore, I am very concerned about what DMS and all of its agents are telling my family, friends, neighbors, business contacts, etc. in your "ongoing evaluation of my claim."

Sincerely,

Christopher L. Kearney

Christopher L. Kearney

cc: Strauss & Troy, Charles H. Melville

***Disability Management Services, Inc.***
*1350 Main Street Springfield, MA 01103-1619 Tel:(413)747-0990 Fax:(413)747-1545*
*A third party administrator for:*
***Jefferson-Pilot Life Insurance Company***

May 7, 2001

Christopher Kearney

Redacted

Re: Policy Number/s: H-493029, H-538069

Dear Mr. Kearney,

Thank you for your March 21st and April 11th letters.

Please be advised that we are looking into the concerns you have raised and have recently written to Dr. Kausch for his response in this matter. As soon as we hear back from him and receive the data from Dr. Kenny's testing; we will be able to complete our review of the examination. At that time, we will forward Dr. Judd-McClure a copy of results of the examination.

While we await the above, we are again asking that you complete an Occupational Duties form, describing any and all activities and duties you performed for Innomation, Inc. Contrary to what you seem to think, this is not a request for you to state whether or not you were an employee or owner of that firm. Rather, we need you to describe, in full, all duties you executed for that company regardless of your affiliation. Our investigation has revealed that you performed duties for Innomation that appear to be inconsistent with the limitations you claim to have.

It is my understanding that you have yet to produce many of the items requested in Ms. Leslee Hymowitz's March 26th letter. Interestingly, this includes the corporate tax returns for Innomation, Inc. Please be sure to produce all of the outstanding items of information requested as soon as possible so that we can move forward with this aspect of the evaluation of your claim.

Please do not hesitate to contact me directly at 1-800-883-0596 ext. 1076 should you have any questions.

Sincerely,

Robert F Mills
Claims Consultant

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

3256

May 22, 2001

Mr. Robert Mills, Claims Consultant
Disability Management Services, Inc.
1350 Main Street
Springfield, MA 01103-1619

Re: Policy #H-493029 and H-538069

Mr. Mills:

It is 2:46 AM and I am writing this letter to you because I am pretty damn pissed off at you, DMS, JP, Dr. Kausch, and all the rest of supporting cast who have contributed, in ***flagrant, relentless, malicious bad faith actions*** in my claim for benefits.

You have caused me many sleepless nights, anxious days, and, in general ***severe emotional distress!!!!***

You have caused me to miss business opportunitites, to be unproductive at work because of the anxiety with the many threats to withhold benefits ***which I am entitled to!!! This is in addition to the many instances of coercion, intimidation, harassment, misrepresentations, and outright lies!!!***

In addition, you have caused much difficulty dealing with my friends and family. I am miserable dealing with the personal animosity, the unending requests for trivial documentation of my already highly substantiated financial and medical condition. You already have a mountain of current and past documents that supports my claim, you have had statements from my doctors over the years and ***NOW YOUR DOCTORS!***

***I want the medical reports you received from Dr. Kenny and Dr. Kausch sent to Dr. Donna McClure NOW, IMMEDIATELY!!!!!***

***You are breaking the law by lying to me and withholding my medical and psychiatric information so flagrantly! You have had these reports for over 2 months now and I have direct evidence of that fact! Your bad faith is inexcusable and deporable!***

***In my letter to you of Satruday, 1-7-00, I clearly stated:*** "Willingly, I will meet with the doctors but I must have a copy of each report. It is my mind and body you are exploring. It is me who is driving at least 1 hr. to each appointment and spending a half day at each. I demand a copy of each report and I need a letter signed by you that I will get this copy within 48 hrs. of your receipt."

I then said to you in the same letter: "I also want a complete copy of each and every medical, psychological information obtained from any source by Jefferson Pilot and any other agent of JP. I direct this be sent to me or Dr. McClure. If this is not done promptly, the appointments for the doctors will have to be rescheduled."

**PLEASE RESPOND**

***Where the hell are the benefit checks this month?*** You told me you are unaware of when the checks are due. Yet, in a phone conversation with you early last year you told me that checks were processed at the end of the month or first of the month for the previous month. Then the checks are sent out then or within the first week of the month. Again, you, Mr. Hughes, and your superiors are withholding my checks this month intentionally. You seem to enjoy my distress and seem to enjoy punishing me for my efforts to preserve my legal rights with regard to my two contracts with your multibillion-dollar insurance company. Your resources are endless in attempts to harass me.

I know that the harassment is tolerated and even encouraged at all levels of your organization as is evidenced in your collusion with Ms. Harden, and Ms. Betty Lou Hand in nearly having my policies cancelled by holding my premium payment check. I have never received any apology for your sloppy and deceitful conduct. Also, in total contrast to your statement that I called you in this instance on 1-27-01, I did not call you. Your buddies at JP must have called you and told you that I was aware of what was happening to my policies with your certain knowledge. You really hoped that you could deceive me and have my policies lapse. What a convenient situation for Mr. Mills- what kind of bonus do you receive when you are successful with these deceitful tactics?

Your letter of June 5th, 2001 is a joke. You say: "It is again unfortunate that you continue to mischaracterize my explanations throughout the processing of the claim." You later mischaracterize your own actions by stating: "As promised, we have now forwarded both medical reports to Dr. Judd-McClure." In your letter to me of 2-2-2001, you state: "We will be pleased to send a copy of the results of those examinations directly to Dr. Judd McClure ***as soon as we receive them.*** " Now you declare, after holding the written reports for nearly three months, you sent them to my doctor, "**as promised**."

How could it be clearer to anyone that my health is not a concern to you? Your many statements on the phone to me that I am, in your opinion, able to work full time because I sound okay on the phone to you and I am talking to you on the phone and I am not in a dark place or in bed as is your understanding of depression- your ***"layman's*** understanding", you say.

I do not ask for nor do I appreciate your opinion of my medical condition. It makes me even more upset to hear your "*Layman's Misunderstanding of depression."* You do this in all phone conversations thinking this harassment won't be brought to anyone else's attention. This is one reason I rarely speak on the phone with you. Your harassment sets me back days and weeks. ***Please don't play doctor in my claim.***

Despite your lack of cooperation and Ms. Hymowitz lack of cooperation in responding in letters with answers to my questions (most recent letters attached), I am continuing to look for, retrieve, and photocopy documents, which seem ridiculous to me for your "ongoing evaluation of my claim." Ms. Hymowitz has not responded to my letter received by her over two months ago.

I plan to list, in an upcoming letter, your fiduciary duties of good faith and fair dealing with regard to my insurance contracts. Obviously, you and your associates think that these don't apply to Jefferson-Pilot, since you can throw unlimited dollars into harassment procedures to continue the harassment.

