Mr. Robert Mills, Claims Consultant　　　　　　　April 8, 2000
Disability Management Services, Inc.
1350 Main Street
Springfield, MA 01103-1619

Re: Policy #H-493029 and H-538069

Mr. Mills:

Thank you for your letter of March 11, 2002. Also, thank you, VP Hughes, and other executives for processing and sending out the latest benefit check, of the correct amount, on time.

Concerning my two policies, Mr. John Spiegel, Esq., while representing me, stated to you in a letter of August 10, 2001:

> *"I have been recently retained and am now in the process of carefully reviewing the history of the claims under these policies.*
>
> *In the meantime, you are to no longer have any direct communication with Mr. Kearney. Any communications you wish to direct to Mr. Kearney should be sent to the undersigned. This includes written and oral communications. It is my impression that Mr. Kearney has been the ongoing victim of substantial abuse and harassment by your company, it's agents, servants, and employees. This conduct must cease immediately.*
>
> *Please also be on notice that from this point forward, the specific terms and conditions contained in the contracts of insurance apply. Mr. Kearney will no longer be filling requests for documents or other information unless such requests are supported by specific language, as provided in each of the above contracts. If it is not in the contract of insurance you will not get it."*

Despite Mr. Spiegel's explicit instructions, you, Mr. Mills, and Ms. Hymowitz, your agent, hastily contacted me directly after August 10, 2001 in an effort to bypass my legal representative.

In addition, Mr. Spiegel spoke with you numerous times by phone and in person and stressed to you that we will always cooperate and do what the policy requires, but no more. He also explained this same position to Ms. Hymowitz directly, by phone.

After notifying you by fax message of February 7, 2002 that I am no longer represented by Mr. Spiegel, you are again requesting this same barrage of information. Why?

I still maintain the same position concerning the specific terms and conditions contained in the contracts. That is, as Mr. Spiegel explained on my behalf: I *" will no longer be filling requests for documents or other information unless such requests are supported by specific language, as provided in each of the above contracts. If it is not in the contract of insurance you will not get it."* Which items from Ms. Hymowitz's letter of August 13, 2001 are legally required of me and supported by specific language in the policies?

3675

2

Between September 18th and the time period of your meeting with Mr. Spiegel on October 11, 2001, there are 23 days or approximately 3 weeks. In this time DMS and JP made a determination that "an overpayment has been made on your claim." This was after "our close examination of the policies," as stated in VP Hughes letter to John Spiegel of October 22, 2001.

During this period, one would think that DMS, JP, and its attorneys would fully review all documents, letters, and proposals concerning the entire history of my claim file. This is your duty under the covenant of good faith and fair dealing. You did not review all documents in your "close examination" and made a hasty decision to state this supposed "overpayment" to John Spiegel on October 11, 2001, in person, without prior notification.

At the same time you "offered" a financial settlement based upon several misrepresentations of the two policies. The amount offered is approximately 11% of the Present Value of the combined policies. This is in stark contrast to your claim that your proposed lump-sum "settlement" is 70% of the present value of my two policies combined. You told John that the amount of benefits would be cut by $3286.00 per month starting with the next check if a settlement wasn't reached.

You maintained to Mr. Spiegel that the benefits for my policies are payable only to age 65. This position is in stark contrast to the wording in the policies and documents prepared by your company stating the benefits on both policies are lifetime.

Please refer to Mr. Spiegel's fax letter to you of October 19th, 2001. Almost 6 months after receiving this fax, you maintain that you still "continue to fully review this matter and explore all options available to us." How can you justify six months of fully reviewing a policy, which JP wrote and has been reviewed and examined closely countless times?

You, the writers and experts, supposedly have much trouble interpreting your own policies. How can you expect your policyholders to interpret the policies with no straightforward explanations from you? VP Hughes stated on October 22, 2001: "We will be in contact with you again in the near future regarding the company's position." Please define "near future."

VP Hughes claimed in his letter of October 2, 2000, that he reviewed my policy and my claim file. Yet, he went on to state an erroneous definition of total and residual disability and made no mention of supposed "overpayments."

