### *Disability Management Services, Inc.*
*1350 Main Street. Springfield, MA 01103-1619  Tel:(413)747-0990  Fax:(413)747-1545*
*A third party administrator for:*
### *Jefferson-Pilot Life Insurance Company*

June 10, 2002

Christopher Kearney

Redacted

Re: Policy Number/s: H-493029, H-538069

Dear Mr. Kearney:

We received your letter dated May 16, 2002.

In your letter, you stated that you have "several different definitions and explanations of disability purported by DMS, JP, and PDC to be the defining definitions in my policies" However, you did not provide any evidence to support your statement, nor did you cite any specific instances where this occurred. As we pointed out in our letter dated April 25, 2002, the actual documentation in the file reflects that, on numerous occasions, both verbally and in writing, we discussed your policies' provisions with you and explained how they apply to your claim. Nevertheless, we are happy to provide you with the following information which, hopefully, will answer the questions you raised in your letter.

Please refer to the ***Definitions*** page of your policies which states:

**Total Disability** means during the first 5 years of a period of total disability that, because of Sickness or Injury, you are:

(1)     unable to perform the substantial and material duties of your occupation; and
(2)     you are not actually engaged in any other occupation.

After you have been totally disabled for a period of 5 years, you will be considered totally disabled if you are unable to perform the duties of any occupation for which you are qualified by education, training or experience, with due regard to your earnings before disability started.

**Residual Disability** means you are:

(a)     unable to do one of more of the substantial and material duties of your profession; or

d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a Centre Claims Administration Services in NH

(b)     unable to do your usual daily business duties for substantially as much time as usually required to do such duties.

The Residual Disability rider ~~also goes into great detail about~~ *addresses* the other conditions that must be met in order for you to qualify for benefits, and how those benefits are calculated. Please refer to that provision for ~~all of those~~ additional ~~details which we will not repeat in this letter.~~ *information.*

On the **Supplemental Disability Claim Reports** you completed prior to May 1, 1998, you stated that you were engaged in your occupation, and you were working on a part time basis. On those same forms, in answer to the question regarding the important duties you were unable to perform, you stated "unable to work as many hrs." You also completed the **Employer's Statement** section on those forms in which you confirmed that the employee (meaning yourself) had returned to part of his work. As the **employer**, in listing the important duties the employee (meaning yourself) was unable to perform, you stated "unable to work as many hrs."

In addition to the **Supplemental Disability Claim Reports** (SDCRs) *properly* you completed prior to May 1, 1998, you also completed **Supplemental Claimant's Statement For Residual Disability Benefits** (SCSFRDBs) forms. On these forms you repeatedly stated "I was able to perform all of the usual daily business duties of my occupation, but only for 65% of the time usually required to perform these duties". On these forms you also provided information regarding your monthly earnings. Based on these signed statements you provided, and the other information in the file, your claim was administered under the Residual Disability benefit provision of your policies.

*supporting*                        *Although you*
After May 1, 1998, you ~~continued to~~ submit the above noted forms on which you provided, substantially, the same information. ~~The only exception was that you~~ began to check ~~off~~ the "No" box rather than the "Yes" box in answer to the question "Are you engaged in your occupation?" ~~In all other respects,~~ the information you supplied on both the SDCRs, in both your capacity as employee and employer, and the SCSFRDBs remained the same. Accordingly, based on these signed statements and the other information we had, which did *properly* not reflect that anything of substance had changed as of May 1, 1998, we ~~continued to~~ administer your claim under the Residual Disability benefit provision of your policies.

At a point in time after DMS began administering your claim, you began completing **Continuance Of Disability** (CODs) forms, rather than the above noted Jefferson Pilot forms. On those forms you have continued to state that you are working, and you have not furnished any information that such work is substantially different than the work you have been doing throughout the time you have been claiming Residual Disability benefits. Although the company you now work for is a new business started by you, which has a different focus within your industry (which is what we were referring to in our letter dated July 13, 2001 when we said it appeared you were working is a different occupation), your occupational duties of travelling and selling remain the same. Of note lately is that, rather than stating you continue to work 65% of the time you previously worked, you have been indicating that you are working between 5-10 hours per week.

*Would suggest that*

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

Based on your policies' definitions ~~as stated above and in~~ your contracts, and the *consistently quoted above from*
information in your file which includes all of the above information supplied by you, we *properly*
have continued to administer your claim under the Residual Disability benefit provisions.
We have also explained to you on numerous occasions, both verbally and in writing, with
detailed specificity, how your policies' provisions apply to your particular claim situation
(see enclosed copies of our letters dated October 2, 2000 and July 13, 2001). ~~Any claim by~~ *Hence, we*
~~you that we have not done so, is not born out by the facts and the documentary evidence in~~
~~the file, and is simply false.~~ You may disagree with our assessment of how your policies'
provisions apply to your claim, which is your right; but to state that we have not explained
our position, citing both the facts of the claim and the policies' definitions and provisions, is
completely disingenuous.

*have, indeed, provided at length to you.*

~~As~~ your claim has been, and appears to continue to be, one of Residual Disability, you are *Since*
not eligible for Waiver of Premium benefits. Please review that provision of your policy,
which clearly states that such is the case. You have also been advised of this on several
occasions, including in Mr. Harold D. Shelton's letter to you dated January 28, 1998, a copy
of which is enclosed for your review.

You will also note that, in his letter, Mr. Shelton also provides you with the answer to
another question you claim you never received i.e. "a written explanation of my policies to
include length of benefits (emphasis added)". Please see the second sentence in the second
paragraph which states "The Residual Disability Rider provides that benefits will be payable
to age 65" Again, the documentary evidence shows that your assertions that you have never
received this information, are without any merit ~~whatsoever.~~

In an effort to amicably resolve our differences, we held discussions with your previous *revisited*
attorney about the possibility of a compromise settlement. We ~~also apprised you of~~ these
discussions in our letter to you dated March 11, 2002. ~~Based on your comments in your~~ *although*
April 8, 2002, letter, we ~~will assume that you do not~~ have any further interest in resolving *your*
our differences by way of a compromise settlement. ~~If this is not an accurate assessment of~~
~~your position, please let us know.~~ *would indicate otherwise, please let us know*
*if*

Lastly, we have made another benefit payment ~~in~~ the ~~incorrect~~ amount ~~has been made~~ to
you under separate cover. This payment has also been made necessarily with a
reservation of the company's rights under the policies. We anticipate making a decision
on this matter shortly. *erroneously adjusted*

As always, should you have any questions or concerns about this matter, you can reach
me directly at 1-800-883-0596 ext. 1076.

