IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JEFFERSON PILOT LIFE INSURANCE, | ) : | CASE NO. C-1-02-479 |
| Plaintiff, | ) : | |
| vs. | ) : | Judge Barrett |
| CHRISTOPHER L. KEARNEY, | ) : | |
| Defendant. | ) | |

**CHRISTOPHER KEARNEY'S MEMORANDUM
IN OPPOSITION TO MOTION FOR PAYMENT OF COSTS**

This case pits the combined resources of three of the world's largest financial institutions against an individual to whom they owe a duty of good faith and who has been irrefutably disabled for 14 years. The Insurer[1] has used this dynamic at every turn.

The Insurer's latest request that the Court tax Christopher Kearney with the Insurer's travel, lodging, and other expenses relating to May 2007 depositions should be denied: **(i)** the Insurer misconstrues the 2004 Magistrate's comments; **(ii)** Kearney was not responsible for the delayed conclusion of the 2004 depositions; **(iii)** over the intervening 3 years, as the case has unfolded, an updated round of depositions has been permitted and required; and **(iv)** the insurer's costs are exorbitant.

A.     **The Insurer Misinterprets The Order**.

The entity responsible for 80% of the Insurer's liability to Kearney including the costs of this litigation is a General Electric subsidiary. Last week it was publicly announced that GE made a $40 billion profit during the April-June 2007 quarter. At

---

[1] Jefferson Pilot Life Insurance Company (a subsidiary of Lincoln Financial), Employers Reassurance (a subsidiary of General Electric "GE/ERAC"), and Disability Management Services (part owned by Zurich Financial Services, "DMS") are referred to as the "Insurer."

the same time, the Insurer asks that its 14 year disabled insured, Kearney, pay the Insurer's costs for depositions in this action which it filed ***against*** Kearney.

The five years of this case have been defined by discovery abuses of the Insurer. As an example, on ***Friday, July 13, 2007,*** the Insurer finally produced several hundred pages of 2003 requested but withheld DMS training materials. (*See, Exhibit 1 Declaration of Counsel*). And in ***March 2007*** the Insurer finally produced documents it located/generated through a search of the word "Kearney" on its network ~ something the Insurer had been ordered to do 3 years prior. (*Id., Doc. 76, p. 5*).

These training materials and electronically stored documents should have been produced when they were sought by Kearney in 2003. They were not. *Id.* Even though the Court gave DMS additional time to comply with the discovery requests in 2003. (*Doc. 12, 76 p. 5*).

In 2003, the Court set an initial discovery deadline of October 1, 2003. (*Doc. 10*). But because the Insurer resisted discovery, that deadline was postponed. (*Doc. 20, 25, 48*). The new discovery deadline for depositions which concerned the summary judgment question pending at that time became May 14, 2004. *Id.* Accordingly, even though the document phase of discovery was incomplete in May 2004 {and would not be completed until July 2007 ~ assuming the Insurer has now finally fully complied}, Kearney incurred the cost in May 2004 for his lawyer to travel to Massachusetts to conduct depositions of DMS [30(b)(6)], Bonsall, Ditmar, Mills, and Hughes. *Id.*

On the morning of the 1st day of the May 2004 depositions, the Insurer finally provided Kearney with a privilege log that had been sought – and refused - for nearly one year. *Id.* The Court later determined that the privilege log supplied was inadequate and ordered a more complete privilege log be supplied. (*Id.; Doc. 83*).

As the result of the Insurer's stonewalling on discovery (including the tactic used by Mills in his deposition wherein he requested that the examiner's question be repeated in excess of 50 times), only 3+ of the 5 depositions scheduled were completed by Friday evening May 14, 2004, when Kearney and his counsel were scheduled to return to their homes in Ohio. *Id.* Because of the Insurer's stonewalling in discovery Kearney would have the additional burden of sending his lawyer back to Massachusetts at a later date to conclude the Mills deposition and take the Hughes deposition. *Id.*

When the Court first weighed in on the costs of the Hughes/Mills depositions, the Court correctly ordered that Hughes and Mills appear in Cincinnati for their deposition. (*Doc. 49*). The depositions ultimately however took place in Massachusetts. (*Exh. 1*). The later comment of the Magistrate, which the Insurer now coyly mischaracterizes, states that Kearney shall be responsible for his costs and the costs of the Court reporter/videographer ~ as opposed to those costs falling on the Insurer.

Additionally, and importantly, the May 14 depositions concerned just the pending summary judgment issue and did not preclude the conduct of depositions later for the other trial issues. (*Doc. 48, minute entry*).

For these reasons, the Insurer's present request should be denied.

**B.    Kearney Was Not Responsible For The Delayed Conclusion of The 2004 Depositions.**

As noted above, but for the Insurer's intentional withholding of documents (including the withholding of critically important training materials through July 13, 2007) throughout this case, including at the time of the 2004 depositions, all 5 DMS depositions likely could have been completed in the timeframe allotted in the schedule back in 2004.

Ironically, therefore, the Insurer now demands that Kearney be penalized because the Insurer withheld information from him.

Further, nothing required that Kearney conduct all 5 depositions of DMS in one sitting. He could have just as well taken 2-4 depositions at 1 time and left the remainder of the depositions for a later time. The Insurer's request completely ignores this fact.

