UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JEFFERSON-PILOT LIFE INSURANCE COMPANY, et al. | : | CASE NO. C-1-02-479 |
| | : | |
| | : | (Judge Michael R. Barrett) |
| Plaintiff/Counterclaim Defendants, | : | |
| | : | **MOTION FOR AN ORDER** |
| vs. | : | **CERTIFYING A QUESTION OF OHIO** |
| | : | **LAW TO THE OHIO SUPREME** |
| CHRISTOPHER L. KEARNEY, | : | **COURT OR, IN THE ALTERNATIVE,** |
| | : | **AN ORDER RECONSIDERING THE** |
| Defendant/Counterclaim Plaintiff. | : | **DENIAL OF COUNTERCLAIM** |
| | : | **DEFENDANTS' MOTION FOR** |
| | : | **SUMMARY JUDGMENT.** |

Counterclaim Defendants, Jefferson Pilot Life Insurance Company ("Jefferson Pilot") and Disability Management Services, Inc. ("DMS")(collectively referred to herein as "Counterclaim Defendants"), by and through undersigned counsel and pursuant to Rule XVIII of the Rules of Practice of the Ohio Supreme Court, respectfully move this Court for the entry of an Order Certifying a question of Ohio law to the Ohio Supreme Court or, in the alternative, an Order reconsidering its denial of Counterclaim Defendants' motion for summary judgment on Christopher L. Kearney's ("Kearney") counterclaim. The reasons for the motion are fully explained in the attached Memorandum in Support.

                   Respectfully submitted,

                   /s William R. Ellis
                   William R. Ellis (0012279)
                   Wood & Lamping LLP
                   600 Vine Street, Suite 2500
                   Cincinnati, OH 45202-2491
                   Telephone: (513) 852-6000
                   Telefax: (513) 852-6087
                   E-mail: wrellis@woodlamping.com

OF COUNSEL:                    John E. Meagher (511099)
                           SHUTTS & BOWEN LLP
                           201 S. Biscayne Boulevard
                           1500 Miami Center
                           Miami, Florida  33131
                           Telephone:  (305) 358-6300
                           Telecopier:  (305) 381-9982
                           E-mail:    JMeagher@Shutts-law.com


                           Attorneys for Jefferson-Pilot Life Insurance
                           Company and Disability Management Services, Inc.

**MEMORANDUM IN SUPPORT**

**INTRODUCTION**

In its August 17, 2007 Opinion and Order (the "Order") ruling on Counterclaim Defendants' Motion for Summary Judgment (the "Motion"), this Court, by ruling that Ohio law permits an insured to sustain an action for bad faith claims handling even where the claim has been timely paid, has gone far beyond existing legal precedent in Ohio. Because there is no Ohio state law precedent on point,[1] this issue is determinative of Kearney's bad faith claim, and this ruling exponentially expands the scope of liability for insurers writing policies on insureds located in Ohio, this question is worthy of certification to the Ohio Supreme Court. The question to be certified is:

> Does Ohio law permit an insured to sue his insurer for bad-faith claim handling even where his claim has been timely paid?

In the alternative, should the Court deny the requested certification, Counterclaim Defendants respectfully request that the Court reconsider its denial of the Motion, as the basis of said denial is insufficient to present a genuine issue of material fact to a jury on Kearney's claims for bad faith, invasion of privacy and civil conspiracy.

---

[1] In fact, Ohio case law is to the contrary, as an insured must show a "refusal to pay" prior to suing an insurer for bad faith. *See* §1(B), *infra*.

**ARGUMENT**

I. **The question of whether an insurer can be sued for bad faith in situations where the insured's claim is timely paid should be certified to the Ohio Supreme Court.**

Rule XVIII of the Rules of Practice of the Ohio Supreme Court states in pertinent part:

> Section 1. When a State Law Question May Be Certified.
>
> The Supreme Court may answer a question of law certified to it by a court of the United States. This rule may be invoked when the certifying court, in a proceeding before it, determines there is a question of Ohio law that may be determinative of the proceeding and for which there is no controlling precedent in the decisions of this Supreme Court, and issues a certification order.

