```
                                                                       132RGW
Time of Request: Friday, August 24, 2007   15:26:25 EST
Client ID/Project Name: 18622-05
Number of Lines: 368
Job Number:     1821:44167587

Research Information

Service:   Terms and Connectors Search
Print Request: Current Document: 6
Source: OH State Cases, Combined
Search Terms: mundy /5 roy
```

```
Send to:   MCGRATH, V BRANDON
           WOOD & LAMPING LLP
           600 VINE ST STE 2500
           CINCINNATI, OH 45202-2491
```

6 of 6 DOCUMENTS

**JOSEPH L. MUNDY, ET AL., Plaintiffs-Appellants vs. BRANDON W. ROY, ET AL., Defendants-Appellees**

C.A. Case No. 2005-CA-28

COURT OF APPEALS OF OHIO, SECOND APPELLATE DISTRICT, CLARK COUNTY

*2006 Ohio 993*; *2006 Ohio App. LEXIS 922*

**March 3, 2006, Rendered**

**PRIOR HISTORY:** [**1] (Civil Appeal from Common Pleas Court). T.C. Case No. 01-CV-0647.

**DISPOSITION:** Judgment reversed and cause remanded.

**COUNSEL:** JOHN A. SMALLEY, Dayton, Ohio, Attorney for Plaintiffs-Appellants.

EDWIN J. HOLLERN, Westerville, Ohio, Attorney for Defendant-Appellee.

**JUDGES:** BROGAN, J. FAIN, J., concurs. DONOVAN, J., concurring in part and dissenting in part.

**OPINION BY:** BROGAN

**OPINION**

BROGAN, J.

[*P1] Joseph L. Mundy appeals from the trial court's denial of discovery and its later entry of summary judgment against him on (1) his bad-faith claim against appellee Allstate Insurance Company and (2) his motion for prejudgment interest on a jury verdict he obtained against Allstate for underinsured-motorist damages.

[*P2] Mundy advances three assignments of error on appeal. First, he contends the trial court erred in denying him discovery on his bad-faith claim and on the issue of prejudgment interest. Second, he asserts that the trial court erred in entering summary judgment against him on the bad-faith claim. Third, he argues that the trial court erred in denying him prejudgment interest on the jury's verdict.

[*P3] For the reasons set forth below, we agree that the trial court erred in denying [**2] Mundy discovery on his bad-faith claim. In the absence of discovery, we also find that the trial court erred in entering summary judgment against Mundy on the bad-faith claim. With regard to prejudgment interest on the jury verdict for underinsured-motorist damages, we conclude that Mundy was entitled to such interest. As a result, we agree that the trial court erred in entering summary judgment against him on his motion for prejudgment interest. Although Mundy is entitled to prejudgment interest, we believe the most appropriate course of action is to permit the trial court, in the exercise of its discretion, to establish the accrual date for the award. The trial court also may determine, in the exercise of its discretion, whether any additional discovery is necessary on the prejudgment interest issue. Accordingly, we will reverse the trial court's judgment and remand the cause for further proceedings.

I. Background

[*P4] This appeal stems from a July, 1999, car accident in which Brandon Roy negligently struck Joseph Mundy's vehicle. As a result of the accident, Mundy claimed various damages, including medical bills, lost wages, and pain/suffering. On August 14, 2000, Roy's [**3] liability insurance carrier, Progressive Insurance Company, offered to settle with Mundy for $ 8,189.66. [1] Because this amount was less than Mundy's damages, he filed an underinsured-motorist claim with Allstate, his own automobile insurance carrier. On August 23, 2000,

Mundy also sought Allstate's permission to settle with Progressive. Allstate did not authorize the settlement until approximately two years later, purportedly because it was trying to determine whether a potential *Scott-Pontzer* insurer existed through Mundy's employer.

> 1  Roy's policy limit was $ 12,500 per person/$ 25,000 per accident, but there were several injured claimants riding in Mundy's vehicle. As a result, Progressive Insurance Company offered Mundy less than the policy limit to settle his own claim.

