```
                                                                    132RGW
Time of Request: Friday, August 24, 2007   15:24:51 EST
Client ID/Project Name: 18622-05
Number of Lines: 357
Job Number:      1861:44167017

Research Information

Service:   Terms and Connectors Search
Print Request: Current Document: 1
Source: Federal Court Cases, Combined
Search Terms: Total /3 Benefits /2 Planning /2 Agency and ohio
```

```
Send to:   MCGRATH, V BRANDON
           WOOD & LAMPING LLP
           600 VINE ST STE 2500
           CINCINNATI, OH 45202-2491
```

1 of 2 DOCUMENTS

**Total Benefits Planning Agency Inc. et al., Plaintiffs v. Anthem Blue Cross and Blue Shield, et al., Defendants.**

**Case No. 1:05cv519**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION**

*2007 U.S. Dist. LEXIS 53862*; *2007-2 Trade Cas. (CCH) P75,807*

**July 25, 2007, Filed**

**PRIOR HISTORY:** *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield, 2006 U.S. Dist. LEXIS 64355 (S.D. Ohio, Sept. 8, 2006)*

**COUNSEL:** [*1] For Total Benefits Planning Agency Inc, Thomas Quigley, Christy Quigley, Pamela A Baute, Melanie C Blanton, Plaintiffs: Richard B Reiling, LEAD ATTORNEY, Richard Reiling, ESQ., Loveland, OH.

For Anthem Blue Cross and Blue Shield, Anthem Life Insurance Company Inc, Anthem Health Plans of Kentucky Inc, Anthem Insurance Company Inc, Defendants: Glenn Virgil Whitaker, Kent Allen Britt, LEAD ATTORNEYS, Vorys Sater Seymour & Pease - 1, Cincinnati, OH; James M Burns, Williams Mullen PC, Washington, DC.

For Cornerstone Broker Insurance Services Agency Inc, Defendant: Mark Edward Elsener, LEAD ATTORNEY, Porter, Wright, Morris & Arthur - 1, Cincinnati, OH.

For CAI Insurance Agency, Defendant: B Scott Jones, LEAD ATTORNEY, Reminger & Reminger Co LPA, Cincinnati, OH.

For Horan Associates, Inc, Defendant: Thomas J Gruber, LEAD ATTORNEY, McCaslin, Imbus & McCaslin - 1, Cincinnati, OH.

For USI Midwest, Defendant: Brian Robert Redden, LEAD ATTORNEY, Beckman, Weil, Shepardson & Faller, LLC, Cincinnati, OH; Peter Leroux Cassady, LEAD ATTORNEY, Beckman, Weil, Shepardson LLC, Cincinnati, Oh.

For McGohen-Brabender, Inc, Defendant: John Randolph Folkerth, Jr., WEPRIN FOLKERTH & ROUTH LLC - 3, Dayton, OH.

For Brower [*2] Insurance Agency, LLC, Defendant: Christopher Freeman Johnson, LEAD ATTORNEY, Freund Freeze & Arnold - 3, Dayton, OH.

For Lang Financial Group, Defendant: James Frank McDaniel, LEAD ATTORNEY, Cincinnati, OH.

For Benefit Resources, Inc, Defendant: John Michael Hands, LEAD ATTORNEY, Ulmer Berne LLP, Cincinnati, OH; Edward Ronald Goldman, Rendigs Fry Kiely & Dennis LLP - 1, Cincinnati, OH; Maria Del Monaco, Ulmer & Berne LLP, Skylight Office Tower, Cleveland, OH.

**JUDGES:** Michael R. Barrett, Judge.

**OPINION BY:** Michael R. Barrett

**OPINION**

**OPINION AND ORDER**

This matter is before the Court upon Anthem Blue Cross and Blue Shield, Anthem Life Insurance Company Inc., Anthem Health Plans of Kentucky Inc., Anthem Insurance Company Inc.'s ("Anthem Defendants") Motion for Reconsideration (Doc. 29) and Cornerstone Broker Insurance Services Agency Inc.'s ("Cornerstone") Motion for Reconsideration, or Motion to Certify Interlocutory Appeal (Doc. 30).

