IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JEFFERSON PILOT LIFE INS. CO.**, | ) : | **CASE NO. C-1-02-479** |
| **Plaintiff/Counter-Defendant,** | ) : | |
| vs. | ) : | **Judge Michael R. Barrett** |
| **CHRISTOPHER L. KEARNEY,** | ) : | |
| **Defendant/Counter & Third-Party -Plaintiff,** | ) : ) | |
| vs. | : ) | |
| **DISABILITY MANAGEMENT SERVICES,** | : ) | |
| **Third-Party Defendant.** | : | |

**JOINT FINAL PRETRIAL ORDER**

This action came before the Court at a final pretrial conference held on August 30, 2007, at 11 a.m. pursuant to Rule 16, Federal Rules of Civil Procedure.

I.   **APPEARANCES:**

   For Kearney:   Michael A. Roberts, Esq. (0047129)
   GRAYDON HEAD & RITCHEY LLP
   511 Walnut Street, Suite 1900
   Cincinnati, OH 45202
   (513) 629-2799
   (513) 651-3836 – fax
    MACROBUTTON HtmlResAnchor mroberts@graydon.com

   For JEFFERSON PILOT & DMS:  William R. Ellis
      Wood & Lamping LLP
      600 Vine Street, Suite 2500
      Cincinnati, OH 45202

      John E. Meagher, Esq.

1

Shutts & Bowen LLP
1500 Miami Center
201 South Biscayne Boulevard
Miami, Florida 33131

**II.   NATURE OF ACTION AND JURISDICTION:**

A.   This is an action for bad faith, invasion of privacy, and civil conspiracy.

B.   The jurisdiction of the Court is invoked under Title 28, United States Code, Section 1331.

C.   The jurisdiction of the Court is not disputed.

**III.   TRIAL INFORMATION:**

A.   The estimated length of trial is 10 days.

B.   Trial to a jury has been set for September 12, 2007, pursuant to the General Order on Trial Assignment.

C.   Three sets of each party's exhibits shall be delivered to Chambers at least three (3) days prior to the start of trial (**September 7, 2007**), this includes one original and two copies.

**IV.   AGREED STATEMENTS AND LISTS[1]:**

A.   **General Nature of the Claims of the Parties**

1.   **Defendant Kearney's Claims:** This case pits the combined resources of three of the world's largest financial institutions (General Electric, Zurich Financial, and Lincoln Financial) against an individual to whom they owe a duty of good faith and who has been irrefutably disabled for 14 years. In 1993, when he was 40,

---

[1] The parties are unable to agree to a Statement of Facts. Therefore each submits its own.

2

Christopher Kearney became disabled. He then filed a claim for benefits under two policies ("Policies") he had purchased from Jefferson-Pilot Life Insurance Company, a subsidiary of Lincoln Financial ("Jefferson Pilot"). The Policies pay monthly benefits for life: a potential total payout of over $4,000,000.

In the following 14 years, despite extraordinary scrutiny, the Insurer[2] could not dispute Kearney's disability. Therefore, the Insurer has (although many times late) paid Kearney a portion of benefits under the Policies for those 14 years. In 1994, because Kearney had a $4,000,000+ medically irrefutable claim, the Insurer began to work "in anticipation of litigation" against Kearney. Kearney's $4,000,000+ lifetime benefit claim was a litigation-target of the Insurer, therefore, it continued working "in anticipation of litigation" each year through July 2002, when the "anticipation" of litigation against Kearney became reality.

During that period and since, Kearney's claim has been the subject of extraordinarily intense scrutiny by the highest ranking claims examiners, investigators, physicians, in-house attorneys, and outside counsel, respectively, of Jefferson Pilot, GE/ERAC, and DMS. *Id*. The Insurer has worked tirelessly to find a way to confiscate the "lifetime" benefits promised Kearney.

The Insurer's continuing effort to confiscate Kearney's benefits has so surpassed the bounds of reasonableness, that the Insurer through a conspiracy of 3 very large financial institutions has invaded Kearney's privacy, and engaged in bad faith. Kearney

---

[2] JP, Employers Reinsurance (a subsidiary of General Electric "GE/ERAC"), and Disability Management Services (part owned by Zurich Financial Services, "DMS") are referred to as the "Insurer."

seeks the recovery of compensatory damages in excess of $1,000,000, punitive damages, attorneys fees, and costs.

