UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JEFFERSON-PILOT LIFE INSURANCE COMPANY, et al. | : | CASE NO. C-1-02-479 |
| | : | |
| | : | (Judge Barrett) |
| Plaintiff/Counterclaim Defendant, | : | |
| | : | |
| vs. | : | **DEFENDANTS' MOTION IN LIMINE** |
| | : | |
| CHRISTOPHER L. KEARNEY, | : | |
| | : | |
| Defendant/Counterclaim/Third Party Plaintiff. | : | |

Defendants, Jefferson Pilot Life Insurance Company ("JP") and Disability Management Services, Inc. ("DMS") (collectively referred to as "Defendants"[1]), by and through undersigned counsel, hereby move in limine to exclude certain evidence and arguments that they expect that Christopher L. Kearney ("Kearney") will make or seek to introduce at trial.

## INTRODUCTION

This action was initiated by JP in 2002, seeking a declaratory judgment as to its rights and liabilities under a contract of disability insurance where the insurer, JP, had been overpaying Kearney under the terms of the insurance policy. Kearney counterclaimed against JP and filed a third party complaint against DMS (a third party claims administrator for JP), seeking damages for breach of contract, bad faith, conspiracy, intentional infliction of emotional distress, and invasion of privacy. In ruling on the parties' cross-motions for summary judgment on JP's claim for declaratory relief the Court found that JP's interpretation of the policy was correct and that Kearney would not be entitled to benefit increases under the terms of the policy. However, the

---

[1] At the pretrial conference on August 30, 2007, the Court granted JP's and DMS's Motion to Realign the parties for trial.

Court found that equitable estoppel was applicable and therefore JP was estopped from not continuing to make the overpayments.

On August 20, 2007, the Court entered an Opinion an Order on the Motion for Summary Judgment on Kearney's claims filed by JP and DMS. The Court granted the motion as to Kearney's claims for breach of contract and intentional infliction of emotional distress, dismissing those claims, and denied the motion as to Kearney's claims for bad faith, invasion of privacy, and civil conspiracy. Thus, the only claims remaining for trial are those on which Kearney is seeking affirmative relief against JP and DMS: bad faith, invasion of privacy, and civil conspiracy. JP and DMS now seek to exclude from trial certain evidence and arguments that they expect Kearney to attempt to introduce or make at trial.

## MEMORANDUM OF LAW

Pursuant to Rule 401, Fed.R.Evid., relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 goes on to provide that while relevant evidence is admissible unless otherwise excluded, evidence which is not relevant is inadmissible. As stated in Rule 403:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of <u>unfair prejudice, confusion of the issues</u>, or misleading the jury, or by considerations of <u>undue delay, waste of time</u>, or needless presentation of cumulative evidence.

Rule 403, Fed.R.Evid. (emphasis added). Thus, only relevant evidence should be admissible at trial; and relevant evidence is that evidence which tends logically, naturally and by reasonable inference to prove a material issue. Here, this Court should not permit Kearney to introduce into evidence any testimony, documents, or other evidence that is unfairly prejudicial or that can confuse the jury because it is irrelevant to the issues remaining to be tried.

2

In its recent opinion on summary judgment, the Court found there were issues of fact as to the extent of the investigation made by JP in this case which may give rise to Kearney's bad faith and invasion of privacy claims. To wit: the Court found that having a psychiatric claims specialist meet with Kearney and his psychologist, asking 8 questions of his business associates and having an accountant request tax returns for the 5 years immediately before his disability claim may be acts of bad faith, despite the fact that JP never refused to pay Kearney's claim for disability benefits. The court also found that unannounced visits to Kearney's home and place of business, speaking with a neighbor and landlord, speaking with his medical providers, and having an IME psychologist speak with his brother, may be evidence of an invasion of privacy, and that perhaps too many people were involved in the claim. The Court found no other issues of fact to be resolved.

