**Robert Mills**
**May 3, 2007**

**Page 1**

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Case No. C-1-02-479                          JUDGE BARRETT
                                    Magistrate Judge Hogan


JEFFERSON-PILOT LIFE INS. CO., )
                               )
                    Plaintiff )
                               )
v.                             )
                               )
CHRISTOPHER L. KEARNEY,        )
                               )
                    Defendant )
                               )
v.                             )
                               )
DISABILITY MANAGEMENT          )
SERVICES, INC.,                )
                               )
          Third-Party Defendant )


          CONTINUED DEPOSITION OF:  ROBERT MILLS, taken
before Sharon R. Roy, Notary Public, Registered
Professional Reporter, pursuant to Rule 30 of the
Federal Rules of Civil Procedure, at the offices of
ACCURATE COURT REPORTING, 1500 Main Street,
Springfield, Massachusetts on May 3, 2007, commencing
at 1:10 p.m.


               Sharon R. Roy

**Robert Mills**
**May 3, 2007**

Page 2

```
1   APPEARANCES:
2
3   FOR CHRISTOPHER KEARNEY:
4
5   GRAYDON, HEAD & RITCHIE LLP
    1900 Fifth Third Center
    511 Walnut Street
6   Cincinnati, OH 45202-3157
    513-621-6464
7     BY:  MICHAEL A. ROBERTS, ESQ.
          mroberts@graydon.com
8
9   FOR DISABILITY MANAGEMENT SERVICES, INC.
10  SHUTTS & BOWEN LLP
    1500 Miami Center
11  201 South Biscayne Boulevard
    Miami, FL 33131
12  305-358-6300
      BY:  JOHN E. MEAGHER, ESQ.
13
14
15  In Attendance:
16  Christopher Kearney
17  Adam Formus
18
19
20
21
22
23
24
```

Page 3

```
1            INDEX
2   -------------------------------------
    EXAMINATION              PAGE
3   -------------------------------------
4   By Mr. Roberts             5
5   By Mr. Meagher             77
6
7
8
9   EXHIBITS:               PAGE:
10  1: E-mail dated 9/19/00 to William Hughes
       from Robert Mills with attached letter
11     dated 1/18/07 to Christopher Kearney from
       William Hughes .............................. 44
12
13  2: E-mail dated 11/1/00 to William Hughes from
       Robert Mills with attached letter dated
14     1/18/07 to Christopher Kearney from
       Robert F. Mills ............................. 55
15
16            -*-
17
18
19
20
21
22
23
24
```

Page 4

```
1   ----------------------------------------------
2            PROCEEDINGS
             1:10 p.m.
3   ----------------------------------------------
4         ROBERT MILLS, Deponent, having
5   first been duly sworn by the Notary Public,
6   deposes and states as follows:
7
8         MR. MEAGHER:  Counsel, before you
9   begin, and for the record, the Court has
10  directed us to submit a confidentiality order,
11  and we sent you a draft, I don't know, ten
12  days ago, two weeks ago, whatever.  We haven't
13  heard any response from you but we're going
14  ahead and filing a proposed confidentiality
15  order and we are going to conduct ourselves as
16  if that order has been entered by the judge,
17  so we are designating this deposition
18  confidential, it certainly concerns
19  Mr. Kearney's claim, and following the
20  procedures in the proposed order.
21        MR. ROBERTS:  You're designating
22  this deposition confidential before the
23  witness has spoken a single word?
24        MR. MEAGHER:  Yes.
```

Page 5

```
1         MR. ROBERTS:  Say whatever you want
2   on the record.
3         Are you ready, sir?
4         THE WITNESS:  Yes.
5
6   EXAMINATION BY MR. ROBERTS:
7     Q.  What is your name, please, sir?
8     A.  Robert Mills.
9     Q.  What is your residence address?
10    A.  I'm not comfortable providing that
11  information.
12    Q.  You don't like your private information
13  being shared with other people?
14    A.  I don't like to give my residence address.
15    Q.  Well, your counsel just said that he's
16  going to treat this as confidential pursuant to some
17  purported order that may or may not ever be entered.
18  Why do you have discomfort with even giving out
19  private information subject to a confidentiality
20  order?
21        MR. MEAGHER:  Well, you know, I'm
22  going to object and --
23        MR. ROBERTS:  Counsel, you object
24  for the record.  Anything you say beyond that
```

**2 (Pages 2 to 5)**

**Robert Mills**
**May 3, 2007**

| Page 6 |
| --- |

1    is coaching the witness.
2         MR. MEAGHER: That's not true,
3    because I am instructing him not to give his
4    residence address due to the nature of the
5    litigation. We will stipulate, if you wish,
6    that we'll accept service of subpoenas, where
7    appropriate, and we'll accept service for it.
8         Q. (By Mr. Roberts) Can you explain for me why
9    it is you would have discomfort sharing with me or
10   anybody private information?
11        **A. I just don't like to give my residence**
12   **address.**
13        Q. Why do you have discomfort with that?
14        **A. I just don't make it a practice to give my**
15   **residence address in a case like this.**
16        Q. You consider private information you want
17   to keep private?
18        **A. I would like to keep my residence address**
19   **private.**
20        Q. Where did you go to college, sir?
21        **A. I went to the University of New Haven.**
22        Q. When did you graduate?
23        **A. In 1991.**
24        Q. What's your Social Security number?

| Page 7 |
| --- |

1         MR. MEAGHER: I instruct him not to
2    give his Social Security number.
3         Q. (By Mr. Roberts) Again, you don't want
4    your private information shared with third parties?
5         **A. I do not want to give my Social Security**
6    **number.**
7         Q. Is there a reason why you're not answering
8    my question?
9         MR. MEAGHER: I'm going to object.
10   He did answer your question.
11        Q. (By Mr. Roberts) Sir, do you mind sharing
12   your private information with me?
13        **A. I do not feel comfortable giving my**
14   **residence address and my Social Security number.**
15        Q. Is that it? Is that the extent of it?
16        **A. That's my answer to those questions thus**
17   **far.**
18        Q. Sir, do you suffer any medical conditions?
19        **A. Not to my knowledge.**
20        Q. Do you have any children?
21        **A. Yes.**
22        Q. Are you married?
23        **A. Yes.**
24        Q. How many children do you have?

| Page 8 |
| --- |

1         **A. Two.**
2         Q. What's your wife's name?
3         **A. Laura.**
4         Q. Does she work?
5         **A. Yes, she does.**
6         Q. Where does she work?
7         **A. MassMutual.**
8         Q. How did the two of you meet?
9         **A. We met working together.**
10        Q. At MassMutual?
11        **A. No.**
12        Q. Where were you working?
13        **A. Connecticut Mutual.**
14        Q. Sir, have you done anything to prepare for
15   today's deposition?
16        **A. Yes.**
17        Q. Can you describe for me what you've done in
18   preparation for today's deposition?
19        **A. I've reviewed documents and met with my**
20   **attorneys.**
21        Q. When did you meet with your attorneys?
22        **A. I met with my attorneys yesterday and**
23   **today.**
24        Q. Who are your attorneys?

| Page 9 |
| --- |

1         **A. That would be John Meagher and Adam Formus.**
2         Q. Did anybody participate telephonically in
3    these meetings?
4         **A. Yes.**
5         Q. Who participated telephonically?
6         **A. Bill Ellis and Bill Dempsey.**
7         Q. Anyone else participate in your preparation
8    yesterday or today?
9         **A. Yes.**
10        Q. Who else?
11        **A. Andy Cohen.**
12        Q. Anyone else?
13        **A. Not that I recall.**
14        Q. So you had five lawyers assist you in
15   preparing for today's deposition?
16        **A. There were five lawyers that were involved.**
17        Q. Did you review your deposition from May of
18   2004 in preparation for today?
19        **A. Yes.**
20        Q. Did you read it cover to cover?
21        **A. Yes.**
22        Q. Is there anything that you can recall
23   sitting here today that was not truthful that you
24   testified to back then?

**3 (Pages 6 to 9)**

**Robert Mills**
**May 3, 2007**

| | Page 10 |
|---|---|
| 1 | A. No. |
| 2 | Q. In preparation for today's deposition have |
| 3 | you reviewed the claims file cover to cover? |
| 4 | A. I've perused through the file. |
| 5 | Q. Have you spent any time reading the |
| 6 | entirety of any specific documents? |
| 7 | A. I've read various documents throughout the |
| 8 | file. |
| 9 | Q. What documents did you focus on? |
| 10 | A. I don't recall focusing on anything, I just |
| 11 | went through the file. |
| 12 | Q. Did you stop and spend time reading a |
| 13 | document if it was of interest? |
| 14 | A. Yes. |
| 15 | Q. What documents did you stop and read that |
| 16 | you believed were of interest? |
| 17 | A. I recall looking at letters throughout the |
| 18 | file. |
| 19 | Q. Okay. Besides correspondence, anything |
| 20 | else? |
| 21 | A. I just recall looking at various parts of |
| 22 | the files and going through it. |
| 23 | Q. What besides correspondence? |
| 24 | A. I don't recall. |

| | Page 11 |
|---|---|
| 1 | Q. When did you do this? |
| 2 | A. A couple days ago. |
| 3 | Q. And you don't recall today? |
| 4 | A. I just don't have, you know, a recollection |
| 5 | of spending a significant amount of time on something |
| 6 | else. |
| 7 | Q. How about medical records; did you review |
| 8 | medical records in detail? |
| 9 | A. I thumbed through various medical |
| 10 | information. |
| 11 | Q. Anything grab your interest that you spent |
| 12 | significant time on? |
| 13 | A. No. |
| 14 | Q. How about surveillance, did you spend any |
| 15 | time reviewing surveillance in the investigations |
| 16 | that were performed on Mr. Kearney? |
| 17 | A. No. |
| 18 | Q. Did you review any of the pleadings in the |
| 19 | lawsuit? |
| 20 | A. I don't believe so. |
| 21 | Q. Did you review documents in your meetings |
| 22 | with your team of five lawyers? |
| 23 | A. Yes. |
| 24 | Q. Documents that they brought to your |

| | Page 12 |
|---|---|
| 1 | attention? |
| 2 | A. Yes. |
| 3 | Q. Were those documents correspondence? |
| 4 | MR. MEAGHER: Well, I'm going to |
| 5 | instruct him not to answer any question |
| 6 | pertaining to any documents shown to him by |
| 7 | counsel. That's work product. |
| 8 | MR. ROBERTS: You're not going to |
| 9 | allow him to answer whether the documents he |
| 10 | reviewed were in the category of |
| 11 | correspondence? |
| 12 | MR. MEAGHER: I'll let him answer |
| 13 | that. |
| 14 | MR. ROBERTS: Thank you, Counsel. |
| 15 | MR. MEAGHER: You're welcome. |
| 16 | A. Can you repeat the question, please? |
| 17 | Q. Did you review correspondence in this |
| 18 | meeting with your team of five lawyers? |
| 19 | A. Yes. |
| 20 | Q. Did you review any documents that were |
| 21 | filed in the lawsuit with your team of five lawyers? |
| 22 | A. Can you repeat the question, please? |
| 23 | Q. Did you review any documents filed in the |
| 24 | lawsuit, as far as you know, with your team of five |

| | Page 13 |
|---|---|
| 1 | lawyers? |
| 2 | A. As far as I know, I don't think so. |
| 3 | Q. Anything other than correspondence? |
| 4 | A. Not that I recall. |
| 5 | Q. So any documents you reviewed with your |
| 6 | five-lawyer team in preparation for the deposition |
| 7 | were correspondence documents, right? |
| 8 | A. Correct. |
| 9 | Q. Correspondence you had with Mr. Kearney and |
| 10 | he had with you? |
| 11 | A. No. Excuse me, part of it was, yes. |
| 12 | Q. What else was in the correspondence besides |
| 13 | documents exchanged between you and Mr. Kearney? |
| 14 | MR. MEAGHER: Well, I'm going to |
| 15 | object and instruct you not to answer if by |
| 16 | answering you identify what documents you |
| 17 | reviewed that were discussed with counsel. |
| 18 | Q. (By Mr. Roberts) Who else did you correspond |
| 19 | with that was reviewed between you and counsel? |
| 20 | A. On the advice of my counsel I'm not going |
| 21 | to answer that question. |
| 22 | MR. ROBERTS: You're instructing him |
| 23 | not to tell me with whom he had correspondence |
| 24 | that was reviewed -- |

**4 (Pages 10 to 13)**

**Robert Mills**
**May 3, 2007**

|  | Page 14 |
|---|---|

1    MR. MEAGHER: Well, I'm saying
2  that --
3    MR. ROBERTS: That would be
4  revealing an attorney-client communication of
5  your definition of attorney-client
6  communication?
7    MR. MEAGHER: No, it's a definition
8  of work product, which, if he identifies the
9  specific documents that we may have --
10    MR. ROBERTS: I'm not --
11    MR. MEAGHER: Excuse me, let me
12  finish --
13    MR. ROBERTS: I'm simply asking him
14  to identify with whom he had correspondence.
15    MR. MEAGHER: Mr. Roberts, please.
16    MR. ROBERTS: Mr. Meagher, please.
17    MR. MEAGHER: I'm answering your
18  question. If he is identifying specific
19  documents, that's a work product objection.
20    MR. ROBERTS: I haven't asked him to
21  identify a specific document.
22    MR. MEAGHER: But if he identifies
23  the nature of the document --
24    MR. ROBERTS: I'm not asking him to

|  | Page 15 |
|---|---|

1  identify the nature of the document.
2    MR. MEAGHER: You're interrupting me
3  again. And that somehow shows the identity of
4  the document, then that is work product.
5    Q. (By Mr. Roberts) What other correspondence
6  did you review with your team of five lawyers; with
7  whom did that correspondence relate other than
8  Mr. Kearney?
9    A. Can you repeat the question, please?
10    Q. You reviewed correspondence you had with
11  Mr. Kearney and you during your two-day meeting with
12  your five-lawyer team?
13    MR. MEAGHER: Objection. Assumes
14  facts not in evidence.
15    MR. ROBERTS: All these facts are in
16  evidence.
17    Q. (By Mr. Roberts) Go ahead.
18    A. Yes.
19    Q. Did you review correspondence between you
20  and anybody else other than Mr. Kearney during these
21  meetings?
22    A. Yes, I did.
23    Q. It was correspondence you had with somebody
24  other than Mr. Kearney?

|  | Page 16 |
|---|---|

1    A. Yes.
2    Q. Is that correspondence in the claim file?
3    A. Not to my knowledge.
4    Q. Who was the correspondence with?
5    A. It was with our outside counselor, Geri
6  Johnson, and Bill Dempsey.
7    Q. You had exchanged letters with Ms. Johnson
8  and Mr. Dempsey?
9    A. Yes.
10    Q. And you exchanged e-mails with them?
11    A. Yes.
12    Q. What period of time was covered by this
13  correspondence and e-mail?
14    A. I don't recall the specific time, you know,
15  when that occurred.
16    Q. Do you recall the beginning date?
17    A. No, I do not.
18    Q. Do you recall the beginning year?
19    A. No.
20    Q. It was yesterday, sir. You don't recall
21  what you reviewed yesterday?
22    MR. MEAGHER: Objection; asked and
23  answered.
24    MR. ROBERTS: No, it was asked; he

|  | Page 17 |
|---|---|

1  didn't answer.
2    MR. MEAGHER: He said he didn't
3  recall; that's an answer.
4    A. Can you repeat your question, please?
5    Q. You don't recall from your two-day review
6  with your five-lawyer team what year it was that you
7  had this correspondence with Dempsey and Johnson?
8    A. I had a correspondence or communication
9  with -- what's your definition of correspondence, I
10  guess I'd need to ...
11    Q. You've been answering questions now for 14
12  minutes about correspondence and now you're asking me
13  to define the word correspondence?
14    A. So I can understand your question.
15    Q. Did you not understand my other question?
16    A. I understood it.
17    Q. Okay. Correspondence is written letters
18  and/or e-mails. Can we go with that as a definition?
19  Let's include faxes, too, okay. Are you with me?
20    A. Yes.
21    Q. Yesterday and the day before you had a
22  two-day meeting with a five-lawyer team where you
23  reviewed correspondence you had with Ms. Johnson and
24  Mr. Dempsey. My question is do you recall,

**5 (Pages 14 to 17)**

**Robert Mills**
**May 3, 2007**

| Page 18 |
|---|

1  Mr. Mills, based on your review yesterday and the day
2  before of this correspondence that isn't in the claim
3  file what year that correspondence took place?
4       MR. MEAGHER: Objection; asked and
5  answered. Also assumes facts not in evidence
6  you can answer.
7       **A. Can you repeat that question?**
8       MR. ROBERTS: Can you kindly for me,
9  Sharon?
10      THE COURT REPORTER: "Question:
11  Yesterday and the day before you had a two-day
12  meeting with a five-lawyer team where you
13  reviewed correspondence you had with Ms.
14  Johnson and Mr. Dempsey. My question is do
15  you recall, Mr. Mills, based on your review
16  yesterday and the day before of this
17  correspondence that isn't in the claim file
18  what year that correspondence took place?"
19      **A. I don't recall, you know, when that**
20  **correspondence -- what the year was, when it took**
21  **place.**
22      Q. Did you see these documents yesterday and
23  the day before when you were meeting with your five
24  lawyers?

