UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JEFFERSON-PILOT LIFE INSURANCE COMPANY, et al. | : : | CASE NO. C-1-02-479 |
| | : | (Judge Michael R. Barrett) |
| Plaintiff/Counterclaim Defendants, | : : | **DEFENDANTS' REPLY** |
| vs. | : : | **MEMORANDUM IN SUPPORT OF** |
| | : | **MOTION FOR AN ORDER** |
| CHRISTOPHER L. KEARNEY, | : : | **CERTIFYING A QUESTION OF OHIO** |
| | : | **LAW TO THE OHIO SUPREME** |
| Defendant/Counterclaim Plaintiff. | : : | **COURT OR, IN THE ALTERNATIVE,** |
| | : | **AN ORDER RECONSIDERING THE** |
| | : | **DENIAL OF COUNTERCLAIM** |
| | : | **DEFENDANTS MOTION FOR** |
| | : | **SUMMARY JUDGMENT.** |

Defendants, Jefferson Pilot Life Insurance Company ("Jefferson Pilot") and Disability Management Services, Inc. ("DMS")(collectively, "Defendants"),[1] by and through undersigned counsel, hereby file their reply memorandum in support of their motion for the Court to certify a question of Ohio law to the Ohio Supreme Court or, in the alternative, for reconsideration of Defendants' Motion for Summary Judgment on Christopher L. Kearney's ("Kearney") counterclaim on the issue of bad faith. As discussed more fully in the Motion and herein, the Motion should be granted.

In the Motion, Defendants requested that the Court apply Rule XVIII of the Rules of Practice of the Ohio Supreme Court and certify the following question to the Ohio Supreme Court: "Does Ohio law permit an insured to sue his insurer for bad-faith claim handling even where his claim has been timely paid?" The basis for Defendants' motion was that the Court's

---

[1]     At the Final Pretrial Conference on August 30, 2007, the Court orally granted JP's and DMS's Motion to Realign the parties for trial.

ruling in its August 17, 2007 Opinion and Order (the "Order") created a new cause of action in Ohio whereby an insured *whose claim has been (and is being) timely paid* can nonetheless sue his insurer for bad faith claim handling.  As Defendants have argued, Ohio case law is to the contrary, as an insured must show a "refusal to pay" prior to suing an insurer for bad faith.  And that is something that Kearney cannot show, as his claim has been timely paid (and, indeed, *overpaid*) for 14 years.

In response, Kearney first argues that the question should not be certified because the answer to the question will not be determinative of the proceeding.  In so doing he quotes a definition of "determinative" cited in QSP, Inc. v. Gibson, 2005 WL 3219722 (Ohio App. 8th Dist., December 1, 2005) and Miller v. McAllister, 160 N.E.2d 231 (Ohio 1959).  However, that "definition" has to do with the use of special verdict forms and interrogatories to the jury.  It has absolutely nothing to do with certification of a question of law to the Ohio Supreme Court and, to our knowledge, has never been used by either the Ohio Supreme Court or any other court in a published opinion having to do with certification of a question of law.  Moreover, if one were to use the language suggested by Kearney, it would effectively convert the plain language of the rule – "*may* be determinative of the proceeding" – into an absolute, "*will* be determinative of the proceeding."  (emphasis added).

But that is not how the Ohio Supreme Court views its power in answering such questions. As stated by the Court in Scott v. Bank One Trust Co., N.A., 577 N.E.2d 1077 (Ohio 1991), "[b]y answering a state-law question certified by a federal court, we *may* affect the outcome of the federal litigation, but the federal court still hears and decides the cause."  (emphasis added). Id. at 1079.  Thus, Kearney's citations to QSP and Miller are both inapposite and irrelevant as they discuss a standard not applicable to certification.  Certification of the proposed question to

the Ohio Supreme Court therefore may very well dispose of at least two of the three remaining claims, bad faith and conspiracy.[2]

Moreover, the Ohio Supreme Court looks favorably upon questions certified from the federal courts, stating that "[c]ertification ensures that federal courts will properly apply state law." Scott, 577 N.E.2d at 1081. This issue of ensuring that Ohio law is properly applied in federal courts is one that the Ohio Supreme Court takes seriously. As explained by the Court:

