IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JEFFERSON-PILOT LIFE INSURANCE COMPANY, | ]<br>]<br>] |
| Plaintiff, | ] Case No. C-1-02-479<br>]<br>] JUDGE SPIEGEL |
| -vs- | ]<br>] |
| CHRISTOPHER L. KEARNEY, | ]<br>] |
| Defendant. | ] |

**DEFENDANT KEARNEY'S FIRST AMENDED COUNTERCLAIM AGAINST PLAINTIFF AND CROSS-CLAIM AGAINST DEFENDANT DISABILITY MANAGEMENT SERVICES, INC.**

**THE PARTIES:**

1.  At all relevant times, Plaintiff is, and has been, a corporation duly organized and existing under the laws of the State of North Carolina and had and has its principal place of business in the State of North Carolina.

2.  Plaintiff is in the business of providing disability insurance coverage for premiums and purportedly so provided such coverage to the Defendant and is an insurer in this matter.

3.  Defendant Kearney is an individual and a resident of the State of Ohio and further did apply for and was approved for disability insurance under the two (2) policies attached to the Complaint and issued to Defendant by Plaintiff. Defendant has paid all of the necessary premiums to Plaintiff and is an insured of Plaintiff in good standing.

4. New party Defendant, Disability Management Services, Inc. (hereinafter "DMS") is a corporation doing business in the Commonwealth of Massachusetts and the location of its principal office is 17th floor, 1350 Main Street, Springfield, MA 01103. Defendant DMS is in the business of handling claims for insurance carriers.

5. On or about the 30th day of December, 1999, Plaintiff named and appointed new party Defendant, DMS, as its third party administrator to administer the claim of Defendant Christopher L. Kearney (hereinafter "Kearney") and to handle all matters relating to the claim of Defendant Kearney under policies of insurance alleged in Plaintiff's Complaint. Defendant DMS was handling certain aspects of Defendant Kearney's claim since 1997.

## JURISDICTION AND VENUE:

6. The matter in controversy is between citizens of different states and the amount in controversy exceeds Seventy-Five Thousand and 00/100 Dollars ($75,000.00) exclusive of interest and costs. Jurisdiction exists under 28 U.S.C. §1332.

7. This district has jurisdiction in this matter as alleged in Paragraph 4 of Plaintiff's Complaint and Defendant states that venue is proper.

## COUNT ONE - BREACH OF CONTRACT

8. Defendant incorporates all of the statements contained in Paragraphs 1 through 7, above together with the attachments to Plaintiff's Complaint, i.e, the insurance polices, HO-493029 and HO-538069.

2

9. The controversy in this case exceeds Seventh Five Thousand and 00/100 Dollars ($75,000.00).

10. Plaintiff issued the two (2) disability insurance contracts to Defendant Kearney mentioned above, Policy No.HO-493029 issued May 28, 1990 and Policy No. HO-538069 issued May 28, 1991. Defendant Kearney paid all required policy premiums due which were accepted by the Plaintiff. The policies were in full force and effect since the dates of issuance and are now in effect. New party Defendant DMS has assumed the obligations of Plaintiff to Defendant Kearney under the policies set forth in Plaintiff's Complaint and has, thereby, formed its own agreement with Defendant Kearney to abide by the terms and conditions of the policy and also to act as a fiduciary to Defendant Kearney.

11. Plaintiff and new party Defendant DMS have breached the agreement between Plaintiff together with its new party Defendant DMS as third party administrator and with Defendant Kearney on numerous occasions by failing to pay certain amounts due to Kearney, by paying amounts late, by requiring Defendant Kearney unreasonably to submit certain paperwork consistently and constantly that was not required by the agreement, by attempting to force Defendant Kearney to give up his insured position and buy back the policies for an inadequate amount on threat of cutting off benefits, by giving Defendant Kearney erroneous interpretations and erroneous requirements that he must do to keep the policies in force, by lying to Defendant Kearney by consistently asking for documents and information that have already been furnished by Defendant Kearney to Plaintiff and DMS, and misrepresenting what the policies required. Most recently they

have cut off his cost of living benefits (COLA) for which he paid extra premiums and Plaintiff filed its Complaint to assert and obtain a declaratory judgment that such benefits are not payable and it has asked for the return of monies it has paid to him for many years. All of this is done with an intent of harassing him and forcing him to make an inadequate settlement. Plaintiff and Defendant DMS have refused to grant a waiver of premiums. These things are intentionally done and have caused him a great deal of financial hardship and this has been an intentional infliction of emotional distress, done in bad faith, and is a breach of contract.

## COUNT TWO - BAD FAITH

12. Defendant Kearney incorporates all of the statements contained in Paragraphs 1 through 11, above together with the attachments to Plaintiff's Complaint, i.e, the insurance polices, HO-493029 and HO-538069.

