UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JEFFERSON-PILOT LIFE INSURANCE COMPANY, et al. | : | CASE NO. C-1-02-479 |
| | : | |
| | : | (Judge Michael R. Barrett) |
| Plaintiff/Counterclaim Defendants, | : | |
| | : | |
| vs. | : | **DEFENDANTS' RESPONSE TO** |
| | : | **PLAINTIFF'S REPLY TO** |
| CHRISTOPHER L. KEARNEY, | : | **SUPPLEMENTAL AUTHORITY IN** |
| | : | **SUPPORT OF MOTION TO CERTIFY** |
| Defendant/Counterclaim Plaintiff. | : | **QUESTION OR, IN THE** |
| | : | **ALTERNATIVE, FOR** |
| | | **RECONSIDERATION** |

Apparently determined to lead this Court into error on the proper standard for bad faith under Ohio law, Plaintiff's Reply to Defendants' Supplemental Authority ("Plaintiff's Reply"), through the use of misleading ellipses and the misuse of altered "quotations," misrepresents the holding of *Penton Media, Inc. v. Affiliated FM Insurance Co.*, 2007 WL 2332323 (6th Cir. Aug. 15, 2007). As shown below, because the actual language in *Penton* clearly recognizes that there must be a "refusal to pay"[1] in order to claim bad faith under Ohio law, the question should be certified or, in the alternative, Defendants' summary judgment motion should be granted on Plaintiff's claims for bad faith and conspiracy.[2]

Plaintiff's "bullet-point" recitation of his version of *Penton's* "findings" on page 2 of his Reply are, in equal parts, incomplete and misleading. The following are direct quotes from *Penton*, with Plaintiff's omissions highlighted:

> **As Penton notes**, Ohio law recognizes that bad faith in the adjustment of an insurance claim may exist without a valid claim for coverage; "an

---

[1] Note that this term encompasses more than a claim denial, as a significant delay in payment can also form the basis of an Ohio bad faith claim. The Court has previously found that Plaintiff was timely paid in this matter.

[2] Plaintiff's conspiracy claim is found in Count IV of plaintiff's First Amended Counterclaim and relates solely to his bad faith claim pled in Count III.

> insurer has a duty to act in good faith in the processing and payment of the claims of its insured.  A breach of this duty will give rise to a cause of action in tort irrespective of any liability arising from breach of contract." *Staff Builders, Inc. v. Armstrong,* 525 N.E.2D 783,788 (Ohio 1988); *see also Zoppo v. Homestead Ins. Co.,* 644 N.E.2D 397, syllabus ¶1 (Ohio 1994)(approving and following *Staff Builders*).  **As the Ohio Court of Appeals has explained,**
>
>> **The existence of a duty of good faith and fair dealing between an insurer and an insured is based on the fiduciary duty imposed upon insurers.  An insurer breaches the duty when it refuses to pay or settle a claim for an arbitrary or capricious reason.**  In executing the contact, the insurer's action must be predicated upon "circumstances that furnish reasonable justification therefor." *State Farm Mut. Auto. Ins. Co. v. Reinhart,* 683 N.E.2d 843, 845 (Ohio Ct. App. 1996)(quoting *Staff Builders,* 525 N.E.2d at 778).

*Penton*, *supra,* at *5.

Examining Plaintiff's next "bullet points," again highlighting the surrounding language omitted by Plaintiff:

> **As the Ohio Supreme Court explained in *Zoppo*, an insurer must base " 'its refusal to pay the claim…upon circumstances that furnish reasonable justification therefor.'"  644 N.E.2d at 400 (quoting *Staff Builders*, 525 N.E.2d at 788).  However, "[i]ntent is *not* and has never been an element of the reasonable justification standard." *Id.*** The insurer must **have a reasonable basis for its decision and** take reasonable steps in adjusting the claim; **its subjective intentions are not relevant.**
>
> The *Zoppo* court held that performing a cursory investigation and ignoring information that would tend to support the insured's claim can constitute bad faith.  ***Id.***  **In that case, the basis for denial of the claim was that the insured himself had set the fire that destroyed the business.** *Id*.

*Id*. at *6.

Plaintiff's distortions of *Penton*'s language do not stop at excluding explanatory language contradicting his position.  It also extends to adding his own language to "quotes" that alter the Court's ruling.  Here is Plaintiff's statement at page 3 of his Reply:

2

> Fourth, as *Penton Media* points out, in "executing the contract" (i.e. processing and adjusting the claim) the insurer's "<u>actions</u> (i.e., not necessarily payment or denial) must be predicated upon 'circumstances that furnish reasonable justification therefor.'"

The actual language in Penton, however, refers to only one "action" – that of paying or settling the claim. Nor does it include Plaintiff's "quoted" language *"(i.e., not necessarily payment or denial)."* Here is the quote, this time, accurately stated:

> An insurer breaches the duty when it refuses to pay or settle a claim for an arbitrary or capricious reason. In executing the contact, the insurer's action must be predicated upon "circumstances that furnish reasonable justification therefor.

*Penton* at *5. Plaintiff's additions fundamentally change the meaning of the Sixth Circuit's language. It is apparent that Plaintiff feels the need to engage in these linguistic gymnastics because of one simple fact – the case law is all against him.