This letter from me of 1-27-01 was sent via registered mail. You acknowledge receipt of this letter in your letter to me of 2-2-2001. You state: ***"We will be pleased to send a copy of the results of those examinations directly to Dr. Judd-McClure as soon as we receive them."***

You say, ***"AS SOON AS WE RECEIVE THEM."*** You have received them. Don't give me any bullshit that you haven't or that they were sent to one of your dummy partners! Also, I want them sent ***NOW!!! The issue with Dr. Kausch violating my medical privacy in violation of state law, federal law, your own statements, and the ethical code of conduct of the American Psychiatric Association is a separate issue. His response to you, as well as receiving the data from the test is not an excuse to further hold reports by Dr. Kausch and Dr. Kenny!!!!***

***I want the reports NOW!!! I understand that you may be giving the doctors time to change their reports to meet your needs, and/or you are shopping my medical information to paper review companies to get a self serving report that meets your needs, whatever the costs!!!***

***SEND THE ORIGINAL REPORTS NOW!!!!!!!!!***

***CHRISTOPHER L. KEARNEY***

Christopher L. Kearney

May 25, 2001

Mr. Robert Mills, Claims Consultant
Disability Management Services, Inc.
1350 Main Street
Springfield, MA 01103-1619

PLEASE RESPOND

Re: Policy #H-493029 and H-538069

Mr. Mills:

Enclosed is the Continuance of Disability Form filled out and signed by both myself and my doctor.

I have sent form 4506 to the IRS for Innomation, Inc. Tax returns. I have not yet received them.

As is usual, my 2000 tax returns, business and personal will be completed in September and October, 2001.

Ms. Hymowitz has not acknowledged receipt nor responded to my letter of 4-5-01 received in her office on 4-9-01. You know this, of course. I need **all** of my questions answered before I can respond further to her repetitive and unreasonable demands.

PLEASE RESPOND

CHRISTOPHER L. KEARNEY

Christopher L. Kearney

PS- I want the two doctors reports sent to Dr. McClure now!

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. ■ Print your name and address on the reverse so that we can return the card to you. ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Received by (Please Print Clearly) B. Date of Delivery 5-29-01 C. Signature X [signature] ☐ Agent ☐ Addressee |
| 1. Article Addressed to: ROBERT MILLS ABILITY MANAGEMENT 1350 MAIN ST. SPRINGFIELD, MA 01103-1619 | D. Is delivery address different from item 1? ☐ Yes If YES, enter delivery address below: ☐ No |
| | 3. Service Type ☒ Certified Mail ☐ Express Mail ☐ Registered ☐ Return Receipt for Merchandise ☐ Insured Mail ☐ C.O.D. |
| | 4. Restricted Delivery? (Extra Fee) ☐ Yes |
| 2. Article Number (Copy from service label) 2000 1530 0002 8236 1074 | |

PS Form 3811, July 1999 Domestic Return Receipt

**Chrisopher L. Kearney**

Redacted

**Phone: 330-264-4216**
**Fax: 330-264-4216**

Friday, June 01, 2001

Jefferson Pilot Financial
Attn: Connie Caldwell, Supervisor of Client Services Dept.
Client Services Dept.- Privacy
PO Box 21008
Greensboro, NC 27240

RE: Christopher L. Kearney, Jefferson Pilot Policies #H-493029, H-538069

Ms. Caldwell:

I received for the first time a copy of Jefferson Pilot Financial's **PRIVACY PRACTICES NOTICE**. This was sent to me folded and addressed to me with no signature. I am not sure who sent this. Please do not send me phantom letters.

I am enclosing a money order for $25.00 as a handling fee for the following request:

I request that I receive photocopies of the two IME medical examination reports. I participated in these examinations at the request of Robert Mills of Disability Management Services, Inc. of Springfield, MA. Previously, I have been promised copies of these reports following the examinations.

I request that I receive photocopies of the assignment letters, and the reports themselves signed by Dr. John Kenny, Ph.D. and Dr. Otto Kausch, M.D. I request copies of the reports, assignment letters, and any associated documents sent to Jefferson-Pilot, Disability Management Services, Inc., Psychiatric Disability Consultants, or any other affiliated consultant, company or other entity that may have received these doctors' reports and documents instead of Jefferson Pilot. That is, I want copies of these documents regardless of where they were sent.

Since these reports were completed in March 2001, I request this information be sent to me as promised.

Please mail or fax these documents to me by June 8th, 2001.

Sincerely,

Christopher L. Kearney

Christopher L. Kearney

cc: Ohio Dept. of Insurance



JEFFERSON PILOT
FINANCIAL

**PRIVACY PRACTICES NOTICE**

The Jefferson Pilot Financial companies* are concerned about your privacy. In order to issue and service high quality financial products and services, we collect personal information about you. **We do not sell your information to third parties**, and we disclose your personal information only as necessary to provide the products and services you expect from a financial services leader. **This summary of our practices is provided for your information. You do not need to take any action as a result of this notice, but you do have certain rights as described below.**

**Collecting Information.** To conduct our business, we may collect nonpublic personal information about you from:

- applications or other forms, such as name, address, Social Security number, assets and income, employment status and dependent information;
- your transactions with us, our affiliates, or with others, such as account activity, payment history, and products and services purchased;
- consumer reporting agencies, such as credit relationships and credit history. These agencies may retain their reports and share them with others who use their services;
- other individuals, businesses and agencies, such as motor vehicle reports, and medical and demographic information; and
- visitors to our websites, such as information from on-line forms, site visitorship data and on-line information collecting devices commonly called "cookies."

*We do not collect medical or health information, nor do we request financial information from consumer reporting agencies, on our mutual fund and brokerage consumers.*

**How We Treat the Information.** Within Jefferson Pilot Financial we restrict access to nonpublic personal information about you to those employees who need to know that information to provide our products or services or to otherwise conduct our business, including actuarial or research studies. We maintain physical, electronic, and procedural safeguards that comply with federal and state regulations to safeguard all your nonpublic personal information. We may also disclose all of the information described above to third parties with which we contract for services. We contractually require these third parties to protect your information. Examples of these third parties are:

- financial service providers, such as third party administrators, broker-dealers, insurance agents and brokers, investment companies, registered representatives, investment advisors, companies that perform marketing services on our behalf or on behalf of Jefferson Pilot Financial and another financial institution, or to other financial institutions with whom we have joint marketing agreements; and
- non-financial companies and individuals, such as our consultants and vendors and the Medical Information Bureau.

In addition, we may disclose your nonpublic personal information to medical care institutions or medical professionals, insurance regulatory authorities, law enforcement or other government authorities, or to affiliated or nonaffiliated third parties as reasonably necessary to conduct our business or as otherwise permitted by law.

Our privacy procedures apply even after you stop having any customer relationship with Jefferson Pilot Financial.

We retain the right to use ideas, concepts, know-how, or techniques contained in any nonpublic personal information you provide to us for our own purposes, including developing and marketing products and services.

**We do not disclose to our affiliates any information we receive about you from a consumer reporting agency.**

**We do not disclose your nonpublic personal information to third parties except as necessary to provide you our products and services.** You do have the right to review the personal information about you relating to any insurance or annuity product issued by us that we can reasonably locate and retrieve. You also can request that we correct, amend or delete any inaccurate information. If you wish to do this, please write Attn: Privacy Inquiry, to the address you normally use for your correspondence with us. If you don't have that address, write to: Jefferson Pilot Financial, Attn: Client Services Department-Privacy, P.O. Box 21008, Greensboro, NC 27420, describe the information you wish to see and enclose payment for our $25.00 handling fee.