On March 11, 2002, you made the following statement concerning the last five months of benefit checks: "These payments, of course, have been made with full reservation of the company's rights under the policies." This is not true. Mr. Spiegel received notification for the November 2001 and December 2001 benefit checks. For the last four months, there has been no notification of reservation of rights to Mr. Spiegel or me. The last notice he (or I) received is your letter of November 29, 2001. Thank you.

Sincerely,

*Christopher L. Kearney*
Christopher L. Kearney.

3676

Mr. Robert Mills, Claims Consultant  
Disability Management Services, Inc.  
1350 Main Street  
Springfield, MA 01103-1619



April 8, 2002

Re: Policy #H-493029 and H-538069

Mr. Mills:

Thank you for your letter of March 11, 2002. Also, thank you, VP Hughes, and other executives for processing and sending out the latest benefit check, of the correct amount, on time.

Concerning my two policies, Mr. John Spiegel, Esq., while representing me, stated to you in a letter of August 10, 2001:

> *"I have been recently retained and am now in the process of carefully reviewing the history of the claims under these policies.*
>
> *In the meantime, you are to no longer have any direct communication with Mr. Kearney. Any communications you wish to direct to Mr. Kearney should be sent to the undersigned. This includes written and oral communications. It is my impression that Mr. Kearney has been the ongoing victim of substantial abuse and harassment by your company, it's agents, servants, and employees. This conduct must cease immediately.*
>
> *Please also be on notice that from this point forward, the specific terms and conditions contained in the contracts of insurance apply. Mr. Kearney will no longer be filling requests for documents or other information unless such requests are supported by specific language, as provided in each of the above contracts. If it is not in the contract of insurance you will not get it."*

Despite Mr. Spiegel's explicit instructions, you, Mr. Mills, and Ms. Hymowitz, your agent, hastily contacted me directly after August 10, 2001 in an effort to bypass my legal representative.

In addition, Mr. Spiegel spoke with you numerous times by phone and in person and stressed to you that we will always cooperate and do what the policy requires, but no more. He also explained this same position to Ms. Hymowitz directly, by phone.

After notifying you by fax message of February 7, 2002 that I am no longer represented by Mr. Spiegel, you are again requesting this same barrage of information. Why?

I still maintain the same position concerning the specific terms and conditions contained in the contracts. That is, as Mr. Spiegel explained on my behalf: I *" will no longer be filling requests for documents or other information unless such requests are supported by specific language, as provided in each of the above contracts. If it is not in the contract of insurance you will not get it."* Which items from Ms. Hymowitz's letter of August 13, 2001 are legally required of me and supported by specific language in the policies?

3675

Between September 18th and the time period of your meeting with Mr. Spiegel on October 11, 2001, there are 23 days or approximately 3 weeks. In this time DMS and JP made a determination that "an overpayment has been made on your claim." This was after "our close examination of the policies," as stated in VP Hughes letter to John Spiegel of October 22, 2001.

During this period, one would think that DMS, JP, and its attorneys would fully review all documents, letters, and proposals concerning the entire history of my claim file. This is your duty under the covenant of good faith and fair dealing. You did not review all documents in your "close examination" and made a hasty decision to state this supposed "overpayment" to John Spiegel on October 11, 2001, in person, without prior notification.

At the same time you "offered" a financial settlement based upon several misrepresentations of the two policies. The amount offered is approximately 11% of the Present Value of the combined policies. This is in stark contrast to your claim that your proposed lump-sum "settlement" is 70% of the present value of my two policies combined. You told John that the amount of benefits would be cut by $3286.00 per month starting with the next check if a settlement wasn't reached.

You maintained to Mr. Spiegel that the benefits for my policies are payable only to age 65. This position is in stark contrast to the wording in the policies and documents prepared by your company stating the benefits on both policies are lifetime.

Please refer to Mr. Spiegel's fax letter to you of October 19th, 2001. Almost 6 months after receiving this fax, you maintain that you still "continue to fully review this matter and explore all options available to us." How can you justify six months of fully reviewing a policy, which JP wrote and has been reviewed and examined closely countless times?