Sincerely,


Robert F. Mills
Claims Consultant

d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a Centre Claims Administration Services in NH

## Disability Management Services, Inc.

*1350 Main Street. Springfield, MA 01103-1619  Tel:(413)747-0990  Fax:(413)747-1545*
*A third party administrator for:*

### Jefferson-Pilot Life Insurance Company

June 17, 2002

Christopher Kearney

Redacted

Re: Policy Number/s: H-493029, H-538069

Dear Mr. Kearney:

We received your letter dated May 16, 2002.

In your letter, you stated that you have "several different definitions and explanations of disability purported by DMS, JP, and PDC to be the defining definitions in my policies" However, you did not provide any evidence to support your statement, nor did you cite any specific instances where this occurred. As we pointed out in our letter dated April 25, 2002, the actual documentation in the file reflects that, on numerous occasions, both verbally and in writing, we discussed your policies' provisions with you and explained how they apply to your claim. Nevertheless, we are happy to provide you with the following information which, hopefully, will answer the questions you raised in your letter.

Please refer to the *Definitions* page of your policies which states:

**Total Disability** means during the first 5 years of a period of total disability that, because of Sickness or Injury, you are:

(1)     unable to perform the substantial and material duties of your occupation; and
(2)     you are not actually engaged in any other occupation.

After you have been totally disabled for a period of 5 years, you will be considered totally disabled if you are unable to perform the duties of any occupation for which you are qualified by education, training or experience, with due regard to your earnings before disability started.

**Residual Disability** means you are:

(a)     unable to do one of more of the substantial and material duties of your profession; or

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

(b)     unable to do your usual daily business duties for substantially as much time as usually required to do such duties.

The Residual Disability rider addresses the other conditions that must be met in order for you to qualify for benefits, and how those benefits are calculated. Please refer to that provision for additional information.

On the **Supplemental Disability Claim Reports** you completed prior to May 1, 1998, you stated that you were engaged in your occupation, and you were working on a part time basis. On those same forms, in answer to the question regarding the important duties you were unable to perform, you stated "unable to work as many hrs." You also completed the **Employer's Statement** section on those forms in which you confirmed that the employee (meaning yourself) had returned to part of his work. As the **employer**, in listing the important duties the employee (meaning yourself) was unable to perform, you stated "unable to work as many hrs."

In addition to the **Supplemental Disability Claim Reports** (SDCRs) you completed prior to May 1, 1998, you also completed **Supplemental Claimant's Statement For Residual Disability Benefits** (SCSFRDBs) forms. On these forms you repeatedly stated "I was able to perform all of the usual daily business duties of my occupation, but only for 65% of the time usually required to perform these duties". On these forms you also provided information regarding your monthly earnings. Based on these signed statements you provided, and the other information in the file, your claim was properly administered under the Residual Disability benefit provision of your policies.

After May 1, 1998, you continued to submit the above noted forms on which you provided, substantially, the same information. Although you began to check the "No" box rather than the "Yes" box in answer to the question "Are you engaged in your occupation?", supporting the information you supplied on both the SDCRs, in both your capacity as employee and employer, and the SCSFRDBs remained the same. Accordingly, based on these signed statements and the other information we had, which did not reflect that anything of substance had changed as of May 1, 1998, we properly continued to administer your claim under the Residual Disability benefit provision of your policies.

At a point in time after DMS began administering your claim, you began completing **Continuance Of Disability** (CODs) forms, rather than the above noted Jefferson Pilot forms. On those forms you have continued to state that you are working, and you have not furnished any information that would suggest that such work is substantially different than the work you have been doing throughout the time you have been claiming Residual Disability benefits. Although the company you now work for is a new business started by you, which has a different focus within your industry (which is what we were referring to in our letter dated July 13, 2001 when we said it appeared you were working is a different occupation), your occupational duties of travelling and selling remain the same. Of note lately is that, rather than stating you continue to work 65% of the time you previously worked, you have been indicating that you are working between 5-10 hours per week.

Based on your policies' definitions quoted above from your contracts, and the information in our file which includes all of the above information supplied by you, we properly have

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

0551

continued to administer your claim under the Residual Disability benefit provisions. We have also consistently explained to you on several occasions, both verbally and in writing, with detailed specificity, how your policies' provisions apply to your particular claim situation (see enclosed copies of our letters dated October 2, 2000 and July 13, 2001). Hence, we have indeed provided explanation to you. You may disagree with our assessment of how your policies' provisions apply to your claim, which is your right; but to state that we have not explained our position, citing both the facts of the claim and the policies' definitions and provisions, is completely disingenuous.

Since your claim has been, and appears to continue to be, one of Residual Disability, you are not eligible for Waiver of Premium benefits. Please review that provision of your policy, which clearly states that such is the case. You have also been advised of this on several occasions, including in Mr. Harold D. Shelton's letter to you dated January 28, 1998, a copy of which is enclosed for your review.

You will also note that, in his letter, Mr. Shelton also provides you with the answer to another question you claim you never received ie. "a written explanation of my policies to include length of benefits (emphasis added)". Please see the second sentence in the second paragraph which states "The Residual Disability Rider provides that benefits will be payable to age 65" Again, the documentary evidence shows that your assertions that you have never received this information, are without any merit.

In reiterating the information communicated in MR. Shelton's letter (second copy enclosed) regarding the benefit period for Residual Disability, we are unaware of any Residual Disability benefit written by any insurance company that provides benefits beyond age 65. However, we are willing to look at this issue as part of a global settlement of both policies.

In an effort to amicably resolve our differences, we held discussions with your previous attorney about the possibility of a compromise settlement. We revisited these discussions in our letter to you dated March 11, 2002. Although your April 8, 2002 letter would indicate otherwise, please let us know if you have any further interest in resolving our differences by way of a compromise settlement.

Lastly, we have made another benefit payment in the erroneously adjusted amount to you under separate cover. This payment has also been made necessarily with a reservation of the company's rights under the policies. We anticipate making a decision on this matter shortly.

As always, should you have any questions or concerns about this matter, you can reach me directly at 1-800-883-0596 ext. 1076.