But, of course, Kearney did not have that luxury since the Insurer's stonewalling during discovery put Kearney in a position where he was required to go to Massachusetts to attempt to conduct all 5 depositions on the final day of discovery with just a fraction of the documents and information that was requested in 2003 and which – in 2007 – was finally provided, if now. (*See, 2004 Docket Entries*).

C.  **As the case has unfolded, an updated round of depositions has been permitted and required.**

Even if the Magistrate's 2004 comment could be read to have required that Kearney pay the Insurer's costs of going to Massachusetts a second time in 2004 to conclude the Mills deposition and conduct the Hughes deposition, that comment was clearly made with the understanding that the discovery and the case would come to a conclusion in 2004. It didn't.

In fact, in 2007 discovery was essentially reopened.

In 2007, the Court permitted the Insurer to take a 2nd deposition of Kearney on June 20, 2007, over Kearney's objection (he was fully deposed by the Insurer's counsel in 2004). The content of that deposition included Kearney's activities from 2002-2007 (as the Court will recall from the June 20, 2007, mid-deposition interaction with the parties' counsel).

Just as the unanticipated 3-year delay in the case paved the way for the Insurer to re-depose Kearney in June 2007, so too, the delay paved the way for Kearney to redepose Mills and Hughes.

Accordingly, even though Mills and Hughes have each only been deposed 1 time, their depositions would have been taken a 2nd time in 2007 ~ and by the Insurer's reasoning ~ that would have been proper.

Accordingly, the Insurer's present motion should be denied since the 2007 depositions of Mills and Hughes as it turns out were completely unavoidable.

D.  **The Insurer's costs are exorbitant.**

At approximately 4 pm on Friday May 14, 2004, when Kearney's counsel needed to catch his pre-scheduled, Friday evening flight home, the Insurer's counsel offered to stay the weekend to conclude the Mills and Hughes depositions. [A strategic "accommodation" offer since document discovery was incomplete then and would not be completed for at least 3 years ~ forcing Kearney to conclude his examinations of the Insurer with only "half the deck"].

But staying the weekend to conclude the 10 remaining hours of testimony (the total time used over 2 days in 2007) would have *at least* required an additional 2 nights in a hotel (Friday and Saturday) and 2 days of a rent-a-car, assuming a court reporter and videographer would have been secured on short notice for a 12 hour duty on that Saturday, which is highly unlikely.

Accordingly, it is far more likely that remaining in Massachusetts that Friday, May 14, 2004, would have meant an additional 3-4 days in a hotel, 3-4 additional rent-a-car days, and a change fee for the flight (Insurer's counsel was on the same Friday evening flight back to Ohio).

Instead of staying in Massachusetts on that May 14, 2004 weekend, and bearing these exorbitant costs [while concluding depositions without all of the documentary evidence], Kearney's counsel kept his Friday night flight reservation. And ironically, as it has turned out, Kearney's decision ***saved the Insurer a significant sum of money***: had the parties' counsel stayed the weekend in May 2004 and incurred these costs, the parties would have returned in 2007 nonetheless to conduct the Mills / Hughes depositions, just as the Insurer demanded its opportunity to redepose Kearney in June 2007.

But even if the Magistrate's comment could be read to require Kearney to pay the Insurer's expenses despite all of the above, the Insurer's offered expenses are exorbitant. To conduct the May 2007 depositions of Mills and Hughes, Kearney's counsel scheduled a $400 flight, spent a single night in a hotel for $149, and spent $50 for a roundtrip cab ride from the airport to Springfield. There is no reason that the Insurer's counsel's expenses should be any greater. And these expenses are much less than the savings which the Insurer realized from Kearney's decision to not stay the weekend in May 2004.

E.     **Kearney Should be Permitted To Redepose DMS At The Insurer's Expense**.

As indicated in Exhibit 1, within the past week, which is 4 years after the request for the materials, DMS finally produced its several hundred page claim representative training materials.

Kearney made the request for these materials in advance of the 2004 depositions for obvious reasons – he desired to use them during the depositions of DMS and its employees. Through its intentional and unlawful conduct the Insurer denied Kearney

this right.  The Insurer should not be permitted this advantage.  It is directly contrary to the civil rules.

Accordingly, in fairness, it is Kearney that should receive the affirmative award of costs from this Court to conduct another deposition of DMS.

## Conclusion

For all of the foregoing reasons, the Insurer's truly incredible request that its 14 year disabled insurer pay its costs (in a quarter where it made a $40 billion profit) is crass, improper, and unavailing.  The Motion should be denied.

Respectfully submitted,

s/Michael A. Roberts
Michael A. Roberts, Esq. (0047129)
GRAYDON HEAD & RITCHEY LLP
511 Walnut Street, Suite 1900
Cincinnati, OH 45202
(513) 629-2799
(513) 651-3836 - fax
mroberts@graydon.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been filed electronically with the court and thereby served this 16th day of July, 2007, upon William R. Ellis, Wood & Lamping LLP, 600 Vine Street, Suite 2500, Cincinnati, OH 45202 and John E. Meagher, Esq., Shutts & Bowen LLP, 1500 Miami Center, 201 South Biscayne Boulevard, Miami, Florida  33131.

s/ Michael A. Roberts