Use of the certification procedure is most appropriate when the question of state law is new or state law is unsettled. *Albrecht v. Treon*, 2007 WL 777864, *2 (S.D. Ohio March 16, 2007), attached as Exhibit A. Further, certification of a novel question of state law is appropriate where it will save time, energy and resources. *Id.*

The question presented is a novel one under Ohio law, as the Court's ruling creates a new cause of action in Ohio whereby an insured *whose claim has been (and is being) timely paid* can nonetheless sue his insurer for bad faith claim handling. Nor can there be any serious dispute over whether this question is "determinative," as Kearney cannot bring a bad faith claim if none exists. Moreover, the determination of this issue prior to trial would certainly save "time, energy and resources," as the three (3) parties are scheduled for 10 day trial period beginning September 12, 2007. All of the efforts of the Court and the parties will be for naught if, ultimately, the Supreme Court declines to extend existing Ohio bad faith law to encompass this new cause of action. Further, Kearney will suffer no prejudice from any delay caused by the certification of this question, as he continues to receive approximately twice the amount of the benefit set forth in his policies each and every month, as he has for the past 14 years of his claim.

### A. The Court's rulings eliminate Kearney's bad faith claim.

In its Order, the Court made a number of rulings germane to this Motion:

1. Counterclaim Defendants did not breach Kearney's policies (Order at 13);[2]

2. Kearney's benefits were paid within a month or two of his calls and letters, any such delay was not arbitrary and capricious, and Kearney cited no case law to the contrary (Order at 14);

3. the amount of attention paid by Counterclaim Defendants to Kearney's claim did not constitute an arbitrary and capricious handling of the claim (Order at 16); and

4. the frequency of surveillance, requests for information, and investigations by Counterclaim Defendants was not unreasonable (Id.).

Despite these findings, however, the Court allowed Kearney's bad faith claim to survive, stating that "there is a genuine issue of material fact as to whether the extent of these investigations was reasonable or arbitrary and capricious." (Order at 16.) Such a cause of action, however, is not recognized under Ohio law. Further, considering the impact on the Ohio courts should such a cause of action be created, it is highly doubtful the Ohio Supreme Court would recognize such a claim.

### B. There is no Ohio precedent allowing an insured to bring a bad faith case against an insurer without a "refusal to pay," which is not present in Kearney's case.

As the basis for its ruling that Kearney's bad faith case should proceed, the Court stated:

> Ohio courts have held that there can be a claim of bad faith absent a refusal to pay. An insurance company can exhibit bad faith in ways other than the denial of coverage. (Order at 15).

---

[2] In its earlier Order on the parties' cross-motions for summary judgment, the Court held that Counterclaim Defendants had correctly interpreted Kearney's policies in deciding that he was not entitled to the additional Social Security and Cost of Living Adjustment benefits because his claim was for residual, not total, disability, but ruled that they had to continue paying Kearney twice the amount of his contractual benefits on an estoppel theory.

5

Respectfully, that statement is erroneous, as Ohio courts **do require** a "refusal to pay," but have defined that phrase to include situations where the insurer disputes the *amount* of the claim and does not pay it in full until after a significant delay (i.e., after the passage of years or an adverse verdict). As explained in *Mundy v. Roy*, the case establishing this rule of law in Ohio:

> Allstate reasons that a "refusal to pay" within the meaning of *Zoppo* can exist only when an insurer denies a claim outright. Because it did not deny Mundy's underinsured-motorist claim, Allstate insists that it "has never refused" to pay the claim. **We do not accept such a narrow interpretation of the phrase "refusal to pay." In our view, Allstate refused to pay Mundy's underinsured-motorist claim when it disputed his alleged damages, rejected his settlement demand, and compensated him only after a jury rendered a verdict against it. If we were to interpret a "refusal to pay" as being synonymous with the denial of a claim, then an insurer could insulate itself from a bad-faith cause of action by offering to settle with a claimant for a nominal amount such as $1.00.**

2006-Ohio-993 at ¶18 (emphasis supplied), attached as Exhibit B; s*ee*, *e.g.*, *Unklesbay v. Fenwick*, 855 N.E.2d 516, 520-521, ("refusal to pay" found where claim paid by insurer 3 years after insured's filing of lawsuit seeking damages). The *Mundy* court stated further, "As *Zoppo* makes clear, the **essence** of the claim is that the **failure to pay** was without "reasonable justification." *Id.* at FN5 (emphasis supplied).