[*P5] After Mundy and Allstate failed to reach an agreement as to the amount of his underinsured-motorist damages, he filed a complaint in July, 2001, seeking those benefits from Allstate. The complaint included a bad-faith cause [**4] of action against Allstate for its handling of his underinsured-motorist claim. The parties subsequently participated in mediation, and Allstate offered Mundy $ 2,367.85 to settle his underinsured-motorist claim. The parties failed to reach an agreement, however, and the trial court bifurcated the underinsured-motorist benefit and bad-faith claims for trial. After hearing the evidence, a jury awarded Mundy accident-related damages of $ 51,367.35 on his underinsured-motorist claim. 2 This award was reduced by the $ 8,189.66 he previously had received from Progressive, the tortfeasor's liability insurance carrier.

> 2  The jury's award included damages for past pain and suffering, past medical expenses, lost wages, future pain and suffering, and future medical expenses. (Doc. # 74).

[*P6] Following the jury's verdict, Mundy moved for prejudgment interest and renewed an earlier unsuccessful request for discovery in connection with his remaining bad-faith claim. For its part, Allstate moved for summary judgment [**5] on the bad-faith claim and the prejudgment interest issue. In a brief entry, the trial court denied Mundy's renewed discovery request. It later entered summary judgment in favor of Allstate on the bad-faith claim and on Mundy's motion for prejudgment interest on the jury's verdict. This timely appeal followed.

II. Analysis

[*P7] In his three assignments of error, Mundy contends the trial court erred in entering summary judgment against him on his bad-faith claim, in denying his motion for prejudgment interest on the underinsured-motorist damages award, and in refusing to permit discovery on either issue.

[*P8] With regard to the bad-faith claim, the discovery dispute originated with a pre-trial request by Mundy's counsel to examine Allstate's claims file and internal communications related to Mundy's underinsured-motorist claim. In response to this request, Allstate moved for a protective order. (Doc. # 60). Allstate characterized the discovery request as a "fishing expedition" and insisted that it had acted reasonably in evaluating and processing Mundy's claim. Allstate attributed any delay in processing the claim to Mundy's failure to identify a potential *Scott-Pontzer* [**6] carrier. 3 Allstate also stressed that it had not *denied* or *refused to pay* Mundy's claim. Instead, the insurance company argued that it merely had disputed the amount, rather than the validity, of the claim. Allstate proposed that a dispute over the amount of a claim cannot support a bad-faith cause of action as a matter of law. Finally, Allstate asserted that the materials in its claim file constituted work product and/or were protected by attorney-client privilege and, therefore, were not subject to discovery.

> 3  At the time of Mundy's underinsured-motorist claim, the Ohio Supreme Court's ruling in *Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, 1999 Ohio 292, 710 N.E.2d 1116*, remained in effect. As a result, Allstate argued below that the insurer of Mundy's employer might share responsibility for providing underinsured-motorist coverage. Prior to trial, however, the Ohio Supreme Court partially overruled *Scott-Pontzer,* and this issue dropped from the case.

[*P9] Mundy responded by [**7] clarifying the factual basis for his bad-faith claim and the discovery sought. (Doc. # 62). He identified two specific acts of bad faith by Allstate: (1) engaging in excessive delay before authorizing a settlement with the tortfeasor's insurance company for $ 8,189.66 or advancing him the amount of the settlement offer, and (2) refusing to make a good-faith settlement offer on his underinsured-motorist claim. As for the discovery sought, Mundy cited deposition testimony from former Allstate employee Ralph DeFabio indicating that Allstate used a claim-evaluation system known as "Colossus." Based on DeFabio's testimony, Mundy contended the results of the Colossus evaluation

would show that Allstate inappropriately had evaluated his underinsured-motorist damages and would support his bad-faith claim.

[*P10] The trial court sustained Allstate's motion for a protective order, reasoning as follows:

[*P11] "Allstate has not denied the claims of plaintiffs, in fact, defendant has presented settlement offers in an effort to settle the Mundy's claims. Plaintiffs Celeste Dyke and Warren Smith claims have been settled.

[*P12] "In the discovery process, defendant was required [**8] to determine the extent of the plaintiff's injuries as well as determine the availability of other insurance coverage.

[*P13] "The court finds plaintiffs have failed to present a prima facie case of bad faith simply because defendant has not satisfied the claims, therefore, plaintiffs' attempt to discover defendant's claim file and communications between defendant and legal counsel is precluded.

[*P14] "The Court finds the documentation contained in defendant's claim file was prepared in anticipation of litigation and is therefore protected under Work Product Doctrine and/or Attorney Client privilege." 4 (Doc. # 63).

> 4 Although the trial court's ruling referred to the "plaintiffs," Joseph Mundy is the only party to the present appeal.