Case 1:02-cv-00479-MRB   Document 179-4   Filed 08/24/2007   Page 3 of 9

Page 2

2007 U.S. Dist. LEXIS 53862, *2; 2007-2 Trade Cas. (CCH) P75,807

Subsequent to the filing of these motions, Plaintiffs filed an Amended Complaint as a matter of right. The Anthem Defendants and Cornerstone filed additional Motions to Dismiss (Docs. 43, 44), essentially repeating the same arguments made in the Motions for Reconsideration. The new Defendants [*3] named in the Amended Complaint also filed Motions to Dismiss Plaintiffs' Amended Complaint. (Docs. 73, 74, 77, 78, 79, 80, 84) For the most part, these Motions are identical and repeat the same arguments made by the Anthem Defendants and Cornerstone.

Also pending before the Court are the Anthem Defendants' Motion to Quash and to Stay Discovery (Doc. 23); the City of Dayton's Motion to Quash (Doc. 25); and Plaintiff Thomas Quigley's Motion to Disqualify Counsel (Doc. 89).

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs allege violations of the Sherman Antitrust Act, *15 U.S.C. § 1* and the Clayton Act, *15 U.S.C. § 15*. [1] Plaintiffs also allege violations of state law for defamation, tortuous interference, civil conspiracy, and breach of contract.

> 1  *Sections 1* and *2* of the Sherman Act, *15 U.S.C. §§ 1 & 2*, are broadly worded statutes designed to counter restraints of trade and monopolistic practices; but are actionable by private individuals only through *Sections 4* and *16* of the Clayton Act, *15 U.S.C. §§ 15 & 26*. *Re/Max Intern. v. Realty One, Inc., 900 F.Supp. 132, 145 (N.D.Ohio, 1995)*.

In their Amended Complaint, Plaintiffs allege that they are in the business of selling health and life insurance [*4] to individuals and businesses. (Doc. 40, P 20) Total Benefits Planning Agency developed a strategy for controlling healthcare costs, which it calls the Total Benefits Strategy. (Id. P 22) The Strategy uses "a 51-year old federal tax law to 'refinance' healthcare costs by raising deductibles on existing group insurance policies and administering benefits through a medical expense reimbursement plan." (Id.)

The Anthem Defendants are insurance companies. (Id. P 5) Until June 3, 2005, Plaintiffs maintained appointments with the Anthem Defendants to sell life and health insurance. (Id. P 21)

Plaintiffs allege that during a meeting in September of 2004, a representative of the Anthem Defendants informed Plaintiffs that the Anthem Defendants had concerns that the Total Benefits Strategy was not in the best interests of the Anthem Defendants or insurance agencies such as Defendants Cornerstone, CAI Insurance Agency, Horan Associates, Inc., USI Midwest, McGohan-Brabender, Inc., Brower Insurance Agency, LLC, Lang Financial Group, Benefit Resources, Inc. and John/Jane Doe 1-100. (Id. P 24) Plaintiffs allege that the Anthem Defendants and these agencies had "an agreement and common understanding [*5] in regards to the amount of commissions to be paid in connection with the [sale] of Health Insurance, including but not limited to Group Health Insurance, and the price to be charged to the consumer." (Id.) Plaintiffs allege that the Anthem Defendants and the agencies "believed that the Total Benefits Strategy threatened said fixed prices and commission as it provided a lower cost alternative to the consumer . . ." (Id.) Plaintiffs allege that the Anthem Defendants threatened to terminate Plaintiffs' appointments if Plaintiffs continued to use the Total Benefits Strategy. (Id.) However, Plaintiffs continued to promote the Total Benefits Strategy. (Id.)

Plaintiffs allege that Defendants have taken several actions which make up a continuing agreement, understanding, and concert of action. (Id. P 26) Plaintiffs allege that Defendants and their co-conspirators defamed and libeled Plaintiffs to third parties, such as insurance agencies, agents, businesses and consumers. (Id.) Plaintiffs allege that Defendants and their co-conspirators stated that the Total Benefits Strategy is unethical and illegal even though Defendants and their co-conspirators knew this to be untrue. (Id.) Plaintiffs [*6] allege further that Defendants and their co-conspirators have "coerced and threatened certain insurance agents by threatening to 'blacklist' them and cancel their contracts to insure that these agents do not do business with Plaintiffs." (Id.) Plaintiffs allege that they have also been coerced and threatened. (Id.) Plaintiffs state that Defendants have "'blacklisted' Plaintiffs within the insurance industry and otherwise organized a boycott of Plaintiffs." (Id.) Finally, Plaintiffs state that Defendants terminated their appointments and threatened to terminate the appointment of any agent who does business with Plaintiffs. (Id.) Plaintiffs allege that as a direct and proximate result of these actions, purchasers of insurance services from Plaintiffs have been deprived of the benefits of free and open competition; Plaintiffs have