### 2. Claims of Jefferson Pilot and DMS:

Kearney filed a disability claim in October, 1993, alleging that he was totally disabled due to a back condition that prevented him from working. This claim was paid by Jefferson Pilot. Shortly thereafter, Kearney changed his claim to one for Residual Disability, stating that, while he had recovered from his back injury, he was now partially disabled due to a mental/nervous condition. Kearney said he was only "residually disabled" because he was not able to work in his occupation for as many hours as he had previously. For a residual claim, an insured must present proof that he is suffering from a medical condition for which he is under appropriate care and treatment, that the medical condition has limited his work activities, and that, as a result thereof, he has suffered a reduction in income. This analysis is done on a monthly basis. Jefferson Pilot accepted that claim and, for the 14 years his claim has been pending, has paid in a timely fashion all benefits that Kearney has sought.

While administering Kearney's claim, however, Jefferson Pilot misapplied the terms of the policy, resulting in significant financial benefit to Kearney. In essence, because Jefferson Pilot approved Kearney for two additional benefits under the policies that did not apply to residual claims, but only to total disability claims, Kearney has received twice the amount of benefits provided in his Policies. This excess benefit, standing alone, totals approximately $500,000 to date. All told, through August 2007, Kearney has received $1,089,852.32 in disability benefits from Jefferson Pilot during

the 14 years he has claimed to be residually disabled and is continuing to receive monthly benefits of $8,613.00 at the current time. The benefits are tax free to Kearney.

In and around 2001, when Jefferson Pilot, through its agent DMS, learned of its miscalculation of Kearney's benefits, it filed a declaratory judgment action in this Court, asking the Court to determine whether Kearney was entitled to these additional benefits under the terms of the contract. This lawsuit did not contest Kearney's claim for disability, nor did it ask Kearney to return the money mistakenly paid to him; it only asked whether these additional benefits needed to be paid in the future.

In response to this lawsuit, Kearney filed this counterclaim we are here on today, alleging that Jefferson Pilot and DMS had acted in bad faith, invaded his privacy and had conspired to deny him his benefits, despite the fact that his benefits have been timely paid for 14 years and, during that entire time, Kearney has signed authorizations permitting Jefferson Pilot and DMS to investigate his claim.

In a decision rendered prior to this trial, the Court ruled that Kearney was not entitled to the additional benefits under the terms of his policies, but then applied a principle known as "equitable estoppel," which required Jefferson Pilot to continue to pay the extra-contractual benefits into the future. Both Kearney and Jefferson Pilot have indicated that they plan on appealing that issue to the 6th Circuit Court of Appeals. That issue is not for your determination in this lawsuit.

Jefferson Pilot and DMS strenuously deny that they have acted in bad faith in handling Kearney's claim. Most obviously, his claim has been timely paid for 14 years. Also, the Court has already reviewed the claims handling of Jefferson Pilot and DMS in

this case and ruled that they did not breach Kearney's policies, that the benefits were timely paid during the course of Kearney's claim, that the amount of attention paid by Jefferson Pilot and DMS was appropriate and not unreasonable, and that the frequency of surveillance, requests for information, and investigations was not unreasonable.

Left for the jury's determination is whether the "extent" of the claims handling was arbitrary and capricious. Jefferson Pilot and DMS contend that it cannot be so considered, as all of the investigation was designed to determine Kearney's entitlement to benefits as required by the policies. Further, the investigations were necessary because Kearney was not straightforward with Jefferson Pilot and DMS during his claim. For example, although claiming to be residually disabled, Kearney started an entire new company engaged in the business of designing, manufacturing and patenting industrial machinery but failed to tell Jefferson Pilot about it. It was only after searching data bases that Jefferson Pilot and DMS discovered the existence of Kearney's new company. There are other examples that will be presented at trial that demonstrate the necessity of Jefferson Pilot and DMS expanding upon and verifying the information given to them by Kearney.

Nor did Jefferson Pilot and DMS invade Kearney's privacy, as all of his information was kept confidential and was never publicized. Further, as a condition for consideration of his claim, Kearney signed authorizations allowing the claim investigation. The evidence will also show that Kearney is not a person of "ordinary sensibilities" and has, at different times, unfairly accused business partners, spouses and others of acting against his best interests.

Finally, because Kearney's claim has been timely paid for 14 years, there can be no conspiracy against him. Again, Kearney, who is under psychiatric care, cannot be considered a person of "ordinary sensibilities." Because there has been no bad faith and no invasion of privacy, there can be no conspiracy.

### B.   Pending Motions/Motions in Limine[3]

Jefferson Pilot, DMS, and Kearney anticipate filing Motions in Limine. The following Motions are pending: (i) Plaintiff's motion to Bifurcate; (ii) Plaintiffs motion to realign the parties; (iii) Plaintiff's motion to certify a question of Ohio law to the Ohio Supreme Court and/or reconsider.