Against this backdrop, Defendants respectfully request that Kearney be precluded from making the following arguments or introducing the following irrelevant and/or prejudicial evidence that has no bearing on the issues remaining for trial:

1.**Evidence and arguments relating to the economic disparity between the parties or any related parent or affiliated entities.** It is apparent from recent motions and filings by Kearney he intends to try this case on the basis of sympathy, relative economic positions of the parties and innuendo. Thus Kearney's recent filings each begin with the claim: "This case pits the combined resources of three of the world's largest financial institutions (General Electric, Zurich Financial, and Lincoln Financial) against an individual to whom they owe a duty of good faith and who has been irrefutably disabled for 14 years." One can expect that this same statement or a variation of same will be a part of Kearney's opening statement to the Jury. Notably, none of those listed companies (nor Employers Reinsurance Corporation), is a party to this case, and there is no evidence to support the claim that they had any participation in the evaluation or handling of Kearney's disability claim.

3

Moreover, and more importantly, this "David v. Goliath" has nothing to do with Kearney's claims, and is simply designed to evoke sympathy for Kearney and prejudice the jury against Defendants. This is impermissible. It is a foundational tenet of jurisprudence that corporations are to be considered the same as a natural person. Indeed, this is clear in the standard jury instructions that will be read to the jury:

> In deciding this case, you must follow and apply all of the law as I explained it to you, whether you agree with that law or not; and you must not let your decision be influenced in any way by sympathy, or by prejudice, for or against anyone.
>
> The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible for any of the acts of its employees that are made within the scope of their duties as employees of the company.

Thus any reference or inference that a corporation, or a group of corporations, is somehow different than a natural person in the eyes of the law is contrary to all basic tenets case and statutory law. Such references or inferences could only serve to confuse and mislead the jury, and arouse sympathy for Kearney and prejudice against the Defendants.

Part and parcel of this anticipated attempt by Kearney to prejudice the jury is reference to the comparative wealth of the parties, i.e., "[t]his case pits the combined resources of three of the world's largest financial institutions . . . against an individual." It is well settled that "appealing to the sympathy of jurors through references to financial disparity is improper." City of Cleveland v. Peter Kiewit Sons' Co., 624 F.2d 749, 757 (6th Cir. 1980) (citing Draper v. Airco, Inc., 580 F.2d 91, 95 (3rd Cir. 1978). As the court explained, quoting Draper:

> The cumulative thrust of [Kearney's] counsel's argument . . . was that because the defendants were rich (giants of the industrial world) and because the plaintiff was poor, the jury should base its verdict in favor of [Kearney] on this financial disparity. But justice

4

> is not dependent upon the wealth or poverty of the parties and a jury should not be urged to predicate its verdict on a prejudice against bigness or wealth.

Id. Ohio law, of course, is no different. See Hudock v. Ry. Co., 132 N.E. 2d 108 (Ohio 1956) ("It has ever been the theory of our government and a cardinal principle of our jurisprudence that the rich and poor stand alike in courts of justice and that neither the wealth of one nor the poverty of the other shall be permitted to affect the administration of law."); Book v. Erskine & Sons, Inc., 154 Ohio St. 391, 399-401, 96 N.E.2d 289, 293 (Ohio 1951) (statements relating to the relative wealth or poverty of the parties "are clearly calculated to direct the jury's attention to the need of an injured party for compensation rather than the real issues in the case.").

It is for precisely those reasons that the standard jury instructions to be read to the jury include language such as:

> . . .you must not consider whether one party is wealthier than the other, or whether one party has more lawyers or representatives at trial. The number of witnesses or the number of exhibits that a party might use, or the sophistication of a party's presentation, are also not proper considerations as such matters are not evidence.
>
> Matters such as sympathy or prejudice have no place in your deliberations; yours is a purely intellectual duty to determine the issues in the case under all the evidence in the case and under the law which the court gives you.

Accordingly, all references to the wealth of the parties, or to the involvement of nonparties such as General Electric, Zurich Financial, Lincoln Financial, and Employers Reinsurance Corporation must be excluded at trial.