| Page 19 |
|---|

1       **A. I looked over them, glanced at them**
2  **briefly.**
3       Q. So you saw the paper, but your testimony
4  under oath -- I saw you raise your hand earlier -- is
5  that you can't recall under oath what year that
6  correspondence took place?
7       MR. MEAGHER: Objection to form.
8  Move to strike.
9       **A. Correct.**
10      Q. When did you read your deposition cover to
11  cover most recently?
12      **A. I read that Monday.**
13      Q. Were you sent a package of documents to
14  review by counsel?
15      **A. No.**
16      Q. Were you instructed to review anything
17  specifically by counsel?
18      MR. MEAGHER: I'm going to direct
19  you not to answer any questions about any
20  instructions from counsel.
21      MR. ROBERTS: Once again, I'm not
22  asking him what documents you asked him to
23  review. I'm asking him was he instructed to
24  review correspondence, and you believe -- or

| Page 20 |
|---|

1  documents, and you believe that to be an
2  invasion of the attorney-client privilege?
3       MR. MEAGHER: Yes, I do.
4       MR. ROBERTS: Is there a different
5  attorney-client privilege in the state of
6  Florida than in Ohio, do you know?
7       MR. MEAGHER: I don't think Florida
8  is relevant.
9       MR. ROBERTS: We agree.
10      MR. MEAGHER: So my instruction
11  stands.
12      MR. ROBERTS: Thank you for the
13  order.
14      Q. (By Mr. Roberts) Sir, have you given any
15  depositions in the last three years since you and I
16  last met?
17      **A. Yes.**
18      Q. In what cases?
19      **A. The last name was Dolinsky.**
20      Q. Can you spell that, please?
21      **A. D-O-L-I-N-S-K-Y.**
22      Q. Any other cases?
23      **A. No.**
24      Q. Were you deposed in Brillman?

| Page 21 |
|---|

1       **A. No, I was not.**
2       Q. When was your Dolinsky deposition?
3       **A. I believe it was in the last year or so.**
4       Q. Where was that deposition taken?
5       **A. Here in Springfield, Massachusetts.**
6       Q. Is that lawsuit still pending?
7       **A. No.**
8       Q. It's resolved?
9       **A. Correct.**
10      Q. Do you know where it was pending?
11      **A. The state of Florida.**
12      Q. Was Mr. Meagher your counsel in that
13  action?
14      **A. Yes.**
15      Q. Mr. Meagher served as your counsel in
16  multiple cases, right?
17      **A. Yes.**
18      Q. As has Mr. Ellis?
19      **A. I've only dealt with him on this matter.**
20      Q. I've not had produced to me anything that
21  is a claims file for the period 2002 through 2007.
22  Does Mr. Kearney have some kind of claims file at DMS
23  for that period?
24      **A. Can you repeat the question, please?**

**6 (Pages 18 to 21)**

**Robert Mills**
**May 3, 2007**

|  | Page 22 |
|---|---|

1    Q.  Is there a claims file on Mr. Kearney that
2  covers the period 2002 through 2007?
3    **A.  Yes.**
4    Q.  Would it be troubling for me to get that in
5  this lawsuit; do you think it could be produced?
6        MR. MEAGHER:  Well, I'm going to
7    object and instruct you not to answer.  If you
8    have discovery requests, those go through
9    discovery rules, not by asking a witness to
10   produce them.
11       MR. ROBERTS:  Well, there are
12   discovery requests for the claims file.  I
13   can't believe you would contend there are not.
14   And at least by the rules I'm not familiar
15   with, those requests require that they be
16   supplemented by the responding party every 30
17   days.  As it is, I've requested the claim file
18   and it's been produced.  I suppose you don't
19   object to it being produced even though you
20   didn't get involved in the case when it was
21   produced; you came in after the fact.  But are
22   you saying, Counsel, that if I requested the
23   claims file and the rule is that document
24   requests be supplemented every 30 days, that

|  | Page 23 |
|---|---|

1  notwithstanding that, I'm not entitled to the
2  claims file for the last five years?
3        MR. MEAGHER:  No, I'm not saying
4    that.  I'm not either agreeing or disagreeing
5    with that.  What I'm saying is you don't get
6    documents by putting a witness at a deposition
7    and asking him whether it would be a lot of
8    trouble to produce them.  There's no federal
9    rule that provides that.
10       MR. ROBERTS:  I didn't do that.  All
11   I did was say, "Hey, Witness, am I able to get
12   copies of those, are they copyable?"
13       MR. MEAGHER:  That's not what your
14   question asked.  But as many times, you change
15   your question the second time you say it.  If
16   you want to ask him if there's hard copies,
17   you can ask him that.
18       MR. ROBERTS:  As many times?  What
19   are you referring to?
20       MR. MEAGHER:  I'm done bantering
21   with you.  You're using your time.  You have
22   an hour left.  I've decided to give you some
23   more time because time has passed --
24       MR. ROBERTS:  You've decided?

|  | Page 24 |
|---|---|

1        MR. MEAGHER:  I have.  Because I
2    control my witness.
3        MR. ROBERTS:  You control your
4    witness.  Do you control things other than
5    your witness?
6        MR. MEAGHER:  That's a question I
7    ask myself many times.
8    Q.  (By Mr. Roberts) Sir, is the claim file
9  that exists for 2002 to 2007 that hasn't been
10 produced, is it something that can be copied?
11       MR. MEAGHER:  Objection to form.
12   **A.  Yes.**
13       MR. MEAGHER:  Assumes facts not in
14   evidence.
15   Q. (By Mr. Roberts) How long do you think it
16 would take to copy it?
17   **A.  I don't know, I've never thought about**
18 **that.**
19   Q.  Would it be able to be copied before I
20 leave Springfield tomorrow afternoon?
21       MR. MEAGHER:  Objection to form.
22   **A.  I have no idea.  I mean, I never get in the**
23 **business of making photocopies.**
24   Q.  Do you know of any reason why it hasn't

|  | Page 25 |
|---|---|

1  been produced to me to date?
2        MR. MEAGHER:  I'm going to object;
3    assumes facts not in evidence.
4    **A.  Not to my knowledge.**
5    Q.  Nobody's told you to not produce it,
6  correct?
7    **A.  No.**
8    Q.  And you've not told anybody you refused to
9  produce it, right?
10   **A.  I've never been asked those questions.**
11 **This is the first time I've heard of this.**
12   Q.  Doesn't surprise me.
13       MR. MEAGHER:  Move to strike.
14   Q.  (By Mr. Roberts) Now you've been
15 responsible for Mr. Kearney's claim for over seven
16 years?
17   **A.  I've been involved in the case for over**
18 **seven years.**
19   Q.  Were you ever responsible for it?
20   **A.  What do you mean by responsible?**
21   Q.  I think you earlier said that you read your
22 deposition, you testified truthfully, and I think in
23 your deposition three years ago you said you took
24 over responsibility for the Kearney claim January 1

                                              **7 (Pages 22 to 25)**

**Robert Mills**
**May 3, 2007**

<div style="page">

**Page 26**

1  of 2000, you maintained responsibility of it through
2  the date the lawsuit was filed.
3     **A. Okay. Well, if that's what I said in my**
4  **deposition previous, that's correct, I just don't**
5  **remember --**
6     Q. Forget about your deposition. Is it true
7  that you were responsible for the Kearney claim
8  January 1, 2000 through at least 2002?
9     **A. I was involved, responsible to some degree.**
10    Q. Well, were you just involved or were you
11 responsible?
12    **A. Both. I don't know how to answer that**
13 **question.**
14    Q. You don't know what I mean by "Were you
15 responsible for that claim file?"
16    MR. MEAGHER: Objection; asked and
17 answered. You can answer again.
18    **A. Correct. I said I don't understand your**
19 **question. I was involved in the case, responsible**
20 **for the case.**
21    Q. You told me in your deposition three years
22 ago that you took over -- you and three other people
23 took over the JP block of claims that came over in
24 January 2000. Moreover, you told me that you were

**Page 27**

1  responsible for between 40 and 60 of those files. Do
2  you not recall that?
3     MR. MEAGHER: Objection to form.
4  You can answer.
5     **A. It's been a long enough time, I don't**
6  **remember, you know, the year 2000 and what I was**
7  **doing at that point in time.**
8     Q. That's not my question. My question was
9  you told me you were responsible. Do you not recall,
10 sitting here today, that you were ever responsible
11 for any claim file?
12    MR. MEAGHER: Objection to form.
13    **A. I've been responsible for claim files.**
14    Q. Okay. Whatever measure you used to
15 determine you've been responsible for any claim file,
16 have you ever been responsible for Mr. Kearney's
17 claim file?
18    **A. I've been responsible for handling it for a**
19 **period of time.**
20    Q. Okay, for what period of time?
21    **A. I've been involved now since the --**
22    Q. No, don't change the verb to involved. For
23 what period of time were you responsible as you
24 measure responsibility?

**Page 28**

1     **A. I would say I was responsible from what**
2  **we're talking about, from the time in 2000 probably**
3  **up to the time of the lawsuit.**
4     Q. Okay. Who's been responsible for the
5  claim -- there's been a pending claim since the
6  lawsuit was filed, hasn't there?
7     **A. I don't know all the dynamics of how that**
8  **works with this lawsuit.**
9     Q. Well, hasn't Mr. Kearney been required by
10 you to keep sending in Continuation of Disability
11 forms and Attending Physician Statements since 2002?
12    **A. The file does show that he's been sending**
13 **in claim forms.**
14    Q. You, Robert Mills, have been requiring
15 Mr. Kearney to continue to send in those forms in
16 2003, in 2004, in 2005, in 2006, and now in 2007,
17 right?
18    **A. I've been involved in the case; I haven't**
19 **been the one that necessarily sent the checks with**
20 **the claim forms.**
21    Q. That wasn't my question. Mr. Mills, have
22 you written my client in the last five years multiple
23 times demanding that he provide Robert Mills with
24 information regarding his continuance of disability?

**Page 29**

1     **A. I remember writing him letters requesting**
2  **information, which claim forms could have been**
3  **requested. I don't know specifically now as I'm**
4  **talking about it what was requested in those letters.**
5     Q. I didn't ask you what was requested in
6  those letters. I said have you been writing him,
7  asking him to give the company information on which
8  the company used to continue the payment of benefits?
9     MR. MEAGHER: Objection to the form.
10    **A. I've sent letters asking for claim forms to**
11 **be able to continue to evaluate the case.**
12    Q. Okay. Why were you the person sending
13 Mr. Kearney these letters?
14    **A. I was asked to maintain the case to some**
15 **degree because of my familiarity with the case from**
16 **the legal department.**
17    Q. Your legal department told you to do that?
18    **A. Mm-hmm.**
19    Q. And has Mr. Kearney provided you with
20 information?
21    **A. You know, I don't recall what information**
22 **he's --**
23    Q. I didn't ask you what information he gave
24 you. Has he provided you information?

</div>

**8 (Pages 26 to 29)**

**Robert Mills**
**May 3, 2007**

| | Page 30 |
|---|---|
| 1 | A. I believe he has given us information. |
| 2 | Q. And when he provides you information, do |
| 3 | you review it or does somebody else review it? |
| 4 | A. I review it and I send it to someone else. |
| 5 | Q. And if it's deficient you send him a notice |
| 6 | saying, "Hey, you're missing something. Give me |
| 7 | this," right? |
| 8 | A. Not necessarily. |
| 9 | Q. If it's deficient you just let it go? |
| 10 | A. I may follow up with something or request |
| 11 | that we need to send something out. |
| 12 | Q. Anybody other than you been writing |
| 13 | Mr. Kearney since 2002 seeking information from him? |
| 14 | A. Yes. |
| 15 | Q. Who else? |
| 16 | A. Jackie Albazac (phonetic); I can't |
| 17 | pronounce it. |
| 18 | Q. And she started doing that maybe two, three |
| 19 | months ago? |
| 20 | A. I know she sent letters. I don't know when |
| 21 | that began. |
| 22 | Q. Does she report to you? |
| 23 | A. No, she doesn't. |
| 24 | Q. Did she send the letters at your |

| | Page 31 |
|---|---|
| 1 | instruction? |
| 2 | A. Can you repeat -- |
| 3 | Q. Did she send letters to Mr. Kearney at your |
| 4 | instruction? |
| 5 | A. Not that I recall. |
| 6 | Q. Have you spoken to her about the Kearney |
| 7 | claim? |
| 8 | A. Yes, I have. |
| 9 | Q. What did you tell her? |
| 10 | A. I would talk to her to let her know when I |
| 11 | got a progress report or a Continuance of Disability |
| 12 | form and send that along to her. |
| 13 | Q. You don't know when her involvement in the |
| 14 | claim began? I'm not asking you for a specific day, |
| 15 | Mr. Mills. Give me a year. Let's start with a year. |
| 16 | Do you know what year her involvement began? |
| 17 | A. I believe it's been a couple years. |
| 18 | Q. She's been involved in sending letters to |
| 19 | Mr. Kearney for a couple years is your testimony |
| 20 | under oath? |
| 21 | A. My testimony is that she's been involved. |
| 22 | I don't know if it's necessarily sending letters. |
| 23 | Q. What has been her involvement for a couple |
| 24 | years? |

| | Page 32 |
|---|---|
| 1 | A. My understanding is that she processes the |
| 2 | payment and sends out the forms to Mr. Kearney. |
| 3 | Q. Under her signature? |
| 4 | A. I don't know how that works. |
| 5 | Q. Okay. Other than you and her, who's been |
| 6 | involved in Mr. Kearney's claim since 2002? |
| 7 | A. The lawyers. |
| 8 | Q. Who else? |
| 9 | A. I don't know. |
| 10 | Q. You've had lawyers involved in Mr. |
| 11 | Kearney's continuing claim for disability? |
| 12 | A. Yes. |
| 13 | Q. What lawyers have been involved in |
| 14 | Mr. Kearney's continuing claim for disability? |
| 15 | A. Adam Formus. Bill Ellis. John. |
| 16 | Q. Do you know why the lawyers have been |
| 17 | involved in Mr. Kearney's continuing claim for |
| 18 | disability? |
| 19 | A. I understand this is a case that continues |
| 20 | to be in litigation. |
| 21 | Q. It's your judgment that Mr. Kearney's |
| 22 | disability since 2002 has been subject to some claim |
| 23 | in a lawsuit? |
| 24 | A. I don't know all the meaning, what the |

| | Page 33 |
|---|---|
| 1 | lawsuit is about, because it's in litigation. You |
| 2 | know, the lawyers are involved in that. I seek |
| 3 | guidance from them. |
| 4 | Q. You don't know whether the company has ever |
| 5 | sued Mr. Kearney claiming that he's no longer |
| 6 | disabled according to the policy; you don't know that |
| 7 | one way or the other? |
| 8 | A. I don't know that specifically, no. |
| 9 | Q. Have you been getting information about Mr. |
| 10 | Kearney through the lawyers? |
| 11 | A. Yes. |
| 12 | Q. About his continuing disability information |
| 13 | they get in a lawsuit, they share with you for you to |
| 14 | evaluate for the claim? |
| 15 | A. I've gotten information from them. |
| 16 | Q. Right. But my question was, are they |
| 17 | sending you information that comes to them through |
| 18 | the lawsuit for purposes of you evaluating the |
| 19 | claim? |
| 20 | A. I don't know if the information they |
| 21 | provide is necessarily information that would be used |
| 22 | for the evaluation of the case. |
| 23 | Q. Why would they give it to you, then? |
| 24 | A. I don't know. |

**9 (Pages 30 to 33)**

**Robert Mills**
**May 3, 2007**

| | Page 34 |
|---|---|
| 1 | Q. I mean, if they're requesting information |
| 2 | from Mr. Kearney for purposes of the lawsuit, why do |
| 3 | they need your analysis and involvement? |
| 4 | **A. I think maybe there's a difference in what** |
| 5 | **information is; they're maybe giving me information,** |
| 6 | **updates of what's going on in the lawsuit.** |
| 7 | Q. Well, I don't care to know what they tell |
| 8 | you about the ongoings in the lawsuit. Are they |
| 9 | giving you information pertinent to Mr. Kearney? |
| 10 | **A. I don't know how to answer that question.** |
| 11 | **Can you rephrase that?** |
| 12 | Q. They're sending you information that they |
| 13 | glean from the lawsuit, correct? |
| 14 | **A. I don't think they send information to me,** |
| 15 | **I don't -- it's providing me with updates,** |
| 16 | **information about the lawsuit.** |
| 17 | Q. Okay. For the past five years you've been |
| 18 | getting information from the trial lawyers about |
| 19 | Mr. Kearney, right? |
| 20 | **A. They've provided information about him.** |
| 21 | Q. Is any of that information of a medical |
| 22 | nature? |
| 23 | **A. I don't recall.** |
| 24 | Q. What is the information pertaining to? |

| | Page 36 |
|---|---|
| 1 | five lawyers, or Jeff McSherry and Amy Callow -- make |
| 2 | it seven; have you told any of them or anybody that |
| 3 | based on your seven-year history with the case that |
| 4 | you think that Mr. Kearney is not disabled? |
| 5 | **A. No.** |
| 6 | Q. That's never happened? |
| 7 | **A. No.** |
| 8 | Q. In fact, Mr. Kearney has been getting paid, |
| 9 | and we can dispute timing of payment and amounts of |
| 10 | payments, but he's been getting paid monthly benefits |
| 11 | for the entire seven-plus year period that you've |
| 12 | been involved in the claim, correct? Seven-year |
| 13 | period -- |
| 14 | **A. Yes.** |
| 15 | Q. Did I say seven-year? |
| 16 | **A. I thought you said seven-year.** |
| 17 | Q. Okay. For the entire seven years that you |
| 18 | have either had responsibility for or involvement in |
| 19 | the claim, Mr. Kearney has received -- putting aside |
| 20 | timeliness and amount for the moment -- monthly |
| 21 | benefits under the policy, right? |
| 22 | **A. Yes.** |
| 23 | Q. The company has never come to the |
| 24 | conclusion that he's not disabled, correct? |

| | Page 35 |
|---|---|
| 1 | **A. To the best of my recollection, it's been** |
| 2 | **about the litigation proceedings.** |
| 3 | Q. But your testimony under oath is you don't |
| 4 | even know what the claim is in the litigation; you |
| 5 | don't know if the company has challenged Mr. Kearney |
| 6 | as being disabled or not disabled, right? |
| 7 | **A. Can you repeat the question, please?** |
| 8 | Q. You don't know whether or not there's a |
| 9 | claim anywhere in any court where the company, DMS or |
| 10 | JP, have contended that Mr. Kearney is not disabled, |
| 11 | right? |
| 12 | **A. Not to my knowledge. I don't think that's** |
| 13 | **what it's about.** |
| 14 | Q. Well, you just told me earlier that you |
| 15 | don't know one way or the other what it's about so, I |
| 16 | guess, clarify for me. Do you have an understanding |
| 17 | of whether or not the company has ever filed a |
| 18 | lawsuit or made a claim that Mr. Kearney is not |
| 19 | disabled under the policy? |
| 20 | **A. I don't believe that there is a claim for** |
| 21 | **that.** |
| 22 | Q. Correct, there isn't. |
| 23 | **A. Okay.** |
| 24 | Q. Have you ever told anybody, the team of |

| | Page 37 |
|---|---|
| 1 | **A. No, but the company hasn't been provided** |
| 2 | **with all the necessary information to be able to make** |
| 3 | **that determination.** |
| 4 | Q. What haven't they been provided? |
| 5 | **A. All the information that's been documented** |
| 6 | **through that file.** |
| 7 | Q. What hasn't been provided? Tell me right |
| 8 | now. |
| 9 | **A. My understanding is information about** |
| 10 | **finances --** |
| 11 | Q. You've not gotten any financial information |
| 12 | from Mr. Kearney. What else? |
| 13 | MR. MEAGHER: Objection to form. |
| 14 | Move to strike. |
| 15 | **A. We've received some financial; I don't** |
| 16 | **think we've gotten all the financial.** |
| 17 | **There's been conversations concerning** |
| 18 | **business acquaintances in the past.** |
| 19 | Q. Fourteen years ago, right? |
| 20 | **A. I don't remember the time frames of all** |
| 21 | **this stuff that you asked me today.** |
| 22 | Q. What else? |
| 23 | **A. Those are what come to memory right now.** |
| 24 | Q. Take your time. |