> The state's sovereignty is unquestionably implicated when federal courts construe state law. If the federal court errs, it applies law other than Ohio law, in derogation of the state's right to prescribe a " rule of decision." " By allocating rights and duties incorrectly, the federal court both does an injustice to one or more parties, and frustrates the state's policy that would have allocated the rights and duties differently. The frustration of the state's policy may have a more lasting effect, because other potential litigants are likely to behave as if the federal decision were the law of the state. In that way, the federal court has, at least temporarily, made state law of which the state would have disapproved, had its courts had the first opportunity to pass on the question." McCree, Foreword, 1976 Annual Survey of Michigan Law (1977), 23 Wayne L.Rev. 255, 257, fn. 10.
>
> The danger is scarcely theoretical. Federal courts acknowledge that they frequently err in applying state law that is unclear or unsettled. See, e.g., United Services Life Ins. Co. v. Delaney (C.A.5, 1964), 328 F.2d 483, 486-487, fn. 5-9 (collecting cases where state courts rejected federal interpretations of state law); W.S. Ranch Co. v. Kaiser Steel Corp. (C.A.10, 1967), 388 F.2d 257, 264-265, fn. 11-16 (Brown, J., concurring and dissenting) (collecting cases), reversed (1968), 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835. Indeed, some federal judges consider state-law interpretation so hazardous that they compare it to " prophecy." See Nichols v. Eli Lilly & Co. (C.A.10, 1974), 501 F.2d 392, 393;

---

[2]    If the bad faith claim falls, so too must Kearney's conspiracy claim. There is no allegation by Kearney that the Defendants conspired to invade Kearney's privacy. Rather, Kearney's conspiracy claim is that Defendants conspired in bad faith to deprive Kearney of his benefits. See Kearney's First Amended Counterclaim, Count IV, attached hereto as Exhibit "1". Thus, if there is no bad faith, there can be no conspiracy. Moreover, this argument does not even touch upon the obvious argument that no act towards accomplishing the alleged goal of the conspiracy ever was committed.

Reid v. Volkswagen of America, Inc. (C.A.6, 1975), 512 F.2d
1294 FN1; Brown, Certification-Federalism in Action (1977), 7
Cumberland L.Rev. 455.  As United States Circuit Judge Alan
Norris has remarked, certification frees federal courts from
"having to guess how state courts will decide important questions
of state law."  (Emphasis sic.) Norris, The Bicentennial of Judicial
Federalism (1990), 53 Ohio St.3d lvii, lviii.

> FN1. The Reid court's interpretation of Michigan law was
> later rejected by the Supreme Court of Michigan. *See* Reid
> v. Volkswagen of America, Inc. (C.A.6, 1978), 575 F.2d
> 1175 (on appeal from remand).

Another federal judge has argued that it matters little if a federal
court errs in applying state law, because if "state law is so unclear
that a federal court, honestly trying to discover and apply it, falls
into error * * * the relevant state policies are so lacking in
development and firmness that their nonapplication in a diversity
case is not of very great moment."  Wright, The Federal Courts and
the Nature and Quality of State Law (1967), 13 Wayne L.Rev. 317,
320. FN2

> FN2. It should be noted that Judge Wright is not arguing
> against certification. *But, cf*., McCree, supra, at 257, fn. 10.

We respectfully disagree.  Points of state law that seem unclear to
federal courts may be quite clear to " [i]nformed local courts,"
which " may find meaning not discernible to the outsider."
Louisiana Power & Light Co. v. Thibodaux (1959), 360 U.S. 25,
30, 79 S.Ct. 1070, 1073, 3 L.Ed.2d 1058, 1063.  One cannot infer
from a federal court's honest misunderstanding of state law that the
policies served by that law lack development and firmness.