13. Defendant Kearney is an insured of Plaintiff and DMS acting in its stead as set forth in the Complaint and in this Counterclaim and Cross-Claim. Defendant Kearney has complied with all of the requests of Plaintiff and Defendant DMS in its examination of his claims and establishment of the benefits which must be paid to the Defendant Kearney. Plaintiff and Defendant DMS have a covenant of good faith and fair dealing under the insurance contract with the Defendant Kearney. Plaintiff and DMS have consistently and constantly breached their covenant of good faith and fair dealing in the handling, investigating and payment of the claims to Defendant Kearney. There is a special fiduciary relationship between the parties which has been breached by the Plaintiff and Defendant DMS.

14. Plaintiff and Defendant DMS have constantly and consistently acted toward Defendant Kearney in a manner which is described as willful, wanton, malicious, oppressive, incompetent, misleading, harassing, deceptive, fraudulent and in bad faith. Plaintiff and Defendant DMS have denied various parts of Defendant Kearney's claims and then allowed parts of the claims and now has asked for a repayment of monies which were properly paid to him and now Plaintiff and DMS are claiming they were not properly paid and wish Defendant Kearney to repay those monies even though he is entitled to retain the payments. Plaintiff and Defendant DMS have basically accused Defendant Kearney of not being disabled by reason of his depression, anxiety and paranoia even after the same or similar diagnosis was made by doctors appointed and hired by the Plaintiff and Defendant DMS. There is a statement in the form applications designed to intimidate him which indicate that to make a false claim is an offense which would be punishable under criminal statutes. They consistently misinterpreted parts of the policy in their own favor and on some occasions purposely misstated things that were not so. The Plaintiff and Defendant DMS delayed the payment of his claims on more than one occasion which caused him great economic hardship and unjustly enriched the Plaintiff and Defendant DMS. Plaintiff and Defendant DMS failed to pay interest on the late payments. Defendant Kearney was a manufacturers' representative and at one point in time the Plaintiff and DMS asked for the names and addresses of all of the principals (customers) of his business. When asked why they wanted this, the reply was they just wanted it "for their files." In actuality, the Plaintiff and Defendant DMS was going to interview the principals to determine if he was "disabled" and try to establish that he was

a cheat and was not disabled. The Plaintiff and Defendant DMS threatened to "cut off" benefits if Defendant Kearney did not do everything that the Plaintiff and Defendant DMS wanted in the way of furnishing records, customer lists, bank accounts, financial statements, etc. The vice president of Plaintiff wrote suggestive and intimidating letters to the Defendant Kearney. Plaintiff and Defendant DMS have consistently stated that he would lose some or all of his benefits if he did not settle for an amount which was acceptable to the Plaintiff and Defendant DMS but not to the Defendant Kearney. Plaintiff and Defendant DMS knew that Defendant Kearney was in a bad financial situation and suffering from depression and paranoia.

15. As a direct and proximate result of the actions of Plaintiff and Defendant DMS, Defendant Kearney's mental condition became worse and was exacerbated through the malicious, wanton and willful and intentional acts of the Plaintiff and Defendant DMS in dealing with the insurance policy and its own insured, Defendant Kearney, with a motive to increase their own profit.

## COUNT THREE - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

16. Defendant Kearney incorporates all of the statements contained in Paragraphs 1 through 15, above together with the attachments contained in Plaintiff's Complaint, i.e, the insurance polices, HO-493029 and HO-538069.

17. As part of the on-going claims process Defendant Kearney cooperated with Plaintiff and DMS in furnishing medical authorizations as to his condition of chronic and acute depression and paranoia. Plaintiff and Defendant DMS had access to all of Defendant Kearney's medical records and, in fact, had its own experts examine the

Defendant Kearney. Such examinations resulted in opinions which basically coincided with the opinions and diagnosis which had been furnished by Defendant Kearney's own physicians and doctors.

18. By engaging in bad faith practices as described above, Plaintiff and DMS willfully, maliciously, and with reckless disregard for the health and safety of Defendant Kearney, used its bad faith practices with the malicious intent of increasing its own profit and inflicted serious emotional distress and anxiety on the Defendant Kearney. Plaintiff and Defendant DMS's bad faith practices in dealing with the Defendant Kearney exacerbated his emotional and mental condition and inflicted serious mental suffering, anxiety and emotional distress on the Defendant Kearney. Defendant Kearney has lived in and continues to live in, constant fear of Plaintiff and Defendant DMS cutting off or reducing his benefits leaving him with little or no income in order to financially survive.