Plaintiff attempts to make much of the *Penton* court's statement, "As Penton notes, Ohio law recognizes that bad faith in the adjustment of an insurance claim may exist without a valid claim for coverage;…,". *Penton* at *5. The *Penton* court's apparent agreement with the appellant Penton's statement, however, clearly is *dicta*. First, that statement is unsupported by citation and not found in the two Ohio cases cited at the end of the complete sentence, *Staff Builders, Inc. v. Armstrong*, 525 N.E.2d 783 (Ohio 1988); *see also Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397 (Ohio 1994)(approving and following *Staff Builders*).[3] In fact, *Staff Builders* makes clear that a "refusal to pay or settle" is required:

> In *Hart v. Republic Mut. Ins. Co.* (1949), 152 Ohio St. 185, 188, 39 O.O. 465, 466, 87 N.E.2d 347, 349, this court addressed the potential tort liability of an insurer for **refusing to settle** a claim against an insured. We observed that such refusal "may not be arbitrary or capricious * * *. The conduct of

---

[3] To the extent this language could be considered a holding, rather than dicta, it is incorrect and is a good example of the Ohio Supreme Court's statement that "Federal courts acknowledge that they frequently err in applying state law that is unclear or unsettled." *See* <u>Scott v. Bank One Trust Co., N.A.</u>, 577 N.E.2d 1077, 1080-81 (Ohio 1991).

> the insurer must be based on circumstances that furnish reasonable justification therefor." In *Hoskins, \*303 supra,* this duty of the insurer was extended to the processing of the claims of its insured. Accordingly, it is our further determination that **an insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim** is not predicated upon circumstances that furnish reasonable justification therefor.

*Id*. at 788 (emphasis supplied).

Further, that statement is directly contradicted further down in the opinion, where the *Penton* court states:

> Penton points to no Ohio precedent for finding bad faith when an insurer denies coverage based on an interpretation of contract language, but fails to investigate alternative bases for denial of coverage. **To the contrary, the Ohio Court of Appeals has held in an unpublished opinion that where "there is no coverage under the policy" for the type of claim at issue, an insured "could not maintain a claim for bad faith based on the refusal" of the insurer to pay the claim. *Emerson v. Med. Mut.*, 2004 OH Ct.App. 3892U, ¶¶ 21, 36 (interpreting a health care plan).**

*Id.* at \*7 (emphasis supplied).

Assuming <u>arguendo</u> that bad faith can exist without a valid claim for coverage, that provides no help to Plaintiff. After all, here there was coverage and the clam was timely paid. Realizing this, Plaintiff makes a staggering leap of "logic," stating:

> First, as the 6th Circuit properly notes, bad faith can exist in the "adjustment" of a claim even in the absence of a valid claim for coverage. The corollary, or flip side of this legal point, therefore, is also true: bad faith can exist in the "adjustment" of a claim even if the claim is ultimately paid. The cases that hold as much are identified in Kearney's prior briefing and this Court's Summary Judgment Opinion and Order.

Plaintiff's Reply at 2-3. Although Plaintiff's "citation," to say the least, is vague, his insertion of the phrase "ultimately paid,' makes it clear that he's referring to those Ohio cases where there was significant delay in payment of the claim. The Court has already found that payments to Kearney were timely paid, so those cases are inapposite.

The gist of Plaintiff's reply is that bad faith can exist where a claim is timely paid. He offers no case authority for that proposition, nor is there any in Ohio. In fact, even as "progressive" a jurisdiction as California recognizes that, without a refusal to pay, there can be no bad faith. As stated in *Love v. Fire Insurance Exchange*, 221 Cal.App.3d 1136 (Cal.App.4th Dist. 1990):

> Thus, there are at least two separate requirements to establish breach of the implied covenant: (1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause. (See also *California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1986) 184 Cal.App.3d 1428, 1433 [229 Cal.Rptr. 409] [no award for bad faith can be made "without first establishing that coverage exists]; *Kopczynski v. Prudential Ins. Co.* (1985) 164 Cal.App.3d 846, 849 [211 Cal.Rptr. 12].[10]
>
> FN10: Our interpretation that a plaintiff must show, at a minimum, benefits were delayed or withheld, accords with the analysis of the commentators: "Where benefits are *fully and promptly paid*, no action lies for breach of the implied covenant – no matter how hostile or egregious the insurer's conduct toward the insured may have been prior to such payment. *I.e., absent an actual withholding of benefits due, there is no breach of contract and likewise no breach of the insurer's implied covenant.* [Citation.]" (Kornblum et al., Cal. Practice Guide: Bad Faith, *supra.,* §4:28, p. 4-9, italics added).

*Id*. at 1151-52, FN10. Ohio should not "take the lead" in the area of bad faith without a clear mandate from the courts of Ohio.

For these reasons, Defendants respectfully request that the Court either certify the question to the Ohio Supreme Court or, after considering the case law establishing the necessity of a "refusal to pay" under Ohio bad faith law, grant Defendants' Motion for Summary Judgment as to Plaintiff's bad faith case and accompanying conspiracy claim.

Respectfully submitted,

|  |  |
|---|---|
|  | /s William R. Ellis<br>William R. Ellis (0012279)<br>Wood & Lamping LLP<br>600 Vine Street, Suite 2500<br>Cincinnati, OH  45202-2491<br>Telephone:     (513) 852-6000<br>Telefax:          (513) 852-6087<br>E-mail:  wrellis@woodlamping.com |
| OF COUNSEL: | John E. Meagher (511099)<br>SHUTTS & BOWEN LLP<br>201 S. Biscayne Boulevard<br>1500 Miami Center<br>Miami, Florida  33131<br>Telephone:  (305) 358-6300<br>Telecopier:  (305) 381-9982<br>E-mail: JMeagher@Shutts-law.com<br><br>Attorneys for Defendants Jefferson Pilot Life Insurance Company and Disability Management Services, Inc. |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this 13th day of September, 2007. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                s/ William R. Ellis

MIADOCS 2287820 4