* This Notice applies for the following Jefferson Pilot Financial companies:

| | | |
|---|---|---|
| Allied Professional Advisors, Inc. | Jefferson Pilot LifeAmerica Insurance Company | Jefferson Pilot Variable Corporation |
| Hampshire Funding, Inc. | Jefferson-Pilot Life Insurance Company | Polaris Advisory Services, Inc. |
| Jefferson Pilot Financial Insurance Company | Jefferson Pilot Securities Corporation | Westfield Assigned Benefits Company |

**Chrisopher L. Kearney**

Redacted

**Phone: 330-264-4216**
**Fax: 330-264-4216**

**PLEASE RESPOND**
2nd Request

Friday, June 01, 2001

Jefferson Pilot Financial
Attn: Connie Caldwell, Supervisor of Client Services Dept.
Client Services Dept.- Privacy
PO Box 21008
Greensboro, NC 27240

RE: Christopher L. Kearney, Jefferson Pilot Policies #H-493029, H-538089

Ms. Caldwell:

I received for the first time a copy of Jefferson Pilot Financial's PRIVACY PRACTICES NOTICE. This was sent to me folded and addressed to me with no signature. I am not sure who sent this. Please do not send me phantom letters.

I am enclosing a money order for $25.00 as a handling fee for the following request:

I request that I receive photocopies of the two IME medical examination reports. I participated in these examinations at the request of Robert Mills of Disability Management Services, Inc. of Springfield, MA. Previously, I have been promised copies of these reports following the examinations.

I request that I receive photocopies of the assignment letters, and the reports themselves signed by Dr. John Kenny, Ph.D. and Dr. Otto Kausch, M.D. I request copies of the reports, assignment letters, and any associated documents sent to Jefferson-Pilot, Disability Management Services, Inc., Psychiatric Disability Consultants, or any other affiliated consultant, company or other entity that may have received these doctors' reports and documents instead of Jefferson Pilot. That is, I want copies of these documents regardless of where they were sent.

Since these reports were completed in March 2001, I request this information be sent to me as promised.

Please mail or fax these documents to me by June 8th, 2001.

Sincerely,

Christopher L. Kearney

cc: Ohio Dept. of Insurance

**_Disability Management Services, Inc._**
_1350 Main Street. Springfield, MA 01103-1619 Tel:(413)747-0990 Fax:(413)747-1545_
_A third party administrator for:_
**_Jefferson-Pilot Life Insurance Company_**

June 5, 2001

Christopher Kearney

Redacted

Re: Policy Number/s: H-493029, H-538069
Claim Number/s: H-493029, H-538069

Dear Mr. Kearney,

Thank you for your letters of May 22 & May 25, 2001. It is again unfortunate that you continue to mischaracterize my explanations throughout the processing of your claim. Moreover, your ongoing clamoring appears to be a further attempt to distract yourself from continuing to meet your contractual obligation of submitting ongoing Proof of Loss.

We have received a response from Dr. Kausch. Dr. Kausch found that the statements made by your brother were inconsistent with the information obtained from the testing conducted during your evaluation. He explained that the conversations in this regard was short, and was within the scope of his agreement. We also have received and completed our review of the data from Dr. Kenny's testing. As promised, we have now forwarded both medical reports to Dr. Judd-McClure.

As you know, Ms. Hymowitz wrote to you on May 7, 2001 detailing the records that have been requested, but continue to remain outstanding. Please be sure to forward this information if you haven't already so that Ms. Hymowitz may complete her review.

We have also requested, but have yet to receive from you a completed Occupational Duties form, describing any and all activities and duties you performed for Innomation, Inc.

Finally, we have asked an independent occupational specialist to contact you in the near future. In our ongoing effort to understand your work experiences, we need to develop a further understanding of your previous work background and current duties to determine if there are any transferable skills between the both of them.

_d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME_
_Licensed as New England Claims Administration Services, Inc. in CA_
_d/b/a Centre Claims Administration Services in NH_

3239

Please feel free to contact me should you have any questions.

Sincerely,

Robert F Mills
Claims Consultant

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

3240

June 12, 2001

Mr. Robert Mills, Claims Consultant
Disability Management Services, Inc.
1350 Main Street
Springfield, MA 01103-1619

**PLEASE
RESPOND**

Re: Policy #H-493029 and H-538069

Mr. Mills:

Your continued requests, in writing, from both you and your forensic accounting partner for documents I already told you I don't have, many times in writing, and on the phone, is extremely irritating and obviously a continuation of the harassment directed at me.

I told Ms. Hymowitz, in my letter of 4-5-01, of my annoyance for repetitive requests and you have copies of all her correspondence. She completely ignored my concerns and did not respond to my questions posed in the letter of 4-5-01. I want answers to my questions. Furthermore she requested bank statements and checks for Kenwood Technology Group Inc., which have already been sent and received by Hymowitz. It is clear to me that she is acting in bad faith as you have approved and obviously encouraged.

I told you "I have no further records of Kearney Associates, Inc." in my letter to you 12-22-00. I have also told you of this in a conversation back then and I told you in our 2-15-01 telephone conversation. Despite all this, you and your forensic accountant continue to ask me for these records. This is with your full knowledge. Once again, why the continued harassment?

Please start acting in good faith, and share your information. I am tired of answering repetitive requests from you, JP, Hymowitz, etc. I was very surprised that you told me that you didn't even have my entire claim file. You told me this in our phone conversation of 10-30-00. You then asked for the name of the agent who sold me the policy. You have contacted him, I understand, since our conversation of 10-30-00 and harassed him with various requests.

How irresponsible can you and DMS be in making accusations and threats in letters without reading the entire file? This includes your boss, Mr. Hughes, who wrote me a very threatening 3-page letter dated October 2, 2000. Despite asserting that he has read the file on me, he obviously didn't. In fact he didn't even recognize my name when I called him after my return letter was sent to him. He said, "Should I know you?" I was inquiring about the check for that month which he threatened to withhold. In our latest phone conversation of 2-15-01, you said you are "aware" of previous correspondence in my file. It is obvious that you haven't read the file and will continue to ask for documents already sent.

Please be aware of the attached copy of my letter to Mr. Robert Maxwell of 11-29-94 stating that I have enclosed the 1992 and 1993 tax returns and W-2's. Why the hell are you letting Ms. Hymowitz continue her harassment for the 1992 return and W-2? Why the hell doesn't she read through the 3000 pages of files I sent and recognize the bank statements and copies of checks are very prominently included? Why the hell doesn't she respond to my questions in my letter of 4-5-01, sent registered mail, and received by her office on 4-9-01? Your entire operation is filled with bad faith and you and your superiors are directing it.

# PLEASE RESPOND

***Where the hell are the benefit checks this month?*** You told me you are unaware of when the checks are due. Yet, in a phone conversation with you early last year you told me that checks were processed at the end of the month or first of the month for the previous month. Then the checks are sent out then or within the first week of the month. Again, you, Mr. Hughes, and your superiors are withholding my checks this month intentionally. You seem to enjoy my distress and seem to enjoy punishing me for my efforts to preserve my legal rights with regard to my two contracts with your multibillion-dollar insurance company. Your resources are endless in attempts to harass me.

I know that the harassment is tolerated and even encouraged at all levels of your organization as is evidenced in your collusion with Ms. Harden, and Ms. Betty Lou Hand in nearly having my policies cancelled by holding my premium payment check. I have never received any apology for your sloppy and deceitful conduct. Also, in total contrast to your statement that I called you in this instance on 1-27-01, I did not call you. Your buddies at JP must have called you and told you that I was aware of what was happening to my policies with your certain knowledge. You really hoped that you could deceive me and have my policies lapse. What a convenient situation for Mr. Mills- what kind of bonus do you receive when you are successful with these deceitful tactics?