You, the writers and experts, supposedly have much trouble interpreting your own policies. How can you expect your policyholders to interpret the policies with no straightforward explanations from you? VP Hughes stated on October 22, 2001: "We will be in contact with you again in the near future regarding the company's position." Please define "near future."

VP Hughes claimed in his letter of October 2, 2000, that he reviewed my policy and my claim file. Yet, he went on to state an erroneous definition of total and residual disability and made no mention of supposed "overpayments."

On March 11, 2002, you made the following statement concerning the last five months of benefit checks: "These payments, of course, have been made with full reservation of the company's rights under the policies." This is not true. Mr. Spiegel received notification for the November 2001 and December 2001 benefit checks. For the last four months, there has been no notification of reservation of rights to Mr. Spiegel or me. The last notice he (or I) received is your letter of November 29, 2001. Thank you.

Sincerely,

*Christopher L. Kearney*
Christopher L. Kearney

3676

Mr. Robert Mills, Claims Consultant
Disability Management Services, Inc.
1350 Main Street
Springfield, MA 01103-1619

April 10, 2000

Re: Policy #H-493029 and H-538069

Mr. Mills:

Please respond to the following requests within 15 days as required by Ohio Law:

1) Please send me a check for $16,061.00 plus interest upon receipt of this letter. This is the total of monthly premiums JP has collected while I have been receiving total disability benefits. These premiums should have been waived.

2) Please provide a written explanation of my policies benefits to include own occupation.

3) Please provide a written explanation of my policies to include occupational definition and explanation.

4) Please provide a written explanation of my policies to include length of my benefits.

5) Please provide a written explanation of my policies to include an explanation of how JP views residual Vs total disability and how this decision is made.

Sincerely,

*Christopher L. Kearney*
Christopher L. Kearney

3667

Mr. Robert Mills, Claims Consultant  
Disability Management Services, Inc.  
1350 Main Street  
Springfield, MA 01103-1619  

April 10, 2000

Re: Policy #H-493029 and H-538069

Mr. Mills:

Please respond to the following requests within 15 days as required by Ohio Law:

1) Please send me a check for $16,061.00 plus interest upon receipt of this letter. This is the total of monthly premiums JP has collected while I have been receiving total disability benefits. These premiums should have been waived.

2) Please provide a written explanation of my policies benefits to include own occupation.

3) Please provide a written explanation of my policies to include occupational definition and explanation.

4) Please provide a written explanation of my policies to include length of my benefits.

5) Please provide a written explanation of my policies to include an explanation of how JP views residual Vs total disability and how this decision is made.

Sincerely,

Christopher L. Kearney

3667

FROM :                              FAX NO. :                     Apr. 17 2002 09:12AM P1



Date:     Wednesday, April 17, 2002

To:       Disability Management Services, Inc.
          Robert Mills
          Phone:   413-747-0990
          Fax:     413-747-1545

From:     Chris Kearney

Subject: Date Correction                    Pages: 4 including Cover Page

Mr. Mills:

Following 2 letters of April 8th and April 10th have the dates (2002) corrected. The other information in the letters is the same as sent out last week by certified mail.

I am faxing these corrected copies of the letters to you in the interest of goodwill.

Thank you,

Chris Kearney

3662

## *Disability Management Services, Inc.*
*1350 Main Street, Springfield, MA 01103-1619  Tel:(413)747-8990  Fax:(413)747-1545*
*A third party administrator for:*
## *Jefferson-Pilot Life Insurance Company*

April 25, 2002

Christopher Kearney

Redacted

Re: Policy Numbers: H-493029, H-538069

Dear Mr. Kearney:

We have received your letters of April 8 & April 10, 2002.

The questions you pose in your April 10th letter are somewhat confusing since we have clarified for you, on a number of occasions, many of your policy's provisions and how they are applicable to the analysis of your claim. That you continue to be unclear regarding these provisions raises the question in our mind as to whether or not we fully understand your situation. Thus, in light of your questions, perhaps you can clarify some points for us before we attempt to further explain how the policy provisions apply to your claim.