Sincerely,


Robert F. Mills
Claims Consultant


*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

# Disability Management Services, Inc.

1350 Main Street. Springfield, MA 01103-1619  Tel:(413)747-0990  Fax:(413)747-1545
A third party administrator for:

## Jefferson-Pilot Life Insurance Company

*Revised*

June 17, 2002

Christopher Kearney

Redacted

Re: Policy Number/s: H-493029, H-538069

Dear Mr. Kearney:

We received your letter dated May 16, 2002.

In your letter, you stated that you have "several different definitions and explanations of disability purported by DMS, JP, and PDC to be the defining definitions in my policies" However, you did not provide any evidence to support your statement, nor did you cite any specific instances where this occurred. As we pointed out in our letter dated April 25, 2002, the actual documentation in the file reflects that, on numerous occasions, both verbally and in writing, we discussed your policies' provisions with you and explained how they apply to your claim. Nevertheless, we are happy to provide you with the following information which, hopefully, will answer the questions you raised in your letter.

Please refer to the *Definitions* page of your policies which states:

**Total Disability** means during the first 5 years of a period of total disability that, because of Sickness or Injury, you are:

(1)     unable to perform the substantial and material duties of your occupation; and
(2)     you are not actually engaged in any other occupation.

After you have been totally disabled for a period of 5 years, you will be considered totally disabled if you are unable to perform the duties of any occupation for which you are qualified by education, training or experience, with due regard to your earnings before disability started.

**Residual Disability** means you are:

(a)     unable to do one of more of the substantial and material duties of your profession; or

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

(b)     unable to do your usual daily business duties for substantially as much time as usually required to do such duties.

The Residual Disability rider addresses the other conditions that must be met in order for you to qualify for benefits, and how those benefits are calculated. Please refer to that provision for additional information.

On the **Supplemental Disability Claim Reports** you completed prior to May 1, 1998, you stated that you were engaged in your occupation, and you were working on a part time basis. On those same forms, in answer to the question regarding the important duties you were unable to perform, you stated "unable to work as many hrs." You also completed the **Employer's Statement** section on those forms in which you confirmed that the employee (meaning yourself) had returned to part of his work. As the **employer**, in listing the important duties the employee (meaning yourself) was unable to perform, you stated "unable to work as many hrs."

In addition to the **Supplemental Disability Claim Reports** (SDCRs) you completed prior to May 1, 1998, you also completed **Supplemental Claimant's Statement For Residual Disability Benefits** (SCSFRDBs) forms. On these forms you repeatedly stated "I was able to perform all of the usual daily business duties of my occupation, but only for 65% of the time usually required to perform these duties". On these forms you also provided information regarding your monthly earnings. Based on these signed statements you provided, and the other information in the file, your claim was properly administered under the Residual Disability benefit provision of your policies.

After May 1, 1998, you continued to submit the above noted forms on which you provided, substantially, the same information. Although you began to check the "No" box rather than the "Yes" box in answer to the question "Are you engaged in your occupation?", supporting the information you supplied on both the SDCRs, in both your capacity as employee and employer, and the SCSFRDBs remained the same. Accordingly, based on these signed statements and the other information we had, which did not reflect that anything of substance had changed as of May 1, 1998, we properly continued to administer your claim under the Residual Disability benefit provision of your policies.

At a point in time after DMS began administering your claim, you began completing **Continuance Of Disability** (CODs) forms, rather than the above noted Jefferson Pilot forms. On those forms you have continued to state that you are working, and you have not furnished any information that would suggest that such work is substantially different than the work you have been doing throughout the time you have been claiming Residual Disability benefits. Although the company you now work for is a new business started by you, which has a different focus within your industry (which is what we were referring to in our letter dated July 13, 2001 when we said it appeared you were working is a different occupation), your occupational duties of travelling and selling remain the same. Of note lately is that, rather than stating you continue to work 65% of the time you previously worked, you have been indicating that you are working between 5-10 hours per week.

Based on your policies' definitions quoted above from your contracts, and the information in our file which includes all of the above information supplied by you, we properly have

d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a Centre Claims Administration Services in NH

0562

continued to administer your claim under the Residual Disability benefit provisions. We have also consistently explained to you on several occasions, both verbally and in writing, with detailed specificity, how your policies' provisions apply to your particular claim situation (see enclosed copies of our letters dated October 2, 2000 and July 13, 2001). Hence, we have indeed provided explanation to you. You may disagree with our assessment of how your policies' provisions apply to your claim, which is your right; but to state that we have not explained our position, citing both the facts of the claim and the policies' definitions and provisions, is completely disingenuous.

Since your claim has been, and appears to continue to be, one of Residual Disability, you are not eligible for Waiver of Premium benefits. Please review that provision of your policy, which clearly states that such is the case. You have also been advised of this on several occasions, including in Mr. Harold D. Shelton's letter to you dated January 28, 1998, a copy of which is enclosed for your review.

You will also note that, in his letter, Mr. Shelton also provides you with the answer to another question you claim you never received ie. "a written explanation of my policies to include <u>length of benefits</u> (emphasis added)". Please see the second sentence in the second paragraph which states "The Residual Disability Rider provides that benefits will be payable to age 65" Again, the documentary evidence shows that your assertions that you have never received this information, are without any merit.

In an effort to amicably resolve our differences, we held discussions with your previous attorney about the possibility of a compromise settlement. We revisited these discussions in our letter to you dated March 11, 2002. Although your April 8, 2002 letter would indicate otherwise, please let us know if you have any further interest in resolving our differences by way of a compromise settlement.

Lastly, we have made another benefit payment in the erroneously adjusted amount to you under separate cover. This payment has also been made necessarily with a reservation of the company's rights under the policies. We anticipate making a decision on this matter shortly.

As always, should you have any questions or concerns about this matter, you can reach me directly at 1-800-883-0596 ext. 1076.

Sincerely,


Robert F. Mills
Claims Consultant

d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a Centre Claims Administration Services in NH

0563

### Disability Management Services, Inc.

1350 Main Street, Springfield, MA 01103-1619  Tel:(413)747-0990  Fax:(413)747-1545
A third party administrator for:

### Jefferson-Pilot Life Insurance Company

June 18, 2002

Christopher Kearney

Redacted

Re: Policy Number/s: H-493029, H-538069

Dear Mr. Kearney:

We received your letter dated May 16, 2002.

In your letter, you stated that you have "several different definitions and explanations of disability purported by DMS, JP, and PDC to be the defining definitions in my policies." However, you did not provide any evidence to support your statement, nor did you cite any specific instances where this occurred. As we pointed out in our letter dated April 25, 2002, the actual documentation in the file reflects that, on numerous occasions, both verbally and in writing, we discussed your policies' provisions with you and explained how they apply to your claim. Nevertheless, we are happy to provide you with the following information which, hopefully, will answer the questions you raised in your letter.