The holding in *Unklesbay*, *supra*, cited in the Order at page 15, makes even clearer that a "refusal to pay" is required to sustain a bad faith claim under Ohio law. In *Unklesbay*, one of the issues before the court was the insured's appeal of the trial court's denial of discovery of the insurer's claim file." 855 N.E.2d at 519-521. After rejecting the insurer's argument that it was immune from bad faith because, although it had failed to pay the claim for 3 years, it had never "denied" the claim, the court stated:

> [in *Mundy*] we declined to interpret a bad-faith "refusal to pay" as being synonymous with the denial of a claim. **We reasoned that the insurer's foot-dragging in the claims-handling and evaluation process could**

6

> **support a bad-faith cause of action**….We reach the same conclusion here.

*Id.* at 520-521. The court then went on to allow the discovery of the claim file *only up to the time of the payment of the claim*, stating:

> Unklesbay's bad-faith cause of action includes allegations of bad-faith handling, processing, evaluating, and refusing to pay his claim. **Essentially, then, he alleges foot-dragging on the part of Preferred Mutual.** As a result, applying the rationale of *Boone* to the facts of this case, we agree with the trial court's assessment that attorney-client and work-product documents relevant to Unklesbay's bad-faith claim **could have been created until the time that Preferred Mutual quit dragging its feet, settled his claim, and paid him benefits.** Therefore, the trial court did not err in adopting the benefit-payment date to determine which claims-file materials may be subject to discovery.

*Id.* at 523-524. Put another way, the court found it impossible for there to be evidence of bad faith at and after the time the claim was paid!

In the case at bar, however, no feet were dragged in paying Kearney's claim. As found by the Court, there was no untoward delay in paying Kearney's claim. (Order at 14). Kearney can point to no Ohio case (or any other jurisdiction known to undersigned counsel, for that matter) stating that an insured can sue his insurer for bad faith where the insurer has never refused to pay the claim.

Nor is it likely that Ohio courts would approve the creation of such a cause of action. As shown above, although the Ohio courts will not allow an insurer to insulate itself from a bad faith claim merely by its refusing to formally "deny a claim," and then paying years later (sometime after verdict), there is no indication that they would be inclined to flood to courts with bad faith claims by insureds who were being timely paid by their insurers. Thus, this question should be certified to the Ohio Supreme Court prior to the trial of this matter.

## II. In the alternative, the Court should reconsider its denial of the Motion for summary judgment on Kearney's bad faith claim.

Should the Court not certify this issue to the Ohio Supreme Court, for the reasons set forth in Section I, above, the Court should reconsider its denial of the Motion as to Kearney's bad faith claim on the grounds that the Order misapprehends Ohio law in stating "Ohio courts have held that there can be a claim of bad faith absent a refusal to pay." (Order at 15). Although a motion for reconsideration is not mentioned in the Federal Rules of Civil Procedure, it is appropriate in order "to correct a clear error of law or to prevent manifest injustice." *Total Benefits Planning Agency Inc. v. Anthem Blue Cross & Blue Shield*, 2007 WL 2156657 (S.D. Ohio July 25, 2007), attached as Exhibit C. Accordingly, Counterclaim Defendants' motion for reconsideration should be granted.