[*P15] Following the trial court's ruling, Mundy's claim for underinsured-motorist damages proceeded to trial. The jury awarded him accident-related damages of $ 51,367.35, which was reduced by the $ 8,189.66 he already had received from the tortfeasor's insurer. [**9] Mundy then renewed his request for discovery on the remaining bad-faith claim. He sought to obtain Allstate's claims file and requested to depose the claims handler who had evaluated his claim for Allstate. (Doc. # 80-81). The insurance company again opposed discovery and moved for a protective order. (Doc. # 82). In its motion, Allstate argued that discovery was unwarranted because it had not refused to "recognize" Mundy's underinsured-motorist claim. Instead, Allstate explained, it simply had disputed matters of proximate cause and the amount of Mundy's damages. In essence, Allstate again reasoned that a disagreement over the value of an underinsured-motorist claim, as opposed to the outright denial of such a claim, cannot support a bad-faith cause of action. Therefore, Allstate argued that Mundy was not entitled to discovery. On November 2, 2004, the trial court overruled Mundy's motion for additional discovery without explanation. (Doc. # 83).

[*P16] On appeal, Mundy contends the trial court erred in denying discovery based on his failure to establish a prima facie case of bad faith. He also argues that the trial court erred in relying on attorney-client privilege and the [**10] work-product doctrine to deny him discovery on the bad-faith claim. In response, Allstate insists that nothing in its claims file would be relevant to Mundy's bad-faith cause of action. This is so, Allstate asserts, because the underinsured-motorist claim was not denied. Instead, the only dispute concerned the amount of Mundy's damages. According to Allstate, the existence of conflicting expert testimony over the extent of Mundy's accident-related injuries obviated the need for discovery on the bad-faith claim. In this regard, Allstate maintains that a dispute over the value of a claim cannot support a bad-faith action as a matter of law. It also argues that the value of pain and suffering is fairly debatable as a matter of law and cannot support a bad-faith claim. Therefore, Allstate argues that no discovery was required.

[*P17] Upon review, we find that the trial court abused its discretion in denying discovery on the bad-faith claim. In reaching this conclusion, we first reject Allstate's contention that Mundy's bad-faith claim cannot lie, as a matter of law, because it did not deny underinsured-motorist benefits but merely disputed the value of the claim. In Ohio, an insurer [**11] has a duty to act in good faith toward its insured in carrying out its responsibilities under the policy of insurance. *Hoskins v. Aetna Life Ins. Co. (1983), 6 Ohio St.3d 272, 6 Ohio B. 337, 452 N.E.2d 1315, paragraph one of the syllabus*. "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co., 71 Ohio St.3d 552, 1994 Ohio 461, 644 N.E.2d 397, at paragraph one of the syllabus*.

[*P18] Allstate reasons that a "refusal to pay" within the meaning of *Zoppo* can exist only when an insurer denies a claim outright. Because it did not deny Mundy's underinsured-motorist claim, Allstate insists that

it "has never refused" to pay the claim. (Appellee's brief at 15). We do not accept such a narrow interpretation of the phrase "refusal to pay." In our view, Allstate refused to pay Mundy's underinsured-motorist claim when it disputed his alleged damages, rejected his settlement demand, and compensated him only after a jury rendered a verdict against it. If we were to interpret a "refusal to pay" as being synonymous with the denial [**12] of a claim, then an insurer easily could insulate itself from a bad-faith cause of action by offering to settle with a claimant for a nominal amount such as $ 1.00.

[*P19] Of course, our determination that Allstate refused to pay Mundy's underinsured-motorist claim does not end the matter. As the Ohio Supreme Court recognized in *Zoppo,* an insurer subjects itself to a bad-faith claim only when its refusal to pay "is not predicated on circumstances that furnish reasonable justification therefor." On this issue, Allstate argues that it relied on an expert's opinion of the value of Mundy's claim. Therefore, the insurance company contends it had reasonable justification for its handling of the claim, thereby precluding a bad-faith cause of action. 5

> 5  On appeal, Allstate also characterizes Mundy's bad-faith claim as an infringement on its constitutional right to a jury trial. Allstate contends that allowing the bad-faith claim to go forward will chill the insurance company's right to a jury trial. See Appellee's brief at 15. We disagree. As set forth above, a bad-faith claim requires proof of more than an insurance company's failure to settle and demand to take a coverage or damages issue to trial. As *Zoppo* makes clear, the essence of the claim is that the failure to pay was without "reasonable justification." Therefore, liability flows not from an insurance company's demand for a jury trial per se, but from its unreasonable evaluation of the insured's claim. Therefore, we find no violation of the constitutional right to a jury trial.