Case 1:02-cv-00479-MRB   Document 179-4   Filed 08/24/2007   Page 4 of 9

Page 3

2007 U.S. Dist. LEXIS 53862, *6; 2007-2 Trade Cas. (CCH) P75,807

been restrained in their ability to make these services readily and fully available; and Plaintiffs have been defamed and libeled. (Id. P 28)

This Court previously ruled that the *per se* rule was applicable to Plaintiffs' antitrust claim under the Sherman Act, and Plaintiffs had adequately plead an antitrust claim under that rule. (Doc. 27) The Court also found [*7] that Plaintiffs' antitrust claim was not exempted by the McCarran-Ferguson Act. The Anthem Defendants and Cornerstone seek reconsideration of the Court's ruling regarding the applicability of the *per se* rule. In their Motions to Dismiss, all of the Defendants argue that Plaintiffs' antitrust claim under the Sherman Act, *15 U.S.C. § 1*, should be dismissed because Plaintiffs have not satisfied the pleading requirements for an antitrust claim.

## II. ANALYSIS

### A. Motion for Reconsideration

Although a motion for reconsideration is not mentioned in the Federal Rules of Civil Procedure, it is often treated as a motion to amend judgment under *Rule 59(e)*. *McDowell v. Dynamics Corp. of America, 931 F.2d 380 (6th Cir.1991)*; *Shivers v. Grubbs, 747 F.Supp. 434 (S.D. Ohio 1990)*. The grant or denial of a *Rule 59(e)* motion is within the informed discretion of the district court, and is reversible only for abuse. *Huff v. Metropolitan Life Insurance Co., 675 F.2d 119, 122 (6th Cir. 1982)*.

There are three grounds for amending a judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; and (3) to correct a clear error of law or to prevent manifest [*8] injustice. *GenCorp., Inc. v. Am. Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999)*; *Berridge v. Heiser, 993 F.Supp. 1136, 1146-47 (S.D. Ohio 1997)*.

### B. Motion to Dismiss Standard

A motion to dismiss under *Rule 12(b)(6)* requires this Court to construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief. *Meador v. Cabinet for Human Resources, 902 F.2d 474, 475 (6th Cir. 1990), cert. denied, 498 U.S. 867, 111 S. Ct. 182, 112 L. Ed. 2d 145 (1990)*. "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Columbia Natural Res., Inc. v. Tatum, 58 F.3d 1101, 1109 (6th Cir. 1995)*.

### C. Sherman Act

*Section 1* of the Sherman Act was enacted to prohibit unreasonable restraints of trade. *Board of Trade of City of Chicago v. United States, 246 U.S. 231, 238, 38 S. Ct. 242, 62 L. Ed. 683 (1918)*. This Court must determine whether Plaintiffs' claims should be analyzed under the *per se* rule or the rule of reason:

> courts must distinguish between some types of unlawful anticompetitive restraints that "have such a clear lack of [*9] any redeeming virtue that any restraint of that type is conclusively presumed to be unreasonable," and are therefore *per se* illegal under the antitrust laws, and the far-larger type of restraints that should be analyzed under the "rule of reason approach that permits case-by-case evaluation of their effect on competition."

*Expert Masonry, Inc. v. Boone County, Ky., 440 F.3d 336, 342 (6th Cir. 2006), quoting Bailey's, Inc. v. Windsor America, Inc., 948 F.2d 1018, 1027 (6th Cir. 1991)*.

### 1. Per se *rule*

If a practice is illegal *per se,* it is unnecessary to further examine the practice's impact on the market or the procompetitive justifications for the practice. *Expert Masonry, 440 F.3d at 342*. When a restraint is found to be proscribed *per se,* the plaintiff need only prove that (1) two or more entities engaged in a conspiracy, combination, or contract; (2) to effect a restraint or combination prohibited *per se* (wherein the anticompetitive effects within a relevant geographic and product market are implied); (3) that was the proximate cause of the plaintiff's antitrust injury. *Id.* (citations omitted)