### C.   Uncontroverted Facts

The parties request and/or anticipate that the following stipulated facts be read by Judge Barrett to the jury:

1.   Jefferson Pilot issued two separate disability policies to Mr. Kearney. The first policy was purchased in 1990 and the second in 1991 ("Policies").

2.   In October, 1993, Kearney filed a claim for total disability benefits resulting from a back injury under the Policies he had purchased from Jefferson Pilot.

3.   Through August, 2007, the Insurer has paid Kearney benefits under the terms of the policies for 14 years.

4.   In July 2002, Jefferson Pilot filed a declaratory judgment action with the Court. The declaratory judgment action did not challenge Kearney's claim for benefits

---

[3]   Motions in Limine will be filed at least seven (7) business days prior to the commencement of trial.

or ask for return of the additional benefits paid to Kearney, but only sought guidance regarding the benefits payable in the future.

### D. Contested Issues of Fact and Law

**1. Jefferson Pilot/DMS' Contested Issues of Fact:** [4] Jefferson Pilot and DMS assert that the contested issues of fact remaining for decision are:

1) Is examining public records as a background investigation so arbitrary and capricious as to amount to "Bad Faith" claims handling where the information disclosed in such records was not used to deny or delay claim payments?

2) Is requesting financial information dating to 5 years before the claim arbitrary and capricious where the requesting accountant believed that pre-disability income was to be the highest income earned in any 12 consecutive months during the 5 years preceding the onset of the disability and the information was not used to deny or delay payment of the claim?

3) Is it Bad Faith to have a psychiatric consultant hold a face to face meeting with a claimant and his treating psychiatrist to evaluate his condition and treatment when such meeting is authorized by the Policies and resulted in continuing claim payments?

4) In a case where there was information that at least part of the claimant's loss of income may have been from a business downturn as opposed to any impairment

---

[4] Kearney contends that these issues of "fact" are not fact issues but legal argument and/or questions of law.

or disability, is it Bad Faith to ask 8 specific questions of former business associates to resolve that question even though the answers resulted in continued benefit payments?

5) Is the attempt to verify facts by speaking to independent sources, who have the ability to observe the claimant, arbitrary and capricious where the results are a continuation of benefit payments.

6) Is the collection of Pharmacy information by signed release an invasion of privacy where the definition of disability requires active treatment and the medical records reflect less than full compliance with the prescribed medications?

7) Do the attempts to verify information from independent sources such as neighbors, landlords etc. constitute an invasion of privacy in a disability claim where Kearney's abilities are at issue, and where there is no evidence that Kearney's private information was disclosed to the individuals contacted, and where the result of the verification was continued benefit payments?

8) Does the sharing of information with individuals and vendors directly involved in the handling of a disability claim amount to a disclosure of private information to the public at large, where there is no evidence of disclosure beyond those directly involved?

9) Can Kearney establish "actual damages" from an alleged civil conspiracy which he concedes never acted to complete its purpose, i.e., the denial of his claim?

10) Did Kearney's execution of authorizations to obtain information vitiate his claim for invasion of privacy?

**Counterclaim Defendants believe the following facts are without dispute but the parties cannot agree to include them in Uncontested Facts:**

11) The Policies contain a 5 year limitation on benefits for "total disability", but provide potential lifetime benefits for one claiming residual disability.

12) Through August, 2007, the Insurer has timely paid Kearney benefits under the terms of the policies for 14 years in the total amount of $1,089,852.32 and continues to pay Kearney at the rate of $8,613.00 per month. These benefits are tax free to Kearney.

13) To date, Kearney has been paid almost $500,000 in additional benefits to which he was not entitled under the terms of the policy.

14) In 2001, a dispute arose concerning the applicability of those additional benefits and in July 2002, Jefferson Pilot filed a declaratory judgment action with the Court.

15) Through the filing of a declaratory judgment action, Jefferson Pilot asked for the Court's guidance regarding whether the Policies required the payment of the additional benefits. The declaratory judgment action did not challenge Kearney's claim for benefits or ask for return of the additional benefits paid to Kearney, but only sought guidance regarding the correct benefits payable in the future.

16) The court agreed that the policy unambiguously did not provide for the additional benefits in Kearney's case, but the court ruled that the insurer should continue to pay the erroneous additional benefits because Kearney had come to rely on the overpayments.

17)     When viewed in the light of a 14 year history, the amount of attention paid to Kearney's claim by Jefferson Pilot and DMS and the frequency of surveillance, requests for information and investigations were reasonable and not arbitrary or capricious.