2. **Evidence or arguments relating to reinsurance**. Evidence regarding reinsurance agreements between JP and any other entity no tendency in reason, either directly or by reasonable inference, of making any issue in this case more likely than not. There is no evidence that any reinsurance relationship between JP and any reinsurer had any bearing whatsoever on the handling of Kearney's claim in this case. Moreover, any probative value of evidence of the existence of any reinsurance agreements is greatly outweighed by the prejudicial effect of such

evidence. Defendants believe Kearney and/or his counsel may argue or testify (or attempt to raise the inference) that the fact that reinsurance existed is part of some sort of conspiracy or bad faith. Such argument, evidence or inference is, of course, highly prejudicial and has no probative value, and of course, no basis in fact. Reinsurance agreements are extremely common in the insurance industry and are entered into for legitimate business reasons which have nothing to do with the issues in this case. However, the jury is likely to be misled as to the purpose and effect of reinsurance agreements if such evidence is permitted, and Defendants would have to waste time and present otherwise unnecessary witnesses in an effort to educate the jury about reinsurance agreements in general and the reinsurance agreements in this case. Accordingly, all evidence, argument and reference to corporate reinsurance agreements should be excluded and the Court should instruct Kearney and his counsel to refrain from making any reference to any reinsurance agreements between JP and any other entity.

3. **Evidence relating to prior settlement offers and negotiations between the parties**. Defendants expect that Kearney will seek to introduce such evidence at trial. Such evidence plainly is inadmissible under Rule 408, Fed.R.Civ.P. See <u>Cannell v. Rhodes</u>, 31 Ohio App.3d 183, 509 N.E.2d 963 (Ohio App. 1986) (admission of settlement negotiations clearly violated the proscription against evidence of settlement offers, the prejudicial effect substantially outweighed any probative value, because the pernicious effect of settlement evidence commonly misleads jurors to believe that the offering party owed at least that amount). Here, Kearney has stated an intention to introduce evidence of settlement discussions between DMS representatives and Kearney's lawyer, John Spiegel. That evidence is not admissible and all references to it should be barred.

4. **Evidence related to Kearney's recent heart attack**. At his recent deposition on June 20, 2007, Kearney disclosed that he recently had a heart attack. Any testimony about this

medical condition should be excluded at trial. First, there is no medical testimony about it, just Kearney's testimony. Second, Kearney's disability status is not at issue in this action. Kearney already is receiving disability benefits. Thus, his current heart problems have no probative value in this matter, and are being introduced only to elicit sympathy for Kearney from the jury. Any such evidence therefore must be excluded at trial.

5. **Evidence related to discovery disputes or requests in this matter**. Based upon Kearney's trial exhibit list, which includes such items as JP's privilege log produced in discovery, defendants believe that Kearney intends to introduce at trial such discovery requests and disputes as part of his case-in-chief. First, such issues have no bearing on whether the Defendants acted in bad faith with respect to Kearney's claim, or whether they invaded his privacy. Second, litigation conduct is privileged and cannot form the basis of a bad faith action. *See* Surace v. Wuliger, 495 N.E.2d 939 (Ohio 1986); Blevins v. Hudson & Keyse, Inc., 395 F.Supp.2d 662, 666 (S.D. Ohio 2004) (citing Levin, Middlebrooks, et.al. v. United States Fire Ins. Co., 639 So.2d 696 (Fla. 1994)). *See also*, Valenti v UNUM Life Ins. Co. of America, 2006 WL 1627276 (M.D. Fla. June 6, 2006).