**10 (Pages 34 to 37)**

**Robert Mills**
**May 3, 2007**

|  | Page 38 |
|---|---|

1  A.  I can't think of anything else at this
2  point.
3  Q.  So -- and you know from your seven-year
4  involvement or participation that Mr. Kearney's claim
5  actually was filed back in '93 with Jefferson-Pilot,
6  right?
7  A.  Yes, I do.
8  Q.  So, he's been receiving benefits for 14
9  years, right?
10  A.  Yes.
11  Q.  And neither you nor anybody you know has
12  ever come to the conclusion that he's not disabled
13  under the policy, right?
14      MR. MEAGHER:  Objection; asked and
15      answered.  You can answer again.
16  A.  Correct.  But as I stated earlier, we also
17  haven't received --
18  Q.  You're missing all the financial
19  information.
20  A.  -- all the information to appropriately to
21  review the case.
22  Q.  You've been unable to appropriately review
23  the case for the last 14 years, or for you, seven
24  years, right?

|  | Page 39 |
|---|---|

1  A.  To be able to get the information to do so.
2  Q.  Right.  You still need more information,
3  right?
4  A.  Correct.
5  Q.  You want more information from Mr. Kearney
6  about what was going on in the '90s, right?
7  A.  I don't remember what the full scope of the
8  information that we have, but we still need
9  information.
10  Q.  Well, isn't the claim -- isn't it evaluated
11  month to month?  Isn't that the way you guys look at
12  it?
13  A.  Yes.
14  Q.  So let's just take the year 2007.  Are you
15  missing any information for the year 2007 to
16  appropriately evaluate the claim?
17  A.  Again, I don't know what information is in
18  that file.  I haven't gone through it as thoroughly
19  as I've seen it in quite some time.
20  Q.  I thought you just said you reviewed the
21  entire claim file two days ago?
22  A.  I did, but it doesn't mean I necessarily
23  remember every single document today.
24  Q.  My question's limited to the last four

|  | Page 40 |
|---|---|

1  months.
2  A.  I don't even know if I even looked at that
3  last part of the file because I haven't been really
4  that involved in it.
5  Q.  Who's more involved than you?
6  A.  Jackie at this point.
7  Q.  How long has that been the case?
8  A.  She's been involved for a couple years.
9  Q.  That wasn't my question.  How long has she
10  been more involved than you?
11  A.  Probably more so over the last couple
12  months.
13  Q.  Did you review anything on a computer when
14  you were speaking with your team of five or seven
15  lawyers?
16      MR. MEAGHER:  Objection to form.
17  A.  No.
18  Q.  You didn't review any videos or anything
19  else on a computer?
20  A.  Well, I think I've looked at documents that
21  were on our attorneys' laptops.
22  Q.  I don't mean electronic files of the
23  correspondence.
24  A.  Can you repeat the question?

|  | Page 41 |
|---|---|

1  Q.  Anything other than an electronic copy of a
2  letter.  Have you reviewed anything on a computer
3  other than an electronic copy of a letter?
4  A.  No.
5  Q.  When was the last time you spoke to anyone
6  at Jefferson-Pilot about Mr. Kearney?
7  A.  Several years ago.
8  Q.  Do you know if you've had any communication
9  with Jefferson-Pilot about Mr. Kearney since 2002?
10  A.  I don't recall, but I can look at the file
11  and --
12  Q.  Well, hopefully it will be produced to me
13  some day, and if there has been communications it
14  would be in the claim file?
15      MR. MEAGHER:  Objection to form.
16  Move to strike.  You can answer.
17  A.  Not necessarily.
18  Q.  So you've had communications with
19  Jeffferson-Pilot about Mr. Kearney that doesn't end
20  up in the claims file?
21  A.  I don't recall all the conversations I
22  would have with them, and if I did, it doesn't
23  necessarily mean they were placed as a document in
24  the file.

**11 (Pages 38 to 41)**

**Robert Mills**
**May 3, 2007**

| Page 42 |
|---|

1    Q.  Right.  That's my point.  You can have
2    communications with Jefferson-Pilot about Mr. Kearney
3    but that doesn't mean that the communication ends up
4    in the claim file, correct?
5        A.  Correct.
6        Q.  At this time do you have any involvement in
7    any other Jefferson-Pilot claims?
8        A.  No.
9        Q.  I think you told me that beginning in 2001
10   you became Director of Claims on the equitable block?
11       A.  Correct.
12       Q.  Is that still the case?
13       A.  Yes.
14       Q.  Have you received any promotions since the
15   beginning of 2001?
16       A.  No.
17       Q.  You have an MBA, sir, right?
18       A.  Yes.
19       Q.  Master's of Business Administration?
20       A.  Yes.
21       Q.  I think you also told me in your prior
22   deposition that when you became Director of Claims on
23   the equitable block in early 2001 there was four or
24   five Jefferson-Pilot claims that you retained

| Page 43 |
|---|

1    responsibility for.  Do you recall that?
2        A.  I don't recall the cases but I remember
3    seeing that when I read over the deposition.
4        Q.  Right.  And all those claims other than
5    Mr. Kearney's have now resolved in one fashion or
6    another?
7        A.  I don't know if they've resolved or they're
8    continuing to be paid.  I don't know the status of
9    them.
10       Q.  When was the last time you had
11   responsibility for any of those other four or five
12   claims?
13       A.  Several, several years ago.  I don't recall
14   the specific time.
15       Q.  Who is this new person, the supervisor, the
16   new person you mentioned who has more responsibility
17   than you do now for Mr. Kearney's claim?
18       A.  That would be Todd Ditmar.
19       Q.  In this litigation you were asked by your
20   lawyers to sign a sworn statement that all the
21   interrogatory responses, responses to admission
22   requests were true; you recall that?
23       MR. MEAGHER:  Objection to form.
24       A.  I recall signing something.  I don't

| Page 44 |
|---|

1    remember the document itself.
2        Q.  Did you review everything in the responses
3    and the requests and the documents available at JP,
4    the documents available at DMS, to assure yourself
5    that the statement you were signing was indeed the
6    truth?
7        MR. MEAGHER:  Objection to form.
8        A.  I would have reviewed the document and what
9    it said before I signed something.
10       Q.  When you read your deposition the other
11   day, did you see in there or do you recall seeing in
12   there where you told me that the surveillance that
13   you ordered, the multiple surveillance you ordered in
14   2000, actually affirmed for you that what Mr. Kearney
15   was saying was consistent with what the surveillance
16   showed?
17       A.  Yes, I do remember that.
18       Q.  I want to take you back to September 19,
19   2000.
20           (Exhibit 1, marked)
21       Q.  (By Mr. Roberts)  Sir, I hand you Exhibit
22   1, a document from back in 2000 that was just
23   recently provided to me two months ago.  I don't know
24   what the explanation is for the four-year lapse.

| Page 45 |
|---|

1        MR. MEAGHER:  Do you have a copy for
2    me, Counsel?
3        MR. ROBERTS:  I'm handing you yours,
4    sir.
5        MR. MEAGHER:  It sounded like you
6    were trying to ask a question.
7        Q.  (By Mr. Roberts)  Mr. Kearney had filed
8    this lawsuit -- this lawsuit was filed against
9    Mr. Kearney in June of 2002, and in 2003 there was a
10   request that some documents be produced.  For some
11   reason this document wasn't produced, notwithstanding
12   the request four years ago, until last month or the
13   month before.  Why don't you take a look at this
14   document.  It's Bates numbered DMSESUPP 0068 through
15   0071, and in fact 0071 is simply a blank page.  But
16   this is dated September 19, 2000, do you see that?
17       MR. MEAGHER:  I'm going to move to
18   strike Counsel's comments.  You can answer the
19   question.
20       A.  Can you repeat the question, please?
21       Q.  Do you see that this is an e-mail from you,
22   0068?
23       A.  September 19, 2000, yes.  I was looking at
24   the letter.  Okay.

**12 (Pages 42 to 45)**

**Robert Mills**
**May 3, 2007**

| | |
|---|---|
| **Page 46** | **Page 48** |

**Page 46**

1  Q.  Is 0068 an accurate copy of an e-mail from
2  you to Mr. Hughes?
3  A.  I would say so.  It's got my name on it and
4  it's to his attention.
5  Q.  Well, you verified the truth of the
6  discovery responses, and this is a DMS document
7  produced in discovery.
8       MR. MEAGHER:  Objection to form.
9  Assumes facts not in evidence.
10  Q. (By Mr. Roberts)  Are you comfortable that
11  this is an e-mail that you sent to Mr. Hughes on
12  September 19th of 2000, right?
13  A.  Yes.
14  Q.  Which would have been after the
15  surveillance that you commented on in your earlier
16  deposition that actually affirmed what Mr. Kearney
17  was telling you, right?
18  A.  I don't recall the time frame in which the
19  surveillance was.
20  Q.  The surveillance occurred when it occurred,
21  and that's in the record.
22  A.  Okay.
23  Q.  But you recall that testimony, that the
24  surveillance affirmed what Mr. Kearney was telling

**Page 47**

1  you, right?
2  A.  Yes.
3  Q.  This was a letter that you initially
4  drafted for Mr. Hughes to sign, right?
5  A.  Yes.
6  Q.  Does Mr. Hughes get involved in all the
7  claims that you're involved in?
8  A.  No.
9  Q.  What's Mr. Hughes's -- what was Mr. Hughes'
10  position back in 2000?
11  A.  Off memory I want to say he was assistant
12  vice president.
13  Q.  And he reported to John Anderson?
14  A.  I don't know.  I would assume so.
15  Q.  John Anderson is the founder of the company
16  and owner of the company who's the head of Claims,
17  right?
18  A.  He's one of the owners of the company.
19  Q.  Do you understand that he was one of the
20  founders of the company?
21  A.  Yes, I do.
22  Q.  And he's always been the head of Claims
23  since the mid '90s or at least since you joined,
24  right?

**Page 48**

1  A.  That's my understanding.
2  Q.  And Mr. Hughes is considered by the company
3  to be the claims god; he is the brightest of the
4  brightest as far as disability claims go, right?
5  A.  Well, he's a knowledgeable guy in the
6  business.
7  Q.  You ghostwrote this letter.
8  A.  Excuse me?
9  Q.  You ghost wrote this letter for Mr. Hughes?
10  A.  Yes, I did.
11  Q.  And how do you refer to Mr. Hughes at the
12  bottom of 0070?
13  A.  I refer to him as "claims God."
14  Q.  Okay.  Is Mr. Hughes responsible for any
15  specific block of business at DMS?
16  A.  Yes.
17  Q.  Which blocks, or block?
18  A.  I believe it's strictly the equitable,
19  equitable life.
20  Q.  But you pulled him into the JP block with
21  this claim?
22  A.  I believe when this -- my involvement
23  started and then I was promoted to director, I
24  reported to him, and as I kept this case I continued

**Page 49**

1  to report to him on it.
2  Q.  You told me in your deposition that you
3  were made the equitable director of claims in January
4  of 2001.  This is September of 2000.
5  A.  Correct.
6  Q.  So you brought Hughes into the evaluation
7  of this claim before you became director of equitable
8  block?
9  A.  I believe so.
10  Q.  You say in your e-mail to Mr. Hughes,
11  "Bill, attached is a copy of the letter I created to
12  be sent under your name.  I left a printed copy on
13  your desk along with copies from the file.  Let me
14  know if you want the complete file.  Thanks?  B."
15       What were you referencing, "I left a
16  printed copy"?  I presume the printed copy is what's
17  attached to this e-mail?
18  A.  Correct.
19  Q.  "Along with copies from the file."  What
20  are copies from the file referencing?
21  A.  Probably the previous letters or Mr.
22  Kearney's letters to us so he can see the sequence of
23  events leading up to this.
24  Q.  You didn't give him the complete file but

**Accurate Court Reporting**
**(413) 747-1806      (413) 747-1818**

**Robert Mills**
**May 3, 2007**

| Page 50 | Page 52 |
|---|---|

**Page 50**

1  you invited him to request that from you, right?
2      A.  I asked the question, if he wanted the
3  complete file.
4      Q.  Do you know if he had reviewed the complete
5  file or any documents prior to this date regarding
6  Mr. Kearney?
7      A.  I don't know what he may or may not have
8  read at this point.  It's a long time ago; I don't
9  know what he looked at or didn't.
10     Q.  Do you know if he ever read the claim file?
11     A.  It's my understanding he has.
12     Q.  How do you come to that understanding?
13     A.  I believe he sent the letter to Mr. Kearney
14  at one point stating that he had reviewed the claim
15  file.
16     Q.  He sent this letter to Mr. Kearney; he
17  reviewed the claim file?
18         MR. MEAGHER:  Objection to form.
19     Q.  (By Mr. Roberts)  This letter evolved into
20  the October 2, 2000 letter, didn't it?
21     A.  I don't know what the date -- I know there
22  was a letter in there that I had read to refresh my
23  memory where he had stated, you know, he reviewed the
24  file.

**Page 51**

1      Q.  You don't know sitting here today what
2  letter this became, what the date of this letter
3  ultimately became when it was finalized?
4      A.  I don't know the exact date, but it had to
5  be around at that time, obviously.
6      Q.  And if the October 2, 2000 letter is the
7  letter that resulted from this draft, and it's signed
8  by Hughes, Mr. Hughes didn't write it, did he?
9         MR. MEAGHER:  Objection to form.
10     A.  Are you referring to there's an October 2,
11  2000 letter in the file under his name?
12     Q.  Right.  Are you mindful of that letter
13  sitting here today?
14     A.  I remember the date of that letter.
15     Q.  Yeah.  It's a letter --
16     A.  I just don't know the content of that
17  letter, if this is the exact one.
18     Q.  It's not exact but it's a letter signed by
19  Mr. Hughes, right?
20     A.  I believe so.
21     Q.  And that's his first letter to Mr. Kearney?
22     A.  You know, I don't recall, but looking
23  through the file the last couple of days I believe it
24  was.

**Page 52**

1      Q.  And in fact, this draft of yours is a draft
2  that ultimately evolved into that letter, right?
3         MR. MEAGHER:  Objection; asked and
4  answered.
5      A.  I believe it is.
6      Q.  How long prior to this e-mail was it that
7  Mr. Hughes had been invited by you to become involved
8  in the claim?
9      A.  I wouldn't have any idea of the timeline.
10     Q.  Do you know if this, in fact, was Mr.
11  Hughes' first substantive involvement in the claim?
12     A.  I don't have any recollection of that.
13     Q.  Would the claim file give an indication of
14  that?
15     A.  Not necessarily.
16     Q.  Because things happen on a claim that
17  aren't necessarily included in the claim file, right?
18         MR. MEAGHER:  Objection to form.
19     A.  Things happen that are not necessarily
20  documented.
21     Q.  I mean, you could have been having strategy
22  meetings with Mr. Hughes for months and months and
23  months and the production of a claim file wouldn't
24  necessarily reflect that, right?

**Page 53**

1      A.  Well, I would say we could have been having
2  conversations about the case; they're not a specific
3  document to that discussion, not all the thoughts
4  about the case would be in the file.
5      Q.  Precisely.  That's correct, right?
6      A.  Yes.
7      Q.  So you could be having strategy meetings
8  with Hughes, getting counsel from Hughes, getting
9  advice from Hughes about what exactly to do on this
10  claim or how to bring this claim to some point, but
11  production of a claim file wouldn't reveal that
12  necessarily, right?
13         MR. MEAGHER:  Objection; asked and
14  answered.
15     A.  That is possible, I just don't know if
16  that's the situation that happened here.
17     Q.  And you don't know when it was that you got
18  Hughes involved?
19     A.  I don't recall today when the specific time
20  frame was.
21     Q.  Well, you wouldn't have gotten involved
22  immediately in January of 2000, I suspect?
23     A.  Again, you know, I don't remember the exact
24  time when that occurred.