**Moreover, we strongly believe in the importance of accurately
applying Ohio law in federal courts.**  "In the tension between
federal and state power lies the promise of liberty."  Gregory v.
Ashcroft (1991), 501 U.S. 452, ----, 111 S.Ct. 2395, 2400, 115
L.Ed.2d 410, 423.  **To the extent that a federal court applies
different legal rules than the state court would have, the state's
sovereignty is diminished**; as Judge McCree put it, **the federal
court has made state law**.  From the state's viewpoint, losing part
of its sovereignty is no small matter, especially since **a federal
court's error may perpetuate itself in state courts until the
state's highest court corrects it**.  *See* Nupnau v. Hink (1964), 53
Ill.App.2d 81, 91, 203 N.E.2d 63, 68-69 (federal decision applying
Illinois law entitled to deference in Illinois court), *reversed* (1965),
33 Ill.2d 285, 211 N.E.2d 379.

-4-

Certification ensures that federal courts will properly apply state
law.

Id. at 1080-81. (emphasis added).  As should be clear, the Ohio Supreme Court would look

favorably upon clarifying the law of Ohio, and ensuring that it was properly applied in this case,

especially where the Court's ruling, if it stands, will result in a deluge of lawsuits for bad faith by

insureds being timely paid by their insurers.

As to the substance of the law on bad faith cited by Defendants in the Motion to Certify,

Kearney barely responds, instead largely relying on his conclusory statement that Ohio law is

settled on the question of law.[3]  Of course, that conclusory statement by Kearney is unsupported

by citation to any case that is pertinent and in the same factual scenario as here, where the

insured has never been refused benefits, and indeed has been overpaid benefits for 14 years.

Thus, all of the cases cited by Kearney, including Hoskins v. Aetna Life Ins. Co., 452 N.E.2d

1315 (Ohio 1983); and Gillette v. Estate of Gillette, 837 N.E.2d 1283 (Ohio Ct. App. 2005), have

the same thing in common -- each of them involves either a denial of benefits or a significant and

unreasonable delay in payment of benefits without reasonable justification.  Indeed, one need go

no further that than language Kearney quotes from the Gillette case (Kearney memo at 3, n.3.) to

clearly understand this:  " The duty of good faith operates to insure that an insurer's performance

or refusal to perform under the contract does not deprive an insured of the benefits owed under

the policy." (emphasis added).

In that very same footnote, Kearney cites yet another case contradicting his contention

that Ohio law does not require a "refusal to pay" in order to sustain a claim for bad faith, Mundy

_____

[3]        Similarly, Kearney entirely ignores Defendant's recent Notice of Supplemental
Authority, Penton Media, Inc. v. Affiliated FM Insurance Co., 2007 WL 2332323, at *5 (6th Cir.
(Ohio) August 17, 2007), in which the Court reiterated Ohio law on bad faith, quoting the Ohio
Court of Appeals:  "An insurer breaches the duty **when it refuses to pay** or settle a claim for an
arbitrary or capricious reason."  (emphasis added).

v. Roy, 2006 WL 522380 (Ohio App. 2d Dist. 2006). The <u>Mundy</u> court, after finding a "refusal to pay" where Allstate had disputed Mundy's damage claim and compensated him *only after a verdict was entered against it*, made clear that its finding was the first prong of a two prong analysis for Ohio bad faith, stating:

> Of course, our determination that Allstate **refused to pay** Mundy's underinsured-motorist claim does not end the matter. **As the Ohio Supreme Court recognized in *Zoppo*, an insurer subjects itself to a bad-faith claim only when its refusal to pay "is not predicated on circumstances that furnish reasonable justification therefor."**

*Id.* at ¶19 (emphasis added). There could be no clearer statement of Ohio bad faith law – or clearer illustration that this Court's statement that "Ohio courts have held that there can be a claim of bad faith absent a refusal to pay" is erroneous.[4] (Order at 15).

Here, over the span of 14 years, Kearney has never been deprived of the contractual benefits under his policies. In fact, he was paid more than what was owed under the policies. Thus, the language of the cases, when read in context and with the background of each case's facts, makes it abundantly clear that there are absolutely no Ohio cases where there was found to be a cause of action for bad faith against an insurer where the policy benefits were timely paid, let alone overpaid. Certainly, if there were such a case, Kearney would have cited it by now.