## COUNT FOUR - CONSPIRACY TO BREACH FIDUCIARY DUTY

19. Defendant Kearney incorporates all of the statements contained in Paragraphs 1 through 18, above together with the attachments to Plaintiff's Complaint, i.e, the insurance polices, HO-493029 and HO-538069.

20. Plaintiff, as an insurer of Defendant Kearney, has a fiduciary duty of good faith and fair dealing with its insured, Defendant Kearney. Plaintiff and Defendant DMS have conspired to breach the fiduciary duty owed to the Defendant Kearney as an insured under the policies. Plaintiff has given orders to Defendant DMS or condoned or acquiesced in such malicious actions to attempt to deprive Plaintiff of the rightful monies owed to him under the policies for various technical reasons and to create confusion,

misinformation and discourage the Defendant Kearney, especially in light of his known diagnosis of depression and paranoia. This is a plan between the two to get rid of or lessen Plaintiff's liability which is owed to the Defendant Kearney under the policies, all being done in bad faith, with malice and with conscious disregard of the rights of Defendant Kearney under the policies.

## COUNT FIVE - INVASION OF PRIVACY

21. Defendant Kearney incorporates all of the statements contained in Paragraphs 1 through 20, above together with the attachments to Plaintiff's Complaint, i.e, the insurance polices, HO-493029 and HO-538069.

22. Sometime in 1999 through 2001, Defendant DMS, with the approval of Plaintiff, employed private detectives or persons to investigate the private, personal and business life, acquaintances, neighbors, relatives and customers of Defendant Kearney. As part of such invasion of privacy, Defendant was placed under surveillance for several months. Certain privileged and private information furnished to Plaintiff in support of his claims were used by them and disseminated to others without his authority.

23. As a direct and proximate result of the unwarranted invasion of privacy by Plaintiff and Defendant DMS, Defendant was caused embarrassment, emotional distress and anxiety, his conditions of depression and paranoia were exacerbated, and his personal and business relationships were injured. Defendant Kearney's personal security and right of privacy were invaded, which deprived him of his right of enjoyment of life.

**WHEREFORE,** Defendant Kearney renews his demand that Plaintiff's Complaint be dismissed. Defendant Kearney further demands that he be compensated for the breach of contract as to both insurance policies and that ambiguities, if any, be resolved in his favor as an insured and non-draftor of the policies and it be declared that he is entitled to a waiver of premiums. Defendant Kearney further demands judgment against Plaintiff and Defendant DMS as follows:

(A)   On Count One for Three Million Dollars ($3,000,000.00);

(B)   On Count Two for Three Million Dollars ($3,000,000.00) in compensatory damages and Ten Million Dollars ($10,000,000.00 in punitive damages plus an amount for attorneys' fees;

(C)   On Count Three for Three Million Dollars ($3,000,000.00) in compensatory damages and Ten Million Dollars ($10,000,000.00 for punitive damages plus an amount for attorneys' fees;

(D)   On Count Four for Three Million Dollars ($3,000,000.00) in compensatory damages and Ten Million Dollars ($10,000,000.00 in punitive damages plus an amount for attorneys' fees.

(E)   On Count Five for Three Million Dollars ($3,000,000.00) in compensatory damages and Ten Million Dollars ($10,000,000.00) for punitive damages plus an amount for attorneys fees.

(F) Defendant Kearney lastly demands that Plaintiff and Defendant DMS pay all costs of this action and the Court grant Defendant Kearney such other and further relief to which he may be entitled.

*Eugene L. Matan*
EUGENE L. MATAN        0012381
MATAN, GEER & WRIGHT
261 South Front Street
Columbus, Ohio 43215
Telephone:   614-228-2678
Telefax:        614-221-6122
E-mail:          ematan@mgwlaw.com
**Attorney for Defendant**

## JURY DEMAND

Now comes Plaintiff and requests a jury of eight (8) at the within trial on all issues of the Complaint and Answer and Counterclaim properly triable to a jury.

*Eugene L. Matan*
EUGENE L. MATAN        0012381
MATAN, GEER & WRIGHT
261 South Front Street
Columbus, Ohio 43215
Telephone:   614-228-2678
Telefax:        614-221-6122
E-mail:          ematan@mgwlaw.com
**Attorney for Defendant**

I certify that this is a true and correct copy of the original filed in my office on April 16, 2003.
KENNETH J. MURPHY, CLERK
BY: Sheryl Vollmer
          Deputy Clerk
DATE: May 6, 2003

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing First Amended Counterclaim was served upon Geraldine Johnson, Attorney for Plaintiff, at Roetzel & Andress, 310 Chiquita Center, 250 East Fifth Street, Cincinnati, Ohio 45202, by ordinary U.S. Mail service, postage prepaid, this 26th day of February, 2003.

EUGENE L. MATAN         0012381