Your letter of June 5th, 2001 is a joke. You say: "It is again unfortunate that you continue to mischaracterize my explanations throughout the processing of the claim." You later mischaracterize your own actions by stating: "As promised, we have now forwarded both medical reports to Dr. Judd-McClure." In your letter to me of 2-2-2001, you state: "We will be pleased to send a copy of the results of those examinations directly to Dr. Judd McClure ***as soon as we receive them.***" Now you declare, after holding the written reports for nearly three months, you sent them to my doctor, "**as promised**."

How could it be clearer to anyone that my health is not a concern to you? Your many statements on the phone to me that I am, in your opinion, able to work full time because I sound okay on the phone to you and I am talking to you on the phone and I am not in a dark place or in bed as is your understanding of depression- your ***"layman's*** understanding", you say.

I do not ask for nor do I appreciate your opinion of my medical condition. It makes me even more upset to hear your "***Layman's Misunderstanding of depression.***" You do this in all phone conversations thinking this harassment won't be brought to anyone else's attention. This is one reason I rarely speak on the phone with you. Your harassment sets me back days and weeks. ***Please don't play doctor in my claim.***

Despite your lack of cooperation and Ms. Hymowitz lack of cooperation in responding in letters with answers to my questions (most recent letters attached), I am continuing to look for, retrieve, and photocopy documents, which seem ridiculous to me for your "ongoing evaluation of my claim." Ms. Hymowitz has not responded to my letter received by her over two months ago.

I plan to list, in an upcoming letter, your fiduciary duties of good faith and fair dealing with regard to my insurance contracts. Obviously, you and your associates think that these don't apply to Jefferson-Pilot, since you can throw unlimited dollars into harassment procedures to continue the harassment.

**PLEASE RESPOND**

Have you talked yet to one of the JP attorneys so that you can provide me with an exact definition of "proof of loss" as requested by me on 10-30-00? You said that you don't know because DMS represents so many different insurance companies and they all have different definitions. You have referred to your perceived duties on my part under this term, but it still remains clear as mud to me of why requirements have become ever more burdensome each day.

Your duties include answering all my questions in a timely manner. What a joke, huh?

I wonder all the time: How many other legitimate insurance claims, are handled by you and DMS and JP and Hymowitz with such flagrant disregard for the law?

How many other people are subjected to such emotional distress in your zeal to deny legitimate claims and make more money for yourself and DMS? What is your bonus structure? Why does JP not even attempt to distance itself from the bad cop, DMS? Are they so arrogant that they think that they can get away from their responsibilities to their policyholders and claimants? Is JP number one in the country in profits among the insurance companies because they approve of the harassment and intimidation techniques?

Bad faith runs rampant. It affects me severely and now my family has to put up with the absolute frustration I feel. Now my mother has to be concerned about your following and photographing me and probably her. Ms. Harden told me they follow me into the Church and "sit with me." I did not attend much after hearing that.

Thanks for all of your help in making me a more mistrusting person.

Christopher L. Kearney

Christopher L. Kearney

Enclosures:

Copies of:

Robert Maxwell letter to Christopher Kearney dated 11-8-94, received 11-26-94

My letter of 11-29-94 responding to request for documents with tax returns

My letter to Mills of 5-25-01 with stamped new request for unanswered questions

My letter to Hymowitz of 4-5-01, unacknowledged or responded to, with stamped request for a response.

June 16, 2001

Mr. Robert Mills, Claims Consultant
Disability Management Services, Inc.
1350 Main Street
Springfield, MA 01103-1619

**PLEASE RESPOND**

Re: Policy #H-493029 and H-538069

Mr. Mills:

Enclosed please find copies of the Federal Tax Returns for Innomation, Inc. (Kearney Magnetics and Engineering, Inc. in 1995), which I just received, from the IRS. These returns are for the years 1995, 1996, and 1997.

Your perceived ever-expanding powers to smother me with paperwork are still not agreeable to me. The policies state that "reasonable proof" of income "may" be required.

As demanded, I am also enclosing a copy of the 941 Employer's Quarterly Federal Tax Return of Kenwood Technology Group, Inc. dated 4-30-01 for the period ending 3-31-01.

Your partner forensic accounting firm has recently requested copies of all receipts, invoices, checks, purchase orders, bank statements, and on and on for Kenwood Technology Group, Inc. for the year 2001. I will attempt to comply even though this is clearly continued harassment.

As stated previously, your demand for a completed Occupational Duties Form is not relevant to Innomation, Inc. You appear to be making up new rules with each demand.

Again, I am attaching a letter to you of May 25, 2001 and a letter to your forensic accounting firm of ***April 5, 2001*** (over 2 months), which have been ignored. ***This is my third request.*** Hopefully you and Ms. Hymowitz will soon respond to my questions in these letters.

Finally, (for today anyway), I ask you for an explanation of your statement in your letter of 6-5-01: "In our ongoing effort to understand your work experiences, we need to develop a further understanding of your previous work background and current duties to determine if there are any transferable skills between the both of them."

Sincerely,

Christopher L. Kearney

Christopher L. Kearney

JUN 27 2001 16:00 FR JP 3366914254 TO 914137471545 P.03/05

JUN 21 2001

**Chrisopher L. Kearney**

Redacted

**Phone: 330-264-4216**
**Fax: 330-264-4216**

**PLEASE RESPOND**

Wednesday, June 20, 2001

Jefferson Pilot Financial
Attn: ~~Connie Caldwell~~, Supervisor of Client Services Dept.
Client Services Dept.- Privacy
PO Box 21008
Greensboro, NC 27240

RE: Christopher L. Kearney, Jefferson Pilot Policies #H-493029, H-538069

Ms. Caldwell:

I left a message on your phone recorder today concerning my mailed request of 6-1-01, received by Jefferson Pilot on 6-4-01. I have had no response from Jefferson Pilot. I am enclosing another copy of that letter of 6-1-01 for your convenience. I request an immediate reply.

Also, for another request, I am enclosing a check (#177) for $25.00 as a handling fee for the following request:

I request copies of any and all surveillance logs, photos, sound or video recordings or any other documents pertaining to current or past surveillance by Jefferson Pilot or any of its agents, representatives, or outside services. I request that all of this information, for the entire period of my claim (2-8-93 to present), be sent to me no later than July 5th, 2001.

I am mailing this letter with check and attached previous letter of 6-1-01 via US Express Mail so that you will have plenty of time to get this information to me promptly.

Sincerely,

Christopher L. Kearney

Christopher L. Kearney

cc: Ohio Dept. of Insurance

JUN-26-2001 10:03 FROM:JEFFERSON PILOT 603 226 0891 TO: P.002/003

JUN 21 2001

Chrisopher L. Kearney

Redacted

Phone: 330-264-4216
Fax: 330-264-4216

PLEASE RESPOND

Wednesday, June 20, 2001

Jefferson Pilot Financial
Attn: ~~Connie Caldwell~~, Supervisor of Client Services Dept.
Client Services Dept.- Privacy
PO Box 21008
Greensboro, NC 27240

RE: Christopher L. Kearney, Jefferson Pilot Policies #H-493029, H-538069

Ms. Caldwell:

I left a message on your phone recorder today concerning my mailed request of 6-1-01, received by Jefferson Pilot on 6-4-01. I have had no response from Jefferson Pilot. I am enclosing another copy of that letter of 6-1-01 for your convenience. I request an immediate reply.