Are you claiming to be Totally Disabled or Residually Disabled? If you are claiming to be Residually Disabled, please outline the current job duties you are performing, how long you been performing these duties, and the monthly revenue, expenses, and net earnings that result from those duties. If you are claiming to be Totally Disabled, please explain to us why you feel the current occupational duties you are performing are different from those occupational duties you were performing prior to the onset of your claim. Please be assured that your questions will have our immediate review and attention upon receipt of your response.

Notwithstanding the above, please assist us in bringing us up to date with your financials. Please provide us with copies of your 2000 & 2001 Federal Income Tax Returns #1040 including all schedule attachments and copies of the Corporate Tax Return #1120 for Kenwood Technology Group, Inc. for the same years. If you have filed for an extension with either of these returns, please be sure to provide us with a copy of the extension form filed with the IRS.

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

Under separate cover, we have issued you another month of benefit checks at the current, but incorrect amount. These payments, as in the past, have been made with a full reservation of the company's rights under the policies as we fully explore those options available to us.

We look forward to your reply. Of course, if you have any questions pertaining to the above, please do not hesitate to contact me directly at 1-800-883-0596 ext. 1076.

Sincerely,

*Robert F. Mills*

Robert F Mills
Claims Consultant

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services In NH*

*Disability Management Services, Inc.*
1350 Main Street. Springfield, MA 01103-1619  Tel:(413)747-0990  Fax:(413)747-1545
*A third party administrator for:*
*Jefferson-Pilot Life Insurance Company*

April 26, 2002

Christopher Kearney

Redacted

Re: Policy Numbers: H-493029, H-538069

Dear Mr. Kearney:

We have received your letters of April 8 & April 10, 2002.

The questions you pose in your April 10th letter are somewhat confusing since we have clarified for you, on a number of occasions, many of your policy's provisions and how they are applicable to the analysis of your claim. That you continue to be unclear regarding these provisions raises the question in our mind as to whether or not we fully understand your situation. Thus, in light of your questions, perhaps you can clarify some points for us before we attempt to further explain how the policy provisions apply to your claim.

Are you claiming to be Totally Disabled or Residually Disabled? If you are claiming to be Residually Disabled, please outline the current job duties you are performing, how long you been performing these duties, and the monthly revenue, expenses, and net earnings that result from those duties. If you are claiming to be Totally Disabled, please explain to us why you feel the current occupational duties you are performing are different from those occupational duties you were performing prior to the onset of your claim. Please be assured that your questions will have our immediate review and attention upon receipt of your response.

Notwithstanding the above, please assist us in bringing us up to date with your financials. Please provide us with copies of your 2000 & 2001 Federal Income Tax Returns #1040 including all schedule attachments and copies of the Corporate Tax Return #1120 for Kenwood Technology Group, Inc. for the same years. If you have filed for an extension with either of these returns, please be sure to provide us with a copy of the extension form filed with the IRS.

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

3414

Under separate cover, we have issued you another month of benefit checks at the current, but incorrect amount. These payments, as in the past, have been made with a full reservation of the company's rights under the policies as we fully explore those options available to us.

We look forward to your reply. Of course, if you have any questions pertaining to the above, please do not hesitate to contact me directly at 1-800-883-0596 ext. 1076.

Sincerely,


Robert F Mills
Claims Consultant

d/b/a: *New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

3415

Mr. Robert Mills, Claims Consultant  May 16, 2002
Disability Management Services, Inc.
1350 Main Street
Springfield, MA 01103-1619

Re: Policy #H-493029 and H-538069  Sent by Certified Mail

Mr. Mills:

I received your letter of April 25, 2002. I also received the benefit checks earlier this month of the correct amount and on time. I thank you, VP Hughes, and the other executives at DMS and JP for sending those checks, of the correct amount, without delay.