Please refer to the *Definitions* page of your policies which states:

**Total Disability** means during the first 5 years of a period of total disability that, because of Sickness or Injury, you are:

(1)    unable to perform the substantial and material duties of your occupation; and
(2)    you are not actually engaged in any other occupation.

After you have been totally disabled for a period of 5 years, you will be considered totally disabled if you are unable to perform the duties of any occupation for which you are qualified by education, training or experience, with due regard to your earnings before disability started.

**Residual Disability** means you are:

(a)    unable to do one of more of the substantial and material duties of your profession; or

d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a Centre Claims Administration Services in NH

(b)    unable to do your usual daily business duties for substantially as much time as usually required to do such duties.

The Residual Disability rider also addresses the other conditions that must be met in order for you to qualify for benefits, and how those benefits are calculated. Please refer to that provision for additional information.

On the **Supplemental Disability Claim Reports** (SDCRs) you completed prior to May 1, 1998, you stated that you were engaged in your occupation, and you were working on a part time basis. On those same forms, in answer to the question regarding the important duties you were unable to perform, you stated "unable to work as many hrs." You also completed the **Employer's Statement** section on those forms in which you confirmed that the employee (meaning yourself) had returned to part of his work. As the **employer**, in listing the important duties the employee (meaning yourself) was unable to perform, you stated "unable to work as many hrs."

In addition to the SDCRs you completed prior to May 1, 1998, you also completed **Supplemental Claimant's Statement For Residual Disability Benefits** (SCSFRDBs) forms. On these forms you repeatedly stated "I was able to perform all of the usual daily business duties of my occupation, but only for 65% of the time usually required to perform these duties". On these forms you also provided information regarding your monthly earnings. Based on these signed statements you provided, and the other information in the file, your claim was properly administered under the Residual Disability benefit provision of your policies.

After May 1, 1998, you continued to submit the above noted forms on which you provided, substantially, the same information. Although you began to check the "No" box rather than the "Yes" box in answer to the question "Are you engaged in your occupation?", the supporting information you supplied on both the SDCRs, in both your capacity as employee and employer, and the SCSFRDBs remained the same. Accordingly, based on these signed statements and the other information we had, which did not reflect that anything of substance had changed as of May 1, 1998, we properly continued to administer your claim under the Residual Disability benefit provision of your policies.

At a point in time after DMS began administering your claim, you began completing **Continuance Of Disability** (CODs) forms, rather than the above noted Jefferson Pilot forms. On those forms you have continued to state that you are working, and you have not furnished any information that would suggest that such work is substantially different than the work you have been doing throughout the time you have been claiming Residual Disability benefits. Although the company you now work for is a new business started by you, which has a different focus within your industry (which is what we were referring to in our letter dated July 13, 2001 when we said it appeared you were working is a different occupation), your occupational duties of travelling and selling remain the same. Of note lately is that, rather than stating you continue to work 65% of the time you previously worked, you have been indicating that you are working between 5-10 hours per week.

Based on your policies' definitions as quoted above from your contracts, and the information in our file which includes all of the above information supplied by you, we

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

0555

properly have continued to administer your claim under the Residual Disability benefit provisions. We have also consistently explained to you on several occasions, both verbally and in writing, with detailed specificity, how your policies' provisions apply to your particular claim situation (see enclosed copies of our letters dated October 2, 2000 and July 13, 2001). Hence, we have indeed provided explanations to you. You may disagree with our assessment of how your policies' provisions apply to your claim, which is your right; but to state that we have not explained our position, citing both the facts of the claim and the policies' definitions and provisions, is completely disingenuous.

Since your claim has been, and appears to continue to be, one of Residual Disability, you are not eligible for Waiver of Premium benefits. Please review that provision of your policy, which clearly states that such is the case. You have also been advised of this on several occasions, including in Mr. Harold D. Shelton's letter to you dated January 28, 1998, a copy of which is enclosed for your review.

You will also note that, in his letter, Mr. Shelton also provides you with the answer to another question you claim you never received ie. "a written explanation of my policies to include length of benefits (emphasis added)". Please see the second sentence in the second paragraph which states "The Residual Disability Rider provides that benefits will be payable to age 65" Again, the documentary evidence shows that your assertions that you have never received this information, are without any merit.

Notwithstanding the above, although a review of your contracts does not appear to specifically address the maximum benefit period for a Residual Disability, the generally accepted interpretation and application for residual disability benefits of this industry on a whole is that, benefits do not extend past your 65th birthday.

In an effort to amicably resolve our differences, we held discussions with your previous attorney about the possibility of a compromise settlement. We revisited these discussions in our letter to you dated March 11, 2002. Although your April 8, 2002 letter would indicate otherwise, please let us know if you have any further interest in resolving our differences by way of a compromise settlement.

Lastly, we have made another benefit payment at the erroneously adjusted amount to you under separate cover. This payment has also been made necessarily with a reservation of the company's rights under the policies. We anticipate making a decision on this matter shortly.

As always, should you have any questions or concerns about this matter, you can reach me directly at 1-800-883-0596 ext. 1076.

Sincerely,


Robert F. Mills
Claims Consultant


d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a Centre Claims Administration Services in NH

## Disability Management Services, Inc.

*1350 Main Street. Springfield, MA 01103-1619  Tel:(413)747-0990  Fax:(413)747-1545*
*A third party administrator for:*

### Jefferson-Pilot Life Insurance Company

June 18, 2002

Christopher Kearney

Redacted

Re:  Policy Number/s: H-493029, H-538069

Dear Mr. Kearney:

We received your letter dated May 16, 2002.

In your letter, you stated that you have "several different definitions and explanations of
disability purported by DMS, JP, and PDC to be the defining definitions in my policies."
However, you did not provide any evidence to support your statement, nor did you cite
any specific instances where this occurred. As we pointed out in our letter dated April 25,
2002, the actual documentation in the file reflects that, on numerous occasions, both
verbally and in writing, we discussed your policies' provisions with you and explained
how they apply to your claim. Nevertheless, we are happy to provide you with the
following information which, hopefully, will answer the questions you raised in your
letter.

Please refer to the *Definitions* page of your policies which states:

**Total Disability** means during the first 5 years of a period of total disability that, because
of Sickness or Injury, you are:

(1)     unable to perform the substantial and material duties of your occupation; and
(2)     you are not actually engaged in any other occupation.