Even if Kearney could state a claim for bad faith under Ohio law, the findings of the Court have narrowed the remaining "jury issue" (i.e., the reasonableness of the "extent" of the claim investigation) out of existence. The Court has specifically found that the "amount of attention" paid to Kearney's claim was reasonable. Likewise, the Court has ruled that the "frequency" of the information requests was not bad faith. Based on those findings, what question can be asked of the jury? If the question is whether Counterclaim Defendants' were "too intrusive" in their claim investigation, that simply is not the standard for bad faith under Ohio law, which the Order accurately sets forth as:

> [A]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor.

(Order at 13, *citing Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, 1319 (Ohio 1993)). While insurers are on notice of this standard set forth in Ohio case law, this "new' cause of action – allowing their insureds to sue them for bad faith claim handling even when the claim is timely

paid has never before existed. Accordingly, to punish an insurer on an unknown standard of behavior would result in a manifest injustice.

In fact, one of the areas of concern set forth in the Order, Counterclaim Defendants' review of Kearney's "divorce proceeding and his speeding and traffic tickets," involve *public records*. It is difficult to see how an insurer can be held liable for bad faith by reviewing documents that could be seen by anyone in the world possessing an internet connection. Further, the review of those public records *did* uncover information relevant to Kearney's claim. For example, Kearney specifically referenced his medical condition and disability status in his divorce proceedings. This public record was of such importance that it was attached as Exhibit "E" to the Motion. Also, the existence of Kearney's new business, Innomation, Inc., was discovered by a public records search as Kearney had failed to tell Counterclaim Defendants of the existence of that company. *See* Motion, Exhibits "M" and "N". That information lead to the discovery of Kearney's deposition in *J. E. Grote Company, Inc. v. Innomation, Inc. f/k/a Kearney Magnetics and Engineering, Inc.*, a copy of which was attached to the Motion as Exhibit "O." In that deposition, Kearney described at great length his *actual work activities during the time he claimed to be residually disabled*. That information is certainly relevant to a disability carrier. Of course, even if they have found nothing the search would have been appropriate. The law of Ohio simply cannot punish an insurer for undertaking this type of investigation.

In fact, in it its recent order compelling discovery from Kearney, the Court has found Kearney's credit-card records to be relevant and discoverable in this litigation. (Docket #176). As recognized by the Court, itself, those non-public credit card records (which Kearney objected to producing on privacy grounds), may well provide relevant evidence regarding Kearney's

allegations. It would be "manifestly unjust" to retroactively punish an insurer for seeking out similar, less-protected information during its authorized claim investigation – especially when there is no Ohio case law declaring the process in any way illegal or improper. These arguments are equally applicable to Kearney's claims for invasion of privacy and conspiracy, and the Court should reconsider its denial of the Motion on those causes of action also.

### III.    Conclusion

The parties are now on the brink of a jury trial in which they will expend tens of thousands of dollars. As set forth above, Kearney's novel cause of action should not be tried unless and until the Ohio Supreme Court determines that an insured can sue for bad faith despite the absence of a "refusal to pay." Should the Court not certify the question to the State court, it should reconsider, and reverse, its Order denying Counterclaim Defendants' Motion as to Kearney's claims for bad faith, invasion of privacy and conspiracy, both for the reasons set forth in Section I, above, and the fact that allowing this case to go to trial on these facts will result in a "manifest injustice."

Respectfully submitted,

/s William R. Ellis
William R. Ellis (0012279)
Wood & Lamping LLP
600 Vine Street, Suite 2500
Cincinnati, OH  45202-2491
Telephone:    (513) 852-6000
Telefax:       (513) 852-6087
E-mail:  wrellis@woodlamping.com

OF COUNSEL:                     John E. Meagher (511099)
                                SHUTTS & BOWEN LLP
                                201 S. Biscayne Boulevard

        1500 Miami Center
        Miami, Florida  33131
        Telephone:  (305) 358-6300
        Telecopier:  (305) 381-9982
        E-mail:     JMeagher@Shutts-law.com

Attorneys for Plaintiff, Jefferson-Pilot Life Insurance Company and Cross-Claim Defendant, Disability Management Services, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this 24th day of August, 2007. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                s/ William R. Ellis

327547.2