[**13] [*P20] Mundy's position, however, is that Allstate did not have a reasonable justification for refusing to pay the underinsured-motorist damages he requested. Although Allstate's expert testimony about the extent of Mundy's accident-related injuries ultimately may carry the day at a trial on the bad-faith claim, it is conceivable that the claims file might contain other information relevant to the insurance company's handling of his claim and the reasonableness of its settlement offer. 6 Such discovery may or may not refute Allstate's reasonable-justification argument. But without the ability to review the claims file and depose Allstate's claims examiner, Mundy will never know. It does not follow that Mundy should be denied discovery simply because Allstate has some evidence to support a finding that its actions were reasonably justified.

> 6  For example, as noted supra, Mundy has theorized that a review of Allstate's "Colossus" evaluation in this case will reveal the unreasonableness of the insurance company's handling of his underinsured-motorist claim.

[**14] [*P21] We also reject Allstate's argument that a bad-faith claim cannot arise, as a matter of law, from an insurer's dispute with its insured over the value of pain and suffering or the amount of the insured's damages. In support of this proposition, Allstate cites *Ohio Jury Instruction 23.04* and *Eagle Am. Ins. Co. v. Frencho (1996), 111 Ohio App.3d 213, 223, 675 N.E.2d 1312*. Neither of these authorities persuades us that Allstate's argument is correct. The jury instruction provides that the value of pain and suffering is a factual matter that cannot be reduced to a mathematical formula. This does not mean, however, that it is impossible for an insurer to make an unreasonably low settlement offer under the facts of a particular case. Likewise, in *Frencho,* the Tenth District did not hold that a dispute over the value of pain and suffering *never* can support a bad-faith claim. Rather, the *Frencho* court merely held that the evidence in that case established the reasonableness of the insurer's settlement offer as a matter of law.

[*P22] We are equally unpersuaded by the trial court's holding that discovery on Mundy's bad-faith claim was unwarranted because he failed [**15] to establish a prima-facie case of bad-faith. The trial court cited no authority for the proposition that a plaintiff cannot obtain discovery on a bad-faith claim until he makes out a prima facie case and we are aware of none. Finally, we are confident that any concerns about attorney-client privilege and work-product can be resolved, in the first instance, by the trial court reviewing the claims file in camera, which does not appear to have occurred before it denied Mundy's discovery request. 7

> 7  Parenthetically, we note that the attorney-client privilege and work-product doctrines have limited applicability in cases involving bad-faith

insurance claims. *Boone v. Vanliner Ins. Co., 91 Ohio St.3d 209, 2001 Ohio 27, 744 N.E.2d 154*. Although *Boone* involved the outright denial of an insurance claim, we reject Allstate's assertion that it has no applicability to Mundy's bad-faith claim, which arises from Allstate's claim processing and refusal to settle with him. In our view, much of *Boone's* reasoning remains applicable without regard to this distinction.

[**16] [*P23] The remaining issue for our review is Mundy's motion for prejudgment interest on his award for underinsured-motorist damages. The Ohio Supreme Court has made clear that an underinsured-motorist claim is a contract claim for purposes of *R.C. 1343.03(A)*, the prejudgment interest statute. *Landis v. Grange Mut. Ins. Co., 82 Ohio St.3d 339, 341, 1998 Ohio 387, 695 N.E.2d 1140*. Subsection (A) of the statute provides for an award of prejudgment interest "when money becomes due and payable upon any * * * instrument of writing * * *." Here the "instrument of writing" is the insurance contract, and a jury determined the amount of underinsured-motorist benefits owed to Mundy under the contract. Thus, Mundy ordinarily would be entitled to an award of prejudgment interest, and the only issue would be when the interest began to accrue. *Roberts v. State Farm Mut. Auto. Ins. Co., 155 Ohio App.3d 535, 545, 2003 Ohio 5398, 802 N.E.2d 157*.

[*P24] With regard to establishing the accrual date for prejudgment interest, we addressed the issue in *Roberts* as follows:

[*P25] "The Ohio Supreme Court has held that 'whether the prejudgment interest * * * [**17] should be calculated from the date coverage was demanded or denied, from the date of the accident, from the date at which arbitration of damages would have ended if [the insurance company] had not denied benefits, or some other time based on when [the insurance company] should have paid [the plaintiff] is for the trial court to determine. *Landis, 82 Ohio St. 3d at 342, 695 N.E.2d 1140*.