Relying on the Sixth Circuit's decision in *Com-Tel, Inc. v. DuKane, Corp., 669 F.2d 407-408, 412 (6th Cir. 1982)* [*10] this Court previously found that *per se* rule was applicable to Plaintiffs' claim. Defendants argue that

Case 1:02-cv-00479-MRB    Document 179-4    Filed 08/24/2007    Page 5 of 9

Page 4

2007 U.S. Dist. LEXIS 53862, *10; 2007-2 Trade Cas. (CCH) P75,807

*Com-Tel* is no longer good law, even though it has not been explicitly overruled. Defendants point to a footnote in the Supreme Court's decision in *Business Electronics Corp. v. Sharp Electronics Corp., 485 U.S. 717, 730 n.4, 108 S. Ct. 1515, 99 L. Ed. 2d 808 (1988)*. In this footnote, the majority of the Court rejects the view of the dissent, which was that whether a restraint is horizontal depends upon whether its anticompetitive effects are horizontal. *Id.* The majority explains that the proper approach is "that a restraint is horizontal not because it has horizontal effects, but because it is the product of an horizontal agreement." *Id.*

Plaintiffs' response is three-fold. First, Plaintiffs argue that they have alleged a horizontal agreement by alleging that the Anthem Defendants have reached an agreement amongst themselves.

For purposes of *section 1* of the Sherman Act, a parent cannot combine with its wholly-owned subsidiary. *Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 777, 104 S. Ct. 2731, 81 L. Ed. 2d 628 (1984)*. Likewise, wholly-owned sibling corporations cannot combine for the purposes of *section 1*. *Directory Sales Management Corp. v. Ohio Bell Tel. Co., 833 F.2d 606, 611 (6th Cir. 1987)*. [*11] The Anthem Defendants explain that Defendants Anthem Blue Cross and Blue Shield, Anthem Life Insurance Company, Inc. and Anthem Health Plans of Kentucky, Inc. are wholly owned and controlled by Defendant Anthem Insurance Companies, Inc. The Anthem Defendants first made an unsupported statement to this effect in their original Motion to Dismiss. Then, the Anthem Defendants, in their Reply in support of their Motion for Reconsideration, attach selected pages from Anthem's 2005 Annual Statement. The Anthem Defendants argue that the Court may consider these documents without converting its Motion to Dismiss into a motion for summary judgment because they are part of a public record. Plaintiffs stated an intention to move to strike, or in the alternative, to convert the Anthem Defendant's Motion to Dismiss into one for summary judgment. Plaintiffs have not done so.

A court may consider public records and matters of which a court may take judicial notice without converting a motion to dismiss into a motion for summary judgment. *Weiner v. Klais & Co., 108 F.3d 86, 89 (6th Cir. 1997)*. *Rule 201 of the Federal Rules of Evidence* permits a court to take judicial notice of facts that are not subject [*12] to reasonable dispute in that they are either generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Fed.R.Evid. 201(b)*. Public records and government documents are generally considered "not to be subject to reasonable dispute." *Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999), overruled in part on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508-14, 122 S. Ct. 992, 152 L. Ed. 2d 1, (2002)*. This includes public records and government documents available from reliable sources on the Internet. *U.S. ex rel. Dingle v. BioPort Corp., 270 F.Supp.2d 968, 972 (W.D.Mich. 2003), citing Grimes v. Navigant Consulting, Inc., 185 F.Supp.2d 906, 913 (N.D.Ill. 2002)* (taking judicial notice of stock prices posted on a website); *Cali v. E. Coast Aviation Servs., Ltd., 178 F.Supp.2d 276, 287 (E.D.N.Y. 2001)* (taking judicial notice of documents from Pennsylvania state agencies and Federal Aviation Administration).

Here, the Anthem Defendants have submitted documents which were a part of a publicly-filed annual statement. (Doc. 36-2) In addition, the Anthem Defendants previously [*13] filed Corporate Disclosure Statements with this Court. (Docs. 9, 10, 11, 12) The Corporate Disclosure Statement filed on behalf of Defendant Anthem Blue Cross and Blue Shield states that it, along with Defendant Anthem Health Plans of Kentucky, Anthem Life Insurance Company, Inc., Anthem Insurance Companies, are wholly-owned subsidiaries of WellPoint, Inc. The Court notes that the website for WellPoint, Inc. also spells out the relationship between the Anthem Defendants, and indicates that Defendant Anthem Insurance Companies is the parent company of Defendants Anthem Blue Cross and Blue Shield, Anthem Health Plans of Kentucky, and Anthem Life Insurance Company, Inc. The Court finds that under *Rule 201*, these are sources whose accuracy cannot reasonably be questioned. Moreover, Plaintiffs have not disputed the relationship between the Defendants. Therefore, the Court takes judicial notice of the fact that Defendants Anthem Blue Cross and Blue Shield, Anthem Life Insurance Company, Inc. and Anthem Health Plans of Kentucky, Inc. are sister corporations which are wholly owned and controlled by their parent, Defendant Anthem Insurance Companies, Inc. The Court does so without converting [*14] the Anthem Defendants' Motion to Dismiss to one for summary judgment.