18)     The conduct of the insurer and its agents in video taping Kearney, speaking with his prior business associates, and having the IME psychiatrist converse with Kearney's brother was neither extreme nor outrageous.

    **2.**     **Kearney's Contested Issues of Fact:**

(1)     Is the totality of Jefferson Pilot and DMS' conduct, including litigation conduct, over the period 1994 - 2007, bad faith, invasion of privacy, and/or any unlawful conspiracy.

    **3.**     **Kearney's Contested Issues of Law:** Kearney's contested issues of law in addition to those implicit in the foregoing issues of fact, are:

    (a)     Whether the Insurer committed bad faith?

    (b)     Whether the Insurer intruded into Kearney's private affairs unnecessarily based on a deliberate and systematic campaign of harassment?

    (c)     Was there an unlawful civil conspiracy?

    **4.**     **Jefferson Pilot and DMS' Contested Issues of Law:**

    (a)     Whether a claim of bad faith can be stated under Ohio law in the absence of any breach of contract, refusal to pay or significant delay

        in the payment of benefits, in a case where benefits have not only been timely paid, but overpaid?

(b)   Does the verification of facts in an insurance investigation by interviews of people other than the insured, invade the insured's privacy?

(c)   Is there any basis to support a claim of unlawful civil conspiracy where the alleged purpose of the conspiracy is never brought to fruition?

(d)   Can a claimant who has consistently been paid more than the contract benefits, and never been paid less than the benefits requested, demonstrate any actual damages from an alleged act of bad faith?

(e)   Should issue (a) above be certified to the Ohio Supreme Court, where no Ohio case law supports the creation of a new cause of action for bad faith where there has been no "refusal to pay" and the claim has been overpaid for 14 years.

(f)   Should the parties in this case be realigned due to the current procedural posture of this case so as to designate Kearney as Plaintiff?

(g)   Can a third party administrator such as DMS with no privity of contract with an insured be held liable for breach of contract or bad faith under Ohio Law?

      (h)    Do a series of unrelated, independent acts give rise to a "continuous tort" for purposes of the Ohio statute of limitations?

      (i)    Does the statute of limitations begin to run when a plaintiff becomes aware of an alleged harmful act and its consequences?

(j) Can the tort of invasion of privacy by publication stand without a publication to the public at large?

(k) Is an allegation of tort an "unlawful act" in furtherance of a civil conspiracy as contemplated by the Ohio Supreme Court?

(l) Does there exist in Ohio, a cause of action for Civil Conspiracy, where the alleged purpose and goal of the conspiracy never occurs?

(m) What damages are suffered by the victim of a civil conspiracy that never acts to carry out its alleged purpose?

(n) Can the filing of a declaratory judgment, action as permitted by law, be the act upon which one recovers damages based on Bad Faith, invasion of privacy or civil conspiracy?

(o) Does an insured who makes a disability claim and signs authorizations permitting access to his private information, surrender some of the right to privacy that he would otherwise have?

(p) Should the issue of punitive damages be bifurcated from the trial on liability?

### E. **Witnesses**

1. In the absence of reasonable notice to opposing counsel to the contrary, plaintiff JEFFERSON PILOT will call, or will have available at the trial: *Provide a brief individualized synopsis of each witness' testimony.*

Howard Shelton
Clyde Honaker
JL Roberson
William Hughes
Robert Mills
Todd Ditmar
Robert Bonsall
Valerie Loftin
John Anderson
Janet Beatty
Representatives of Equifax, CS Claims Group and CMS Group
Dr. Otto Kausch
Any witness listed by Kearney

May add after seeing Kearney's final list and summaries.
All persons deposed in this action

      2.    In the absence of reasonable notice to opposing counsel to the contrary, defendant Kearney will call, or will have available at the trial: *Provide a brief individualized synopsis of each witness' testimony.*

Christopher L. Kearney;
Mary Kearney;
Tim Kearney;
Nancy Kearney;
John Spiegel;
Dr. Judd;
Dr. Lehenbauer;
Dr. Henderson;
Howard Shelton (cross, depo. or live);
Clyde Homaker (cross, depo. or live)
JL Roberson (cross, depo. or live);
William Hughes (cross, depo. or live);
Robert Mills (cross, depo. or live);
Todd Ditmar (cross, depo. or live)
Robert Bonsall (cross, depo. or live);
Valerie Loftin (cross, depo. or live);
Bill Dempsey (cross, depo. or live); and
David Newkirk (cross, depo. or live).