It should seem readily apparent that such disputes are wholly irrelevant and not probative any anything at issue at trial. To permit argument or evidence concerning discovery disputes would improperly invite the jury to divert its attention from the issues at hand. Instead, the jury would be encouraged, even if only implicitly, to focus on unrelated, collateral issues. As noted by the court in Sanford v. Ektelon/Prince Sports Group, Inc., 1999 WL 33544436 at *4, Case No. 8:97CV368 (D. Neb. Nov. 5, 1999), in excluding such evidence at trial, "information regarding discovery disputes in this case is not relevant, would be prejudicial, would take the jury away from the case, and will not be admissible." (citing Empire Gas Corp. v. American Bakeries, Co.,

646 F. Supp 269, 274-76 (N.D. Ill. 1986).  Accordingly, and such evidence should be excluded at trial.[2]

6. **Evidence related to any law firm or attorneys representing the Defendants in this action having had prior dealings with Kearney**.  Wood and Lamping LLP, the law firm representing Defendants in this action, represented Kearney in his divorce from his first wife.  Throughout this litigation Kearney's counsel has attempted to portray this prior representation, and the current representation of Defendants, as somehow improper, and imputed to Defendants.  Any attempt to intro evidence of the prior representation at trial should be precluded.  First, any potential conflict that would have precluded Wood & Lamping from representing Defendants in this matter was resolved long ago.  More to the point, Defendants discovered information about Kearney's divorce and the affidavit he filed in that proceeding by doing a public records search, and not from any information they might have received from Wood & Lamping.  Any information about the prior relationship between Kearney and Wood & Lamping would simply be an attempt to introduce nonprobative facts into the proceeding and prejudice defendants.  Any such evidence or argument should be excluded from trial.[3]

7. **Evidence related to economic conditions in the disability insurance industry, Robert Bonsall's speech at a disability seminar, and other "subjective intent" evidence should be barred.**  It is anticipated that Kearney will attempt to put the entire disability insurance industry on trial in this matter, somehow arguing that economic conditions affecting

---

[2] Similarly, any attempt to discuss delays in this case, or the time it has taken the case to get to trial, should also be excluded.  To the extent such delays were ever pertinent, they no longer are by virtue of the Court's recent summary judgment order which set forth the remaining issues for trial.

[3] Similarly, any attempt by Kearney to introduce evidence that JP or any entity affiliated with JP or DMS consulted with outside counsel with respect to Kearney and this litigation has no bearing on the issues remaining for trial, and should be excluded, as it simply is an attempt by Kearney to prejudice the jury by the fact that Defendants and their related entities may have sought legal advice from multiple sources.

8

the industry somehow were involved in JP's actions in this case. To support this irrelevant argument, Kearney has listed as a trial exhibit the transcript of a speech given by DMS employee Robert Bonsall to an industry group. Aside from the fact that there is no such factual evidence, Kearney should not be permitted to argue that JP's actions were part of an industry wide response to disability claims experience. The evidence in this case should be limited to the actual issues the Court has delineated for trial with respect to the extent of the investigation conducted by JP.

The Sixth Circuit recently made clear that such evidence of subjective intent is irrelevant to a claim for bad faith. As stated in Penton Media, Inc. v. Affiliated FM Ins. Co., 2007 WL 2332323 (6th Cir. (Ohio) August 15, 2007) (copy attached hereto):

> As the Ohio Supreme Court explained in *Zoppo*, an insurer must base "'its refusal to pay the claim…upon circumstances that furnish reasonable justification therefor.' However, "intent is *not* and has never been an element of the reasonable justification standard." The insurer must have a reasonable basis for its decision and take reasonable steps in adjusting the claim; its subjective intentions are not relevant.

*Id*. at *6 (citations omitted) (emphasis in original). Nor is intent an element of invasion of privacy. Accordingly, any evidence going to intent, such as difficulties in the disability insurance industry, Bonsall's thoughts on the disability claim industry in general, the size of Kearney's claim, or the size of the reserve on Kearney's claim must be excluded.