**14 (Pages 50 to 53)**

**Robert Mills**
**May 3, 2007**

|  | Page 54 |
|---|---|

1    Q.  The October 2, 2000 letter suggests that --
2  I understand that you at least started the drafting
3  of the letter, but Mr. Hughes signed it, and
4  according to the letter he signed he reviewed the
5  claim fully and the policy as of October 2, 2000.  Do
6  you know if that's true or not?
7           MR. MEAGHER:  Objection to form.
8      You can answer.
9      A.  You know, I don't recall specifically
10  what's stated in that letter.  I'd have to look at
11  it.
12     Q.  Do you know if Mr. Hughes reviewed the
13  claim in its entirety and the policy at or about the
14  time of this September e-mail?
15     A.  It's my understanding that he has reviewed
16  it, I just don't know when that occurred.
17     Q.  Do you know how many iterations of this
18  e-mail there were?
19     A.  No, I do not.
20     Q.  Or this letter, excuse me?
21     A.  No, I do not.
22     Q.  And the fact that it says January 18, 2000
23  on this letter, let's not be confused, that's simply
24  the day it was printed, right?

|  | Page 55 |
|---|---|

1      A.  Correct.
2           MR. MEAGHER:  I think it says 2007
3      on mine.
4      A.  2007.
5      Q.  2007.  You're also mindful that that
6  October 2, 2000 letter suggested that further
7  payments to Mr. Kearney, if any, would be under
8  reservation of rights?
9      A.  I'm not comfortable -- I'd have to look at
10  it.
11     Q.  Had you put Mr. Kearney's payments on
12  reservation of rights prior to October 2, 2000?
13     A.  I don't recall.
14     Q.  Do you recall the claim going on a
15  reservation of rights status?
16     A.  As I sit here today, no, I do not.
17     Q.  You don't even recall that that happened?
18     A.  It's been such a long time ago, I don't.
19           (Exhibit 2, marked)
20     Q.  (By Mr. Roberts)  Sir, I've handed you
21  another e-mail and presumably a copy of what was
22  attached to the e-mail.  This e-mail's dated November
23  1 of 2000, also again from you to Hughes, do you see
24  that?

|  | Page 56 |
|---|---|

1      A.  Yes, I do.
2      Q.  Was it the case that all letters drafted
3  from October 2000 through the time your company sued
4  Mr. Kearney in 2002, were all those letters
5  ghostwritten by you that contained Mr. Hughes'
6  purported signature?
7      A.  I don't specifically recall that, if all of
8  them were.
9      Q.  But that was an occurrence?
10     A.  I know we did at least one; we just talked
11  about it.
12     Q.  Well, this one too, right?
13         Actually, this one purports to have your
14  signature but you passed it by Mr. Hughes?
15     A.  Yes.
16     Q.  Could you read the e-mail, what the e-mail
17  says?
18     A.  Yes.  It says, "Alright.  I took the
19  letters of the two greatest minds in the office to
20  create the version attached.  Let me know when or if
21  you want to discuss this again so I can explain my
22  thoughts on this.  B."
23     Q.  The two greatest minds being yourself and
24  Mr. Hughes, the claims god?

|  | Page 57 |
|---|---|

1      A.  It would be myself and Mr. Hughes.
2      Q.  The claims god?
3      A.  I don't refer to him -- that was a joke
4  obviously.
5      Q.  That was a joke?
6      A.  Yes.
7           And I also want to add that that had, you
8      know, no reference to Mr. Kearney himself or his case
9      whatsoever.
10           MR. ROBERTS:  Move to strike the
11      self-serving statement from the record.
12     Q.  (By Mr. Roberts)  You got Mr. Hughes
13  involved on a claim that had been pending for seven
14  years and that's remained pending for seven years and
15  at the time you got him involved you referred to him
16  as the claims god in that letter, true or false?
17     A.  Can you repeat the question, please?
18     Q.  At the time you got Mr. Hughes involved the
19  claim had been in pay status for seven years, and
20  it's remained in pay status for seven years.  And at
21  the time you got him involved, you referred to him as
22  "Claims God," true?
23           MR. MEAGHER:  Objection to form.
24     A.  I just referred to him in that one e-mail

**15 (Pages 54 to 57)**

**Robert Mills**
**May 3, 2007**

|  | Page 58 |
|---|---|
| 1 | as a joke and it's never -- |
| 2 | Q. Is my question true? The claim was in pay |
| 3 | status for seven years at the time, correct? |
| 4 | **A. Yes.** |
| 5 | Q. It's remained in pay status for seven |
| 6 | years, correct? |
| 7 | **A. That's my understanding.** |
| 8 | Q. And at the very time you got him involved, |
| 9 | you referred to him as the claims god, right? |
| 10 | **A. Again, I don't recall a specific time I** |
| 11 | **made that reference. It was a joke, it was a** |
| 12 | **one-time thing, it didn't happen again.** |
| 13 | Q. It wasn't a one-time thing; the next month |
| 14 | you referred to him as "the greatest mind in the |
| 15 | office," right? |
| 16 | MR. MEAGHER: No, the document |
| 17 | speaks for itself. |
| 18 | Q. (By Mr. Roberts) Do you refer to him as |
| 19 | "the greatest mind in the office," or perhaps, second |
| 20 | to yours, the greatest mind in the office? |
| 21 | **A. I mentioned the two greatest minds. Again,** |
| 22 | **that --** |
| 23 | Q. So either he's number one or he's number |
| 24 | two? |

|  | Page 60 |
|---|---|
| 1 | **A. I believe it was Janet Beattie.** |
| 2 | Q. Is she an employee of DMS or PDC? |
| 3 | **A. My understanding is she's an employee of** |
| 4 | **PDC.** |
| 5 | Q. Okay. Who else? |
| 6 | **A. That's all I can recall.** |
| 7 | Q. Do you know when Ms. Beattie did her record |
| 8 | review? |
| 9 | **A. I believe that was in the last few months.** |
| 10 | Q. Have you seen her conclusions? |
| 11 | **A. I saw the report. I don't recall it, I** |
| 12 | **don't remember the content of that report.** |
| 13 | Q. Was the report put in the claim file? |
| 14 | **A. Yes, it was.** |
| 15 | Q. Has there been any other investigation of |
| 16 | Mr. Kearney since 2002 that you're aware of that's in |
| 17 | the claim file? |
| 18 | **A. The case is continued. It's been evaluated** |
| 19 | **since 2002.** |
| 20 | Q. But have you hired any investigators, any |
| 21 | CPAs to review financial information, any doctor to |
| 22 | review records, any surveillance companies to conduct |
| 23 | surveillance, any Internet research companies to do |
| 24 | investigations over the Internet; all those tools |

|  | Page 59 |
|---|---|
| 1 | **A. It was a reference as -- it was a joke.** |
| 2 | Q. Well, you didn't get someone subordinate to |
| 3 | you involved in Mr. Kearney's claim in October 2000, |
| 4 | right, you went to someone superior, correct? |
| 5 | **A. I believe that to be correct.** |
| 6 | MR. ROBERTS: We'll switch tapes. |
| 7 | THE VIDEOGRAPHER: Going off record |
| 8 | at 2:11 p.m. |
| 9 | (A recess was taken.) |
| 10 | THE VIDEOGRAPHER: We're back on |
| 11 | record at 2:18 p.m. |
| 12 | Q. (By Mr. Roberts) Sir, has there been any |
| 13 | surveillance of Mr. Kearney since 2002? |
| 14 | **A. I don't recall without being able to look** |
| 15 | **at the file.** |
| 16 | Q. I'm not able to look at the file either as |
| 17 | we sit here. You're not mindful of any surveillance |
| 18 | being ordered on Mr. Kearney since 2002? |
| 19 | **A. I know there's been surveillance, I just** |
| 20 | **don't know if it's gone past 2002.** |
| 21 | Q. Do you know if there's been any medical |
| 22 | record review since 2002? |
| 23 | **A. Yes.** |
| 24 | Q. By whom? |

|  | Page 61 |
|---|---|
| 1 | that you use in your trade, has any of that been done |
| 2 | since 2002? |
| 3 | **A. I don't know if it's gone past 2002 or not.** |
| 4 | **I'm not saying it has, I just don't remember.** |
| 5 | Q. Is there anything that's been done along |
| 6 | those lines that you're aware of that isn't contained |
| 7 | in the claim file since 2002? |
| 8 | **A. Can you repeat that question, please?** |
| 9 | Q. Is there anything along those lines that's |
| 10 | been conducted since 2002 that you're aware of that |
| 11 | isn't contained in the claim file? |
| 12 | **A. Not to my knowledge.** |
| 13 | Q. Any of that type of activity that's been |
| 14 | performed is in the claim file as far as you know? |
| 15 | **A. As far as I would know.** |
| 16 | Q. It should be in the claim file? |
| 17 | MR. MEAGHER: Objection to form. |
| 18 | **A. Can you say the question again?** |
| 19 | Q. If those types of activities were |
| 20 | performed, it should be in the claim file? |
| 21 | MR. MEAGHER: Objection to form. |
| 22 | **A. I don't know that. I don't know if it** |
| 23 | **would be in there or not.** |
| 24 | Q. There are occasions when you investigate a |

**16 (Pages 58 to 61)**

**Robert Mills**
**May 3, 2007**

| Page 62 |
| --- |

1  policyholder who has a pending claim for benefits and
2  you don't put the investigative report or analysis in
3  the claim file?
4      A.  Well, my understanding is this is in
5  litigation, so I don't know if anything was created.
6      Q.  You told me that your understanding of
7  litigation is that there's not a contention that
8  Mr. Kearney is not disabled, and your understanding
9  is in fact accurate.  So, my question, sir, is you
10  know that he has a continuing claim for disability
11  that's been administered by, at least in part, you
12  for four years, the last four years, right?
13          MR. MEAGHER:  I'm going to object to
14      the form.  Move to strike the speech.
15      Q.  (By Mr. Roberts)  And during that period of
16  time you also understand that there's not been a
17  claim by your company or Jefferson-Pilot in a lawsuit
18  anywhere that Mr. Kearney is not disabled, correct?
19          MR. MEAGHER:  Objection; asked and
20      answered.
21      A.  Can you repeat that question, please.
22      Q.  During this last four years you've had some
23  involvement with the Kearney claim, right?
24      A.  Yes.

| Page 63 |
| --- |

1      Q.  And during that last four years it's been
2  your understanding that the company has not contested
3  whether or not Mr. Kearney is totally disabled in a
4  lawsuit, right?
5          MR. MEAGHER:  Asked and answered.
6      A.  Yes.
7      Q.  If during that period there was some type
8  of investigation of the type you perform, asking Barb
9  Bailey to do some investigation over the Internet,
10  asking some doctor on staff or some independent
11  contractor to come in to review records, hiring an
12  IME, conducting surveillance, if any of that type of
13  activity was performed on Mr. Kearney, since there
14  isn't a lawsuit relating to his disability that
15  should go in the claim file, shouldn't it?
16          MR. MEAGHER:  Objection; calls for a
17      legal conclusion.
18      A.  I was going to say, that seems like a legal
19  interpretation of whether that stuff would go in
20  there or not.  I don't know.
21      Q.  It's your contention that when a
22  policyholder has a claim pending and there's no
23  lawsuit regarding their disability, your company may
24  investigate the policyholder and not put that

| Page 64 |
| --- |

1  investigative report in the claim file; that happens?
2          MR. MEAGHER:  Objection to form.
3      A.  If I had an investigative report, I find
4  myself putting a report in the file once I received
5  it from the company.
6      Q.  But you're not willing to say that with
7  regard to Mr. Kearney, who's had a claim pending for
8  four years without any dispute about him being
9  disabled, you're not willing to say with regard to
10  Mr. Kearney that an investigation performed on him
11  during that period would absolutely be in the claim
12  file; it's possible that there could have been an
13  investigation that didn't end up in the claim file?
14          MR. MEAGHER:  Objection; asked and
15      answered.
16      A.  Well, the first part of your question, I
17  think there has been some dispute over his
18  disability.  You know --
19      Q.  You just told me under oath that there
20  isn't.
21          MR. MEAGHER:  Excuse me, don't
22      interrupt.  Did you finish your answer, sir?
23          THE WITNESS:  No, I did not.
24          MR. MEAGHER:  Please finish your

| Page 65 |
| --- |

1      answer before he starts another one.
2      Q.  (By Mr. Roberts)  Strike my question.
3  Don't answer that question.
4          MR. MEAGHER:  Okay.
5      Q.  (By Mr. Roberts)  Didn't you just tell me
6  under oath that it's your belief that there's not
7  been a contest about whether or not Mr. Kearney's
8  disabled?
9      A.  That was my understanding through the
10  litigation proceedings.  But as far as an ongoing
11  pending claim month to month, there's questions.  We
12  understand he's got a medical condition, but we're
13  trying to evaluate his disability and eligibility for
14  benefits under the policy.
15      Q.  So you're still paying him under
16  reservation of rights; you might sue him and ask for
17  the money you already paid him in 2002, '03, '04, '05
18  and '06 because you might contend in the future he's
19  not disabled?
20          MR. MEAGHER:  Objection to form.
21      A.  I don't know if it's being paid under
22  reservation of rights at this point.
23      Q.  Okay.  Sir, are you just speculating or are
24  you telling me factual information right now?

**17 (Pages 62 to 65)**

**Robert Mills**
**May 3, 2007**

Page 66

1    MR. MEAGHER: You just asked him
2    what he's going to do in the future.
3    Q.  (By Mr. Roberts) Are you speculating or
4    are you just telling me factual information now,
5    what's the case?
6    MR. MEAGHER: Objection to form.
7    **A.  I'm answering your questions to the best of**
8    **my ability.**
9    Q.  As we sit here today are you telling me
10   that there's a question historically about whether
11   Mr. Kearney's disabled or not?
12   MR. MEAGHER: Objection; asked and
13   answered several times.
14   **A.  Yes.**
15   Q.  Okay.  So the company has never conceded
16   that he is disabled even though he's been paid
17   benefits for 14 years, is that your testimony?
18   **A.  I don't know over the periods of time.  I**
19   **know from the periods we've handled the case there's**
20   **been questions of his eligibility for the benefits.**
21   Q.  As Mr. Kearney sits here today are you able
22   to tell him, look at him and tell him, "Mr. Kearney,
23   we've never considered you disabled.  We may come
24   back to you and ask for all the money back"?  Is that

Page 67

1    the case?
2    MR. MEAGHER: Objection to form.
3    **A.  He's been considered disabled for a period**
4    **of time, but as the claim's gone on there's been**
5    **questions that have been raised concerning his**
6    **ongoing eligibility for the benefits.**
7    Q.  So what period is in doubt right now about
8    his ongoing disability?
9    **A.  Again, I don't know what time frame that**
10   **was.  You'd have to look back into the file.**
11   Q.  Is it a historical time frame but today he
12   is considered disabled?
13   **A.  I'm not really involved in the case to that**
14   **degree at this point, so I don't know.**
15   Q.  Are you able to tell me sitting here today
16   that you know of any period of time where the company
17   doubts that Mr. Kearney meets the definition of
18   disabled?
19   **A.  I don't know a specific time frame but I**
20   **know there's periods of time, and not having all the**
21   **information available to me to look at --**
22   Q.  So my client will leave here today
23   listening to your sworn testimony with the
24   understanding that, although he's received benefits

Page 68

1    in the past, the company is not committed that he is
2    totally disabled and they may come back and sue him
3    to repay those benefits, too, right?
4    MR. MEAGHER: Objection to form.
5    **A.  I know there's been questions of what his**
6    **benefit eligibility has been in the past and I don't**
7    **know if it would be the company's action to go and**
8    **request that he pay back benefits that he's already**
9    **been paid if it was later determined he wasn't**
10   **eligible for them, I don't know that, that's the**
11   **future.**
12   Q.  So sitting here under oath you can't tell
13   my client who's sitting two feet from you,
14   "Mr. Kearney, Jefferson-Pilot paid you benefits for
15   seven years, on behalf of Jefferson-Pilot we paid
16   benefits to you for an additional seven years, and
17   you can rest assured that we're not going to write
18   you a letter in the future saying, "In 2005 you
19   weren't disabled.  Pay us the money back"?
20   MR. MEAGHER: Objection to form.
21   **A.  I can't predict how a claim's going to be**
22   **handled in the future.  It's all going to be based on**
23   **what information comes --**
24   Q.  Can you look at my client in the eye right

Page 69

1    now and tell him that the money he's received because
2    he's residually or totally disabled is something that
3    he can feel confident is his forever?
4    MR. MEAGHER: I object and instruct
5    you not to respond to Counsel's direction to
6    address anything to anyone.  You answer
7    questions.
8    Q.  (By Mr. Roberts) I didn't ask you to look
9    at him.  I said could you?
10   MR. MEAGHER: Yes, you did.
11   MR. ROBERTS: Are you finished,
12   Counsel?
13   MR. MEAGHER: For now.  But I may
14   have more in the future.
15   MR. ROBERTS: How can you say what
16   will happen in the future?
17   MR. MEAGHER: Exactly.
18   Q.  (By Mr. Roberts) Sir, would you be able --
19   don't do it, but would you be able to look at my
20   client today and say "Mr. Kearney, you've received
21   168 months of benefits and we don't, as we sit here
22   today, dispute that you've been disabled for that 168
23   months"?  Are you able to do that?
24   MR. MEAGHER: Objection; asked and

**18 (Pages 66 to 69)**

**Robert Mills**
**May 3, 2007**

|                                                                                                                                                                                                                                                                                                                                                                                                                         |                                                                                                                                                                                                                                                                                                                                                                                                                 |
|---|---|

**Page 70**

1  answered.
2      A.  I've talked about that earlier, that we
3  don't have --
4      Q.  Okay.
5          MR. MEAGHER:  Did you finish your --
6          THE WITNESS:  No.
7      Q.  (By Mr. Roberts)  Go ahead.
8      A.  That we don't have all the information to
9  be able to make that decision for past periods of
10 time.
11     Q.  Okay.  So the jury is still out on whether
12 or not Mr. Kearney needs to pay back the 168 months
13 of benefits, right?
14     A.  Yes.  However, that's because we haven't
15 gotten all the information, of which, if we got that
16 information it could support his benefit eligibility.
17     Q.  Okay.  And that information again is this
18 information about his accounts back in '94?
19         MR. MEAGHER:  Objection; asked and
20 answered.
21     A.  Again, I don't know specifically --
22     Q.  I'll stick with that objection, because
23 you've already answered that question.  You've told
24 me the entirety of the information that the company

**Page 71**

1  needs to be confident that 168 months of benefits are
2  something that Mr. Kearney can feel confident is his,
3  right?  You've already answered that question your
4  counselor says.
5          MR. MEAGHER:  Objection to form.
6      A.  Can you repeat the question then?
7      Q.  Your counselor just said, and he has
8  ethical duties, he just said you've given me the
9  entire list of all the information that the company
10 needs to finally assure itself that 14 years of
11 benefits are not something that they're going to sue
12 Mr. Kearney to repay?
13     A.  I believe I talked --
14         MR. MEAGHER:  Objection to form.
15 You can answer.
16     A.  I believe I talked about certain items that
17 I could recall but --
18     Q.  He said you gave me all of them.
19     A.  But I would have to -- it would be
20 documented in the file what we've asked for.
21     Q.  What are those items again?
22         MR. MEAGHER:  Objection; asked and
23 answered.
24     A.  We can read the testimony back.