---

[4] It appears that Kearney is well aware that the Court's statement is wrong, as he attempts to change the Court's holding before trying to support it. As stated in his opposition memorandum at p. 3, "Quite simply, as this Court concluded in its accurate summary judgment Order and Opinion, in Ohio, an insurance company can exhibit bad faith in ways other than in the *denial* of insurance coverage, and the duty of good faith extends beyond those scenarios involving the *outright denial of payment for a claim.*" (emphasis supplied). No one disagrees with that statement, nor was that the Court's holding. The important distinction between a "claim denial" and a "refusal to pay" was discussed in Defendants' initial motion in §I(B). *See also* <u>Mundy v. Roy</u>, *supra,* at *4, ¶18.

Kearney next argues that judicial efficiency requires that the court deny the certification request since Defendants are likely to appeal the Court's earlier ruling that their interpretation of the policy was correct, but that they were estopped from paying Kearney the correct amount of disability benefits.  The argument makes little sense, in light of the fact that a trial on this newly created bad faith cause of action will cost tens of thousands of dollars in legal fees, expend 10 days of the Court's time in trial, and inconvenience numerous witnesses.  All of this can be avoided by having the Ohio Supreme Court determine whether this new cause of action actually exists.[5]  Kearney asserts that he has been "struggling for 5 years at great expense to get to trial," ignoring that he has been the major delaying factor in getting to trial.  Moreover, contrary to Kearney's assertion that the delay works to the benefit of the "financially-able defendants," the longer Kearney can keep this case going, the longer he receives more benefits than his contracts provide.

Moreover, Kearney's suggestion that his new cause of action for bad faith eventually will be reviewed by the Sixth Circuit fails as well.  As the Ohio Supreme Court made clear in <u>Scott</u>, *supra*, "certification ensures that federal courts will properly apply state law" and do not make state law that "may perpetuate itself in state courts…."  This is a novel issue in Ohio law. Therefore it properly should be relegated to the Supreme Court of Ohio, and not to the Sixth Circuit which would have to guess at what the Ohio Supreme Court might do.

In the alternative, Defendants sought reconsideration of the Court's Order of August 17. In response, Kearney in effect says, "nothing to see here, move along," without addressing the

---

[5]    Defendants also note that if the case goes to trial as scheduled and Defendants eventually receive a ruling on the bad faith issue in their favor that follows Ohio law, any verdict that Kearney might receive on his invasion of privacy claim also is, at minimum, likely to be reversed for a new trial because the evidence on that cause of action would have been contaminated by the bad faith evidence, to the prejudice of Defendants.

merits of the arguments made by Defendants.  Moreover, the reconsideration is not simply a reargument of the same cases.  Instead, as permitted under the rules, it is an attempt to focus the court on the overlooked issue that all of the cases cited by the court and Kearney were based upon a delay or refusal to honor the policy, whereas here the policy not only was honored, it was overpaid.  This distinction was overlooked by the court and not addressed in the courts opinion.  Lastly, reconsideration is also proper because of the supplemental authority cited by Defendants which supports their position here, <u>Penton Media, Inc. v. Affiliated FM Insurance Co.</u>, which was decided the same day as the Court's Order, and thus not available to the Court when it issued the Order.

## <u>CONCLUSION</u>

For the foregoing reasons and those discussed in the Motion to Certify, the Court should certify to the Ohio Supreme Court the following question: "Does Ohio law permit an insured to sue his insurer for bad-faith claim handling even where his claim has been timely paid?" In the alternative, the Court should reconsider its Opinion and Order of August 17, 2007, and grant Defendants' Motion and such other and further relief as is necessary and just.

Respectfully submitted,

/s William R. Ellis
William R. Ellis (0012279)
Wood & Lamping LLP
600 Vine Street, Suite 2500
Cincinnati, OH  45202-2491
Telephone:    (513) 852-6000
Telefax:        (513) 852-6087
E-mail:  wrellis@woodlamping.com

OF COUNSEL:

John E. Meagher (511099)
SHUTTS & BOWEN LLP
201 S. Biscayne Boulevard
1500 Miami Center

Miami, Florida  33131
Telephone:  (305) 358-6300
Telecopier:  (305) 381-9982
E-mail:        JMeagher@Shutts-law.com


Attorneys for Plaintiff, Jefferson-Pilot Life
Insurance Company and Cross-Claim Defendant,
Disability Management Services, Inc.


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this 11th day of September, 2007.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


s/ William R. Ellis

MIADOCS 2310382 1