Also, for another request, I am enclosing a check (#177) for $25.00 as a handling fee for the following request:

I request copies of any and all surveillance logs, photos, sound or video recordings or any other documents pertaining to current or past surveillance by Jefferson Pilot or any of its agents, representatives, or outside services. I request that all of this information, for the entire period of my claim (2-8-93 to present), be sent to me no later than July 5th, 2001.

I am mailing this letter with check and attached previous letter of 6-1-01 via US Express Mail so that you will have plenty of time to get this information to me promptly.

Sincerely,

Christopher L. Kearney

Christopher L. Kearney

cc: Ohio Dept. of Insura

CHRISTOPHER L. KEARNEY 56-2799 177

Redacted

Date 6-20-01

Pay to the order of Jefferson Pilot Financial $ 25.00

Twenty-five and 00/100 Dollars

BANK ONE.

Memo Document handling fee Christopher Kearney

⑆044000037⑆ 6302176694 0177

JUN-26-2001 10:03 FROM:JEFFERSON PILOT 603 226 0891 TO: P.001/003

JEFFERSON PILOT

John R. Evans, FLMI, ACS
Assistant Vice President - Client Services

Jefferson Pilot Financial
PO Box 21008
Greensboro, NC 27420

bus: 336 691 3461
fax: 336 691 4390
em: john.evans@jpfinancial.com

June 20, 2001

Christopher Kearney

Redacted

Dear Mr. Kearney:

We have received your letter dated June 1, 2001 in which you have requested various medical reports. To obtain copies of those reports, you must contact the providers directly. Therefore, we are returning your $25.00 money order to you.

Please be assured that Jefferson Pilot is concerned about your privacy. We do not disclose any information we receive about you from a consumer reporting agency to our affiliates. We do not sell your information to third parties. We do not disclose your information to third parties except as necessary to provide you with our products and services, or unless legally required or authorized by you to do so.

Sincerely,

John R. Evans, FLMI, ACS

JRE/cm

| Post-it® Fax Note 7671 | Date 06/26/01 | # of pages ▶ 3 |
|---|---|---|
| To Todd Dittman | From Norm Carrier | |
| Co./Dept. | Co. | |
| Phone # | Phone # | |
| Fax # | Fax # | |

Norm Carrier

**Donna Judd-McClure, Ph.D.**
*Clinical Psychologist*

26700 Goose Creek Rd.
McArthur, OH 45651-8984
Phone: 1-740-596-3823

July 7, 2001

In reply to:DMS letter of June 5, 2001

Mr. Robert F Mills, Claims Consultant
Disability Management Services, Inc.
1350 Main St.
Springfield, MA 01103-1619

RECEIVED JUL 2001 DISABILITY MANAGEMENT SERVICES

Dear Mr. Mills:

This letter is written in reply to your letter of June 5, 2001 in which you enclosed copies of the medical reports completed by Dr. Kausch & Dr. Kenny for Christopher L. Kearney, DOB: Redacted

This first question that comes to mind is: Why did you wait for 2 ½ months to send these to me? Mr. Kearney told me in February that you promised him that copies would be sent to me "as soon as we receive them." By this broken promise, you have caused major stress and anxiety to my client.

I agree with the following statements in the report by Dr. Kausch:

"He said he became even worse in October when the insurance company began to harass and intimidate him." And concerning his depression: "most was due to his problems with the insurance company."

It is my strong professional opinion that DMS and Jefferson Pilot has, in fact, been harassing and intimidating my client, Mr. Kearney, for many years, at least since 1997. Furthermore, my client has been very upset with various delays of payments, threatening letters, unanswered policy questions and more since 1994.

This harassment and intimidation, including misleading and false statements, has been constant the past few years. It has been so severe that my client has had a major setback in his business and personal relationships to such a degree that I have been very concerned about his mental health and his ability to live through this extreme conduct on the part of the insurance company. His severe emotional distress is the result of your malicious conduct.

Mr. Kearney, at his insistence, has shown me some of the correspondence over the years that have particularly aroused great fear in him that he cannot trust his insurance company to send the benefit checks in a timely and consistent manner, if they send them at all. Because his original business failed due to his back problems that required surgery and his concurrent major depression, he has been severely distressed financially as well as emotionally. He told me that he had been making nearly $100,000.00 per year in salary prior to his disability.

To Mr. Kearney's credit, he has pursued another occupation and has used his benefit checks to help start and sustain his current business, Kenwood Technology Group. He has had hopes that, with success, he could be free of the disability company and live with less anxiety and depression.

He has told me, that despite the inability to work full time, he has made progress in his business until your threats of, and withholding of, benefit checks devastated him emotionally last October. He said he hasn't been able to work much, if at all, to this day. He has lost faith in and trust in people in general, especially persons working on your behalf.

RJM

Presently, Mr. Kearney says that he has been again contacted by two more agents who are "independent occupational rehabilitation specialists." Wasn't Janet Beattie, MS. CRC, CIRS, supposed to be independent? Having met with her personally, it is abundantly clear to me that she met with my client under false pretenses. Because of her intimidation techniques, my client has had understandable fear of your agents.

I wrote to Ms. Candra Steen on March 25, 2000 (copy of which you received) and stated in paragraph number five: "The number of individuals in various states across the country that are involved in Mr. Kearney's case is creating an environment wherein confidentiality cannot be maintained. It is important to maintain a working relationship with my client, an environment of trust. I do not believe it is in my client's best interest to share his present adjustment with so many individuals."
It is very clear by your outrageous conduct that Mr. Kearney's health is of no concern to DMS, Jefferson Pilot, and your many agents.

I notice from the medical reports that you had Mr. Kearney followed around by CS Claims Group, Inc. last year from 2-29-00 to 5-20-00. This was done despite my written continuance of disability form of 3-10-00 sent to you with my diagnosis of Mr. Kearney as "Major Depression with paranoid ideations." Wouldn't it have been prudent of the insurance company to have Mr. Kearney submit to an IME at that time rather than follow around a person with paranoid ideations? Apparently you disregard my reports. If you had doubts about my diagnosis, then you should have set up an IME immediately. Why not several years ago? Mr. Kearney has never, to my knowledge, been opposed to submitting to an IME.

I sent a copy of my files to you last January despite your refusal to answer my questions in my letter of March 25, 2000. It is my professional right and obligation to know the name of the professional and his/her credentials before sending this information. You refused to answer this question and you refused to have a psychiatrist from your office call me, despite your promise to Mr. Kearney that you would do this.

After this, you have the nerve to characterize my fee, which was itemized and in accordance with the principles of the American Psychological Association, "tantamount to extortion." With regard to your statement to Mr. Kearney in your letter to him of January 24, 2001: "we feel that this excessive charge for photocopying..." This is a fraudulent statement. It was not merely for photocopying. See my invoice of December 21, 2000.

Because of the frustrations I have had dealing with your insurance company and the fact that you paid less than 50% of my invoice of December 21, 2000, I have had to raise my hourly rate to Mr. Kearney to $150.00 per hour from $120.00 per hour effective January, 2000. This is unfair to Mr. Kearney and supports his concerns to me that your harassment techniques towards me and Dr. Lehenbauer are intended to make things more difficult for him.

My client, Mr. Kearney, has encountered more oppression and maliciousness by an insurance company than any client I have ever seen in my 28 years of practice.