My questions, #2 through #5, posed in my letter of April 10, 2002 are straightforward. One would think that you would welcome the opportunity to clarify the ambiguity of your policy language. Your own employee, Ms. Beattie, PDC, Inc., recommended to Todd Ditmar, of DMS, that JP provide written clarification to me on the very same issues. JP and DMS totally ignored her request because your plan by collusion is to keep me confused and on edge while you continue to "fully explore those options available to us."

In your letter, you stated: "we have clarified for you, on a number of occasions, many of your policy's provisions and how they are applicable to the analysis of your claim." JP, DMS and PDC have asserted many misrepresentations and self-serving interpretations of my policy provisions, terms, and benefits.

In fact, I have several different definitions and explanations of disability purported by DMS, JP, and PDC to be the defining definitions in my policies. Which one shall I believe? To my detriment, I have relied on your misrepresentations.

Currently, you continue to threaten me with reservations of rights statements, which are unwarranted and contrary to good faith principles. Please provide your "immediate review and attention" to the issues which you have threatened me with for over 7 months. Please provide a response, as promised by VP Hughes. It is your duty.

I again request an immediate refund for all collected monthly premiums while receiving disability benefits- these premiums should have been waived. Please send a check to me immediately with compounded interest.

I have been updating you of my earned income on the forms that you have chosen to send me "from time to time," as you stated. Please point out the specific language in the policies that support your request for further information and then I will be happy to supply such information.

Sincerely,

*Christopher L. Kearney*
Christopher L. Kearney

3641

## Disability Management Services, Inc.
1350 Main Street, Springfield, MA 01103-1619  Tel:(413)747-0990  Fax:(413)747-1545
*A third party administrator for:*
## Jefferson-Pilot Life Insurance Company

June 8, 2002

Christopher Kearney

Redacted

Re: Policy Number/s: H-493029, H-538069

Dear Mr. Kearney:

We received your letter dated May 16, 2002.

In your letter, you stated that you have "several different definitions and explanations of disability purported by DMS, JP, and PDC to be the defining definitions in my policies" However, you did not provide any evidence to support your statement, nor did you cite any specific instances where this occurred. As we pointed out in our letter dated April 25, 2002, the actual documentation in the file reflects that, on numerous occasions, both verbally and in writing, we discussed your policies' provisions with you and explained how they apply to your claim. Nevertheless, we are happy to provide you with the following information which, hopefully, will answer the questions you raised in your letter.

Please refer to the *Definitions* page of your policies which states:

**Total Disability** means during the first 5 years of a period of total disability that, because of Sickness or Injury, you are:

(1)     unable to perform the substantial and material duties of your occupation; and
(2)     you are not actually engaged in any other occupation.

After you have been totally disabled for a period of 5 years, you will be considered totally disabled if you are unable to perform the duties of any occupation for which you are qualified by education, training or experience, with due regard to your earnings before disability started.

**Residual Disability** means you are:

(a)     unable to do one of more of the substantial and material duties of your profession; or

d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a Centre Claims Administration Services in NH

(b)  unable to do your usual daily business duties for substantially as much time as usually required to do such duties.

The Residual Disability rider also goes into great detail about the other conditions that must be met in order for you to qualify for benefits, and how those benefits are calculated. Please refer to that provision for all of those additional details which we will not repeat in this letter.

On the **Supplemental Disability Claim Reports** you completed prior to May 1, 1998, you stated that you were engaged in your occupation, and you were working on a part time basis. On those same forms, in answer to the question regarding the important duties you were unable to perform, you stated "unable to work as many hrs." You also completed the **Employer's Statement** section on those forms in which you confirmed that the employee (meaning yourself) had returned to part of his work. As the employer, in listing the important duties the employee (meaning yourself) was unable to perform, you stated "unable to work as many hrs."

In addition to the Supplemental Disability Claim Reports (SDCRs) you completed prior to May 1, 1998, you also completed **Supplemental Claimant's Statement For Residual Disability Benefits** (SCSFRDBs) forms. On these forms you repeatedly stated "I was able to perform all of the usual daily business duties of my occupation, but only for 65% of the time usually required to perform these duties". On these forms you also provided information regarding your monthly earnings. Based on these signed statements you provided, and the other information in the file, your claim was administered under the Residual Disability benefit provision of your policies.