After you have been totally disabled for a period of 5 years, you will be considered
totally disabled if you are unable to perform the duties of any occupation for which you
are qualified by education, training or experience, with due regard to your earnings
before disability started.

**Residual Disability** means you are:

(a)     unable to do one of more of the substantial and material duties of your profession; or

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

3628

(b)    unable to do your usual daily business duties for substantially as much time as
usually required to do such duties.

The Residual Disability rider also addresses the other conditions that must be met in order
for you to qualify for benefits, and how those benefits are calculated. Please refer to that
provision for additional information.

On the **Supplemental Disability Claim Reports (SDCRs)** you completed prior to May 1,
1998, you stated that you were engaged in your occupation, and you were working on a part
time basis. On those same forms, in answer to the question regarding the important duties
you were unable to perform, you stated "unable to work as many hrs." You also completed
the **Employer's Statement** section on those forms in which you confirmed that the
employee (meaning yourself) had returned to part of his work. As the **employer**, in listing
the important duties the employee (meaning yourself) was unable to perform, you stated
"unable to work as many hrs."

In addition to the SDCRs you completed prior to May 1, 1998, you also completed
**Supplemental Claimant's Statement For Residual Disability Benefits (SCSFRDBs)**
forms. On these forms you repeatedly stated "I was able to perform all of the usual daily
business duties of my occupation, but only for 65% of the time usually required to perform
these duties". On these forms you also provided information regarding your monthly
earnings. Based on these signed statements you provided, and the other information in the
file, your claim was properly administered under the Residual Disability benefit provision of
your policies.

After May 1, 1998, you continued to submit the above noted forms on which you provided,
substantially, the same information. Although you began to check the "No" box rather than
the "Yes" box in answer to the question "Are you engaged in your occupation?", the
supporting information you supplied on both the SDCRs, in both your capacity as employee
and employer, and the SCSFRDBs remained the same. Accordingly, based on these signed
statements and the other information we had, which did not reflect that anything of
substance had changed as of May 1, 1998, we properly continued to administer your claim
under the Residual Disability benefit provision of your policies.

At a point in time after DMS began administering your claim, you began completing
**Continuance Of Disability (CODs)** forms, rather than the above noted Jefferson Pilot
forms. On those forms you have continued to state that you are working, and you have not
furnished any information that would suggest that such work is substantially different than
the work you have been doing throughout the time you have been claiming Residual
Disability benefits. Although the company you now work for is a new business started by
you, which has a different focus within your industry (which is what we were referring to in
our letter dated July 13, 2001 when we said it appeared you were working is a different
occupation), your occupational duties of travelling and selling remain the same. Of note
lately is that, rather than stating you continue to work 65% of the time you previously
worked, you have been indicating that you are working between 5-10 hours per week.

Based on your policies' definitions as quoted above from your contracts, and the
information in our file which includes all of the above information supplied by you, we

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a Centre Claims Administration Services in NH*

3629

properly have continued to administer your claim under the Residual Disability benefit provisions. We have also consistently explained to you on several occasions, both verbally and in writing, with detailed specificity, how your policies' provisions apply to your particular claim situation (see enclosed copies of our letters dated October 2, 2000 and July 13, 2001). Hence, we have indeed provided explanations to you. You may disagree with our assessment of how your policies' provisions apply to your claim, which is your right; but to state that we have not explained our position, citing both the facts of the claim and the policies' definitions and provisions, is completely disingenuous.

Since your claim has been, and appears to continue to be, one of Residual Disability, you are not eligible for Waiver of Premium benefits. Please review that provision of your policy, which clearly states that such is the case. You have also been advised of this on several occasions, including in Mr. Harold D. Shelton's letter to you dated January 28, 1998, a copy of which is enclosed for your review.

You will also note that, in his letter, Mr. Shelton also provides you with the answer to another question you claim you never received ie. "a written explanation of my policies to include length of benefits (emphasis added)". Please see the second sentence in the second paragraph which states "The Residual Disability Rider provides that benefits will be payable to age 65" Again, the documentary evidence shows that your assertions that you have never received this information, are without any merit.

Notwithstanding the above, a review of your contracts does not appear to specifically address the maximum benefit period for a Residual Disability. However in our experience, the generally accepted interpretation and application for residual disability benefits of the insurance industry is that, benefits do not extend past your 65th birthday. As a result of the above, we are willing to look further at this issue as part of a global settlement of both parties.

In an effort to amicably resolve our differences, we held discussions with your previous attorney about the possibility of a compromise settlement. We revisited these discussions in our letter to you dated March 11, 2002. Although your April 8, 2002 letter would indicate otherwise, please let us know if you have any further interest in resolving our differences by way of a compromise settlement.

Lastly, we have made another benefit payment at the erroneously adjusted amount to you under separate cover. This payment has also been made necessarily with a reservation of the company's rights under the policies. We anticipate making a decision on this matter shortly.

As always, should you have any questions or concerns about this matter, you can reach me directly at 1-800-883-0596 ext. 1076.

Sincerely,

Robert F. Mills
Claims Consultant

d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a Centre Claims Administration Services in NH

3630

Mr. Robert Mills, Claims Consultant                                    June 21, 2002
Disability Management Services, Inc.
1350 Main Street
Springfield, MA 01103-1619

Re: Policy #H-493029 and H-538069 ·                    **Sent by Certified Mail**

Mr. Mills:

Enclosed is a continuance of disability form filled out by me. There is no form on the back for the doctor so I was unsure of what you wanted this month.

This has been an ongoing, aggravating problem since DMS started managing this claim. You will recall in past letters and faxes I have asked for clarification on this issue and you have been non-responsive or vague, at best.

You told me you would need to have the new form "from time to time." I asked my attorney, Mr. Spiegel, to ask you face to face about the frequency of these forms as sometimes I get one and sometimes I don't. You told him you did not know. That was on Oct. 11, 2001 in Miami.

In 2000 and 2001 I received these approximately every three months and since October, 2002 when I refused to accept your lowball offer, I have gotten them now every month. Now, the latest form was different in that it doesn't have the doctor's form on the back. Are you changing your claim requirements again?

To make matters more confusing, is the fact that Jefferson Pilot sent out forms, written differently, every month with every benefit check. They told me this at the very beginning of the claim without all the vagueness and mystery.

You keep changing the claim procedure for some reason.