[*P26] "After reviewing various cases establishing different times of accrual for prejudgment interest, including the date of the accident, the date when a court determines that the loss is covered, and the date when a jury verdict is rendered, we have concluded that a trial court has broad discretion in determining the date from which prejudgment interest should be calculated.

*Horstman v. Cincinnati Ins. Co. (Nov. 17, 2000), Montgomery App. No. 18430, 2000 Ohio App. LEXIS 5354, 2000 WL 1720139 at *3*. We have declined to adopt a bright-line rule that prejudgment interest should be calculated from the date of the accident 'unless and until the Ohio Supreme Court alters its current holding that when prejudgment interest should begin to accrue is a matter for the trial courts to decide [**18] within a broad possible range of options, and such decisions should not be overruled unless an appellate court finds an abuse of discretion. *2000 Ohio App. LEXIS 5354, [WL] at *4*. Thus, we have recognized that the trial court has a very wide range of latitude in fixing a time for the interest to accrue.' *2000 Ohio App. LEXIS 5354, [WL] at *3*." *Roberts, 155 Ohio App.3d at 545-546*.

[*P27] In the present case, the trial court determined that *no* prejudgment interest accrued before the jury rendered its verdict on the underinsured-motorist damages claim. In support, the trial court reasoned:

[*P28] "The amount that was due and payable under the insurance contract was not decided until the jury rendered its verdict. To hold Defendant liable for prejudgment interest in this action prior to the time which the money became due and payable to plaintiff would be contrary to the intent of the parties. Plaintiff had no reasonable expectation of receiving any sum of money and defendant had no obligation to pay any sum of money until the parties exercised their options under the clause of the contract permitting either party to resolve the dispute in a court of competent jurisdiction." (Doc. # 87 at 2).

[*P29] The [**19] trial court's citation to the insurance contract is an apparent reference to a clause governing the resolution of disputes. This clause, which Allstate cites on appeal, provides:

[*P30] "If we cannot agree with the insured person or additional insured person that such person is legally entitled to recover damages from the owner or operator of an uninsured auto *or on the amount of damages,* then upon the mutual consent of Allstate and the insured person or additional insured person, the disagreement may be settled by arbitration. We and the insured person or additional insured person must mutually agree to arbitrate the disagreements. *If we and the insured person or additional insured person do not agree to arbitrate, then the disagreement will be resolved in a court of competent jurisdiction."* (Doc. # 78 at Exh. A, policy

page 7) (emphasis added).

[*P31] Based on the foregoing language, the trial court found that no money was "due and payable" until the jury reached its verdict. Thus, the insurance company contends, and the trial court agreed, no prejudgment interest was owed. In support, Allstate cites the Tenth District's ruling in *Frencho, supra.* [**20] There the Tenth District affirmed the trial court's denial of prejudgment interest. In so doing, the appellate court noted the existence of policy language allowing the parties to resolve disputes through arbitration and/or traditional litigation. *Frencho, 111 Ohio App.3d at 221-222*.

[*P32] Upon review, we believe Allstate and the *Frencho* court read too much into the policy language at issue, which is essentially a forum-selection clause providing for possible alternative dispute resolution. The clause in the present case simply identifies *where* disputes over coverage or the amount of benefits will be resolved. It provides for such disputes to be resolved through arbitration if mutually agreed. Otherwise, they are to be resolved through litigation. In our view, the existence of a common dispute-resolution clause cannot reasonably be construed to relieve Allstate of its obligation to pay prejudgment interest on the jury's verdict against it. We do not agree that Allstate owed Mundy nothing, for prejudgment interest purposes, merely because the parties disputed the amount of his damages and contractually had agreed to have the dispute resolved through arbitration [**21] or litigation. The jury verdict in this case did not create Allstate's contractual obligation to compensate Mundy. Instead, the verdict merely confirmed that under the contract Allstate had owed Mundy the money all along. Thus, an award of prejudgment interest is proper, and nothing in the dispute-resolution clause provides otherwise. Cf. *Jewett v. Owners Ins. Co. (March 11, 2002), Licking App. No. 01 CA 38, 2002 Ohio 1282, at P39* (expressly rejecting the *Frencho* court's interpretation of a similar clause).