2007 U.S. Dist. LEXIS 53862, *14; 2007-2 Trade Cas. (CCH) P75,807

Due to the relationship between the Anthem Defendants, for purposes of *section 1* of the Sherman Act, the Anthem Defendants were unable to combine to form a horizontal agreement among themselves.

Next, Plaintiffs argue that they have alleged a *per se* violation in that there is a vertical agreement between the Anthem Defendants and the other Defendants which includes price-fixing. However, the Supreme Court has recently overruled its own precedent which held that the *per se* rule applies to vertical price restraints. *Leegin Creative Leather Products, Inc. v. PSKS, Inc., 127 S. Ct. 2705, 168 L. Ed. 2d 623, 2007 WL 1835892, *14 (June 28, 2007)* (unpublished). Instead, the rule of reason is the appropriate standard to judge vertical price restraints. *Id.* Therefore, the Court will analyze Plaintiffs' allegations of vertical price restraints under the rule of reason below.

Finally, Plaintiffs rely on the Seventh Circuit's decision in *Toys "R" Us v. FTC, 221 F3d 928 (7th Cir. 2000)* to argue that they have sufficiently plead a *per se* violation. In *Toys "R" Us,* the Seventh Circuit upheld a Federal Trade Commission finding that Toys "R" Us had orchestrated a horizontal [*15] agreement between toy manufacturers to boycott warehouse clubs. *Id. at 940.* Each manufacturer also entered into a vertical agreement with Toys "R" Us that it would only sell the warehouse clubs certain products. *Id. at 931.* Plaintiffs argue that this type of "hub and spoke" conspiracy exists between the Anthem Defendants and the other Defendants. Plaintiffs maintain that the agreement between the Defendants can be inferred from their actions.

The Supreme Court has recently explained the standard which a plaintiff must meet in order to state a claim under *section 1* of the Sherman Act. *Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007).* The Court held that a complaint alleging a *section 1* claim must have "enough factual matter (taken as true) to suggest that an agreement was made." *Id. at 1965.* The Court explained that "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice." *Id. at 1966.* Instead, there must be plausible grounds to infer an agreement. *Id. at 1965.* For instance, "parallel behavior that would probably not result from chance, coincidence, independent responses to common stimuli, or mere interdependence unaided by an advance understanding [*16] among the parties." *Id. at 1965, n.4.* No such allegations exist in Plaintiffs' Amended Complaint. There are no allegations to support an inference that there was a horizontal agreement between the Defendants. Therefore, Plaintiffs have not stated a claim for a *per se* violation under the Sherman Act.

**2.** *Rule of Reason*

If a practice is to be analyzed under the rule of reason standard, the plaintiff must prove that (1) that the defendants contracted, combined, or conspired; (2) that the scheme produced anticompetitive effects; (3) that the restraint affected relevant product and geographic markets; (4) that the object of the scheme and the conduct resulting from it was illegal; and (5) that the scheme was a proximate cause of the plaintiff's antitrust injury. *Expert Masonry, 440 F.3d at 343.*

Defendants argue that Plaintiffs have failed to sufficiently plead a conspiracy or combination. In the Amended Complaint, Plaintiffs allege that as a part of a "continuing agreement, understanding and convert of action," Defendants have defamed and libeled Plaintiffs; "coerced and threatened certain insurance agents by threatening to 'blacklist' them and cancel their contracts to insure that these agents [*17] do not do business with Plaintiffs;" coerced and threatened Plaintiffs; "'blacklisted' Plaintiffs within the insurance industry and otherwise organized a boycott of Plaintiffs;" and terminated their appointments with Plaintiffs and threatened to terminate the appointment of any agent who does business with Plaintiffs.