      3.    In the absence of reasonable notice to opposing counsel to the contrary, Third Party Defendant DMS will call: *Provide a brief individualized synopsis of each witness' testimony. (Use for third parties, if any).*

William Hughes
Robert Mills
Todd Ditmar
Robert Bonsall
Valerie Loftin
John Anderson
Janet Beatty
Representatives of Equifax, CS Claims Group and CMS Group
Doctor Otto Kausch
Any witness listed by Kearney
May add after seeing Kearney's final list and summaries.
Any person deposed in this action

      4.    There is reserved to each of the parties the right to call such rebuttal witnesses as may be necessary, without prior notice thereof to the other party.

Note: *Only witnesses listed in the Pretrial Order or identified in accordance with paragraph 4 above will be permitted to testify at the trial, except witnesses called solely for purpose of impeachment or for good cause shown.*

### F. Expert Witnesses

Parties are limited to the following number of expert witnesses whose names have been disclosed to the other side.

Plaintiff, JEFFERSON PILOT: *List all expert witnesses plaintiff intends to call at trial.*

Kearney:

Clint Miller;
Dr. Judd;
Dr. Lehenbauer;
Dr. Henderson.

Counsel have attached a resume of each expert's qualifications as Appendix A herein.

### G. Exhibits

Kearney's exhibits and list (Appendix C) is marked as "PX#" and Jefferson Pilot's exhibits and list (Appendix D) are marked as "DX#." Appendix B is the parties' Joint Exhibits. Appendix E is the Third-Party Exhibits. The parties reserve the right to supplement their lists on or before September 7, 2007.

### H. Depositions

No testimony is presently anticipated to be offered by deposition/videotape with the exception of parts of Mr. Kearney's testimony.

### I. Completion of Discovery

Discovery has been completed or will be completed by August 31st, 2007.

    **J.**    **Miscellaneous Orders**

None.

## V. MODIFICATION

This Final Pretrial Order may be modified at the trial of this action, or prior thereto, to prevent manifest injustice. Such modification may be made by application of counsel or on motion of the Court.

## VI. JURY INSTRUCTIONS AND STATEMENT

The Jury Instructions, including interrogatories and special verdict forms will be submitted by email, in WordPerfect format, to barrett_chambers@ohsd.uscourts.gov prior to the Final Pretrial Conference and will be electronically filed in the Clerk's Office contemporaneously with the submission to Chambers. There is reserved to counsel the right to submit supplemental requests for instructions during trial, or at the conclusion of the evidence, but only on matters that cannot be reasonably anticipated.

The parties shall submit joint instructions in the form set forth in the example attached hereto. Each instruction should be on a separate page and be presented jointly with agreed language to be in a normal type, Plaintiff's proposed language to be in italics and Defendant's proposed language to be in bold. All instructions must contain a citation of authority (including the page number for the specific legal proposition for which you are citing the case) upon which counsel relies. A request for special instructions must be filed with the Clerk of Court's Office, prior to presentation to the Court.

The parties shall jointly prepare a statement of the case to be read by Judge Barrett to the jury at Voir dire. This statement shall be emailed to Chambers at barrett_chambers@ohsd.uscourts.gov three (3) days prior to the commencement of trial.

## VII. SETTLEMENT EFFORTS

In the spring of 2007, with the Court's participation, Jefferson Pilot and DMS transmitted a settlement offer to Kearney, but received no response thereto. The parties have been unable to resolve this dispute.

## VIII. TRIAL TO THE COURT

Not applicable.

**IX.  JURY TRIAL**

The parties do not anticipate the need for trial briefs.

**X.  INSTRUCTIONS**

This proposed Final Pretrial Order shall be emailed, in WordPerfect format, to Chambers at barrett_chambers@ohsd.uscourts.gov at least five (5) business days prior to the Final Pretrial Conference.  It should not be filed with the Clerk's office.

**IT IS SO ORDERED.**

       */s/ Michael R. Barrett*
MICHAEL R. BARRETT
United States District Judge

For Defendant Christopher L. Kearney:


_____
Michael A. Roberts, Esq. (0047129)
GRAYDON HEAD & RITCHEY LLP
511 Walnut Street, Suite 1900
Cincinnati, OH 45202
(513) 629-2799
(513) 651-3836 – fax
 MACROBUTTON HtmlResAnchor mroberts@graydon.com


For Plaintiff and Third-Party Defendant:


_____
William R. Ellis, Esq.
Wood & Lamping LLP
600 Vine Street, Suite 2500
Cincinnati, OH 45202


_____
John E. Meagher, Esq.
Shutts & Bowen LLP
1500 Miami Center
201 South Biscayne Boulevard
Miami, Florida  33131