8. **Evidence related to the report of Kearney's so-called "expert," Clinton Miller, should be excluded**. Miller's opinions, which cannot survive a Daubert analysis, and which are unsupported by a rational factual analysis, are legally insufficient to support Kearney's claim for "bad faith." As such, Miller's testimony and his report in particular should be excluded. Moreover, Miller's report is little more than a closing argument for the jury in the guise of an

expert opinion. This is clearly seen in the conclusion of his report, written on July 7, 2001, a year before this case was filed in 2002. Miller concludes:

> I cannot recall a more devastating bad faith case in the past 40 years, nor have I seen of heard about a more egregious bad faith claim in the field of disability insurance.
>
> Even though the insurer's "defense" will most probably be: we paid all of the policy benefits, what's your problem? The problem is, that this case is tantamount to a mugger being caught in the act of mugging a victim and the return of the victim's money and some sort of apology will makeup for the act of mugging. It is my position that the insured is entitled to reasonable compensation for being mugged by his own insurance company for the past three to four years. Otherwise, without accountability, the insured is just another victim, and the insurance company will go on with business as usual, and mug another insured.

Plainly, as noted above, this hyperbolic and inflammatory appeal to emotion by Miller, comparing the insurance company to a mugger, is improper opinion testimony from an alleged expert, and should be excluded.[4]

9. **Evidence from or references to the personnel files of the employees of any party or related entity, or to the salaries or compensation of any corporate office or employee of any party or related entities**. During depositions in this case, Kearney's counsel made inquiries of various employees of JP and DMS that touched on these areas. Such information is entirely irrelevant to the issues remaining for trial, raise the potential for prejudicing the jury against JP and DMS, and therefore should be excluded.

10. **Evidence regarding training of claims personnel and training materials.** During discovery Kearney has required the production of training materials and has questioned witnesses on their training in the claims field. In a case where the benefits have been continuously paid and in which there is no claim that the personnel involved were under trained,

---

[4] On a related issue, neither Miller (assuming he testifies at trial) nor any other individual who testifies should be permitted to define "good faith" or "bad faith" in the context of insurance claims. That is a legal matter for the Court, and the Court will instruct the jury on those issues. Nor can Miller testify as to the ultimate issues to be decided by the jury.

10

these issues are not relevant. There is no evidence that the claims personnel were trained or advised to reduce claims and in any event Kearney's claim was never reduced nor denied. These issues are irrelevant to the remaining claims.

11. **Evidence referencing claims other than Kearney's handled by either JP or DMS.** The only claim that matters here is Kearney's claim, and only actions taken by the insurer specifically with respect to Kearney are at issue. Evidence of action directed towards other insureds, or to a more generalized view of disability insurance claims, such as profitability or unprofitability, or "targeting" of claims, is irrelevant and should not be admissible at trial. The only conduct and claim at issue is that of Kearney, and conduct by the insurers with respect to other insureds is not relevant. See e.g., State Farm Mut. Auto. Ins. Co. v. Campbell, 123 S. Ct. 1513 (2003). Amy such evidence proffered by Kearney therefore should be excluded.

## CONCLUSION

For the foregoing reasons, Jefferson Pilot Life Insurance Company and Disability Management Services, Inc. respectfully request that the Court grant their Motion In Limine, exclude the evidence and arguments discussed above, and grant them such other and further relief as is equitable and just.

                                          Respectfully submitted,

                                          /s William R. Ellis
                                          William R. Ellis (0012279)
                                          Wood & Lamping LLP
                                          600 Vine Street, Suite 2500
                                          Cincinnati, OH  45202-2491
                                          Telephone:   (513) 852-6000
                                          Telefax:        (513) 852-6087
                                          E-mail:  wrellis@woodlamping.com

OF COUNSEL:                     John E. Meagher (511099)
                                          SHUTTS & BOWEN LLP
                                          201 S. Biscayne Boulevard
                                          1500 Miami Center

        Miami, Florida  33131
        Telephone:  (305) 358-6300
        Telecopier:  (305) 381-9982
        E-mail:  JMeagher@Shutts-law.com

Attorneys for Plaintiff/Counterdefendant, Jefferson-Pilot Life Insurance Company and Third Party Defendant, Disability Management Services, Inc.

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this 6th day of September , 2007.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

        s/ William R. Ellis

MIADOCS 2306256 1