**Page 72**

1      Q.  You're going to rely on what you told me
2  before?
3      A.  Correct.
4          MR. ROBERTS:  Well, Chris, be aware
5  they're going to come after --
6          MR. MEAGHER:  I can hear your
7  attorney/client conversation, Counsel, so be
8  cautious about that.
9          MR. ROBERTS:  You have good hearing.
10         MR. MEAGHER:  You're saying it
11 pretty loudly, actually.
12     Q.  (By Mr. Roberts)  When was the last IME you
13 had performed to assure yourself that Mr. Kearney is
14 disabled, you're not paying him in error?
15     A.  I know there's one IME in the file from a
16 few years back.
17     Q.  2001, right?
18     A.  I don't remember what time frame that was.
19     Q.  Is it normal course for DMS to be paying
20 benefits to someone they don't think is disabled?
21     A.  I don't think we have the answer to that
22 question yet.
23     Q.  Is it the normal course for DMS to believe
24 someone's not medically disabled and not have an IME

**Page 73**

1  performed for six years?
2      A.  Can you repeat the question, please?
3      Q.  Strike the question.
4          Have you ever heard the phrase "managing
5  expectations"?
6      A.  I've heard it.
7      Q.  Have you ever heard it from Mr. Bonsall?
8      A.  I don't recall specifically where I've
9  heard it from.
10     Q.  You've never heard -- who is Mr. Bonsall?
11     A.  He's the president of the company, DMS.
12     Q.  And your testimony under oath is you've
13 never heard him use the phrase "manage expectations"?
14         MR. MEAGHER:  Objection; asked and
15 answered.  All his testimony's under oath, by
16 the way, Counsel.
17     A.  I don't recall if he said that specifically
18 directly to me or not, at a meeting or anything like
19 that.
20     Q.  He's been known to say that that's kind of
21 the focus of the company, managing expectations; are
22 you aware of that?
23         MR. MEAGHER:  Object to form.
24     A.  I don't recall.

**19 (Pages 70 to 73)**

**Robert Mills**
**May 3, 2007**

| Page 74 |
|---|

1    Q.  You had phone conversations with Attorney
2   Spiegel before you went to Miami to meet with him,
3   right?
4    **A.  I don't know if I specifically had a phone**
5   **conversation with him.**
6    Q.  Okay.  If he comes to court and testifies
7   that you had phone conversations, would that be
8   false?
9        MR. MEAGHER:  Objection to form.
10    **A.  When you say "you" are you meaning me only?**
11    Q.  Bob Mills had a phone conversation with
12   Attorney Spiegel.  Attorney Spiegel comes into court
13   and says "I spoke to Bob Mills in August of 2001 and
14   here's what he said."  Would he be lying about phone
15   conversations he had with you?
16        MR. MEAGHER:  Objection to form.
17    **A.  I've spoken with Attorney Spiegel in the**
18   **past on other cases --**
19    Q.  Over the phone?
20    **A.  -- so, you know, I don't know when I had**
21   **spoke with him last, when that would be.**
22    Q.  You don't know whether you spoke to him
23   over the phone about Mr. Kearney in August 2001 or
24   not?

| Page 75 |
|---|

1    **A.  I don't remember that conversation, if it**
2   **occurred.**
3    Q.  What does reservation of rights mean?
4    **A.  Reservation of rights is when we've made**
5   **payments to insureds when there's been questions**
6   **about the liability in the case, and as we continue**
7   **to evaluate and get information we extend the**
8   **payments to the insured.**
9    Q.  Have you paid Mr. Kearney under reservation
10   of rights over the last five years?
11    **A.  I don't know what that status is.**
12    Q.  How long were your two-day meetings with
13   your five-member lawyer team?  How many hours?
14    **A.  I met with John and Adam yesterday all day,**
15   **and this morning.**
16    Q.  And Bill Ellis yesterday, right?
17    **A.  I spoke with him on the phone.**
18    Q.  So a full business day plus this morning?
19    **A.  Yes.**
20    Q.  So in excess of ten hours?
21    **A.  I didn't keep track of the time.**
22    Q.  Well, a full business day yesterday plus
23   time this morning, that would be in excess of ten
24   hours.

| Page 76 |
|---|

1    **A.  Sounds fair.**
2        MR. ROBERTS:  Counsel, am I going to
3   be able to get a copy of the claims file from
4   2002 through 2007 before I leave Springfield?
5        MR. MEAGHER:  I'm not responding to
6   discovery requests here.  So, I'd like to see
7   the request and I'd have to respond to it;
8   usually you get 30 days for requests for
9   production.  If you're asking me to do
10   something while I'm prepping a witness for
11   tomorrow's depo, the answer's no.
12        MR. ROBERTS:  For the record, this
13   request has been outstanding since 2003.  I've
14   asked Mr. Meagher to, while I'm here, prepare
15   a copy for me, and his representation is he
16   will make no effort to accommodate that.
17   Thank you, Counsel.
18        MR. MEAGHER:  Well --
19        MR. ROBERTS:  Thank you, once again,
20   for your cooperation, sir.
21        MR. MEAGHER:  -- let me also respond
22   that if he hasn't received documents that have
23   been owed to him since 2003, he certainly has
24   been remiss in not moving that along through

| Page 77 |
|---|

1   the proper procedures under the rules rather
2   than waiting for the eleventh hour with his
3   client sitting here knowing that his attorney
4   has waited that long to do his job.  So I'm
5   not ready to respond and work all night to do
6   something that you could have done the past
7   four years, apparently.
8        MR KEARNEY:  My --
9        MR. ROBERTS:  You don't say a word.
10        The effort that John Meagher would
11   make to make a copy of what's probably a
12   hundred pages of material, is probably five
13   minutes, so the representation that he might
14   be up all night to do it, he knows to be not
15   genuine.  But, you know what?  That's just
16   what I'm dealing with in this case.
17        Sir, we're concluded.  Thank you.
18        MR. MEAGHER:  I have some questions.
19
20   EXAMINATION BY MR. MEAGHER:
21    Q.  Mr. Mills, how long was Bill Ellis involved
22   in your preparation for this deposition all told?
23    **A.  Ten, maybe fifteen minutes.**
24    Q.  How about Andy Cohen, how long was he

**20 (Pages 74 to 77)**

**Robert Mills**
**May 3, 2007**

| | Page 78 | | Page 80 |
|---|---|---|---|

**Page 78**

1  involved?
2  **A. Approximately a half an hour.**
3  MR. MEAGHER: That's all I have.
4  THE VIDEOGRAPHER: This concludes
5  the deposition at 2:37 p.m.
6  (Witness excused)
7  (Deposition concluded)
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**Page 80**

1  ERRATA SHEET
2
3  To be signed by deponent and returned to counsel.
4
   I, the undersigned, ROBERT MILLS, do hereby
5  certify that I have read the foregoing transcript of
   my testimony given in the matter of JEFFERSON-PILOT
6  v. KEARNEY v. DMS, and to the best of my knowledge,
   said transcript is true and accurate with the
7  exception of the corrections listed below:
8  PAGE  LINE   CORRECTION
9  _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19 _____
20 _____
21
22 DEPONENT'S SIGNATURE _____
23 DATE OF SIGNING    _____
24 5.3.07/sr

**Page 79**

1  COMMONWEALTH OF MASSACHUSETTS
2  Hampden
3
4     I, Sharon R. Roy, a Notary Public in and for the
   Commonwealth of Massachusetts, do certify that
5  pursuant to notice, there came before me on the 3rd
   day of May, 2007, at the offices of ACCURATE COURT
6  REPORTING, 1500 Main Street, Springfield,
   Massachusetts, the following named person, to wit:
7  ROBERT MILLS, who was by me duly sworn to testify to
   the truth and nothing but the truth as to his
8  knowledge touching and concerning the matters in
   controversy in this cause; that he was thereupon
9  examined upon his oath and said examination reduced
   to writing by me; and that the deposition is a true
10 record of the testimony given by the witness, to the
   best of my knowledge and ability.
11
      I further certify that I am not a relative or
12 employee of counsel or attorney for any of the
   parties, nor a relative or employee of such parties,
13 nor am I financially interested in the outcome of the
   action.
14
      Witness my hand, this 22nd day of May, 2007.
15
16
17    ----------------------
      Sharon R. Roy
18
19
20 My commission expires:
21 April 28, 2011
22
23
24

Robert Mills
May 3, 2007

1

---

**A**

**ability (2)**
66:8 79:10
**able (14)**
23:11 24:19 29:11 37:2 39:1
  59:14,16 66:21 67:15 69:18
  69:19,23 70:9 76:3
**absolutely (1)**
64:11
**accept (2)**
6:6,7
**accommodate (1)**
76:16
**accounts (1)**
70:18
**accurate (5)**
1:20 46:1 62:9 79:5 80:6
**acquaintances (1)**
37:18
**action (3)**
21:13 68:7 79:13
**activities (1)**
61:19
**activity (2)**
61:13 63:13
**Adam (4)**
2:17 9:1 32:15 75:14
**add (1)**
57:7
**additional (1)**
68:16
**address (8)**
5:9,14 6:4,12,15,18 7:14 69:6
**administered (1)**
62:11
**Administration (1)**
42:19
**admission (1)**
43:21
**advice (2)**
13:20 53:9
**affirmed (3)**
44:14 46:16,24

**afternoon (1)**
24:20
**ago (14)**
4:12,12 11:2 25:23 26:22
  30:19 37:19 39:21 41:7
  43:13 44:23 45:12 50:8
  55:18
**agree (1)**
20:9
**agreeing (1)**
23:4
**ahead (3)**
4:14 15:17 70:7
**Albazac (1)**
30:16
**allow (1)**
12:9
**Alright (1)**
56:18
**amount (2)**
11:5 36:20
**amounts (1)**
36:9
**Amy (1)**
36:1
**analysis (2)**
34:3 62:2
**Anderson (2)**
47:13,15
**Andy (2)**
9:11 77:24
**and/or (1)**
17:18
**answer (26)**
7:10,16 12:5,9,12 13:15,21
  17:1,3 18:6 19:19 22:7
  26:12,17 27:4 34:10 38:15
  41:16 45:18 54:8 64:22
  65:1,3 69:6 71:15 72:21
**answered (16)**
16:23 18:5 26:17 38:15 52:4
  53:14 62:20 63:5 64:15
  66:13 70:1,20,23 71:3,23

73:15
**answering (5)**
7:7 13:16 14:17 17:11 66:7
**answer's (1)**
76:11
**anybody (8)**
6:10 9:2 15:20 25:8 30:12
  35:24 36:2 38:11
**apparently (1)**
77:7
**appropriate (1)**
6:7
**appropriately (3)**
38:20,22 39:16
**Approximately (1)**
78:2
**April (1)**
79:21
**aside (1)**
36:19
**asked (26)**
14:20 16:22,24 18:4 19:22
  23:14 25:10 26:16 29:14
  37:21 38:14 43:19 50:2
  52:3 53:13 62:19 63:5
  64:14 66:1,12 69:24 70:19
  71:20,22 73:14 76:14
**asking (13)**
14:13,24 17:12 19:22,23 22:9
  23:7 29:7,10 31:14 63:8,10
  76:9
**assist (1)**
9:14
**assistant (1)**
47:11
**assume (1)**
47:14
**assumes (5)**
15:13 18:5 24:13 25:3 46:9
**assure (3)**
44:4 71:10 72:13
**assured (1)**
68:17

**Robert Mills**
**May 3, 2007**

2

**attached (6)**
3:10,13 49:11,17 55:22 56:20
**Attendance (1)**
2:15
**Attending (1)**
28:11
**attention (2)**
12:1 46:4
**attorney (6)**
74:1,12,12,17 77:3 79:12
**attorneys (5)**
8:20,21,22,24 40:21
**attorney-client (4)**
14:4,5 20:2,5
**attorney/client (1)**
72:7
**August (2)**
74:13,23
**available (3)**
44:3,4 67:21
**aware (5)**
60:16 61:6,10 72:4 73:22

---
**B**

**B (2)**
49:14 56:22
**back (16)**
9:24 38:5 44:18,22 47:10
    59:10 66:24,24 67:10 68:2
    68:8,19 70:12,18 71:24
    72:16
**Bailey (1)**
63:9
**bantering (1)**
23:20
**Barb (1)**
63:8
**BARRETT (1)**
1:3
**based (4)**
18:1,15 36:3 68:22
**Bates (1)**
45:14

**Beattie (2)**
60:1,7
**began (3)**
30:21 31:14,16
**beginning (4)**
16:16,18 42:9,15
**behalf (1)**
68:15
**belief (1)**
65:6
**believe (21)**
11:20 19:24 20:1 21:3 22:13
    30:1 31:17 35:20 48:18,22
    49:9 50:13 51:20,23 52:5
    59:5 60:1,9 71:13,16 72:23
**believed (1)**
10:16
**benefit (2)**
68:6 70:16
**benefits (19)**
29:8 36:10,21 38:8 62:1
    65:14 66:17,20 67:6,24
    68:3,8,14,16 69:21 70:13
    71:1,11 72:20
**best (4)**
35:1 66:7 79:10 80:6
**beyond (1)**
5:24
**Bill (7)**
9:6,6 16:6 32:15 49:11 75:16
    77:21
**Biscayne (1)**
2:11
**blank (1)**
45:15
**block (7)**
26:23 42:10,23 48:15,17,20
    49:8
**blocks (1)**
48:17
**Bob (2)**
74:11,13
**Bonsall (2)**

73:7,10
**bottom (1)**
48:12
**Boulevard (1)**
2:11
**BOWEN (1)**
2:10
**briefly (1)**
19:2
**brightest (2)**
48:3,4
**Brillman (1)**
20:24
**bring (1)**
53:10
**brought (2)**
11:24 49:6
**business (7)**
24:23 37:18 42:19 48:6,15
    75:18,22

---
**C**

**C (2)**
2:1 4:1
**Callow (1)**
36:1
**calls (1)**
63:16
**care (1)**
34:7
**case (29)**
1:3 6:15 22:20 25:17 26:19
    26:20 28:18 29:11,14,15
    32:19 33:22 36:3 38:21,23
    40:7 42:12 48:24 53:2,4
    56:2 57:8 60:18 66:5,19
    67:1,13 75:6 77:16
**cases (5)**
20:18,22 21:16 43:2 74:18
**category (1)**
12:10
**cause (1)**
79:8

Robert Mills
May 3, 2007

3

cautious (1)
72:8
Center (2)
2:5,10
certain (1)
71:16
certainly (2)
4:18 76:23
certify (3)
79:4,11 80:5
challenged (1)
35:5
change (2)
23:14 27:22
checks (1)
28:19
children (2)
7:20,24
Chris (1)
72:4
Christopher (5)
1:9 2:3,16 3:11,14
Cincinnati (1)
2:6
Civil (1)
1:19
claim (82)
4:19 16:2 18:2,17 22:17 24:8
25:15,24 26:7,15 27:11,13
27:15,17 28:5,5,13,20 29:2
29:10 31:7,14 32:6,11,14
32:17,22 33:14,19 35:4,9
35:18,20 36:12,19 38:4
39:10,16,21 41:14 42:4
43:17 48:21 49:7 50:10,14
50:17 52:8,11,13,16,17,23
53:10,10,11 54:5,13 55:14
57:13,19 58:2 59:3 60:13
60:17 61:7,11,14,16,20
62:1,3,10,17,23 63:15,22
64:1,7,11,13 65:11
claiming (1)
33:5

claims (28)
10:3 21:21,22 22:1,12,23
23:2 26:23 41:20 42:7,10
42:22,24 43:4,12 47:7,16
47:22 48:3,4,13 49:3 56:24
57:2,16,22 58:9 76:3
claim's (2)
67:4 68:21
clarify (1)
35:16
client (6)
28:22 67:22 68:13,24 69:20
77:3
coaching (1)
6:1
Cohen (2)
9:11 77:24
college (1)
6:20
come (8)
36:23 37:23 38:12 50:12
63:11 66:23 68:2 72:5
comes (4)
33:17 68:23 74:6,12
comfortable (4)
5:10 7:13 46:10 55:9
commencing (1)
1:21
commented (1)
46:15
comments (1)
45:18
commission (1)
79:20
committed (1)
68:1
Commonwealth (2)
79:1,4
communication (5)
14:4,6 17:8 41:8 42:3
communications (3)
41:13,18 42:2
companies (2)