To this point, severe damage has been done to my client's emotional and occupational well being as a result of your past and ongoing harassment and intimidation. I find it extremely difficult to encourage my client that things will get better with the insurance company because it is quite apparent that your outrageous conduct is very likely to continue, in my opinion, as it is now and has been for years.

Sincerely:

Donna Judd-McClure PhD

Donna P. Judd-McClure, Ph.D.
Ohio Psychologist

---

cc: Mr. Christopher Kearney
Thompson, Hine and Flory LLP, 10 W. Broad . Columbus, Ohio 43062

*Disability Management Services, Inc.*
*1350 Main Street. Springfield, MA 01103-1619 Tel:(413)747-0990 Fax:(413)747-1545*
*A third party administrator for:*
*Jefferson-Pilot Life Insurance Company*

July 13, 2001

Christopher Kearney

Redacted

Re: Policy Number/s: H-493029, H-538069
Claim Number/s: H-493029, H-538069

Dear Mr. Kearney,

We have your letters dated June 12 and June 16, 2001, and a copy of your letter dated June 25, 2001, addressed to Baker and Baris, Inc. We have also received the 1995 Corporate Tax Return for Kearney Magnetics & Engineering, and the 1996 and 1997 Corporate Tax Returns for Innomation, Inc.

We are at a loss regarding your continuing refusal to complete a Description of Occupation form outlining the duties you preformed for Innomation, Inc. As you know, prior to our questioning you about this company on 3/7/01, you never mentioned it in any of your written or verbal communications. When we asked you about the work you did for this organization you said "The work I did for Innomation, Inc. was as an agent of Kearney Associates, Inc." If we rely on that explanation, and rely on your statement that you told me "...by letter on 12-22-00 that you have no further documents to send concerning Kearney Associates, Inc", one would necessarily conclude that the tax return and all other information pertaining to Innomation, Inc., and all of the work you did for that firm as an agent of Kearney Associates, would have been in our file as of 12-22-00. Yet it wasn't.

In your letter dated 3/21/2001, you also state that "The time I spent (working for Innomation) has already been accounted for in my reports for Kearney Associates Inc." This would seem to infer that the duties you did for Innomation, Inc., which you say were "sales and some management", were identical to those duties you did for Kearney Associates, Inc." However, inasmuch as Kearney Associates was a manufacturers representative company, and Innomation, Inc was a firm that was involved in the actual design and manufacturing of industrial custom equipment, one would have to question if,

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

3632

at least, *some* of the duties you did for Innomation, Inc., may have been different than those you were performing for Kearney Associates, Inc. Our information is that some duties *were* different, yet you did not advise us of those activities prior to 3/21/01 and you continue to decline to detail those activities.

As you know, since you claimed that your ailments have caused you to be unable to work as long in the office or make as many sales calls as you did prior to disability, we asked you for documentation that might support that claim. As we pointed out to you in our letter dated 10/2/2000, the financial records we presently have do not reflect any reduction in travel related expense commensurate with the onset of your difficulties. While you have stated that the travel expenses which continued after your disability started were those of other employees, you have not furnished any documentation that would show that the travel expenses occurring before the disability started were yours, or documentation that would show that the travel expenses which occurred after the disability started were someone else's.

The above and other issues we have discussed with you are pertinent to our evaluation of your eligibility for benefits under your disability policy. The policy provides benefits under the Residual Disability provision if you are: (A) <u>unable</u> to do one or more of the substantial and material duties of your profession; or (B) <u>unable</u> to do your usual daily business duties for substantially as much time as is usually required to do such duties, and such inability results in an earnings loss. In this situation, determining any disability related earnings loss you may have is difficult for a variety of reasons. First of all, you are claiming that you are unable to drive <u>as much</u> as you used to be able to drive, and you are unable to make <u>as many</u> sales calls as you used to be able to make (While you, in fact, continue to both drive and make sales calls). Accordingly, rather than having a situation where there is a <u>complete</u> inability to do something, in this instance we are trying to evaluate a claim in which there is only a <u>degree</u> of inability. Under the best of circumstances, objectively determining the extent of only a degree of inability, in any claim, is difficult. In claims such as this, where the medical limitations are primarily subjective in nature, measuring the impact of your disability on your ability to perform your predisability duties, and it's impact on earnings, becomes even more difficult.

What makes this claim even more problematic to evaluate, however, is that you continue to perform the above duties <u>in a different occupation.</u> (To answer the question in your June 16th letter, this is the issue that I was addressing when I referred to a comparison analysis of the skills required to do your present job versus those required to do your previous job). This causes us to have to consider whether or not there are other factors, besides disability, which are impacting the amount of sales calls you make and the amount of driving you do. Along these lines, the following are just some of the questions we must necessarily attempt to answer: 1) Are your sales calls and driving activities self limiting because of the lack of business (i.e. are you performing all of the sales calls that can be made in the new enterprise?) 2) Are you electing not to perform as many sales calls, in order to engage in some other, business or non-business, activity? 3) Did litigation with one or more of your customers (such as JE Grote) in any way affect your business? 4) Did the new business, as with many new businesses, simply not succeed? Etc.

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

3633

I think we should clarify that, at this point, we are not questioning whether or not you have a medical condition for which you are receiving treatment. However, the existence of a condition alone does not necessarily equate to benefit eligibility under the Residual Disability benefit provision. There must be a disability, and the disability must be the cause of the income decrease. In this case, the documentation we presently have is just not conclusive that you qualify for benefits under those parameters. It is for these reasons that we continue to investigate your claim and ask you for the documentation and information we have requested. Contrary to what you seem to feel, we are not asking you for the information to annoy you.

Considering all of the above, our ongoing need to obtain documentation substantiating your eligibility for continuing benefits, and your clearly expressed dissatisfaction both with us and the claim process, it occurs to us that exploring a compromise settlement of this claim might be in the best interest of both parties. This offer is made in all sincerity, and we hope its intention is not misinterpreted. If you are not interested in such a dialogue, please simply tell us. If you are, kindly let us know. Naturally, if you are not interested in exploring an alternative resolution, we would need to communicate to you the information that is presently required to further evaluate your claim.

I hope this letter addresses your outstanding concerns, and answers the questions about why we need certain information. If not, please contact me and I'll do my best to provide you with whatever additional information you require. In the event that you would prefer to have an attorney represent your interests, we would be happy to speak with that individual as well. I can be reached by telephone at 1-800-883-0596 ext. 1076. I look forward to your reply.

Sincerely,

Robert Mills
Claims Consultant

cc: Ms. Mary Baker
Ms. Leslee Hymowitz

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

AUG-28-2001 16:08 FROM:JEFFERSON PILOT 603 335 0891 TO: P.001/002

Post-it® Fax Note 7672 Date 8/28/01 # of pages 2 Time 4:00

To Todd Ditmer From Joe Nederieger

Law Offices
John J. Spiegel
Professional Association
700 Concord Building
66 West Flagler Street
Miami, Florida 33130
Telephone (305) 539-0700

John J. Spiegel

RECEIVED AUG 15 2001 ORDINARY CLAIM DEPARTMENT #3514

JP FINANCIAL IND. CLAIMS 01 AUG 28 AM 10:55

Via Certified Mail

August 10, 2001

Jefferson-Pilot Life Insurance Company
Post Office Box 21008
Greensboro, NC 27420

Re: Our Client: Chris L. Kearney
Policy Numbers: H-493029 & H-538069

Gentlemen:

Mr. Kearney has retained this office to represent him in connection with his ongoing disability claim with your company pursuant to the operative terms and conditions of the above captioned policies.