After May 1, 1998, you continued to submit the above noted forms on which you provided, substantially, the same information. The only exception was that you began to check off the "No" box rather than the "Yes" box in answer to the question "Are you engaged in your occupation?" In all other respects, the information you supplied on both the SDCRs, in both your capacity as employee and employer, and the SCSFRDBs remained the same. Accordingly, based on these signed statements and the other information we had, which did not reflect that anything of substance had changed as of May 1, 1998, we continued to administer your claim under the Residual Disability benefit provision of your policies.

At a point in time after DMS began administering your claim, you began completing **Continuance Of Disability** (CODs) forms, rather than the above noted Jefferson Pilot forms. On those forms you have continued to state that you are working, and you have not furnished any information that such work is substantially different than the work you have been doing throughout the time you have been claiming Residual Disability benefits. Although the company you now work for is a new business started by you, which has a different focus within your industry (which is what we were referring to in our letter dated July 13, 2001 when we said it appeared you were working in a different occupation), your occupational duties of travelling and selling remain the same. Of note lately is that, rather than stating you continue to work 65% of the time you previously worked, you have been indicating that you are working between 5-10 hours per week.

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

0558

Based on your policies' definitions as stated above and in your contracts, and the information in your file which includes all of the above information supplied by you, we have continued to administer your claim under the Residual Disability benefit provisions. We have also explained to you on numerous occasions, both verbally and in writing, with detailed specificity, how your policies' provisions apply to your particular claim situation (see enclosed copies of our letters dated October 2, 2000 and July 13, 2001). Any claim by you that we have not done so, is not born out by the facts and the documentary evidence in the file, and is simply false. You may disagree with our assessment of how your policies' provisions apply to your claim, which is your right; but to state that we have not explained our position, citing both the facts of the claim and the policies' definitions and provisions, is completely disingenuous.

As your claim has been, and appears to continue to be, one of Residual Disability, you are not eligible for Waiver of Premium benefits. Please review that provision of your policy, which clearly states that such is the case. You have also been advised of this on several occasions, including in Mr. Harold D. Shelton's letter to you dated January 28, 1998, a copy of which is enclosed for your review.

You will also note that, in his letter, Mr. Shelton also provides you with the answer to yet another question you claim you never received ie. "a written explanation of my policies to include <u>length of benefits</u> (emphasis added)". Please see the second sentence in the second paragraph which states "The Residual Disability Rider provides that benefits will be payable to age 65" Again, the documentary evidence shows that your assertions that you have never received this information, are without any merit whatsoever.

*[handwritten: by reiterating the information communicated in Mr. Shelton's letter (copy enclosed)]*

(Here is optional paragraph— ~~Notwithstanding that Jefferson Pilot/Mr. Shelton has provided you with the above information~~ regarding the benefit period for Residual Disability, ~~you claim you never received, which is what we have also relied on heretofore, we re-examined the policies ourselves to determine where in the contracts the~~ age 65 ~~maximum benefit period for Residual Disability is actually stated. Although~~ we are unaware of <u>any</u> Residual Disability benefit written by <u>any</u> insurance company ~~for whom we have provided service~~, that provides benefits <u>beyond</u> age 65. ~~we are unable to find where the policy actually cites the age 65 limitation. Therefore, in the absence of such language, we would have to agree with your assessment that the benefit period for Residual Disability benefits, for a disability that begins before age 45 (such as yours), would be the same as the benefit period for Total Disability, i.e. life. We have discussed this with JP, and they have stated that, inasmuch as the contract is not specific in this regard they will resolve the matter in your favor—end of 1st alternative paragraph)~~

*[handwritten margin notes: although the policy language does not appear to address age 65 's limiter, if agree accepted]*
*[handwritten right margin: However we are willing to look at this case as part of a global settlement of both policies]*

In an effort to amicably resolve our differences, we held discussions with your previous attorney about the possibility of a compromise settlement. We also apprised you of these discussions in our letter to you dated March 11, 2002. (The offer we made at that time was based on the belief that Residual Disability benefits were only payable to age 65. Based on a lifetime benefit period, the company is now willing to increase their offer to ____. If you are interested in pursuing a settlement along these lines, please let us know.—end of 2nd alternative paragraph) Based on your comments in your April 8, 2002 letter, we assume that you do not have any further interest in resolving our differences by way of a compromise settlement. If this in not an accurate assessment of your sentiment, please let us know.