Your threats of cutting my benefits and stopping payments continue. To be safe, I asked my doctor to write some notes on the blank back of the continuance form.

This is enclosed along with another copy of her letter to you of July 7, 2001.

I still have no explanation of your withholding benefits this month nor have I received the corrected amount.

Sincerely,

*Christopher Kearney*

Christopher Kearney

Enclosed: Continuance of Disability Form, signed on 6-16-02
            Copy of Letter from Dr. Donna Judd-McClure, Ph.D. to Robert Mills, 7-7-01

3611

### Disability Management Services, Inc.
*1350 Main Street, Springfield, MA 01103-1619  Tel:(413)747-0990  Fax:(413)747-1545*
*A third party administrator for:*
### Jefferson-Pilot Life Insurance Company

June 28, 2002

Christopher Kearney

       Redacted

Re:  Policy Number/s: H-493029, H-538069

Dear Mr. Kearney:

Thank you for your letters of June 10, 2002 and June 21, 2002.

As you will see from our letter to you dated June 18, 2002, we have already addressed all of your questions posed in your correspondence. In your most recent letter, you inquired about the completion of the claim forms. With regard to the Continuance of Disability (COD) form, you should continue to complete this form each time you receive them with your benefit checks. The Attending Physician's Statement (APS) portion would only be required in those months that this statement is printed on the back. Therefore, if the backside of the COD form is blank, you are not required to have your physician complete anything for that particular month.

The structure and frequency of COD's forms can vary with a claim over time. This should not be construed as, and indeed is not, an attempt to be changing claim procedure. As your claim continues to be one of Residual Disability, we need to be informed of your ongoing work activities as well as your monthly earnings to determine your residual disability benefit. It is therefore necessary to have you complete monthly COD forms at this time as the form calls for you to provide us with both work information and financial information. Moreover, we did in fact have a discussion along these lines with Mr. Spiegel during our meeting. At this time, we will also ask that you have the APS portion of the Continuance of Disability form completed on a quarterly basis.

Please be sure to answer all questions in full detail on the COD forms. In review of the most recent COD form you submitted dated June 16, 2002, you provided us with the hours you worked and the amount of earnings. However, you omitted the work duties you performed. Please be sure to supply us with the information regarding the current work duties that you are performing.

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centro Claims Administration Services in NH*

3606

If you have any additional questions, I can be reached directly at 1-800-883-0596 ext.
1076.

Sincerely,

Robert F Mills
Claims Consultant

d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a Centre Claims Administration Services in NH



A  LEGAL  PROFESSIONAL  ASSOCIATION

250 EAST FIFTH STREET
SUITE 310
CINCINNATI, OH 45202
513.361.8288 DIRECT
513.361.0200 MAIN
513.361.0335 FAX
gjohnson@ralaw.com

July 1, 2002


Christopher L. Kearney

Redacted

Re:    *Jefferson-Pilot Life Insurance Company vs. Christopher L. Kearney*
        Case No. C-1-02 479

Dear Mr. Kearney:

I represent Jefferson-Pilot Life Insurance Company in the Complaint for Declaratory Judgment, which was filed in United States District Court for the Southern District of Ohio on July 1, 2002. In reviewing your file, it appears that you believe that your monthly benefits should include cost-of-living adjustments. However, based on my review of the language and provisions contained in your policies, it does not appear that you are entitled to cost-of-living adjustments. In order to resolve this difference in policy interpretation, Jefferson-Pilot has asked the United States District Court for the Southern District of Ohio to review the language contained in these policies and to make a declaration as to the parties, rights and obligations pursuant to the policies.

Enclosed with this Complaint for Declaratory Judgment, I am also enclosing a copy of the Civil Cover Sheet; Notice Of Lawsuit And Request For Waiver Of Service Of Summons; and Waiver Of Service Of Summons. As you may note, the Waiver of Service Of Summons indicates that you agree to save the cost of service of a summons and that you gain an additional thirty days within which to file your Answer to the Complaint, provided you return the Waiver of Service of Summons to me within thirty days of July 1, 2002. Hence, the waiver must be returned to me no later than July 31, 2002.

Seeking the Court's opinion on this matter is the most equitable means by which to resolve our differences in policy interpretation. However, you should also know that, notwithstanding the filing of this action, Jefferson-Pilot is still willing to explore with you various options to settle this matter in full. If you are inclined to proceed with settlement negotiations, I would be happy to discuss settlement with you.

Please call me if I may answer any questions for you regarding this matter.

Very truly yours,

*Geraldine M. Johnson/jwc*

Geraldine M. Johnson

GMJ/jwc
Enclosures
42048_1

**3398**

CLEVELAND        TOLEDO        AKRON        COLUMBUS        CINCINNATI        FORT MYERS        NAPLES

www.ralaw.com

Mr. Robert Mills, Claims Consultant                                    July 24, 2002
Disability Management Services, Inc.
1350 Main Street
Springfield, MA 01103-1619

Re: Policy #H-493029 and H-538069          **Sent by Certified Mail**

Mr. Mills:

You continue to deny my full benefits per the two policies even though I purchased the increase in
benefits option and paid considerably more for that option. I was clearly encouraged by Jefferson
Pilot to select that option and now Jefferson Pilot is not living up to its promises.

Enclosed is your new continuance of disability form filled out by me. This is the (COD) form
without the Doctor's Statement on the reverse side.

This is a new claims procedure despite your double talk to the contrary in your letter of 6-28-02.
Your explanations have been vague and obscure till your most recent letter. There have been no
verbal explanations- if so, why not put the explanation in writing?

John Spiegel told me very directly your answer to questions on 10-11-02 about the claim procedure
was: "I don't know."

In your letter of January 31, 2000 to me you said:

"Enclosed please find our standard Continuance of Disability claim form. You and your attending
physician should complete this form in the appropriate areas prior to returning it to us."

I don't see any "COD" or "APS" wording in that letter nor do I see any discussion of the frequency
of the need for such new forms to be filled out by me. You are aware that I was sent a different
form monthly called "Supplemental Disability Claim Report" when Jefferson Pilot managed this
claim and prior to involvement of DMS.

In your letter of March 20th, 2000 you wrote that you will require these forms "from time to time."

In my fax to you of March 31, 2000, with no instructions to the contrary, I wrote to you:

"I assume now that I will continue to get the same forms from Jefferson Pilot, which are two pages
in length, signed by my doctor certifying my disability, signed by me, and signed by my company
which in this case is my signature, with my monthly wages."