[*P33] The fact that Allstate and Mundy disputed the amount of his underinsured-motorist damages does not in any way preclude an award of prejudgment interest. Throughout this litigation, Allstate has stressed that it never denied Mundy's claim. To the contrary, it recognized the validity of his claim and merely contested the amount of his damages. The Ohio Supreme Court has made clear, however, that prejudgment interest is payable even for periods of time when the amount of underinsured-motorist damages remains undetermined. *Landis, 82 Ohio St.3d at 341*; see also *Royal Elec. Constr. v. Ohio State Univ. (1995), 73 Ohio St. 3d 110, 1995 Ohio 131, 652 N.E.2d 687, at syllabus* [**22] (recognizing that an award of prejudgment interest "is compensation to the plaintiff for the period of time between accrual of the claim and judgment, regardless of whether the judgment is based on a claim which was liquidated or unliquidated and even if the sum due was not capable of ascertainment until determined by the court").

[*P34] Based on the reasoning set forth above, we hold that the trial court erred in denying Mundy prejudgment interest by finding nothing "due and payable" under the insurance contract until the jury rendered its verdict. This determination constituted an abuse of discretion because it resulted from a misreading of the insurance contract and completely deprived Mundy of any prejudgment interest.

[*P35] The remaining questions, then, are when prejudgment interest began to accrue and whether there was a need for discovery on the issue of prejudgment interest. As we recognized in *Roberts,* courts have adopted a variety of dates to start the running of prejudgment interest, and it is a matter of judicial discretion on the part of a trial court. In the present case, however, the trial court did not exercise that discretion at all. Instead, [**23] it erroneously determined that Mundy had contracted away his right to obtain prejudgment interest. Consequently, we believe the most appropriate remedy is to permit the trial court, in the exercise of its sound discretion, to select an accrual date for Mundy's prejudgment interest award on remand. In resolving this issue, the trial court may determine, again in the exercise of its discretion, whether any additional discovery is necessary. Having presided over a jury trial that culminated in the verdict underlying a prejudgment interest award, the trial court may be capable of selecting an accrual date without the need for more discovery. In any event, we will leave that issue for the trial court to resolve on remand.

III. Conclusion

[*P36] Based on the reasoning set forth above, we sustain Mundy's first assignment of error insofar as he contends the trial court erred in denying him discovery on his bad-faith claim. We also sustain Mundy's second and

third assignments of error, which address the trial court's entry of summary judgment against him on his bad-faith claim and his motion for prejudgment interest on the jury's verdict. The trial court's judgment is reversed, and [**24] the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed and cause remanded.

. . . .

FAIN, J., concurs.

**CONCUR BY:** DONOVAN (In Part)

**DISSENT BY:** DONOVAN (In Part)

**DISSENT**

DONOVAN, J., concurring in part and dissenting in part:

[*P37] I concur in the majority's resolution of appellant's first assignment of error, the bad faith claim. However, I disagree with the majority's resolution of the prejudgment interest claim.

[*P38] As noted by the majority, in *Horstman, supra*, we stated "that a trial court has broad discretion in determining the date from which prejudgment interest should be calculated." The judgment of the trial court denying prejudgment interest should not be overruled unless we conclude that the trial court abused its discretion.

[*P39] The trial court could reasonably find the date that UIM coverage became due and payable under the policy was the date of the jury's verdict. Due to the contractual relationship between an insurer and its insured, prejudgment interest claims under UIM coverage are contract-based claims governed by *R.C. § 1343.03(A)*. The legal basis for recovery of the UIM [**25] coverage is based on the contract. Interest is available from the date when the money becomes "due and payable" as determined by the trial court.

[*P40] In this case, the insurance policy essentially provides that absent a mutual agreement to arbitrate, a court of competent jurisdiction will determine how much money an individual is legally entitled to recover. Based on the Ohio Supreme Court's decision in *Landis, supra*, the trial court determines when the UIM benefits become due and payable pursuant to the insurance policy. Thus, as in *Frencho, supra*, the court could properly determine that the money did not become due and payable until the date of judgment.

[*P41] Under an abuse of discretion standard, the trial court's discretion is not absolute, but it is quite broad. The trial court considered the facts, analyzed the applicable insurance contract provisions, and concluded that the final step in determining the amount payable to appellant was the jury verdict. The decision of the trial court denying prejudgment interest was not an abuse of discretion.