The essential elements of a private antitrust claim under the Act must be alleged in more than vague and conclusory terms to prevent dismissal of the complaint on a defendant's 12(b)(6) motion. *Crane & Shovel Sales Corporation v. Bucyrus-Erie Co., 854 F.2d 802, 805 (6th Cir. 1988).* As explained above, the complaint must include "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly, 127 S.Ct at 1965.* "[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice." *Id. at 1966.*

Here, Plaintiffs merely allege that the Anthem Defendants and the other Defendants had agreement and common understanding regarding price to be charged. This bare allegation alone is not enough to support a claim of price fixing under *section 1*. Plaintiffs have not alleged that there was a set price or price level, nor have they identified [*18] a written agreement or the basis for inferring a tacit agreement. *See id. at 1966*, quoting *DM Research, Inc. v. College of Am. Pathologists, 170 F.3d*

Case 1:02-cv-00479-MRB    Document 179-4    Filed 08/24/2007    Page 7 of 9

Page 6

2007 U.S. Dist. LEXIS 53862, *18; 2007-2 Trade Cas. (CCH) P75,807

53, 56 (1st Cir. 1999). While Plaintiffs have identified a general time span during which the Defendants' alleged violations were supposed to have taken place, the pleadings contain "no specific time, place, or person involved in the alleged [acts or omissions]." *Twombly, 127 S.Ct. at 1971, n. 10*. Finally, Plaintiffs have also failed to provide "plausible grounds to infer an agreement." *Twombly, 127 S.Ct. at 1965* ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."); *see also Riverview Investments, Inc. v. Ottawa Community Improvement Corp., 899 F.2d 474, 483 (6th Cir. 1990)* (explaining that a conspiracy may not be inferred under the Sherman Act "if there is no economic motive to conspire and there is non-conspiratorial explanation for alleged conspiratorial conduct."). For example, Plaintiffs could have alleged "complex and historically unprecedented [*19] changes in pricing structure made at the very same time by multiple competitors . . . for no other discernible reason." *Twombly, 127 S.Ct. at 1966, n.4*. Instead, the Court finds that Plaintiffs have merely alleged parallel, non-competitive behavior without any facts that would compel an inference as to the motive for that conduct.

However, even if the Court were to conclude that Plaintiffs have sufficiently alleged a conspiracy or combination, the Court finds that Plaintiffs have failed to adequately plead other elements under the rule of reason analysis. Specifically, the Court finds that Plaintiffs have not adequately plead a scheme which produced anticompetitive effects; or identified the relevant market.

The mere adverse effect on a firm's business is insufficient to establish an anticompetitive effect, absent proof that such adverse effect also impairs competition in the marketplace as a whole. *Ace Beer Distrib., Inc. v. Kohn, Inc., 318 F.2d 283, 287 (6th Cir.), cert. denied, 375 U.S. 922, 84 S. Ct. 267, 11 L. Ed. 2d 166 (1963)*. Antitrust laws exist to protect competition, not individual competitors. *Brown Shoe Co. v. United States, 370 U.S. 294, 320, 82 S. Ct. 1502, 8 L. Ed. 2d 510 (1962)*. As the Sixth Circuit has explained:

> there is no economic [*20] rationale to restrict, as a violation of *Section 1*, a buyer's latitude in selecting the entity from whom it will purchase products or services. Far from being anticompetitive, it is the appropriate nature of a functioning competitive marketplace that buyers are free to choose from whom they will buy, sellers are free to choose to whom they will sell, and salesmen battle and strive to curry favor and close the deal; whether the parties exercise wise business judgment in any given transaction is not a concern of the antitrust laws.

*Expert Masonry, 440 F.3d at 347*.

While Plaintiffs allege that there has been an adverse effect on their business, Plaintiffs have not alleged that competition in the marketplace as a whole has been impaired. Instead, Plaintiffs' allegations are that purchasers of insurance services from Plaintiffs have been deprived of the benefits of free and open competition; and Plaintiffs have been restrained in their ability to make these services readily and fully available. These allegations do not relate to an effect on competition, but rather an effect on Plaintiff as a competitor.