60:22,23
company (25)
29:7,8 33:4 35:5,9,17 36:23
37:1 47:15,16,18,20 48:2
56:3 62:17 63:2,23 64:5
66:15 67:16 68:1 70:24
71:9 73:11,21
company's (1)
68:7
complete (4)
49:14,24 50:3,4
computer (3)
40:13,19 41:2
conceded (1)
66:15
concerning (3)
37:17 67:5 79:8
concerns (1)
4:18
concluded (2)
77:17 78:7
concludes (1)
78:4
conclusion (3)
36:24 38:12 63:17
conclusions (1)
60:10
condition (1)
65:12
conditions (1)
7:18
conduct (2)
4:15 60:22
conducted (1)
61:10
conducting (1)
63:12
confident (3)
69:3 71:1,2
confidential (3)
4:18,22 5:16
confidentiality (3)
4:10,14 5:19

**Robert Mills**
**May 3, 2007**

4

confused (1)
54:23
Connecticut (1)
8:13
consider (1)
6:16
considered (4)
48:2 66:23 67:3,12
consistent (1)
44:15
contained (3)
56:5 61:6,11
contend (2)
22:13 65:18
contended (1)
35:10
content (2)
51:16 60:12
contention (2)
62:7 63:21
contest (1)
65:7
contested (1)
63:2
continuance (2)
28:24 31:11
Continuation (1)
28:10
continue (4)
28:15 29:8,11 75:6
continued (3)
1:16 48:24 60:18
continues (1)
32:19
continuing (6)
32:11,14,17 33:12 43:8 62:10
contractor (1)
63:11
control (3)
24:2,3,4
controversy (1)
79:8
conversation (4)

72:7 74:5,11 75:1
conversations (6)
37:17 41:21 53:2 74:1,7,15
cooperation (1)
76:20
copied (2)
24:10,19
copies (5)
23:12,16 49:13,19,20
copy (13)
24:16 41:1,3 45:1 46:1 49:11
49:12,16,16 55:21 76:3,15
77:11
copyable (1)
23:12
correct (25)
13:8 19:9 21:9 25:6 26:4,18
34:13 35:22 36:12,24 38:16
39:4 42:4,5,11 49:5,18 53:5
55:1 58:3,6 59:4,5 62:18
72:3
CORRECTION (1)
80:8
corrections (1)
80:7
correspond (1)
13:18
correspondence (35)
10:19,23 12:3,11,17 13:3,7,9
13:12,23 14:14 15:5,7,10
15:19,23 16:2,4,13 17:7,8,9
17:12,13,17,23 18:2,3,13,17
18:18,20 19:6,24 40:23
counsel (23)
4:8 5:15,23 12:7,14 13:17,19
13:20 19:14,17,20 21:12,15
22:22 45:2 53:8 69:12 72:7
73:16 76:2,17 79:12 80:3
counselor (3)
16:5 71:4,7
Counsel's (2)
45:18 69:5
couple (7)

11:2 31:17,19,23 40:8,11
51:23
course (2)
72:19,23
court (8)
1:1,20 4:9 18:10 35:9 74:6
74:12 79:5
cover (6)
9:20,20 10:3,3 19:10,11
covered (1)
16:12
covers (1)
22:2
CPAs (1)
60:21
create (1)
56:20
created (2)
49:11 62:5
C-1-02-479 (1)
1:3

——— D ———

D (2)
3:1 4:1
date (9)
16:16 25:1 26:2 50:5,21 51:2
51:4,14 80:23
dated (6)
3:10,11,13,13 45:16 55:22
day (14)
17:21 18:1,11,16,23 31:14
41:13 44:11 54:24 75:14,18
75:22 79:5,14
days (7)
4:12 11:2 22:17,24 39:21
51:23 76:8
dealing (1)
77:16
dealt (1)
21:19
decided (2)
23:22,24

**Robert Mills**
**May 3, 2007**

5

decision (1)
70:9
Defendant (2)
1:10,13
deficient (2)
30:5,9
define (1)
17:13
definition (5)
14:5,7 17:9,18 67:17
degree (3)
26:9 29:15 67:14
demanding (1)
28:23
Dempsey (6)
9:6 16:6,8 17:7,24 18:14
department (2)
29:16,17
depo (1)
76:11
deponent (2)
4:4 80:3
DEPONENT'S (1)
80:22
deposed (1)
20:24
deposes (1)
4:6
deposition (27)
1:16 4:17,22 8:15,18 9:15,17
10:2 13:6 19:10 21:2,4 23:6
25:22,23 26:4,6,21 42:22
43:3 44:10 46:16 49:2
77:22 78:5,7 79:9
depositions (1)
20:15
describe (1)
8:17
designating (2)
4:17,21
desk (1)
49:13
detail (1)

11:8
determination (1)
37:3
determine (1)
27:15
determined (1)
68:9
difference (1)
34:4
different (1)
20:4
direct (1)
19:18
directed (1)
4:10
direction (1)
69:5
directly (1)
73:18
director (5)
42:10,22 48:23 49:3,7
disability (17)
1:12 2:9 28:10,24 31:11
32:11,14,18,22 33:12 48:4
62:10 63:14,23 64:18 65:13
67:8
disabled (27)
33:6 35:6,6,10,19 36:4,24
38:12 62:8,18 63:3 64:9
65:8,19 66:11,16,23 67:3
67:12,18 68:2,19 69:2,22
72:14,20,24
disagreeing (1)
23:4
discomfort (3)
5:18 6:9,13
discovery (6)
22:8,9,12 46:6,7 76:6
discuss (1)
56:21
discussed (1)
13:17
discussion (1)

53:3
dispute (4)
36:9 64:8,17 69:22
DISTRICT (2)
1:1,1
Ditmar (1)
43:18
DIVISION (1)
1:2
DMS (10)
21:22 35:9 44:4 46:6 48:15
60:2 72:19,23 73:11 80:6
DMSESUPP (1)
45:14
doctor (2)
60:21 63:10
document (16)
10:13 14:21,23 15:1,4 22:23
39:23 41:23 44:1,8,22
45:11,14 46:6 53:3 58:16
documented (3)
37:5 52:20 71:20
documents (29)
8:19 10:6,7,9,15 11:21,24
12:3,6,9,20,23 13:5,7,13,16
14:9,19 18:22 19:13,22
20:1 23:6 40:20 44:3,4
45:10 50:5 76:22
doing (2)
27:7 30:18
Dolinsky (2)
20:19 21:2
doubt (1)
67:7
doubts (1)
67:17
draft (4)
4:11 51:7 52:1,1
drafted (2)
47:4 56:2
drafting (1)
54:2
due (1)

**Robert Mills**
**May 3, 2007**

6

6:4
**duly (2)**
4:5 79:7
**duties (1)**
71:8
**dynamics (1)**
28:7
**D-O-L-I-N-S-K-Y (1)**
20:21

**E**

**E (6)**
2:1,1,12 3:1 4:1,1
**earlier (6)**
19:4 25:21 35:14 38:16
  46:15 70:2
**early (1)**
42:23
**effort (2)**
76:16 77:10
**either (4)**
23:4 36:18 58:23 59:16
**electronic (3)**
40:22 41:1,3
**eleventh (1)**
77:2
**eligibility (5)**
65:13 66:20 67:6 68:6 70:16
**eligible (1)**
68:10
**Ellis (5)**
9:6 21:18 32:15 75:16 77:21
**employee (4)**
60:2,3 79:12,12
**ends (1)**
42:3
**entered (2)**
4:16 5:17
**entire (4)**
36:11,17 39:21 71:9
**entirety (3)**
10:6 54:13 70:24
**entitled (1)**

23:1
**equitable (6)**
42:10,23 48:18,19 49:3,7
**ERRATA (1)**
80:1
**error (1)**
72:14
**ESQ (2)**
2:7,12
**ethical (1)**
71:8
**evaluate (5)**
29:11 33:14 39:16 65:13
  75:7
**evaluated (2)**
39:10 60:18
**evaluating (1)**
33:18
**evaluation (2)**
33:22 49:6
**events (1)**
49:23
**evidence (6)**
15:14,16 18:5 24:14 25:3
  46:9
**evolved (2)**
50:19 52:2
**exact (4)**
51:4,17,18 53:23
**exactly (2)**
53:9 69:17
**examination (4)**
3:2 5:6 77:20 79:9
**examined (1)**
79:9
**exception (1)**
80:7
**excess (2)**
75:20,23
**exchanged (3)**
13:13 16:7,10
**excuse (5)**
13:11 14:11 48:8 54:20

64:21
**excused (1)**
78:6
**Exhibit (3)**
44:20,21 55:19
**EXHIBITS (1)**
3:9
**exists (1)**
24:9
**expectations (3)**
73:5,13,21
**expires (1)**
79:20
**explain (2)**
6:8 56:21
**explanation (1)**
44:24
**extend (1)**
75:7
**extent (1)**
7:15
**eye (1)**
68:24
**e-mail (16)**
3:10,13 16:13 45:21 46:1,11
  49:10,17 52:6 54:14,18
  55:21,22 56:16,16 57:24
**e-mails (2)**
16:10 17:18
**e-mail's (1)**
55:22

**F**

**F (1)**
3:14
**fact (7)**
22:21 36:8 45:15 52:1,10
  54:22 62:9
**facts (6)**
15:14,15 18:5 24:13 25:3
  46:9
**factual (2)**
65:24 66:4

Robert Mills
May 3, 2007

fair (1)
76:1
false (2)
57:16 74:8
familiar (1)
22:14
familiarity (1)
29:15
far (7)
7:17 12:24 13:2 48:4 61:14
  61:15 65:10
fashion (1)
43:5
faxes (1)
17:19
federal (2)
1:19 23:8
feel (3)
7:13 69:3 71:2
feet (1)
68:13
fifteen (1)
77:23
Fifth (1)
2:5
file (67)
10:3,4,8,11,18 16:2 18:3,17
  21:21,22 22:1,12,17,23
  23:2 24:8 26:15 27:11,15
  27:17 28:12 37:6 39:18,21
  40:3 41:10,14,20,24 42:4
  49:13,14,19,20,24 50:3,5,10
  50:15,17,24 51:11,23 52:13
  52:17,23 53:4,11 59:15,16
  60:13,17 61:7,11,14,16,20
  62:3 63:15 64:1,4,12,13
  67:10 71:20 72:15 76:3
filed (8)
12:21,23 26:2 28:6 35:17
  38:5 45:7,8
files (4)
10:22 27:1,13 40:22
filing (1)

4:14
finalized (1)
51:3
finally (1)
71:10
finances (1)
37:10
financial (5)
37:11,15,16 38:18 60:21
financially (1)
79:13
find (1)
64:3
finish (4)
14:12 64:22,24 70:5
finished (1)
69:11
first (5)
4:5 25:11 51:21 52:11 64:16
five (17)
9:14,16 11:22 12:18,21,24
  15:6 18:23 23:2 28:22
  34:17 36:1 40:14 42:24
  43:11 75:10 77:12
five-lawyer (5)
13:6 15:12 17:6,22 18:12
five-member (1)
75:13
FL (1)
2:11
Florida (3)
20:6,7 21:11
focus (2)
10:9 73:21
focusing (1)
10:10
follow (1)
30:10
following (2)
4:19 79:6
follows (1)
4:6
foregoing (1)

80:5
forever (1)
69:3
Forget (1)
26:6
form (32)
19:7 24:11,21 27:3,12 29:9
  31:12 37:13 40:16 41:15
  43:23 44:7 46:8 50:18 51:9
  52:18 54:7 57:23 61:17,21
  62:14 64:2 65:20 66:6 67:2
  68:4,20 71:5,14 73:23 74:9
  74:16
forms (7)
28:11,13,15,20 29:2,10 32:2
Formus (3)
2:17 9:1 32:15
founder (1)
47:15
founders (1)
47:20
four (10)
39:24 42:23 43:11 45:12
  62:12,12,22 63:1 64:8 77:7
Fourteen (1)
37:19
four-year (1)
44:24
frame (6)
46:18 53:20 67:9,11,19 72:18
frames (1)
37:20
full (3)
39:7 75:18,22
fully (1)
54:5
further (2)
55:6 79:11
future (7)
65:18 66:2 68:11,18,22 69:14
  69:16
_____
G

Robert Mills
May 3, 2007

8

**G (1)**
4:1
**genuine (1)**
77:15
**Geri (1)**
16:5
**getting (6)**
33:9 34:18 36:8,10 53:8,8
**ghost (1)**
48:9
**ghostwritten (1)**
56:5
**ghostwrote (1)**
48:7
**give (13)**
5:14 6:3,11,14 7:2,5 23:22
  29:7 30:6 31:15 33:23
  49:24 52:13
**given (5)**
20:14 30:1 71:8 79:10 80:5
**giving (4)**
5:18 7:13 34:5,9
**glanced (1)**
19:1
**glean (1)**
34:13
**go (10)**
6:20 15:17 17:18 22:8 30:9
  48:4 63:15,19 68:7 70:7
**god (7)**
48:3,13 56:24 57:2,16,22
  58:9
**going (28)**
4:13,15 5:16,22 7:9 10:22
  12:4,8 13:14,20 19:18 22:6
  25:2 34:6 39:6 45:17 55:14
  59:7 62:13 63:18 66:2
  68:17,21,22 71:11 72:1,5
  76:2
**good (1)**
72:9
**gotten (5)**
33:15 37:11,16 53:21 70:15

**grab (1)**
11:11
**graduate (1)**
6:22
**GRAYDON (1)**
2:4
**greatest (6)**
56:19,23 58:14,19,20,21
**guess (2)**
17:10 35:16
**guidance (1)**
33:3
**guy (1)**
48:5
**guys (1)**
39:11

---

**H**

**half (1)**
78:2
**Hampden (1)**
79:2
**hand (3)**
19:4 44:21 79:14
**handed (1)**
55:20
**handing (1)**
45:3
**handled (2)**
66:19 68:22
**handling (1)**
27:18
**happen (4)**
52:16,19 58:12 69:16
**happened (3)**
36:6 53:16 55:17
**happens (1)**
64:1
**hard (1)**
23:16
**Haven (1)**
6:21
**head (3)**

2:4 47:16,22
**hear (1)**
72:6
**heard (8)**
4:13 25:11 73:4,6,7,9,10,13
**hearing (1)**
72:9
**Hey (2)**
23:11 30:6
**hired (1)**
60:20
**hiring (1)**
63:11
**historical (1)**
67:11
**historically (1)**
66:10
**history (1)**
36:3
**Hogan (1)**
1:3
**hopefully (1)**
41:12
**hour (3)**
23:22 77:2 78:2
**hours (3)**
75:13,20,24
**Hughes (33)**
3:10,11,13 46:2,11 47:4,6,9
  48:2,9,11,14 49:6,10 51:8,8
  51:19 52:7,11,22 53:8,8,9
  53:18 54:3,12 55:23 56:5
  56:14,24 57:1,12,18
**Hughes's (1)**
47:9
**hundred (1)**
77:12

---

**I**

**idea (2)**
24:22 52:9
**identifies (2)**
14:8,22

Robert Mills
May 3, 2007

9

**identify (4)**
13:16 14:14,21 15:1
**identifying (1)**
14:18
**identity (1)**
15:3
**IME (4)**
63:12 72:12,15,24
**immediately (1)**
53:22
**include (1)**
17:19
**included (1)**
52:17
**independent (1)**
63:10
**indication (1)**
52:13
**information (61)**
5:11,12,19 6:10,16 7:4,12
  11:10 28:24 29:2,7,20,21
  29:23,24 30:1,2,13 33:9,12
  33:15,17,20,21 34:1,5,5,9
  34:12,14,16,18,20,21,24
  37:2,5,9,11 38:19,20 39:1,2
  39:5,8,9,15,17 60:21 65:24
  66:4 67:21 68:23 70:8,15
  70:16,17,18,24 71:9 75:7
**initially (1)**
47:3
**INS (1)**
1:6
**instruct (5)**
7:1 12:5 13:15 22:7 69:4
**instructed (2)**
19:16,23
**instructing (2)**
6:3 13:22
**instruction (3)**
20:10 31:1,4
**instructions (1)**
19:20
**insured (1)**

75:8
**insureds (1)**
75:5
**interest (3)**
10:13,16 11:11
**interested (1)**
79:13
**Internet (3)**
60:23,24 63:9
**interpretation (1)**
63:19
**interrogatory (1)**
43:21
**interrupt (1)**
64:22
**interrupting (1)**
15:2
**invasion (1)**
20:2
**investigate (2)**
61:24 63:24
**investigation (5)**
60:15 63:8,9 64:10,13
**investigations (2)**
11:15 60:24
**investigative (3)**
62:2 64:1,3
**investigators (1)**
60:20
**invited (2)**
50:1 52:7
**involved (35)**
9:16 22:20 25:17 26:9,10,19
  27:21,22 28:18 31:18,21
  32:6,10,13,17 33:2 36:12
  40:4,5,8,10 47:6,7 52:7
  53:18,21 57:13,15,18,21
  58:8 59:3 67:13 77:21 78:1
**involvement (10)**
31:13,16,23 34:3 36:18 38:4
  42:6 48:22 52:11 62:23
**items (2)**
71:16,21

**iterations (1)**
54:17

**J**

**Jackie (2)**
30:16 40:6
**Janet (1)**
60:1
**January (6)**
25:24 26:8,24 49:3 53:22
  54:22
**Jeff (1)**
36:1
**Jefferson-Pilot (11)**
1:6 38:5 41:6,9 42:2,7,24
  62:17 68:14,15 80:5
**Jeffferson-Pilot (1)**
41:19
**job (1)**
77:4
**John (7)**
2:12 9:1 32:15 47:13,15
  75:14 77:10
**Johnson (5)**
16:6,7 17:7,23 18:14
**joined (1)**
47:23
**joke (5)**
57:3,5 58:1,11 59:1
**JP (4)**
26:23 35:10 44:3 48:20
**judge (3)**
1:3,3 4:16
**judgment (1)**
32:21
**June (1)**
45:9
**jury (1)**
70:11