I have been recently retained and am now in the process of carefully reviewing the history of the claims under these policies.

In the meantime, you are to no longer have any direct communication with Mr. Kearney. Any communications you wish to direct to Mr. Kearney should be sent to the undersigned. This includes written and oral communications. It is my impression that Mr. Kearney has been the ongoing victim of substantial abuse and harassment by your company, it's agents, servants, and employees. This conduct must cease immediately.

Please also be on notice that from this point forward, the specific terms and conditions contained in the contracts of insurance apply. Mr. Kearney will no longer be filling requests for documents or other information unless such requests are supported by specific language, as provided in each of the above contracts. If it is not in the contract of insurance you will not get it.

Concerning the contracts of insurance, I am requesting that you provide this office with certified copies of the complete policy for each of the above numbered contracts. This includes all application forms, endorsements, addenda, and the policies

AUG-28-2001 16:08 FROM:JEFFERSON PILOT 603 226 0891 TO: P.002/002

Page Two
August 10, 2001

themselves. Please get those sent here at your earliest opportunity.

Please also undertake to make sure that Mr. Kearney receives his disability benefits every month on time. No delays will be tolerated.

Please be governed accordingly.

Sincerely yours,

John J. Spiegel

JJS/mc

cc: Chris Kearney

Law Offices John J. Spiegel Professional Association
700 Concord Building • 66 West Flagler Street • Miami, Florida 33130 • Telephone (305) 539-0700

0627

*Disability Management Services, Inc.*
*1350 Main Street Springfield, MA 01103-1619 Tel:(413)747-0990 Fax:(413)747-1545*
*A third party administrator for:*
*Jefferson-Pilot Life Insurance Company*

August 23, 2001

Christopher Kearney

Redacted

Re: Policy Number/s: H-493029, H-538069
Claim Number/s: H-493029, H-538069

Dear Mr. Kearney:

Thank you for submitting the recent Continuance of Disability form.

We have yet to receive your response to my July 13, 2001 letter. Please be sure to respond as soon as possible so that may continue with the processing of your claim.

If you have any questions, I can be reached directly at 1-800-883-0596 ext. 1076.

Sincerely,

Robert F Mills
Claims Consultant

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

3200

(305) 539-0700

8/2 Spoke w/ Atty John Spiegel. I was returning his phone call. Explained to him that his 8/1/01 letter was faxed to this office this morning. We were unaware that he represented Mr. Kearney until today. Explained to him we would be reviewing his letter and responding accordingly. I will notify other company representatives to communicate directly w/ Atty Spiegel if needs

(RFM)

**_Disability Management Services, Inc._**
_1350 Main Street, Springfield, MA 01103-1619 Tel:(413)747-0990 Fax:(413)747-1545_
_A third party administrator for:_
**_Jefferson-Pilot Life Insurance Company_**

September 18, 2001

Law Offices
John J. Speigel
700 Concord Building
66 West Flagler Street
Miami, FL 33130

Attention: John J. Speigel

Re: ***Christopher Kearney***
Policy Number/s: H-493029, H-538069

Dear Mr. Speigel:

Thank you for your August 10, 2001 letter. As I explained to you during our August 28th telephone conversation, our office had just been provided with a fax copy of your letter earlier that morning. Please be sure to direct all further correspondence concerning Mr. Kearney's claim to my attention at the above address.

As you requested, enclosed you will find a specimen copy for each of Mr. Kearney's policies. We look forward to having a discussion with you concerning the next steps in the administration of this claim after you have had time to review the history of Mr. Kearney's claim and the provisions of his policies.

Please feel free to contact me directly at 1-800-883-0596 ext. 1076.

Sincerely,

Robert F Mills
Claims Consultant

_d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME_
_Licensed as New England Claims Administration Services, Inc. in CA_
_d/b/a Centre Claims Administration Services in NH_

3194

Law Offices
John J. Spiegel
Professional Association
700 Concord Building
66 West Flagler Street
Miami, Forida 33130
Telephone (305) 539-0700

John J. Spiegel

October 19, 2001

William J. Hughes, V.P.
Claim Operations
Disability Management Services, Inc.
1350 Main Street
Springfield, MA 01103

Via Fax: 413.747.1545

**Re: Our Client/Your Insured: Chris Kearney**
**Policy Numbers: H0493029 & H053069**

Dear Mr. Hughes:

Our meeting of October 11, 2001 began with you threatening to reduce Mr. Kearney's disability benefits from $6,786.00 to $3,500.00 per month, on the stated basis that for the *past seven (7) years* Jefferson Pilot and your firm, DMS, *mistakenly* overpaid my client. You also made it clear that the reduction in benefits would occur if Mr. Kearney did not accept a lump-sum "settlement" which would be calculated on the basis of 70% of the present value of the reduced monthly benefit using an approximately 10% discount factor. The meeting concluded. Mr. Kearney was not interested in making a counteroffer to your offer to him of $280,000.00.

Since the meeting, you called asking for a counteroffer. Again, Mr. Kearney, on my advice, declines to counter to your figure. Also since our meeting, I have had an opportunity to review the documents, the facts, the policies, the proposal from Jefferson Pilot upon which my client materially relied in making his decision to purchase the subject policies, and my firm belief is that Jefferson Pilot and DMS have indeed been paying Mr. Kearney the correct amounts over these many years.

It cannot be any surprise to you now that Mr. Kearney's psychiatric condition has worsened. Your own examining psychologist and psychiatrist recently confirmed the existence and severity of Chris' mental illness.

It is my feeling that Mr. Kearney would be better off with this claim over and done with, but if that is to occur, it must be done in good faith, without intimidation, fear or threats.

To demonstrate our good faith, I enclose the "proposal" given Mr. Kearney by Jefferson Pilot's Agent prior to him buying this coverage. While you review this, keep in mind that the representations in the proposal are legally binding upon the insurance carrier, any ambiguities will be construed against the carrier, and any doubts will be resolved in favor of the insured and against the carrier. Jefferson Pilot, by conduct, has ratified the representations and promises in the proposal. Also, other documents from Jefferson Pilot admit or tend to admit the existence of ambiguities in the policies, particularly with regard to the distinction between the types of claims, classes of benefits, applicability of cola and the SS supplement.

If Jefferson Pilot is interested in a fair lump-sum arrangement, please recalculate your offer based on total benefits, a 7% cola, the social security supplement, lifetime benefits, and a far more realistic discount factor.

I look forward to your response.

Sincerely,

John J. Spiegel

JJS/js
Encl: Proposal 13 pages

Law Offices John J. Spiegel Professional Association
700 Concord Building • 66 West Flagler Street • Miami, Florida 33130 • Telephone (305) 539-0700

10-19-2001 10:59AM FROM P. 1

Law Offices
John J. Spiegel
Professional Association
700 Concord Building
66 West Flagler Street
Miami, Forida 33130

Telephone (305) 539-0700

John J. Spiegel

FACSIMILE TRANSMISSION COVER SHEET

MESSAGE SENT BY: John Spiegel

FAX TELEPHONE NO. (305) 539-1894 DATE: 10/19/01 TIME: 11:00 AM

PLEASE DELIVER TO

NAME: Wm. Hughes, V.P.