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

Lastly, we have made another benefit payment at the incorrect amount has been made to you under separate cover. This payment has also been made necessarily with a reservation of the company's rights under the policies. We anticipate making a decision on this matter shortly.

As always, should you have any questions or concerns about this matter, you can reach me directly at 1-800-883-0596 ext. 1076.

Sincerely,


Robert F. Mills
Claims Consultant

d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a Centre Claims Administration Services in NH

## Disability Management Services, Inc.
*1350 Main Street, Springfield, MA 01103-1619  Tel:(413)747-0990  Fax:(413)747-1545*
*A third party administrator for:*
### Jefferson-Pilot Life Insurance Company

June 8, 2002

Christopher Kearney

Redacted

Re: Policy Number/s: H-493029, H-538069

Dear Mr. Kearney:

We received your letter dated May 16, 2002.

In your letter, you stated that you have "several different definitions and explanations of disability purported by DMS, JP, and PDC to be the defining definitions in my policies" However, you did not provide any evidence to support your statement, nor did you cite any specific instances where this occurred. As we pointed out in our letter dated April 25, 2002, the actual documentation in the file reflects that, on numerous occasions, both verbally and in writing, we discussed your policies' provisions with you and explained how they apply to your claim. Nevertheless, we are happy to provide you with the following information which, hopefully, will answer the questions you raised in your letter.

Please refer to the *Definitions* page of your policies which states:

**Total Disability** means during the first 5 years of a period of total disability that, because of Sickness or Injury, you are:

(1)  unable to perform the substantial and material duties of your occupation; and
(2)  you are not actually engaged in any other occupation.

After you have been totally disabled for a period of 5 years, you will be considered totally disabled if you are unable to perform the duties of any occupation for which you are qualified by education, training or experience, with due regard to your earnings before disability started.

**Residual Disability** means you are:

(a)  unable to do one of more of the substantial and material duties of your profession; or

d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a Centre Claims Administration Services in NH

0565

(b)   unable to do your usual daily business duties for substantially as much time as usually required to do such duties.

The Residual Disability rider also goes into great detail about the other conditions that must be met in order for you to qualify for benefits, and how those benefits are calculated. Please refer to that provision for all of those additional details which we will not repeat in this letter.

On the **Supplemental Disability Claim Reports** you completed prior to May 1, 1998, you stated that you were engaged in your occupation, and you were working on a part time basis. On those same forms, in answer to the question regarding the important duties you were unable to perform, you stated "unable to work as many hrs." You also completed the **Employer's Statement** section on those forms in which you confirmed that the employee (meaning yourself) had returned to part of his work. As the **employer**, in listing the important duties the employee (meaning yourself) was unable to perform, you stated "unable to work as many hrs."

In addition to the **Supplemental Disability Claim Reports** (SDCRs) you completed prior to May 1, 1998, you also completed Supplemental Claimant's Statement For Residual **Disability Benefits** (SCSFRDBs) forms. On these forms you repeatedly stated "I was able to perform all of the usual daily business duties of my occupation, but only for 65% of the time usually required to perform these duties". On these forms you also provided information regarding your monthly earnings. Based on these signed statements you provided, and the other information in the file, your claim was administered under the Residual Disability benefit provision of your policies.

After May 1, 1998, you continued to submit the above noted forms on which you provided, substantially, the same information. The only exception was that you began to check off the "No" box rather than the "Yes" box in answer to the question "Are you engaged in your occupation?" In all other respects, the information you supplied on both the SDCRs, in both your capacity as employee and employer, and the SCSFRDBs remained the same. Accordingly, based on these signed statements and the other information we had, which did not reflect that anything of substance had changed as of May 1, 1998, we continued to administer your claim under the Residual Disability benefit provision of your policies.