You did not need monthly input from me in the years 2000 and 2001. Why is it now required in
2002?

As I said in my letter of June 21, 2002: "You keep changing the claim procedure for some reason."

Sincerely,

Christopher L. Kearney

Christopher L. Kearney

3548

# *Disability Management Services, Inc.*

A Third Party Administrator for

### *Jefferson-Pilot Life Insurance Company*

1350 Main Street, Springfield, MA 01103-1628
(413) 747-0990   Fax: (413) 747-1545

July 30, 2002

Donna Judd-McClure, Ph.D.
26700 Goosecreek Rd.
McArthur, OH  45651

| | |
|---|---|
| **Insured/Patient:** | Christopher Kearney |
| | Redacted |
| **Date of Birth:** | |
| **Social Security #:** | |
| **Policy #s:** | H-493029, H-538069 |

Dear Dr. Judd-McClure:

As you know, we are handling a claim for disability benefits for your patient, Mr. Christopher Kearney.  In order to continue with our evaluation of Mr. Kearney's claim, we need some updated information from you.

**We have previously been provided with Mr. Kearney's medical records through August 2000.  We are now looking for complete copies of <u>any and all</u> medical records on Mr. Kearney, from <u>September 2000 to the present</u>.  Please include copies of your office notes, the results of any diagnostic testing performed, consultation reports, operative reports, etc.**

We are willing to remit a reasonable fee for the preparation of a response to our inquiry.  Please enclose a bill with your Federal Tax Identification Number for our prompt consideration.

Thank you for your cooperation.  Should have any questions, please call me directly at (800) 883-0596, ext. 1076.

Sincerely,

Robert Mills
Claims Consultant

d/b/a New England Claims Administration Serv... ... ... ... ... MD, ME
Licensed as New England Claims Administra... ... ... ... CA
d/b/a Centre Claims Administration ... ... ...

3543

**Disability Management Services, Inc.**
1350 Main Street. Springfield, MA 01103-1619  Tel:(413)747-0990  Fax:(413)747-1545
*A third party administrator for:*
**Jefferson-Pilot Life Insurance Company**

August 6, 2002

Christopher Kearney

      Redacted

Re:  Policy Number/s: H-493029, H-538069

Dear Mr. Kearney:

We received your letter dated July 24, 2002.

We have already addressed the issue you raise in your letter (See enclosed letters from me dated June 18th & June 28, 2002 and the July 1, 2002 letter from Geraldine Johnson).

We will be requesting an updated copy of your medical records from Dr. Donna Judd-McClure. Although Dr. Judd-McClure should already have an authorization from you on file, in the event she requires a more recent authorization, we ask that you sign and date the enclosed Authorization form and return it to this office.

Under separate cover, we have made another benefit payment to you at the erroneously increased amount. Please be advised that we will continue to issue the benefit checks at the current amount pending the outcome of the Declaratory Judgement.

Please call me at 1-800-883-0596 ext. 1076 should you have any questions.

Sincerely,

*Robert F. Mills*
Robert F Mills
Claims Consultant

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centra Claims Administration Services in NH*

3635

*RFM*

Mr. Robert Mills, Claims Consultant                                    August 26, 2002
Disability Management Services, Inc.
1350 Main Street
Springfield, MA 01103-1619

Re: Policy #H-493029 and H-538069                    **Sent by Certified Mail**

Mr. Mills:

Enclosed is the Continuance of Disability Form filled out and signed by me.

I received your letter of August 6, 2002.

Thank you for finally acknowledging that DMS and Jefferson-Pilot are deliberately denying my full
benefits since June 1, 2002 and will continue to deliberately deny these benefits.

The letters you enclosed do not specifically address this issue. I wanted to have verification that
this denial was not a computer mistake, administrative error, or other unfortunate oversight as you
have claimed in the past. Please remember the denial of my full benefits in June of 2000. The
benefit checks were not corrected for several months. Please read the correspondence from that
period for specifics.

With regard to your new broad release form: I have signed this in the past after you denied my
benefits in February of 2001 even though there is no specific wording in the contract which states
that I am obligated to sign this all-encompassing form. Also, with the financial and emotional
pressure on me, you asked if I wished to discuss a "settlement." However the full present value of
the policy was out of the question, according to you.

I believe that you have unnecessarily breached my right to privacy by contacting one or more
former business associates about my ability to work. This was done prior to any IME's and has
caused me embarrassment and humiliation.

Further, you have refused to identify which parties you have contacted. None has any medical
qualifications.

Regardless, I will discuss the broad release form with my attorney. I am always willing to fulfill
requests that are reasonable. I will also talk with Dr. McClure about your request from her. If it is a
reasonable request, I am willing to authorize her to fulfill your request.

Sincerely,

Christopher Kearney

Enclosed

3532

# Disability Management Services, Inc.

1350 Main Street. Springfield, MA 01103-1619   Tel:(413)747-0990   Fax:(413)747-1545
A third party administrator for:

## Jefferson-Pilot Life Insurance Company

September 12, 2002

Christopher Kearney

Redacted

Re:  Policy Number/s: H-493029, H-538069
     Claim Number/s: H-493029, H-538069

Dear Mr. Kearney:

We are in receipt of your letter dated August 26, 2002.

It has come to our attention that Attorney Eugene L. Matan is now legally representing you in this matter.  Therefore, it would be inappropriate to further communicate directly with you.

Please be sure to direct any future correspondence to our attention through your attorney.

Sincerely,

Robert F Mills
Claims Consultant

cc:     Geraldine M. Johnson, Esq.
        Eugene L. Matan, Esq.

**3383**

d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a Centre Claims Administration Services in NH

## *Disability Management Services, Inc.*

*1350 Main Street, Springfield, MA 01103-1619  Tel:(413)747-0990  Fax:(413)747-1545*
*A third party administrator for:*
### *Jefferson-Pilot Life Insurance Company*

September 16, 2002

Christopher Kearney

Redacted

Re:  Policy Number/s: H-493029, H-538069
     Claim Number/s: H-493029, H-538069

Dear Mr. Kearney:

We are in receipt of your letter dated August 26, 2002.

It has come to our attention that Attorney Eugene L. Matan is now legally representing you in this matter.  Therefore, it would be inappropriate to further communicate directly with you.

Please be sure to direct any future correspondence to our attention through your attorney.

Sincerely,

Robert F Mills
Claims Consultant

cc:    Geraldine M. Johnson, Esq.
       Eugene L. Matan, Esq.