Next, unless an antitrust plaintiff alleges the existence of market power, the complaint [*21] may be dismissed for failure to state a claim upon which relief can be granted. *Hand v. Central Transp., Inc., 779 F.2d 8, 11 (6th Cir. 1985)*; *Worldwide Basketball & Sports Tours v. NCAA, 388 F.3d 955, 962 (6th Cir. 2004)* ("'Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim.'"), *quoting Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club, 325 F.3d 712, 718 (6th Cir. 2003)*; *Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 456, 113 S. Ct. 884, 122 L. Ed. 2d 247 (1993)* ("without a definition of that market there is no way to measure [defendant's] ability to lessen or destroy competition."). A relevant market consists of "products or services that are reasonably interchangeable with, as well as identical to," defendants' products or services. *Am. Council of Cert. Pod. Phys. and Surgeons v. Am. Bd. of Pod. Surgery, 185 F.3d 606, 622 (6th Cir. 1999), citing White & White, Inc. v. Am. Hosp. Supply Corp., 723 F.2d 495, 500 (6th Cir. 1983)*. While Plaintiffs' Amended Complaint speaks of the health insurance market in the geographical area of Indiana, Ohio, and Kentucky, the Amended Complaint fails to mention other insurance companies or agents within this market. *See Cupp v.*

Case 1:02-cv-00479-MRB   Document 179-4   Filed 08/24/2007   Page 8 of 9

Page 7

2007 U.S. Dist. LEXIS 53862, *21; 2007-2 Trade Cas. (CCH) P75,807

*Alberto-Culver USA, Inc., 310 F.Supp.2d 963, 971 (W.D. Tenn. 2004)* [*22] ("It is clear that many brands and suppliers of hair care products exist. . . . Without a more specific definition and accounting of the brands and suppliers to be included in the relevant market, the Court cannot determine the boundaries of the market.") There is nothing in the Amended Complaint which would indicate the power which Defendants have in the health insurance market. Without this information, the Court finds that Defendants are entitled to dismissal.

Based on the foregoing, Plaintiffs' Sherman Act claim is dismissed based on a failure to state a claim.

### C. State law claims

Defendants argue that upon dismissal of Plaintiffs' federal claims, this Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

The Court has supplemental jurisdiction over Plaintiffs' state law claims because those claims form part of the same controversy as Plaintiffs' federal claims. *See 28 U.S.C. § 1367(a)*. However, this Court may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the [*23] district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*28 U.S.C. § 1367(c)*. When a plaintiff's federal claims have been dismissed on the merits, the question of whether to retain jurisdiction over the state law claims rests within the Court's discretion. *Blakely v. United States, 276 F.3d 853, 860 (6th Cir. 2002)*. However, the dismissal of the claim over which the federal court had original jurisdiction creates a presumption in favor of dismissing without prejudice any state-law claims that accompanied it to federal court. *Id. at 863*. In addition, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)*.

Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiffs' claims for defamation, tortuous interference, civil conspiracy, and breach of contract.

### D. Conclusion

Based on the foregoing, it is hereby **ORDERED** that:

> 1. Anthem Blue Cross and Blue Shield, [*24] Anthem Life Insurance Company Inc., Anthem Health Plans of Kentucky Inc., Anthem Insurance Company Inc.'s Motion for Reconsideration (Doc. 29) and Cornerstone Broker Insurance Services Agency Inc.'s Motion for Reconsideration (Doc. 30); and Defendants' Motions to Dismiss Plaintiffs' Amended Complaint (Docs. 43, 44, 73, 74, 77, 78, 79, 80, 84) are **GRANTED;**
>
>> a. Plaintiffs' claims for violations of the Sherman Antitrust Act, *15 U.S.C. § 1* and the Clayton Act, *15 U.S.C. § 15* are **DISMISSED with prejudice;**
>>
>> b. Plaintiffs' claims for defamation, tortuous interference, civil conspiracy, and breach of contract are **DISMISSED without prejudice;**
>
> 2. The Anthem Defendants' Motion to Quash and to Stay Discovery (Doc. 23); the City of Dayton's Motion to Quash (Doc. 25); and Plaintiff Thomas Quigley's Motion to Disqualify Counsel (Doc. 89) are **DENIED as MOOT;** and

Case 1:02-cv-00479-MRB    Document 179-4    Filed 08/24/2007    Page 9 of 9

Page 8
2007 U.S. Dist. LEXIS 53862, *24; 2007-2 Trade Cas. (CCH) P75,807

3. This matter shall be **CLOSED** and terminated from the docket of this Court.

**IT IS SO ORDERED.**

*/s/ Michael R. Barrett,* Judge

United States District Court