**K**

**Kearney (77)**
1:9 2:3,16 3:11,14 11:16

Robert Mills
May 3, 2007

10

13:9,13 15:8,11,20,24
21:22 22:1 25:24 26:7 28:9
28:15 29:13,19 30:13 31:3
31:6,19 32:2 33:5,10 34:2,9
34:19 35:5,10,18 36:4,8,19
37:12 39:5 41:6,9,19 42:2
44:14 45:7,9 46:16,24 50:6
50:13,16 51:21 55:7 56:4
57:8 59:13,18 60:16 62:8
62:18,23 63:3,13 64:7,10
66:21,22 67:17 68:14 69:20
70:12 71:2,12 72:13 74:23
75:9 77:8 80:6
**Kearney's (16)**
4:19 25:15 27:16 32:6,11,14
32:17,21 38:4 43:5,17
49:22 55:11 59:3 65:7
66:11
**keep (4)**
6:17,18 28:10 75:21
**kept (1)**
48:24
**kind (2)**
21:22 73:20
**kindly (1)**
18:8
**know (104)**
4:11 5:21 11:4 12:24 13:2
16:14 18:19 20:6 21:10
24:17,24 26:12,14 27:6
28:7 29:3,21 30:20,20
31:10,13,16,22 32:4,9,16,24
33:2,4,6,8,20,24 34:7,10
35:4,5,8,15 38:3,11 39:17
40:2 41:8 43:7,8 44:23
47:14 49:14 50:4,7,9,10,21
50:21,23 51:1,4,16,22
52:10 53:15,17,23 54:6,9
54:12,16,17 56:10,20 57:8
59:19,20,21 60:7 61:3,14
61:15,22,22 62:5,10 63:20
64:18 65:21 66:18,19 67:9
67:14,16,19,20 68:5,7,10

70:21 72:15 74:4,20,20,22
75:11 77:15
**knowing (1)**
77:3
**knowledge (8)**
7:19 16:3 25:4 35:12 61:12
79:8,10 80:6
**knowledgeable (1)**
48:5
**known (1)**
73:20
**knows (1)**
77:14

---
**L**
---

**L (1)**
1:9
**lapse (1)**
44:24
**laptops (1)**
40:21
**Laura (1)**
8:3
**lawsuit (25)**
11:19 12:21,24 21:6 22:5
26:2 28:3,6,8 32:23 33:1,13
33:18 34:2,6,8,13,16 35:18
45:8,8 62:17 63:4,14,23
**lawyer (1)**
75:13
**lawyers (18)**
9:14,16 11:22 12:18,21 13:1
15:6 18:24 32:7,10,13,16
33:2,10 34:18 36:1 40:15
43:20
**leading (1)**
49:23
**leave (3)**
24:20 67:22 76:4
**left (3)**
23:22 49:12,15
**legal (4)**
29:16,17 63:17,18

**letter (35)**
3:10,13 41:2,3 45:24 47:3
48:7,9 49:11 50:13,16,19
50:20,22 51:2,2,6,7,11,12
51:14,15,17,18,21 52:2
54:1,3,4,10,20,23 55:6
57:16 68:18
**letters (18)**
10:17 16:7 17:17 29:1,4,6,10
29:13 30:20,24 31:3,18,22
49:21,22 56:2,4,19
**let's (4)**
17:19 31:15 39:14 54:23
**liability (1)**
75:6
**life (2)**
1:6 48:19
**limited (1)**
39:24
**LINE (1)**
80:8
**lines (2)**
61:6,9
**list (1)**
71:9
**listed (1)**
80:7
**listening (1)**
67:23
**litigation (9)**
6:5 32:20 33:1 35:2,4 43:19
62:5,7 65:10
**LLP (2)**
2:4,10
**long (11)**
24:15 27:5 40:7,9 50:8 52:6
55:18 75:12 77:4,21,24
**longer (1)**
33:5
**look (13)**
39:11 41:10 45:13 54:10
55:9 59:14,16 66:22 67:10
67:21 68:24 69:8,19

Robert Mills
May 3, 2007

**looked (4)**
19:1 40:2,20 50:9
**looking (4)**
10:17,21 45:23 51:22
**lot (1)**
23:7
**loudly (1)**
72:11
**lying (1)**
74:14

**M**

**Magistrate (1)**
1:3
**Main (2)**
1:20 79:6
**maintain (1)**
29:14
**maintained (1)**
26:1
**making (1)**
24:23
**manage (1)**
73:13
**MANAGEMENT (2)**
1:12 2:9
**managing (2)**
73:4,21
**marked (2)**
44:20 55:19
**married (1)**
7:22
**Massachusetts (5)**
1:21 21:5 79:1,4,6
**MassMutual (2)**
8:7,10
**Master's (1)**
42:19
**material (1)**
77:12
**matter (2)**
21:19 80:5
**matters (1)**

79:8
**MBA (1)**
42:17
**McSherry (1)**
36:1
**Meagher (108)**
2:12 3:5 4:8,24 5:21 6:2 7:1
7:9 9:1 12:4,12,15 13:14
14:1,7,11,15,16,17,22 15:2
15:13 16:22 17:2 18:4 19:7
19:18 20:3,7,10 21:12,15
22:6 23:3,13,20 24:1,6,11
24:13,21 25:2,13 26:16
27:3,12 29:9 37:13 38:14
40:16 41:15 43:23 44:7
45:1,5,17 46:8 50:18 51:9
52:3,18 53:13 54:7 55:2
57:23 58:16 61:17,21 62:13
62:19 63:5,16 64:2,14,21
64:24 65:4,20 66:1,6,12
67:2 68:4,20 69:4,10,13,17
69:24 70:5,19 71:5,14,22
72:6,10 73:14,23 74:9,16
76:5,14,18,21 77:10,18,20
78:3
**mean (10)**
24:22 25:20 26:14 34:1
39:22 40:22 41:23 42:3
52:21 75:3
**meaning (2)**
32:24 74:10
**measure (2)**
27:14,24
**medical (7)**
7:18 11:7,8,9 34:21 59:21
65:12
**medically (1)**
72:24
**meet (3)**
8:8,21 74:2
**meeting (6)**
12:18 15:11 17:22 18:12,23
73:18

**meetings (6)**
9:3 11:21 15:21 52:22 53:7
75:12
**meets (1)**
67:17
**memory (3)**
37:23 47:11 50:23
**mentioned (2)**
43:16 58:21
**met (5)**
8:9,19,22 20:16 75:14
**Miami (3)**
2:10,11 74:2
**MICHAEL (1)**
2:7
**mid (1)**
47:23
**Mills (17)**
1:16 3:10,13,14 4:4 5:8 18:1
18:15 28:14,21,23 31:15
74:11,13 77:21 79:7 80:4
**mind (4)**
7:11 58:14,19,20
**mindful (3)**
51:12 55:5 59:17
**minds (3)**
56:19,23 58:21
**mine (1)**
55:3
**minutes (3)**
17:12 77:13,23
**missing (3)**
30:6 38:18 39:15
**Mm-hmm (1)**
29:18
**moment (1)**
36:20
**Monday (1)**
19:12
**money (4)**
65:17 66:24 68:19 69:1
**month (7)**
39:11,11 45:12,13 58:13

**Robert Mills**
**May 3, 2007**

12

65:11,11
**monthly (2)**
36:10,20
**months (12)**
30:19 40:1,12 44:23 52:22,22
52:23 60:9 69:21,23 70:12
71:1
**morning (3)**
75:15,18,23
**move (7)**
19:8 25:13 37:14 41:16
45:17 57:10 62:14
**moving (1)**
76:24
**mroberts@graydon.com (1)**
2:7
**multiple (3)**
21:16 28:22 44:13
**Mutual (1)**
8:13

**N**

**N (3)**
2:1 3:1 4:1
**name (6)**
5:7 8:2 20:19 46:3 49:12
51:11
**named (1)**
79:6
**nature (4)**
6:4 14:23 15:1 34:22
**necessarily (12)**
28:19 30:8 31:22 33:21
39:22 41:17,23 52:15,17,19
52:24 53:12
**necessary (1)**
37:2
**need (5)**
17:10 30:11 34:3 39:2,8
**needs (3)**
70:12 71:1,10
**neither (1)**
38:11

**never (10)**
24:17,22 25:10 36:6,23 58:1
66:15,23 73:10,13
**new (3)**
6:21 43:15,16
**night (2)**
77:5,14
**Nobody's (1)**
25:5
**normal (2)**
72:19,23
**Notary (3)**
1:17 4:5 79:4
**notice (2)**
30:5 79:5
**notwithstanding (2)**
23:1 45:11
**November (1)**
55:22
**number (6)**
6:24 7:2,6,14 58:23,23
**numbered (1)**
45:14

**O**

**O (1)**
4:1
**oath (10)**
19:4,5 31:20 35:3 64:19 65:6
68:12 73:12,15 79:9
**object (10)**
5:22,23 7:9 13:15 22:7,19
25:2 62:13 69:4 73:23
**objection (46)**
14:19 15:13 16:22 18:4 19:7
24:11,21 26:16 27:3,12
29:9 37:13 38:14 40:16
41:15 43:23 44:7 46:8
50:18 51:9 52:3,18 53:13
54:7 57:23 61:17,21 62:19
63:16 64:2,14 65:20 66:6
66:12 67:2 68:4,20 69:24
70:19,22 71:5,14,22 73:14

74:9,16
**obviously (2)**
51:5 57:4
**occasions (1)**
61:24
**occurred (6)**
16:15 46:20,20 53:24 54:16
75:2
**occurrence (1)**
56:9
**October (9)**
50:20 51:6,10 54:1,5 55:6,12
56:3 59:3
**office (4)**
56:19 58:15,19,20
**offices (2)**
1:19 79:5
**OH (1)**
2:6
**Ohio (2)**
1:1 20:6
**okay (23)**
10:19 17:17,19 26:3 27:14,20
28:4 29:12 32:5 34:17
35:23 36:17 45:24 46:22
48:14 60:5 65:4,23 66:15
70:4,11,17 74:6
**once (3)**
19:21 64:4 76:19
**one-time (2)**
58:12,13
**ongoing (3)**
65:10 67:6,8
**ongoings (1)**
34:8
**order (7)**
4:10,15,16,20 5:17,20 20:13
**ordered (3)**
44:13,13 59:18
**outcome (1)**
79:13
**outside (1)**
16:5

Robert Mills
May 3, 2007

13

outstanding (1)
76:13
owed (1)
76:23
owner (1)
47:16
owners (1)
47:18

**P**

P (3)
2:1,1 4:1
package (1)
19:13
page (4)
3:2,9 45:15 80:8
pages (1)
77:12
paid (10)
36:8,10 43:8 65:17,21 66:16
68:9,14,15 75:9
paper (1)
19:3
part (4)
13:11 40:3 62:11 64:16
participate (2)
9:2,7
participated (1)
9:5
participation (1)
38:4
parties (3)
7:4 79:12,12
parts (1)
10:21
party (1)
22:16
passed (2)
23:23 56:14
pay (7)
57:19,20 58:2,5 68:8,19
70:12
paying (3)

65:15 72:14,19
payment (3)
29:8 32:2 36:9
payments (5)
36:10 55:7,11 75:5,8
PDC (2)
60:2,4
pending (9)
21:6,10 28:5 57:13,14 62:1
63:22 64:7 65:11
people (2)
5:13 26:22
perform (1)
63:8
performed (7)
11:16 61:14,20 63:13 64:10
72:13 73:1
period (15)
16:12 21:21,23 22:2 27:19,20
27:23 36:11,13 62:15 63:7
64:11 67:3,7,16
periods (4)
66:18,19 67:20 70:9
person (4)
29:12 43:15,16 79:6
pertaining (2)
12:6 34:24
pertinent (1)
34:9
perused (1)
10:4
phone (8)
74:1,4,7,11,14,19,23 75:17
phonetic (1)
30:16
photocopies (1)
24:23
phrase (2)
73:4,13
Physician (1)
28:11
place (4)
18:3,18,21 19:6

placed (1)
41:23
Plaintiff (1)
1:7
pleadings (1)
11:18
please (16)
5:7 12:16,22 14:15,16 15:9
17:4 20:20 21:24 35:7
45:20 57:17 61:8 62:21
64:24 73:2
plus (2)
75:18,22
point (9)
27:7 38:2 40:6 42:1 50:8,14
53:10 65:22 67:14
policy (7)
33:6 35:19 36:21 38:13 54:5
54:13 65:14
policyholder (3)
62:1 63:22,24
position (1)
47:10
possible (2)
53:15 64:12
practice (1)
6:14
Precisely (1)
53:5
predict (1)
68:21
preparation (6)
8:18 9:7,18 10:2 13:6 77:22
prepare (2)
8:14 76:14
preparing (1)
9:15
prepping (1)
76:10
president (2)
47:12 73:11
presumably (1)
55:21

Robert Mills
May 3, 2007

14

presume (1)
49:16
pretty (1)
72:11
previous (2)
26:4 49:21
printed (4)
49:12,16,16 54:24
prior (4)
42:21 50:5 52:6 55:12
private (8)
5:12,19 6:10,16,17,19 7:4,12
privilege (2)
20:2,5
probably (5)
28:2 40:11 49:21 77:11,12
Procedure (1)
1:19
procedures (2)
4:20 77:1
proceedings (2)
35:2 65:10
processes (1)
32:1
produce (4)
22:10 23:8 25:5,9
produced (11)
21:20 22:5,18,19,21 24:10
   25:1 41:12 45:10,11 46:7
product (4)
12:7 14:8,19 15:4
production (3)
52:23 53:11 76:9
Professional (1)
1:18
progress (1)
31:11
promoted (1)
48:23
promotions (1)
42:14
pronounce (1)
30:17

proper (1)
77:1
proposed (2)
4:14,20
provide (2)
28:23 33:21
provided (7)
29:19,24 34:20 37:1,4,7
   44:23
provides (2)
23:9 30:2
providing (2)
5:10 34:15
Public (3)
1:17 4:5 79:4
pulled (1)
48:20
purported (2)
5:17 56:6
purports (1)
56:13
purposes (2)
33:18 34:2
pursuant (3)
1:18 5:16 79:5
put (4)
55:11 60:13 62:2 63:24
putting (3)
23:6 36:19 64:4
p.m (5)
1:22 4:2 59:8,11 78:5

Q

question (49)
7:8,10 12:5,16,22 13:21
   14:18 15:9 17:4,14,15,24
   18:7,10,14 21:24 23:14,15
   24:6 26:13,19 27:8,8 28:21
   33:16 34:10 35:7 40:9,24
   45:6,19,20 50:2 57:17 58:2
   61:8,18 62:9,21 64:16 65:2
   65:3 66:10 70:23 71:3,6
   72:22 73:2,3

questions (12)
7:16 17:11 19:19 25:10
   65:11 66:7,20 67:5 68:5
   69:7 75:5 77:18
question's (1)
39:24
quite (1)
39:19

R

R (6)
1:17,24 2:1 4:1 79:4,17
raise (1)
19:4
raised (1)
67:5
read (14)
9:20 10:7,15 19:10,12 25:21
   43:3 44:10 50:8,10,22
   56:16 71:24 80:5
reading (2)
10:5,12
ready (2)
5:3 77:5
really (2)
40:3 67:13
reason (3)
7:7 24:24 45:11
recall (48)
9:13,22 10:10,17,21,24 11:3
   13:4 16:14,16,18,20 17:3,5
   17:24 18:15,19 19:5 27:2,9
   29:21 31:5 34:23 41:10,21
   43:1,2,13,22,24 44:11
   46:18,23 51:22 53:19 54:9
   55:13,14,17 56:7 58:10
   59:14 60:6,11 71:17 73:8
   73:17,24
received (9)
36:19 37:15 38:17 42:14
   64:4 67:24 69:1,20 76:22
receiving (1)
38:8

Robert Mills
May 3, 2007

15

recess (1)
59:9
recollection (3)
11:4 35:1 52:12
record (11)
4:9 5:2,24 46:21 57:11 59:7
59:11,22 60:7 76:12 79:10
records (4)
11:7,8 60:22 63:11
reduced (1)
79:9
refer (4)
48:11,13 57:3 58:18
reference (3)
57:8 58:11 59:1
referencing (2)
49:15,20
referred (5)
57:15,21,24 58:9,14
referring (2)
23:19 51:10
reflect (1)
52:24
refresh (1)
50:22
refused (1)
25:8
regard (2)
64:7,9
regarding (3)
28:24 50:5 63:23
Registered (1)
1:17
relate (1)
15:7
relating (1)
63:14
relative (2)
79:11,12
relevant (1)
20:8
rely (1)
72:1

remained (3)
57:14,20 58:5
remember (15)
26:5 27:6 29:1 37:20 39:7,23
43:2 44:1,17 51:14 53:23
60:1 61:4 72:18 75:1
remiss (1)
76:24
repay (2)
68:3 71:12
repeat (15)
12:16,22 15:9 17:4 18:7
21:24 31:2 35:7 40:24
45:20 57:17 61:8 62:21
71:6 73:2
rephrase (1)
34:11
report (10)
30:22 31:11 49:1 60:11,12,13
62:2 64:1,3,4
reported (2)
47:13 48:24
Reporter (2)
1:18 18:10
REPORTING (2)
1:20 79:6
representation (2)
76:15 77:13
request (7)
30:10 45:10,12 50:1 68:8
76:7,13
requested (5)
22:17,22 29:3,4,5
requesting (2)
29:1 34:1
requests (8)
22:8,12,15,24 43:22 44:3
76:6,8
require (1)
22:15
required (1)
28:9
requiring (1)