COMPANY NAME: JMS

FAX TELEPHONE NO.: 413-747-1545

TOTAL NUMBER OF PAGES, INCLUDING COVER SHEET: 16

RE: KEARNEY # 0495029 + # 053069

COMMENTS: Two page letter + 13 page enclosure & proposal

*The information contained in this transmission is privileged and confidential. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, disruption or copying of this communication is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone collect and return the original message to us at the above address via u.s. postal service.

IF MESSAGE IS NOT CLEAR, PLEASE CALL MERCY CASAS (305) 539-0700

FROM : FAX NO. : Jun. 09 2003 11:05AM P6

***Disability Management Services, Inc.***
*1350 Main Street. Springfield, MA 01103-1619 Tel:(413)747-0990 Fax:(413)747-1545*
*A third party administrator for:*
***Jefferson-Pilot Life Insurance Company***

October 22, 2001

John J. Speigel
Law Offices John J. Spiegel
700 Concord Building
66 West Flagler Street
Miami, FL 33130

Re: Policy Number/s: H-493029, H-538069

Dear Mr. Speigel:

We received your facsimile of October 19, 2001 relative to the above claim. Before addressing the facts of the coverage and the claim, I would like to briefly address your characterization of the tenor of our meeting.

As you know, rather than beginning the meeting with a threat to reduce Mr. Kearney's benefit as you state, I actually started the meeting with an apology for having to advise you of our recent discovery that Mr. Kearney has been receiving monthly benefits at a rate significantly higher than the maximum benefit allowable under the terms of the policy for his claimed Residual Disability. I also advised you that this overpayment came to our attention upon our close examination of the policies after you requested a second set of "certified" contracts. This is in stark contrast to Mr. Kearney's suggestion (as per the voice-mail message you left on October 18, 2001) that the reduction in benefits was "in bad faith" and "retaliatory".

The above aside, we advised you that the maximum benefit allowable under the above policies for someone who is Residually Disabled is $2,125.00 under policy # H-493029 and $1,375.00 under policy #H-538069. As you know, Mr. Kearney is receiving benefits at the rate of $4,290.00 under policy #H-493029 and $2,496.00 under policy #H-538069. The increased amounts were the result of the company incorrectly paying the Social Security Supplement Benefit, and providing a yearly 7% increase under the Cost of Living Increase Rider based upon the combination of the Basic Monthly & Social Security benefit. As we pointed out to you, the Social Security Supplement & Cost of Living benefit are payable in the event of a Total Disability only, and are not payable in the event of a Residual Disability, which is what Mr. Kearney has been claiming since 1993.

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*

I appreciate the materials you forwarded with your fax of October 18th. However, I did not note anything in the "proposal" documents that are contrary to what the policies state, or that support your contention that Mr. Kearney has been receiving the correct amount of benefits. Also, it is interesting that, in your cover letter, you did not cite any particular parts of the proposal that you feel supports your position or is contrary to ours.

Nevertheless, in the interest of goodwill while we fully review the claim and the documents you supplied, we are sending an additional payment to Mr. Kearney based on the current, incorrect amount he has been receiving. This payment is, of course, being made with a full reservation of rights.

We will be in contact with you again in the near future regarding the company's position. If you have any question in the meantime, please feel free to call me (ext. 1052) or Mr. Mills (ext. 1076).

Sincerely yours

William Hughes
Vice President/Claim Operations

**_Disability Management Services, Inc._**
_1350 Main Street. Springfield, MA 01103-1619 Tel:(413)747-0990 Fax:(413)747-1545_
_A third party administrator for:_
**_Jefferson-Pilot Life Insurance Company_**

November 28, 2001

John J. Speigel
Law Offices John J. Spiegel
700 Concord Building
66 West Flagler Street
Miami, FL 33130

Re: Policy Number/s: H-493029, H-538069
Claim Number/s: H-493029, H-538069

Dear Mr. Speigel:

Under separate cover, we have sent Mr. Kearney another benefit payment at the current and incorrect amount that he has been receiving. We are making this payment in the interest of goodwill while we fully review the claim and the documents you supplied. This payment is, of course, being made with a full reservation of the company's rights under the policy.

We will be in contact with you when our review is completed. If you have any questions in the interim, please do not hesitate to call us at 1-800-883-0596.

Sincerely,

Robert F Mills
Claims Consultant

_d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME_
_Licensed as New England Claims Administration Services, Inc. in CA_
_d/b/a Centre Claims Administration Services in NH_

FROM : FAX NO. : Feb. 07 2002 05:23PM P1

# FAX MESSAGE

Date: Thursday, February 07, 2002

To: Disability Management Services, Inc.
Robert Mills
Phone: 800-883-0596
Fax: 413-747-1545

From: Christopher L. Kearney
Phone: 330-264-4216
Fax: Same as Above- Automatically Switches For Faxes

Pages: 1

---

Per our brief phone conversation today, Mr. John Speigel, of Miami, Florida is no longer representing me in this insurance matter. Please send any/all correspondance to me at 621 E. Bowman St., Wooster, Ohio 44691.

I will let you know if/when I have new representation.

You told me benefit checks were authorized and sent out already on the 29th of Jan. I have not received these checks but I will continue to look for them in the mail.

Christopher L. Kearney

Redacted

*Disuoility Management Services, Inc.*
*1350 Main Street. Springfield, MA 01103-1619 Tel:(413)747-0990 Fax:(413)747-1545*
*A third party administrator for:*
*Jefferson-Pilot Life Insurance Company*

March 11, 2002

Christopher Kearney

Redacted

Re: Policy Number/s: H-493029, H-538069

Dear Mr. Kearney:

We are in receipt of your February 7, 2002 fax notifying us that Mr. John Speigel is no longer representing you in this insurance matter. Pursuant to your instructions, we will communicate directly to you at the above address.

As you may be aware from our previous communications with Mr. Speigel (see enclosed October 22, 2002 letter directed to Mr. Speigel), upon our closer examination of your policies after a second set of "certified" copies was requested it was determined that an overpayment has been made on your claim. We had previously advised Mr. Speigel that you have been receiving monthly benefits for quite some time at a significantly higher amount than the maximum benefit allowable under the terms of your policies for your claimed Residual Disability.

In the interest of good will, we have continued benefit payments to you at the current, yet incorrect amount, as we continue to fully review this matter and explore all options available to us. These payments, of course, have been made with full reservation of the company's rights under the policies.

Prior to Mr. Speigel's representation, we had communicated to you the information that is presently required to further evaluate your claim (see enclosed July 13, 2001 letter). As you also will recall, we are also in need of several of the items requested in Ms. Hymowitz's August 13, 2001 letter (copy enclosed). Lastly, we discussed having you interviewed by an occupational specialist.

We remain interested in resolving our differences with you and had discussed an offer with Mr. Speigel towards reaching a settlement in this matter. Should you wish to continue this dialogue directly with us or seek other legal representation to handle these discussions, please be sure to notify us accordingly.

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

3689

We look forward to re... ving the information requested in the a...ve noted letters as well as pursuing our request to have you interviewed by an occupational specialist. We thus ask that you contact us in the next 30 days to advise us of your availability for the interview, when the other claim information will be forthcoming and whether or not you wish to continue a dialogue aimed at achieving a resolution. Please do not hesitate to contact me directly at 1-800-883-0596 ext. 1076.

Sincerely,

Robert F. Mills

Robert F Mills
Claim Consultant

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

3690