At a point in time after DMS began administering your claim, you began completing **Continuance Of Disability** (CODs) forms, rather than the above noted Jefferson Pilot forms. On those forms you have continued to state that you are working, and you have not furnished any information that such work is substantially different than the work you have been doing throughout the time you have been claiming Residual Disability benefits. Although the company you now work for is a new business started by you, which has a different focus within your industry (which is what we were referring to in our letter dated July 13, 2001 when we said it appeared you were working is a different occupation), your occupational duties of travelling and selling remain the same. Of note lately is that, rather than stating you continue to work 65% of the time you previously worked, you have been indicating that you are working between 5-10 hours per week.

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

0566

Based on your policies' definitions as stated above and in your contracts, and the information in your file which includes all of the above information supplied by you, we have continued to administer your claim under the Residual Disability benefit provisions. We have also explained to you on numerous occasions, both verbally and in writing, with detailed specificity, how your policies' provisions apply to your particular claim situation (see enclosed copies of our letters dated October 2, 2000 and July 13, 2001). Any claim by you that we have not done so, is not born out by the facts and the documentary evidence in the file, and is simply false. You may disagree with our assessment of how your policies' provisions apply to your claim, which is your right; but to state that we have not explained our position, citing both the facts of the claim and the policies' definitions and provisions, is completely disingenuous.

As your claim has been, and appears to continue to be, one of Residual Disability, you are not eligible for Waiver of Premium benefits. Please review that provision of your policy, which clearly states that such is the case. You have also been advised of this on several occasions, including in Mr. Harold D. Shelton's letter to you dated January 28, 1998, a copy of which is enclosed for your review.

You will also note that, in his letter, Mr. Shelton also provides you with the answer to yet another question you claim you never received i.e. "a written explanation of my policies to include length of benefits (emphasis added)". Please see the second sentence in the second paragraph which states "The Residual Disability Rider provides that benefits will be payable to age 65" Again, the documentary evidence shows that your assertions that you have never received this information, are without any merit whatsoever.

In an effort to amicably resolve our differences, we held discussions with your previous attorney about the possibility of a compromise settlement. We also apprised you of these discussions in our letter to you dated March 11, 2002. Based on your comments in your April 8, 2002 letter, we will assume that you do not have any further interest in resolving our differences by way of a compromise settlement. If this in not an accurate assessment of your sentiment, please let us know.

Lastly, we have made another benefit payment at the incorrect amount has been made to you under separate cover. This payment has also been made necessarily with a reservation of the company's rights under the policies. We anticipate making a decision on this matter shortly.

As always, should you have any questions or concerns about this matter, you can reach me directly at 1-800-883-0596 ext. 1076.

Sincerely,


Robert F. Mills
Claims Consultant

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

0567

Mr. Robert Mills, Claims Consultant  
Disability Management Services, Inc.  
1350 Main Street  
Springfield, MA 01103-1619

June 10, 2002

Re: Policy #H-493029 and H-538069

Mr. Mills:

Thank you, VP Hughes, Mr. Ditmar and other executives at DMS and JP for processing and sending out the latest benefit checks, on time.

The checks are not the correct amount, however. So, Mr. Mills, here we go again.

The May increase in benefits per the 7% COLA is in the amount of $253.75. I chose this 7% increase and pay a higher premium for this. Please send me a check immediately for this.

The June 2002 and thereafter increase in benefits is in the amount $314.50. Please be sure that this increase is paid. Or, do you want me to call Jefferson Pilot again and talk to the account managers there? As the checks come directly from Jefferson Pilot, I am once again confused as to whom to contact regarding the recurrent payment problems.

You will recall in May 2000 this same holdback of benefits occurred and you ignored many letters from me to fix the problem. It wasn't till August that I was paid in full after even more holdbacks.

I have the federal tax forms requested previously. I am waiting for you to respond to my specific questions from my letter of May 20, 2002 before sending.

Sincerely,

Christopher L. Kearney

3624