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a Centre Claims Administration Services in NH*

3505

REM



Mr. Robert Mills, Claims Consultant                                    September 23, 2002
Disability Management Services, Inc.
1350 Main Street
Springfield, MA 01103-1619

Re: Policy #H-493029 and H-538069                    Sent by Certified Mail

Mr. Mills:

I received your recent letter concerning communication through my attorney.

I will continue to send the claim forms directly to you- whichever forms you decide to send me in a particular month.

This month, you sent me the form with the printed questions, etc. for my doctor to fill out on the reverse side. Enclosed is the completed form- completed and signed on both sides.

Please continue to send the benefit checks directly to me at my address in Wooster, Ohio. Please do not hassle me again by sending the benefit checks to my attorney's office as you have done previously.

I would also appreciate it if you would send the full amount due and send a reimbursement check with interest for the benefits withheld the last 5 months.

Dr. Judd-McClure acknowledges receipt of your letter asking for documents. Please ask your attorney to contact my attorney concerning this matter.

Sincerely,

Christopher L. Kearney
Christopher L. Kearney

Copy to: Eugene L. Matan, Esq.

3377



November 27, 2002

Mr. Robert Mills, Claims Consultant
Disability Management Services, Inc.
1350 Main Street
Springfield, MA 01103-1619

Re: Policy #H-493029 and H-538069                    <u>**Sent by Fax and Certified Mail**</u>

Mr. Mills:

Enclosed is the completed form for "Continuance of Disability"- completed and signed.  You did
not request a doctor's statement this month.

In my letter to you of 9-23-02, I asked for you to have your attorney call my attorney to discuss
your request for doctor's records.  To my knowledge, we have not heard anything from her.
In the interest of good will, I have authorized my doctor, Dr. McClure, to release the medical
records you have requested.  As I have explained many times before, I do not like the idea of very
confidential psychological information released to anyone, including DMS.

You have not responded to my letters of June 10, 2002 and May 20, 2002.  Despite your refusal to
cite specific language in the insurance policies that support your request for further income
documentation, in the interest of good will, I will send to you the tax returns, which you requested
on April 25, 2002.

Sincerely,

Christopher L. Kearney

Copy to: Eugene L. Matan, Esq.

3484

KENNETH J. SCHNEIDER
WILLIAM R. ELLIS**
WILLIAM H. EDER, JR.
HAROLD G. KORBEE
ERIC C. HOLZAPFEL
PAUL R. BERNINGER
ROBERT P. MALLOY
JEFFREY M. ROLLMAN
MARK S. RECKMAN
JAN M. FRANKEL
GARY J. DAVIS*
JAMES B. HARRISON*
HENRY E. MENNINGER, JR.*
C.J. SCHMIDT, III
THOMAS M. WOEBKENBERG*
JEFFREY P. MCSHERRY* ***
ARTHUR D. WEBER, JR.*
THOMAS J. BREED

JOHN W. EILERS
LISA D. LEHNER*** +
PETER M. BURRELL++
LISA M. RAMMES
TIMOTHY A. GARRY, JR.
DOUGLAS L. WESTENDORF
RAYMOND J. PIKNA, JR.
ROCCINA S. NIEHAUS
THOMAS R. BLONDELL+++
EDWARD D. BENDER
JANET Y. CASTAÑEDA
KEVIN K. FRANK++++
KAREN A. HIGGINS
JEFFREY D. FORBES
V. BRANDON MCGRATH*
NATHAN H. BLASKE * ***
SARAH B. ELLINGTON
E. WEDNESDAY OSTER

Counsel
ROBERT F. RECKMAN
AMY GASSER CALLOW


Retired
HARRY M. HOFFHEIMER


JOHN WOOD II (1917-1998)
FRED C. LAMPING (1903-1989)
ALBERT H. NEMAN (1929-2003)

*Also Admitted in Kentucky
**Also Admitted in Pennsylvania
***Also Admitted in Indiana
+ Also Admitted in Arizona
++ Also Admitted in Oregon
+++ Admitted in Indiana & Illinois
++++ Also Admitted in California

WOOD, LAMPING & LEHNER LLP
208 WALNUT STREET
LAWRENCEBURG, INDIANA 47025
TELEPHONE (812) 537-2375
FAX (812) 537-2368

DIRECT DIAL: 513-852-6067
E-MAIL: wrellis@woodlamping.com

July 28, 2005

Michael A. Roberts, Esq.
Graydon, Head & Ritchey LLP
1900 Fifth Third Center
511 Walnut Street
Cincinnati, OH 45202-3157

Re:    Jefferson-Pilot v. Kearney

Dear Mr. Roberts:

In response to your e-mail this morning, I have spoken with my clients and wish to respond.

Although we did receive a claim form in May of 2005 which identified an address for Dr. Judd-McClure, DMS has been completely unable to get a response to a request for medical records in numerous attempts both by phone and in writing. As you are aware, your client has an obligation to cooperate and provide sufficient proof of loss for his claim to continue. The case currently pending has never been about his continued disability, but rather simply about the amount of the payments to be made under the policy. In order to avoid any potential change in that status, we have asked for your assistance in securing the necessary medical records to support the continued disability of your client. Please do what you can to assist us in this matter. If you choose to ignore your clients contractual obligations to provide these records we will be forced to ask the court to assist us in gathering the necessary medical records so that this claim can continue to be properly evaluated. I would hope that this would not be necessary.

With regard to your and your client's references to Valerie Loftin of Jefferson-Pilot, please be advised that Ms. Loftin is not involved in the handling of this claim and any response made by DMS is made on their behalf and on behalf of their principal Jefferson-Pilot.

MEMBER: LEGAL NETLINK ALLIANCE
AN INTERNATIONAL ALLIANCE OF INDEPENDENT LAW FIRMS

EXHIBIT 12
Hughes
5-4-07
S. ROY, RPR

Michael A. Roberts, Esq.
July 28, 2005
Page 2

You suggest in your e-mail that the concerns about DMS' compliance with the privacy statutes and HIPPA is engendered by what you claim to be hundreds of pages of confidential documents unaccounted for in the claim file provided by DMS. Neither my client nor I am aware of any missing documents or for that matter any documents that your client would consider confidential that have not been provided to you. Since you are aware of the approximate number of these documents, I would appreciate your identifying them for me with sufficient clarity that we may further investigate this allegation.

Thank you for your anticipated cooperation in this matter.

Very truly yours,

William R. Ellis

WRE/pp

247732.1