28:14
research (1)
60:23
reservation (8)
55:8,12,15 65:16,22 75:3,4,9
residence (7)
5:9,14 6:4,11,15,18 7:14
residually (1)
69:2
resolved (3)
21:8 43:5,7
respond (4)
69:5 76:7,21 77:5
responding (2)
22:16 76:5
response (1)
4:13
responses (4)
43:21,21 44:2 46:6
responsibility (7)
25:24 26:1 27:24 36:18 43:1
43:11,16
responsible (19)
25:15,19,20 26:7,9,11,15,19
27:1,9,10,13,15,16,18,23
28:1,4 48:14
rest (1)
68:17
resulted (1)
51:7
retained (1)
42:24
returned (1)
80:3
reveal (1)
53:11
revealing (1)
14:4
review (29)
9:17 11:7,18,21 12:17,20,23
15:6,19 17:5 18:1,15 19:14
19:16,23,24 30:3,3,4 38:21
38:22 40:13,18 44:2 59:22

Robert Mills
May 3, 2007

16

60:8,21,22 63:11
**reviewed (21)**
8:19 10:3 12:10 13:5,17,19
    13:24 15:10 16:21 17:23
    18:13 39:20 41:2 44:8 50:4
    50:14,17,23 54:4,12,15
**reviewing (1)**
11:15
**right (55)**
13:7 21:16 25:9 28:17 30:7
    33:16 34:19 35:6,11 36:21
    37:7,19,23 38:6,9,13,24
    39:2,3,6 42:1,17 43:4 46:12
    46:17 47:1,4,17,24 48:4
    50:1 51:12,19 52:2,17,24
    53:5,12 54:24 56:12 58:9
    58:15 59:4 62:12,23 63:4
    65:24 67:7 68:3,24 70:13
    71:3 72:17 74:3 75:16
**rights (8)**
55:8,12,15 65:16,22 75:3,4
    75:10
**RITCHEY (1)**
2:4
**Robert (10)**
1:16 3:10,13,14 4:4 5:8
    28:14,23 79:7 80:4
**Roberts (65)**
2:7 3:4 4:21 5:1,6,23 6:8 7:3
    7:11 12:8,14 13:18,22 14:3
    14:10,13,15,16,20,24 15:5
    15:15,17 16:24 18:8 19:21
    20:4,9,12,14 22:11 23:10
    23:18,24 24:3,8,15 25:14
    44:21 45:3,7 46:10 50:19
    55:20 57:10,12 58:18 59:6
    59:12 62:15 65:2,5 66:3
    69:8,11,15,18 70:7 72:4,9
    72:12 76:2,12,19 77:9
**Roy (4)**
1:17,24 79:4,17
**rule (3)**
1:18 22:23 23:9

**rules (4)**
1:19 22:9,14 77:1

---

**S**

**S (2)**
2:1 4:1
**saw (3)**
19:3,4 60:11
**saying (9)**
14:1 22:22 23:3,5 30:6 44:15
    61:4 68:18 72:10
**says (6)**
54:22 55:2 56:17,18 71:4
    74:13
**scope (1)**
39:7
**second (2)**
23:15 58:19
**Security (4)**
6:24 7:2,5,14
**see (7)**
18:22 44:11 45:16,21 49:22
    55:23 76:6
**seeing (2)**
43:3 44:11
**seek (1)**
33:2
**seeking (1)**
30:13
**seen (2)**
39:19 60:10
**self-serving (1)**
57:11
**send (8)**
28:15 30:4,5,11,24 31:3,12
    34:14
**sending (7)**
28:10,12 29:12 31:18,22
    33:17 34:12
**sends (1)**
32:2
**sent (9)**
4:11 19:13 28:19 29:10

30:20 46:11 49:12 50:13,16
**September (6)**
44:18 45:16,23 46:12 49:4
    54:14
**sequence (1)**
49:22
**served (1)**
21:15
**service (2)**
6:6,7
**SERVICES (2)**
1:12 2:9
**seven (14)**
25:15,18 36:2,17 38:23 40:14
    57:13,14,19,20 58:3,5
    68:15,16
**seven-plus (1)**
36:11
**seven-year (5)**
36:3,12,15,16 38:3
**share (1)**
33:13
**shared (2)**
5:13 7:4
**sharing (2)**
6:9 7:11
**Sharon (5)**
1:17,24 18:9 79:4,17
**SHEET (1)**
80:1
**show (1)**
28:12
**showed (1)**
44:16
**shown (1)**
12:6
**shows (1)**
15:3
**SHUTTS (1)**
2:10
**sign (2)**
43:20 47:4
**signature (4)**

Robert Mills
May 3, 2007

32:3 56:6,14 80:22
**signed (6)**
44:9 51:7,18 54:3,4 80:3
**significant (2)**
11:5,12
**signing (3)**
43:24 44:5 80:23
**simply (3)**
14:13 45:15 54:23
**single (2)**
4:23 39:23
**sir (20)**
5:3,7 6:20 7:11,18 8:14
16:20 20:14 24:8 42:17
44:21 45:4 55:20 59:12
62:9 64:22 65:23 69:18
76:20 77:17
**sit (4)**
55:16 59:17 66:9 69:21
**sits (1)**
66:21
**sitting (8)**
9:23 27:10 51:1,13 67:15
68:12,13 77:3
**situation (1)**
53:16
**six (1)**
73:1
**Social (4)**
6:24 7:2,5,14
**somebody (2)**
15:23 30:3
**someone's (1)**
72:24
**sounded (1)**
45:5
**Sounds (1)**
76:1
**South (1)**
2:11
**SOUTHERN (1)**
1:1
**speaking (1)**

40:14
**speaks (1)**
58:17
**specific (12)**
10:6 14:9,18,21 16:14 31:14
43:14 48:15 53:2,19 58:10
67:19
**specifically (9)**
19:17 29:3 33:8 54:9 56:7
70:21 73:8,17 74:4
**speculating (2)**
65:23 66:3
**speech (1)**
62:14
**spell (1)**
20:20
**spend (2)**
10:12 11:14
**spending (1)**
11:5
**spent (2)**
10:5 11:11
**Spiegel (4)**
74:2,12,12,17
**spoke (5)**
41:5 74:13,21,22 75:17
**spoken (3)**
4:23 31:6 74:17
**Springfield (5)**
1:21 21:5 24:20 76:4 79:6
**staff (1)**
63:10
**stands (1)**
20:11
**start (1)**
31:15
**started (3)**
30:18 48:23 54:2
**starts (1)**
65:1
**state (2)**
20:5 21:11
**stated (3)**

38:16 50:23 54:10
**statement (3)**
43:20 44:5 57:11
**Statements (1)**
28:11
**states (2)**
1:1 4:6
**stating (1)**
50:14
**status (7)**
43:8 55:15 57:19,20 58:3,5
75:11
**stick (1)**
70:22
**stipulate (1)**
6:5
**stop (2)**
10:12,15
**strategy (2)**
52:21 53:7
**Street (3)**
1:20 2:5 79:6
**strictly (1)**
48:18
**strike (9)**
19:8 25:13 37:14 41:16
45:18 57:10 62:14 65:2
73:3
**stuff (2)**
37:21 63:19
**subject (2)**
5:19 32:22
**submit (1)**
4:10
**subordinate (1)**
59:2
**subpoenas (1)**
6:6
**substantive (1)**
52:11
**sue (3)**
65:16 68:2 71:11
**sued (2)**

**Robert Mills**
**May 3, 2007**

18

|  |  |  |
|---|---|---|
| 33:5 56:3 | 59:6 | **thoroughly (1)** |
| **suffer (1)** | **team (13)** | 39:18 |
| 7:18 | 11:22 12:18,21,24 13:6 15:6 | **thought (3)** |
| **suggested (1)** | 15:12 17:6,22 18:12 35:24 | 24:17 36:16 39:20 |
| 55:6 | 40:14 75:13 | **thoughts (2)** |
| **suggests (1)** | **telephonically (2)** | 53:3 56:22 |
| 54:1 | 9:2,5 | **three (5)** |
| **superior (1)** | **tell (10)** | 20:15 25:23 26:21,22 30:18 |
| 59:4 | 13:23 31:9 34:7 37:7 65:5 | **thumbed (1)** |
| **supervisor (1)** | 66:22,22 67:15 68:12 69:1 | 11:9 |
| 43:15 | **telling (5)** | **time (52)** |
| **supplemented (2)** | 46:17,24 65:24 66:4,9 | 10:5,12 11:5,12,15 16:12,14 |
| 22:16,24 | **ten (4)** | 23:15,21,23,23 25:11 27:5 |
| **support (1)** | 4:11 75:20,23 77:23 | 27:7,19,20,23 28:2,3 37:20 |
| 70:16 | **testified (2)** | 37:24 39:19 41:5 42:6 |
| **suppose (1)** | 9:24 25:22 | 43:10,14 46:18 50:8 51:5 |
| 22:18 | **testifies (1)** | 53:19,24 54:14 55:18 56:3 |
| **surprise (1)** | 74:6 | 57:15,18,21 58:3,8,10 |
| 25:12 | **testify (1)** | 62:16 66:18 67:4,9,11,16 |
| **surveillance (15)** | 79:7 | 67:19,20 70:10 72:18 75:21 |
| 11:14,15 44:12,13,15 46:15 | **testimony (11)** | 75:23 |
| 46:19,20,24 59:13,17,19 | 19:3 31:19,21 35:3 46:23 | **timeline (1)** |
| 60:22,23 63:12 | 66:17 67:23 71:24 73:12 | 52:9 |
| **suspect (1)** | 79:10 80:5 | **timeliness (1)** |
| 53:22 | **testimony's (1)** | 36:20 |
| **switch (1)** | 73:15 | **times (5)** |
| 59:6 | **Thank (5)** | 23:14,18 24:7 28:23 66:13 |
| **sworn (4)** | 12:14 20:12 76:17,19 77:17 | **timing (1)** |
| 4:5 43:20 67:23 79:7 | **Thanks (1)** | 36:9 |
|  | 49:14 | **today (19)** |
| **T** | **thing (2)** | 8:23 9:8,18,23 11:3 27:10 |
| **take (5)** | 58:12,13 | 37:21 39:23 51:1,13 53:19 |
| 24:16 37:24 39:14 44:18 | **things (3)** | 55:16 66:9,21 67:11,15,22 |
| 45:13 | 24:4 52:16,19 | 69:20,22 |
| **taken (3)** | **think (19)** | **today's (4)** |
| 1:16 21:4 59:9 | 13:2 20:7 22:5 24:15 25:21 | 8:15,18 9:15 10:2 |
| **talk (1)** | 25:22 34:4,14 35:12 36:4 | **Todd (1)** |
| 31:10 | 37:16 38:1 40:20 42:9,21 | 43:18 |
| **talked (4)** | 55:2 64:17 72:20,21 | **told (18)** |
| 56:10 70:2 71:13,16 | **third (2)** | 25:5,8 26:21,24 27:9 29:17 |
| **talking (2)** | 2:5 7:4 | 35:14,24 36:2 42:9,21 |
| 28:2 29:4 | **Third-Party (1)** | 44:12 49:2 62:6 64:19 |
| **tapes (1)** | 1:13 | 70:23 72:1 77:22 |

Robert Mills
May 3, 2007

**tomorrow (1)**
24:20
**tomorrow's (1)**
76:11
**tools (1)**
60:24
**totally (3)**
63:3 68:2 69:2
**touching (1)**
79:8
**track (1)**
75:21
**trade (1)**
61:1
**transcript (2)**
80:5,6
**treat (1)**
5:16
**trial (1)**
34:18
**trouble (1)**
23:8
**troubling (1)**
22:4
**true (9)**
6:2 26:6 43:22 54:6 57:16,22
    58:2 79:9 80:6
**truth (4)**
44:6 46:5 79:7,7
**truthful (1)**
9:23
**truthfully (1)**
25:22
**trying (2)**
45:6 65:13
**two (11)**
4:12 8:1,8 30:18 39:21 44:23
    56:19,23 58:21,24 68:13
**two-day (5)**
15:11 17:5,22 18:11 75:12
**type (4)**
61:13 63:7,8,12
**types (1)**

61:19

___

**U**

**ultimately (2)**
51:3 52:2
**unable (1)**
38:22
**undersigned (1)**
80:4
**understand (8)**
17:14,15 26:18 32:19 47:19
    54:2 62:16 65:12
**understanding (15)**
32:1 35:16 37:9 48:1 50:11
    50:12 54:15 58:7 60:3 62:4
    62:6,8 63:2 65:9 67:24
**understood (1)**
17:16
**UNITED (1)**
1:1
**University (1)**
6:21
**updates (2)**
34:6,15
**use (2)**
61:1 73:13
**usually (1)**
76:8

___

**V**

**v (4)**
1:8,11 80:6,6
**various (3)**
10:7,21 11:9
**verb (1)**
27:22
**verified (1)**
46:5
**version (1)**
56:20
**vice (1)**
47:12
**VIDEOGRAPHER (3)**

59:7,10 78:4
**videos (1)**
40:18

___

**W**

**waited (1)**
77:4
**waiting (1)**
77:2
**Walnut (1)**
2:5
**want (11)**
5:1 6:16 7:3,5 23:16 39:5
    44:18 47:11 49:14 56:21
    57:7
**wanted (1)**
50:2
**wasn't (5)**
28:21 40:9 45:11 58:13 68:9
**way (4)**
33:7 35:15 39:11 73:16
**weeks (1)**
4:12
**welcome (1)**
12:15
**went (4)**
6:21 10:11 59:4 74:2
**weren't (1)**
68:19
**WESTERN (1)**
1:2
**we'll (3)**
6:6,7 59:6
**we're (6)**
4:13 28:2 59:10 65:12 68:17
    77:17
**we've (6)**
37:15,16 66:19,23 71:20 75:4
**whatsoever (1)**
57:9
**wife's (1)**
8:2
**William (3)**

**Robert Mills**
**May 3, 2007**

20

3:10,11,13
**willing (2)**
64:6,9
**wish (1)**
6:5
**wit (1)**
79:6
**witness (15)**
4:23 5:4 6:1 22:9 23:6,11
24:2,4,5 64:23 70:6 76:10
78:6 79:10,14
**word (3)**
4:23 17:13 77:9
**work (7)**
8:4,6 12:7 14:8,19 15:4 77:5
**working (2)**
8:9,12
**works (2)**
28:8 32:4
**wouldn't (4)**
52:9,23 53:11,21
**write (2)**
51:8 68:17
**writing (4)**
29:1,6 30:12 79:9
**written (2)**
17:17 28:22
**wrote (1)**
48:9

---

**X**

**X (1)**
3:1

---

**Y**

**Yeah (1)**
51:15
**year (14)**
16:18 17:6 18:3,18,20 19:5
21:3 27:6 31:15,15,16
36:11 39:14,15
**years (39)**
20:15 23:2 25:16,18,23 26:21

28:22 31:17,19,24 34:17
36:17 37:19 38:9,23,24
40:8 41:7 43:13 45:12
57:14,14,19,20 58:3,6
62:12,12,22 63:1 64:8
66:17 68:15,16 71:10 72:16
73:1 75:10 77:7
**yesterday (12)**
8:22 9:8 16:20,21 17:21 18:1
18:11,16,22 75:14,16,22

---

**0**

**0068 (3)**
45:14,22 46:1
**0070 (1)**
48:12
**0071 (2)**
45:15,15
**03 (1)**
65:17
**04 (1)**
65:17
**05 (1)**
65:17
**06 (1)**
65:18

---

**1**

**1 (6)**
3:10 25:24 26:8 44:20,22
55:23
**1/18/07 (2)**
3:11,14
**1:10 (2)**
1:22 4:2
**11/1/00 (1)**
3:13
**14 (5)**
17:11 38:8,23 66:17 71:10
**1500 (3)**
1:20 2:10 79:6
**168 (4)**
69:21,22 70:12 71:1

**18 (1)**
54:22
**19 (3)**
44:18 45:16,23
**19th (1)**
46:12
**1900 (1)**
2:5
**1991 (1)**
6:23

---

**2**

**2 (9)**
3:13 50:20 51:6,10 54:1,5
55:6,12,19
**2:11 (1)**
59:8
**2:18 (1)**
59:11
**2:37 (1)**
78:5
**2000 (25)**
26:1,8,24 27:6 28:2 44:14,19
44:22 45:16,23 46:12 47:10
49:4 50:20 51:6,11 53:22
54:1,5,22 55:6,12,23 56:3
59:3
**2001 (7)**
42:9,15,23 49:4 72:17 74:13
74:23
**2002 (23)**
21:21 22:2 24:9 26:8 28:11
30:13 32:6,22 41:9 45:9
56:4 59:13,18,20,22 60:16
60:19 61:2,3,7,10 65:17
76:4
**2003 (4)**
28:16 45:9 76:13,23
**2004 (2)**
9:18 28:16
**2005 (2)**
28:16 68:18
**2006 (1)**

---

**Robert Mills**
**May 3, 2007**

21

28:16
**2007 (13)**
1:21 21:21 22:2 24:9 28:16
  39:14,15 55:2,4,5 76:4 79:5
  79:14
**201 (1)**
2:11
**2011 (1)**
79:21
**22nd (1)**
79:14
**28 (1)**
79:21

**3**
**3 (1)**
1:21
**3rd (1)**
79:5
**30 (4)**
1:18 22:16,24 76:8
**305-358-6300 (1)**
2:12
**33131 (1)**
2:11

**4**
**40 (1)**
27:1
**44 (1)**
3:11
**45202-3157 (1)**
2:6

**5**
**5 (1)**
3:4
**5.3.07/sr (1)**
80:24
**511 (1)**
2:5
**513-621-6464 (1)**
2:6
**55 (1)**

3:14

**6**
**60 (1)**
27:1

**7**
**77 (1)**
3:5

**9**
**9/19/00 (1)**
3:10
**90s (2)**
39:6 47:23
**93 (1)**
38:5
**94 (1)**
70:18